## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1] | Case No. 17-12560 (KJC) |
|  | (Joint Administration Requested) |
| Debtors. |  |

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (I) PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, AND 552 AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION SECURED FINANCING, (B) USE CASH COLLATERAL, (C) GRANT ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; (II) MODIFYING THE AUTOMATIC STAY; (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND 4001(c); AND (IV) GRANTING RELATED RELIEF**

Woodbridge Group of Companies, LLC and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby file this motion (the "Motion") requesting entry of an interim order, substantially in the form attached hereto as Exhibit 1 (the "Interim Order"), and a Final DIP Order[2] (together with the Interim Order, the "DIP Orders"):

(i) authorizing (a) Woodbridge Group of Companies, LLC (the "Borrower") to obtain up to $25,000,000 in principal amount of postpetition financing on an interim basis (the "DIP Loan") on the terms and conditions set forth in the Interim Order and the Debtor-in-Possession Credit, Guaranty and Security Agreement in the form attached to the Interim Order as Exhibit A (as hereafter amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP

---

[1]    The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14225 Ventura Boulevard #100, Sherman Oaks, California 91423.  Due to the large number of debtors in these cases, for which the Debtors have requested joint administration, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein.  A complete list of such information may be obtained on the website of the Debtors' proposed noticing and claims agent at www.gardencitygroup.com/cases/WGC, or by contacting the proposed undersigned counsel for the Debtors.

[2]    Capitalized terms used but not defined herein shall have the meaning given to them in the DIP Agreement (as defined below) or the Interim Order, as applicable.

Agreement"; together with all Credit Documents, including, without limitation, the Budget, in each case as hereafter amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof and thereof, the "<u>DIP Documents</u>," and together with the DIP Loan, the "<u>DIP Facility</u>"; and the Borrower's obligations in respect of the DIP Loan and all other Obligations (as defined in the DIP Agreement) and indebtedness of the Borrower under or arising in connection with the DIP Documents, collectively, the "<u>DIP Obligations</u>"), among the Borrower, those certain Debtors which are the fee owners of certain identified core assets, Hankey Capital, LLC (the "<u>DIP Lender</u>") and the administrative agent and collateral agent for the DIP Lender named therein (in such capacity, the "<u>DIP Agent</u>");

(ii)     authorizing the Debtors to execute and deliver the DIP Agreement and the other DIP Documents and to perform such other and further acts as may be required in connection with the DIP Documents;

(iii)    authorizing the Debtors to grant security interests, liens, and superpriority claims, including a superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code and liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code (including liens pursuant to section 364(d)(1) of the Bankruptcy Code to the DIP Agent, for the benefit of the DIP Lender, which are senior to specified liens of held by the Debtors and the Noteholders (the "<u>Subordinate Liens and Related Rights</u>") in the DIP Collateral, including, without limitation, all Cash Collateral, to secure all obligations under the DIP Documents, subordinate only to the Carve-Out, and any Prior Liens (as defined in the Interim DIP Order);

(iv)    authorizing the Debtors to (a) subject to the terms and provisions hereof, use all Cash Collateral pursuant to section 363 of the Bankruptcy Code, and all other Prepetition Collateral, and (b) pursuant to sections 361 and 362 of the Bankruptcy Code, to provide adequate protection to holders of prepetition liens;

(v)     modifying the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and the Interim Order;

(vi)    scheduling, pursuant to Federal Rule of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") 4001, a final hearing (the "<u>Final Hearing</u>") for the Court to consider entry of a final order approving this Motion, which order shall be substantially in the form of the Interim Order and otherwise contain terms and conditions acceptable to the DIP Agent; and

(vii)   granting related relief.

In support of this Motion, the Debtors rely upon the *Declaration of Lawrence R. Perkins in Support of the Debtors' Chapter 11 Petitions and Requests First Day Relief* (the "First Day Declaration"), which was filed contemporaneously herewith and is incorporated herein by reference.  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested herein are sections 105, 361, 362, 363, 364, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rules 2002-1, 4001-2, and 9013-1(m).

## BACKGROUND

2.      On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

3.      Contemporaneously herewith, the Debtors filed a motion seeking joint administration of their chapter 11 cases (collectively, the "Chapter 11 Cases") pursuant to

Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No trustee, examiner, or official committee of unsecured creditors has been appointed in the Chapter 11 Cases.

4.      Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of the Chapter 11 Cases can be found in the First Day Declaration.

## I.      The Debtors' Prepetition Indebtedness

5.      As further detailed in the First Day Declaration, the Debtors and their affiliates and subsidiaries (collectively, the "Woodbridge Group") are a comprehensive real estate finance and development company.  The Woodbridge Group's principal business is buying, improving, and selling high-end, luxury homes.  Woodbridge Group also owns and operates full-service real estate brokerages, a private investment company, and real estate lending operations.

6.      The Debtors' ultimate parent is RS Protection Trust, an irrevocable trust settled under Nevada law ("RS Trust"), of which Robert Shapiro is the trustee.  Members of Mr. Shapiro's family are the sole beneficiaries.  As of the Petition Date, WMF Management, LLC ("WMF Management") is a wholly-owned subsidiary of Woodbridge Group of Companies, LLC, which is in turn a wholly-owned subsidiary of its holding company, Carbondale Doocy, LLC.[3]  WMF Management directly owns seven investment funds that have raised funds for Woodbridge's operations (collectively, the "Funds").[4]  RS Trust also owns approximately 150

---

[3]      As further described in the First Day Declaration, Woodbridge Group implemented a pre-petition restructuring shortly before the Petition Date.  Prior to this restructuring, WMF Management was a wholly-owned subsidiary of RS Trust.

[4]      The Funds are comprised of Woodbridge Mortgage Investment Fund 1, LLC ("WMIF1"); Woodbridge Mortgage Investment Fund 2, LLC ("WMIF2"); Woodbridge Mortgage Investment Fund 3, LLC ("WMIF3"); Woodbridge Mortgage Investment Fund 3A, LLC ("WMIF3A"); Woodbridge Mortgage Investment Fund 4, LLC ("WMIF4"); Woodbridge Commercial Bridge Loan Fund 1, LLC ("WCBLF1"), and Woodbridge Commercial Bridge Loan Fund 2, LLC ("WCBLF2" and, collectively with WCBLF1, the "Bridge Loan Funds").

active mezzanine holding companies (the "MezzCos"), each of which owns a single property

company that owns an individual real estate asset (the "PropCos").

7.     All but three of the Woodbridge Group entities have no indebtedness under

traditional third-party lending facilities.[5]  Rather, the Debtors' operations have been primarily

funded by lenders to, and unitholders of, the Funds.  Specifically, Woodbridge has raised funds

for its operations (i) by borrowing funds in connection with promissory notes (the "Lender

Notes") from individual investors (the "Noteholders"), and (ii) pursuant to subscription

agreements under which subscribers (the "Unitholders") purchase units (the "Units") in

individual Funds.

### A.     The Noteholders

8.     As of the Petition Date, the Funds were collectively indebted to approximately

8,998 Noteholders, with a cumulative total outstanding amount of Lender Notes of

$750,438,988.12.[6]  WMIF1 was indebted to 175 Noteholders with a cumulative total outstanding

amount of Lender Notes of $12,004,782.36.  WMIF2 was indebted to 537 Noteholders with a

cumulative total outstanding amount of Lender Notes of $41,702,586.94.  WMIF3 was indebted

to 2,681 Noteholders with a cumulative total outstanding amount of Lender Notes of

$211,508,293.32.  WMIF3A was indebted to 2,822 Noteholders with a cumulative total

outstanding amount of Lender Notes of $248,169,473.99.  WMIF4 was indebted to 2,783

Noteholders with a cumulative total outstanding amount of Lender Notes of $237,053,851.51.

---

[5]     As further discussed in Section I-B, *infra,* three of the PropCos are funded by third-party notes issued by third-party lenders rather than by Noteholders. The properties held by these PropCos are not part of the DIP Collateral, and any liens held by these lenders in connection with these financing arrangements are not being primed nor otherwise impacted by this Motion or the relief sought herein.

[6]     These numbers are drawn from a November 24, 2017 internal report, and as of the Petition Date, a more current estimate was not available.  The Debtors anticipate receiving updated numbers shortly after the Petition Date.

The Bridge Loan Funds have no Noteholders or Lender Notes; rather, these funds raise money solely through Units and lend this money directly to another Woodbridge Fund pursuant to a promissory note and loan agreement.[7]

       9.      Each of the Lender Notes is evidenced by an individual promissory note issued pursuant to a loan agreement (individually, a "Loan Agreement").[8]  Pursuant to the terms of each Loan Agreement, each Noteholder lent a fixed amount to an individual Woodbridge Fund for the stated purpose of partially funding a single one of three types of secured loans from such Woodbridge Fund to an individual MezzCo or PropCo.[9]  With respect to each real property owned by a PropCo, three secured loans were created: (i) a loan from a Woodbridge Fund to a PropCo secured by a first lien mortgage on such property, (ii) a loan from the same Woodbridge Fund to the same PropCo secured by a second lien mortgage on such  property, and (iii) a mezzanine loan from the same Woodbridge Fund to the MezzCo that owns the sole membership interest in such PropCo, secured by a pledge of that MezzCo's ownership interest in the PropCo. In turn, each PropCo or MezzCo used the proceeds advanced from the applicable Woodbridge Fund to fund purchases or construction of, or improvements upon, individual real properties.  In the ordinary course of their operations, the Debtors generate cash from the sale of these properties, which results in the repayment of the mortgages on such properties

---

[7]      As of the petition date, approximately $808,597 of Units were outstanding across the two Bridge Loan Funds.

[8]      Our description of each of the Lender Notes is based on descriptions provided by management and a review of a sample of the relevant loan documents for each Lender Note.  While we believe these statements to be true in all cases, we are continuing to diligence the documentation.

[9]      In general, each of these was syndicated across groups of individual Noteholders, with each Noteholder entering into an intercreditor agreement together with each other Noteholder lending money in connection with an individual Woodbridge Fund loan to the applicable PropCo or MezzCo.  Pursuant to each such intercreditor agreement, each Noteholder agreed to share in principal and interest payments received from the applicable Woodbridge Fund on a pro rata basis, and to share equal rights of enforcement, priorities, duties, and obligations under their Lender Notes.

10.     Under each Loan Agreement, the applicable Woodbridge Fund granted a security interest in favor of the applicable Noteholders in the Fund's right, title and interest in and to (i) the indebtedness held by the Woodbridge Fund issued by a particular MezzCo or PropCo, (ii) the promissory note evidencing such loan, (iii) the mortgage or deed of trust securing such loan (in the case of PropCo loans) or the pledge and security agreement securing the mezzanine loan (in the case of a MezzCo Loan), and (iv) related title insurance policies in connection with such loan (collectively, the "<u>Third-Party Collateral</u>").  Further, in connection with each Lender Note, the applicable Woodbridge Fund entered into two related assignment documents: *first*, an assignment of promissory note (individually, a "<u>Note Assignment</u>"), pursuant to which the Woodbridge Fund assigned (but did not deliver possession nor otherwise transfer or negotiate) to the Noteholder the Fund's right, title, interest, claims or rights in (i) the promissory note reflecting its loan to the applicable PropCo or MezzCo, and (ii) the related mortgage or deed of trust held by the applicable PropCo, or the related pledge and security agreement held by the applicable MezzCo, together with related rights, documents, accounts, and proceeds thereto; and *second*, a collateral assignment (individually, a "<u>Collateral Assignment</u>" and collectively, with the Note Assignments, the "<u>Assignments</u>"), pursuant to which the Woodbridge Fund assigned to the Note holder its right, title, and interest in and to the same underlying documents, proceeds therefrom, rights thereunder, and documents related thereto.

11.     Notwithstanding the grant of these security interests and the executed Assignments, as a matter of law, any liens or security interests of the Noteholders in the Third-Party Collateral are not perfected.  Under the Uniform Commercial Code ("<u>UCC</u>"), as adopted by Delaware,[10] the Third-Party Collateral is personal property—specifically, promissory notes

---

[10]     Because each of the Funds is a Delaware LLC, perfection issues will be governed by the Uniform Commercial Code as presently in effect in the state of Delaware, the jurisdiction of organization of the debtor under

and instruments—the perfection of which is governed by Article 9 of the UCC.[11] Under the

UCC, perfection of a security interest in a promissory note or instrument granted to secure an

obligation can only be achieved through possession of the note or instrument, or by the filing of a

UCC-1 financing statement with respect to the instrument.[12]  The Debtors have confirmed that

no Noteholder is in possession of any of the Third-Party Collateral. Further, on information and

belief and based on an investigation, no Noteholder has filed a UCC-1 financing statement with

respect to any of the Third-Party Collateral in Delaware.[13]  Similarly, the Noteholders lack

standing to enforce any security interests in the Third-Party Collateral because none of the

Lender Notes has been validly transferred or "negotiated"[14] to any of the Noteholders nor

endorsed to and in favor of a Noteholder as required by Article 3 of the UCC to transfer and

assign an "instrument".[15]

---

the relevant security documents. The law governing perfection is determined by the mandatory rules of UCC
sections 9-301 to 9-307, which cannot be altered by agreement.  *See* 6 Del. C. § 1-301(c)(7).

[11]      *See* 6 Del. C. §§ 9-102(a)(65) (definition of "promissory note") and 9-102(a)(47) (definition of
"instrument" as the term is used in Article 9).  Article 9 of the Uniform Commercial Code applies to any transaction
that creates a security interest in personal property. 6 Del. C. § 9-109(a)(1),(3). The definition of "security interest"
in the UCC includes "any interest of a buyer of . . . a promissory note in a transaction that is subject to [Article] 9." 6
Del. C. § 1201(b)(35).

[12]      *See* 6 Del. C. §§ 9-312(a) and 9-313(a).

[13]      Under the UCC, the proper jurisdiction for the filing of a UCC-1 financing statement is the "location" of
the debtor, and the UCC further provides that "[a] registered organization that is organized under the law of a State
is located in that State."  6 Del. C. §§ 9-301(1) and 9-307(e).

[14]      Under Article 3 of the UCC, "negotiation" is defined as "a transfer of possession . . . of an instrument by a
person other than the issuer to a person who thereby becomes its holder". UCC § 3-201(a); 6 Del. C. § 3-201(a).  In
addition, Article 3 makes clear that "negotiation" (i.e., a transfer of an instrument) cannot occur until both
possession of the instrument is transferred and the instrument is endorsed in favor of the transferee.  UCC Section 3-
203(c); 6 Del. C. § 3-203(c).

[15]      In the absence of such delivery and endorsement, the Noteholders lack standing to enforce any security
interests in the Third-Party Collateral.  This is because only a "person entitled to enforce" has standing to enforce a
promissory note by pursuing a mortgage remedy. *See* 6 Del. C. § 3-301 (defining "person entitled to enforce" in
relevant part as "(i) the holder of the instrument [or] (ii) a nonholder in possession of the instrument who has the
rights of a holder").  In fact, Section 3-203(a) of the UCC expressly provides that an "instrument is transferred
when it is delivered . . . for the purpose of giving to the person receiving delivery the right to enforce the
instrument." *Id.* § 3-203(a).

12.     As a matter of law, the Assignments fail to perfect the Noteholders' interests in the Third-Party Collateral.  A perfected security interest in a secured note would also perfect a security interest in the underlying security instrument.[16]  In other words, under Article 9 of the UCC, the collateral follows the note.  Assignment of a note alone (without possession or the filing of an appropriate financing statement with respect to the note) is insufficient to perfect a security interest in an instrument.[17]

13.     While the Debtors believe based on the foregoing that the Noteholders' liens are not properly perfected and are thus subject to avoidance, out of an abundance of caution, at this stage in the proceedings the Debtors are making available conditional adequate protection to these noteholders providing that the Noteholders will receive conditional liens and claims on the Adequate Protection Property (as defined below) to the extent of any diminution on any valid, unavoidable interests the Noteholders may have in such assets as of the Petition Date.  In addition, the Debtors are reserving funds sufficient to pay interest on any notes that are found to have valid, unavoidable interests with sufficient security to require payment of interest.

## B.    The Debtors' Third-Party Lenders

14.     Aside from the Noteholders, the Debtors owe secured indebtedness to three third-party lenders in connection with three of their properties.  Specifically, three of the PropCos—

---

[16]     Under Article 9, the attachment and perfection of a security interest in a note results in attachment and perfection of the note buyer's rights in the underlying mortgage, deed of trust, or other lien instrument *by operation of law*. *See* 6 Del. C. § 9-203(g) ("The attachment of a security interest in a right to payment or performance secured by a security interest or other lien on personal or real property is also attachment of a security interest in the security interest, mortgage, or other lien."); id. § 9-308(e) ("Perfection of a security interest in a right to payment or performance also perfects a security interest in a security interest, mortgage, or other lien on personal or real property securing the right.").

[17]     UCC § 9-109, cmt. 7 ("[A]n attempt to obtain or perfect a security interest in a secured obligation by complying with non-Article 9 law, as by an assignment of record of a real-property mortgage, would be ineffective."); *see also* 6 Del. Code § 9-109, cmt. 7 (adopting the language of UCC § 9-109, comment 7 in its entirety).

Bishop White Investments, LLC, Craven Investments, LLC, and Grand Midway Investments, LLC (the "Third-Party Funding PropCos")—are funded by third-party notes issued by 805 Nimes Place, LLC, Ashley Land, LLC, and Tintarella, LLC, respectively (collectively, the "Third-Party Funders") rather than by Noteholders. The properties held by the Third-Party Funding PropCos are not part of the DIP Collateral, and any liens held by the Third-Party Funders in connection with these financing arrangements are not being primed nor otherwise impacted by this Motion or the relief sought herein.

15.     Based on an ongoing review of lien reports and title reports, as well as conversations with management and employees of the Woodbridge Group of Companies and its primary contractor, Plus Development Group, I am not aware of any liens held by mechanics, suppliers, contractors, or other entities on any of the Debtors' assets.

## II.     The Securities Investigations

16.     The ongoing investigations by securities regulators, including the United States Securities and Exchange Commission ("SEC"), have been a significant constraining factor in the Debtors' efforts to obtain debtor-in-possession financing.[18] Since September 2016, certain Woodbridge Group entities (including certain of the Debtors) have been under investigation by the SEC.  In connection with this investigation, the SEC has brought two applications to enforce administrative subpoenas that it issued against certain Woodbridge Group entities (among other entities).  Specifically, on September 27, 2016, the SEC issued a formal order directing an investigation of WMIF3.  On July 17, 2017, the SEC filed an application in the District Court for the Southern District of Florida (the "Florida Court") seeking enforcement of an administrative subpoena that it issued on January 31, 2017 (the "Woodbridge Group Subpoena").  *See SEC v.*

---

[18]     Aside from the SEC, Woodbridge Group entities have received inquiries from approximately 25 state securities regulators.

*Woodbridge Grp. of Cos.*, 17-cv-22665 (CMA) (S.D. Fla. Jul. 17, 2017), Dkt. No. 1. The court

issued an order granting the SEC's request on September 20, 2017. *Id.*, Dkt. No. 25. On

October 13, 2017, the SEC filed a motion for contempt of court, alleging that Woodbridge had

failed to provide certain company-related emails from the AOL.com accounts of Robert Shapiro

and Nina Pedersen. *Id.*, Dkt. No. 29. This motion has been fully briefed and remains pending

before the Florida Court as of the Petition Date.

17.     Separately, on October 31, 2017, the SEC filed an second application in the

Florida Court (the "LLC Application") seeking an order to show cause enforcing subpoenas that

it issued on August 16 and 17, 2017 (the "LLC Subpoenas") to 235 limited liability companies

allegedly owned and controlled by Robert Shapiro to explain why they had not fully complied

with the LLC Subpoenas. *See SEC v. 235 Ltd. Liab. Cos.*, No. 17-mc-23986 (PCH) (S.D. Fla.

Nov. 14, 2017), Dkt. No. 1. According to the LLC Application, the SEC

> is investigating possible ongoing violations of Sections 5(a), 5(c),
> and 17(a) of the Securities Act, and Section 15(a) and Section
> 10(b) of the Exchange Act and Rule 10b-5 thereunder, by
> Woodbridge and other persons and entities. Specifically, the
> Commission is investigating the offer and sale of unregistered
> securities, the sale of securities by unregistered brokers, and the
> commission of fraud in connection with the offer, purchase, and
> sale of securities.

LLC Application ¶ 2. The LLC Application further alleges that

> Woodbridge, its officers, directors, employees, partners,
> subsidiaries, and/or affiliates and/or other persons or entities,
> directly or indirectly, may have been or may be, among other
> things, making false statements of material fact or failing to
> disclose material facts, to investors and others, concerning, among
> other things, the use of investor funds, the safety of the
> investments, the profitability of the investments, the sales fees, or
> other costs associated with the purchase of the investments.

LLC Application ¶ 6.  The LLC Application was resolved through a stipulated order entered on

November 14, 2017 under which the limited liability companies agreed to produce documents on

a rolling basis, with a final deadline of December 4, 2017.  *Id.*, Dkt. No. 16.

Despite these two discovery-related disputes and the allegations therein, the SEC has not asserted

any claims against the Debtors or any Woodbridge Group entities.

18.     Aside from the SEC, certain of the Debtors have received information requests

from state securities regulators in approximately 25 states.  These Debtors have produced

responsive documents in connection with these inquiries, and a substantial majority of cases have

not progressed past the investigation and discovery stage.  The concerns raised by state

regulators have generally focused on the alleged offer and sale of unregistered securities,

including by allegedly unregistered agents.  Three of these inquiries were resolved through

settlements, which included the entry of consent orders.  Proceedings against certain Debtors are

currently pending in Arizona, Colorado, Idaho, and Michigan; in each case, the Debtors' pre-

petition management was engaged in advanced settlement discussions with the applicable

regulators prior to the commencement of the Chapter 11 Cases.  In the settled cases, the

Woodbridge Group Enterprise entities agreed to provide regulators with the identities of all

referral agents compensated by such entities in connection with the sales of private placement

loans, and to offer rescission to Noteholders for a period of thirty to sixty days.  By information

and belief, the applicable Woodbridge Group Enterprise entities have complied with all the

conditions of the settlement agreements.

### III.     The Debtors' Efforts to Obtain DIP Financing

19.     One of the critical elements to the Debtors' restructuring efforts is the availability

of financing to fund the Debtors' anticipated cash shortfalls during the bankruptcy case, as well

as the need for financing upon emergence from chapter 11.  With the assistance of their advisors,

beginning on November 7, 2017, the Debtors contacted fourteen potential lenders to inquire into their willingness to provide financing during the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors (the "Chapter 11 Cases").  Of the potential lenders, the Debtors executed non-disclosure agreements with eleven institutions and received formal proposals from five.

20.    Based on the responses received from other potential lenders, the Debtors faced two primary hurdles in obtaining financing from traditional sources.  *First*, the Debtors' prepetition capital structure is complex, consisting of approximately 152 entities and with the Debtors' primary assets—their real estate holdings—held by separate PropCos and subject to claims from separate Funds and their respective Noteholders.  While, as discussed in Section I-A, *supra*, the Noteholders' liens on the Third-Party Collateral are not properly perfected and are thus subject to avoidance, out of an abundance of caution, at this stage in the proceedings the Debtors are making available conditional adequate protection to these noteholders providing that the Noteholders will receive liens and claims on other Debtor assets to the extent of any diminution on any valid, unavoidable interests the Noteholders may have in such assets as of the Petition Date. *Second*, as further described in Section II, *supra*, since September 2016, the Debtors have been under investigation by certain securities regulators, including the SEC.

21.    The Debtors were able to negotiate a DIP Facility with Hankey Capital, LLC ("Hankey" or the "DIP Lender"), which will provide the Debtors with $100 million in postpetition financing (with $25 million to be available on an interim basis) through the DIP Lender and DIP Agent to fund the Debtors' costs and expenses during the Chapter 11 Cases. Hankey was selected as DIP Lender after careful deliberation because Hankey offered the best economics (both in terms of interest rate and fees) of any potential lender, and because of their

experience in the high-end luxury residential real estate sector and familiarity with the properties.

In addition, the proposed DIP Facility overcomes all of the hurdles that the Debtors faced in

identifying a potential financing source.  *First*, Hankey agreed to provide the DIP Facility

secured only by priming liens on a set of 28 of the Debtors' properties (the "Core Assets"); by

lending solely against specified assets rather than insisting on a traditional grant of a security

interest in substantially all the assets of all the Debtors, the DIP Lender has provided the Debtors

with the flexibility necessary to fund its continuing operations and the ability to provide

conditional adequate protection to the Noteholders in the form of replacement liens on certain of

the Debtors' properties other than the Core Assets.[19]   Thus, the DIP Lender has agreed to

structure the DIP Facility in a manner that will allow for the Debtors' turnaround efforts to be

pursued.  Further, subject to satisfaction of several conditions (including confirmation that loan-

to-value ratios and market conditions are in line with those existing at the closing of the DIP

Facility), the DIP Lender has indicated its willingness to consider providing the Debtors with an

option to convert any principal and interest owing under the DIP Facility into exit financing upon

confirmation of an acceptable chapter 11 plan and the Debtors' successful emergence from

chapter 11.  Such exit financing would provide the reorganized Debtors with additional operating

liquidity that would create an opportunity for the Debtors to successfully complete their

turnaround and fund the chapter 11 plan.  In other words, Hankey could represent both an

immediate and longer-term solution to the Debtors' current liquidity needs.[20]

---

[19]      The Debtors have conducted diligence on the Core Assets, including by reviewing all lien and title reports with respect thereto, and have confirmed that none of the Core Assets is subject to pre-existing security interests (other than the interests of the Noteholders, which are discussed in Section I-A, *supra*.  The DIP Collateral includes all owned or hereafter acquired assets and property of the Loan Parties, which consist of the 27 PropCo Debtors owning the Core Assets.

[20]      For the avoidance of doubt, the Debtors are *not* seeking approval of any exit financing facility through this Motion or any of the First Day Pleadings.

22.     The terms of the proposed DIP Facility are favorable to the Debtors' estates and creditors.  The obligations under the DIP Facility will be secured by the Core Assets, but the liens securing the obligations under the DIP Facility will be subordinate to any valid, unavoidable permitted liens, all as set forth in the Interim DIP Order.

## IV.   The DIP Facility

23.     A summary of the DIP Facility and certain material terms set forth in the DIP Agreement and the Interim Order is set forth below:[21]

| OVERVIEW OF THE DIP FACILITY ||
|---|---|
| **Borrowers:** | Woodbridge Group of Companies, LLC, and certain of its subsidiaries which are the fee owners of the Core Assets, on a joint and several basis. The obligations, however, of Woodbridge Group of Companies, LLC, is recourse solely to loan proceeds, proceeds of sales of the Core Assets and the segregated account in which the foregoing are maintained (the "Woodbridge Pledged Collateral"). Each of the foregoing persons is a Debtor.<br><br>*See* DIP Agreement preamble. DIP Agreement § 2.1. |
| **DIP Agent:** | Hankey Capital, LLC, as administrative agent and collateral agent.<br><br>*See* DIP Agreement preamble. |
| **DIP Lender:** | Hankey Capital, LLC, and any other person that becomes a party to the DIP Agreement pursuant to an Assignment Agreement, provided that no assignments to persons (other than affiliates of Hankey Capital, LLC) is permitted without the consent of the Woodbridge Group of Companies, LLC.<br><br>*See* DIP Agreement § 1.1 (definition of Lender). |
| **DIP Facility:** | Senior secured superpriority debtor-in-possession term loans in the aggregate principal amount of up to $100 million (the "DIP Loans"), to be made available to the Borrowers in multiple draws, $5 million of which will be funded at the DIP closing and a maximum of $25 million may be funded prior to the date of the entry of the Final Order, and up to $75 million of which will be funded in one or more |

---

[21]     This summary is provided in accordance with Bankruptcy Rule 4001 and Local Rule 4001-2 and is qualified in its entirety by reference to the provisions of the DIP Agreement and the Interim Order.  To the extent there exists any inconsistency between this summary and the provisions of the DIP Agreement, the Interim Order, or the Final Order, the provisions of the DIP Agreement, the Interim Order, and the Final Order, as applicable, shall control.

|  | subsequent draws, as determined by the Debtors, commencing on the date of entry of the Final Order.  The availability of the DIP Facility is subject to satisfaction of the conditions precedent set forth in the DIP Agreement. |
|---|---|
|  | Availability of fundings under the DIP Facility will be limited by a portfolio-wide borrowing base calculation, such that the DIP Loans will not exceed 50% of the "as-is" value of the Core Assets as provided by the Debtors. |
|  | *See* Interim Order ¶ 1.2; DIP Agreement § 2.1. |
| **Uses of Proceeds:** | For working capital, including the funding of expenses related to the construction, renovation, marketing and sale of the Core Assets and other assets of the Debtors related entities (including Debtors that are not obligated under the DIP Agreement), and to pay fees, costs and expenses incurred in connection with the transactions contemplated hereby and other administration costs incurred in connection with the Cases. |
|  | *See* DIP Agreement § 2.1.3. |
| **Use of Cash Collateral; Entities with an Interest in Cash Collateral:** | The Debtors are authorized to use Cash Collateral subject to and in accordance with the terms, conditions, and limitations set forth in the Interim Order and the DIP Documents. |
|  | "Cash Collateral" means all "cash collateral" as defined by section 363(a) of the Bankruptcy Code, including, without limitation, all of the cash proceeds of the accounts receivable, inventory and other property constituting Prepetition Collateral in which any secured lender, including, without limitation, the DIP Agent, the DIP Lender, or the holder of Subordinate Liens and Related Rights has an interest (including, without limitation, any adequate protection lien or security interest), whether such interest existed as of the Petition Date or arises thereafter pursuant to this Interim Order, any other order of this Court, applicable law or otherwise. |
|  | *See* Interim Order ¶¶ B.5, 2.1, 2.2 and 2.3; DIP Agreement § 1.1 (definition of Cash Collateral). |
| **Interest Rate:** | A per annum rate equal to the prime rate plus 5.0%, but in any event not less than 9.5%. |
|  | *See* DIP Agreement §§ 1.1 (definitions of Base Rate, Applicable Margin and Interest Rate Floor), 3.1. |
| **Default Rate:** | A per annum rate equal to 3.0% higher than the non-default rate. |
|  | *See* DIP Agreement §§ 1.1 (definition of Default Rate); 3.1. |
| **Fees:** | Closing Fee:  Fee payable to DIP Agent, for the account of each DIP Lender, on the Closing Date in the amount of $1,500,000. |
|  | Exit Fee:   Fee payable to DIP Agent, for the account of each DIP |

| | |
|---|---|
| | Lender, on the earlier of the Maturity Date and the date on which the Obligations under the DIP Credit Agreement are paid in full, or become due and payable or the lending commitments are terminated, in the amount of $1,250,000. *See* DIP Agreement § 3.2. |
| **Conditions to Borrowing:** | The initial funding of the DIP facility shall be subject to customary and reasonable conditions, including the entry of an interim order satisfactory to the Lender. |
| | On the funding date of each DIP Loan (i) there shall exist no Default or Event of Default continuing under the DIP Loan Documents, (ii) the representations and warranties of the Loan Parties therein shall be true and correct in all material respects, (iii) other than the commencement of the Bankruptcy Cases, no event has occurred or circumstance exists that has or could reasonably be expected to have a Material Adverse Effect, and (iv) with respect to the DIP Facility, the Interim Order or the entry of a final order, satisfactory to the DIP Agent (the "Final Order"), as the case may be, shall be in full force and effect and shall not have been vacated, reversed or stayed in any respect or, except as expressly permitted by the DIP Loan Documents, modified or amended in any manner. Fundings in excess of $5 million of the DIP Loan are subject to the DIP Agent and Lender's satisfaction with title searches on properties as to the amount of any Prior Liens. |
| | *See* DIP Agreement §§ 6.1(b), 6.2(d). |
| **Appraisals and Recording of Liens** | Agent however may request appraisals for the Core Assets. |
| | Within 120 days of the Closing Date, or such later date as Agent shall agree, DIP Agent shall have received trust deeds for the Core Assets. |
| | *See* DIP Agreement §§ 6.3. |
| **Security, DIP Liens and Claims:** | "DIP Collateral"[22] means all owned or hereafter acquired assets and property of the Loan Parties, including the Core Assets, except the collateral pledged by the Woodbridge Group of Companies is limited to the Woodbridge Pledged Collateral. |
| | The obligations of the Borrowers under the DIP Facility, including all DIP Loans, shall, subject to the Carve-Out (as defined below), at all times: |
| | Be secured by a lien on and security interest in all Collateral (as defined in the Loan Agreement), including Collateral that is property of the Debtors' estates (the "Collateral"): |
| | (a) pursuant to Section 364(d)(1) of the Bankruptcy Code, a perfected first priority priming security interest and lien on the Collateral that primes and is senior to any and all liens, interests, claims, and rights in favor of the Funds (the "Fund Liens") and the subset of the Noteholders having claims against the borrowers under the DIP Facility, whether arising on or after the Petition Date and however arising or existing (the "Noteholder Liens"), |

---

[22] A list of the DIP Collateral is attached hereto as Exhibit 2.

| | which Fund Liens and Noteholder Liens are junior in priority and subordinate in all respects to the DIP Liens; |
|---|---|
| | (b) pursuant to Section 364(c)(2) of the Bankruptcy Code, a perfected first and senior priority security interest and lien on the Collateral to the extent such Collateral is not subject to valid, perfected, and non-avoidable liens existing as of the Petition Date; |
| | (c) subject to clauses (a) and (b) above, pursuant to Section 364(c)(3) of the Bankruptcy Code, a perfected priority security interest and lien on the Collateral junior only to valid, perfected, and unavoidable liens in favor of third parties that were in existence immediately prior to the Petition Date (other than the Fund Liens and the Noteholder Liens, which are being primed by this Order and are junior in priority and subordinate in all respects to the Liens) (the "Prepetition Third Party Liens"), subject only as to priority to such Prepetition Third Party Liens; and |
| | (d) as replacement liens pursuant to sections 361 and 363 to provide adequate protection of DIP Lender's interest in the Collateral to the extent of any diminution in value of the Collateral as a consequence of the use of Cash Collateral, the DIP Loans, the imposition of the automatic stay, and any other consequence of the Cases; provided, however, the postpetition collateral does not include any claim or cause of action arising under sections 502(d), 542, 544, 547, 548, 550, or 551, and any recoveries thereof, but does include claims and causes of action arising under section 549 and any recoveries thereof and the proceeds realized by the Debtors' estates from the assumption and assignment, or rejection, of any executory contract or unexpired lease under section 365. |
| | *See* Interim Order ¶ 3.1.1 (definition of "Collateral"). |
| **Carve-Out:** | The liens, the adequate protection liens, the superpriority claims and the 507(b) claims shall be subject only to ((a) through (d), the "Carve Out"):<br><br>(a) any unpaid fees due to the United States Trustee pursuant to section 1930 of title 28 of the United States Code or otherwise and any fees due to the Clerk of the Court of the United States Bankruptcy Court for the District of Delaware; (b) all reasonable fees and expenses incurred by a trustee under section 726(b) in an amount not exceeding $100,000; (c) the reasonable expenses of members of any statutory committee (excluding fees and expenses of professional persons employed by such committee members individually); (d) to the extent allowed at any time, all unpaid fees and expenses allowed by the Bankruptcy Court of professionals or professional firms retained pursuant to section 327 or 1103 (the "Professional Persons") through the date of the acceleration of the maturity of the Postpetition Financing; provided that the reimbursement of out-of-pocket expenses allowed by the Bankruptcy Court and incurred by the members of any committee and the Professional Persons shall not exceed the sum of: |

|  | (x) prior to the delivery of a Carve-Out Trigger Notice (defined below) the accrued amount of such professional fees and Committee expenses, in each case, incurred prior to the delivery of such Carve-Out Trigger Notice (defined below), plus (y) $2,000,000 for all such fees and expenses (the "Post Carve-Out Notice Trigger Cap") incurred from and after the delivery of a written notice provided by the Lender to the Debtors following the occurrence and during the continuance acceleration of the Obligations under the Loan Documents (the "Carve-Out Trigger Notice").  The Carve-Out shall exclude any fees and expenses incurred in connection with an Adverse Lender Challenge.<br><br>The Carve-Out shall be senior to all liens and claims securing the DIP Loans, and the superpriority claims, and any and all other liens or claims securing the DIP Facility.<br><br>*See* Interim Order ¶¶ 3.1.3, 3.3. |
|---|---|
| **Representations and Warranties, and Affirmative and Negative Covenants** | The DIP Facility documents shall contain customary and reasonable representations and warranties, affirmative covenants and negative covenants that shall be limited to:<br><br>*Representations and Warranties*<br><br>Organization; qualification; powers; authorization; enforceability; capital structure; title to properties; priority of liens; taxes; brokers; intellectual property; governmental approvals; compliance with laws; compliance with environmental laws; burdensome contracts; litigation; no defaults; ERISA; not a regulated entity; margin stock; OFAC; anti-corruption laws; commencement of bankruptcy cases.<br><br>*Affirmative Covenants*<br><br>Inspection; appraisals; financial and other reporting; notices; compliance with laws; taxes, insurance; licenses; anti-corruption laws; bankruptcy matters and documents.<br><br>*Negative Covenants*<br><br>Limitations on indebtedness, on liens, dispositions of assets, loans, prepayments of certain debt, fundamental changes, changes to organizational documents, accounting changes, restrictive agreements, conduct of business, affiliate transactions, plans, amendments to subordinated debt, and certain bankruptcy matters.<br><br>*See* DIP Agreement Sections 9 and 10. |
| **Financial Covenants** | None, including no covenant regarding minimum liquidity. |
| **DIP Stated Maturity Date:** | The stated maturity date with respect to the DIP Facility shall be the date which is 12 months following the initial funding of the DIP |

| | Facility. |
|---|---|
| | *See* DIP Agreement §§ 1.1 (definition of Term Loan Maturity Date) and 5.3.2(c). |
| **Optional Prepayments:** | Yes, on three (3) business days' notice. |
| | *See* DIP Agreement § 5.3.3. |
| **Mandatory Prepayments:** | Limited to prepayments upon any disposition of, or occurrence of a casualty event or condemnation causing a loss to, a Core Asset, in an amount equal to the net proceeds of such event. |
| | *See* DIP Agreement § 5.3.2. |
| **Events of Default:** | The DIP Facility documents shall contain customary and reasonable Events of Default that shall be limited to: the failure to pay any obligations under the DIP Loan Agreements when due; breach of representation or warranty; failure to comply with covenants (subject to a grace period for certain covenants); repudiation or invalidity (actual or asserted) of DIP Loan Documents or related liens; cross default; postpetition judgments; enjoined from conducting business; ERISA; certain bankruptcy related matters, including certain amendments to the Interim Order or Final Order in a manner adverse to the Lenders, the entry of an order authorizing Borrowers to incur additional indebtedness under Section 3.64(c) or (d) of the Bankruptcy Code, the entry of an order in the Chapter 11 Cases charging any of the collateral for the DIP Facility under Section 506(c) of the Bankruptcy Code against the Lenders, the entry of an order authorizing the use of cash collateral (except as contemplated by the DIP Loan Documents, the Interim Order or the Final Order), the appointment of a trustee or an examiner,  the entry of an order converting any Chapter 11 Case in respect of a Borrower to a case under chapter 7 of the Bankruptcy Code,;  the entry of an order granting relief from the automatic stay so as to allow a third party to proceed against the Collateral,  an order of the Bankruptcy Court granting, other than in respect of the DIP Facility and the Carve-Out or as otherwise permitted under the applicable DIP Loan Documents, any claim entitled to superpriority administrative expense claim status in the Cases pursuant to Section 364(c)(1) of the Bankruptcy Code pari passu with or senior to the claims of the DIP Lender under the DIP Facility, a plan of reorganization shall be filed in any of the Chapter 11 Cases  that does not provide for payment in full of the DIP Facility, any breach or default under the Interim Order or Final Order that would entitle the Lenders to exercise remedies, any demand, termination or expiration or other event that would permit or result in the expiration of any commitment, obligation or liability of Lenders to make loans to Borrowers. |
| | *See* Interim Order ¶ 4.1; DIP Agreement § 11.1(k). |
| **Expenses and** | Reasonable and customary. |

| | |
|---|---|
| **Indemnification:** | The Borrowers shall indemnify and hold harmless DIP Agent and each DIP Lender, their Affiliates and each of their respective officers, directors, employees, agents and attorneys (each, an "<u>Indemnitee</u>"), from and against any and all claims, liabilities, obligations, losses, damages, penalties, judgments, proceedings, interest, costs and expenses of any kind incurred by any Indemnitee or asserted against any Indemnitee by any Borrower or other person, in any way relating to (a) any loans, DIP Loan Documents, or the use thereof or transactions relating thereto, (b) any action taken or omitted in connection with any DIP Loan Documents, (c) the existence or perfection of any liens, or realization upon any Collateral, (d) exercise of any rights or remedies under any DIP Loan Documents or applicable law, or (e) failure by any Borrower to perform or observe any terms of any DIP Loan Document after taking into account all applicable notice, cure and/or grace periods, in each case including all costs and expenses relating to any investigation, litigation, arbitration or other proceeding, whether or not the applicable Indemnitee is a party thereto; <u>provided</u>, that no Borrower shall have any obligation to the extent that such Indemnified Liabilities arise from the gross negligence or willful misconduct of such Indemnitee, in each case, as determined by a court of competent jurisdiction in a final, nonappealable order.<br><br>DIP Agreement § 14.2. |
| **Exercise of Remedies** | The automatic stay provisions of section 362 of the Bankruptcy Code shall be automatically vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lender to exercise rights and remedies in accordance with the DIP Documents, upon the occurrence and during the continuation of any Event of Default and, in each case, after the provision by the DIP Agent to the Debtors of five (5) business days' prior written notice of such Event of Default.<br><br>*See* Interim Order ¶ 4; DIP Agreement § 11.2. |
| **Conditional Adequate Protection to Prepetition Secured Parties:** | Each holder of Subordinate Liens and Related Rights is entitled to and are by the Interim Order granted, pursuant to sections 361, 363(c)(2) and 363(e) of the Bankruptcy Code, adequate protection of their respective interests in their respective collateral, including the Prepetition Collateral and Cash Collateral, in an amount equal to the aggregate diminution in value of their respective interests in such collateral occurring on or after the Petition Date, including without limitation, any such diminution resulting from the use by the Debtors of the Cash Collateral and any other Prepetition Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "<u>Adequate Protection Obligations</u>"), as follows:<br><br>       (a)   <u>Adequate Protection Liens</u>:  continuing valid, binding, enforceable and perfected, liens and security interests in and on all of |

<table>
<tr>
<td></td>
<td>

the DIP Collateral to the extent of the Adequate Protection Obligations (together with any additional adequate protection liens, if any, authorized pursuant to further order of the Court in accordance with paragraph 3.1.2 of the Interim Order).  The Adequate Protection Liens granted by the Interim Order shall be silent, subordinated liens and the holders thereof shall have no rights of enforcement against collateral other than the right to receive proceeds of collateral in the order of priority set forth in the Interim Order.  The Adequate Protection Liens shall (a) be subordinate to: (1) the Carve-Out, (2) the Prior Liens, and (3) the DIP Liens;

(b)  507(b) Claims:  an allowed super-priority administrative expense claim subject to proof against each Debtor and its respective estate to the extent that the adequate protection afforded in the Interim Order for any Adequate Protection Obligations proves to be inadequate.  The 507(b) Claims, if any, under the Interim Order shall be subordinate to the Carve-Out and the Super-Priority Claim.  Except as expressly permitted in the Interim Order, no cost or expense of administration under any provision of the Bankruptcy Code (whether incurred in these Cases or any Successor Case, whether for adequate protection, the lack of, or failure to provide, adequate protection, or otherwise), shall be senior to, equal to, or pari passu with, any 507(b) Claim granted by the Interim Order.  The 507(b) Claim shall be payable from, and have recourse to, any and all property and assets of each Debtor (but only to proceeds of Avoidance Actions after entry of a final order approving the DIP Facility), subject to the Carve-Out and Super-Priority Claim, but not in any event to the proceeds of Avoidance Actions until entry of a Final Order; and

(c)  Adequate Protection Payments:  subject to the review procedures and limitations set forth herein, the Debtors shall promptly pay into a reserve fund all interest accruing on the obligations owing to the Noteholders' which shall be released to the Noteholders as their interests may appear when and to the extent that such Noteholders are found to have a valid, enforceable and unavoidable lien on the Collateral, to the extent of the diminution in value of their interest in the Collateral.

*See* Interim Order ¶ 3.1.2.

</td>
</tr>
<tr>
<td>**Sections 506(c) Waivers:**</td>
<td>

Upon entry of a Final Order, no costs or expenses of administration incurred in the Cases – incurred during the Interim Period – may be charged against Lender or the Collateral pursuant to sections 105, 326, 327, 330, 331, 503(b), 506(c), 507(a), or the "equity exception" in section 552(b), section 726, or any other provision of the Bankruptcy Code, or any similar principle of law without the prior written consent of Lender, and no such consent shall be implied from any other action, inaction or acquiescence by Lender.

*See* Interim Order ¶ 5.2.

</td>
</tr>
</table>

| Marshalling: | Upon entry of a Final Order, neither Lender nor the Collateral is subject to the doctrine of marshaling with respect to the Collateral.<br><br>*See* Interim Order ¶ 4.5. |
| --- | --- |
| **Lien on Avoidance Action Proceeds:** | Upon entry of the Final Order, the DIP Collateral, to which the DIP Liens have recourse, shall include the proceeds of causes of action under chapter 5 of the Bankruptcy Code.<br><br>*See* Interim Order ¶¶ 3.1.1 and 6.7. |
| **Governing Law** | California |
| **Submission to Jurisdiction** | Bankruptcy Court for the District of Delaware |

## LOCAL RULE 4001-2 DISCLOSURES

24.     The Debtors believe that the following financing terms are required to be highlighted pursuant to Local Rule 4001-2 and, as discussed herein, are necessary and justified in the context of, and the circumstances relating to, the Chapter 11 Cases.

- **Waiver of Section 506(c) Surcharge.** Local Rule 4001-2(a)(i)(C) requires disclosure of provisions that seek to waive, without notice, whatever rights the estate may have under section 506(c) of the Bankruptcy Code. Although the DIP Loan Documents provide for a waiver of rights under section 506(c) with respect to the DIP Agent and DIP Lender, the proposed waiver of the estates' rights will be effective only upon entry of the Final DIP Order. *See* Interim Order ¶ 5.2.

- **Liens on Avoidance Actions.** Local Rule 4001-2(a)(i)(D) requires disclosure of provisions that immediately grant the prepetition secured creditor liens on avoidance actions. Upon entry of the Final DIP Order, the DIP Collateral, to which the DIP Liens have recourse, shall include the proceeds of causes of action under chapter 5 of the Bankruptcy Code. *See* Interim Order ¶¶ 3.1.1 and 6.7.

- **Treatment of Professionals.** Local Rule 4001-2(a)(i)(F) requires disclosure of provisions that provide disparate treatment to professionals retained by the creditors' committee from professionals retained by the Debtors. The Carve-Out permits payments to professionals; provided that upon a Carve-Out Trigger Date, professional fees (other than success and transaction fees) are subject to a cap of $2,000,000, which is available on an unallocated basis to the Debtors' professionals and the Committee's professionals. *See* Interim Order ¶ 3.3.

- **Priming Liens.**  Local Rule 4001-2(a)(i)(G) requires disclosure of provisions that prime any secured liens without the consent of the lienholder.  The DIP Liens will prime the existing liens of the Subordinate Liens and Related Rights.  *See* Interim Order ¶¶3.1.1.  Further, to the extent that the Noteholders have valid, unavoidable liens, the DIP Liens will prime such liens.  The Funds have consented to the subordination of all of the Fund Liens.

- **Equities of the Case.** Local Rule 4001-2(a)(i)(H) requires disclosure of provisions that seek to effect the Court's power to consider the equities of the case under 11 USC § 552(b)(1). The Interim Order provides that subject to entry of the Final Order no costs or expenses of administration incurred in the Cases – incurred during the Interim Period – may be charged against Lender or the Collateral pursuant to an the "equity exception" in section 552(b) or any similar principle of law without the prior written consent of Lender, and no such consent shall be implied from any other action, inaction or acquiescence by Lender.

25.    The provisions of the DIP Documents as to which disclosure was required pursuant to Local Rule 4001-2 are all justified under the circumstances of the Chapter 11 Cases because the DIP Lender would not agree to the DIP Facility, and the Noteholders with interests in the Core Assets would not agree to the use of Cash Collateral or the priming of their liens.  As demonstrated below, the funds provided under the DIP Facility are needed to allow the Debtors to operate in chapter 11, and the DIP Facility presents the only financing available to the Debtors at this stage.  Given the benefits that the DIP Facility provides overall—most importantly, setting a foundation upon which the Debtors can pursue a value-maximizing restructuring under chapter 11—the Debtors submit that the inclusion of these highlighted provisions in the DIP Orders are appropriate under the facts and circumstances.

## BASIS FOR RELIEF REQUESTED

26.    As set forth above and in the First Day Declaration, the Debtors believe that the DIP Facility is the best financing available under the circumstances and will enable the Debtors to pursue a necessary deleveraging of their balance sheet.  The Debtors believe that access to

$25 million under the DIP Facility on an interim basis is necessary to avoid immediate and irreparable harm to their business, prospects and assets. For the reasons stated herein, the Debtors submit that they have satisfied the requirements to obtain postpetition financing on a superpriority, secured basis pursuant to section 364 of the Bankruptcy Code.

27.     Section 364 of the Bankruptcy Code distinguishes among (i) obtaining unsecured credit in the ordinary course of business, (ii) obtaining unsecured credit out of the ordinary course of business, and (iii) obtaining credit with specialized priority or with security.[23] If a debtor-in-possession cannot obtain sufficient postpetition credit on an unsecured basis, section 364(c) of the Bankruptcy Code permits a bankruptcy court to authorize a debtor to obtain credit or incur debt, repayment of which is (i) entitled to superpriority, administrative-expense status or (ii) is secured by a senior lien on unencumbered property or a junior lien on encumbered property, or both.[24] Furthermore, section 364(d) of the Bankruptcy Code permits a bankruptcy court to authorize a debtor to obtain postpetition credit secured by a senior or equal lien on encumbered property (*i.e.*, a priming lien) when a debtor is otherwise unable to obtain credit and the interests of existing lienholders are adequately protected.[25]

28.     As further discussed herein, the DIP Facility is secured solely by the Core Assets, which are listed on Schedule 7.3.1 to the DIP Agreement, through superpriority claims, security interests, and secured liens pursuant to section 364 of the Bankruptcy Code. The circumstances of the Chapter 11 Cases necessitate postpetition financing under sections 364(c) and (d) of the Bankruptcy Code, and the DIP Facility reflects the sound exercise of the Debtors' business judgment.

---

[23]     11 U.S.C. §§ 364(a)–(d).

[24]     11 U.S.C. §364(c).

[25]     11 U.S.C. § 364(d).

**I.      The Debtors Should Be Authorized to Obtain Postpetition Financing Under Section 364(c) of the Bankruptcy Code.**

29.     Section 364(c) financing is appropriate when the debtor in possession is unable to obtain unsecured credit allowable as an ordinary administrative claim.[26]  Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code.  Specifically, courts look to whether:

> i.      The debtor is unable to obtain unsecured credit under section 364(b), *i.e.*, by allowing a lender only an administrative claim;
>
> ii.     The credit transaction is necessary to preserve the assets of the estate; and
>
> iii.    The terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.[27]

30.     The Debtors propose to obtain the financing set forth in the DIP Agreement by providing, among other things, superpriority claims, security interests, and liens pursuant to sections 364(c)(1)–(3) and 364(d) of the Bankruptcy Code.  For the reasons set forth below, the Debtors submit that entry into the DIP Facility satisfies the three-part test to obtain such financing.

**A.      The Debtors Could Not Obtain Unsecured Financing.**

31.     To show that the credit required is not obtainable on an unsecured basis, a debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of sections 364(c) of the Bankruptcy Code.[28]  Thus, "[t]he statute imposes no duty to

---

[26]     *See In re LA Dodgers LLC*, 457 B.R. 308, 312 (Bankr. D. Del. 2011) (denying motion for authorization to enter into postpetition credit facility where debtors could not prove that they were unable to obtain unsecured credit allowable as an administrative expense); *see also In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37–39 (Bankr. S.D.N.Y. 1990) (stating that debtor must show that it has made a reasonable effort to seek other sources of financing under sections 364(a) and (b) of the Bankruptcy Code); *In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (stating that secured credit under section 364(c)(2) of the Bankruptcy Code is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained).

[27]     *See In re L.A. Dodgers*, 457 B.R. at 312; *see also In re Ames Dep't Stores*, 115 B.R. at 37–39.

[28]     *Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986).

seek credit from every possible lender before concluding that such credit is unavailable."[29]

Moreover, in circumstances where only a few lenders likely can or will extend the necessary

credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct

such an exhaustive search for financing."[30]  As set forth above and in the First Day Declaration,

unsecured postpetition financing was simply not available to the Debtors.  This is unsurprising

given, among other things, the substantial level of secured (and purportedly secured) debt the

Debtors already have, the competitive pressures the Debtors are facing in their industry, and that

the Debtors have just recently restructured their organization and operations and their historical

financial performance does not reflect the benefits the Debtors hope to achieve from those

measures.  Accordingly, the Debtors have satisfied the requirement of sections 364(c) of the

Bankruptcy Code that alternative credit on more favorable terms was unavailable to the Debtors.

### B.    Entry Into the DIP Facility Is Necessary to Preserve Assets of the Estates and Is In the Best Interests of Creditors.

32.    A debtor's decision to enter into a postpetition lending facility under section 364

of the Bankruptcy Code is governed by the business judgment standard.[31]  Courts grant a debtor

considerable deference in acting in accordance with its sound business judgment.[32]  Further, to

---

[29]    *Id.*, *see also In re Ames Dep't Stores*, 115 B.R. at 40 (holding that debtor made a reasonable effort to secure financing where it approached four lending institutions, was rejected by two, and selected the least onerous financing option from the remaining two lenders).

[30]    *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom. *Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); see also *In re Snowshoe*, 789 F.2d at 1088 (4th Cir. 1986) (demonstrating that credit was unavailable absent the senior lien by establishment of unsuccessful contact with other financial institutions in the geographic area); *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981) finding that two national banks refused to grant unsecured loans was sufficient to support conclusion that section 364 requirement was met).

[31]    *See In re Barbara K. Enters., Inc.*, 2008 WL 2439649 at *14 (Bankr. S.D.N.Y.  Mar. 5, 2009) (explaining that courts defer to a debtor's business judgment); *Ames Dep't Stores*, 115 B.R. at 38 (noting that financing decisions under section 364 of the Bankruptcy Code must reflect a debtor's business judgment).

[32]    *See, e.g., Barbara K. Enters.*, 2008 WL 2439649 at *14 (explaining that courts defer to a debtor's business judgment "so long as a request for financing does not 'leverage the bankruptcy process' and unfairly cede control of the reorganization to any party in interest").

determine whether the business judgment standard is met, a court is "required to examine whether a reasonable business person would make a similar decision under similar circumstances."[33]

33.     The Debtors' decision to enter into the DIP Facility is an exercise of their sound judgment that warrants approval by the Court.  The Debtors are at a point where they do not have adequate liquidity to fund their continuing operations.  The Debtors' management and professionals have reviewed their restructuring alternatives in detail over the past several months and have explored alternative sources of capital and financing as part of this process.  Following a fulsome solicitation to fourteen potential DIP lenders, the Debtors negotiated directly with four other lenders that submitted formal proposals to determine their interest in providing postpetition financing on alternative terms.  None of those efforts yielded any superior offer of financing.  Therefore, the Debtors' management took the steps necessary and exercised their best business judgment in negotiating the DIP Facility.  The DIP Facility will provide immediate access to capital, on terms that, collectively, are the best and most favorable terms available to the Debtors.

34.     Without access to the DIP Facility, the Debtors could experience a liquidity shortfall and would be deprived of the capital necessary to operate their businesses.  The DIP Facility will provide the funding necessary to allow the Debtors to, among other things, maintain their businesses in the ordinary course and successfully implement a restructuring.  The DIP Facility also will enhance the Debtors' ability to minimize disruption to their businesses and instill confidence in their various creditor constituencies, including customers, employees, landlords, vendors, and service providers.  Moreover, the DIP Lender has indicated its

---

[33]     *In re Dura Auto. Sys., Inc.*, No. 06-11202 (KJC), 2007 Bankr. LEXIS 2764, at *272 (Bankr. D. Del. Aug. 15, 2007) (quoting *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006)).

willingness to consider providing the Debtors with an option to convert any principal and interest owing under the DIP Facility into exit financing upon confirmation of an acceptable chapter 11 plan and the Debtors' successful emergence from chapter 11, provided that certain conditions precedent are satisfied (including confirmation that loan-to-value ratios and market conditions are in line with those existing at the time of the DIP Facility closing). With the DIP Facility, the Debtors will be in a position to continue operations, thereby preserving the value of their assets for the benefit of all creditors, and will be provided an opportunity to complete their operational and balance-sheet restructuring and move forward as a profitable business.

### C.    The Terms of the DIP Facility Are Fair and Reasonable Under the Circumstances.

35.    In determining whether the terms of postpetition financing are fair and reasonable, courts consider the relative circumstances of both the debtor and the potential lender.[34] Judged from that perspective, the terms of the DIP Facility are fair and reasonable.

36.    The DIP Facility does not prime any known valid, unavoidable liens held by prepetition lenders, other than the Funds and Intercompany Claims, if any.[35] While the DIP Facility will prime liens held by the Funds, as the Funds have recognized by consenting to being primed, the provision of the facility in and of itself provides adequate protection to the Funds because only through priming can the Funds gain access to the substantial liquidity necessary to preserve and enhance the value of the properties that serve as collateral for the Funds' primary assets. The Debtors need not, therefore, satisfy the more stringent standard for obtaining

---

[34]    *See In re Farmland*, 294 B.R. at 886–89; *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co., Inc.)*, 65 B.R. 358, 364–65 n.7 (W.D. Mich. 1986) (recognizing a debtor may have to enter into "hard" bargains to acquire funds for its reorganization).

[35]    As further described in Section I-D, *infra*, while the Debtors believe that the Noteholders' liens are avoidable and intend to commence adversary proceedings seeking their avoidance, the Debtors have agreed to provide the Noteholders with conditional adequate protection to the extent of any diminution in the value of their collateral in the event that their liens are found to be unavoidable.

authority to grant a priming lien.  Under section 364(d)(1) of the Bankruptcy Code, the Debtors

were obligated to obtain credit not secured by a priming lien if such credit was available;

however, such credit was not available because the Debtors' primary assets—their real estate

holdings—were subject to pre-petition liens.  While the DIP Facility will prime the Subordinate

Liens and Related Rights, if there are any, the provision of the facility in and of itself provides

adequate protection by allowing the Debtors to continue to operate.

37.    The DIP Facility, along with the coupled consent to use Cash Collateral, provides

the Debtors with sufficient liquidity to continue their operations in the near term while they seek

to substantially reduce their debt through a chapter 11 plan.  The financial terms of the DIP

Facility are consistent with market terms for such financing under the current economic

environment and the Debtors' recent and projected financial performance.  While the Debtors

received and considered proposals from four other potential lenders, in the Debtors' business

judgment the proposal from Hankey was the best offer based on its superior economics,

favorable terms, Hankey's strong background in the high-end residential real estate market and

familiarity with the Core Assets, and Hankey's willingness to consider providing exit financing.

In fact, there were no other financing proposals available to the Debtors with superior economic

terms.  Further, the non-economic terms of the DIP Facility and suitability of Hankey as a DIP

Lender make the DIP Facility superior to any other facility with comparable terms—particularly

because the DIP Lender has indicated it is willing to consider providing exit financing.  After

thorough analysis by the Debtors and their advisors, they have concluded that the terms of the

DIP Facility are reasonable and appropriate under the circumstances.

38.    Likewise, the DIP Facility does not directly or indirectly deprive the Debtors'

estates or other parties in interest of possible rights and powers by restricting the services for

which professionals may be paid in the Chapter 11 Cases.  Instead, the DIP Facility subjects the

security interests and administrative expense claims granted to the DIP Lender to the Carve-Out

for certain administrative and professional fees.  Carve-outs for professional fees have been

found to be reasonable and necessary to ensure that a debtor's estate is adequately assisted by

counsel and other professionals.[36]

39.     For these reasons, in the Debtors' prudent business judgment, the terms of the

DIP Facility are fair and reasonable in the circumstances of the Chapter 11 Cases.

> **D.     The Noteholders' Liens Are Avoidable, and the
> Noteholders Should Be Granted Conditional Adequate
> Protection Contingent on the Validity of Their Liens.**

40.     While the Noteholders were granted security interests in the Third-Party

Collateral, the Noteholders have not perfected any security interests in the Third-Party Collateral.

Specifically, no Noteholder has taken possession of any of the instruments which evidence the

indebtedness in which such security interests were granted. Further, on information and belief

and based on an investigation, no Noteholder has filed a UCC-1 financing statement with respect

to any of the collateral securing the Notes in Delaware, the jurisdiction of the Funds.  Similarly,

none of the Lender Notes has been delivered to any of the Noteholders nor endorsed to and in

favor of a Noteholder as required by Article 3 of the UCC to transfer and assign an "instrument".

Further, under Delaware law, the Assignments are insufficient to perfect the Noteholders'

interests in the Third-Party Collateral.  Accordingly, the Noteholders' purported liens in the

Third-Party Collateral are avoidable.  The Debtors intend to commence adversary proceedings

(the "Noteholder Avoidance Actions") seeking relief to avoid such liens.

---

[36]     *See In re Ames*, 115 B.R. at 38.

41.     Although the Debtors believe that they will prevail in the Noteholder Avoidance Actions, the Debtors recognize that in the event that any Noteholder's purported lien is found to be valid, unavoidable, and enforceable, such Noteholders would be entitled to adequate protection to the extent that their interest in the Third-Party Collateral is encumbered or subject to use as cash collateral.  Further, the Noteholder Avoidance Actions will take a significant amount of time to litigate in the ordinary course—particularly because hundreds of such actions may have to be commenced.

42.     Accordingly, the Debtors submit that the most appropriate way to ensure the protection of the Noteholders' potential interests in the Third-Party Collateral is to reserve potential interest payments and grant the Noteholders conditional adequate protection in the form of replacement liens and claims to the extent of any diminution in the value of their interest in the Third-Party Collateral because of the priming effect of DIP Liens created on any such collateral, if and to the extent such primed liens are found to be valid, unavoidable, and enforceable.  Specifically, the Debtors propose to provide replacement liens on the Owlwood Estate property located in Los Angeles, California (the "Adequate Protection Property"), which, based on the valuation analysis further described in Section II-B-(i) of the First Day Declaration, has a total equity value exceeding any potential diminution in the value of the Noteholders' interests, if any, in the properties.  The conditional replacement liens on the Adequate Protection Property will ensure that the Noteholders' security interests in their collateral, if any are valid and perfected, are adequately protected against any diminution in value.  Further, to the extent that the Noteholders' liens are avoided through the Noteholder Avoidance Actions, such Noteholders may seek to assert unsecured claims under section 502(h) of the Bankruptcy Code against the estate.

## II.     The Debtors Should Be Authorized to Use Cash Collateral.

43.     Section 363 of the Bankruptcy Code governs the Debtors' use of property of the

estates.  Section 363(c)(1) of the Bankruptcy Code provides that:

> If the business of the debtor is authorized to be operated under
> Section . . . 1108 . . . of this title and unless the court orders
> otherwise, the trustee may enter into transactions, including the
> sale or lease of property of the estate, in the ordinary course of
> business, without notice or a hearing, and may use property of the
> estate in the ordinary course of business without notice or a
> hearing.[37]

Section 363(c)(2) of the Bankruptcy Code, however, provides an exception with respect to "cash

collateral" to the general grant of authority to use property of the estate in the ordinary course set

forth in section 363 of the Bankruptcy Code.  Specifically, a trustee or debtor-in-possession may

not use, sell, or lease "cash collateral" under subsection (c)(1) unless:

> (A)     each entity that has an interest in such collateral consents;
> or
>
> (B)     the court, after notice and a hearing, authorizes such use,
> sale, or lease in accordance with the provisions of this
> section.[38]

44.     During the ordinary course of operations, the Debtors generate cash from sale of

residential real properties by the PropCos, which results in the repayment of the mortgages on

such properties.  As of the Petition Date, the Debtors's cash flow projections anticipate that the

Debtors will use a combination of cash on hand, proceeds of the DIP Facility, and proceeds of

future property sales to fund their operations and administer the Chapter 11 Cases while they

pursue prompt confirmation of a chapter 11 plan.

---

[37]     11 U.S.C. § 363(c)(1).

[38]     11 U.S.C. § 363(c)(2).

45.     The Funds have consented to the use of their cash collateral.  The only parties with an arguable interest in the Cash Collateral who have not consented to its use are the Noteholders; however, they do not have even an arguable interest in most of the Debtors' cash. As of the petition date, the debtors held $12 million in cash in their general proceeds account held by Woodbridge Group of Companies, LLC.  These funds are commingled and result from a combination of sources including operations, third party investments, and sales of real property assets.  To the extent the sale of real property assets resulted in the repayment of notes that were collateral for obligations to the Noteholders, based on a review of the company's books and records, it appears such Noteholders released their interests, were repaid, or consented to Woodbridge retaining these funds.  Further, any such funds have been so commingled with other funds that they could not constitute identifiable cash proceeds of the noteholders' collateral.

46.     Notwithstanding the foregoing, pending further resolution of the Noteholders' interests in the proceeds of repaid notes resulting from the sale of real property, the Debtors will segregate proceeds of repayment of such notes in order to adequately protect the Noteholders' interests, if any.[39] While the Debtors dispute the enforceability of the Noteholders' purported liens on the Third-Party Collateral, and will seek to avoid such liens through the Noteholder Avoidance Actions, the Debtors are nonetheless adequately protecting the Noteholders to the extent that their purported liens are found to be valid, unavoidable, and enforceable.  In addition, other than any parties filing written objections or appearing the first day hearing, all of the Noteholders have notice of this Motion and should be deemed to consent to the use of their collateral as provided herein.  Furthermore, only through the use of the cash collateral as

---

[39]     For the avoidance of doubt, the Debtors are not seeking authority to use any proceeds of any assets held by the Third-Party Funding PropCos in which the Third-Party Funders have a security interest.

described in this Motion can the value of the Debtors' assets be preserved to provide maximum

recovery for all creditors, including the Noteholders.

47.      As the DIP Facility is contingent upon the Debtors obtaining approval to use Cash

Collateral, it is imperative that the Debtors obtain authority to use Cash Collateral subject to the

terms of this Motion.  Accordingly, to obtain the financing under the DIP Facility and to avoid

immediate and irreparable harm to the Debtors' business operations and their estates, the Debtors

have an immediate need for authority to use Cash Collateral.

48.      The Debtors submit that, under the circumstances here, their request to use Cash

Collateral should be approved.  The only parties with an arguable material interest in the Cash

Collateral—the Noteholders—will be provided with adequate protection as described above.

## III.     The DIP Lender Should Be Granted Protection from Competing Interests or Claims Regarding the DIP Collateral from Third Parties and Governmental Entities

49.      The proposed DIP Order includes a provision protecting the DIP Liens against

any not-yet-asserted competing liens or claims of third parties, including any that may be

asserted by government entities..  Specifically, Section 5.3 of the Interim DIP Order provides:

> Liens Senior to Certain Other Liens. Without prejudice to seeking
> a Lien pursuant to section 364(d) in connection with a final order
> on the Motion, the Liens shall not be subject or subordinate to
> (i) any lien or security interest that is avoided and preserved for the
> benefit of the Debtors and their estates under section 551 of the
> Bankruptcy Code or (ii) any liens arising after the Petition Date
> including, without limitation, any liens or security interests granted
> in favor of any federal, state, municipal or other governmental unit,
> commission, board or court for any liability of the Debtors. For the
> avoidance of doubt, the Liens and the Superpriority Claims, in
> each case, in respect of all Obligations, shall be neither subject nor
> subordinate to disgorgement or to any other rights, claims or
> remedies asserted or assertable by the Securities and Exchange
> Commission or any other governmental unit, person or entity.

Interim DIP Order § 5.3.

50.     In the bankruptcy case of Adelphia Communications Corp. ("Adelphia"), a substantially similar provision was included in the order authorizing the debtors to obtain $1.5 billion of debtor-in-possession financing.  Adelphia filed for chapter 11 protection on June 25, 2002, approximately three months after disclosing that it was jointly and severally liable for over $2 billion of borrowings attributed to certain of its managed entities under certain credit facilities, which amounts had not been reflected as indebtedness on its consolidated financial statements.  The disclosures led to further disclosures of improprieties on behalf of the Rigas family and related entities, which held controlling interests in Adelphia.  As a result, the SEC and Department of Justice initiated investigations and proceedings against both Adelphia and members of the Rigas family. The SEC initiated an enforcement proceeding in July 2002.  The debtors' motion seeking authorization to obtain debtor-in-possession financing was approved on a final basis on August 23, 2002.  That order included the following provision:

> (d) Liens Senior to Certain Other Liens. The DIP Liens, the Intercompany Liens (as defined below) and, subject to further order of the Court, the Adequate Protection Liens (as defined below) shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date (other than Relation Back Liens or any valid, perfected and unavoidable liens that are expressly permitted under the DIP Credit Agreement to exist and be senior to the liens securing the Financing (the "DIP Permitted Liens")) including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors. For the avoidance of doubt, the DIP Liens and the Superpriority Claims, in each case, in respect of all DIP Obligations, shall not be subject nor subordinate to disgorgement or to any other rights, claims or remedies asserted or assertable by the Securities and Exchange Commission or any other governmental unit, person or entity.

*In re Adelphia Commcn's Corp.*, 02-41729 (SHL) (Bankr. S.D.N.Y. Aug. 23, 2002), Dkt. No.

525.

51.     As further described in paragraphs 16 to 17, *supra*, while the Debtors have been

the subject of two discovery-related disputes in which the SEC has described its ongoing

investigations of certain potential securities law violations, no enforcement actions have been

commenced or otherwise asserted by the SEC against the Debtors or any Woodbridge Group

entities.  The Debtors intend to actively cooperate with these investigations and believe that the

concerns will be adequately addressed by the Debtors' pre-petition internal restructuring in

connection with its reorganization efforts, through which Woodbridge management in charge of

the enterprise before the commencement of these cases was removed from control and replaced

with independent management and a chief restructuring officer.  Further, the Debtors believe that

their plan to reorganize under chapter 11 of the Bankruptcy Code will maximize recoveries for

all of their stakeholders, including the Noteholders and the Unitholders.

52.     Like the debtors in Adelphia, the Debtors have removed pre-petition management

from control and have vested management authority in independent managers not connected to

any potential pre-petition misconduct.  Specifically, as further described in the First Day

Declaration, Robert Shapiro, in his capacity as trustee of RS Protection Trust, the former sole

member of many of the Woodbridge Group entities, caused these entities to execute a consent

removing RS Protection Trust from its control position and vesting authority in an independent

manager, Beilinson Advisory Group, LLC, which has retained Lawrence Perkins as its chief

restructuring officer.  Having commenced these Chapter 11 Cases, the Debtors are committed to

cooperating to ensure these issues are fully resolved, and to pursuing a reorganization that is in

the best interests of, and maximizes recoveries for, all of the Debtors' stakeholders.

53.     In short, nothing relating to the these allegations should affect the priority or extent of the DIP Lender's claims or the DIP Liens.  Accordingly, the Court should approve the proposed language in the DIP order confirming the superiority of the DIP Liens to any liens arising after the Petition Date or to any other rights, claims, or remedies asserted or assertable by third parties or any other governmental unit, person, or entity.

## IV.     Interim Approval Should Be Granted.

54.     Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to obtain credit pursuant to section 364 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion.[40]  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to the borrowers' estates.[41]

55.     The Debtors request that the Court hold and conduct an interim hearing immediately to consider entry of the proposed Interim Order authorizing the Debtors from and after the entry of the Interim Order until the Final Hearing to borrow up to $25 million under the DIP Facility as provided therein (the full $100 million of the DIP Facility to be funded into the Funding Account upon entry of the Interim Order, but the incremental $75 million amount only available to the Debtor upon entry of a final order approving the DIP Facility).  As set forth herein, this relief requested in the Interim Order will provide the Debtors with sufficient liquidity to operate their businesses in a manner that will permit them to preserve and maximize value, and allow them pursue a necessary deleveraging of their balance sheet, including through the prompt confirmation of a chapter 11 plan.  Under these circumstances and in light of the risk of

---

[40]     *See* Fed. R. Bankr. P. 4001(b)(2), (c)(2).

[41]     *See id.*; *see also* Local Rule 4001-2(b).

immediate and irreparable harm and prejudice to their estates and all parties in interest, the

Debtors submit that interim relief is warranted.

## FINAL HEARING

56.     In the case of any conflict between the Motion and the Interim Order, the

Interim Order shall control.

57.     The Debtors further respectfully request that the Court schedule the Final

Hearing and authorize it to serve a copy of the signed Interim Order, which fixes the time and

date for the filing of objections, by first-class mail upon:  (i) the Office of the United States

Trustee for the District of Delaware; (ii) the United States Securities and Exchange Commission;

(iii) the Office of the United States Attorney General for the District of Delaware; (iv) the

Internal Revenue Service; (v) the DIP Lender and counsel thereto; (vi) the Debtors' cash

management banks; and (vii) those creditors holding the thirty (30) largest unsecured claims

against the Debtors' estates (on a consolidated basis) (collectively, the "Notice Parties").  The

Debtors request that the Court consider such notice of the Final Hearing to be sufficient notice

under Bankruptcy Rule 4001 and Local Rule 2002-1.

## NOTICE

58.     The Debtors have provided notice of this Motion to the Notice Parties.

Notice of this Motion and any order entered on this Motion will be served as required by Local

Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no

other or further notice is necessary.

*[Remainder of page intentionally left blank]*

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court (i) enter the Interim Order granting the relief requested herein, (ii) schedule a Final Hearing, (iii) enter the Final DIP Order following a Final Hearing, and (iv) grant such other relief as is just and proper.

Dated:    Wilmington, Delaware    YOUNG CONAWAY STARGATT & TAYLOR, LLP
        December 4, 2017

*/s/ Sean M. Beach*
Sean M. Beach (No. 4070)
Edmon L. Morton (No. 3856)
Ian J. Bambrick (No. 5455)
Allison S. Mielke (No. 5934)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:    (302) 571-6600
Fax:    (302) 571-1253
Email:  sbeach@ycst.com
       emorton@ycst.com
       ibambrick@ycst.com
       amielke@ycst.com

-and-

GIBSON, DUNN & CRUTCHER LLP
Samuel A. Newman (CA No. 217042)
Oscar Garza (CA No. 149790)
Daniel B. Denny (CA No. 238175)
333 South Grand Avenue
Los Angeles, California 90071
Email:  snewman@gibsondunn.com
       ogarza@gibsondunn.com
       ddenny@gibsondunn.com

-and-

J. Eric Wise (NY No. 3000957)
Matthew K. Kelsey (NY No. 4250296)
Matthew P. Porcelli (NY No. 5218979)
200 Park Avenue
New York, New York 10166
Tel:    (212) 351-4000
Fax:    (212) 351-4035
Email:  ewise@gibsondunn.com
       mkelsey@gibsondunn.com
       mporcelli@gibsondunn.com

*Proposed Counsel for the Debtors*
*and Debtors in Possession*

**EXHIBIT 1**

**INTERIM ORDER**

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: | Cases No. 17-12560 (KJC) |
| WOODBRIDGE GROUP OF COMPANIES, LLC, et al., | Chapter 11 |
| Debtors and Debtors in Possession. | |

**INTERIM ORDER ON EMERGENCY MOTION FOR:  ENTRY OF INTERIM ORDER (I) PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, AND 552 AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION SECURED FINANCING, (B) USE CASH COLLATERAL, (C) GRANT ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; (II) MODIFYING THE AUTOMATIC STAY; (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND 4001(c); AND (IV) GRANTING RELATED RELIEF**

On December 5, 2017, a hearing (the "Interim Hearing") was held before this Court, the Honorable Kevin J. Carey presiding, regarding the Emergency Motion for:  Entry of Interim and Final Orders (1) Approving Post-Petition Financing and Related Liens and Adequate Protection; (2) Approving Cash Collateral Use and Related Liens and Adequate Protection, and (3) Granting Related Relief (the "Motion")[1] filed by Woodbridge Group of Companies, LLC and its affiliates, as debtors and debtors in possession (collectively, "Debtors")[2] on behalf of their respective bankruptcy estates (the "Estates") in their respective bankruptcy cases (the "Cases").[3]

---

[1] Defined terms herein are used with the same meaning as defined in the Motion unless otherwise noted.

[2] Due to the large number of Debtors in the cases, the identity of Debtors in these chapter 11 Cases, along with the last four digits of each Debtors's federal tax identification number, is set forth on the website of Debtors' proposed claims and noticing agent at [website address].

[3] Concurrently with the filing of the Motion Debtors filed their motion seeking joint administration of the Cases.

11068496.6

Upon the record made by Debtors before and at the Interim Hearing, including the Motion and the declarations, pleadings, and papers filed with the Court relating to the Cases, and good and sufficient cause appearing therefor,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACTS AND CONCLUSIONS OF LAW:

A.    <u>Procedural Findings</u>.

1.    <u>Petition</u>.  On December 4, 2017 (the "<u>Petition Date</u>"), Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>")[4] commencing the Cases.  Debtors continue to operate their businesses and manage their assets as "debtors in possession" pursuant to sections 1107(a) and 1108.

2.    <u>Jurisdiction, Venue</u>.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    <u>Committee</u>.  No official committees of unsecured creditors (upon the appointment thereof, the "<u>Committee</u>"), as provided for under section 1102, has been appointed in the Cases as of the date of the Interim Hearing.

4.    <u>Notice</u>.  The notice of the Motion and the Interim Hearing has been provided by Debtors to certain parties-in-interest, including: (a) the Office of the United States Trustee for the District of Delaware; (b) the United States Securities and Exchange Commission; (c) the Office of the United States Attorney General for the District of Delaware; (d) the Internal Revenue Service; (e) counsel to Hankey Capital, LLC as agent and lender ("<u>Lender</u>"); (f) Debtors' cash management banks; (g) those creditors holding the thirty (30) largest unsecured claims against Debtors' estates (on a consolidated basis); and (h) all parties who have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Notice</u>

---

[4] Statutory references herein are to the Bankruptcy Code unless otherwise noted.

Parties"). Under the exigent circumstances, such notice constitutes sufficient and appropriate notice thereof.

      B.    <u>Findings Supporting the Postpetition Financing</u>.

      1.    <u>Postpetition Financing</u>. Debtors have requested from Lender loans, advances, and other financial accommodations on and after the Petition Date (the "<u>Postpetition Financing</u>") upon the findings of fact and conclusions of law made herein and upon the terms and conditions of the Loan and Security Agreement dated as of December __, 2017, between Lender and certain specified Debtors (the "<u>Obligors</u>") on behalf of their Estates, substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Loan Agreement</u>," and collectively with this Order and other documents related to and in furtherance of the Loan Agreement and the Postpetition Financing, the "<u>Loan Documents</u>");

      2.    <u>Need for Postpetition Financing</u>. Debtors have an immediate need to obtain the funds to be provided by the Postpetition Financing pursuant to the Loan Documents in order to, among other tasks, permit the orderly continuation of the operation of Debtors' businesses, minimize the disruption of its business operations, and manage and preserve the assets of the Estates, the absence of which would immediately and irreparably harm Debtors, the Estates, and their stakeholders;

      3.    <u>No Credit Available on Other Terms</u>. Debtors believe they are unable to obtain financing on more favorable terms to the Estates from sources other than as contemplated under the Postpetition Financing pursuant to, and for the purposes set forth in, this Order and the Loan Documents and believe they are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. Debtors also believe they are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code without Debtors granting the Liens (as defined in paragraph 3.1.1 below) and the Superpriority Claims (as defined in paragraph 3.2 below), in each case, on the terms and conditions set forth in this Order and the Loan Documents.

3

31494865v4

4.    <u>Business Judgment and Good Faith Pursuant to Section 364(e)</u>.  The terms of the Postpetition Financing pursuant to the Loan Documents are fair, just, and reasonable under the circumstances, are ordinary and appropriate for secured financing to a debtor in possession on behalf of its bankruptcy estate, are supported by reasonably equivalent value and consideration, reflect Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and have been negotiated in good faith and at arms' length by and between Lender and Debtors.  Therefore, the Postpetition Financing and credit extended under the terms of the Loan Documents are extended in good faith by Lender as that term is used in section 364(e).

5.    <u>Lender Adequate Protection</u>.  The proceeds of the Collateral (defined herein) (the "<u>Cash Collateral</u>") constitutes "cash collateral" of Lender within the meaning of section 363(a).  Lender is entitled to adequate protection of its interests in the Collateral pursuant to section 361 in connection with or as a consequence of Debtors' use of the Cash Collateral, the Postpetition Financing, and the imposition of the automatic stay.  The adequate protection in favor of Lender as set forth in this Order (the "<u>Adequate Protection</u>") and the use of the Cash Collateral as authorized by this Order are fair and reasonable; provided, however, nothing herein is an acknowledgment or recognition that the Adequate Protection is in fact sufficient, or limits Lender's rights to seek additional or different adequate protection or to contest whether the Adequate Protection constitutes sufficient "adequate protection" within the meaning of section 361.

6.    <u>Consent to Priming</u>.  As of the Petition Date, liens of record exist on the Collateral in favor of certain Woodridge affiliates who are also Debtors in the Cases identified on <u>Exhibit B</u> (the "<u>Funds</u>"). All of the Funds have consented to the priming of their interests in the Collateral by the DIP Facility.  While the DIP Facility will prime liens held by the Funds, the Funds have recognized that the provision of the facility in and of itself provides adequate protection to the Funds because only through priming can the Funds gain access to the substantial liquidity necessary to preserve and enhance the value of the properties that serve as

4

collateral for the Funds' primary assets.  Debtors need not, therefore, satisfy the more stringent standard for obtaining authority to grant a priming lien with respect to the liens held by the Funds.

       7.    <u>Priming Lien Adequate Protection.</u>  Woodbridge has raised funds for its operations by certain of the Woodbridge affiliates borrowing funds in connection with promissory notes from individual investors set forth on <u>Exhibit C</u> hereto (the "<u>Noteholders</u>"). Debtors are making available "conditional" adequate protection pursuant to sections 361 and 364(d) of the Bankruptcy Code to the Noteholders, who will receive "conditional" liens and claims on one of Debtors' non-Collateral properties described on <u>Exhibit D</u> (the "<u>Adequate Protection Property</u>" hereto to the extent of any diminution of any valid, unavoidable interests such Noteholders may have in the Collateral as of the Petition Date.  Debtors are also reserving funds sufficient to pay interest on any obligations owing to such Noteholders to the extent the same are found to have valid, enforceable and unavoidable liens on Collateral as of the Petition Date entitled to payment of interest.

      C.    <u>Good Cause.</u>  The Postpetition Financing and relief and rights granted or acknowledged pursuant to this Order are necessary, essential, and appropriate and are in the best interest of and will benefit Debtors, their creditors, and the Estates as its implementation will, among other effects, provide Debtors on behalf of the Estates with the necessary liquidity to minimize disruption to Debtors' businesses and on-going operations, preserve and maximize the value of the Estates for the benefit of all creditors thereof, and avoid immediate irreparable harm to Debtors, their creditors, businesses, employees, and the Estates.

      D.    <u>Immediate Entry.</u>  Based upon the evidence presented in the declarations filed in the Cases and on the record, sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rules 4001(c)(2).

      NOW, THEREFORE, upon the record made by Debtors before and at the Interim Hearing, including the Motion and the pleadings and papers filed with the Court, having made

5

the findings of fact and conclusions of law as set forth herein, and after due consideration and good and sufficient cause appearing therefore;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

Section 1.        Authorization of Postpetition Financing.Motion Granted.  The Motion is granted on an interim basis pursuant to sections 364, 363, and 362, and Bankruptcy Rule 4001(c)(2), on the terms and conditions of this Order.Authorization to Borrow.  Obligors are authorized and empowered to borrow under the Postpetition Financing and jointly and severally incur obligations to Lender on or after the Petition Date (the "Obligations") pursuant to, and subject to the additional limitations of, the terms and conditions of the Loan Documents and this Order, in the maximum amount of $25,000,000 for the period commencing on the Petition Date through the date of a further order on the Motion (the "Interim Period").

1.3    Loan Documents.

1.3.1    Authorization.  Debtors are authorized and empowered to enter into, execute, deliver, perform, and comply with all of the terms, conditions, and covenants of the Loan Documents and make all the representations therein.

1.3.2    Approval.  The Loan Documents, and the terms, conditions, covenants, and provisions therein, are approved and constitute sufficient and conclusive evidence of the Postpetition Financing, the Obligations (including the Postpetition Charges (defined herein)), the Liens, and the other rights, interests, claims, and remedies afforded to or for the benefit of Lender pursuant to the Loan Documents.

1.3.3    Amendments.  Lender and Obligors may amend, modify, supplement, or waive any term, condition, covenant, or provision of any Loan Document (a "Loan Document Modification"), which Loan Document Modification is deemed to be approved by this Order, as follows:  (a) with respect to a Loan Document Modification that is considered non-material or technical in nature by Debtors and Lender in their business judgment ("Non-Material Loan Document Modification"), by further agreement of Lender and Debtors without advance notice, motion, or further order; provided however, that Debtors shall file a notice of the

Non-Material Loan Document Modification promptly after execution thereof, and (b) with respect to a Loan Document Modification that is not a Non-Material Loan Document Modification, or other modifications to and under the DIP Documents for which no objection is made as set forth in the proviso to this paragraph; provided, however, that a copy of any such amendment, waiver, consent, or other modification shall be filed by Debtors with this Court and served by Debtors on the U.S. Trustee and the respective counsel to the Committee, if and when appointed, each of whom shall have five (5) business days from the date of such notice within which to object in writing to any such amendment, waiver, consent or modification.  If any party timely objects to any proposed amendment, waiver, consent or modification, whether styled as material or as a Non-Material Loan Document Modification, then such amendment, waiver, consent or modification shall only be permitted pursuant to an order of this Court.

   1.4 <u>Obligations</u>.  The Loan Documents constitute and evidence the Obligations, which obligations are binding and enforceable against (a) Obligors, and their successors and assigns, trustees, and representatives, (b) the Estates, and any successors or representatives thereof (including without limitation a bankruptcy trustee), (c) their creditors, and each of their successors and assigns, (d) guarantors, and (e) the Committee (if any), (d) the Funds, and (e) the Noteholders.

   1.5 <u>Application of Proceeds</u>.  Lender may apply all proceeds of the Collateral, including Cash Collateral, and all other payments and consideration delivered or received by Lender in accordance with the Loan Documents to be applied by Lender to pay and satisfy Obligations.

   1.6 <u>Payments</u>.  Obligors are authorized and required to make all payments and transfers of interests in property to Lender as provided, permitted, or required under the Loan Documents (including without limitation the transfer and deposit of funds, payments, and proceeds of the Collateral (as defined in the Loan Agreement) into a lock box or other deposit account if requested by Lender) or as otherwise required pursuant to the Loan Documents. Lender is entitled to advance, make payment, and deduct for any fees, costs, expenses, and other

charges as may be recoverable or reimbursable to Lender, or as otherwise provided in the Loan Documents (the "Postpetition Charges"), including without limitation the immediate payment and reimbursement to Lender of all present and future attorneys' fees, professionals' fees, and other fees, costs, and expenses paid or incurred by Lender, all of which constitute part of the principal amount of the Obligations.

    1.7  Use of Postpetition Financing and Collateral.

      1.7.1  No Use for Adverse Lender Challenges.  Neither loans, advances, or other proceeds of the Postpetition Financing nor the Collateral, including Cash Collateral, can be used by Debtors or any party for any purpose relating to or in furtherance of an Adverse Lender Challenge (as defined in the Loan Agreement), including without limitation the payment of fees and costs incurred by professionals retained by Debtors or the Committee (if any).

    Section 2.  Authorization and Conditions to Use Cash Collateral.

    2.1  Authorization to Use Cash Collateral.  Debtors are authorized to use Cash Collateral during the Interim Period to satisfy the Obligations as required or provided under the Loan Documents and this Order.

    2.2  Procedure for Use of Cash Collateral.  All Cash Collateral is to be deposited by Debtors in a segregated debtor in possession account (the "Cash Collateral Account"), from which such Cash Collateral is to be transferred to Lender  pursuant to the Loan Documents.  The Cash Collateral Account is encumbered by and subject to the Liens in favor of Lender.

    2.3  Reserve.  In addition, although Debtors assert that the Noteholders do not have a direct interest in the Collateral or claims against Obligors, or that to the extent that the Noteholders have such an interest, such interest of the Noteholders is avoidable, pending notice to the Noteholders and further order of this Court, Debtors shall reserve in a segregated account the proceeds of payment of the Noteholders' notes and cash constituting adequate protection payments to the Noteholders otherwise provided pursuant to section 3.1.2.4 of this Order.

Section 3.        Liens; Superpriority Expense Status; Adequate Protection.

      3.1    Liens.

         3.1.1    Liens.  Subject only to the Carve Out (defined below), Lender is granted a lien on and security interest in all Collateral (as defined in the Loan Agreement), including Collateral that is property of the Estates (the "Collateral"): (a) pursuant to Section 364(d)(1) of the Bankruptcy Code, a perfected first priority priming security interest and lien on the Collateral that primes and is senior to any and all liens, interests, claims, and rights in favor of the Funds (the "Funds Liens") and the Noteholders (the "Noteholders Liens"), whether such Funds Liens and Noteholder Liens arise or exist on or after the Petition Date and however arising or existing, which Fund Liens and Noteholders Liens are junior in priority and subordinate in all respects to the Liens (defined herein); (b) pursuant to Section 364(c)(2) of the Bankruptcy Code, a perfected first and senior priority security interest and lien on the Collateral to the extent such Collateral is not subject to valid, perfected, and non-avoidable liens existing as of the Petition Date; (c) subject to clauses (a) and (b) above, pursuant to Section 364(c)(3) of the Bankruptcy Code, a perfected priority security interest and lien on the Collateral junior only to valid, perfected, and unavoidable liens in favor of third parties that were in existence immediately prior to the Petition Date (other than the Fund Liens and the Noteholders Liens, which are being primed by this Order and are junior in priority and subordinate in all respects to the Liens) (the "Prepetition Third Party Liens"), subject only as to priority to such Prepetition Third Party Liens (the security interests and liens in favor of Lender described in (a) through (c) above, the "Financing Liens"); and (d) as replacement liens pursuant to sections 361 and 363 to provide adequate protection of Lender's interest in the Collateral to the extent of any diminution in value of the Collateral as a consequence of the use of Cash Collateral, the Postpetition Financing, the imposition of the automatic stay, and any other consequence of the Cases (the "Replacement Liens," and collectively with the Financing Liens, the "Liens"); provided, however, the Postpetition Collateral does not include any claim or cause of action arising under sections 502(d), 542, 544, 547, 548, 550, or 551, and any recoveries thereof (collectively, "Avoidance

Claims"), but does include claims and causes of action arising under section 549 and any recoveries thereof and the proceeds realized by the Estates from the assumption and assignment, or rejection, of any executory contract or unexpired lease under section 365.

   3.1.2 <u>Adequate Protection of Noteholders</u>.  Conditional on any Other Secured Party establishing that it holds a valid, unavoidable, perfected lien in a Debtor's property, each such Other Secured Party is hereby granted, pursuant to sections 361, 363(c)(2), 364(d)(1)(b), and 363(e) of the Bankruptcy Code, adequate protection of their respective interests, if any, in the Collateral in an amount equal to the aggregate diminution in value thereof occurring on or after the Petition Date, including without limitation, any such diminution resulting from the use by Debtors of the Cash Collateral and any Lien on Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "<u>Adequate Protection Obligations</u>") as provided in sections 3.1.2.1, 3.1.2.2, 3.1.2.3, and 3.1.2.4 below (the "<u>Noteholders Adequate Protection</u>"); provided, that the Noteholders Adequate Protection, in each case, is expressly and permanently subject to, subordinate, and junior in priority in all respects to the Liens, the Carve Out, and all other rights, interests, remedies, benefits, consents, claims, and obligations of Lender, and that the Noteholders shall take no action and shall have no rights of enforcement and are prohibited from exercising any right or remedy against any Collateral other than the right to receive proceeds of Collateral only after the payment in full of the Obligations, and shall immediately deliver to Lender any payment, distribution, security, or proceeds received by such Other Secured Party on account of any Collateral (including without limitation any payment, property, security, or distributions on account of Collateral in the Cases, whether pursuant to a chapter 11 Plan of Reorganization or otherwise) until the Obligations owed to Lender are paid in full, and shall hold such payment, distribution, security, or proceeds in trust for Lender until delivered to Lender:

   3.1.2.1 <u>Adequate Protection Liens on Collateral</u>:  continuing valid, binding, enforceable, and perfected, liens and security interests in and on all of the Collateral to the extent of the Adequate Protection Obligations (the "<u>Collateral Adequate Protection Liens</u>").

3.1.2.2 <u>Additional Adequate Protection Replacement Liens</u>: valid, binding, enforceable and perfected replacement liens and security on the Adequate Protection Property to the extent of the Adequate Protection Obligations (the "<u>Replacement Adequate Protection Liens</u>" and together with the Collateral Adequate Protection Liens, the "<u>Adequate Protection Liens</u>"). The Adequate Protection Liens shall be conditional on the Noteholders having a valid, enforceable and unavoidable lien on the Collateral.  Further, to the extent that the Noteholders' liens are avoided, the Noteholders are hereby authorized to seek to assert unsecured claims under section 502(h) of the Bankruptcy Code against the Estate that includes the property that was encumbered by such avoided lien.

3.1.2.3 <u>507(b) Claims</u>:  an allowed super-priority administrative expense claim subject to proof against each Debtor and its respective Estate pursuant to and as provided under Section 507(b) (the "<u>507(b) Claims</u>").  The 507(b) Claims shall be conditional on the Noteholders having a valid, enforceable and unavoidable lien on the Collateral.

3.1.2.4 <u>Adequate Protection Payments</u>:  subject to the conditions set forth in section 3.1.2, Debtors shall promptly pay into a reserve fund all interest accruing on the obligations owing to the Noteholders, which shall be released to the Noteholders as their interests may appear when and to the extent that the Noteholders are found to have a valid, enforceable and unavoidable liens on the Collateral, but only to the extent of the diminution in value of their interest in the Collateral.

3.1.3    <u>Lien Priority</u>.  Subject to the Carve-Out and, on an interim basis, the Prepetition Third Party Liens, the Liens are and will continue to be first and senior in priority to all other liens, claims, and interests of every kind and nature, whether existing or arising before or after the Petition Date, or whether created consensually, by an order of any court including this Court, or otherwise, including without limitation (a) the Noteholders Liens, irrespective of the time of recording or filing of an instrument or document evidencing or perfecting the Noteholders Liens and irrespective of the priorities as would otherwise be determined by reference to the Uniform Commercial Code or other applicable laws, and (b) liens

11

or interests granted or acknowledged in favor of any other person or entity in conjunction with section 363, 364, or any other section of the Bankruptcy Code.  This Order establishes, and serves as sufficient evidence of, the priority of the Liens as senior in priority to the Noteholders Liens and Noteholders Adequate Protection, and the subordination and junior priority of the Noteholders Liens and Noteholders Adequate Protection to the Liens, and Superpriority Claims, and insurers of title insurance may rely on this Order with respect to such subordination.

      3.1.4    Lien Perfection.  This Order is sufficient and conclusive evidence of the validity, perfection, and priority of the Liens, effective as of the date and time of entry of this Order, without any further act that may be otherwise required, acknowledged, or permitted under federal, state, or local ordinances, requirements, or law requiring notice, filing, registration, recording, or possession of assets or other act to evidence, notice, validate, or perfect a security interest or lien (each, a "Perfection Act").  Notwithstanding the foregoing, Lender is authorized, but not required, to perform a Perfection Act, and Debtors are authorized and directed to perform such act to the extent requested by Lender, including without limitation deeds of trust, mortgages, fixture filings, and UCC financing statements, and in such event, the subject filing or recording office or agency is authorized and directed to accept, file, or record any document in regard to such act in accordance with applicable law, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Order.

      3.2    Superpriority Claim.   In addition to and without limiting the Liens, the Obligations constitute an allowed superpriority administrative expense priority claim in favor of Lender with senior priority in payment afforded by section 364(c)(1), which has priority in right of payment senior to all other obligations, liabilities, indebtedness, and claims of any kind and nature, now in existence or hereafter incurred by Debtors, including without limitation any and all administrative expenses of the kinds specified or ordered pursuant to sections 105, 326, 327, 328, 330, 331, 364, 365, 503(b), 506(c) (subject to entry of a final order), 507(a), 507(b), 546(c), 726, 1103, 1104, 1113, 1114, and other sections of the Bankruptcy Code, including those

resulting from the conversion of the Cases pursuant to section 1112, and at all times are senior to the rights of Debtors, the Estates, any bankruptcy trustee, the claims and obligations in favor of the Noteholders, any creditor or other party in interest in the Cases or any subsequent proceedings under the Bankruptcy Code (the "Superpriority Financing Claim").  Subject to entry of a final order, the Superpriority Claims include all rights in and are not reduced by Avoidance Claims.  In addition, Lender retains its right to a claim under section 507(b) (collectively with the Superpriority Financing Claim, the "Superpriority Claims").

        3.3    Carve-Out.  The Liens, the Superpriority Claims, and the Other Secured Party Adequate Protection shall be subject only to ((a) through (d), the "Carve Out"): (a) any unpaid fees due to the United States Trustee pursuant to section 1930 of title 28 of the United States Code or otherwise and any fees due to the Clerk of the Court of the United States Bankruptcy Court for the District of Delaware; (b) all reasonable fees and expenses incurred by a trustee under section 726(b) in an amount not exceeding $100,000; (c) the reasonable expenses of members of any statutory committee (excluding fees and expenses of professional persons employed by such committee members individually); (d) to the extent allowed at any time, all unpaid fees and expenses allowed by the Bankruptcy Court of professionals or professional firms retained pursuant to section 327 or 1103 (the "Professional Persons") through the date of the acceleration of the maturity of the Postpetition Financing; provided that the reimbursement of out-of-pocket expenses allowed by the Bankruptcy Court and incurred by the members of any committee and the Professional Persons shall not exceed the sum of: (x) prior to the delivery of a Carve-Out Trigger Notice (defined below) the accrued amount of such professional fees and Committee expenses, in each case, incurred prior to the delivery of such Carve-Out Trigger Notice (defined below), plus (y) $2,000,000 for all such fees and expenses (the "Post Carve-Out Notice Trigger Cap") incurred from and after the delivery of a written notice provided by the Lender to Debtors following the occurrence and during the continuance acceleration of the Obligations under the Loan Documents (the "Carve-Out Trigger Notice").  The Carve-Out shall exclude any fees and expenses incurred in connection with an Adverse Lender Challenge.

13

Section 4.        Default; Rights and Remedies; Relief from Stay.

4.1      Events of Default.  The occurrence of any of the following events constitutes an "Event of Default" under this Order:

(a)      A breach, default, or failure to perform with respect to any term, condition, covenant, or obligation under any Loan Document (including without limitation this Order);

(b)      An "Event of Default" as defined in the Loan Agreement ; or

(c)      The termination, expiration, restriction, or curtailment of any Debtor's or Estate's authority or ability to borrow the Postpetition Financing or Lender's commitment to provide the Postpetition Financing, whether automatically or upon exercise or notice by Lender in accordance with the Loan Documents (a "Termination Event").

4.2      Rights and Remedies upon Event of Default. Notwithstanding the occurrence of an Event of Default, Obligors and the Estates of the Obligors remain liable for all Obligations and obligated to perform and abide by all terms, conditions, covenants, and obligations of the Loan Documents and remain bound by all restrictions and prohibitions provided, acknowledged, or authorized under the Loan Documents, and subject to any applicable cure periods, Lender may elect any and all consequences of such Event of Default and is entitled to take any act or exercise any right or remedy provided in any Loan Document subject to the this Order.  Notwithstanding the foregoing, Lender has no obligation to make loans, advances, or provide other financial accommodations or otherwise perform its obligations under the Loan Documents or on behalf of Debtors or the Estates immediately upon or after the occurrence of an Event of Default or an act, event, or condition that with the giving of notice or the passage of time, or both, would constitute an Event of Default, pursuant to the terms of the Loan Documents.

4.3      Relief from Automatic Stay.  The automatic stay pursuant to section 362 is terminated, modified, lifted, and vacated without further notice, motion, or order, and without the

14-day stay provided under Bankruptcy Rule 4001(a)(3) (which is waived by this Order), as follows:

       4.3.1   <u>Non-Default</u>.  Effective immediately (a) to implement the Postpetition Financing pursuant to the Loan Documents, (b) to take or permit any Perfection Act, and (c) to assess, charge, advance, deduct, and receive payments with respect to the Obligations, and apply such payments to the Obligations pursuant to the Loan Documents, and

       4.3.2   <u>Post-Default</u>.  Upon either the maturity of the Postpetition Financing or the occurrence of an Event of Default and subject to any applicable cure periods, after obtaining relief from this Court from the automatic stay upon hearing and five (5) business days' prior notice to respective counsel to the Debtors, Committee, if and when appointed, and the U.S. Trustee, the Lender shall be entitled and empowered:

       4.3.2.1 Immediately to take actions and exercise rights as provided in any Loan Document, including without limitation terminating Debtors' use of Cash Collateral otherwise authorized by this Order, directing Debtors and any account debtors or other parties that may have possession of Cash Collateral to deliver such Cash Collateral directly to Lender, withholding its consent to Debtors' use of Cash Collateral, declaring all Obligations immediately due and payable, ceasing to provide further advances, loans, and financial accommodations to or on behalf of Debtors or the Estates, setting off any Obligations with all or any portion of the Collateral or proceeds thereof, and terminating Lender's commitment to provide any further advances, loans, and financial accommodations to for the benefit of Debtors, but not including Collateral Enforcement Rights (defined herein); and

       4.3.2.2 Upon Debtor's failure to cure an Event of Default within five (5) business day period after the delivery of a notice of an Event of Default to Debtors , counsel for Debtors, the Committee (if any), and the U.S. Trustee referred to in paragraph 4.3.2, and upon the maturity of the Postpetition Financing, to take actions and exercise rights and remedies with respect to the Collateral, including foreclosing upon or conducting a sale of any Collateral ("<u>Collateral Enforcement Rights</u>").  Notwithstanding the foregoing, Debtors may seek

15

an order of the Court on an emergency basis extending the automatic stay to stay such exercise by Lender for "cause." Upon Lender's request, the Court shall enter a further Order with respect to the termination of the automatic stay and the grant of relief from the automatic stay consistent with the terms of this Order, although the entry of such further order does not limit the effectiveness of such relief as provided and granted in this Order.

4.4     Right to Credit Bid.  Lender has the right to use any or all of the Obligations owed to Lender to credit bid with respect to any sale of all or any portion of the Collateral pursuant to section 363(k).

4.5     No Duty to Marshall. Upon the entry of a Final Order, neither Lender nor the Collateral is subject to the doctrine of marshaling with respect to the Collateral.

Section 5.     Representations; Covenants; and Waivers.

5.1     Debtors' Waivers.  Debtors irrevocably waive any rights (a) to seek authority prior to satisfaction of the Obligations in full, to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) other than from Lender unless such authority results in the Obligations being indefeasibly paid in full, in cash, (b) to challenge the application of any payments authorized by this Order pursuant to section 506(b), and (c) to propose or support a plan of reorganization that does not provide for the indefeasible payment of all Obligations owed to Lender in full, in cash, upon the effective date of such plan of reorganization or is otherwise inconsistent with the Loan Documents unless Lender consents.

5.2     Section 506(c) Waiver.  Upon entry of a Final Order, no costs or expenses of administration incurred in the Cases – incurred during the Interim Period – may be charged against Lender or the Collateral pursuant to sections 105, 326, 327, 330, 331, 503(b), 506(c), 507(a), or the "equity exception" in section 552(b), section 726, or any other provision of the Bankruptcy Code, or any similar principle of law without the prior written consent of Lender, and no such consent shall be implied from any other action, inaction or acquiescence by Lender.

5.3     Liens Senior to Certain Other Liens.  Without prejudice to seeking a Lien pursuant to section 364(d) in connection with a final order on the Motion, the Liens shall not be

16

subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date including, without limitation, mechanics' liens, materialmens' liens, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of Debtors. For the avoidance of doubt, the Liens and the Superpriority Claims, in each case, in respect of all Obligations, shall be neither subject nor subordinate to disgorgement or to any other rights, claims or remedies asserted or assertable by the Securities and Exchange Commission or any other governmental unit, person or entity.

Section 6.    Other Rights and Obligations.

6.1    No Modification or Stay of this Order.  Notwithstanding any other order of the Court or act by any party, the acts taken by Lender in accordance with this Order, the Obligations, and all rights, interests, remedies, benefits, consents, claims, and obligations, including without limitation the Obligations, the Liens, and the Superiority Claims, shall not be modified, amended, reduced, or restricted without the express consent of Lender, shall be governed in all respects by the original provisions of this Order, and shall remain valid, effective, authorized, and in full force and effect pursuant to section 364(e).  If any or all of the provisions of this Order are reversed, modified, vacated, or stayed for any reason, such reversal, modification, vacation, or stay does not affect (a) the validity and existence of any Obligations owing to Lender, including obligations arising from loans, advances, or other financial accommodations provided by Lender incurred prior to the actual receipt by Lender, as applicable, of written notice of the effective date of such reversal, modification, vacation, or stay, or (b) the validity or enforceability of any Lien or Superpriority Claim.  For purposes of section 364(e), "appeal" shall include any proceeding for reconsideration, amending, vacating, rehearing, or re-evaluation of this Order by this Court or any other tribunal.

6.2    Power to Waive Rights; Duties to Third Parties.  Lender has the right to waive any interest, claim, right, remedy, or privilege in favor of Lender provided for or

acknowledged in any Loan Document including without limitation this Order (collectively, "Lender Rights"), and has no obligation or duty to any other party with respect to or by reason of Lender's exercise or enforcement, or delay or failure to exercise or enforce, Lender Right.

6.3     Reservation of Rights.  This Order is in addition to and without prejudice to the rights of Lender to pursue any and all rights and remedies under the Bankruptcy Code, the Loan Documents, any other contract, at law, or in equity.

6.4     "Responsible Person."  By accepting any budget submitted by Debtors or by taking any actions pursuant to or authorized by the Loan Documents, Lender is not deemed to be (a) in control of the operations or liquidation of Debtors, or (b) a "responsible person" with respect to the operation, management or liquidation of Debtors.

6.5     Binding Effect.  This Order is and continues to be binding upon Debtors, all parties in interest in the Cases (including without limitation landlords, lessors, and other parties asserting an interest of real property where Collateral may be located), and each of their respective successors and assigns, including any trustee, notwithstanding any further order, including dismissal of any of the Cases of conversion of any of the Cases to a case under another chapter of the Bankruptcy Code.

6.6     Survival of Order.  The provisions of this Order and any actions taken pursuant thereto (a)  survive the entry of any order: (i) confirming any plan of reorganization in the Cases, (ii) converting any of the Cases to a cases under chapter 7 of the Bankruptcy Code, or (iii) dismissing any of the Cases; and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to this Order maintain its priority as provided by this Order until all of the Obligations are indefeasibly paid in full and discharged in accordance with the terms of the Loan Documents.  The Obligations shall not be discharged by the entry of any order confirming any plan of reorganization in the Cases unless such Obligations are satisfied in full, in cash, pursuant to such plan of reorganization, and Debtors waives, and is deemed to have waived any such discharge pursuant to section 1141(d)(4).

6.7     <u>Final Hearing and Response Dates</u>.  A final hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) (the "<u>Final Hearing</u>") shall be held on December __, 2017, at ___:00 a.m. before this Court. The proposed Final Order will (i) be filed before the Final Hearing, (ii) contain, among other forms of relief, (a) a waiver of the right of any party pursuant to section 506(c) of the Bankruptcy Code or otherwise to surcharge any costs or expenses of administration of the Chapter 11 Cases against or recovered from or against the Lender, without the prior written consent of each of the Lender, as applicable; (b) a waiver of the application of the equitable doctrine of "marshalling" or any other similar doctrine as against any of the DIP Secured Parties or the Prepetition Secured Parties with respect to any of the DIP Collateral or the Prepetition Collateral, as applicable; (c) provisions regarding the right of the Lender to credit bid Obligations with respect to any sale of all or any portion of the Collateral pursuant to section 363(k); and (d) upon the entry of a Final Order, provisions that provide that the Liens granted hereunder as adequate protection and to secure the Obligations owing to the Lender shall attach to and be perfected with respect to, and the super-priority claims owing in respect of adequate protection and to the Lender in respect of the Obligations shall be payable from, the proceeds of Avoidance Claims.

Within three (3) business days of entry of this Order, Debtors shall serve, by United States mail, first-class postage prepaid, (such service constituting adequate notice of the Final Hearing), by United States mail, first-class postage prepaid, (such service constituting adequate notice of the Final Hearing) notice of the entry of this Order (the "<u>Final Hearing Notice</u>") upon the Noteholders, the Notice Parties and counsel for any committee, if the same shall have been appointed. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file a written objection with the Clerk of the Bankruptcy Court no later than January [__], 2018, which objection shall be served so that it is actually received on or before 4:00 p.m. (prevailing Eastern time) on such date by: (a) counsel for Debtors, Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, CA 90071-3197; Attn: Samuel Newman; Gibson, Dunn & Crutcher, LLP, 200 Park Avenue, New York,

New York 10166; Attn: J. Eric Wise; Young Conway Stargatt & Taylor, LLP, Rodney Square,

1000 North King Street, Wilmington, DE 19801, Attn: Sean Beach and Edmon Morton;

(c) counsel for the Lender, Buchalter, 1000 Wilshire Boulevard, Suite 1500, Los Angeles, CA

90017-1730; Attn: William Brody; Richards Layton & Finger, LLP, One Rodney Square, 920

North King Street, Wilmington, DE 19801, Attn: John Knight; (d) counsel for any committee;

and (f) the Office of the United States Trustee for the District of Delaware and shall be filed with

the Clerk of the United States Bankruptcy Court for the District of Delaware.

Dated: December _____, 2017
      Wilmington, DE

 

_____

Kevin J. Carey
United States Bankruptcy Judge

## Exhibit A

**Loan Agreement**

**[To Be Provided]**

**Exhibit B**

**Funds**

1. Woodbridge Mortgage Investment Fund 1, LLC

2. Woodbridge Mortgage Investment Fund 2, LLC

3. Woodbridge Mortgage Investment Fund 3, LLC

4. Woodbridge Mortgage Investment Fund 3A, LLC

5. Woodbridge Mortgage Investment Fund 4, LLC

6. Woodbridge Commercial Bridge Loan Fund 1, LLC

7. Woodbridge Commercial Bridge Loan Fund 2, LLC

**Exhibit C**

**Noteholders**

BN 31471796v2

EXHIBIT C

Other Secured Parties

| | | |
|---|---|---:|
| **3802 HOLLYLINE AVE, SHERMAN OAKS, CA - FIRST** | ERNEST AND ESTELLA LANGLAIS | 49,750.00 |
| | JOHN FLETCHER | 62,250.00 |
| | | |
| **1312 BEVERLY GROVE PL, BEVERLY HILLS, CA - FIRST** | WILLIAM ARNOLD FAM TRUST | 100,000.00 |
| | LEGACY 1 LLC | 160,000.00 |
| | MORGAN FAMILY TRUST HAROLD MORGAN | 50,000.00 |
| | FLORENCE MARANUK | 50,000.00 |
| | STEVEN BLANCHARD | 50,000.00 |
| | THE WAIT FAMILY REVOCABLE LIVING TRUST 3/9/99 | 25,000.00 |
| | BETTY J COLSON IRREVOCABLE TRUST | 60,000.00 |
| | THE MARSHALL FAMILY TRUST 5/26/14 | 25,000.00 |
| | CYNTHIA CHOQUETTE | 40,000.00 |
| | PAMELA HALL | 25,000.00 |
| | BEN & ELVIRA BALMENTI IRREVOCABLE TRUST | 200,000.00 |
| | THOMAS VASIL & FRANCES RAMIREZ | 35,000.00 |
| | PROV-MARIA PINEDA IRA | 97,500.00 |
| | THOMAS AND PATRICIA CYGAN | 70,000.00 |
| | RON DISMUKE | 35,000.00 |
| | MAINSTAR-DIRK SWART | 144,061.75 |
| | KAREN KENNA | 60,000.00 |
| | OLLIN & MARY UNDERWOOD | 60,000.00 |
| | JEFFERY FITCH | 60,000.00 |
| | LAVINIA BARNES | 220,000.00 |
| | TRINA BRUNS | 35,000.00 |
| | JOHN & DENECE BELANGER | 100,000.00 |
| | MARLA VERMILLION | 30,000.00 |
| | | |
| **1312 BEVERLY GROVE PL, BEVERLY HILLS, CA - SECOND** | MARLENE BATES | 25,000.00 |
| | HIA SOLO 401K TRUST FBO CHAD HARRIS | 31,225.00 |
| | LINDA WENDEL | 100,000.00 |
| | IRA SVC-ANDREW ANTONIO | 450,000.00 |
| | MAINSTAR-JOEL KING | 175,000.00 |
| | | |
| **3843 HAYVENHURST AVE, ENCINO, CA - FIRST** | SANFORD & LAURA STERN REVOCABLE TRUST | 300,000.00 |
| | BRUCE & MAUREEN MILLER | 115,000.00 |
| | PROV-SUZANNE ROETHLE ROTH IRA | 23,000.00 |
| | MAINSTAR-NEAL LAXTON IRA | 21,350.50 |
| | GAYLE & CHRISTOPHER MATHE | 25,000.00 |
| | KEN & KENDRA HOOD | 50,000.00 |
| | THE BRUCE & KATHLEEN FORD TRUST | 25,000.00 |
| | DARLENE KRAMER | 100,000.00 |
| | RUSSELL TAYLOR | 50,000.00 |
| | | |
| **3843 HAYVENHURST AVE, ENCINO, CA - SECOND** | PROV-ARNOLD BERMAN IRA | 100,000.00 |
| | JUDITH BYRUM | 150,000.00 |
| | LORETTA MITCHELL | 77,000.00 |
| | SHIRLEY CONTI | 40,000.00 |
| | PROV-KATHY MILLER IRA | 31,700.00 |
| | | |
| **8692 FRANKLIN AVE, LOS ANGELES, CA - FIRST** | LAURA & DANIEL FLORES | 25,000.00 |
| | PROV-CAROLYN GRIFFIS IRA | 38,100.00 |
| | ARTHUR AND IRMA STERNBERG | 25,000.00 |
| | WANDA GAUTHIER | 50,000.00 |
| | STANLEY REED | 50,000.00 |
| | THE WILFRED AND BERNICE SKVARCH TRUST | 100,000.00 |
| | PROV-MARK CAMPBELL IRA | 46,450.00 |
| | WALTER AND MERIDITH BOSTIC | 50,000.00 |
| | PROV-MILTON BENDER ROTH IRA | 36,250.00 |
| | PROV-GEORGE BICKLEY IRA | 100,000.00 |

| | | |
|---|---|---|
| | WALES & JOAN BEATY | 100,000.00 |
| | | |
| **8692 FRANKLIN AVE, LOS ANGELES, CA - SECOND** | DONALD CORNELIUS | 100,000.00 |
| | | |
| **4030 MADELIA AVE, SHERMAN OAKS, CA - FIRST** | CAMC LLC | 50,000.00 |
| | HEALTH CORE TRUST 10/30/03 | 25,000.00 |
| | GRACE LAMONTAGNE | 100,000.00 |
| | MAINSTAR-WILLIAM SPIRKA | 400,000.00 |
| | DONALD AND DONNA WEISE | 50,000.00 |
| | HENRI & BARBARA JEANRENAUD | 29,000.00 |
| | | |
| **1258 LAGO VISTA DR TWO, BEVERLY HILLS, CA - FIRST** | BRUNK FAMILY TRUST | 20,000.00 |
| | WILLIAM KAGGERUD | 70,000.00 |
| | HUNG-CHANG HUANG | 25,000.00 |
| | J HAWKEYE RONDEAU | 25,000.00 |
| | LOLITA PATE | 15,000.00 |
| | WILLIAM & DEBORAH MICHAELS | 25,000.00 |
| | PHILIP & CYNTHIA DAVIS | 50,000.00 |
| | MAINSTAR-JEFFREY MCCLURG | 90,000.00 |
| | JODI HASKINS | 200,000.00 |
| | PROV-GEORGE UCCELLI IRA | 30,000.00 |
| | DONALD & KATHLEEN WEAVER | 100,000.00 |
| | ALUKAL & JOLLY ANTONY | 50,000.00 |
| | CAROL LASHINE | 70,000.00 |
| | LINUS & SANDRA CLUNE | 28,000.00 |
| | ROBERT & JACQUELINE REYNOLDS REV LIVING TR 6/5/03 | 30,000.00 |
| | MAX & SHELIA HUMBERT | 200,000.00 |
| | DAVID & JUDY ROGERS | 25,000.00 |
| | THE EWELL & BETTY BOURGEOIS REVOCABLE TRUST | 100,000.00 |
| | SHARON GREMILLION | 50,000.00 |
| | RYAH VAALER | 50,000.00 |
| | ROBERT & DOROTHY MCELROY | 25,000.00 |
| | RICHARD H MINETTI REVOCABLE TRUST 6/2/97 | 141,000.00 |
| | IRA SVC-LORI COLE | 33,500.00 |
| | PROV-JULIE GOODWIN IRA | 116,382.43 |
| | PROV-ELIZABETH SCHOENLEIN IRA | 68,000.00 |
| | JACK & BARBARA LAMPHIER | 100,000.00 |
| | ROXANNE LAWRENCE REVOCABLE TRUST 06/16/08 | 50,000.00 |
| | WILLIAM F BLEVINS | 200,000.00 |
| | HELEN & CHARLES CADDICK | 100,000.00 |
| | DENNIS SWENSON | 25,000.00 |
| | ARTHUR W ROBERTS JR EXEMPT TR UTD 11/05/97 | 130,000.00 |
| | DALE ZENK | 51,000.00 |
| | ROSEWOOD CAPITAL INVESTMENTS INC | 250,000.00 |
| | CLAYTON CAPITAL INVESTMENTS CORP | 250,000.00 |
| | DAVE & VICKIE CANDEL | 50,000.00 |
| | FLOYD BIRD | 25,000.00 |
| | MARIA KRAWIEC | 55,000.00 |
| | PROV-JULIO HERDOCIA IRA | 104,400.00 |
| | CATHERINE DERENZIS | 25,000.00 |
| | PAULA FREED | 55,000.00 |
| | MAINSTAR-SANDRA HARRIS | 25,000.00 |
| | MAINSTAR-SHARYL HARUGUCHI | 100,000.00 |
| | FLORENCE MARANUK | 75,000.00 |
| | BETTY L & NICK A PUTHOFF | 25,000.00 |
| | IRA SVC-KATHLEEN HOWDEN | 48,600.00 |
| | ANTHONY MANGIA | 100,000.00 |
| | CHARLES & MARIE MILLER | 25,000.00 |
| | MARY FORINGTON | 100,000.00 |
| | KELLY LANGE | 50,000.00 |
| | DAVID & CAROL WADE | 50,000.00 |
| | OMG HOLDING LLC | 50,000.00 |
| | HENRI & BARBARA JEANRENAUD | 65,000.00 |

| | | |
|---|---|---|
| **1258 LAGO VISTA DR (TWO), BEVERLY HILLS, CA - SECOND** | RANDALL & KELLY HUFFMAN | 100,000.00 |
| | NEUMANN REVOCABLE TRUST | 100,000.00 |
| | IRA SVCS-HELEN CASTRO | 59,000.00 |
| | BRUCE DEWALD | 40,000.00 |
| | DAVID & JANEEN KAISER | 50,000.00 |
| | TED ITZOE | 25,000.00 |
| | IRA SVCS-CONNIE WHARTON-BURNS | 100,000.00 |
| | PROV-BETTY PUTHOFF IRA | 40,000.00 |
| | AARON VANHOVEN | 50,000.00 |
| | EMILY & MARTIN SAMUELS | 50,000.00 |
| | SHARON KIRK REVOCABLE LIVING TRUST | 25,000.00 |
| | PROV-DOUGLAS CHUN IRA | 102,000.00 |
| | MAINSTAR-RONNIE HUNG IRA | 175,000.00 |
| | PROV-CHARLES CONNORS IRA | 236,000.00 |
| | GEORGE SANDERS | 80,000.00 |
| | DEAN STRATSMA | 50,000.00 |
| | JEFFREY GIFT | 25,000.00 |
| | GERALD FEDDERS | 25,000.00 |
| | IRA SVC-DENISE EMMONS | 86,000.00 |
| | BOYAN CHI | 25,000.00 |
| | PROV-DONNA SCHMITT IRA | 103,000.00 |
| | THE PORTER FAMILY TRUST | 25,000.00 |
| | STEPHEN GARDNER | 25,000.00 |
| | | |
| **1241 LOMA VISTA DR, BEVERLY HILLS, CA - FIRST** | ADA SUE MCMAHAN | 25,000.00 |
| | REGINA ZAHLMANN | 50,000.00 |
| | GORDON HUBCHIK | 50,000.00 |
| | WILLIAM & MARIAN ERWIN | 50,000.00 |
| | WILLIAM & MARIAN ERWIN | 50,000.00 |
| | LINUS AND  SANDRA CLUNE | 27,000.00 |
| | PROV-JEANINE VAN HOLLEBEKE IRA | 88,500.00 |
| | DLMC INC | 25,000.00 |
| | DAVID & LANA SABOT | 150,000.00 |
| | PROV-ANNE HAUPT ROTH IRA | 44,830.00 |
| | MAINSTAR-OWEN ALLEN | 125,000.00 |
| | THE JAMES A MCDONALD RLT 2/7/05 A&R 8/1/10 | 150,000.00 |
| | JOHN R DZUBAY SUPPLEMENTAL NEEDS TRUST | 100,000.00 |
| | MARY BELL | 54,403.52 |
| | ROBERT MICHEL IRREVOCABLE TRUST | 100,000.00 |
| | ARTHUR W ROBERTS JR EXEMPT TR UTD 11/5/97 | 120,000.00 |
| | PROV-SUSAN CARTER IRA | 99,270.00 |
| | JOHN & SANDRA BOWER | 50,000.00 |
| | JUNE HELMAN, ARTHUR ADLER & BARBARA LEDERER | 75,000.00 |
| | SCHLICHTING TRUST 04/03/17 | 25,000.00 |
| | SUNWEST-RICHARD FRITTS IRA | 110,000.00 |
| | MAINSTAR-FREDERICK LEBLANC | 30,000.00 |
| | CHRIST CHURCH WESTSHORE | 30,000.00 |
| | ELIZABETH SCHULTZ | 100,000.00 |
| | KENT & MARY TADLOCK | 50,000.00 |
| | MICHAEL WEINER MD PA PROFIT SHARING PLAN | 100,000.00 |
| | JOYCE SCARPA | 25,000.00 |
| | PEGGY FRANCIS | 50,000.00 |
| | VIKI SHAFFER | 50,000.00 |
| | MARIANNE LYNCH | 25,000.00 |
| | RUTH KUNTZ | 25,000.00 |
| | DRURY IRREVOCABLE TRUST 06/25/09 | 50,000.00 |
| | MARIA HOLLAND | 40,000.00 |
| | UNA DECOCK | 25,000.00 |
| | ARNOLD & HELEN BERMAN | 25,000.00 |
| | MAINSTAR-LAURA SIMPSON | 95,900.00 |
| | PROV-DONNA ROBERTS IRA | 142,000.00 |
| | ROGER SCHOUMACHER | 50,000.00 |

| | | |
|---|---|---|
| | DEREK ROSTANT | 50,000.00 |
| | BRADLEY PETERSEN | 50,000.00 |
| | CHRISTIAN BITZ | 100,000.00 |
| | HORIZON-MARK KERSTING IRA | 54,900.00 |
| | LANNY & JUDI STROHMAN | 50,000.00 |
| | LARITA MERRICK | 330,000.00 |
| | | |
| 1241 LOMA VISTA DR, BEVERLY HILLS, CA - SECOND | MARILYN & JONAS LINDE | 60,000.00 |
| | PROV-RICK ROUND IRA | 240,000.00 |
| | MARLYS KNELL | 50,000.00 |
| | PROV-MARY BORGES-PRATER IRA | 109,000.00 |
| | HERBERT & JOELLEN BEADLE CO-TTEES U/A 3/29/11 | 100,000.00 |
| | JAMES HAMM | 50,000.00 |
| | PROV-WILLIAM REPASKY IRA | 25,000.00 |
| | HARESH CHATNANI | 35,000.00 |
| | GROVER & WILMA KELLY LIVING TRUST | 50,000.00 |
| | | |
| 7870/7900/7956 GRANITO DR, LOS ANGELES, CA - FIRST | JACK & PATRICIA REITZEL | 25,000.00 |
| | BRYAN & DANETTE PYLES | 100,000.00 |
| | HENRI OR BARBARA JEANRENAUD | 111,551.00 |
| | DAVID & SANTA ANDERSON | 25,000.00 |
| | JENNIFER MCCRACKEN | 75,000.00 |
| | WILLIAM TUERKE IV | 50,000.00 |
| | KENT MARTIN | 50,000.00 |
| | PROV-MAURICE TRITT IRA | 22,350.00 |
| | IRA SVCS-SUZANNE NEAL IRA | 123,000.00 |
| | THE MIRIAM SERMAN 2010 TRUST | 100,000.00 |
| | SHELLY MELBY | 100,000.00 |
| | CHRISTINE LLOYD | 150,000.00 |
| | MAINSTAR-JOAN MESSIMER ROTH IRA | 61,280.00 |
| | STEPHANIE MIHALCZO | 40,000.00 |
| | JOHN & JEAN ALME | 50,000.00 |
| | FLOYD JONES | 250,000.00 |
| | PROV-DOUGLAS PARKINS IRA | 50,000.00 |
| | JEFFREY GERRITSON | 75,000.00 |
| | MICHAEL WEINER MD PA PROFIT SHARING PLAN | 150,000.00 |
| | ALBERT & MARIAN ELLIOTT LIVING TRUST 05/29/03 | 100,000.00 |
| | LARITA KAY MERRICK | 175,000.00 |
| | PROV-DORIENNE BAIDA IRA | 33,750.00 |
| | PROV-ROYAL WEST IRA | 159,000.00 |
| | RICHARD & MARY ANN STEPHENS | 25,000.00 |
| | PROV-NELLIE RUELOS IRA | 25,000.00 |
| | IRA SVC-KENNETH HOWDEN | 60,200.00 |
| | DOLORES HEINZ ESTATE | 200,000.00 |
| | EDWARD MEYER | 36,000.00 |
| | HORIZON-LOWELL KOENCK IRA | 51,000.00 |
| | JAN & NANCY BURBA | 50,000.00 |
| | CRAIG HORNER DDS PC PROFIT SHARING PLAN | 50,000.00 |
| | FRANK CEPULKOWSKI | 75,000.00 |
| | | |
| 7870/7900/7956 GRANITO DR, LOS ANGELES, CA - SECOND | SANDRA PILKINGTON | 25,000.00 |
| | WILLIAM REPASKY | 25,000.00 |
| | EDWARD ANTONIO | 380,000.00 |
| | PROV-RICHARD GAWLIK IRA | 50,000.00 |
| | KURT & ELFRIEDE RITTER | 25,000.00 |
| | PROV-SUSAN FERBER IRA | 30,443.00 |
| | MARJORIE EVERS | 109,000.00 |
| | MAINSTAR-JACKIE PARKER | 200,000.00 |
| | RAY PIIRA | 100,000.00 |
| | GRAHAM MARTIN | 350,000.00 |
| | BROAD INSIGTS LLC CASH BALANCE PLAN | 230,000.00 |
| | JOYCE BURCKHOLTER | 50,000.00 |
| | MONICA NICHOLS T/O/D | 160,000.00 |

| | | |
|---|---|---:|
| | MARK HILDERLEY | 75,000.00 |
| | LELAND SHINABERY | 33,171.00 |
| | MAHESH BALIKE | 25,000.00 |
| | HARRY BREYER REVOCABLE LIVING TRUST | 100,000.00 |
| | KEVIN KINZER | 33,500.00 |
| | KENNETH HANCOCK IRREVOCABLE TRUST UAD 01/24/95 | 80,000.00 |
| | KAY KELLER | 30,000.00 |
| | KEITH G LLC | 100,000.00 |
| | JHARNA DE | 30,000.00 |
| | | |
| **2600 HUTTON DRIVE, BEVERLY HILLS, CA - FIRST** | SUSAN HUNT | 50,000.00 |
| | GARROULD FAMILY TRUST | 57,324.02 |
| | MAINSTAR-DOULGAS CLANCY JR | 50,000.00 |
| | ALFRED & AIDA HART R&A REV LIVING TRUST 6/18/13 | 100,000.00 |
| | JBJ FARM LLC | 25,000.00 |
| | THE MIRIAM SERMAN 2010 TRUST | 50,000.00 |
| | MAINSTAR-ROSALINA LAMCHEK | 88,252.48 |
| | PATRICIA MOELLER | 50,000.00 |
| | SUSAN HUNT | 40,000.00 |
| | JAMES MARS & ADRIENNE DRITZ-MARS | 60,000.00 |
| | MAINSTAR-ANN NEAL ROTH IRA | 100,000.00 |
| | MAINSTAR-THOMAS STREVELER | 98,549.69 |
| | PATRICK & SUSAN HASLAM | 25,000.00 |
| | WILLETT SMITH | 40,000.00 |
| | EDWIN & RUTHE RUSSELL | 50,000.00 |
| | GOLDEN BERRETT | 100,000.00 |
| | DONNA HOSKING | 70,000.00 |
| | ALBERT & FREDA LYNCH | 100,000.00 |
| | NORMA CHEATHAM | 25,000.00 |
| | PROV-LORI MOTTA IRA | 86,500.00 |
| | PROV-CHRIS FOX IRA | 50,000.00 |
| | PROV-RICHARD SNITZER IRA | 56,284.27 |
| | KEMP BENNETT | 50,000.00 |
| | JACQUELYN WOLFER | 150,000.00 |
| | C RON & ELIZABETH WOLTERS | 80,000.00 |
| | YING MCCAW | 25,000.00 |
| | DOREL & ELIZABETH LOZNEANU | 46,000.00 |
| | MARILYN TOBIN | 74,000.00 |
| | DENNIS & PATRICIA MEYER | 50,000.00 |
| | RUSSELL FRAME | 25,000.00 |
| | BETTY BEERS IRREVOCABLE TRUST | 75,000.00 |
| | LEON SOUTH | 25,000.00 |
| | CRAIG & JANELLE GOELLNER | 25,000.00 |
| | HARRINGTON TAYLOR | 25,000.00 |
| | MAINSTAR-RACHEL BARNETT ROTH IRA | 25,000.00 |
| | RONALD & MARSHA CHU | 25,000.00 |
| | KATHY & WAYNE APPEL | 50,000.00 |
| | TONY & WENDY GOETTER | 25,000.00 |
| | MAINSTAR-TENITA COLLINS | 58,000.00 |
| | MAINSTAR-DAVID ENGELBERT | 75,000.00 |
| | JAMES MARTUZZO | 25,000.00 |
| | LINDA & JIM AUSTIN | 25,000.00 |
| | DOLORES POWERS | 30,000.00 |
| | PROV-DONNALOU ALEXANDER IRA | 52,750.00 |
| | | |
| **2600 HUTTON DRIVE, BEVERLY HILLS, CA - SECOND** | PHILLIP II & SHARON ROLLINS | 30,000.00 |
| | DANIEL & CASSANDRA RHOADES | 80,000.00 |
| | PROV-DAN HOVEN IRA | 32,990.00 |
| | SUSAN MOSHER | 29,300.00 |
| | TRUST OF JANNEKE & HARRY REVILL REV LIV TRUST | 50,000.00 |
| | BUFORD & GAIL MANER | 100,000.00 |
| | PROV-PERRY ARCHULETA IRA | 105,500.00 |
| | GARY & PATRICIA POST | 500,000.00 |

| | | |
|---|---|---:|
| | IRA SVCS-CHRISTINA WILLIAMS | 22,800.00 |
| | IRA SVCS-DENISE RICHTER | 25,000.00 |
| | PROV-MARGUERITE CURRIE IRA | 100,000.00 |
| | JOHN & SHIRLEY SMITH | 50,000.00 |
| | ANNA-LISA FRELIN WILSON | 50,000.00 |
| | JARA GROUP II LLC | 25,000.00 |
| | RITA FISCHER TRUST | 25,000.00 |
| | KATHLEEN BINGAMAN | 28,000.00 |
| | DALE ZENK | 100,000.00 |
| | ROBERT WEINBERG | 50,000.00 |
| | MAINSTAR-JANICE ZIMMER | 68,000.00 |
| | IRA SVC-LLOYD BROWN | 69,000.00 |
| | JAMES LOCHTEFELD | 127,000.00 |
| | | |
| **15655 WOODVALE DR, ENCINO, CA - FIRST** | RICHARD & LINDA PATON | 30,000.00 |
| | VENTURE HILL ENTERTAINMENT LLC | 25,000.00 |
| | DOUGLAS SR & DONNA EVANS | 75,000.00 |
| | JOHN MICHOLLE | 35,000.00 |
| | SUNWEST-BRIAN FREDERICK | 185,000.00 |
| | JEFFREY CARRISH | 25,000.00 |
| | ARLENE WALKER | 100,000.00 |
| | DONALD BARSNESS | 50,000.00 |
| | PROV-DELLA LINK IRA | 100,000.00 |
| | CAROL CURTIS | 200,000.00 |
| | MARGARET & JOHN JR SPRUCEBANK | 40,000.00 |
| | JEANNE NILSEN | 125,000.00 |
| | LORIN & GABRIELLA CROSBY | 85,000.00 |
| | | |
| **15655 WOODVALE DR, ENCINO, CA - SECOND** | JARA GROUP II LLC | 50,000.00 |
| | ANGELINA ROJO | 75,000.00 |
| | CHAD FALLER | 25,000.00 |
| | VIVIENNE SHEAR | 30,000.00 |
| | ROBERT NEDBALEK | 40,000.00 |
| | BARBARA MOORE | 119,000.00 |
| | ROBERT & ANN GONCZ | 52,000.00 |
| | HOWARD RUBIN | 100,000.00 |
| | ELISSA & JOSEPH BERLINGER | 25,000.00 |
| | BARBARA & KEVIN MEEHAN | 60,000.00 |
| | LORI & LLOYD FELDMAN | 30,000.00 |
| | DONALD HAZELTON AND CONNIE FREED | 25,000.00 |
| | | |
| **1962 STRADELLA RD TWO REFI, LOS ANGELES, CA - FIRST** | CATHERINE MARX | 25,000.00 |
| | JOSEPH ESPOSITO | 25,000.00 |
| | JULIE BERTSCH | 25,000.00 |
| | PROV-ABEBECH DERESSE IRA | 38,120.00 |
| | DOLORES SCARDINE | 25,000.00 |
| | PROV-BEVERLY MARSHALL IRA | 30,350.00 |
| | EDWIN SIMONS | 25,000.00 |
| | ROBERT & GEORGIA TORSON | 50,000.00 |
| | MARGARET SIRACUSA IRREV TRUST | 65,000.00 |
| | HARVEY & GERALDINE BAER | 100,000.00 |
| | SUSAN MONACO | 25,000.00 |
| | TED TIFT | 100,000.00 |
| | LYNNE FRIEND | 50,000.00 |
| | FIC LLC | 25,000.00 |
| | HARVEY & BARBARA SOFEN REV TRUST 3/8/06 | 50,000.00 |
| | PROV-PERCY FORBING IRA | 79,004.00 |
| | PROV-RON FRASURE IRA | 25,000.00 |
| | HORIZON-KEVIN DOWNEY IRA | 53,824.24 |
| | MAINSTAR-BETTY GUNNOE | 102,742.10 |
| | MAINSTAR-NANCY FALCON | 100,000.00 |
| | JONI WILLIAMS | 25,000.00 |
| | PROV-THOMAS CURLER IRA | 50,000.00 |

| | | |
|---|---|---|
| | PROV-GEORGE GARROULD IRA | 38,500.00 |
| | GARY L MCKINZIE REVOCABLE TRUST 7/24/02 | 150,000.00 |
| | JAMES YEE | 25,000.00 |
| | IRA SVC-LINDA HARVEY | 60,000.00 |
| | PROV-ANTONETTE RENSHAW IRA | 50,000.00 |
| | IRENE WISOR | 30,000.00 |
| | SHARRON RAIDER | 75,000.00 |
| | RAMIRO VILLALVAZO | 40,000.00 |
| | MICHAEL & MARY KAY HEIMBUCK | 100,000.00 |
| | CLARK SCHABO | 25,000.00 |
| | PAMELA GARTNER | 40,000.00 |
| | DALE MCINTIRE TRUST 01/20/11 | 100,000.00 |
| | STEPHANIE & KATHLEEN WASHKO | 44,000.00 |
| | KATHLEEN & BRIAN WASHKO | 69,000.00 |
| | PROV-JOHN ERICKSON IRA | 49,750.00 |
| | E PETE ADAMS | 50,000.00 |
| | CHARLES COOPRIDER | 50,000.00 |
| | MAINSTAR-BRIAN ZEEK | 120,700.00 |
| | KIMBERLY WENDEL | 100,000.00 |
| | DANIEL & MARLEEN EVERS | 80,000.00 |
| | PROV-KAREN GUIDRY IRA | 25,343.00 |
| | JUNE HOFFMAN | 40,000.00 |
| 9230 ROBIN DR, LOS ANGELES, CA - FIRST | PAUL CYR | 50,000.00 |
| | JEFFREY GERRITSON | 25,000.00 |
| | THE JACQUELINE M CARLSON 2006 TRUST | 25,000.00 |
| | CULLEY O'MELIA TRUST | 33,538.06 |
| | ALFRED ORTENZO REVOCABLE TRUST | 100,000.00 |
| | RUTH FRANZER | 25,000.00 |
| | SUSAN MONACO | 25,000.00 |
| | KEITH HIGH | 25,000.00 |
| | PHILIP AND CYNTHIA DAVIS | 50,000.00 |
| | BETTY GRAVENS TRUST 4/15/96 | 25,000.00 |
| | ROBERT GRAVENS TRUST 4/15/96 | 25,000.00 |
| | MAINSTAR-MICHAEL KANE | 93,250.00 |
| | CLYDE & JANINE COFFMAN | 30,000.00 |
| | PROV-JOE MALONEY IRA | 63,219.00 |
| | BERTHOLD & ANITA SCHWARZ | 25,000.00 |
| | DAVID SLATER | 30,000.00 |
| | DEBORAH KUNKEL | 25,000.00 |
| | IRA SVC-ERNESTINE KORD | 24,000.00 |
| | ROSEMARY DORKO | 25,000.00 |
| | MAINSTAR-MARK FISHER | 149,801.00 |
| | PROV-DARRELL FINNEY IRA | 269,184.15 |
| | PROV-EDWIN YOUNG IRA | 60,000.00 |
| | IRA SVC-SANDIE SIMMONS | 279,000.00 |
| | PROV-KATHERINE MESSENGER IRA | 317,700.00 |
| | FELIPE & CRUZ GARCIA | 200,000.00 |
| | FRED & LUCIA POHLMAN | 75,000.00 |
| | JOHN T & JOAN F MURPHY LIVING TRUST | 50,000.00 |
| | ARTHUR AND REGINA FISCHER | 25,000.00 |
| | ROMAN AND MARLENE FULLENKAMP | 100,000.00 |
| | STEPHEN & MELINDA FULLENKAMP | 25,000.00 |
| | GEORGE AND ESTHER MILLER | 30,000.00 |
| | MELVIN AND JANET STEINBRUNNER | 30,000.00 |
| | LAVERN AND JOANNE STEINBRUNNER | 30,000.00 |
| | PAM ZEIER | 50,000.00 |
| | RAYMOND WADE PORTER REVOCABLE LIVING TRUST | 100,000.00 |
| | NORMAN HULL JR | 50,000.00 |
| | CHRISTY MCAFFEE | 30,000.00 |
| | CHRISTIAN & DINAH GOLDING | 100,000.00 |
| | HERCZOG FAMILY TRUST | 300,000.00 |
| | WALTER LINCOLN | 25,000.00 |

| | | |
|---|---|---|
| | ROBERT LYONS | 26,000.00 |
| | PROV-TERRENCE GREGORY IRA | 388,000.00 |
| | PROV-MOLLIE ANDERSON IRA | 100,150.00 |
| | PAMELA & JOHN FISHER | 25,000.00 |
| | MAINSTAR-CEDRIC RANDOLPH | 25,664.19 |
| | NICOLE MARKS | 25,000.00 |
| | MAINSTAR-JONI SPOON | 30,000.00 |
| | LARRY & SANDRA TODD | 100,000.00 |
| | KENT BRITTON | 80,000.00 |
| | PROV-ROBERT MCKINNEY IRA | 78,163.00 |
| | RONALD & MARY LOU CLARK | 150,000.00 |
| | THE LEON PERLIN REVOCABLE TRUST AGREEMENT 12/12/06 | 50,000.00 |
| | PROV-VICTOR STRAPKO IRA | 50,260.00 |
| | PROV-SUSAN BRANTLEY IRA | 49,000.00 |
| | PROV-KAREN J TAYLOR | 70,000.00 |
| | DONALD & DONNA WEISE | 50,000.00 |
| | JAY & MARJORIE PARKER | 50,000.00 |
| | DANIEL & SUSAN HASTINGS | 50,000.00 |
| | AVIJIT & JASSY MUKHERJEE | 100,000.00 |
| | CAMPBELL FAMILY TRUST 10/30/02 | 50,000.00 |
| | RONALD & PATRICIA SANDHOFF | 25,000.00 |
| | REBECCA WOLLIN | 100,000.00 |
| | MAINSTAR-MARJORIE CENTORE IRA | 52,000.00 |
| | EDWARD KAPLAN RESTATED & AMENDED TRUST 11/19/15 | 50,000.00 |
| | IRA SVCS-JOHANNA HIROTA IRA | 25,000.00 |
| | STEVEN GRAMLING | 25,000.00 |
| | NANCY HYDE | 55,000.00 |
| | DIANNE SPIROFF | 100,000.00 |
| | WEISE REVOCABLE TRUST 11/07/14 | 50,000.00 |
| | DAVID & AURA DILETTERA | 50,000.00 |
| | PROV-JIMMY CLAYTON IRA | 60,000.00 |
| | JAKE MURILLO | 25,000.00 |
| | THE BRIELLE ANDERSON REVOCABLE TRUST | 25,000.00 |
| | | |
| **9230 ROBIN DR, LOS ANGELES, CA - SECOND** | NATALYA CHAYKOVSKY | 25,000.00 |
| | RAY PIIRA | 40,000.00 |
| | PROV-DOUGLAS VANCE IRA | 149,500.00 |
| | MAINSTAR-GARRETT GINGRICH | 90,000.00 |
| | RONALD LOONEY | 60,000.00 |
| | PROV-ROBERT CASSIDY IRA | 99,500.00 |
| | GLENNA COVER | 130,000.00 |
| | JAY & ILENE SMALL | 50,000.00 |
| | DAVID KELLEY TRUST 07/16/13 | 50,000.00 |
| | STEPHEN AMBROSE | 100,000.00 |
| | CARL & ANNA SITES | 50,000.00 |
| | PROV-JEFFERY SCHELINSKI IRA | 55,000.00 |
| | WILLIAM & BETTY GRIFFITH | 100,000.00 |
| | CARL ANDERSEN-JENSEN | 50,000.00 |
| | PROV-KEITH NGUYEN IRA | 100,000.00 |
| | | |
| **25210 JIM BRIDGER RD (ONE), HIDDEN HILLS, CA - FIRST** | JOAN STEELE | 25,000.00 |
| | RANDY DEMEL | 25,000.00 |
| | DEBORAH & DOUGLAS VAN GEMERT | 100,000.00 |
| | WILLIAM & MARYLOUISE WIDMAIER | 50,000.00 |
| | THOMAS VALDES | 25,000.00 |
| | DONALDA ADAM | 35,000.00 |
| | PROV-JAN BAILEY IRA | 42,332.00 |
| | COOPER LIVING TRUST 7/27/2000 | 50,000.00 |
| | MARIE T OSTERHOLT | 25,000.00 |
| | WANDA FRIZZA | 50,000.00 |
| | PROV-CHARLES NEWTON IRA | 50,000.00 |
| | MAINSTAR-JASON LEBLANC | 31,446.82 |
| | PROV-JOHN KEITH IRA | 75,000.00 |

| | | |
|---|---|---|
| | MICHAEL & JILL BAUERLE | 200,000.00 |
| | BETTY FOSTER | 150,000.00 |
| | MARK AND JILL DZUBAY | 25,000.00 |
| | LINDA KING | 25,000.00 |
| | JAYANTI JAGANNATHAN | 25,000.00 |
| | RALPH OSTERBAUER REVOCABLE TRUST | 85,000.00 |
| | WILLIAM HOLDEN JR | 40,000.00 |
| | CRAIG & MARIANNE HORNER | 50,000.00 |
| | RAYMOND & LINDA ZINSMASTER | 100,000.00 |
| | OSCAR LUENGO | 50,000.00 |
| | PROV-JOAN OPIELA IRA | 223,300.00 |
| | RONALD & MARY LOU CLARK | 50,000.00 |
| | MAINSTAR-NANNETTE WILLIS | 98,521.00 |
| | JOHN BOEDDEKER | 37,000.00 |
| | MARY DOWNING | 20,000.00 |
| | | |
| **25210 JIM BRIDGER RD (ONE), HIDDEN HILLS, CA - SECOND** | SUNWEST TR-SHERRY HAMILTON IRA | 50,000.00 |
| | PHILLIP II & SHARON ROLLINS | 50,000.00 |
| | MYRA CHERRY | 75,000.00 |
| | IRA SVCS-HELEN CASTRO | 60,000.00 |
| | LONSWAY FAMILY TRUST | 170,000.00 |
| | HENRY F COHAN LIVING TRUST | 100,000.00 |
| | CURTIS REYNOLDS | 50,000.00 |
| | RALPH & ANN PERRY | 100,000.00 |
| | IRA SVCS-AUBREY STRICKLAND IRA | 200,000.00 |
| | MAINSTAR-FRANK DEAN | 56,248.00 |
| | MAINSTAR-JOHN PARSONS | 100,000.00 |
| | LT MUHLENKAMP ENTERPRISES INC | 100,000.00 |
| | ANNA ROSENBLATT | 110,500.00 |
| | PHILIP & KAY KENT | 38,034.59 |
| | HEIDI POLITI | 100,000.00 |
| | MICHAEL & PATRICIA ONESKO | 25,000.00 |
| | THE ARLENE SIMON REVOCABLE TRUST | 100,000.00 |
| | MAINSTAR-LINDA JOHNSON | 150,000.00 |
| | PROV-HEINZ WARICH | 99,500.00 |
| | DON SWANSON | 50,000.00 |
| | MARIAN & PETER DEL GIORNO | 100,000.00 |
| | PROV-VALERIE WOOD IRA | 163,000.00 |
| | THE QUN HONG DOMISSY YIN LIVING TRUST | 30,000.00 |
| | JUSTIN TOSI | 30,000.00 |
| | IRA SVC-ROY ZEIS SR | 105,000.00 |
| | IRA SVC-TRACI COUGLE | 25,000.00 |
| | IRA SVC-MERRY DOCHERTY | 57,500.00 |
| | MAINSTAR-WILLIAM GRAVES | 83,231.39 |
| | DR KENNETH BLEHM | 135,000.00 |
| | LELA AVERITTE | 50,000.00 |
| | IRA SVC-DUANE SIPES | 77,000.00 |
| | IRA SVC-D JEAN SHOWALTER | 49,400.00 |
| | JOSEPH & RUTH BEAL | 25,000.00 |
| | CARROLL SWINNEY | 100,000.00 |
| | SUSAN KAPLAN T/O/D | 400,000.00 |
| | CONSTANCE COLLINS | 50,000.00 |
| | GREG ANDERSON | 29,200.00 |
| | IRA SVC-DALE STRITE | 73,000.00 |
| | IRA SVC-KIMBERLY STRITE | 49,700.00 |
| | WILLIAM & LINDA CRAWFORD | 100,000.00 |
| | EDWARD DRESWICK & BETH STERRETT | 100,000.00 |
| | RIA BAY & OLAF BELLSTEDT | 100,000.00 |
| | DIANE RODRIGUEZ | 50,000.00 |
| | MARVIN & CAROL TUENTE | 52,000.00 |
| | HAROUT & LENA SOGHOMONIAN | 100,000.00 |
| | | |
| **25211 JIM BRIDGER RD (TWO), HIDDEN HILLS, CA - FIRST** | RONALD AND CAROLYN KELLER | 25,000.00 |

| | | |
|---|---|---|
| | DEWEY & SHARLENE STEELE | 100,000.00 |
| | DANIEL & DOROTHY MCARTHUR | 50,000.00 |
| | SARA SMITH | 100,000.00 |
| | HERMAN STEINMILLER | 30,000.00 |
| | BRUCE W ELEY REVOCABLE TRUST 4/14/16 | 100,000.00 |
| | MARIE CRESPIN | 25,000.00 |
| | OTTAVIANO LIVING TRUST | 50,000.00 |
| | GERARD MICHELSEN | 25,000.00 |
| | GORDON BURGHARDT | 25,000.00 |
| | JOEL ARNOLD | 25,000.00 |
| | MAINSTAR-IZA SHIMANOVICH | 25,000.00 |
| | FRANK LUPI | 25,000.00 |
| | HEMANT AND MAMTA NANAVATY | 35,000.00 |
| | CAROL A STALEY REVOCABLE TRUST 5/5/93 | 50,000.00 |
| | VIRGINIA M MOLITERNO REVOCABLE LIVING TRUST | 50,000.00 |
| | MICHAEL AND MAY KAY HEIMBUCK | 100,000.00 |
| | JOHN AND ELLEN SCHVETZ | 100,000.00 |
| | BRUCE BENSON | 50,000.00 |
| | WALLACE & BARBARA JOHNSON | 50,000.00 |
| | PROV-DAVID MOBLEY IRA | 100,000.00 |
| | JEFFREY & MARY MORSCH LIVING TRUST DTD 8-26-2010 | 205,525.75 |
| | MARIA R MURRAY SECOND IRREVOCABLE TRUST/C MURRAY TTEE | 200,000.00 |
| | IRA SVCS-WOODROW WILSON | 45,000.00 |
| | CORNELIA ADAMS | 25,000.00 |
| | PROV-JUDY TONG IRA | 24,750.00 |
| | DAROLD & MARGARET ALLEN | 100,000.00 |
| | PROV-PATRICIA BENSON IRA | 55,700.00 |
| | CAROLS OLIVEROS | 60,000.00 |
| | | |
| **25211 JIM BRIDGER RD (TWO), HIDDEN HILLS, CA - SECOND** | SHREE & ANU SHARMA | 68,000.00 |
| | SHARON THOMPSON | 25,000.00 |
| | THE MARSHALL FAMILY REV LIVING TRUST 3/26/15 | 100,000.00 |
| | MARVIN HILL | 100,000.00 |
| | ROBERT SCHLICHTING | 75,000.00 |
| | STEPHEN AMBROSE | 105,000.00 |
| | CARLA GARGALA | 35,000.00 |
| | LAURIE GUERTIN | 50,000.00 |
| | RICHARD MAY | 75,000.00 |
| | PROV-LINDA STEINBRUNNER IRA | 75,000.00 |
| | KENT ROMINGER | 200,000.00 |
| | YEN HSU CHEN | 275,000.00 |
| | MICHAEL BALES | 25,000.00 |
| | PROV-WILLAM REPASKY | 25,000.00 |
| | LINDA HUBER & ROBERT HUBER JR | 25,000.00 |
| | MAINSTAR-BURL HECHTMAN | 200,000.00 |
| | PROV-CYNTHIA CHUN IRA | 85,000.00 |
| | STANLEY GABERLAVAGE & DOROTHY SOTERIOU | 100,000.00 |
| | JULIE GREENE | 100,000.00 |
| | DAN & CYNTHIA CARNAHAN | 25,000.00 |
| | LEONARD POLITI | 150,000.00 |
| | JOAN SHERIDAN | 25,000.00 |
| | IRA SVCS-KIMBERLY BOURGEOIS | 32,000.00 |
| | PROV-TROY GATTIS IRA | 200,000.00 |
| | CHRISTEL MORRIS LIVING TRUST | 100,000.00 |
| | RICHARD COUGHLIN | 150,000.00 |
| | SONIA RUDGE REV TRUST 12/15/09 | 100,000.00 |
| | MAINSTAR-MARTIN RILEY | 82,500.00 |
| | CLAUDINE PATE | 150,000.00 |
| | DALE & SHEREE MOHR | 30,000.00 |
| | PROV-SALVATORE POLLICITO IRA | 50,000.00 |
| | RICHARD & SANDRA MOWERY | 25,000.00 |
| | MARK BOLGEN | 200,000.00 |
| | GALEN & FERN BENEDICT | 160,000.00 |

| | | |
|---|---|---|
| | KATHLEEN WENDEL | 50,000.00 |
| | MAINSTAR-GABRIELE BUSCHER | 100,000.00 |
| | PROV-KENNETH VAN AMERONGEN IRA | 75,000.00 |
| | SCHLATER FAMILY REVOCABLE LIVING TRUST | 50,000.00 |
| | MARILYN LINK | 50,000.00 |
| | ASSAD KAZEMINY | 50,000.00 |
| | MARIA MURRAY SECOND IRREVOCABLE TRUST | 180,000.00 |
| | NICKY CALHOUN | 50,000.00 |
| | | |
| **1432 TANAGER WAY, LOS ANGELES, CA - FIRST** | KLAUS AND CECELIA GERSDORF | 120,000.00 |
| | CONSTANCE JORDAN | 30,000.00 |
| | PROV-INDRA PATEL IRA | 40,000.00 |
| | TODD & MARY FREDRICK | 50,000.00 |
| | GEORGE AND ESTHER MILLER | 60,000.00 |
| | ALVIN AND MARTHA WENDEL | 55,000.00 |
| | CAROLE KEMP | 125,000.00 |
| | PROV-KENT ROMINGER IRA | 299,000.00 |
| | PROV-KENT ROMINGER ROTH IRA | 99,000.00 |
| | DAVID DERRICK | 50,000.00 |
| | GREG SKOGSBERG | 25,000.00 |
| | MARGARITA SANCHEZ | 25,000.00 |
| | PEREA LIVING TRUST 10/11/94 | 100,000.00 |
| | RICHARD HERCZOG | 50,000.00 |
| | ROLAND & MARJORIE EVERS | 178,000.00 |
| | PROV-SHARON SILVER IRA | 50,000.00 |
| | IRA SVC-BETTY LOU TUCKER | 30,000.00 |
| | PROV-TIMOTHY BOST IRA | 133,000.00 |
| | LAURA SCOTT | 80,000.00 |
| | PROV-JUDITH MOWER IRA | 88,000.00 |
| | DELBERT L KAUFMAN | 30,000.00 |
| | THE JUANITA S LOPEZ TRUST 9/11/12 | 25,000.00 |
| | JUDITH KATZ | 25,000.00 |
| | LUCIA J BATTS | 50,000.00 |
| | THE MICHAEL DE MESA TRUST | 100,000.00 |
| | PROV-CONSTANCE JORDAN IRA | 94,850.00 |
| | SALLY KNOWLES | 50,000.00 |
| | LOUIS S MILLER | 50,000.00 |
| | MARIA MURRAY | 95,000.00 |
| | AGUS & DEVI CHEN | 100,000.00 |
| | THE BEL AIR CRUT | 25,000.00 |
| | ANNA SHAVER | 60,000.00 |
| | MICHAEL AND MARY KAY HEIMBUCK | 100,000.00 |
| | LINDA O'ROURKE | 100,000.00 |
| | PROV-DONNA HOAG IRA | 103,275.00 |
| | PROV-HARRIS GREENBERG IRA | 35,000.00 |
| | S PRIYADARSINI | 50,000.00 |
| | DAVID PUGH | 100,000.00 |
| | WILLIAM & LAVONNE DUNN | 60,000.00 |
| | MAINSTAR-JAMES STACY | 35,000.00 |
| | PROV-SCOTT FARWICK ROTH IRA | 80,500.00 |
| | PROV-DEBORAH CHALLENDER IRA | 184,000.00 |
| | IRA SVC-ANTHONY MORICE | 34,000.00 |
| | IRA SVC-TRUDY MORICE | 34,500.00 |
| | MAINSTAR-JEFFREY GAROUTTE | 100,000.00 |
| | PAUL CASTIGLIONE JR | 50,000.00 |
| | PROV-PAUL CASTIGLIONE IRA | 84,000.00 |
| | STEVEN & MARJORIE TANDLICH | 50,000.00 |
| | PROV-LEONARD SIMONS IRA | 85,247.00 |
| | PROV-MYRA SIMONS IRA | 48,674.00 |
| | JOHN DIMAIO | 80,000.00 |
| | GERALD ROY | 50,000.00 |
| | SYLVAN & TINA REEVES | 120,000.00 |
| | JAMES & DIXIE MCALLISTER | 250,000.00 |

| | | |
|---|---|---|
| | MARY BEGLEY | 85,000.00 |
| | DONALD BARSNESS | 50,000.00 |
| | PROV-MARILYN MASON IRA | 50,500.00 |
| | JILL TINGEY | 25,000.00 |
| | ALBERTO & CARLOS CASIFORA | 50,000.00 |
| | KELLI & NANCY WELLS | 25,000.00 |
| | LARRY & MARILYN JACOBSON | 60,000.00 |
| | IRA SVC-PHILLIP LUCERO | 25,000.00 |
| | PROV-MICHAEL BROWN IRA | 15,000.00 |
| | RONALD & SHARON GOODYKE | 50,000.00 |
| | DAVID & PATRICIA TOSHNER | 125,000.00 |
| | MAINSTAR-BARBARA CLAIRE JACKSON IRA | 37,500.00 |
| | ALAN MAICKI | 50,000.00 |
| | SHAWN MCGRORY | 65,000.00 |
| | GAYLE G ROGERS | 165,000.00 |
| | FRED & HELEN HOLDENER | 100,000.00 |
| | HELEN TUCKER | 25,000.00 |
| | JOAN TAYLOR | 36,237.42 |
| | JOHN & GWENDOLYN GRIFFIN | 75,000.00 |
| | REBECCA MONN | 30,000.00 |
| | KENNETH & SANDRA LANGE | 50,000.00 |
| | KENNETH & JULIE DUISENBERG | 125,000.00 |
| | RILEY PETSCH | 25,000.00 |
| | | |
| 1432 TANAGER WAY, LOS ANGELES, CA - SECOND | MAINSTAR-TIMOTHY CRETIN | 91,000.00 |
| | NANCY HUDSON TTEE L U HUDSON FAMILY TRUST 02/27/91 | 125,000.00 |
| | MARK BAKER | 40,000.00 |
| | CHARLES & ROSE DUNLAP | 25,000.00 |
| | KAREN TAYLOR | 150,000.00 |
| | ROSEMARY CULOTTA | 55,000.00 |
| | ROBERT & BARBARA MATTOX | 310,000.00 |
| | MAINSTAR-MARY SERAFANO | 1,000,000.00 |
| | TERESITA & FELIX GONZALEZ | 91,000.00 |
| | SALLY LAY | 50,000.00 |
| | MARGARET WYCKOFF | 50,000.00 |
| | MAINSTAR-RONALD TALLMAN ROTH | 159,447.00 |
| | PHILLIP II & SHARON ROLLINS | 50,000.00 |
| | GRAHAM MARTIN | 125,000.00 |
| | WILLIAM HELLER | 30,000.00 |
| | WILLIAM NESTO | 200,556.69 |
| | PROV-NAFEES COLEMAN IRA | 73,000.00 |
| | JOHN & DOROTHY CREAMER | 250,000.00 |
| | CHARLES & TRACY CONNORS | 100,000.00 |
| | MAINSTAR-ROBERT FISHER | 50,000.00 |
| | MAINSTAR-JAMES PETERS | 232,939.55 |
| | MAINSTAR-PETER HOLLER ROTH IRA | 50,000.00 |
| | HEIDI POLITI | 50,000.00 |
| | MAINSTAR-COLLEEN JONES | 203,000.00 |
| | RANDY & ESTER SCHREFFLER | 1,000,000.00 |
| | BARBARA & ROBERT HAJAS | 138,000.00 |
| | JAMES LOCHTEFELD | 300,000.00 |
| | | |
| 9212 NIGHTINGALE DR, LOS ANGELES, CA - SENIOR | MAINSTAR-RICHARD FILLINGER IRA | 186,000.00 |
| | WILMA COOPER | 36,000.00 |
| | CHRISTOPHER MCCARROLL | 50,000.00 |
| | FRIENDS OF TRAVIS FISHER HOUSE | 50,000.00 |
| | DELTIS & JUDITH MOORE | 50,000.00 |
| | THERESA MADDEN | 35,000.00 |
| | DELORES HOLMES | 70,000.00 |
| | ELIZABETH GORDON FAMILY TRUST | 50,000.00 |
| | TIMOTHY & DANIEL WILSON | 28,000.00 |
| | DOST FAMILY TRUST | 190,000.00 |
| | JONATHAN BRUCE | 25,000.00 |

| | | |
|---|---|---:|
| | RICHARD AND LOIS CARLI | 200,000.00 |
| | JASON & ELIZABETH LACHANCE | 50,000.00 |
| | JOSEPH LURGIO | 25,000.00 |
| | ROBYN HAMER | 50,000.00 |
| | THOMAS FRAZER REVOCABLE TRUST 8/20/09 | 120,000.00 |
| | CHERYL SPARKS | 150,000.00 |
| | CHING-YU MENG | 50,000.00 |
| | HORACE HOLLEY JR | 50,000.00 |
| | MAINSTAR-RICHARD CHAYKIN | 268,000.00 |
| | LLOYD GOWDY | 90,000.00 |
| | SHIRLEY & GORDON KIRSTEN | 200,000.00 |
| | MARK MOSHEIM | 100,000.00 |
| | PROV-MICHAEL TYSON IRA | 50,000.00 |
| | THE MARTIN LANTIN DE MESA FAMILY TRUST | 100,000.00 |
| | PROV-UPENDRA & SMITA KULKARNI ICA | 200,000.00 |
| | PROV-KAREN SMITH IRA | 80,000.00 |
| | JAMES PEACE | 90,000.00 |
| | MICHAEL WEINER MD PA PROFIT SHARING PLAN | 100,000.00 |
| | LINDA STEVENS | 50,000.00 |
| | KENNETH AND THERESA LYONS | 100,000.00 |
| | ADVANTA IRA SVCS-DONALD SCHEMAN IRA | 40,000.00 |
| | MARK CAINE | 25,000.00 |
| | PROV-GARY HANAK | 36,700.00 |
| | LYNNE FRIEND | 100,000.00 |
| | JOHN S BRANCKE REV TRUST | 30,000.00 |
| | STEPHEN SWAFFORD (1 OF 2) | 50,000.00 |
| | SUNWEST-ALI NAJAFI ROTH IRA | 57,143.00 |
| | LAURA SIMPSON | 180,597.00 |
| | EDWARD CONWAY | 30,000.00 |
| | TATYANA KAPLAN | 25,000.00 |
| | RON & DONNA ROHRER | 200,000.00 |
| | MAINSTAR-STEVE GIDDENS | 60,229.28 |
| | ALBERT G CYR TRUST | 100,000.00 |
| | HAROLD RUECKERT | 25,000.00 |
| | FRED AND LORRAINE HANWELL | 35,000.00 |
| | WILLETT DAIRY FARM & CATTLE CO | 100,000.00 |
| | THOMAS AND PATRICIA MOORE | 60,000.00 |
| | LUCIE POHL | 25,000.00 |
| | MICHAEL AND RITA ARNOLD | 75,000.00 |
| | JAMES MCGRANN | 29,000.00 |
| | DAVID TOWNLEY | 50,000.00 |
| | BOWERS FAMILY TRUST | 53,000.00 |
| | GARY RINGSDORF | 100,000.00 |
| | RONALD GARCIA & MICHELLE HERNANDORENA-GARCIA | 50,000.00 |
| | IRA SVCS-DONALD MCKENZIE | 50,000.00 |
| | MICHAEL GUBLER | 100,000.00 |
| | MARK BEGGS | 240,000.00 |
| | CHARLES & SUSAN NOBLE | 25,000.00 |
| | MAINSTAR-CAROL SAVIO | 48,000.00 |
| | PATRICIA VEATCH TRUST 11/09/16 | 100,000.00 |
| | ANDERSON FAMILY REV LIVING TRUST 09/25/07 | 25,000.00 |
| | LOUIS & JOYCE COSTANZA | 40,000.00 |
| | FAMILY TRUST OF JOSEPH & CAROL LIMA | 30,000.00 |
| | RONALD RIZER | 90,000.00 |
| | ANN DELAP | 100,000.00 |
| | CAROLE & ROBERT SHAPIRO | 25,000.00 |
| | PROV-HELEN SUE VON INS-ROPERS IRA | 82,600.00 |
| | PROV-ALAN SCHULZ IRA | 23,382.01 |
| | PROV-JOHN LEROY ERICKSON IRA | 50,000.00 |
| | BETTINA FAVATA | 50,000.00 |
| | ROXY FELGER | 100,000.00 |
| | THOMAS ROSE (2 OF 2) | 50,000.00 |
| | PROV-LISA JACKSON ROTH IRA | 40,000.00 |

|  |  |  |
|---|---|---|
|  | PROV-JOAN MILLER | 128,058.00 |
|  | CAROL FELTON | 50,000.00 |
|  | SUNWEST-JEFFREY JONES | 60,000.00 |
|  | THOMAS ROSE (1 OF 2) | 50,000.00 |
|  | STEVEN & SHARON KOZAK | 60,000.00 |
|  | PATRICIA PEMBERTON | 50,000.00 |
|  | ROLAND AND RITA KYOVSKY | 130,000.00 |
|  | PROV-LEAH KEPLER IRA | 41,980.00 |
|  | PROV-MICHELLE BOGGS IRA | 64,300.00 |
|  | PROV-CRAIG MUENTER IRA | 75,000.00 |
|  | KENNETH PANKONIEN | 50,000.00 |
|  | MAINSTAR-GEORGE RIVERO | 35,000.00 |
|  | ELAINE AND BERNARD NESENOFF | 25,000.00 |
|  | PROV-KIM ROBB IRA | 25,000.00 |
|  | JAMES & SUSAN SEWALD | 25,000.00 |
|  | PROV-EILEEN SARICA IRA | 28,576.59 |
|  | PROV-DANIEL FENDER IRA | 119,481.60 |
|  | CAROL & CHAZZ SCHOENFELD | 50,000.00 |
|  | DOYLE & MARCIA RUMSEY | 50,000.00 |
|  | BKD SOLO 401K TRUST FBO ROBERT DESANTIS | 100,000.00 |
|  | BRUCE ORCHARD | 42,000.00 |
|  | CURTIS JORDAN | 30,000.00 |
|  | DELWYN AND BETTY WAYNER | 25,000.00 |
|  | THE E ELAINE SMETANA TRUST 8/17/94 AMENDED | 200,000.00 |
|  | PATRICIA & DONALD KRAHN | 25,000.00 |
|  | BRENDA BLACK | 30,000.00 |
|  | MAY FAMILY RLT 7/8/2005 | 50,000.00 |
|  | CAROLYN STRICKLAND | 60,000.00 |
|  | ELIZABETH & ROBERT DAWSON | 25,000.00 |
|  | PROV-DANNY LIME | 83,750.00 |
|  | GREGORY & NANCY WALL | 100,000.00 |
|  | WALTER & MARY JANE BROADWELL | 25,000.00 |
|  | NANCY HEDRICKS | 25,000.00 |
|  | STEPHEN SWAFFORD (2 OF 2) | 50,000.00 |
|  | THE NEW CASTLE COUNTY BOARD OF REALTORS | 50,000.00 |
|  | DAVE COOK | 35,000.00 |
|  | BERTSCH VACATION HOMES LLC | 55,000.00 |
|  | PROV-LINDA WEBB IRA | 26,500.00 |
|  | DENNIS & PEGGY FETTING JOINT LIVING TRUST 10/08/09 | 25,000.00 |
|  | BESSIE LONG | 25,000.00 |
|  | IRENE OLIN TRUST 02/25/98 | 60,000.00 |
|  | ROBERT TIDLER | 25,000.00 |
|  |  |  |
| **9212 NIGHTINGALE DR, LOS ANGELES, CA - DEV** | SILING LI | 25,000.00 |
|  | GAIL I KNITTER LIVING TRUST 11/10/11 | 25,000.00 |
|  | GAYLE & JOSEPH BREWER | 40,000.00 |
|  | ROBERT CASSIDY | 100,000.00 |
|  | ELIZABETH MUNK | 100,000.00 |
|  | IRA SVCS-AMY ANN FOOTE IRA | 34,500.00 |
|  | MAINSTAR-GORDON KIRSTEN | 65,000.00 |
|  | DANIEL & LINDA VALENTINE | 300,000.00 |
|  | PROV-MICHAEL ALEXANDER IRA | 161,000.00 |
|  | PATRICIA MCCUTCHEON | 25,000.00 |
|  | PROV-MAREL SIGSWAY IRA | 120,000.00 |
|  |  |  |
| **1520 CARLA RIDGE (TWO), BEVERLY HILLS, CA - SENIOR** | JOHN MEDEIROS TRUST | 100,000.00 |
|  | THE HELEN CASTRO FAM LIV TRUST 8/6/14 | 150,000.00 |
|  | MARILYN MASON | 100,000.00 |
|  | MYONG KEITH | 30,000.00 |
|  | LAURENCE POPOLIZIO | 55,000.00 |
|  | GLENN ZAHLMANN | 50,000.00 |
|  | HERMAN AND JOYCE ZEMKE | 100,000.00 |
|  | EDGAR PROCTOR | 200,000.00 |

| | | |
|---|---|---|
| | JAMES K POTTS LIVING TRUST 4/20/2000 | 50,000.00 |
| | ELLEN PARKER | 215,000.00 |
| | RUTH TRAMMELL | 300,000.00 |
| | IRENE PEIGLER | 35,000.00 |
| | PROV-KRASMIR TODOROV IRA | 40,000.00 |
| | IRA SVCS-LUCY TAYLOR | 100,000.00 |
| | HUIXIAN CHEN | 100,000.00 |
| | RICHARD LAROCHELLE | 50,000.00 |
| | SHAHEED MOHAMMED LIVING TRUST | 75,000.00 |
| | PROV-GARY SMITH IRA | 111,000.00 |
| | PROV-JOHN ERICKSON IRA | 50,000.00 |
| | PROV-CHERIE BONO IRA | 30,000.00 |
| | THE WHITE REVOCABLE TRUST | 90,000.00 |
| | THOMAS SCHOENHERR | 100,000.00 |
| | PROV-NORMA FLEMING | 236,000.00 |
| | PROV-CRAIG PEARSALL IRA | 220,000.00 |
| | ENOLA & CLYDE ALLEN | 48,000.00 |
| | BANGALORE NEELAKANTIAH | 50,000.00 |
| | HERMENEGILDO AND ASUNCION KADILE | 60,000.00 |
| | PROV-MICHAEL BROWN IRA | 35,000.00 |
| | MICHAEL BROWN | 25,000.00 |
| | TIM & SHERRI MAKELA | 220,000.00 |
| | RICKIE AND DONNALOU ALEXANDER | 60,000.00 |
| | RICHARD FINDLEY | 25,000.00 |
| | WILLIAM & LOREEN FACKENTHALL | 50,000.00 |
| | WAYNE & BETTY STURTEVANT | 25,000.00 |
| | PROV-MARK MCKAY IRA | 205,000.00 |
| | MAINSTAR-STACEY MAXTED | 29,000.00 |
| | HERCZOG FAMILY TRUST | 350,000.00 |
| | PHYLLIS F PERLIN REV TRUST | 70,000.00 |
| | MARJORIE ALLEN | 100,000.00 |
| | PROV-CORRINE SANCHEZ IRA | 99,647.52 |
| | DARREL AND MARY LOU SPICER | 100,000.00 |
| | GREGORY BATUK | 60,000.00 |
| | BRUCE & CATHERINE TERRY | 25,000.00 |
| | SCOTT HEWETT | 75,000.00 |
| | | |
| **1520 CARLA RIDGE (TWO), BEVERLY HILLS, CA - DEV** | BENJAMIN & NICOLE BORCHELT | 50,000.00 |
| | ROBERT MCGOWAN | 50,000.00 |
| | LYNDA LILLY | 100,000.00 |
| | GG FAMILY TRUST | 50,000.00 |
| | CAROLYN TEAGUE | 25,000.00 |
| | PROV-CONSTANCE WILLIAMSON IRA | 25,000.00 |
| | ELISSA & JOSEPH BERLINGER | 25,000.00 |
| | RUSSELL GONNAM | 50,000.00 |
| | LYLE SHELLY | 50,000.00 |
| | PROV-ROBERT MOSHER IRA | 34,000.00 |
| | PROV-ROBERT TRYON IRA | 398,000.00 |
| | ROBERT LAYTON | 50,000.00 |
| | JAMES & JOYCE WOOD | 50,000.00 |
| | RICHARD & BETTY GAWLIK | 88,000.00 |
| | LEONARD FORTUNE | 100,000.00 |
| | IRA SVCS-GRADY WILLOUGHBY | 105,000.00 |
| | SANDRA SETTLEMIRE | 25,000.00 |
| | MAINSTAR-DONALD SPENCER | 35,000.00 |
| | ROBIN BLAIWES | 50,000.00 |
| | SUSAN MEYERS | 85,000.00 |
| | IRA SVC-DIANE VARNER | 86,500.00 |
| | LEOPOLDO RAMOS | 100,000.00 |
| | RONALD MYRICK SR REVOCABLE LIVING TRUST 02/12/07 | 50,000.00 |
| | JOHN & KATHY BERWICK | 25,000.00 |
| | IRA SVC-RAE CASH ROTH IRA | 25,000.00 |
| | VERNON HESS & DEBBI RAPPA | 30,000.00 |

| | | |
|---|---|---|
| | JANE & HARRY BREYER T/O/D | 50,000.00 |
| | RANDALL CAMP | 25,000.00 |
| | LORI DONDIEGO | 25,000.00 |
| | ELAINE BROWER LIVING TRUST 10/01/03 | 180,000.00 |
| | FRANK DELORENZO JR | 50,000.00 |
| | | |
| 24055 HIDDEN RIDGE RD (TWO), HIDDEN HILLS, CA - SENIOR | DANIEL & DARYL BOWERS | 94,500.00 |
| | THE BEL AIR III CRUT | 25,000.00 |
| | CHELTEN FAMILY TRUST | 25,000.00 |
| | IRA SVCS-PETER RICHTER | 25,000.00 |
| | JAMES MCDONALD | 75,000.00 |
| | ADAM AND MARY FEIST | 50,000.00 |
| | KERMIT BREYER | 11,000.00 |
| | ROBERT AND SHEILA MCNEELEY | 50,000.00 |
| | DAVID AND JILL HARDIN | 75,000.00 |
| | JUDITH BYRUM | 30,000.00 |
| | DOUG AND MARION HORWOOD | 50,000.00 |
| | RANDY TRAINER | 40,000.00 |
| | PROV-BARBARA TOTH IRA | 106,000.00 |
| | PROV-DONALD PENDAGAST IRA | 27,500.00 |
| | SIDNEY AND MARY ANN ANDERSON | 100,000.00 |
| | JOYCE KRAVITSKY | 30,000.00 |
| | JEFFREY WOLK | 150,000.00 |
| | DARRELL AND SHARON VITTONE | 88,000.00 |
| | DONLIE SMITH | 75,000.00 |
| | MARY LOU & DAVID BRANDEBERY | 200,000.00 |
| | MICHAEL AND PATRICIA ONESKO | 25,000.00 |
| | MAINSTAR-MICHAEL MILLWARD ROTH IRA | 32,343.00 |
| | PROV-LEE GILBERT ROTH IRA | 49,100.00 |
| | GERALD ROY | 75,000.00 |
| | HIROYUKI GOSDEN | 25,000.00 |
| | KENT & PATRICIA FLETCHER | 50,000.00 |
| | FRANK CEPULKOWSKI | 50,000.00 |
| | PROV-DAVID HERMANSEN IRA | 159,764.00 |
| | PROV-GERALD ROETHLE JR IRA | 48,000.00 |
| | NANCY WRIGHT AND MATTHEW RADER | 100,000.00 |
| | LONNIE & CAROLYN THOROMAN | 50,000.00 |
| | GENEVIEVE COLEMAN | 50,000.00 |
| | COLTRIN BROTHERS LLC | 200,000.00 |
| | TERRANCE PELTON | 50,000.00 |
| | WEBESHETE ASEFA | 50,000.00 |
| | LOWELL PETERSON | 100,000.00 |
| | JEFFREY & BRENDA MILLER | 50,000.00 |
| | DAVID DAWSON | 50,000.00 |
| | THE E ELAINE SMETANA TRUST 08/17/94 AS AMENDED | 100,000.00 |
| | DANIEL RODRIGUEZ | 50,000.00 |
| | RONALD AUBLE | 50,000.00 |
| | KENNETH ROSTANT | 50,000.00 |
| | HORIZON-MELINDA BROWN IRA | 58,202.00 |
| | | |
| 24055 HIDDEN RIDGE RD (TWO), HIDDEN HILLS, CA - DEV | MELCHERT FAMILY TRUST 3/18/05 | 25,000.00 |
| | ROBERT L SCHATTNER TRUST | 100,000.00 |
| | BRYAN & DANETTE PYLES | 100,000.00 |
| | PROV-WILLIAM CABLE INDIVIDUAL CASH ACCOUNT | 57,400.00 |
| | ESTELLE GORDON | 50,000.00 |
| | ALFRED & AIDA HART RESTATED & REV LVG TRUST | 25,000.00 |
| | MARIAN E GENNARO REVOCABLE TRUST | 50,000.00 |
| | REV TRUST RHODA BERMON 12/12/95 (2 OF 2) | 50,000.00 |
| | JEAN & CORONA LETHIECQ TRUST | 150,000.00 |
| | DELAINE KEMPE REVOCABLE TRUST 1/4/12 (2 OF 2) | 45,000.00 |
| | ZAKS ASSET MANAGEMENT TRUST | 39,000.00 |
| | KAREN & WILFORD OLSON | 50,000.00 |
| | RICHARD KIRK REVOCABLE LIVING TRUST | 50,000.00 |

| | | |
|---|---|---|
| | ILENE PATTERSON | 25,000.00 |
| | ALVIN & DEANNA SACKER | 25,000.00 |
| | ROBERT KAMMES | 25,000.00 |
| | SHARON WOLK KIRK REVOCABLE LIVING TRUST | 50,000.00 |
| | DENNIS & KATHRYN PATTEN | 25,000.00 |
| | MARY THOMPSON | 50,000.00 |
| | PATTI DONNELLY | 50,000.00 |
| | KELLY BOEDDEKER | 25,000.00 |
| | MARIE & JULIE MARCHANTE | 25,000.00 |
| | PROV-SUE MOSHER IRA | 25,000.00 |
| | STEIGMAN INC | 100,000.00 |
| | ABRAHAM WORKMAN | 50,000.00 |
| | MAINSTAR-BARBARA REYNOLDS | 26,000.00 |
| | JEFFREY & MICHELLE AUGASON | 50,000.00 |
| | LEROY BUCKNER | 25,000.00 |
| | MENG SE & MARY TAING | 100,000.00 |
| | JEFF FORD ENTERPRISES | 50,000.00 |
| | SYLVIA & RICHARD RUGGIERO | 90,000.00 |
| | MAINSTAR-KELLI HUNTER | 500,000.00 |
| | PROV-ROGER PIETZ ROTH IRA | 85,600.00 |
| | DANIEL & BRENDA HOMAN REV LIVING TRUST | 116,500.00 |
| | PROV-STEVEN SCHULTZ ROTH IRA | 50,000.00 |
| | ESTHER & EUGENE EVANS | 100,000.00 |
| | BETTY & NICK PUTHOFF | 100,000.00 |
| | CATHY BAILEY | 117,000.00 |
| | ALBERT NORRIS | 100,000.00 |
| | PROV-DAVID LITTLEFIELD ROTH IRA | 34,464.00 |
| | GERALD ROETHLE JR | 50,000.00 |
| | MAINSTAR-WILLIAM PEAVEY | 70,000.00 |
| | PROV-JAMES FLETCHER IRA | 150,000.00 |
| | PROV-LINDA LENNARTZ IRA | 79,500.00 |
| | HUNTER EVANS | 50,000.00 |
| | DENNIS HELVEY | 100,000.00 |
| | PROV-JAG-JEFFREY UHLAND IRA | 107,000.00 |
| | ALEXANDER TOSI | 50,000.00 |
| | GERALD & BEVERLY LEHMAN | 340,000.00 |
| | XIAOLIN SHI & LAN DIWU | 25,000.00 |
| | PROV-HELEN BURNEY IRA | 250,000.00 |
| | PROV-BETTY BELIN IRA | 280,000.00 |
| | PROV-DAN HOVEN IRA | 39,200.00 |
| | ISAAC SHANK | 90,000.00 |
| | PROV-GAYLE REIFFER BRUGGINK ROTH IRA | 40,000.00 |
| | JOHN & JOAN O'NEILL | 250,000.00 |
| | TOMMYE GAYLER | 75,000.00 |
| | ADOLFO & XIOMARA REQUEJO | 200,000.00 |
| | ERVIN REIMER | 50,000.00 |
| | CHARLES COATE | 100,000.00 |
| | TANG SHIUN YEH | 50,000.00 |
| | HEIDI POLITI | 100,000.00 |
| | MAINSTAR-BONITA GAINEY | 94,000.00 |
| | MAINSTAR-MINA BENNET | 115,000.00 |
| | MAINSTAR-JACK GRONKE SR | 100,000.00 |
| | KATHLEEN & DWIGHT DURYEA T/O/D D MURRAY & T DURYEA | 200,000.00 |
| | MARY PHILLIPS | 84,328.58 |
| | NELL ABSTON | 250,000.00 |
| | FRANCIS & PHYLLIS LINEBACK | 25,000.00 |
| | W KENNETH GREENWOOD FAMILY TRUST | 250,000.00 |
| | PROV-DONALD NOBLES IRA | 88,400.00 |
| | LEWIS & RUTH RACHMELL REV LIVING TRUST | 50,000.00 |
| | MARIE RECINE T/O/D | 25,000.00 |
| | JOSEPH & FRANCINE SPANIAL | 100,000.00 |
| | ARLENE & IRA GOLDSTEIN T/O/D | 50,000.00 |

| | | |
|---|---|---|
| **1357 LAUREL WAY (TWO), BEVERLY HILLS, CA - SENIOR** | RONALD HEBERT | 100,000.00 |
| | TODD & AMY KOVAL | 25,000.00 |
| | LILIAN PELTZ-PETOW | 25,000.00 |
| | CLAUDE PELTZ | 25,000.00 |
| | MONA HUSH | 70,000.00 |
| | GILBERT & CHARLENE PEICHEL | 25,000.00 |
| | KLAUS AND CECELIA GERSDORF | 80,000.00 |
| | DOROTHY J BAUMBACH IRREV TRUST | 50,000.00 |
| | INDRA & BHARATI PATEL | 50,000.00 |
| | THE JOHN & BETTY DUNNE FAMILY TRUST | 300,000.00 |
| | ROBERT MICHEL IRREVOCABLE TRUST | 50,000.00 |
| | SEMEN SHKRABOV AND ELENA KORABELNIKOVA | 50,000.00 |
| | PROV-MICHAEL BINKERD IRA | 230,100.00 |
| | PROV-WILLIAM JABLONSKI IRA | 40,631.00 |
| | CHIERIE L BONO REVOCABLE TRUST 12/2/05 | 50,000.00 |
| | CURTIS COOK | 100,000.00 |
| | PROV-JOHN WORDEN IRA | 19,000.00 |
| | ALBERT AND MARIAN ELLIOTT LIVING TRUST 5/29/03 | 100,000.00 |
| | GERALD AND ELIZABETH SJAASTAD | 150,000.00 |
| | JAMES AND LORRAINE SHINDLER | 50,000.00 |
| | IRENE CLAVERIA FAMILY LTD PARTNERSHIP | 50,000.00 |
| | WILLET DAIRY FARM & CATTLE CO | 100,000.00 |
| | VERNON & RITA LEMKE | 25,000.00 |
| | KEVIN AND LORI MOTES | 100,000.00 |
| | MICHAEL WEINER MD PA PROFIT SHARING PLAN | 50,000.00 |
| | LEGACY 1 LLC | 100,000.00 |
| | PROV-CHAD PIPPENGER IRA | 47,700.00 |
| | MORTON & FRANCYNE KUGELMAN | 60,000.00 |
| | IRENE SCHMIDT | 100,000.00 |
| | JOHN HAROLD FAGAN III & JOHN HAROLD FAGAN | 25,000.00 |
| | PROV-KENNETH HOLBROOK IRA | 80,000.00 |
| | PROV-WILLIAM MOORE IRA | 99,500.00 |
| | MAINSTAR-PAMELA MCGOWAN | 100,000.00 |
| | MAINSTAR-ROBERT MCGOWAN | 125,000.00 |
| | BRUCE AND SUSAN MAYFIELD | 55,000.00 |
| | JOHN AND SUSAN RUNKLE | 50,000.00 |
| | MAINSTAR-ROBERT MCGOWAN SEP IRA | 40,000.00 |
| | BOYD JR & BRENDA ARMSTRONG | 25,000.00 |
| | HERITAGE CONSULTING GROUP OF OHIP EMP 401K PLAN | 30,000.00 |
| | NORMA WEINER LIVING TRUST 11/13/13 | 200,000.00 |
| | EDWARD & ARLENE HORNUNG JOINT REVOCABLE TRUST | 25,000.00 |
| | THE LAWLESS TRUST | 50,000.00 |
| | PROV-PAMELA LAWRENCE IRA | 33,054.00 |
| | ROBERT MACDONALD | 25,000.00 |
| | EMMA SJAASTAD | 50,000.00 |
| | MICHAEL & ELIZABETH SMITH | 50,000.00 |
| | BARBARA ASHMORE | 70,000.00 |
| | LARRY BLACKBURN | 55,000.00 |
| | PROV-RICKIE ALEXANDER IRA | 63,500.00 |
| | | |
| **1357 LAUREL WAY (TWO), BEVERLY HILLS, CA - DEV** | GERALD & CERESE SCHULTZ | 50,000.00 |
| | PROV-TERRY SCHACKOW IRA | 100,000.00 |
| | PROV-BRADLEY GIBSON IRA | 139,000.00 |
| | BRENDA PHILLIPS-TINGLE | 100,000.00 |
| | PROV-STEPHEN SCHEID IRA | 107,000.00 |
| | PROV-ROBERT SHARKEY IRA | 99,000.00 |
| | RALPH & BEVERLY EASTERHAUS | 35,000.00 |
| | MARILYN & JONAS LINDE | 75,000.00 |
| | PROV-PAULA BRIDGES IRA | 107,000.00 |
| | MAINSTAR-SUE FILLINGER | 71,000.00 |
| | JAMES LOCTHEFELD | 225,000.00 |
| | PROV-DOUG ONESKO IRA | 50,000.00 |
| | LYNDA LILLY (1 OF 2) | 58,000.00 |

| | | |
|---|---|---:|
| | MAINSTAR-DAWN SHAW | 59,000.00 |
| | TIMOTHY & MEREDITH HELTON | 300,000.00 |
| | MAINSTAR-PAUL CALAMARI | 61,351.00 |
| | MAINSTAR-PAUL MARNELL | 100,440.00 |
| | MARY ROWE | 100,000.00 |
| | ROBERT & NORMA ROWE | 1,000,000.00 |
| | JOHN & SHIRLEY SMITH | 200,000.00 |
| | JAMES & ROMA MURPHY | 50,000.00 |
| | SANDRA & JAMES O'BRIEN | 50,000.00 |
| | IRA SVCS-MARIANNE HERLONG | 50,000.00 |
| | FRANCIS ALBANESE | 30,000.00 |
| | MAINSTAR-ELEANOR AGUILAR | 173,708.00 |
| | PROV-CARLA HONIG IRA | 108,169.02 |
| | JAMES HAMM | 100,000.00 |
| | MAINSTAR-DANIEL SMITH | 30,000.00 |
| | MAINSTAR-LUCILLE FLAIL | 30,000.00 |
| | MAINSTAR-THERESA JACKSON | 108,000.00 |
| | MAINSTAR-PHILLIP GOEDECKE | 25,000.00 |
| | SHIRLEY KIRSTEN | 240,000.00 |
| | THE PHUONGANH BRENNAN REV LIVING TRUST | 200,000.00 |
| | PROV-MICHAEL MARKERT IFA | 67,216.00 |
| | RONALD VARNER | 50,000.00 |
| | JOHN & WILMA REBUCK | 150,000.00 |
| | ALLISON & ANTHONY MELOGRANO | 50,000.00 |
| | ELIO PESATO | 50,000.00 |
| | PROV-EDWARD VANCE IRA | 50,000.00 |
| | FRANK & CHRISTINE DIETRICH | 300,000.00 |
| | LYNDA LILLY (2 OF 2) | 60,000.00 |
| | JEFFREY WAYBRIGHT | 80,000.00 |
| | TOMMYE GAYLER | 75,000.00 |
| | SANDRA B HAYNES REVOCABLE LIVING TRUST | 250,000.00 |
| | JUDITH ROUTZAHN | 75,000.00 |
| | WILLIAM & DONNA ROBBINS | 70,000.00 |
| | PROV-CAROLYN DIEHL IRA | 25,000.00 |
| | PROV-MARCELLA PRICE IRA | 51,000.00 |
| | ROBIN MCBRIDE | 90,000.00 |
| | PROV-JAMES RIVENBURG IRA | 38,600.00 |
| | PROV-STEPHEN ESLINGER IRA | 32,300.00 |
| | DALE & PAULA FORD | 50,000.00 |
| | JAMES JOHNSON LIVING TRUST | 35,000.00 |
| | IRA SVC-TERESA HORNFECK | 53,000.00 |
| | PROV-LORRAINE SCHOCKET IRA | 200,000.00 |
| | BETTY JO BROWN | 100,000.00 |
| | MAINSTAR-BASIL FRANKLIN JR | 205,000.00 |
| | PROV-JEANNIE GRABINSKI IRA | 50,000.00 |
| | MAINSTAR-JERALD SCHULZE | 61,000.00 |
| | MAINSTAR-MELISSA BLAINE | 225,000.00 |
| | | |
| **810 SARBONNE RD, LOS ANGELES, CA - SENIOR** | RUTH CAMP PERSONAL CARE TRUST | 52,000.00 |
| | BEVERLY BERNEDENE PETERS TRUST | 50,000.00 |
| | THE RUSSELL & DORIS HOKANSON LIVING TRUST | 100,000.00 |
| | JUDITH & ROBERT MALTZ | 50,000.00 |
| | LAURENCE POWER | 25,000.00 |
| | MAINSTAR-ROGER GRAYSON | 93,000.00 |
| | PROV-RICKY VOSS SEP IRA | 46,340.00 |
| | RICHARD & BEVERLY CROWE | 65,000.00 |
| | EDMUND & VIRGINIA NIMMOW | 40,000.00 |
| | MARK BAKER | 35,000.00 |
| | MARIA CELIZ | 25,000.00 |
| | KIMBAL AND JULIE RAGAN | 100,000.00 |
| | PROV-MARK BAKER IRA | 100,000.00 |
| | DONNA GOUDE | 122,535.00 |
| | THE JOHN J AND JANE A FUCHS REVOCABLE LIVING TRUST | 50,000.00 |

| | | |
|---|---|---|
| | SEYMOUR GELDZAHLER | 100,000.00 |
| | ROSE-ELLEN HOPE | 75,000.00 |
| | FRED & HELEN HOLDENER | 100,000.00 |
| | RANDY BYRNES | 50,000.00 |
| | BRAD AND MARIA KAISER | 350,000.00 |
| | ALFRED J ORTENZO REV TRUST | 50,000.00 |
| | S&R KELLER FAMILY TRUST | 140,000.00 |
| | CHRISTINA GALLAGHER | 50,000.00 |
| | GARDEN CITY MASONIC F&AM #587 | 25,000.00 |
| | RONALD & HEIDI CLEMENS | 50,000.00 |
| | THE MAMO FAMILY TRUST 11/18/02 | 30,000.00 |
| | IRVIN JR & DIANE VARNER | 40,000.00 |
| | CINDY & RANDALL HUFFMAN | 25,000.00 |
| | MARIA HOLLAND | 365,000.00 |
| | SHERYL SIMPSON | 30,000.00 |
| | BETTY B HOLLAND LIVING TRUST 2/20/1998 | 100,000.00 |
| | RICHARD DRINKER JR | 25,000.00 |
| | CYNTHIA LEPPERT | 25,000.00 |
| | JOHN BIRKMEYER | 42,000.00 |
| | CLARENCE & PHYLLIS SMITH | 25,000.00 |
| | NORM MEIER | 100,000.00 |
| | PROV-ALFRED GROVES IRA | 71,000.00 |
| | PROV-BRUCE BINNS IRA | 100,000.00 |
| | PATRICIA ONNINK | 50,000.00 |
| | DEBRA JENKS-LATOUR | 30,000.00 |
| | WAYNE FORD | 50,000.00 |
| | PROV-JOYCE FRIEDMAN IRA | 85,000.00 |
| | PROV-JOHN APPLETON IRA | 372,000.00 |
| | JON AND KAY WILABY | 100,000.00 |
| | MAINSTAR-NANCY LANGDON | 37,200.00 |
| | ADVANTA SVC-DARLENE JANIESCH IRA | 39,000.00 |
| | MAINSTAR-GARY WOODS | 29,000.00 |
| | ALBERT BROWN | 50,000.00 |
| | GARY MACPHERSON | 60,000.00 |
| | ALBERT EVENER | 22,000.00 |
| | MARIANNE HORNER TRUST | 50,000.00 |
| | KARYTA BARNES | 25,000.00 |
| | | |
| 810 SARBONNE RD, LOS ANGELES, CA - DEV | MARTIN & JUDY ANDREWS | 100,000.00 |
| | LESTER CUMMINGS JR | 50,000.00 |
| | CORT GILLEN | 25,000.00 |
| | PROV-NORAH SOWA IRA | 116,500.00 |
| | DAVID & BRENDA LANDWEHR | 80,000.00 |
| | SHERRY CORDONNIER | 25,000.00 |
| | ROCCO FAVATA | 30,000.00 |
| | JAMES & DONNA COTTER | 50,000.00 |
| | CORNERSTONE GROWTH | 50,000.00 |
| | DAVID & GYL HANNA | 100,000.00 |
| | STEVEN & DIANA RAINS | 50,000.00 |
| | LINDA & RON EVERTS | 25,000.00 |
| | CORY THOMPSON | 25,000.00 |
| | JAMES TOLSON JR | 50,000.00 |
| | JEAN & EDWARD CONWAY REVOCABLE TRUST | 30,000.00 |
| | CLAIRE MUMMERT | 50,000.00 |
| | MAINSTAR-RAYMOND SANDERS | 50,000.00 |
| | PROV-LARRY LOGERO IRA | 130,000.00 |
| | SUNWEST-LAUREL CHASE IRA | 70,342.93 |
| | THE MARIE MARCHANTE FAMILY TRUST 08/21/00 | 50,000.00 |
| | INDRA & BHARATI PATEL | 100,000.00 |
| | PETER & ELIZABETH AUCOIN | 50,000.00 |
| | MAINSTAR-LOIS HAIGAZIAN | 50,000.00 |
| | WILLIAM MILES | 20,000.00 |
| | LARRY MORGAN | 25,000.00 |

| | | |
|---|---|---:|
| | MAINSTAR-JAMES FODOR | 399,000.00 |
| | LOUIS & KATHRYN STROTHMAN | 110,000.00 |
| | ALAN ROEKLE | 120,000.00 |
| | SHIRLEY ALTMAN REVOCABLE TRUST AGREEMENT | 25,000.00 |
| | DRURY IRREVOCABLE TRUST 06/25/09 | 100,000.00 |
| | GEORGE & NANNIE NICHOLS | 25,000.00 |
| | VICTOR JOHNSTON LIFE INSURANCE TRUST | 116,000.00 |
| | | |
| **1484 CARLA RIDGE (THREE), BEVERLY HILLS, CA - SENIOR** | DAWN HAGGERTY | 26,000.00 |
| | VIVIAN SKIMINA | 25,000.00 |
| | PROV-BRUCE DEWALD ROTH IRA | 19,000.00 |
| | RUSSELL & TERRY BOEHM | 100,000.00 |
| | LORRAINE J MINETTI REVOCABLE TRUST 6/2/97 | 100,000.00 |
| | RICHARD & LINDA CHELTEN TTEES/CHELTEN FAMILY TRUST | 70,000.00 |
| | BERNARD & ELAINE NESENOFF | 25,000.00 |
| | DELWYN & BETTY WAYNER | 25,000.00 |
| | VERA & BRYAN BRADFORD | 100,000.00 |
| | DONALD & DAWN DRENGUBA | 25,000.00 |
| | SAPONE REVOCABLE TRUST 2/23/10 | 25,000.00 |
| | BRIAN & MARY DISCHLER | 150,000.00 |
| | RONALD WOLFF | 100,000.00 |
| | MARGARET BAYLESS | 75,000.00 |
| | LAURA SCOTT | 50,000.00 |
| | SIEGFRIED SCHMIDT | 50,000.00 |
| | MARTHA CRAIG | 43,000.00 |
| | PROV-CARL OTTERNESS IRA | 60,000.00 |
| | TAM CHANG & MEI-SHE CHEN | 100,000.00 |
| | PROV-DAVID MCCOMAS IRA | 100,000.00 |
| | PROV-MICHAEL MOELLER IRA | 100,000.00 |
| | HORIZON-SARA MARSHALL | 200,000.00 |
| | PROV-ANTONETTE RENSHAW IRA | 45,000.00 |
| | PROV-JUDITH RENSHAW IRA | 50,000.00 |
| | PROV-JACKWAYS D KESLING INHERITED IRA | 200,000.00 |
| | PROV-SHARON FENDER IRA | 120,000.00 |
| | PROV-JEFFREY WILKINSON | 148,000.00 |
| | JEAN & JOHN ALME | 50,000.00 |
| | KENNETH & KAREN WELLMAN KEYSTONE TRUST | 50,000.00 |
| | ADAM & MARY FEIST | 50,000.00 |
| | FRANK GRASMUGG | 75,000.00 |
| | ROBERT & SARAH REBMAN | 50,000.00 |
| | JEFF THE GEEK LLC | 100,000.00 |
| | TIMOTHY HANSON & MAERENE LEWIS | 50,000.00 |
| | IRA SVCS-JOHN SEMON | 42,000.00 |
| | MAINSTAR-ELEANOR NADZAN | 131,500.00 |
| | PROV-JOHN LEROY ERICKSON IRA | 50,000.00 |
| | KATHLEEN KELLER | 25,000.00 |
| | THOMAS & BONNIE ZUBERBIER | 100,000.00 |
| | CRAIG PEARSALL | 225,000.00 |
| | PRATT FAMILY CABIN TRUST | 200,000.00 |
| | BARBARA INGEBRIGTSEN | 100,000.00 |
| | LINDA RACINE REVOCABLE TRUST 10/23/14 | 25,000.00 |
| | DONALD HILL | 25,000.00 |
| | PROV-WILLIAM & JO-ANN MCMILLAN REVOCABLE TRUST | 30,000.00 |
| | PROV-ANTHONY ELVAS IRA | 59,714.00 |
| | PROV-JAMES & SHEILA BRENTON ICA | 30,000.00 |
| | MAINSTAR-MICHAEL PAYTON | 109,538.00 |
| | PAUL & CONNIE BRYAN | 33,700.00 |
| | MARK BAKER (2 OF 2) | 25,000.00 |
| | PROV-ROGER VANDERSTEEN IRA | 51,000.00 |
| | RONALD RUDOWSKI | 25,000.00 |
| | ROBERT & MARION BUDZ | 90,000.00 |
| | PROV-DONALD DAILEY IRA | 33,500.00 |
| | THE KENNETH & ROSANNE BOEDEKER REVOCABLE LIVING TRUST 11/1/94 | 50,000.00 |

| | | |
|---|---|---|
| | LADWIG FAMILY TRUST | 25,000.00 |
| | JOEL & BARBARA KING | 25,000.00 |
| | BUDDY JENKINS | 100,000.00 |
| | FRANK KISKO | 25,000.00 |
| | PATRICK LOMBARDY | 25,000.00 |
| | ISABELLA DIMARCO | 100,000.00 |
| | MONGE FAMILY TRUST 02/25/10 | 75,000.00 |
| | JAMES SANDY | 100,000.00 |
| | THE DILDA-ROSS REVOCABLE TRUST | 25,000.00 |
| | MICHAEL LENIHAN | 25,000.00 |
| | MAINSTAR-JAMES DEJARLAIS | 100,000.00 |
| | JANE BOSMA | 55,000.00 |
| | MAINSTAR-TAD JINGUJI | 40,500.00 |
| | JOHN FIRMISS | 50,000.00 |
| | ROBERT GRAVENS TRSUT 04/15/96 | 25,000.00 |
| | RANDOLPH CLUNE | 80,000.00 |
| | IRA SVC-ROBERT CHATHAM III | 47,000.00 |
| | PROV-JOHN JASKO IRA | 107,500.00 |
| | MAINSTAR-CHARLES WHITLEDGE | 160,800.00 |
| | MAINSTAR-WARREN GRIFFIN | 25,430.28 |
| | PROV-KATHY LANE IRA | 90,810.00 |
| | FRANCIS & SUSAN GUIBERSON | 60,000.00 |
| | PROV-MORTON KUGELMAN IRA | 64,750.00 |
| | PROV-ROBERT LANE IRA | 28,400.00 |
| | | |
| 1484 CARLA RIDGE (THREE), BEVERLY HILLS, CA - DEV | PROV-STEVEN DUNNING IRA | 80,000.00 |
| | PROV-WILLIAM SHUSTOWSKI IRA | 110,000.00 |
| | MARY NITTMANN | 25,000.00 |
| | PROV-JOHN BOEDDEKER IRA | 31,000.00 |
| | JAMES HAMM | 25,000.00 |
| | SHEVAN DEMING | 65,000.00 |
| | MAINSTAR-RICHARD ZUIDERSMA | 26,000.00 |
| | RJK HILL FAMILY TRUST | 50,000.00 |
| | ROBERT SCHLICHTING | 50,000.00 |
| | TOMMYE GAYLER | 50,000.00 |
| | MAINSTAR-NATALIE RUBACHA ROTH IRA | 25,000.00 |
| | PAUL & ELLEN FEDYNA | 100,000.00 |
| | MAINSTAR-ROY DAVENPORT | 73,000.00 |
| | PROV-PATRICIA ONESKO IRA | 151,000.00 |
| | FILOMENA LAMONICA | 40,329.36 |
| | PROV-GARY VAN DYKE IRA | 25,000.00 |
| | EDWARD & CLARICE MAZZOLENI TRUST | 50,000.00 |
| | PROV-GAIL AKARD IRA | 200,000.00 |
| | PATRICK SPANGLER | 30,000.00 |
| | JEAN O'TOOLE | 100,000.00 |
| | MAINSTAR-KATHY WEST | 105,000.00 |
| | JOHN HERTVIK JR T/O/D | 65,000.00 |
| | WILLIAM GROODY | 105,000.00 |
| | KRISTI TRADER | 50,000.00 |
| | ROBERT & ANN GONCZ | 52,000.00 |
| | BASIL FRANKLIN JR | 25,000.00 |
| | MAINSTAR-DEE DEE BROOKS ROTH IRA | 50,000.00 |
| | RONALD MYRICK SR REVOCABLE LIVING TRUST 02/12/07 | 150,000.00 |
| | HARRY ROBERTSON JR | 25,000.00 |
| | PROV-GLEN GAMA IRA | 128,329.00 |
| | ELISSA & JOSEPH BERLINGER | 25,000.00 |
| | IRA SVC-ANN KEELAN | 104,000.00 |
| | IRA SVC-AUBREY STRICKLAND | 200,000.00 |
| | | |
| 375 TROUSDALE PLACE, BEVERLY HILLS, CA - SENIOR | WILLIAM ELIA | 50,000.00 |
| | CALLAGHAN PUMP & CONTROLS INC | 50,000.00 |
| | IRA SVCS-CHUC LY | 80,000.00 |
| | JEFFREY SHAW | 50,000.00 |

| | | |
|---|---|---:|
| | IC AVIATION | 50,000.00 |
| | JARA GROUP II LLC | 50,000.00 |
| | THE JAMES & RHONDA KESTER LIVING TRUST 12/15/03 | 50,000.00 |
| | JOHN HACKMAN | 50,000.00 |
| | ELIZABETH SORIANO | 25,000.00 |
| | HORIZON-JUAN MACIAS IRA | 49,500.00 |
| | PROV-STEVEN SCHULTZ ROTH IRA | 42,000.00 |
| | JAMES & VALUAH WOODBY | 50,000.00 |
| | HORACE HOLLEY JR | 40,000.00 |
| | JAMES CASE | 40,000.00 |
| | PROV-LAURA SNITZER ROTH IRA | 82,602.14 |
| | PAUL & MARGARET GIAMMARCO | 25,000.00 |
| | MICHAEL HUWE | 50,000.00 |
| | MAINSTAR-JOSEPH CENSOPLANO | 26,274.86 |
| | JUDITH NUSE | 25,000.00 |
| | KARNAIL SINGH | 25,000.00 |
| | MAINSTAR-LINDA SIEBE | 75,800.00 |
| | MARK & KATHY HOLMAN | 50,000.00 |
| | SANDRA SNYDER | 40,000.00 |
| | MARIA & LUIS MARES | 50,000.00 |
| | RANDEL LILLIE & JANET MAULIN | 80,000.00 |
| | RODGER MAYRAND | 40,000.00 |
| | JACK GWALTNEY | 25,000.00 |
| | REVOCABLE LIVING TRUST OF EMMETT & SHARON GIBSON 01/15/08 | 100,000.00 |
| | JOSEPH SIRIANNI FAMILY REV LVG TRUST | 50,000.00 |
| | GENEVIEVE COLEMAN | 50,000.00 |
| | DAVID ASHWORTH REVOCABLE LIVING TRUST | 300,000.00 |
| | PROV-MICHAEL CONCASCIA IRA | 53,300.00 |
| | BARBARA WOHLWEND LIVING TRUST 08/15/08 | 35,000.00 |
| | CURTIS & SHARON AYRES | 80,000.00 |
| | JAMES MCDONALD | 50,000.00 |
| | JAMES RICE | 150,000.00 |
| | SALLLIE RICE | 400,000.00 |
| | HENRY PIERSON | 25,000.00 |
| | MAINSTAR-ANTHONY INENDINO | 69,000.00 |
| | MAINSTAR-RUTH HODNE | 42,000.00 |
| | PHILIP GREENFIELD REV LVG TRUST | 50,000.00 |
| | STEPHEN & HEIDI FAMER | 25,000.00 |
| | THELMA WILSON | 100,000.00 |
| | NEAL & MELODY STUTEVILLE | 184,000.00 |
| | FRIEDA RACHT | 50,000.00 |
| | DAVID & MELINDA BESELER | 50,000.00 |
| | MAINSTAR-NORMA BERTRAND | 47,000.00 |
| | IRA SVC-MARC FRUCHTER | 50,000.00 |
| | BARRIE & LARRY DUBIN | 25,000.00 |
| | NICHOLE HENDERSON | 30,251.20 |
| | PROV-MILDRED OHLER IRA | 53,177.00 |
| | IRA SVC-MELINDA WHEELER | 52,000.00 |
| | STEPHANIE FERNANDEZ | 50,000.00 |
| | JEFFREY & PATRICIA HOLMES | 50,000.00 |
| | PROV-HENYA BONETSKY IRA | 60,000.00 |
| | EDUARD & IVETA DANEK | 150,000.00 |
| | DAVID & HARRIET SAYER | 50,000.00 |
| | DAVID & ALICE MCGINLEY | 50,000.00 |
| | MICHAEL WEINER MD PA PROFIT SHARING PLAN | 250,000.00 |
| | DARLENE MOUW | 25,000.00 |
| | DIANNE SPIROFF | 100,000.00 |
| | PROV-CONSTANCE BOATWRIGHT IRA | 27,780.00 |
| | PROV-RACHELLE ALBANESE ROTH IRA | 25,000.00 |
| | BERTSCH VACATION HOMES LLC | 55,000.00 |
| | BLINDBURY FAMILY TRUST 04/11/91 | 50,000.00 |
| | SNEHAL & NIPA SHAH | 50,000.00 |
| | MICHAEL KLINEMAN | 50,000.00 |

| | | |
|---|---|---|
| | MAINSTAR-MURRAY MACKSON | 40,000.00 |
| | PROV-ROBERT REGNER IRA | 51,250.00 |
| | SUNWEST-SCOTT NEAL IRA | 50,000.00 |
| | CHRISTINA GALLAGHER | 30,000.00 |
| | MAINSTAR-DAVID ENGELBERT | 30,000.00 |
| | NOLA SHINABERRY | 25,000.00 |
| | JAMES MATTHEW | 50,000.00 |
| | PROV-THERESA CENTRONE IRA | 107,000.00 |
| | PROV-DIANNA AINSWORTH IRA | 40,000.00 |
| | LOUIS & MURIEL MORROW FAMILY TRUST | 30,000.00 |
| | JOAN & LOUIS GIOVACHINO REVOCABLE TRUST 12/30/07 | 25,000.00 |
| | | |
| 375 TROUSDALE PLACE (TROUSDALE), BEVERLY HILLS, CA - DEV | IRA SVC-CHARLES BARNES | 90,000.00 |
| | | |
| 642 SAINT CLOUD, LOS ANGELES, CA - SENIOR | MARIA & MIGUEL TABLADILLO | 25,000.00 |
| | PROV-JUDY TONG IRA | 65,000.00 |
| | MAINSTAR-JOANNE SOWELL | 38,863.45 |
| | DONALD GRIFFIN | 25,000.00 |
| | VERONICA MCDONALD | 25,000.00 |
| | PROV-DEREK MOORE IRA | 25,000.00 |
| | ALLAN MCDONALD | 50,000.00 |
| | NADINE GROSJEAN | 50,000.00 |
| | BARBARA CHADWICK | 50,000.00 |
| | RONALD & BETTY SCHROEDER | 25,000.00 |
| | BOBBY SANDERS FAMILY TRUST | 50,000.00 |
| | BARBARA KROPP | 40,000.00 |
| | CLARENCE WILLIAMS | 25,000.00 |
| | DARLENE WEINBERG | 40,000.00 |
| | DAVID DERRICK | 100,000.00 |
| | GREGORY & VIVIAN CARSON | 60,000.00 |
| | GREGORY & LINDA HARRISON | 30,000.00 |
| | KUANG-LEI & DIANA WU | 25,000.00 |
| | THE SCHMIDT FAMILY TRUST | 250,000.00 |
| | THE TRUST OF ANTONY MATARRESE | 200,000.00 |
| | FRED & ANN DAY | 25,000.00 |
| | RICHARD MAY | 50,000.00 |
| | DAVID KRZEMIEN | 30,000.00 |
| | WANDA & ARTHUR WILLIS | 33,000.00 |
| | CHARLES & MARY BEZZINA | 50,000.00 |
| | LISA NEAL | 50,000.00 |
| | JERRY & MELANIE SKARYD | 150,000.00 |
| | JOYCE KLINE | 25,000.00 |
| | RICHARD GRAINGER | 26,000.00 |
| | ATKINS FAMILY IRREVOCABLE TRUST | 190,000.00 |
| | WILMA HARPER | 30,000.00 |
| | THE GARY FITE REVOCABLE TRUST 10/13/09 | 1,000,000.00 |
| | MAINSTAR-ERIC RANDOLPH | 112,300.00 |
| | PROV-KEVIN BONAS IRA | 67,000.00 |
| | SUNWEST-BILLIE CANTER IRA (1 OF 2) | 193,500.00 |
| | BYRON BEALL | 150,000.00 |
| | MADOLYN CHANDLER | 31,391.79 |
| | WALTER & RUTH VEALE | 40,000.00 |
| | MAINSTAR-BRIAN ASTON | 60,000.00 |
| | MAINSTAR-DEE NICKOLS | 90,300.00 |
| | MAINSTAR-MELANIE JOSHUA | 100,000.00 |
| | MARIANNE KELLER | 200,000.00 |
| | PROV-PATRICIA JOHNSON IRA | 25,000.00 |
| | PROV-TIFFANY WIGGS TRADITIONAL IRA | 40,000.00 |
| | SHIRLEY SMEDLEY | 100,000.00 |
| | MICHAEL LEFKOWITZ LIVING TRUST | 100,000.00 |
| | EDWARD OSBORNE | 50,000.00 |
| | GEORGE & LYNNE MELLECKER | 75,000.00 |
| | CAROLE & HERBERT CAFARELLA | 100,000.00 |

| | | |
|---|---|---:|
| | ZHANA MAKSIMOV | 50,000.00 |
| | DANIEL STUDY | 100,000.00 |
| | SUNWEST-BILLIE CANTER IRA (2 OF 2) | 50,000.00 |
| | INDRA VIDAL | 50,000.00 |
| | GARY WRIGHT | 25,000.00 |
| | BETTY HAU | 25,000.00 |
| | BRUCE CECKA | 46,000.00 |
| | MAINSTAR-GEORGE GALE JR | 88,945.00 |
| | PROV-DAVID KEMP IRA | 161,170.00 |
| | PROV-GARY ACKERMAN IRA | 42,500.00 |
| | PROV-RICHARD WISE IRA | 53,000.00 |
| | PROV-MONIKA HUEY IRA | 62,500.00 |
| | FREDA ALFORD | 100,000.00 |
| | ABRAHAM KOLNIERZ 1999 TRUST | 25,000.00 |
| | PROV-KEITH NGUYEN | 110,000.00 |
| | DAVID & PATRICIA TOSHNER | 150,000.00 |
| | WILLIAM & JUDITH LUNSFORD | 45,000.00 |
| | MARY CASALE | 186,864.87 |
| | RICHARD CLAVERIA MD APC PENSION PLAN & TRUST | 50,000.00 |
| | CLAUDIA SYKES | 50,000.00 |
| | STEVEN PELZ | 75,000.00 |
| | FRED & KAREN RANDHAHN | 25,000.00 |
| | EVELYN TORKELSON | 25,000.00 |
| | PROV-BETTY LOU HARVEY ROTH IRA | 116,834.37 |
| | BOYD & BRENDA ARMSTRONG | 50,000.00 |
| | YURIKO & MICHAEL HENDERSON | 25,000.00 |
| | THOMAS VAUGHAN SR | 70,000.00 |
| | THE GERALD CARLSON LIVING TRUST | 25,000.00 |
| | THE ANDREW MYRICK REVOCABLE TRUST 05/18/17 | 125,000.00 |
| | MICHAEL REED | 25,000.00 |
| | PATSY RAE VELTING | 100,000.00 |
| | PROV-JERRY & KATHLEEN VERSEPUT ICA | 25,000.00 |
| | KARIN EICHHORN | 30,000.00 |
| | MIKHAIL MOROZOV TRUST | 100,000.00 |
| | THE ANDREA GRIGGS LIVING TRUST OF 2000 | 60,000.00 |
| | IRA SVC-JOYCE STOCK | 70,000.00 |
| | MICHAEL & CYNTHIA HALES | 72,000.00 |
| | PHAM FAMILY TRUST 05/09/02 | 25,000.00 |
| | GENEVIEVE COLEMAN | 50,000.00 |
| | MANUEL FAMILY REVOCABLE LIVING TRUST 02/07/03 | 100,000.00 |
| | PROV-GARY HANNABASS IRA | 50,330.00 |
| | PROV-WANDA HANNABASS IRA | 42,270.00 |
| | ROBERT OSTENDORFF JR & SHIRLEY COOPER | 50,000.00 |
| | GERALD & ELIZABETH SJAASTAD | 500,000.00 |
| | ROBERT BRAZEE | 75,000.00 |
| | THE HAENDEL TRUST 06/14/02 | 100,000.00 |
| | THE MARC & DENISE PIERRE FAMILY TRUST | 375,000.00 |
| | SHANE & KATHRYN LITZENBERGER | 50,000.00 |
| | DAVID & MARILYN BETTINGER | 250,000.00 |
| | BARBARA & TODD RUBENSTEIN T/O/D | 25,000.00 |
| | THE JEAN NISHIZU-SHIKATA TRUST 05/18/05 | 50,000.00 |
| | FRANCINE & ROBERT BOTWINICK | 25,000.00 |
| | RODNEY STAINBROOK | 25,000.00 |
| | PAULA MEYERSON | 50,000.00 |
| | LINDA WIRKUS | 135,000.00 |
| | CUSTRED FAMILY TRUST | 100,000.00 |
| | JEAN EICHOLTZ | 120,000.00 |
| | DAVID & JOHNEE MILLER FAMILY TRUST 07/15/02 | 75,000.00 |
| | PROV-GERALD STARY IRA | 33,150.00 |
| | BLACK FAMILY REVOCABLE TRUST 05/05/04 | 100,000.00 |
| | MARY COLLINS | 50,000.00 |
| | MICHAEL BROOKS | 100,000.00 |
| | PROV-ELIZABETH FREIDEL IRA | 84,600.00 |

| | | |
|---|---|---|
| | CAUSTRITA TRUST 10/06/11 | 100,000.00 |
| | PATRICK MCMAHON | 50,000.00 |
| | BETTY SOLLENBERGER | 60,000.00 |
| | DEBORAH & DOUGLAS VAN GEMERT | 100,000.00 |
| | RALPH CLARK JR | 50,000.00 |
| | SHARI PROCOPIO | 50,000.00 |
| | ELIZABETH COLANTUONO REV LIVING TRUST | 25,000.00 |
| | RODNEY BLACK T/O/D | 100,000.00 |
| | SUZANNE ROON T/O/D | 33,000.00 |
| | IRA SVC-CLAUDIA DODGE | 88,000.00 |
| | GEORGE REITTER | 60,000.00 |
| | BONNIE HASH-STRUTHERS | 25,000.00 |
| | PROV-DELLA LINK IRA | 31,000.00 |
| | KENNETH LOUCK | 50,000.00 |
| | BRADLEY PETERSEN | 50,000.00 |
| | ALAN & ANDREA SCHOEN REVOCABLE TRUST | 35,000.00 |
| | EVERETTE & MARLENE GOODWYN LIVING TRUST 07/11/03 | 25,000.00 |
| | JAY & ALYSE MILLER LIVING TRUST 06/04/14 | 100,000.00 |
| | ROSE FEILNER | 50,000.00 |
| | PROV-IRENE OLIN IRA | 28,586.00 |
| | CAROL FONTANESE | 100,000.00 |
| | JOHN WEBER | 130,000.00 |
| | STEVEN & SHARON KOZAK | 32,000.00 |
| | ROGER & BETTY WISNER | 25,000.00 |
| | | |
| **642 SAINT CLOUD, LOS ANGELES, CA - DEV** | ERIC HUANG | 25,000.00 |
| | WILLIAM WORST JR | 30,000.00 |
| | WILLIAM MILES | 50,000.00 |
| | TOMMYE GAYLER | 55,000.00 |
| | CHALLIS FORD | 70,000.00 |
| | HERSHEY & FREDA BOWERS | 100,000.00 |
| | LYNDA LILLY | 37,000.00 |
| | ROBERT & NORMA ROWE | 1,000,000.00 |
| | JAMES HAMM | 100,000.00 |
| | MAINSTAR-RUSSELL MOSLEY | 37,315.95 |
| | PROV-THOMAS HEGER IRA | 49,500.00 |
| | IRA SVC-TERESA HORNFECK | 57,000.00 |
| | PROV-KIM ONESKO IRA | 50,000.00 |
| | CHARLES & ROSE DUNLAP | 25,000.00 |
| | DONALD HAZELTON & CONNIE FREED | 25,000.00 |
| | LUIS JARAMILLO | 100,000.00 |
| | WILLIAM KNUPP | 50,000.00 |
| | PROV-RICHARD GAWLIK IRA | 114,550.00 |
| | PROV-RICHARD WIRKUS IRA | 55,000.00 |
| | PROV-DOUG ONESKO IRA | 55,750.00 |
| | PROV-SYLVIA MANNING IRA | 99,000.00 |
| | MAINSTAR-ANNA SHAVER | 180,000.00 |
| | MARY HORNBAKER | 150,000.00 |
| | ROBERT & DAWN SHARKEY | 50,000.00 |
| | PROV-DWAUNE JONES IRA | 100,000.00 |
| | RACHELLE GEISSLER | 133,385.40 |
| | JARA GROUP II LLC | 42,935.00 |
| | PROV-DEAN GEILENKIRCHEN IRA | 25,570.00 |
| | MICHAEL TAYLOR | 25,000.00 |
| | JOSEPH & FRANCINE SPANIAL | 25,000.00 |
| | PROV-PENNY FRAZIER IRA | 44,000.00 |
| | NANCY TAYLOR | 80,000.00 |
| | MAINSTAR-SHAYNE MICKELS | 32,000.00 |
| | CRAIG OSBORNE | 30,000.00 |
| | DAVID & PEGGY HOLMES | 100,000.00 |
| | DAVID DAVIS | 150,000.00 |
| | KEITH JOHNSON | 60,000.00 |
| | IAIN BARCLAY | 25,000.00 |

| | | |
|---|---|---|
| | CAROL LECHMAN LIVING TRUST 08/12/91 | 500,000.00 |
| | MAINSTAR-DAVID MILLER | 100,000.00 |
| | JHARNA DE | 83,000.00 |
| | PROV-GAIL AKARD IRA | 120,000.00 |
| | IRA SVC-JAMES YOUNG | 27,300.00 |
| | IDA HILL | 140,000.00 |
| | WALTER THOMPSON | 50,000.00 |
| | MARJORIE DIRKSEN | 30,000.00 |
| | CHALLIS & CARLENE FORD | 100,000.00 |
| | MORINE CARTER | 50,000.00 |
| | SHIRLEY STAHL | 65,000.00 |
| | ROSALINE LEE | 100,000.00 |
| | RONALD MOORE | 100,000.00 |
| | WILMA KEOWN | 192,854.78 |
| | MYAH ALI | 75,000.00 |
| | JEFF FORD ENTERPRISES INC | 200,000.00 |
| | LANITA & SAMUEL PETRE | 50,000.00 |
| | SAMUEL & LOIS PETRE | 150,000.00 |
| | MICHELLE DOYLE | 50,000.00 |
| | DENNIS SHAW TRUST 08/07/97 | 270,000.00 |
| | TYRUS & WENDY BARNES | 60,000.00 |
| | | |
| 385 TROUSDALE PLACE (TWO), BEVERLY HILLS, CA - SENIOR | ALEXANDRA AYERS | 34,351.00 |
| | AUSTIN M FRISHMAN REVOCABLE LIVING TRUST | 25,000.00 |
| | JACK JACOBY | 100,000.00 |
| | STEVE GOLDFINGER | 100,000.00 |
| | MAINSTAR-DENNIS SEALEY (1 OF 2) | 150,000.00 |
| | JEFFREY & PATRICIA HOLMES | 50,000.00 |
| | MAINSTAR-MACLOVIA BLAKLEY | 149,000.00 |
| | MAINSTAR-WILLIAM BARRAUGH | 145,000.00 |
| | PROV-JANIS HOWELL IRA | 100,000.00 |
| | MAE & KIN LEONG | 50,000.00 |
| | VAL PECO | 25,000.00 |
| | MAINSTAR-SUSAN GLIEBE | 76,000.00 |
| | IRA SVCS-WOODROW WILSON | 125,000.00 |
| | HELENE WOLFLEY & RICHARD DIRICCO | 25,000.00 |
| | CHRISTINE PASSIGLIA | 50,000.00 |
| | THE GULDEN TRUST 12/18/90 | 100,000.00 |
| | CLAY BOOTHE | 27,000.00 |
| | MAINSTAR-MICHAEL THRANE | 31,956.87 |
| | SATYA MALLICK | 50,000.00 |
| | MAINSTAR-DENNIS SEALEY (2 OF 2) | 150,000.00 |
| | STEPHEN SWAFFORD | 50,000.00 |
| | R THOMAS & CHRISTINE IRWIN REVOCABLE TRUST | 50,000.00 |
| | MAINSTAR-PHILLIP POWELL | 50,000.00 |
| | KENT KELLERSBERGER | 25,000.00 |
| | MAINSTAR-GUANG MA | 73,921.25 |
| | LOUIS & GERALDINE HUNTEMAN | 30,000.00 |
| | ARMOND MINCEY | 25,000.00 |
| | JEFFREY & MERI LU MILLS | 60,000.00 |
| | THE BADER TRUST 02/01/17 | 100,000.00 |
| | MAINSTAR-TERRI WALKER | 41,570.37 |
| | ROBERT HOFFMAN | 40,000.00 |
| | JAMES BARON T/O/D | 100,000.00 |
| | FLORENCE & DOUGLAS NESAW | 50,000.00 |
| | FREDERICK & DONNA WILLIS | 50,000.00 |
| | JAMES & LORRAINE SHINDLER | 50,000.00 |
| | MARK & MAGDALENA DYSLIN | 50,000.00 |
| | RONALD SPRENGER | 200,000.00 |
| | DEBORAH MIELKE | 25,000.00 |
| | C JOAN & MARK ANDERSON | 175,000.00 |
| | LEONARD & SANDRA CAMERON | 559,013.00 |
| | GAIL BOUSUM | 25,000.00 |

| | | |
|---|---|---|
| | KARIN SCOTT TRUST AGREEMENT 05/22/12 | 50,000.00 |
| | JOSEPH & JOAN HAWKINS | 200,000.00 |
| | ALFRED STEEN | 100,000.00 |
| | THE PORTER FAMILY TRUST | 25,000.00 |
| | RICHARD & LINDA CHELTEN (1 OF 2) | 43,892.08 |
| | BEN KOZAK | 25,000.00 |
| | DOUGLAS MCCLINTIC | 50,000.00 |
| | ROBERT & KAREN SCHROER | 200,000.00 |
| | CAROLINA CRETELLA | 100,000.00 |
| | DOREEN LADE | 50,000.00 |
| | MUCKOM TRUST 08/08/16 | 50,000.00 |
| | IRA SVC-CAROL HOFMANN | 177,500.00 |
| | CONRAD & ELLEN HAUG | 50,000.00 |
| | MAINSTAR-ATAOLLAH ALEM | 31,884.00 |
| | RICHARD & LINDA CHELTEN (2 OF 2) | 63,999.65 |
| | MAINSTAR-JOHN PALSHA | 66,459.45 |
| | PROV-ANDREA BARRY IRA | 30,000.00 |
| | BEATRIZ HUBER & DEBORAH KURUPAS | 50,000.00 |
| | HORIZON-CLIFTON VALLEY TRAD IRA | 50,000.00 |
| | CHRISTOPHER POFFEL | 50,000.00 |
| | PROV-MYRON THOMPSON IRA | 60,000.00 |
| | PROV-JAMES JANIESCH IRA | 65,000.00 |
| | MERVIN & MARY HUMPHRIES | 50,000.00 |
| | JOAN WHITEHEAD IRREVOCABLE TRUST | 40,000.00 |
| | RICHARD & JANET GRONEMEYER JOINT TRUST AGREEMENT | 63,000.00 |
| | TSUN-SEN & MITZI FU | 100,000.00 |
| | SASSER TESTAMENTARY TRUST FOR VALERIE CATHERS 11/02/15 | 85,000.00 |
| | PROV-DAVID HOUSER IRA | 50,000.00 |
| | GREGORY & CAROL THOMPSON | 100,000.00 |
| | GLEN & DIANE PRINCE | 25,000.00 |
| | SUSAN BILLS | 25,000.00 |
| | MAINSTAR-FRANK BOLON | 220,265.27 |
| | LEIAH KITARE | 25,000.00 |
| | BONNIE HASH-STRUTHERS | 40,000.00 |
| | LAUREN WEST TRUST 12/11/12 | 100,000.00 |
| | OASIS LODGE NO 41 F&AM | 30,000.00 |
| | PAUL BRAND | 25,000.00 |
| | PROV-KENNETH HOLBROOK IRA | 100,000.00 |
| | CHUCK RASBACH | 100,000.00 |
| | STAN & DELILA LUMBARDY | 50,000.00 |
| | MAINSTAR-BOBBY MCDONALD | 119,903.54 |
| | DAVID & BARBARA EVERS | 100,000.00 |
| | FRANK GRIFFIN JR | 100,000.00 |
| | MARIANNE & JOHANNES KLAFFKE | 25,000.00 |
| | CLIVE & MAXINE PETERS | 50,000.00 |
| | ISRAEL & NILDA DIAZ | 25,000.00 |
| | JAMES & DIANE WAHL | 30,000.00 |
| | MAINSTAR-LUCRICIA JONES | 35,300.77 |
| | MAINSTAR-GLEN JONES | 31,504.00 |
| | ELIZABETH LOMBARDO REVOCABLE TRUST | 160,000.00 |
| | | |
| 385 TROUSDALE PLACE (TROUSDALE TWO), BEVERLY HILLS, CA - DEV | KENNETH & ALEEN STANTON | 50,000.00 |
| | MONGE FAMILY TRUST 02/25/10 | 50,000.00 |
| | | |
| 2492 MANDEVILLE CANYON, BRENTWOOD, CA - SENIOR | ALFRED ORTENZO REV TRUST | 100,000.00 |
| | MIKE & COLLEEN CHRISTENSEN | 218,000.00 |
| | ETHEL MARTIN | 55,000.00 |
| | RONALD JEFFREY | 35,000.00 |
| | VAL & TAMARA PECO | 100,000.00 |
| | CYNTHIA MARTINEZ & ROBERT BEUTLER | 67,000.00 |
| | CONRAD & JODY HARBUCK | 90,000.00 |
| | DORIS MCELWEE LIVING TRUST | 25,000.00 |
| | EDINA ALLEN | 100,000.00 |

| | | |
|---|---|---|
| | ELEFTERIOS & SANDRA KONSTANTINIDIS | 50,000.00 |
| | FAMILY TRUST OF AINA FAE BARRY | 75,000.00 |
| | JANINE RIOUX & REX LAMEW | 50,000.00 |
| | LAURENCE WINGATE II | 25,000.00 |
| | NORM MEIER | 100,000.00 |
| | ABRAHAM & HILARY WOLF | 50,000.00 |
| | CURTIS & SHARON AYERS | 80,000.00 |
| | LOGAN & SARRAH NOLAN | 40,000.00 |
| | PROV-KATHRYN DISSELER IRA | 64,777.00 |
| | DEIRDRE & BENJAMIN FERNANDES | 75,000.00 |
| | LOLA HASSELQUIST | 25,000.00 |
| | WILLIAM & KAREN NUGENT | 300,000.00 |
| | SUVARCHALA SOMAYAJULA | 25,000.00 |
| | PANORAMA VILLAGE OF HEMET INC | 200,000.00 |
| | LOUISE C FAIVRE | 100,000.00 |
| | HORIZON-MARTHA DEUSTCH IRA | 75,826.00 |
| | MICHAEL ROCKS | 70,000.00 |
| | DAVID & BETH SJAASTAD | 100,000.00 |
| | PROV-JORDAN NAKATSUKA IRA | 47,000.00 |
| | RONALD PINCOUS REVOCABLE TRUST | 100,000.00 |
| | PROV-MARK BAKER IRA | 25,000.00 |
| | ALVIN & MARTHA WENDEL | 30,000.00 |
| | JOHN MEDEIROS TRUST 05/05/16 | 100,000.00 |
| | GOLDER-POTTKOTTER POST 6515 | 30,000.00 |
| | GLORIA CHERELSTEIN | 25,000.00 |
| | WAMPLER LIVING TRUST | 50,000.00 |
| | MARCIA FEDERER | 75,000.00 |
| | D KEVIN & MARTHA HASTING JOINT REVOCABLE TRUST | 50,000.00 |
| | NORMA WEINER LIVING TRUST 11/13/13 | 100,000.00 |
| | DUWAYNE & BARBARA KUEHN | 100,000.00 |
| | RICHARD HELLER | 100,000.00 |
| | GLORIA & FREDERICK FINE | 25,000.00 |
| | PROV-RENEE NORTON IRA | 30,000.00 |
| | PROV-CHARLES FRONTERA IRA | 137,856.00 |
| | PROV-WILLIAM HARDEE IRA | 160,000.00 |
| | PROV-MONICA REIFFER IRA | 53,000.00 |
| | HARMON FAMILY REVOCABLE FAMILY LIVING TRUST | 25,000.00 |
| | KENNETH & SHIRLEY RAMMEL | 25,000.00 |
| | PROV-EILEEN BANCROFT IRA | 51,854.00 |
| | IRA SVC-JOHN PLAISTED | 100,000.00 |
| | ALAN & RUTH MAICKI | 40,000.00 |
| | | |
| **2492 MANDEVILLE CANYON, BRENTWOOD, CA - DEV** | LAURA STERN & LARA POSNER-LEMONS | 50,000.00 |
| | MAINSTAR-DONALD PIERCE | 85,900.00 |
| | MAINSTAR-DAVIN LEBOEUF | 200,000.00 |
| | | |
| **1011 HILLCREST ROAD, BEVERLY HILLS, CA - SENIOR** | SIDNEY GELLER TRUST | 700,000.00 |
| | ALISON BEVER | 100,000.00 |
| | ELIZABETH BOTCHIS & JENNIFER HAWTHORNE | 50,000.00 |
| | REBECCA GRITTON & DEBORAH FERRIN | 25,000.00 |
| | RICHARD FRESHWATER | 50,000.00 |
| | VERLE & NORMA PYLE TRUST 07/11/83 | 100,000.00 |
| | BRIAN & MARY DISCHLER | 250,000.00 |
| | RICHARD & NANCY CAMPOLO LT 03/04/04 | 100,000.00 |
| | BETTY & BERNARD BUFFORD | 30,000.00 |
| | KENNETH & EMMA SATTLER | 100,000.00 |
| | LINDA & TIMOTHY NORDMAN | 100,000.00 |
| | PROV-JUDITH POLEY IRA | 70,000.00 |
| | MERRILY & MARINO CASSINA | 30,000.00 |
| | MLG FARMS INC | 50,000.00 |
| | CHARLES COOPRIDER | 100,000.00 |
| | CHARLES & MARY ANN MCDERMAND | 200,000.00 |
| | EDWIN & SANDY WILLIAMS | 25,000.00 |

| | | |
|---|---|---|
| | IRA SVC-CHERYL PIRTLE | 42,000.00 |
| | MAINSTAR-JOHN MONTES | 180,000.00 |
| | MAINSTAR-ROSEANN ALVAREZ | 40,000.00 |
| | PROV-LINDA NORDMAN IRA | 139,000.00 |
| | CHASE FINANCIAL LLC | 100,000.00 |
| | JEFFREY TABIN | 50,000.00 |
| | LYNNE FRIEND | 200,000.00 |
| | MARTIN DUMLER | 25,000.00 |
| | NORMA & JAMES MIKKELSEN | 25,000.00 |
| | LINDA & JOHN SUTTON | 110,000.00 |
| | RANDY BOTWINICK | 125,000.00 |
| | GERALD ROY | 220,000.00 |
| | LINDA DONAHOE | 25,000.00 |
| | MAINSTAR-JUDITH SHERMAN | 40,431.00 |
| | MAINSTAR-STEVEN WEISZ | 40,000.00 |
| | MICHAEL WEINER MD PROFIT SHARING PLAN (1 OF 2) | 250,000.00 |
| | MICHAEL WEINER MD PROFIT SHARING PLAN (2 OF 2) | 326,000.00 |
| | LINDA BURTON | 25,000.00 |
| | MITCHELL & VICTORIA JOHNSON | 50,000.00 |
| | SHARLA & ROY FLYNN | 25,000.00 |
| | SARA MARSHALL | 500,000.00 |
| | PROV-SANDRA BARNES IRA | 24,500.00 |
| | PROV-KLAUS GERSDORF IRA | 100,250.00 |
| | MICHAEL & MARY MIRANDA | 200,000.00 |
| | PROV-MICHAEL DELEO IRA | 95,000.00 |
| | PROV-GAYLE REIFFER BRUGGINK IRA | 100,000.00 |
| | WILLIAM BOWEN | 60,000.00 |
| | RICHARD VALDEZ | 25,000.00 |
| | PROV-KELLIE HEIER IRA | 99,750.00 |
| | PROV-JANE BENDER IRA | 26,000.00 |
| | WILLIAM MCNINCH | 25,000.00 |
| | FREDRICK KRUEGER TRUST 11/23/99 | 100,000.00 |
| | CLEO & MERVIN TCHIDA | 25,000.00 |
| | BENTLEY FAMILY HOLDINGS LLC | 100,000.00 |
| | LEWIS & ERNA DRAPER | 50,000.00 |
| | JOHN & SUSAN BARTO | 50,000.00 |
| | | |
| **1011 HILLCREST ROAD, BEVERLY HILLS, CA - DEV** | NONE | |
| | | |
| **633 FOOTHILL ROAD, BEVERLY HILLS, CA - SENIOR** | JOHN & JOAN RILEY REV TRUST 11/07/94 | 75,000.00 |
| | NORMAN LONG | 100,000.00 |
| | PAMELA MIDDLETON | 40,000.00 |
| | ROBERT MILLER | 35,000.00 |
| | THOMAS YASENSKY | 50,000.00 |
| | ALAN MORGAN | 350,000.00 |
| | DIANE SHEPARD | 50,000.00 |
| | GINNY COYLE | 25,000.00 |
| | JARA GROUP II LLC | 50,000.00 |
| | THE BETH BARBER LIVING TRUST 12/01/97 | 130,000.00 |
| | LEILA & JEFFREY PEPPERS | 25,000.00 |
| | MAURICE & THELMA NELSON | 100,000.00 |
| | MITCHELL & VICTORIA JOHNSON | 50,000.00 |
| | NELDON & ANNA WATSON REV LIV TRUST 09/07/10 | 100,000.00 |
| | ROBERT & BRADLEY BODINE | 250,000.00 |
| | ALLEN SHOEMAKER | 100,000.00 |
| | JOHN HART | 25,000.00 |
| | MAINSTAR-JOHN PRIOLETTI | 163,000.00 |
| | MAINSTAR-JOHN RILEY | 78,000.00 |
| | MAINSTAR-MYRA RYE-MYERS | 37,000.00 |
| | MAINSTAR-RICHARD MARSTON | 75,300.00 |
| | MAINSTAR-SANDRA GLUPKER | 229,000.00 |
| | MARINO & MERRILY CASSINA | 80,000.00 |
| | ELIZABETH BOTCHIS & JENNIFER HAWTHORNE | 50,000.00 |

| | | |
|---|---|---|
| | GREGORY & JANE HOMAN | 50,000.00 |
| | JENNIFER HAWTHORNE & ELIZABETH BOTCHIS | 50,000.00 |
| | JULIA DENISON | 50,000.00 |
| | MANJULA KAPADIA | 150,000.00 |
| | MARIA & MIGUEL TABLADILLO | 30,000.00 |
| | MARY & WALTER ROLLERSON | 100,000.00 |
| | CHRISTOPHER POFFEL | 50,000.00 |
| | MYLES RUSCHE | 50,000.00 |
| | W MICHAEL & KAREN MICELE | 25,000.00 |
| | PROV-JOHN SIEGLER JR IRA | 65,500.00 |
| | LOIS BOLYARD | 49,000.00 |
| | VINCENT & HILDA ZOFREA | 50,000.00 |
| | JOHN SIEGLER JR | 100,000.00 |
| | MARY BAAR | 50,000.00 |
| | BRIAN LITT | 50,000.00 |
| | BOB STAHLECKER | 40,000.00 |
| | GARY ARNDT | 100,000.00 |
| | FRED & DOYLENE TAYLOR | 100,000.00 |
| | ROY & MARTHA JONES | 100,000.00 |
| | CAROL LAMBERT & ANDREA DARWENT | 100,000.00 |
| | MAINSTAR-WANDA CAUDILL | 182,570.50 |
| | DAVID DERRICK | 100,000.00 |
| | JOHN TAPLEY | 50,000.00 |
| | MAINSTAR-DEBBIE LIKENS | 25,000.00 |
| | MAINSTAR-PAMELA MILLS | 54,400.00 |
| | JOHN G & SHIRLEY A SMITH | 150,000.00 |
| | MARK A BOOR | 25,000.00 |
| | JOAN & ROGER L OZINGA | 25,000.00 |
| | PROV-LILIAN PELTZ-PETOW IRA | 25,215.00 |
| | PATRICIA POLLARD | 85,000.00 |
| | ROBERT & CHERYL SCHLAGE | 100,000.00 |
| | LOIS SHANK | 53,000.00 |
| | IRA SVC-EUGENE SCHOOLS | 35,000.00 |
| | | |
| **633 FOOTHILL RD, BEVERLY HILLS, CA - DEV** | STEVE & SHERRY CARTER | 75,000.00 |
| | IRA SVC-ROY DAUGHERTY | 25,000.00 |
| | WALES & JOAN BEATY | 100,000.00 |
| | | |
| **1 ELECTRA COURT, LOS ANGELES, CA - SENIOR** | JEFFREY & COLLEEN BARKLEY | 50,000.00 |
| | ANTHONY WINTER | 25,000.00 |
| | BRUCE & TREVA BREMNER | 100,000.00 |
| | CAROL BERGLUND LIVING TRUST 03/31/16 | 100,000.00 |
| | CHARLES VANFOSSON | 30,000.00 |
| | ELLEN FUENTES REVOCABLE LIVING TRUST | 100,000.00 |
| | JAMES HAEN | 50,000.00 |
| | KEITH BERGLUND LIVING TRUST 03/31/16 | 100,000.00 |
| | MANFRED HEIPP | 50,000.00 |
| | RICHARD KOHLER REVOCABLE LIVING TRUST | 100,000.00 |
| | VELMA NIELSEN | 50,000.00 |
| | ADAM LENTNER | 100,000.00 |
| | ANGELA BAGLIONE-MANLEY | 25,000.00 |
| | ARLO & JEAN BAUMGARN | 25,000.00 |
| | DAVID & SANTA ANDERSON | 25,000.00 |
| | DIANE CONAWAY | 30,000.00 |
| | EDWARD QUINN | 60,000.00 |
| | GIUSEPPE & ROSA ISGRO | 25,000.00 |
| | JOSEPH PERFETTO | 100,000.00 |
| | LORI KOBETITSCH | 43,000.00 |
| | MICHAEL WEINER MD PA PROFIT SHARING PLAN | 500,000.00 |
| | ROBERT GLASS JR | 25,000.00 |
| | SANTA & DAVID ANDERSON | 25,000.00 |
| | BETSY HADDOCK & KIMBERLY BRADY | 80,000.00 |
| | IVAN GOLDBERG | 25,000.00 |

| | | |
|---|---|---:|
| | JENNIFER WEITZMAN | 100,000.00 |
| | KAREN KNUDSEN | 70,000.00 |
| | KARLA SCHMIDT COMMINS TRUST | 200,000.00 |
| | KATHLEEN MINKUS | 350,000.00 |
| | MARY E STRICKLAND & ARMOND MINCEY | 50,000.00 |
| | ROGER & ANITA PARADAY | 50,000.00 |
| | THE BETTY VEATCH TRUST 06/21/12 | 75,000.00 |
| | THE DON MORGAN TRUST 03/25/17 | 25,000.00 |
| | THE KAREN PAYNE LIVING TRUST 12/28/06 | 50,000.00 |
| | ANN FORD REVOCABLE TRUST | 650,000.00 |
| | CHRISTINE LIVINGSTON | 25,000.00 |
| | DAVID CRAMER | 50,000.00 |
| | DEIRDRE & BENJAMIN FERNANDES | 148,000.00 |
| | KATHLEEN CARLON FAMILY TRUST | 100,000.00 |
| | MERVYN & JEAN ANDERSON | 50,000.00 |
| | PROV-JO CULLIGAN IRA | 25,000.00 |
| | PROV-LORI KOBETITSCH IRA | 22,824.56 |
| | PROV-MARILYN SULLIVAN | 46,975.00 |
| | ROGER BECK | 100,000.00 |
| | THE EXCEL REVOCABLE TRUST 05/01/06  E GARVIN GRANTOR | 50,000.00 |
| | ADRIAN & DREANA AIU | 100,000.00 |
| | COLUMBUS MEDICAL EQUIPMENT INC | 500,000.00 |
| | DALE & KATHRYN WIDEMAN | 50,000.00 |
| | GARLAND OLESEN | 25,000.00 |
| | HARRIS & MARION FREEMAN | 100,000.00 |
| | HARVEY & MARY WRYNN | 30,000.00 |
| | JOHANN LORIDON | 100,000.00 |
| | JUDY & GERALD JENISCH | 25,000.00 |
| | VITA DIPOLITO IRREVOCABLE TRUST | 50,000.00 |
| | BENJAMIN & AARON NIEDBALSKI | 100,000.00 |
| | DOLLY KELEPECZ | 75,000.00 |
| | DONALD FREYTAG | 30,000.00 |
| | HELEN & CHARLES CADDICK | 100,000.00 |
| | JOHN & KRISTINA ROSER | 50,000.00 |
| | JOHN ARCHIMEDE | 25,000.00 |
| | JOHN & WILMA REBUCK | 100,000.00 |
| | JOYCE KLINE | 45,000.00 |
| | JULIANNE BOLTZ | 25,000.00 |
| | LARRY DUHON | 50,000.00 |
| | MARLENE GREEN | 50,000.00 |
| | MICHAEL & LESLY BLEND | 50,000.00 |
| | SUNWEST-RUTH VAUGHT IRA | 200,000.00 |
| | THE FLAX FAMILY REVOCABLE TRUST 07/27/95 | 100,000.00 |
| | THE MORRILL FAMILY TRUST | 25,000.00 |
| | ANITA LEE | 25,000.00 |
| | BRUCE & LINDA KING | 250,000.00 |
| | DR PATRICK BERRYHILL TRUST 03/01/66 | 25,000.00 |
| | HERBERT FINNELL & GEORGEANNE BROWN | 25,000.00 |
| | IRA SVC-BARBARA SPESSARD | 27,200.00 |
| | JOHN BROWN | 50,000.00 |
| | LINDA FORBES | 25,000.00 |
| | MAINSTAR-RAMONA ROBINSON | 60,000.00 |
| | MAINSTAR-STEVEN WALGREN | 150,000.00 |
| | MARIE KEEFER | 25,000.00 |
| | MARILYN SCHUSTER | 120,000.00 |
| | ROGER & LAURIE SHOEMAKER | 55,000.00 |
| | VIRGILIA GILAM | 40,000.00 |
| | ANGELA CANNADA | 25,000.00 |
| | CAROLINA CRETELLA | 100,000.00 |
| | CHRISTOPHER KIRRIE | 100,000.00 |
| | JAMES & GERALDINE LINDSAY | 50,000.00 |
| | JOSEPH SILVA | 50,000.00 |
| | LEE BOWERS | 65,000.00 |

| | | |
|---|---|---|
| | LEO & NORMA O'REILLY | 25,000.00 |
| | RICHARD BOWEN | 50,000.00 |
| | TRONG PHAM & HOA NGUYEN | 100,000.00 |
| | VINCENT, MERCEDES, & PATRICK ENRIQUEZ | 515,000.00 |
| | VIRGINIA & ALLAN WHEELER | 50,000.00 |
| | CATHY SHOTZBERGER | 25,000.00 |
| | CLIFFORD ALBERTSON REV LVG TRUST | 50,000.00 |
| | DAVID ASHWORTH REVOCABLE LIVING TRUST | 100,000.00 |
| | DOUGLAS KELLER 08/23/84 TRUST | 70,000.00 |
| | GAYLYNN MORTENSEN | 80,864.00 |
| | MARTHA GRANDES | 50,000.00 |
| | MARY E AGREN LIVING TRUST | 180,000.00 |
| | PHYLLIS OWEN & DANIEL TIBBETS | 40,000.00 |
| | SUSAN BOUDREAUX | 50,000.00 |
| | WILLIAM BRYAN OWEN | 25,000.00 |
| | ALFRED NAI | 30,000.00 |
| | APRIL BROCKSON | 200,000.00 |
| | FLORENCE MARKGRAF REVOCABLE LIVING TRUST | 250,000.00 |
| | LESTER & TERRI KYLE | 20,000.00 |
| | MAINSTAR-STEVEN BEASLEY | 59,595.96 |
| | NANCY THOMAS | 200,000.00 |
| | SUSAN RUSSELL | 70,000.00 |
| | BRAD THOMPSON | 30,000.00 |
| | DON & CHERYL GABBITAS | 100,000.00 |
| | HELEN FARRIOR | 25,000.00 |
| | KAMELA MOHS & SHANNON HEMME | 50,000.00 |
| | MAINSTAR-CHARLES VAN FOSSON | 161,507.00 |
| | MAINSTAR-DIANE F CHONO | 41,500.00 |
| | MAINSTAR-KATHLEEN DEFORD | 68,500.00 |
| | PROV-CHRISTY IVEY IRA | 60,000.00 |
| | ROSALIE WISELY | 100,000.00 |
| | SUSAN MCCOY | 28,000.00 |
| | MAINSTAR-ESFIR VOLENBERG INHERITED IRA | 335,500.00 |
| | MAINSTAR-LINDA PERRY | 25,500.00 |
| | MAINSTAR-SAMUEL PERRY SR | 25,500.00 |
| | MAINSTAR-SANDRA HARRIS | 25,000.00 |
| | MAINSTAR-SHARON MROZ | 52,430.13 |
| | MAINSTAR-SUSAN GILLEN | 100,000.00 |
| | PETER & JUDITH CARAVELLA | 200,000.00 |
| | PROV-MARCINE TRAVIS IRA | 69,992.00 |
| | PROV-MUHAMMAD RAHMAN IRA | 100,000.00 |
| | PROV-RANDY HANSEN IRA | 48,768.32 |
| | PROV-RICKY VINSON IRA | 351,134.74 |
| | PROV-STEPHEN DEHNERT IRA | 59,500.00 |
| | THOMAS NEESER | 25,000.00 |
| | RITA MAVITY | 25,000.00 |
| | PROV-WILLIAM COX IRA | 218,800.00 |
| | MAINSTAR-PATRICK ENRIQUEZ | 485,000.00 |
| | MAINSTAR-DAVID BURT | 471,000.00 |
| | LINDA HUGHES REVOCABLE TRUST 01/15/04 | 120,000.00 |
| | JOHN & LYNN HODGE | 125,000.00 |
| | JAMES TOLSON JR | 60,000.00 |
| | HORIZON-DAVID RICH SEP IRA | 74,400.00 |
| | CELIA ADAMS | 25,000.00 |
| | MAINSTAR-BYRON CROMER | 75,000.00 |
| | MAINSTAR-JEREMY CORDONNIER | 41,807.33 |
| | MAINSTAR-VICKI FIRESTACK | 25,716.00 |
| | MAINSTAR-LINDA WILLIAMS | 155,000.00 |
| | MAINSTAR-MICHELE GALE | 33,414.00 |
| | IRA SVC-MICHAEL LIPSITZ IRA | 220,000.00 |
| | PROV-CHERYL MACEY IRA | 100,000.00 |
| | PROV-REBA CASLER IRA | 124,000.00 |
| | PROV-REBA CASLER ROTH IRA | 28,000.00 |

| | | |
|---|---|---|
| | PROV-CRAIG JOYNER IRA | 80,000.00 |
| | MAINSTAR-BARBARA SUTTER | 49,000.00 |
| | PROV-DEAN BARNEY IRA | 42,500.00 |
| | KENT & PATRICIA FLETCHER | 50,000.00 |
| | THE WEARLEY FAMILY TRUST | 53,000.00 |
| | NANTANAPORN ENGBRECHT | 30,000.00 |
| | JEFFREY & THERESA WILKINSON | 30,000.00 |
| | AW FIELD LIVING TRUST 07/10/09 | 100,000.00 |
| | FIELD TRUST B 03/16/09 | 100,000.00 |
| | DAVID HENNESSEE | 100,000.00 |
| | BARBARA PAYNE | 25,000.00 |
| | ROBERT INOUYE | 25,000.00 |
| | ROBERT & JACQUELINE BODELIN | 50,000.00 |
| | RANDAL & KRISTINE ULLMER | 25,000.00 |
| | JAMES & CHARLOTTE FARLEY | 250,000.00 |
| | KATHLEEN WATSON | 150,000.00 |
| | PROV-GEORGE GREEN IRA | 271,500.00 |
| | TREVOR LUKE | 50,000.00 |
| | WILLIAM & ELIZABETH JUE | 50,000.00 |
| | PROV-DAVID DAMON IRA | 50,000.00 |
| | PROV-EDWARD VANCE IRA | 50,000.00 |
| | PROV-GARY FITE IRA | 300,000.00 |
| | PROV-ROBERT GROSS JR IRA | 40,400.00 |
| | PROV-SUSAN SELLERS IRA | 71,000.00 |
| | RICHARD & CAROL ENSLOW | 100,000.00 |
| | JULIAN AGUINALDO | 25,000.00 |
| | DEE TROYER | 100,000.00 |
| | PAUL ONNINK LIVING TRUST 09/26/07 | 100,000.00 |
| | RON GRAHAM | 25,000.00 |
| | PATRICK & SUSAN HASLAM | 75,000.00 |
| | ROBERT JONES | 100,000.00 |
| | THE NUNEZ TRUST 06/15/96 | 30,000.00 |
| | KENT & BEVERLY KELLERSBERGER | 25,000.00 |
| | ALAN MCCARTHY | 50,000.00 |
| | ELDA ROSCOE-GUSTAFSON | 25,000.00 |
| | ADVANTA SVC-ANGELA ROBINSON IRA | 50,000.00 |
| | IRA SVC-JAMES MACE | 46,000.00 |
| | MAINSTAR-JOHN CANTLIN | 118,000.00 |
| | THE FRED & ANN HANSEN FAMILY TRUST | 25,000.00 |
| | MAINSTAR-BARRY BOSLEY | 25,000.00 |
| | RUBEN JR & RITA NOEL | 100,000.00 |
| | MAINSTAR-JESSICA CLIFTON | 116,500.00 |
| | PEDRO & DAISY TREJO | 100,000.00 |
| | W R LEMONS IRREV SUBTRUST # 2 FBO LAURA COPELAND | 50,000.00 |
| | ALAN MAYEDA | 50,000.00 |
| | LARRY MCKINNEY | 30,000.00 |
| | MAINSTAR-GAYLYNN MORTENSEN | 111,017.40 |
| | MAINSTAR-KENNETH FLITTON | 64,608.89 |
| | MAINSTAR-KENT KELLERSBERGER | 73,024.01 |
| | MARIPAZ BRAGADO | 50,000.00 |
| | MARK SCHABO | 25,000.00 |
| | OLIVER & SHARON ZIEMANN | 75,000.00 |
| | PEGGY SMITH | 35,000.00 |
| | DARLENE CETOLA PA | 50,000.00 |
| | IRA SVC-MICHAEL LIPSITZ ROTH IRA | 22,000.00 |
| | MAINSTAR-PAULA WILLIAMS ROTH IRA | 31,291.97 |
| | MYRIAM ALONSO | 25,000.00 |
| | RODNEY DOCKEN | 35,000.00 |
| | ROSEMARY HARRISON | 25,000.00 |
| | BARBARA LAGUD | 25,000.00 |
| | JAMES & LINDA KIRKENDALL | 25,000.00 |
| | MARGARET MICHAEL | 30,000.00 |
| | STEPHEN & ZOILA THOMPSON | 100,000.00 |

| | | |
|---|---|---|
| | ZACK BOMSTA | 250,000.00 |
| | DARLENE DONATELLI | 50,000.00 |
| | JAMESPAUL LIMATO | 185,000.00 |
| | BRANDON LAWRENCE | 35,000.00 |
| | MAINSTAR-TERI MAGNOTTI | 272,000.00 |
| | MILAGROS BRAGADO | 150,000.00 |
| | SARAH CLINE & BRUCE DUBOIS | 80,000.00 |
| | BERNARD & CECILE TOBIN | 65,000.00 |
| | DAVID & BRENDA LANDWEHR | 90,000.00 |
| | DOROTHY PERRY | 132,923.00 |
| | PROV-JAMES SANDY IRA | 157,480.28 |
| | HASSAN BOROUJERDI MD INC DEFINED BENEFIT PLAN TRUST | 250,000.00 |
| | ERMELINDA GUTIERREZ | 25,000.00 |
| | DAVID BAKAY | 40,000.00 |
| | THOMAS & LINDA PATTON | 35,000.00 |
| | CHARLES HARDISON JR & LIXIA ZHENG | 50,000.00 |
| | JACK & ROSE KILE | 225,000.00 |
| | BLACK FAMILY REVOCABLE TRUST 05/05/04 | 60,000.00 |
| | AIDEN PROPERTIES LLC | 50,000.00 |
| | JOYCE BURCKHOLTER | 50,000.00 |
| | VICKI ALMEIDA | 46,000.00 |
| | ROBERT OSTENDORFF JR & SHIRLEY COOPER | 50,000.00 |
| | MAINSTAR-ANDREA FARNSWORTH | 67,325.15 |
| | CANDICE GILLEN | 50,000.00 |
| | EUGENIA WEAVER REVOCABLE TRUST | 50,000.00 |
| | ELIZABETH CRUZ | 50,000.00 |
| | PROV-ROBERT REGNER IRA | 27,000.00 |
| | LORRAINE & WAYNE KELLY | 25,000.00 |
| | ALAN & DESIREE BAKER | 200,000.00 |
| | REBECCA MICHAELS | 50,000.00 |
| | DUWAYNE & BARBARA KUEHN | 100,000.00 |
| | CHARLES BICHT JR | 15,000.00 |
| | JENNIFER BICHT | 15,000.00 |

**<u>Exhibit D</u>**

**Adequate Protection Property**

Owlwood Estate, 141 South Carolwood, Holby Hills, Los Angeles, California

**<u>EXHIBIT 2</u>**

**DIP COLLATERAL**

SCHEDULE 7.3.1

to

Senior Secured Debtor in Possession Loan and Security Agreement

## SCHEDULE OF REAL ESTATE COLLATERAL (AND LEGAL DESCRIPTIONS)

| # | Code | Address | City | State | ZIP | Purchase Date | Purchase Price | Status | % Complete | As Is Value |
|---|------|---------|------|-------|-----|---------------|----------------|--------|-----------|-------------|
| | | | | | | | | **Properties** | | |
| 1 | PD74 | 642 N. St. Cloud | Bel Air | CA | 90077 | 12/15/2016 | $18,200,000 | Demo'd | 3% | $18,200,000 |
| 2 | PD41 | 9212 Nightingale Drive | Los Angeles | CA | 90069 | 1/15/2016 | $13,200,000 | Residence | 0% | $14,000,000 |
| 3 | PD73 | 385 Trousdale Place | Beverly Hills | CA | 90210 | 11/15/2016 | $10,500,000 | Residence | 0% | $10,500,000 |
| 4 | PD72 | 375 Trousdale Place | Beverly Hills | CA | 90210 | 11/15/2016 | $8,400,000 | Residence | 0% | $8,400,000 |
| 5 | PD28 | 9230 Robin Drive | Los Angeles | CA | 91423 | 2/15/2016 | $9,000,000 | Demo'd | 0% | $9,000,000 |
| 6 | PD105 | 1 Electra Court | Los Angeles | CA | 90046 | 6/15/2017 | $28,280,000 | Residence | 0% | $28,280,000 |
| 7 | PD100 | 2492 Mandeville Cyn | Brentwood | CA | 90049 | 6/15/2017 | $6,300,000 | Residence | 0% | $6,300,000 |
| 8 | PD85 | 7870 Granito | Los Angeles | CA | 90046 | 12/15/2014 | $2,462,500 | Raw Land | 0% | $4,000,000 |
| 9 | PD03 | 1258 Lago Vista | Beverly Hills | CA | 90210 | 4/28/2015 | $5,925,000 | Residence | 0% | $6,500,000 |
| 10 | PD101 | 633 N Foothill Rd | Beverly Hills | CA | 90210 | 7/15/2017 | $7,600,000 | Residence | 0% | $8,000,000 |
| 11 | PD37 | 24055 Hidden Ridge Road | Hidden Hills | CA | 91302 | 1/15/2016 | $4,755,000 | Develop | 27% | $6,000,000 |
| 12 | PD51 | 810 Sarbonne | Bel Air | CA | 90077 | 4/15/2016 | $6,500,000 | Residence | 0% | $10,000,000 |
| 13 | MR | 2600 Hutton | Beverly Hills | CA | 90210 | 5/1/2016 | $4,000,000 | Demo'd | 0% | $4,000,000 |
| 14 | PD40 | 1520 Carla Ridge | Beverly Hills | CA | 90210 | 2/15/2016 | $7,200,000 | Demo'd | 0% | $8,500,000 |
| 15 | PD56 | 1484 Carla Ridge | Beverly Hills | CA | 90210 | 5/15/2016 | $9,500,000 | Demo'd | 3% | $12,500,000 |
| 16 | PD38 | 25210 Jim Bridger Road | Hidden Hills | CA | 91302 | 1/15/2016 | $2,900,000 | Develop | 11% | $4,000,000 |
| 17 | MR | 3802 Hollyline Ave. | Sherman Oaks | CA | 91423 | 4/1/2014 | $1,499,000 | Raw Land | 100% | $1,500,000 |
| 18 | MR | 1241 Loma Vista | Beverly Hills | CA | 90210 | 4/14/2015 | $5,200,000 | Demo'd | 0% | $6,500,000 |
| 19 | PD18 | 8692 Franklin | Los Angeles | CA | 90069 | 10/10/2014 | $1,400,000 | Demo'd | 0% | $1,500,000 |
| 20 | PD99 | 1011 N. Hillcrest Road | Beverly Hills | CA | 90210 | 1/15/2017 | $9,500,000 | Residence | 0% | $10,500,000 |
| 21 | MR | 1962 Stradella Road | Los Angeles | CA | 90077 | 7/1/2015 | $2,600,000 | Done December 17,2017 | 0% | $3,200,000 |
| 22 | MR | 15655 Woodvale Drive | Encino | CA | 91436 | 5/1/2015 | $1,800,000 | Not on Market | 100% | $2,300,000 |
| 23 | MR | 3843 Hayvenhurst Ave | Encino | CA | 91436 | 8/14/2014 | $1,035,000 | Done this month | 100% | $1,600,000 |
| 24 | MR | 4030 Madelia Ave | Sherman Oaks | CA | 91403 | 10/25/2014 | $1,325,000 | Raw Land | 0% | $1,500,000 |
| 25 | PD39 | 25211 Jim Bridger Road | Hidden Hills | CA | 91302 | 1/15/2016 | $3,100,000 | Develop | 30% | $3,875,000 |
| 26 | MR | 1312 Beverly Grove Pl | Beverly Hills | CA | 90210 | 8/1/2014 | $3,100,000 | On Market | 0% | $4,700,000 |
| 27 | PD50 | 1357 Laurel Way | Beverly Hills | CA | 90210 | 7/15/2015 | $6,300,000 | Develop | 36% | $8,000,000 |
| 28 | PD32 | 1432 Tanager | Los Angeles | CA | 90069 | 12/15/2015 | $8,900,000 | Develop | 2% | $12,000,000 |
| | | | | | | | $190,481,500 | | 15% | $215,355,000 |

SCHEDULE 7.3.1