**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Woodbridge Group of Companies LLC., *et al.*,[1] | Case No. 17-12560 (KJC) |
| Debtors. | (Jointly Administered)<br>**RE: D.I. 85** |

**JOINDER OF ADDITIONAL NOTEHOLDERS TO MOTION OF THE AD HOC COMMITTEE OF HOLDERS OF PROMISSORY NOTES OF WOODBRIDGE MORTGAGE INVESTMENT FUND ENTITIES AND AFFILIATES PURSUANT TO SECTION 1102(a)(2) OF THE BANKRUPTCY CODE DIRECTING THE APPOINTMENT OF AN OFFICIAL COMMITTEE OF NOTEHOLDERS**

Barry and Kornfeld ToD; M. Kornfeld Declaration of Trust; Jeffrey L Wendel & Jodi M Wendel; JJCC, Inc Retirement Plan FBO: Jeffrey L Wendel; Albert Klager; Robert J. Porter & Susan J. Porter; Horizon Trust fbo Kindra S. Sailers SEP IRA; Knowles Foundation Inc; Leonard Shemtob; Rosewood Capital Investment Inc.; Jesse Randle; Clayton Capital Investments Corp.; Carolyn Ann Beeder; Diane Ruby; Mainstar Trust Custodian FBO Thomas Weidner IRA; Mainstar Trust Custodian FBO Mark D. Varien IRA; Jeffrey R. Young & Joy K. Young; and Young Living Trust dated April 7, 2008 (collectively, the "Joinder Noteholder Group"), as holders of promissory notes of Woodbridge Mortgage Investment Fund entities and affiliates, by and through their undersigned counsel, hereby join in support of the *Motion of the*

[1] The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14225 Ventura Boulevard #100, Sherman Oaks, California 91423. A complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses may be obtained on the website of the Debtors' claims and noticing agent at www.gardencitygroup.com/cases/WGC.

*Ad Hoc Committee of Holders of Promissory Notes of Woodbridge Mortgage Investment Fund Entities and Affiliates Pursuant to Section 1102(a)(2) of the Bankruptcy Code Directing the Appointment of an Official Committee of Noteholders* (the "Motion") [Docket No. 85].

**JOINDER**

Section 1102(a)(2) provides that "[o]n request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders." 11 U.S.C. § 1102(a)(2). "The Court has discretion to appoint an additional committee of creditors on a case-by-case basis." *In re Budd Co., Inc*., 512 B.R. 910, 912 (Bankr. N.D. Ill. 2014) (appointing an official committee of asbestos personal injury claimants) (citing *In re Spansion, Inc*., 421 B.R. 151, 156 (Bankr. D. Del. 2009) (Carey, J.)). Among the factors courts have considered when electing to appoint an additional committee are the "ability of [the] existing committee to function," the "ability of creditors to participate in [the] case without an additional committee," and the "delay and additional cost that would result if appointment were granted." *In re Budd Co., Inc*., 512 B.R. at 912-13 (citing *In re Residential Capital, LLC*, 480 B.R. 550 (Bankr. S.D.N.Y. 2012)). Here, such factors militate in favor of the appointment of an official committee of noteholders.

**I. The Existing Creditors' Committee's Ability to Function Effectively Is Constrained Because It Lacks Authority to Speak for Noteholders, the Majority of Creditors in this Case**

**A. The Noteholders are the Largest Stakeholder Group in this Case**

1. Here, the ability of the Committee of Unsecured Creditors (the "Creditors' Committee") to function as a proxy for all noteholders is very much in doubt because noteholders do not see the Creditors' Committee as representing their interests. The noteholders

number approximately 9,000 and hold approximately $750 million in claims, making them the largest stakeholder group in this case. As indicated in the declarations attached hereto as **Exhibit A**, the Joinder Noteholder Group alone holds over $10.5 million in claims and strongly supports the appointment of an official committee of noteholders. In addition, the Joinder Noteholder Group's members have been contacted by over 1,400 other noteholders who hold over $150 million in claims. Based upon these contacts, the members of the Joinder Noteholder Group believe that these additional noteholders also strongly support the appointment of an official committee of noteholders. *See* the attached declarations in Exhibit A. The reason for such widespread support is that many noteholders do not believe that the Creditors' Committee, made up of a trade creditor that is perceived to be differently situated and two noteholders who waived their lien rights, do not represent the noteholder constituency's interests. In fact, many noteholders refused to join the Creditors Committee because they believed that the Creditors' Committee would not represent their interests.

2. As the largest stakeholder group in this case, noteholders need to be organized and represented by an official committee in order speak with one voice, to investigate where appropriate, and to work with the Debtors' independent management in order to maximize the value of the estates for the benefit of its creditors.

**B. Noteholders Occupy a Unique Position in the Capital Structure**

3. A primary reason why representation on the recently formed Creditors' Committee of trade creditors and noteholders is insufficient, and why the noteholders need their own official committee, is that the noteholders occupy a unique position in the capital structure. Specifically, many or most of the noteholders either have asserted or are expected to assert lien rights. Also, based on available information to date, it seems that noteholders may be owed

money from entities different than those owing money to the trade creditors and, perhaps more importantly, the amount of trade claims is very small when compared to the claims held by the noteholders. It is far from clear what incentive a trade creditor serving on the Creditors' Committee would have to fight for the preservation of lien rights asserted by noteholders.

4. Significantly, the noteholders are also different from trade creditors in that Debtors have already moved to assume executory contracts with several trade creditors [Docket No. 106]. Indeed, one of the three members of the Creditors' Committee—trade creditor G3 Group LA, Inc.—is party to four executory contracts that the Debtors seeks to assume by that motion. As part of such assumption, the Debtors will make their counterparty trade creditors whole. The noteholders do not have the same avenue by which to be made whole.

**C. No Waiver of Lien Rights Ought to Be Required**

5. The noteholders also need their own official committee because, as mentioned above, many or most noteholders are expected to assert lien rights. It is noteworthy that the Motion states that the two noteholders who serve on the Creditors' Committee were required by the U.S. Trustee to waive their lien rights. As the Motion indicates, the vast majority of the noteholders in attendance at the Creditors' Committee formation meeting refused to waive their lien rights. Allowing noteholders to form their own official committee would give noteholders a voice in these proceedings without requiring them to give up potentially valuable lien rights. As the Court is aware, the secured status of noteholders will likely be a contentious issue in this case. It would not make sense for the purported representatives of all of the noteholders (*i.e.*, the two noteholders serving on the Creditors' Committee) to be parties who have already conceded this position.

## II. The Economics of this Case indicate that Noteholders Will Have Difficulty Participating without their own Official Committee

6. The ability of noteholders to participate without an official committee is constrained due their numbers: this case involves approximately 9,000 noteholders with claims that vary widely in amount. For many or most of these noteholders, hiring their own counsel would not be economical. Also, doing so could lead to needlessly chaotic proceedings and to disparate outcomes for different noteholders as a result of differing levels of sophistication and experience among their counsel. *In re Budd Co., Inc*., 512 B.R. at 915 ("To require each attorney for all claimants to participate in the case will likely become chaotic and opens the risk of inequitable treatment depending on the sophistication and experience in bankruptcy of the particular counsel").

7. An official committee of noteholders, on the other hand, could achieve an economy of scale by hiring a single firm with relevant expertise to represent this large group of individual noteholders.

## III. Efficiency Counsels the Formation of an Official Noteholder Committee

8. Efficiency counsels the formation of an official noteholder committee. *See, e.g., In re Budd Co., Inc*., 512 B.R. at 915 (appointing a committee of asbestos personal injury claimants was appropriate in part because it would "expedite the case, which will result in significant reductions in costs"). The Joinder Noteholder Group seeks the appointment of an official committee of noteholders at this early stage in the case to avoid delay, and the Joinder Noteholder Group believes that the costs to the estate of an official committee of noteholders would be offset, at least in part, by the efficiencies that will result from the creation of such a committee.

9. The alternative, a constellation of individual noteholders and ad hoc noteholder groups of various sizes—each of whom with separate sets of advisors incurring separate sets of advisor fees—would be costly and time-consuming due to the efforts it would take to either build consensus among the disparate individual noteholders and ad hoc groups before negotiating with the Debtors and/or to have individual noteholders and groups negotiate with the Debtors on a piecemeal basis.

10. An official committee of noteholders, on the other hand, could have representative members and could speak with one voice on behalf of the entire noteholder group. This would likely lead to quicker resolutions of outstanding issues, lower aggregate professional fees, and lower administrative burdens on the estate and the Court.

## CONCLUSION

WHEREFORE, for the reasons set forth in the Motion and herein, the Joinder Noteholder Group respectfully submits that the Court should appoint an official committee of noteholders and grant such other and further relief as is just and proper.

Dated: January 3, 2018
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Andrew R. Remming*
Robert J. Dehney (No. 3578)
Andrew R. Remming (No. 5120)
1201 N. Market St., 16th Flr.
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
rdeheny@mnat.com
aremming@mnat.com

and

**MILBANK, TWEED, HADLEY & McCLOY LLP**
Mark Shinderman (*pro hac vice* pending)
James C. Behrens (*pro hac vice* pending)

2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000

*Attorneys for Joinder Noteholder Group*