# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| WOODBRIDGE GROUP OF COMPANIES LLC, *et al.*,[1] | : | Case No. 17-12560 (KJC) |
| | : | |
| | : | (Jointly Administered) |
| | : | |
| Debtors. | : | Ref Docket Nos. 6, 22, 48, 56, 58, 59, 130 & 295 |
| | : | |

**OMNIBUS RESPONSE AND RESERVATION OF RIGHTS OF THE
AD HOC NOTEHOLDER GROUP FORMED PURSUANT TO
JANUARY 23, 2018, ORDER [D.I. 357] WITH RESPECT TO
(I) DIP FINANCING MOTION AND (II) CRITICAL VENDOR MOTION**

The Ad Hoc Group of Noteholders Formed Pursuant to January 23, 2018, Order [D.I. 357] (the "Ad Hoc Noteholder Group"), by and through its undersigned proposed counsel, hereby files this omnibus response and reservation of rights (the "Response") with respect to (i) entry of a final order granting the above-captioned debtors' motion for approval of debtor-in-possession (DIP) financing [D.I. 22] (the "DIP Motion"); and (ii) entry of a final order authorizing payment of prepetition claims of certain "critical vendors" [D.I. 6] (the "Critical Vendor Motion"). In support of this Response, the Ad Hoc Noteholder Group respectfully represents as follows:

## GENERAL BACKGROUND

1.  On December 18, 2017, the Ad Hoc Committee of Promissory Notes of Woodbridge Mortgage Investment Fund Entities and Affiliates (the "Movant Ad Hoc

---

[1] The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423. A complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses may be obtained on the website of the Debtors' noticing and claims agent at www.gardencitygroup.com/cases/WGC.

Committee") filed a motion [D.I. 85] (the "Committee Appointment Motion") pursuant to section 1102(a)(2) of the Bankruptcy Code for entry of an order directing appointment of an official committee of Woodbridge noteholders. The motion was opposed by the Official Committee of Unsecured Creditors (the "Creditors' Committee") [D.I. 288]. On January 23, 2018, the Court entered an order approving a global resolution of several pending contested matters, including the Committee Appointment Motion [D.I. 357] (the "Settlement Order").

2. On February 2, 2018, in accordance with the Settlement Order, the Movant Committee formed the Ad Hoc Noteholder Group [D.I. 470].

## RESPONSE AND RESERVATION OF RIGHTS: DIP MOTION

3. The Movant Ad Hoc Committee had previously objected to the DIP Motion [D.I. 113] on several grounds, including that (i) the $100 million proposed borrowing amount presupposed the validity of the Debtors' business plan and overall "reorganization" thesis, which had yet to be proved, (ii) the priming of noteholders' liens meant the affected noteholders would bear all the valuation risk on the collateral properties, (iii) funding reserves for payment of interest payable (but not being paid) to noteholders, using DIP funds borrowed at a much higher rate, made little sense, and (iv) the Court should limit the erosion of noteholders' rights until they had a proper seat at the table and a meaningful opportunity to participate in discussions about a sensible path forward in the cases.

4. The Movant Ad Hoc Committee's objection to the DIP Motion was overruled at the second interim DIP hearing on December 21, 2017, based upon (i) testimony from a real estate valuation expert establishing, for purposes of that hearing, an equity cushion of approximately $80 million in the pool of "Adequate Protection Properties" in which affected noteholders were granted conditional adequate protection liens under the proposed second

interim order, and (ii) testimony from the Debtors' then-Chief Restructuring Officer, Lawrence Perkins, regarding the Debtors' need for the requested DIP borrowing. The Court entered a second interim order on the DIP Motion authorizing up to $25 million of DIP borrowing [D.I. 130].

5. In the subsequent litigation concerning the motions by the Creditors' Committee and SEC seeking appointment of a chapter 11 trustee, the Debtors' "reorganization" thesis and business plan, as well as the decision to fund interest reserves for noteholders using more expensive DIP borrowings, were revisited, and a comprehensive change in the Debtors' management was ultimately negotiated as part of the Settlement Order. At the January 23, 2018, hearing on the approval of the Settlement Order, the Debtors also obtained entry of a third interim order approving the DIP Motion and authorizing up to $44 million of DIP borrowing [D.I. 363]. In light of the Settlement Order, the Movant Ad Hoc Committee did not object to the third interim DIP order at that time; but it did reserve rights as to the final order.

6. The Ad Hoc Noteholder Group has retained counsel and financial advisors (Conway MacKenzie), who are working diligently to get up to speed on the documents recently provided to it by the Debtors. However, the Debtors have not yet filed their proposed form of final DIP order, or provided the Ad Hoc Noteholder Group with the proposed budget or related business plan. And a number of the concerns expressed in the Movant Ad Hoc Committee's prior objection to the DIP Motion still remain, including the valuation risk imposed on noteholders if the Debtors seek to borrow the full $100 million contemplated by the DIP loan documents on a priming basis, despite only an $80 million equity cushion in the Adequate Protection Properties based on the Debtors' prior witness testimony. Accordingly, under compulsion of the deadline to object to the final DIP order, the Ad Hoc Noteholder Group files

3

this Response and reserves all rights with respect to the final form of order and the evidence to be adduced at the hearing on February 13, 2018.

## RESPONSE AND RESERVATION OF RIGHTS: CRITICAL VENDOR MOTION

7. At the Debtors' request, the Court previously entered two orders granting the Critical Vendor Motion on an interim basis, which authorized up to $1.5 million in the aggregate of payments of prepetition claims of vendors deemed critical by the Debtors, subject to certain conditions [D.I. 48 & 295] (the "Interim Critical Vendor Orders").

8. During the trial on the Creditors' Committee's and SEC's motions to appoint a chapter 11 trustee, it was revealed that the Debtors had made approximately $7.6 million in post-petition payments to trade creditors in December 2017 and January 2018, which the Debtors characterized as pre-payments for post-petition services to be rendered, but the Creditors' Committee characterized as unauthorized payments of prepetition claims in excess of the amounts authorized by the Interim Critical Vendor Orders.

9. On January 22, 2018, citing rumblings among the trade creditor community that they might be pursued for recovery of the December and January payments, the Creditors' Committee filed an emergency motion [D.I. 350] (the "Pay-Trade Motion") seeking entry of an order increasing the critical vendor cap by $7.6 million and deeming the December and January payments to have been made pursuant to the Debtors' authority under the Interim Critical Vendor Orders. The Pay-Trade Motion also requested (i) that the Debtors make *additional payments* to any trade creditors who had not yet received payments equal to their prepetition claim amounts (*id.* at ¶ 15), and (ii) that payments to trade creditors would only be considered deposits for post-petition services to the extent they exceeded the prepetition claim amount (*id.* at ¶ 16). So under the Creditors' Committee's proposal, it would appear that a trade creditor with

90965811.2

an unpaid prepetition balance who had been pre-paid for post-petition services to be rendered, and who had in fact rendered those services post-petition, would be able to reallocate that payment to the prepetition balance and, presumably, re-invoice the Debtors' estates for the post-petition services.

10. The Court considered the Pay-Trade Motion on extremely shortened notice at the January 23, 2018, hearing, and entered an order granting it [D.I. 362] (the "Supplemental Critical Vendor Order"), which authorized, but did not direct, the Debtors to make "Additional Critical Vendor Payments" up to an aggregate amount of $9.1 million (inclusive of the prior caps, as was clarified on the record), "unless otherwise ordered by the Court after notice and a hearing" (*id.* ¶ 2). The order requires the Debtors to provide a report of all payments made under the order to the U.S. Trustee, the DIP lender, and the advisors to the Creditors' Committee. (*Id.* ¶ 5.) The Movant Ad Hoc Committee did not object to the entry of this order because it expressly vested the Debtors with authority and discretion to make any payments thereunder, and thus did not require the Debtors to honor the Creditors' Committee's request to "top up" any trade creditors whose prepetition claims had not yet been paid in full.

11. As noted above, the Ad Hoc Noteholder Group has retained counsel and financial advisors, who are working diligently to get up to speed on the documents recently provided to it by the Debtors. However, the Debtors have not yet provided information concerning the payments, if any, made pursuant to the Supplemental Critical Vendor Order. And the Ad Hoc Noteholder Group is concerned that if payments intended to cover post-petition services are instead allocated to prepetition balances, the Debtors' estates could end up having to essentially double-pay for the same post-petition services, thus exacerbating their liquidity issues. Accordingly, to the extent the Debtors or the Creditors' Committee intend to seek entry of the

90965811.2

Supplemental Critical Vendor Order on a final basis at the February 13, 2018, hearing, the Ad Hoc Noteholder Group files this Response and reserves all rights with respect to the final form of order and the evidence to be adduced at the hearing.

## **CONCLUSION**

12.  WHEREFORE, for the reasons set forth above, the Ad Hoc Noteholder Group respectfully requests that the Court condition the entry of final orders on the DIP Motion and the Critical Vendor Motion on the satisfaction of the concerns expressed above, and upon the establishment of a sufficient evidentiary record at the February 13, 2018, hearing.

*[Remainder of page intentionally left blank]*

| | |
|---|---|
| Dated: February 6, 2018<br>Wilmington, Delaware | **DRINKER BIDDLE & REATH LLP**<br><br>*/s/ Patrick A. Jackson*<br>Steven K. Kortanek (Del. Bar No. 3106)<br>Patrick A. Jackson (Del. Bar No. 4976)<br>Joseph N. Argentina, Jr. (Del. Bar No. 5453)<br>222 Delaware Avenue, Suite 1410<br>Wilmington, Delaware 19801<br>Telephone: (302) 467-4200<br>Facsimile: (302) 467-4201<br>steven.kortanek@dbr.com<br>patrick.jackson@dbr.com<br><br>-and-<br><br>James H. Millar<br>Michael P. Pompeo<br>1177 Avenue of the Americas, 41st Floor<br>New York, New York 10036-2714<br>Telephone: (212) 248-3140<br>Facsimile: (212) 248-3141<br>james.millar@dbr.com<br>michael.pompeo@dbr.com<br><br>-and-<br><br>Timothy R. Casey<br>191 N. Wacker Dr., Ste. 3700<br>Chicago, Illinois 60606-1698<br>Telephone: (312) 569-1000<br>Facsimile: (312) 569-3000<br>timothy.casey@dbr.com<br><br>*Counsel to the Ad Hoc Noteholder Group Formed Pursuant to January 23, 2018, Order [D.I. 357]* |

90965811.2