## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1] | Case No. 17-12560 (KJC) |
| Debtors. | (Jointly Administered) |
| | **Proposed Hrg. Date: February 13, 2018, at 1:00 p.m. (ET)** |
| | **Proposed Obj. Deadline: February 12, 2018, at 12:00 p.m. (ET)** |

### DEBTORS' MOTION FOR AN ORDER, PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE, AUTHORIZING THE DEBTORS TO (I) (A) RETAIN DEVELOPMENT SPECIALISTS, INC. AS THEIR RESTRUCTURING ADVISOR, (B) DESIGNATE BRADLEY D. SHARP AS CHIEF RESTRUCTURING OFFICER, *NUNC PRO TUNC* TO JANUARY 26, 2018, AND (C) TO UTILIZE ADDITIONAL DSI PERSONNEL; AND (II) APPROVING <u>THE AGREEMENT RELATED THERETO</u>

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), by

and through their undersigned counsel, hereby submit this motion (the "<u>Motion</u>") for the entry of

an order, substantially in the form attached hereto as <u>Exhibit C</u> (the "<u>Proposed Order</u>"), pursuant

to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the

"<u>Bankruptcy Code</u>"):  (i) authorizing the Debtors to (a) retain and employ Development

Specialists, Inc. ("<u>DSI</u>") as their restructuring advisor, (b) designate Bradley D. Sharp as their

chief restructuring officer ("<u>CRO</u>") in connection with the above-captioned chapter 11 cases,

*nunc pro tunc* to January 26, 2018 (the "<u>Retention Date</u>"), and (c) utilize additional DSI

---

[1]     The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423.  Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein.  A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at www.gardencitygroup.com/cases/WGC, or by contacting the undersigned counsel for the Debtors.

personnel; and (ii) approving the Agreement (as defined below) related thereto.  In support of the

Motion, the Debtors submit the declaration of Bradley D. Sharp, President and CEO of DSI (the

"Sharp Declaration"), a copy of which is attached hereto as Exhibit A and incorporated by

reference herein.  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334, and the *Amended Standing Order of Reference* from the United States District Court

for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant

to 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to Rule 9013-1(f) of the Local Rules

of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this

Motion to the extent that it is later determined that the Court, absent consent of the parties,

cannot enter final orders or judgments in connection herewith consistent with Article III of the

United States Constitution.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 105

and 363 of the Bankruptcy Code.

## BACKGROUND

4.      On December 4, 2017 (the "Petition Date"), each of the Debtors

commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.

5.      Each Debtor is authorized to continue to operate its business and manage

its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  The Chapter 11 Cases are being jointly administered for procedural purposes pursuant to

Bankruptcy Rule 1015(b).

6.      On December 14, 2017, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [Docket No. 79].

7.      On December 19, 2017, the Debtors filed the *Debtors' Motion for Entry of an Order Pursuant to Section 363 of the Bankruptcy Code Authorizing (I) the Engagement Letter Between the Debtors and SierraConstellation Partners LLC and (II) Debtors' Employment of Lawrence R. Perkins as Chief Restructuring Officer Nunc Pro Tunc to the Petition Date* [Docket No. 102]. On January 23, 2018, the Court entered an Order [Docket No. 367] authorizing the retention of SierraConstellation Partners LLC ("Sierra"). However, the Order provided that, "[u]pon the completion of transition services necessary to effectuate a smooth transition [for the New Board (defined below) and a replacement management team, including a new chief restructuring officer], Sierra shall discontinue providing services to the Debtors. *Id.* at ¶ 10.

8.      On January 23, 2018, the Court held a hearing to resolve, among other matters, two motions to appoint a chapter 11 trustee, and entered an order approving the settlement reached between the Debtors and other parties in interest (the "Settlement Order").[2] Attached as Exhibit 1 to the Settlement Order was a term sheet enumerating the terms of the settlement (the "Joint Resolution"). By the terms of the Joint Resolution, the Debtors' board of managers was to be reconstituted as a three-person board (the "New Board"). In addition, the

---

[2]      *Order, Pursuant to Sections 105(a) and 1102 of the Bankruptcy Code and Bankruptcy Rule 9019, Approving the Consensual Resolution of (A) Motion of the Ad Hoc Committee of Holders of Promissory Notes of Woodbridge Mortgage Investment Fund Entities and Affiliates Pursuant to Section 1102(a)(2) of the Bankruptcy Code Directing the Appointment of an Official Committee of Noteholders, (B) Emergency Motion of Official Committee of Unsecured Creditors for Entry of an Order Directing the Appointment of a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104, (C) Motion by the U.S. Securities and Exchange Commission for Order Directing the Appointment of a Chapter 11 Trustee, (D) Joinder of Additional Noteholders to Motion of the Ad Hoc Committee of Holders of Promissory Notes of Woodbridge Mortgage Investment Fund Entities and Affiliates Pursuant to Section 1102(a)(2) of The Bankruptcy Code Directing the Appointment of an Official Committee of Noteholders, and (E) Motion of the Ad Hoc Committee of Unitholders of Woodbridge Mortgage Investment Fund Entities Pursuant to 11 U.S.C. § 1102(a)(2) Directing Appointment of an Official Committee of Unitholders* [Docket No. 357].

Joint Resolution provided for the formation of an ad hoc noteholder group (the "Noteholder Group") and an ad hoc unitholder group (the "Unitholder Group").

9.      Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of the Chapter 11 Cases can be found in the *Declaration of Lawrence R. Perkins in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "First Day Declaration") [Docket No. 12], which is incorporated herein by reference.[3]

## RELIEF REQUESTED

10.      By this Motion, the Debtors seek entry of an order (i) authorizing the Debtors to retain and employ DSI as their restructuring advisor, to designate Bradley D. Sharp as their CRO, *nunc pro tunc* to the Retention Date, and to utilize the Additional Personnel (as defined below) subject to further order of the Court, pursuant to the terms of the agreement between the Debtors and DSI, dated February 2, 2018 (the "Agreement"), attached hereto as Exhibit B, and (ii) approving the Agreement.[4]

## RELEVANT INFORMATION

**A.      DSI's Qualifications**

11.      For over thirty (30) years, DSI has been a leading provider of management consulting and financial advisory services, including turnaround consulting, fiduciary roles, financial restructure, litigation support, wind-down oversight and forensic accounting services. DSI's clients include business owners, corporate boards of directors, financial services

---

[3]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

[4]      Capitalized terms used, but not otherwise defined herein, have the meanings set forth in the Agreement. The summary of the terms of the Agreement contained herein is provided for the benefit of the Court and parties in interest and, to the extent the summary set forth herein and the terms of the Agreement are inconsistent, the terms of the Agreement shall control.

institutions, secured lenders, bondholders, unsecured creditors and creditor committees.  As one of the first turnaround firms in the United States, DSI has expanded from its headquarters in Chicago, Illinois, to include a significant national footprint with offices in New York, Los Angeles, San Francisco, Miami, Philadelphia and Columbus, Ohio.  Internationally, DSI has an office in London.  Accordingly, DSI has significant qualifications and experience in these matters and has an excellent reputation for providing high quality, specialized management and restructuring advisory services to debtors, creditors, and investors in complex chapter 11 cases and other restructurings, both in and out of court.

12.     DSI offers a broad spectrum of services as it has amassed a diverse group of professionals with financial, accounting, legal and regulatory expertise.  The DSI team includes Masters of Professional Accountancy, Certified Public Accountants, Certified Insolvency and Restructuring advisors, Certified Financial Forensic Accountants and Certified Internal Auditors.  Additionally, DSI has a diverse background with respect to its consultants, including a former Special United States Attorney and commercial and investment bankers.

13.     As set forth in the Agreement, DSI has made Mr. Sharp available to serve as CRO to the Debtors and has made additional individuals available to the Debtors who will provide various other critical restructuring support services to the Debtors (the "Additional Personnel").  Mr. Sharp has been with DSI since 1993 and has over twenty (20) years of experience in providing crisis management and consulting services to companies in various industries including consumer finance, high tech and agriculture.  Additionally, he has operated and sold publicly and privately-held troubled companies in and out of bankruptcy.

14.     In light of Mr. Sharp's expertise, as well as the knowledge and experience of the Additional Personnel, DSI is uniquely positioned to assist the Debtors in successfully navigating the chapter 11 process.

**B.      Services to be Provided[5]**

15.     As stated above, under the Agreement, DSI has, subject to this Court's approval, assigned Mr. Sharp to serve as the Debtors' CRO, and has assigned the Additional Personnel to perform other services set forth in the Agreement.  In his capacity as an officer of the Debtors, Mr. Sharp's duties will be duties customarily performed by individuals holding similar executive positions.

16.     Subject to further order of the Court, consistent with the Agreement, DSI will provide the following restructuring and management services, without limitation:

a.      Bradley D. Sharp will act as the Debtors' CRO.

b.      As CRO, Mr. Sharp will assume control of the Debtors' restructuring and direct the Debtors with respect to their bankruptcy.

c.      Mr. Sharp will report to the New Board and will comply with the Debtors' corporate governance requirements.

d.      Mr. Sharp will also report to the Debtors' Chief Executive Officer ("CEO") to ensure the CEO receives the support required to fulfill his functions while avoiding duplication of effort.

e.      As directed by the New Board, the CRO will be responsible for the implementation and prosecution of the Chapter 11 Cases, including negotiations with creditors, reconciliation of claims and confirmation of a plan.

f.      Provide the Additional Personnel to provide restructuring support services as requested by the New Board and the CEO.

---

[5]      The description of the services to be provided herein is a summary.  The full description of the services is provided in the Agreement.

g.     Provide other services which may include:

    i.  assisting the Debtors in the preparation of financial disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statements of Financial Affairs and Monthly Operating Reports;

   ii.  advising and assisting the Debtors, the Debtors' legal counsel and other professionals in responding to third party requests;

  iii.  attending meetings and assisting in communications with parties in interest and their professionals;

  iv.  providing litigation advisory services with respect to accounting matters, along with expert witness testimony on case related issues; and

   v.  rendering such other general business consulting or such other assistance as the Debtors may deem necessary and which is consistent with the role of a financial advisor and not duplicative of services provided by other professionals in these cases.

**C.    Professional Compensation**

17.    DSI will be compensated consistent with the terms of the Agreement.  The DSI personnel presently designated to represent the Debtors and their current standard hourly rates are:

| | |
|---|---|
| Bradley D. Sharp | $640.00 |
| R. Brian Calvert | $630.00 |
| Thomas P. Jeremiassen | $550.00 |
| Eric J. Held | $485.00 |
| Nickolas R. Troszack | $480.00 |
| Matthew P. Sorenson | $410.00 |
| Spencer G. Ferrero | $300.00 |
| Daniel Ungheanu | $290.00 |

The hourly rates set forth above are subject to periodic adjustments to reflect economic and other conditions.  Other personnel may from time to time serve the Debtors in connection with the matters herein described.

18.     In addition to compensation for services rendered by DSI's professionals, DSI will receive reimbursement for reasonable and necessary expenses incurred in connection with the Chapter 11 Cases, including, but not limited to travel, meals, lodging, postage, telephone, document reproduction, telecopy and computer charges and database access fees and any reasonable fees and expenses of counsel, consultants and advisors retained, in connection with DSI's engagement.

19.     If the Court grants the relief requested herein, DSI will be employed in the Chapter 11 Cases pursuant to section 363 of the Bankruptcy Code.  Because DSI is not being employed as a professional under section 327 of the Bankruptcy Code, DSI requests that it not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. However, to maintain transparency and to comply with the U.S. Trustee's protocol applicable to the retention of personnel under section 363 of the Bankruptcy Code, DSI will file reports of compensation earned and expenses incurred and paid on a quarterly basis (each a "Quarterly Report," and collectively, the "Quarterly Reports") with the Court and provide notice to the U.S. Trustee, counsel to the Committee, counsel to the Noteholder Group, and counsel to the Unitholder Group (collectively, "Notice Parties").  Such reports will (a) summarize the services provided to the Debtors, (b) summarize the compensation earned by each of the DSI personnel, (c) identify the staff employee provided, and (d) itemize the expenses incurred.  Notice for the Quarterly Reports will provide for a time period of at least fourteen (14) days for objections by parties in interest.  All compensation will be subject to review by the Court in the event an objection is filed.  For the avoidance of doubt, Mr. Sharp and the Additional Personnel will not be required to submit time entries in tenth of an hour increments, as required by Local Rule 2016-2(d)(iv), but rather in hour increments.

20.     Quarterly Reports shall be due no later than twenty (20) days after the end of a quarter with the first Quarterly Report, covering the period from the Retention Date through March 31, 2018, due on or before April 20, 2018.  This procedure shall continue for any subsequent Quarterly Reports.  In the event that a party in interest objects to a Quarterly Report, DSI's fees and expenses shall be subject to review by this Court.

21.     In addition, DSI will file with the Court and provide the Notice Parties a report on staffing (the "Staffing Report") by the 20th of each month for the previous month. These Staffing Reports will include the names and tasks filled by all Additional Personnel involved in this matter.  Notice for the Staffing Reports will provide for a time period of at least fourteen (14) days for objections by parties in interest.  The Staffing Report (and DSI's staffing for this matter) would be subject to review by the Court in the event so requested by any of the Notice Parties.

**D.      No Duplication of Services**

22.     DSI is aware of the fact that the Debtors have retained, or are seeking to retain, Gibson, Dunn & Crutcher, LLP and Young Conaway Stargatt & Taylor, LLP, as well as other professionals in these Chapter 11 Cases.  DSI will work cooperatively with, and not duplicate the services of, the other professionals in order to integrate any respective work performed by DSI on behalf of the Debtors with the work performed by the other professionals.

**E.      Indemnification**

23.     The Agreement also contains standard indemnification language with respect to DSI's services.  Accordingly, as part of this Motion, the Debtors request that the Court approve the indemnification provisions as set forth therein that indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the

Debtors' Director and Officer insurance policy.  The Debtors will not, however, indemnify DSI for any losses, claims, damages, or liabilities incurred by DSI to the extent that a court of competent jurisdiction determines such losses, claims, damages, or liabilities result from bad faith, willful misconduct, or gross negligence.

**F.    DSI's Disinterestedness**

24.    Although the Debtors do not propose to retain DSI under section 327 of the Bankruptcy Code, DSI nonetheless has reviewed its electronic database and, to the best of its knowledge and except to the extent disclosed herein and in the Sharp Declaration, determined that it neither holds nor represents an interest adverse to the Debtors' estate, nor has a connection to the Debtors, their creditors, or related parties, and believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code.  DSI will periodically review its files during the pendency of the Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  To the extent that DSI discovers any new relevant facts or relationships bearing on the matters described herein during the period of DSI's retention, DSI will use reasonable efforts to promptly file a supplemental declaration.

<u>**BASIS FOR RELIEF REQUESTED**</u>

25.    Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate[.]"  11 U.S.C. § 363(b)(1).  Under applicable case law in this and other circuits, courts will approve a debtor's proposed use of its assets under section 363(b)(1) if it represents a sound business purpose on the part of the debtor.  *See, e.g., In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) ("In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment

test.'"); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (courts defer to a trustee's judgment

concerning use of property under §363(b) when there is a legitimate business justification); *In re*

*Delaware & Hudson R.R. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (courts have applied the

"sound business purpose" test to evaluate motions brought pursuant to section 363(b)).  Under

the business judgment rule, a court will not interfere with the judgment of a board of directors

unless there is a showing of "gross and palpable overreaching."  *In re Marvel Entm't Group,*

*Inc.*, 273 B.R. 58, 78 (Bankr. D. Del. 2002) ("under the business judgment rule, a board's

'decisions will not be disturbed if they can be attributed to any rational purpose' and a court 'will

not substitute its own notions of what is or is not sound business judgment.'") (citing *Sinclair Oil*

*Corp. v. Levien*, 280 A.2d 717, 719-20 (Del. 1971)).

26.    The Debtors submit that the retention and employment of DSI is a sound

exercise of their business judgment pursuant to section 363 of the Bankruptcy Code, as DSI's

services are necessary and essential to the Debtors' restructuring efforts.  Mr. Sharp and the

Additional Personnel have extensive experience in providing crisis management and consulting

services to distressed companies in various industries including real estate, consumer finance,

high tech and agriculture.  Since being engaged, DSI and Mr. Sharp, working in conjunction with

the Debtors and their professionals, have provided invaluable assistance with, among other

things:  (i) assisting Debtors in the design and implementation of a restructuring strategy

designed to maximize the enterprise value of the Debtors and (ii) providing financial consulting

support to management, as requested.

27.    The Debtors are seeking to engage Mr. Sharp and DSI to advise and guide

them through the chapter 11 process.  Numerous bankruptcy courts in this district have analyzed

the propriety of a debtor's employment of corporate restructuring officers, advisors, and

01:15197700.4

professionals under section 363 of the Bankruptcy Code on numerous occasions and have

determined it is an appropriate exercise of the debtor's business judgment to employ a

restructuring professional in this manner.

        28.    Denying the relief requested herein would deprive the Debtors of the

assistance of a highly qualified CRO and disadvantage the Debtors and all parties in interest.

The Debtors need experienced and knowledgeable professionals to provide assistance during the

Chapter 11 Cases.  The restructuring support services provided by DSI and Mr. Sharp are critical

to the Chapter 11 Cases and the Debtors request that the Court approve the Agreement in

substantially the form attached hereto.

## REQUEST FOR WAIVER OF BANKRUPTCY RULE 6004(h)

        29.    The Debtors respectfully request a waiver of the fourteen (14) day stay of

effectiveness imposed by Bankruptcy Rule 6004(h) so that the relief requested herein can take

effect immediately upon entry of an order approving this Motion.

## NOTICE

        30.    Notice of this Motion has been provided to:  (i) the U.S. Trustee;

(ii) counsel to the Committee; (iii) counsel to the DIP Lender; (iv) counsel to the Unitholder

Group, (v) counsel to the Noteholder Group, (vi) counsel to the SEC, and (vii) any party that has

requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  In light of the

nature of the relief requested herein, the Debtors submit that no other or further notice is

necessary.

WHEREFORE, for the reasons set forth herein and in the Sharp Declaration, the Debtors request that the Court enter the Proposed Order, substantially in the form attached hereto as <u>Exhibit C</u>, granting the relief requested herein and granting such other and further relief as the Court deems appropriate.

Dated: February 7, 2018
Wilmington, Delaware

*/s/ Ian J. Bambrick*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Sean M. Beach (No. 4070)
Edmon L. Morton (No. 3856)
Ian J. Bambrick (No. 5455)
Betsy L. Feldman (No. 6410)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:    (302) 571-6600
Fax:    (302) 571-1253

-and-

GIBSON, DUNN & CRUTCHER LLP
Samuel A. Newman (*pro hac vice*)
Oscar Garza (*pro hac vice*)
Daniel B. Denny (*pro hac vice*)
333 South Grand Avenue
Los Angeles, California 90071
Tel:    (213) 229-7000
Fax:    (213) 229-7520

-and-

J. Eric Wise (*pro hac vice*)
Matthew K. Kelsey (*pro hac vice*)
Jennifer L. Conn (*pro hac vice*)
Matthew P. Porcelli (*pro hac vice*)
200 Park Avenue New York,
New York 10166
Tel:    (212) 351-4000
Fax:    (212) 351-4035

*Counsel for the Debtors and Debtors in Possession*

01:15197700.4