**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12560 (KJC)<br><br>(Jointly Administered)<br><br>*Requested* Hearing Date: February 13, 2018, at 1:00 p.m. (ET)<br>*Requested* Obj. Deadline: February 12, 2018, at 12:00 p.m. (ET) |

**DEBTORS' MOTION UNDER BANKRUPTCY CODE SECTIONS 105(a)
AND 363(b) FOR AUTHORIZATION TO EMPLOY AND RETAIN
FREDERICK CHIN AS CHIEF EXECUTIVE
OFFICER *NUNC PRO TUNC* TO JANUARY 29, 2018**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby move (the "Motion") pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") for the entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), authorizing Woodbridge Group of Companies, LLC ("Woodbridge") to retain and employ Frederick Chin (the "CEO") as the Chief Executive Officer of WGC Independent Manager LLC (the "Manager"), manager of the Debtors, pursuant to the terms of the Employment Letter attached as Exhibit 1 to the Proposed Order (the "Employment Letter") *nunc pro tunc* to January 29, 2018, and granting related relief. In support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

---

[1]    The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14140 Ventura Blvd #302, Sherman Oaks, California 91423. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing and claims agent at www.gardencitygroup.com/cases/WGC, or by contacting the undersigned counsel for the Debtors

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors consent, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue of these cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code.

## BACKGROUND

**A.     The Chapter 11 Cases**

3. On December 4, 2017, each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "<u>Chapter 11 Cases</u>").

4. Each Debtor is authorized to continue to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These Chapter 11 Cases are being jointly administered for procedural purposes pursuant to Bankruptcy Rule 1015(b).

5.      On December 14, 2017, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code.

6.      Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of the Chapter 11 Cases can be found in the First Day Declaration, which is incorporated herein by reference.

**B.     Recent Case Developments and Corporate Governance Changes**

7.      On December 18, 2017, the Ad Hoc Committee of Holders of Promissory Notes of Woodbridge Mortgage Investment Fund Entities and Affiliates filed its *Motion of the Ad Hoc Committee of Holders of Promissory Notes of Woodbridge Mortgage Investment Fund Entities and Affiliates Pursuant to Section 1102(a)(2) of the Bankruptcy Code Directing the Appointment of an Official Committee of Noteholders* [D.I. 85] (the "Noteholder Committee Motion").

8.      On December 28, 2017, the Committee filed its *Emergency Motion of Official Committee of Unsecured Creditors for Entry of an Order Directing the Appointment of a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104* [D.I. 150] (the "Committee Trustee Motion").

9.      On January 2, 2018, the U.S. Securities and Exchange Commission (the "SEC") filed its *Motion by the U.S. Securities and Exchange Commission for Order Directing the Appointment of a Chapter 11 Trustee* [D.I. 157] (the "SEC Trustee Motion") (together with the Committee Trustee Motion, the "Trustee Motions").

10.     On January 8, 2018, the Ad Hoc Committee of Unitholders of Woodbridge Mortgage Investment Fund Entities filed its *Motion of the Ad Hoc Committee of*

*Unitholders of Woodbridge Mortgage Investment Fund Entities Pursuant to 11 U.S.C. § 1102(a)(2) Directing Appointment of an Official Committee of Unitholders* [D.I. 250] (the "Unitholder Committee Motion") (together with the Noteholder Committee Motion, the "Committee Motions").

11. Following four days of hearings to consider the Trustee and Committee Motions, as well lengthy negotiations between the various interested parties, a resolution regarding the relief requested in the Trustee and Committee Motions was reached, and a settlement term sheet (the "Settlement") memorializing the parties' agreement was approved by the Court. *See* D.I. 357. Pursuant to the terms of the Settlement, among other things, an ad hoc noteholder group (the "Noteholder Group") and an ad hoc unitholder group (the "Unitholder Group") were formed. In addition, the Settlement required that the Debtors replace their Board of Managers with three new members (the "New Board"). The New Board was authorized to select a new Chief Executive Officer and/or Chief Restructuring Officer "as soon as practicable".

12. Thereafter, the New Board met, interviewed applicants, and chose the CEO as the proposed Chief Executive Officer of the Manager.

**C. The Chief Executive Officer Position**

13. Pursuant to discussions with the New Board, the CEO has agreed to, among other things; provide daily leadership and direction to the Debtors' employees on business and restructuring matters relating to these Chapter 11 Cases. In that capacity, he will analyze staff levels, oversee construction activities, coordinate services amongst and between contractors, sub-contractors and other critical vendors, and develop a sustainable business plan to effectuate the construction, marketing, and sale of the Debtors' property assets. As part of this process, the CEO will evaluate the viability of potential transactions and assess ways to

maximize the value of Debtors' assets for the estates and other constituencies. The CEO will also work in tandem with the New Board and other professionals to more efficiently maintain the Debtors' books and records, which will assist in the various chapter 11 reporting obligations and provide greater transparency to interested parties.

14. The CEO has extensive consulting and restructuring experience and has led, operated, and advised under-performing and high-growth real estate companies. Specifically, he has experience managing and enhancing liquidity and developing/implementing turnaround improvement plans and processes to achieve operational efficiency and increase accountability.

15. The CEO previously worked for the firm, Province, Inc. ("Province") as a Senior Director. The Debtors retained Province to provide expert valuation services in connection with obtaining post-petition financing. *See* D.I. 360. The CEO assisted the Debtors by assessing the value of several of the Debtors' properties, and he will bring significant expertise in the area of real estate development and valuation to the Debtors' management team.

## THE EMPLOYMENT LETTER

16. The New Board negotiated the Employment Letter with the CEO at arm's length. The material economic terms of the Employment Letter are as follows:[2]

    (a) Term: Commencing January 29, 2018 and continuing "at will" for no specific time period.

    (b) Title; Duties: Chief Executive Officer of Manager. As CEO of the Manager, the CEO will devote his full business time, attention and efforts to the business and welfare of the Manager and its management of the Debtors.

---

[2] What follows is by way of summary only and is qualified in its entirety by reference to the Employment Letter, which controls. Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Employment Letter.

5

01:22819872.5

    (c) <u>Base Salary</u>: $110,000 per month, less applicable tax withholdings.

    (d) <u>Participation in Employee Benefit Plans</u>: If and to the extent eligible, the CEO may participate in all of the applicable benefit plans maintained by Woodbridge from time to time, pursuant to the terms of such plans.

    (e) <u>Reimbursement of Expenses</u>: Woodbridge shall provide $10,000 per month for relocation and living expenses.

## RELIEF REQUESTED

  17. By this Motion, the Debtors seek the entry of the Proposed Order authorizing Woodbridge to employ the CEO pursuant to the terms of the Employment Letter, *nunc pro tunc* to January 29, 2018. In addition, the Proposed Order provides that the CEO shall be authorized to hire, in accordance with his business judgment, such other officers as may be needed, including, without limitation, a Chief Financial Officer and General Counsel.

  18. The Debtors believe that employing the CEO under the terms of the Employment Letter constitutes an act in the ordinary course of business, and consequently, is permissible under Bankruptcy Code section 363(c) without Court approval. However, out of an abundance of caution, the Debtors seek this Court's approval of the Employment Letter under Bankruptcy Code section 363(b).

## BASIS FOR RELIEF

**A. The Debtors' Entry Into the Employment Relationship with the CEO pursuant to the Terms of the Employment Letter is a Valid Exercise of the Debtors' Business Judgment.**

  19. The Manager's decision for Woodbridge to enter into the employment relationship with the CEO pursuant to the terms of the Employment Letter should be approved pursuant to sections 363(b) and 105(a) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C.

§ 363(b)(1). In addition, section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

20. The proposed use, sale, or lease of property of the estate may be approved under Bankruptcy Code section 363(b) if it is supported by sound business justification. *See In re Montgomery Ward*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions"). Although established in the context of a proposed sale, the "business judgment" standard has been applied in non-sale situations. *See, e.g., Inst. Creditors of Cont'l Air Lines v. Cont'l Air Lines (In re Cont'l Air Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) (applying the "business judgment" standard in context of proposed "use" of estate property). Moreover, pursuant to section 105, this Court has expansive equitable powers to fashion any order or decree which is in the interest of preserving or protecting the value of a debtor's assets. 11 U.S.C. § 105(a).

21. It is well established that courts are unwilling to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and will uphold a board's decisions as long as they are attributable to "any rational business purpose." *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946, 954 (Del. 1985) (citing *Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 720 (Del. 1971)). Whether or not there are sufficient business reasons to justify the use of assets of the estate depends upon the facts and circumstances of each case. *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).

22. In this case, the Debtors have ample justification for Woodbridge to employ the CEO pursuant to the Employment Letter. The New Board negotiated the Employment Letter in good faith and at arm's length, and believe that the terms of the Employment Letter are reasonable, are consistent with the market for executive employment within the Company's industry, and are entirely appropriate given the scope of the CEO's duties. Entry into the Employment Letter with the CEO (or a comparable agreement with another candidate) provides the Debtors' estates with cost-savings because the Debtors would otherwise be forced to hire outside independent consultants, resulting in significantly greater costs, which would diminish estate assets to the detriment of creditors.

23. In these cases, the Debtors' ability to reorganize in an efficient and effective manner would be severely hindered by the absence of executives capable of achieving a successful reorganization. Indeed, the removal of the company's sole manager, filing of the bankruptcy petitions, the subsequent uncertainty surrounding operational matters as a result of the Trustee Motions, and the recent reorganization of the board and executives has created significant uncertainty within the company, which requires the skills of an experienced and knowledgeable leader to bring order and direction. Entering into the employment relationship under the Employment Letter permits the Debtors to benefit from the CEO's management and industry experience. Moreover, filling the leadership vacuum created following the entry into the Settlement through the appointment of the CEO, and subsequently with such other officers as he deems necessary, in a timely and efficient manner is critical if the Debtors' reorganization efforts are to be successful. Accordingly, entry into the employment relationship pursuant to the terms of the Employment Letter is a sound exercise of the Debtors' business judgment.

**B.  The Debtors Have Satisfied Bankruptcy Code Section 503(c)(3)**

24.  Bankruptcy Code section 503(c)(3) provides that "transfers or obligations that are outside the ordinary course of business . . . including transfers made to . . . consultants hired after the date of the filing of the petition" are not allowed if they are "not justified by the facts and circumstances of the case." 11 U.S.C. § 503(c)(3). Courts generally use a form of the "business judgment" and the "facts and circumstances" standard. *See In re Pilgrim's Pride Corp.*, 401 B.R. 229, 236-37 (Bankr. N.D. Tex. 2009) (citing *In re Dura Auto Sys., Inc.*, Case No. 06–11202 (Bankr. D. Del. June 29, 2007) and *In re Supplements LT, Inc.,* Case No. 08–10446 (KJC) (Bankr. D. Del. Apr. 14, 2008)).  Specifically, the court examines first, whether the transaction meets the Debtors' business judgment standard, and second, whether the facts and circumstances justify the transaction.  *See In re Pilgrim's Pride Corp.*, 401 B.R. at 237 (Bankr. N.D. Tex. 2009).

25.  The Debtors submit that the proposed transaction is within the ordinary course of their business and thus that Bankruptcy Code section 503(c)(3) does not apply to the Employment Letter.  Nevertheless, for the reasons stated above—the benefits from the CEO's leadership skills and industry experience, and the need for the Debtors to retain new management—even if this were outside the ordinary course of business, entry into the employment relationship under the Employment Letter is well within the Debtors' business judgment as applied to the facts and circumstances of the Debtors.  Further, the facts and circumstances of this case support entry into the employment relationship under the Employment Letter where the Debtors will benefit from the ability to retain the CEO as new leadership at a critical juncture to ongoing restructuring efforts.

26. For the reasons set forth above, the Debtors submit that the relief requested herein is in the best interest of the Debtors, their estates, creditors, stakeholders, and other parties in interest, and therefore, should be granted.

## **NOTICE**

27. Notice of this Motion has been provided to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Unitholder Group, (iv) counsel to the Noteholder Group, (v) counsel to the SEC, and (vi) any party that has requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Company respectfully requests that the Court enter an order, substantially in the form annexed hereto as Exhibit A, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
February 7, 2018

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/   Allison S. Mielke*
Sean M. Beach (No. 4070)
Edmon L. Morton (No. 3856)
Ian J. Bambrick (No. 5455)
Allison S. Mielke (No. 5934)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:  (302) 571-6600
Fax:  (302) 571-1253
Email: sbeach@ycst.com
emorton@ycst.com
ibambrick@ycst.com
amielke@ycst.com

-and-

GIBSON, DUNN & CRUTCHER LLP
Samuel A. Newman (CA No. 217042)
Oscar Garza (CA No. 149790)
Daniel B. Denny (CA No. 238175)
333 South Grand Avenue
Los Angeles, California 90071
Email: snewman@gibsondunn.com
ogarza@gibsondunn.com
ddenny@gibsondunn.com

-and-

J. Eric Wise (NY No. 3000957)
Matthew K. Kelsey (NY No. 4250296)
Matthew P. Porcelli (NY No. 5218979)
200 Park Avenue
New York, New York 10166
Tel:  (212) 351-4000
Fax:  (212) 351-4035
Email: ewise@gibsondunn.com
mkelsey@gibsondunn.com
mporcelli@gibsondunn.com

*Counsel for the Debtors and Debtors in Possession*