**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| | : |
| In re: | : Chapter 11 |
| | : Case No. 17-12560 (KJC) |
| WOODBRIDGE GROUP OF | : |
| COMPANIES LLC, *et al.*, | : Jointly Administered |
| | : |
| Debtors. | : **Re: Dkt. Nos. 6, 11, 22, 48, 54, 59, 130,** |
| | : **295, 350, 362, 363** |
| | : |

**OMNIBUS RESERVATION OF RIGHTS OF THE
OFFICIAL COMMITTEE OF UNITHOLDERS**

The fiduciary committee of unitholders (the "Unitholders Committee") appointed in the above-captioned chapter 11 cases (the "Cases") of Woodbridge Group of Companies LLC and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") by order of the Court dated January 23, 2018 [Dkt. No. 357] (the "Settlement Order") to represent the interests of unitholders of various Debtors, by and through undersigned counsel, hereby submits this Reservation of Rights (the "Reservation of Rights") with respect to (i) the *Debtors' Motion for Interim and Final Orders (I) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, and 552 Authorizing Debtors to (A) Obtain Postpetition Secured Financing, (B) Use Cash Collateral, (C) Grant Ade1quate Protection to Prepetition Secured Parties; (II) Modifying the Automatic Stay; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c); and (IV) Granting Related Relief* [D.I. 22] (the "DIP Financing Motion"); (ii) the *Debtors' Motion for Entry of Interim and Final Orders, Pursuant to Sections 105(a), 363(b), 503(b)(9), 1107(a), and 1108 of the Bankruptcy Code, Authorizing the Debtors to Pay Prepetition Claims of Critical Vendors; and Authorizing Banks to Honor and Process Checks and Electronic Transfer Requests Related to the Foregoing* [Dkt. No. 6] (the "Debtors' Critical Vendor Motion"); (iii) the *Committee's Emergency Motion (A) Authorizing the Debtors to Pay the Claims of Additional*

1

*Critical Vendors, (B) Approving Certain Payments Previously Made, and (C) Authorizing the Bank to Honor and Process Checks and Electronic Transfer Requests Related to the Foregoing* [Dkt. No. 350] (the "UCC Critical Vendor Motion", together with the Debtors' Critical Vendor Motion, the "Critical Vendor Motions"); (iv) the *Debtors' Motion for an Order Authorizing (A) the Maintenance of the Cash Management System; (B) Maintenance of the Existing Bank Accounts; (C) Continued Use of Existing Business Forms; and (D) Continued Performance of Intercompany Transactions in the Ordinary Course of Business and Grant of Administrative Expense Status for Postpetition Intercompany Claims* [Dkt. No. 11] (the "Cash Management Motion", together with the Critical Vendor Motions, the "Motions"); and (v) with regard to the payment of fees (or other compensation) and reimbursement of expenses in these Cases.  In support of this Reservation of Rights, the Unitholders Committee states as follows:

## BACKGROUND

1.      On December 4, 2017, (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing these Cases.  The Debtors continue to operate their businesses and manage their assets as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2.      On December 14, 2017, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in these Cases.

3.      On January 23, 2018, the Court entered the Settlement Order that resolved, among other things, the *Motion of the Ad Hoc Committee of Unitholders of Woodbridge Mortgage Investment Fund Entities Pursuant to 11 U.S.C. § 1102(a)(2) Directing Appointment of an Official Committee of Unitholders* [Dkt. No. 250].   The Settlement Order (and approved term sheet

annexed thereto) provided for, *inter alia*, the formation and appointment of the Unitholders Committee.

**(i)    DIP Financing Motion**

4.      On the Petition Date, the Debtors filed the DIP Financing Motion, seeking approval of $100 million of senior secured debtors in possession financing (the "DIP Loan") from Hankey Capital, LLC secured by 28 real properties, of which $25 million in advances were approved on an interim basis.

5.       On December 6, 2017, the Court entered its *Corrected Interim Order* with respect to the DIP Financing Motion [Dkt. No. 59] (the "First Interim DIP Order"), approving $6 million of interim funding under the DIP Loan.

6.      On December 21, 2017, the Court entered the *Second Interim Order* with respect to the DIP Financing Motion [Dkt. No. 130] (the "Second Interim DIP Order"), approving $25 million of interim funding under the DIP Loan.

7.      On January 23, 2018, the Court entered the *Third Interim Order* with respect to the DIP Financing Motion [Dkt. No. 363] (the "Third Interim DIP Order", together with the First Interim DIP Order and the Second Interim DIP Order, the "Interim DIP Orders"), approving $44 million of interim funding under the DIP Loan.

8.      A final hearing on the DIP Financing Motion is scheduled for February 13, 2018 at 1:00 p.m. at which the Debtors will seek final approval of the DIP Financing Motion (the "Final DIP Order").

**(ii)** **Critical Vendor Motions**

9.      On the Petition Date, the Debtors filed the Debtors' Critical Vendor Motion, seeking authority to pay prepetition claims held by critical vendors in the aggregate amount not to exceed $1.5 million.

10.      On December 5, 2017, the Court entered the *First Interim Order* with respect to the Debtors' Critical Vendor Motion [Dkt. No. 48] (the "First Interim CV Order"), authorizing, but not directing, the Debtors to pay up to $500 thousand to critical vendors on account of their prepetition claims on an interim basis.

11.      On January 16, 2018, the Court entered the *Second Interim Order* with respect to the Debtors' Critical Vendor Motion [Dkt. No. 295] (the "Second Interim CV Order"), together with the First Interim CV Order, the "Interim CV Orders"), authorizing, but not directing, the Debtors to pay up to $1.5 million to critical vendors on account of their prepetition claims, subject to certain conditions set forth therein, and scheduling a final hearing on the Debtors' Critical Vendor Motion for February 13, 2018 to the extent the Debtors sought to increase the $1.5 million cap.

12.      On January 22, 2018, the Committee filed the UCC Critical Vendor Motion.  As set forth in the UCC Critical Vendor Motion (and supporting affidavits), postpetition payments potentially outside the scope of the Interim CV Orders (the "Postpetition Payments") were made by the Debtors to certain Contractors (as defined in the UCC Critical Vendor Motion).  While the Debtors and the Committee dispute the nature of the Postpetition Payments, both agreed that the payments were critical to preserve and maximize value.  Accordingly, the Committee requested that the Postpetition Payments be approved as if requested by the Debtors pursuant to the Debtors' Critical Vendor Motion.

13.     On January 23, 2018, the Court granted the UCC Critical Vendor Motion [Dkt. No. 362], authorizing, but not directing, the Debtors to pay Additional Critical Vendor Claims (as defined in the UCC Critical Vendor Motion) in the aggregate amount not to exceed $9.1 million (increasing the critical vendor cap by $7.6 million).

**(iii)     Cash Management Motion**

14.     On the Petition Date, the Debtors filed the Cash Management Motion seeking, *inter alia*, an order authorizing the continued use of their Cash Management System (as defined in the Cash Management Motion) and to continue to perform regarding Intercompany Transactions (as defined in the Cash Management Motion).

15.     On December 5, 2018, the Court granted the Cash Management Motion on a final basis [Dkt, No. 54].

## RESERVATION OF RIGHTS

16.     The investigation by the Unitholders Committee with respect to whether substantive consolidation is in the best interests of the unitholders in these Cases is in its initial stage.  The Unitholders Committee reserves all rights with respect to the Motions (and any orders entered, or sought to be entered, in connection therewith, including the Final DIP Order) as they relate to, presume, or in any way implicate, the substantive consolidation of some or all of the Debtors' estates and/or the proper allocation of assets, liabilities, revenue and expenses among the Debtors.  Similarly, the Unitholders Committee reserves all rights with respect to the allocation of the payment of fees (or other compensation) and the allocation of expenses incurred in these Cases, including with respect to the Debtors' officers and directors, any estate compensated professionals or other service providers, and/or other costs of the Debtors.  It is not yet possible to determine

whether fees (or other compensation) and expenses should be allocated on a debtor-by-debtor basis rather than on a consolidated basis.

17.    The Unitholders Committee was recently granted access to a data room populated by the Debtors.  Counsel for the Unitholders Committee is working diligently to get up to speed on the documents contained therein, but has not yet completed a full review.  The Unitholders Committee and its counsel will continue to work with the Debtors and their professionals with respect to the production of documents in these Cases, and reserves all rights in connection therewith.

Dated: February 7, 2018
       Wilmington, Delaware

**VENABLE LLP**

*/s/ Jamie L. Edmonson*
Jamie L. Edmonson (No. 4247)
Daniel A. O'Brien (No. 4897)
1201 N. Market Street, Suite 1400
Wilmington, Delaware  19801
Telephone:  302-298-3535
Facsimile:  302-298-3550
jledmonson@venable.com
daobrien@venable.com

-and-

Jeffrey S. Sabin (*admitted pro hac vice*)
Carol A. Weiner (*admitted pro hac vice*)
1270 Avenue of the Americas
New York, New York 10020
Telephone:  212-307-5500
Facsimile:  212-307-5598
jssabin@venable.com
cweinerlevy@venable.com

-and-

Andrew J. Currie (*admitted pro hac vice*)
750 E. Pratt St., Suite 900
Baltimore, MD 21202
Telephone:  410-244-7400
Facsimile:  410-244-7742
ajcurrie@venable.com