# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12560 (KJC)<br><br>(Jointly Administered)<br><br>**Objection Deadline: TBD**<br>**Hearing: TBD** |

## TINTARELLA LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND/OR FOR ADEQUATE PROTECTION

Tintarella LLC ("Tintarella"), a creditor and party in interest herein, by and through its undersigned counsel, submits this motion for relief from the automatic stay and/or for adequate protection (the "Motion"), seeking entry of an order substantially in the form attached hereto as Exhibit A for authority to exercise all of its rights and remedies under applicable California law with respect to certain real property owned by debtor Grand Midway Investments, LLC ("GMI"), one of the above-captioned debtors and debtors in possession (the "Debtors"). In support of the Motion, Tintarella represents as follows:

### Jurisdiction

1.  This Court has jurisdiction over the Motion pursuant to 28 U.S.C §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).[2] Venue of this

---

[1] The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14225 Ventura Boulevard #100, Sherman Oaks, California 92423. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing and claims agent at www.gardencitygroup.com/cases/WGC, or by contacting the undersigned counsel for the Debtors.

[2] Pursuant to Local Rule 9013-1(f), Tintarella hereby confirms its consent to the entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

proceeding and the Motion in this District and before this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested herein is 11 U.S.C. § 362(d), Federal Rule of Bankruptcy Procedure 4001, and Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware.

## Background

2.  On December 4, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 through 1532 (the "Bankruptcy Code").  The Debtors remain in possession of their properties and continue to operate their businesses as debtors in possession.  As of the date hereof, neither a chapter 11 trustee nor an examiner has been appointed by the Court.

3.  On or about January 30, 2017, Tintarella entered into that certain Purchase and Sale Agreement with GMI whereby Tintarella agreed to sell and GMI agreed to purchase land situated in the Bel-Air section of Los Angeles, California, more commonly known as 800 Stradella Road, Los Angeles, California 90077 (the "Property") for the sum of $36,000,000.  Pursuant to the terms of sale, GMI paid $10,000,000 to Tintarella and entered into a Note secured by Deed of Trust with Tintarella as beneficiary, for the balance of $26,000,000 payable in twelve (12) monthly interest only payments of slightly more than $173,000 with a maturity date of January 30, 2018.  The Note has matured.  A true and correct copy of the Note and Deed of Trust are attached as Exhibits A and C, respectively, to the Declaration of James Bowen (the "Bowen Declaration"), concurrently filed herewith and, by this reference, incorporated herein.

4.  With the sale of the Property, Tintarella transferred certain permits obtained from the Los Angeles Building and Safety Department (the "LABSD") to GMI, allowing for the construction of a residence and guest house producing in excess of 22,700 square feet of livable

space. Under LABSD requirements, permits are valid for a period of two (2) years from issuance and the proposed work must be 75% complete within that two year period. *See* Declaration of Penny Flinn (the "Flinn Declaration") at ¶ 12, concurrently filed herewith, and, by this reference, incorporated herein. If these requirements are unsatisfied, the owner must return to LABSD for a plan check and meet then-existing code requirements. *See id*.

5. From the time GMI took control of the Property until the present, GMI has done nothing to move the construction of the residences on the Property along. This failure to act has resulted in a serious of loss value to the Property, because the permits to build will expire and new Los Angeles building ordinances will substantially decrease the size of the residence that can be built. Once the permits expire, GMI will have to go through the difficult procedure of getting new permits, and such new permits if granted, will allow a maximum square footage of the residences of only 17,500 sq. ft. *See* Flinn Declaration at ¶ 19-20.

6. GMI was advised repeatedly of the need to proceed diligently with the buildout and of the loss of the permits if it did not proceed. GMI did nothing, except get extensions on the permits, which now expire on June 10, 2018. *See* Flinn Declaration at ¶ 12, 14, 17. The person responsible for getting the prior extensions has provided a declaration stating that:

> Based on my conversations with the City, I think that it is unlikely that any further extensions of the building permits will be given. This means that when new permits are sought, it will be under the new ordinances and the size of the building will be limited to a maximum of 17,500 sq. ft. As noted above, this will require new architectural plans, new engineering plans, and obtaining new permits for the re-designed buildings. The 5,000+ reduction will also reduce the value of the Property.

Flinn Declaration at ¶ 22.

7. Notwithstanding several efforts to communicate with the Debtors on these compelling issues, the Debtors did not respond to Tintarella's efforts until February 1, 2018. Thus,

Tintarella proceeded to take all necessary steps to protect its interests, including obtaining an appraisal of the Property to support this Motion and to establish the Property's value with and without the enhancements provided by the issued permits.

8.  The appraisal determined the fair market value of the Property to be $34,100,000 <u>with</u> the permits and the build out of more than 22,700 square feet of livable space. <u>Without</u> the permits, the appraisal determined the fair market value to be $26,250,000, because the livable space would be reduced by more than 5,000 square feet. In short, Tintarella's interests will be diminished by $7,850,000 if it cannot immediately exercise its remedies under California law to protect its interests by timely completing the work on the Property in accordance with the permits. *See* Declaration of Arthur Gimmy (the "<u>Gimmy Declaration</u>") at ¶ 28, concurrently filed herewith and, by this reference, incorporated herein.

9.  Additionally, since the permits were issued, two new ordinances became effective as of March 22, 2017. *See* Flinn Declaration at ¶¶ 15, 16. If the LABSD conditions relating to the current permits are not met, then the plans must go back into plan check with the City and meet the new Code requirements. *See* Flinn Declaration at ¶¶ 15, 16. Not only would there be a loss of more than 5,000 square feet of livable space to the house constructed on the Property —a fact that significantly reduces the Property's value, but costs and fees to draw up new architectural plans to conform with the new ordinances as well as related fees and costs would further diminish the value of Tintarella's interests.

10. After obtaining two extensions of time from the LABSD, the permits at issue currently expire on June 10, 2018. No further extensions are expected. If the permits expire and the entitlements are lost, the Property will lose significant value.

**Basis for Relief Requested**

11. Section 362 of the Bankruptcy Code provides that, upon request of a party in interest and after notice and a hearing, the court shall grant relief from the stay for cause. 11 U.S.C. § 362(d)(1). As cause is not defined by the Bankruptcy Code, a bankruptcy court must determine what constitutes cause to lift the automatic stay. *See Izzarelli v. Rexene Prod. Co. (In re Rexene Prod. Co.)*, 141 B.R. 574 (Bankr. D. Del. 1992).

12. In deciding whether cause exists to lift the automatic stay, courts consider three factors: (1) whether lifting the stay would cause prejudice to the debtor or the estate; (2) whether the hardship to the movant in maintaining the stay outweighs the hardship of the debtor in lifting the stay; and (3) whether the movant has a probability of prevailing on the merits. Importantly, the required showing of probability of success on the merits is "very slight." *Id.* at 576. *See also In re The SCO Group, Inc.*, 395 B.R. 852, 857 (Bankr. D. Del. 2007); *In re Continental Airlines*, 152 B.R. 420, 424 (D. Del. 1993). Further, based on the legislative history of § 362(d)(1), cause may be established by a single factor. *See Rexene Prod. Co*., 141 B.R. at 574.

13. Lifting the automatic stay to allow Tintarella to exercise it non-bankruptcy rights will not prejudice the Debtors at all. Even under the best of circumstances, as evidenced by Tintarella's appraisal, there is no more than $250,000 of equity in the Property. *See* Gimmy Declaration at ¶ 28. That said, even though the Note has matured and the full balance of $26,000,000 is due and owing, the Debtors have failed to protect the small equity that may exist in the Property by failing to make any post-petition interest only payments.

14. Even if the Note had not matured, with only $250,000 of equity in the Property, missing less than two interest only payments wipes out the miniscule equity that otherwise may exist. In fact, that is exactly where we are at this point. Bowden Declaration at ¶¶ 6, 8.

Furthermore, GMI has not paid the property taxes on the Property. These amount to over $178,000. *See* Bowden Declaration at ¶ 10. Tintarella has not received any post-petition payments. There is effectively no equity in the Property at all. As such, Tintarella is not adequately protected, which is grounds in itself for stay relief. *See* 11 U.S.C. § 362(d)(1). As the Flinn and Gimmy Declarations evidence, there is a daily decline in the market value of the Property because Tintarella will simply have no ability to protect its interests as the clock continues to tick toward the expiration of the permits. Importantly, allowing Tintarella to proceed to exercise its remedies will reduce the Debtors' secured debt, which it clearly cannot even service.

15. As to the second factor, the hardship to Tintarella in maintaining the automatic stay outweighs any alleged hardship on the Debtors in lifting the stay. There is no doubt that Tintarella will be irreparably harmed if it is unable to exercise any and all remedies under California law to protect its interest in the Property. Tintarella stands to lose $7,850,000 of value if it cannot immediately take steps to protect its interests.

16. In the one year since GMI bought the Property, it failed to take any steps to exercise the permitted enhancements to the Property. *See* Flinn Declaration at ¶¶ 14, 17, 21. Additionally, as discussed herein, two new ordinances came into effect in 2017 that, if the permits expire, will not allow constructing livable space on the Property to the extent the current permits allow. *See* Flinn Declaration at ¶¶15, 16, 18, 19, 20. This, too, permanently devalues Tintarella's interests. Considerable cost and time would also be required to go through a subsequent plan check along with new architectural plans and related fees and costs. *See* Flinn Declaration at ¶ 20. These facts overwhelmingly demonstrate that Tintarella will be harmed if it cannot take immediate steps to protect its interests.

17.     If the Court were to balance the hardships, the balance weighs in favor of Tintarella. If the Motion is not granted, Tintarella can take no efforts to protect its $26,000,000 interest in the Property. In fact, if Tintarella is not granted relief from stay, it will lose $7,850,000 of value together with any and all other related costs of attempting to secure new permits under new ordinances. Tintarella will be severely prejudiced if the Motion is denied while the Debtors and other creditors will not be prejudiced.

18.     As to the third factor, as outlined above, probable success on the merits primarily relates to litigation issues, but there is no doubt that: (i) Tintarella is owed $26,000,000; (ii) there is no equity in the Property; (iii) Tintarella is not adequately protected; and (iv) in any underlying litigation or contested matter, Tintarella would prevail. Therefore, given the "very slight" showing necessary, the facts are sufficient here to establish a likelihood of success on the merits for the purpose of lifting the automatic stay. *See Rexene*, 141 B.R. at 578.

## The Need for Adequate Protection

19.     Creditors with depreciating collateral values, like Tintarella, may petition the court for cash payments, replacement liens, or administrative expenses to provide the necessary adequate protection in accordance with § 361 of the Bankruptcy Code. *See Del. Trust Co. v. Energy Future Intermediate Holdings, LLC (In re Energy Future Holding Corp.)*, 527 B.R. 157, 166 (D. Del. 2015). In particular, § 361 of the Bankruptcy Code provides:

> When adequate protection is required under section 362 … of this title of an interest of an entity in property, such adequate protection may be provided by-
>   (1)  Requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title … results in a decrease in the value of such entity's interest in such property;
>   (2)  Providing to such entity an additional or replacement lien to the extent that such stay … results in a decrease in the value of such entity's interest in such property; or

>   (3)  Granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

20. Because of the diminishing value of the Property, Tintarella requires adequate protection of its interest in its collateral. Tintarella requests that, to the extent the Court declines granting Tintarella relief from the automatic stay, that the Court grant Tintarella adequate protection from the potential loss in the value of the Property. In particular, Tintarella requests that the Court require the Debtors to post a bond in the amount of $7,850,000, which is the amount in value that Tintarella stands to lose if relief from stay is not granted.

21. To the extent the Court is inclined to grant Tintarella relief from stay, Tintarella also requests that the Court award it adequate protection for any loss in value that may occur in the interim period before the Court holds an evidentiary hearing and grants Tintarella the relief it seeks herein.

22. Tintarella requests that the Court waive the fourteen (14) day stay set forth in Federal Rule of Bankruptcy Procedure 4001(a)(3) allowing the Court's order granting the Motion to become immediately effective upon entry of the Order. Tintarella further requests that the Court consider the preliminary hearing on the Motion be treated as a final hearing pursuant to 11 U.S.C. § 362(e)(1).

## Notice

23. Notice of this Motion has been provided to: (i) counsel for the Debtors; (ii) the Office of the United States Trustee; (iii) counsel for the Committee; (iv) counsel for the DIP Lender; (v) counsel for the Unitholder Group; (vi) counsel for the Noteholder Group; and (vii)

parties requesting notice pursuant to Rule 2002.  Tintarella submits that such notice is sufficient for the purpose of the Motion.

**WHEREFORE**, Tintarella respectfully requests this Court to enter an Order, substantially in the form attached hereto as <u>Exhibit A</u>, lifting the automatic stay to allow Tintarella to protect its interest in the Property under applicable California law, granting Tintarella adequate protection against the potential loss in value to the property, and granting such other and further relief as is just and proper.

[*remainder of page intentionally left blank*]

| | |
|---|---|
| Dated:  February 8, 2018<br>Wilmington, Delaware | Respectfully submitted,<br><br>WHITEFORD TAYLOR & PRESTON LLC<br><br>/s/ *Stephen B. Gerald*<br>L. Katherine Good (No 5101)<br>Stephen B. Gerald (No. 5857)<br>The Renaissance Centre<br>405 N. King Street, Suite 500<br>Wilmington, Delaware 19801<br>Telephone:     (302) 353-4144<br>Facsimile:      (302) 661-7950<br>Email:           kgood@wtplaw.com<br>                      sgerald@wtplaw.com<br><br>Christopher A. Jones, Esq.<br>WHITEFORD TAYLOR & PRESTON L.L.P.<br>3190 Fairview Park Drive, Suite 800<br>Falls Church, Virginia 22042-4510<br>Telephone:     (703) 280 9260<br>Facsimile:      (703) 280-9139<br>Email:           cajones@wtplaw.com<br><br> - and -<br><br>JOHN D. MONTE, Esq.<br>LAW OFFICES OF JOHN D. MONTE<br>15303 Ventura Boulevard – Ninth Floor<br>Sherman Oaks, California 91403<br>Telephone:     (323) 876-9918<br>Facsimile:      (323) 978-4842<br>Email:           johnmontelaw@gmail.com<br><br>- and -<br><br>Genise Reiter, Esq.<br>Paul T. Dye, Esq.<br>REITER DYE & BRENNAN, LLP<br>10990 Wilshire Blvd., Suite 940<br>Los Angeles, California 90024<br>Telephone:     (424) 369-4470<br>Email:           grr@rdbattorneys.com<br>                      ptd@rdbattorneys.com<br><br>*Counsel to Tintarella LLC* |

10