## Exhibit II

**Blackline**

01:22748571.2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1] | Case No. 17-12560 (KJC) |
| | (Jointly Administered) |
| Debtors. | |
| | Ref. Docket Nos. 22, 56, 59, 130, & 130363 |

**THIRDFOURTH INTERIM ORDER ON EMERGENCYDEBTORS' MOTION FOR: ENTRY OF INTERIM AND FINAL ORDERS (I) PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, AND 552 AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION SECURED FINANCING, (B) USE CASH COLLATERAL, (C) GRANT ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; (II) MODIFYING THE AUTOMATIC STAY; (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND 4001(c); AND (IV) GRANTING RELATED RELIEF**

On January ___, 2017,February 13, 2018, a hearing (the "ThirdFourth Interim Hearing")

was held before this Court, the Honorable Kevin J. Carey presiding, regarding the

EmergencyDebtors' Motion for: Entry of Interim and Final Orders (1) Approving Post-Petition

Financing and Related Liens and Adequate Protection; (2) Approving Cash Collateral Use and

Related Liens and Adequate Protection, and (3I) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363,

364, 507, and 552 Authorizing Debtors to (A) Obtain Postpetition Secured Financing, (B) Use

Cash Collateral, (C) Grant Adequate Protection to Prepetition Secured Parties; (II) Modifying

the Automatic Stay; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(B) and

---

[1] The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603.  The mailing address for Woodbridge Group of Companies, LLC is 1422514140 Ventura Boulevard #100,302, Sherman Oaks, California 91423.  Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein.  A complete list of such information may be obtained on the website of the Debtors' noticing and claims agent at www.gardencitygroup.com/cases/WGC, or by contacting the proposed undersigned counsel for the Debtors.

01:22621324.142
2621324.15

*4001(C); and (IV)) Granting Related Relief* (the "Motion")[2] filed by Woodbridge Group of Companies, LLC ("Woodbridge") and its affiliates, as debtors and debtors in possession (collectively, "Debtors") on behalf of their respective bankruptcy estates (the "Estates") in their respective bankruptcy cases (the "Cases").[3]

Upon the record made by Debtors before and at the ~~Third~~Fourth Interim Hearing, including the Motion and the declarations, pleadings, and papers filed with the Court relating to the Cases, and good and sufficient cause appearing therefor,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACTS AND CONCLUSIONS OF LAW:

A.    Procedural Findings.

1.    Petitions.  On December 4, 2017 (the "Petition Date"), Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code")[4] commencing the Cases.  Debtors continue to operate their businesses and manage their assets as "debtors in possession" pursuant to sections 1107(a) and 1108.

2.    Jurisdiction, Venue.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    Committee.  An official committee of unsecured creditors (the "Committee"), as provided for under section 1102, has been appointed in the Cases as of December 14, ~~2017.~~2017, and an Official Committee of Unitholders (the "Unitholder Group") and Official Committee of Noteholders (the "Noteholder Group") have been appointed in the Cases as of January 23, 2018.

---

[2] Defined terms herein are used with the same meaning as defined in the Motion unless otherwise noted.
[3] On December 5, 2017, the Court entered an Order Directing the Joint Administration of ~~the~~ Debtors' Chapter 11 Cases [ECF 45].
[4] Statutory references herein are to the Bankruptcy Code unless otherwise noted.



4.    Notice.  The notice of the Motion and the ~~Third~~Fourth Interim Hearing has

been provided by Debtors to certain parties-in-interest, including: (a) the Office of the United

States Trustee for the District of Delaware; (b) the United States Securities and Exchange

Commission; (c) the Office of the United States Attorney General for the District of Delaware;

(d) the Internal Revenue Service; (e) the Committee, the Noteholder Group, and the Unitholder

Group; (f) counsel to Hankey Capital, LLC as agent and lender ("Lender"); (g) Debtors' cash

management banks; (h) those creditors holding the thirty (30) largest unsecured claims against

Debtors' estates (on a consolidated basis); and (h) all parties who have requested notice in the

Cases pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  Under the exigent

circumstances, such notice constitutes sufficient and appropriate notice thereof.

B.    Findings Supporting the Postpetition Financing.

1.    Postpetition Financing.  Debtors have requested from Lender loans,

advances, and other financial accommodations on and after the Petition Date (the "Postpetition

Financing") upon the findings of fact and conclusions of law made herein and upon the terms

and conditions of the Loan and Security Agreement dated as of December 7, 2017, between

Lender and certain specified Debtors (the "Obligors") on behalf of their Estates, substantially in

the form attached hereto as Exhibit A (the "Loan Agreement," and collectively with this Order

and other documents related to and in furtherance of the Loan Agreement and the Postpetition

Financing, the "Loan Documents");

2.    Need for Postpetition Financing.  Debtors have an immediate need to

obtain the funds to be provided by the Postpetition Financing pursuant to the Loan Documents in

order to, among other tasks, permit the orderly continuation of the operation of Debtors'

businesses, minimize the disruption of ~~its~~their business operations, and manage and preserve the

assets of the Estates, the absence of which would immediately and irreparably harm Debtors, the Estates, and their stakeholders;

3.       No Credit Available on Other Terms.  Debtors ~~believe they~~ are unable to obtain financing on more favorable terms to the Estates from sources other than as contemplated under the Postpetition Financing pursuant to, and for the purposes set forth in, this Order and the Loan Documents and ~~believe they~~ are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  Debtors also ~~believe they~~ are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code without Debtors granting the Liens (as defined in paragraph 3.1.1 below) and the Superpriority Claims (as defined in paragraph 3.2 below), in each case, on the terms and conditions set forth in this Order and the Loan Documents.

4.       Business Judgment and Good Faith Pursuant to Section 364(e).  The terms of the Postpetition Financing pursuant to the Loan Documents are fair, just, and reasonable under the circumstances, are ordinary and appropriate for secured financing to a debtor in possession on behalf of its bankruptcy estate, are supported by reasonably equivalent value and consideration, reflect Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and have been negotiated in good faith and at arms' length by and between Lender and Debtors.  Therefore, the Postpetition Financing and credit extended under the terms of the Loan Documents are extended in good faith by Lender as that term is used in section 364(e).

5.       Lender Adequate Protection.  The proceeds of the Collateral (defined herein) (the "Cash Collateral") constitute "cash collateral" of Lender within the meaning of section 363(a).  Lender is entitled to adequate protection of its interests in the Collateral pursuant

(collectively, the "Investors").  Certain of the Investors and their successors and assigns may

assert or have a lien or interest, whether directly or indirectly, in the Collateral (the

"Noteholders").  Debtors are making available "conditional" adequate protection pursuant to

sections 361 and 364(d) of the Bankruptcy Code to those Noteholders by providing such

Noteholders with "conditional" liens and claims on the Debtors' non-Collateral properties

described on Exhibit D hereto (the "Adequate Protection Properties") to the extent of any

diminution of any valid, unavoidable interests such Noteholders may have in the Collateral as of

the Petition Date.  Debtors are also reserving funds sufficient to pay interest on any obligations

owing to such Noteholders to the extent the same are found to have valid, enforceable, and

unavoidable liens or interests on or in the Collateral as of the Petition Date entitled to payment of

interest.

       C.     Prior Interim Orders.  On December 6, 2017, the Court entered its *Corrected*

*Interim Order on Emergency Motion For:  Entry of Interim Order (I) Pursuant to 11 U.S.C. §§*

*105, 361, 362, 363, 364, 507, and 552 Authorizing Debtors to (A) Obtain Postpetition Secured*

*Financing, (B) Use Cash Collateral, (C) Grant Adequate Protection to Prepetition Secured*

*Parties; (II) Modifying the Automatic Stay; (III) Scheduling a Final Hearing Pursuant to*

*Bankruptcy Rules 4001(B) and 4001(C); and (IV) Granting Related Relief* [ECF 59] (the "First

Interim Order").  On December 21, 2017, the Court entered its *Second Interim Order on*

*Emergency Motion For: Entry of Interim Order (i) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363,*

*364, 507, and 552 Authorizing Debtors to (a) Obtain Postpetition Secured Financing, (b) Use*

*Cash Collateral, (c) Grant Adequate Protection to Prepetition Secured Parties; (ii) Modifying*

*the Automatic Stay; (iii) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and*

*4001(c); and (iv) Granting Related Relief* [ECF 130] (the "Second Interim Order"). On January



*23, 2018, the Court entered its Third Interim Order on Emergency Motion For: Entry of Interim Order (i) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, and 552 Authorizing Debtors to (a) Obtain Postpetition Secured Financing, (b) Use Cash Collateral, (c) Grant Adequate Protection to Prepetition Secured Parties; (ii) Modifying the Automatic Stay; (iii) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c); and (iv) Granting Related Relief* [ECF 363] (the "Third Interim Order" and collectively with the First Interim Order and the Second Interim Order, the "Interim Orders").

D.      <u>Good Cause</u>.  The Postpetition Financing and relief and rights granted or acknowledged pursuant to this Order are necessary, essential, and appropriate and are in the best interest of and will benefit Debtors, their creditors, and the Estates as their implementation will, among other effects, provide Debtors on behalf of the Estates with the necessary liquidity to minimize disruption to Debtors' businesses and ongoing operations, preserve and maximize the value of the Estates for the benefit of all creditors thereof, and avoid immediate irreparable harm to Debtors, their creditors, businesses, employees, and the Estates.

E.      <u>Immediate Entry</u>.  Based upon the evidence presented in the declarations filed in the Cases and on the record, sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rule 4001(c)(2).

NOW, THEREFORE, upon the record made by Debtors before and at the ~~Third~~Fourth Interim Hearing, including the Motion and the pleadings and papers filed with the Court, having made the findings of fact and conclusions of law as set forth herein, and after due consideration and good and sufficient cause appearing therefore;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

Section 1.        Authorization of Postpetition Financing.Motion Granted.  The Motion is

granted, and the Interim Orders are approved, on a further interim basis pursuant to sections 364,

363, and 362, and Bankruptcy Rule 4001(c)(2), on the terms and conditions of this Order.

        1.2        Authorization to Borrow.  Obligors are authorized and empowered to

borrow under the Postpetition Financing and jointly and severally incur obligations to Lender on

or after the Petition Date (the "Obligations") pursuant to, and subject to the additional limitations

of, the terms and conditions of the Loan Documents and this Order, in the maximum amount of

$44,000,00056,000,000 for the period commencing on the Petition Date through the date of the

hearing set forth onin paragraph 6.7 hereof (the "ThirdFourth Interim Period").

        1.3        Loan Documents.

            1.3.1    Authorization.  Debtors are authorized and empowered to enter

into, execute, deliver, perform, and comply with all of the terms, conditions, and covenants of

the Loan Documents and make all the representations therein.

            1.3.2    Approval.  The Loan Documents, and the terms, conditions,

covenants, and provisions therein, are approved and constitute sufficient and conclusive

evidence of the Postpetition Financing, the Obligations (including the Postpetition Charges

(defined herein)), the Liens, and the other rights, interests, claims, and remedies afforded to or

for the benefit of Lender pursuant to the Loan Documents.

            1.3.3    Amendments.  Lender and Obligors may amend, modify,

supplement, or waive any term, condition, covenant, or provision of any Loan Document (a

"Loan Document Modification"), which Loan Document Modification is deemed to be approved

by this Order, as follows:  (a) with respect to a Loan Document Modification that is considered

non-material or technical in nature by Debtors and Lender in their business judgment ("Non-Material Loan Document Modification"), by further agreement of Lender and Debtors without advance notice, motion, or further order; provided however, that Debtors shall file a notice of the Non-Material Loan Document Modification promptly after execution thereof, and (b) with respect to a Loan Document Modification that is not a Non-Material Loan Document Modification, or other modifications to and under the DIP Documents for which no objection is made as set forth in the proviso to this paragraph; provided, however, that a copy of any such amendment, waiver, consent, or other modification shall be filed by Debtors with this Court and served by Debtors on the U.S. Trustee and the respective counsel to the Committee, if and when appointed, each of whom shall have five (5) business days from the date of such notice within which to object in writing to any such amendment, waiver, consent, or modification.  Any such amendment, waiver, consent, or modification shall only be permitted pursuant to an order of this Court.

   1.4 <u>Obligations</u>.  The Loan Documents constitute and evidence the Obligations, which obligations are binding and enforceable against (a) Obligors, and their successors and assigns, trustees, and representatives, (b) the Estates, and any successors or representatives thereof (including without limitation a bankruptcy trustee), and (c) guarantors.

   1.5 <u>Application of Proceeds</u>.  Lender may apply all proceeds of the Collateral, including Cash Collateral, and all other payments and consideration delivered or received by Lender in accordance with the Loan Documents to be applied by Lender to pay and satisfy Obligations.

   1.6 <u>Payments</u>.  Obligors are authorized and required to make all payments and transfers of interests in property to Lender as provided, permitted, or required under the Loan

Documents (including without limitation the transfer and deposit of funds, payments, and proceeds of the Collateral (as defined in the Loan Agreement) into a lock box or other deposit account if requested by Lender) or as otherwise required pursuant to the Loan Documents. Lender is entitled to advance, make payment, and deduct for any fees, costs, expenses, and other charges as may be recoverable or reimbursable to Lender, or as otherwise provided in the Loan Documents (the "Postpetition Charges"), including without limitation the immediate payment and reimbursement to Lender of all present and future reasonable attorneys' fees, professionals' fees, and other fees, costs, and expenses paid or incurred by Lender, all of which constitute part of the principal amount of the Obligations. The Debtors, any the Committee, the Noteholder Group, the Unitholder Group, and the U.S. Trustee may object to the reasonableness of the fees, costs, and expenses included in any professional fee invoice submitted by the Lender; provided that, any such objection shall be filed with this Court and served on counsel to the Lender no later than ten (10) days after the objecting party's receipt of the applicable professional fee invoice; and further provided, in the event of a timely objection to any such invoice, the Debtors shall nonetheless pay the entire invoice minus the amount at issue, subject to the rights of the objecting parties to have a hearing on final disposition.

        1.7       <u>Use of Postpetition Financing and Collateral</u>.

        1.7.1    <u>No Use for Adverse Lender Challenges</u>.  Neither loans, advances, or other proceeds of the Postpetition Financing nor the Collateral, including Cash Collateral, can be used by Debtors or any party for any purpose relating to or in furtherance of an Adverse Lender Challenge (as defined in the Loan Agreement), including without limitation the payment of fees and costs incurred by professionals retained by Debtors or the Committee.



Section 2.    <u>Authorization and Conditions to Use Cash Collateral</u>.

2.1    <u>Authorization to Use Cash Collateral</u>.  Debtors are authorized to use Cash Collateral during the ~~Third~~Fourth Interim Period to satisfy the Obligations as required or provided under the Loan Documents and this Order.

2.2    <u>Procedure for Use of Cash Collateral</u>.  All Cash Collateral is to be delivered directly to Lender pursuant to the Loan Documents, or otherwise deposited by Debtors in a segregated debtor in possession account (the "<u>Cash Collateral Account</u>"), from which such Cash Collateral is to be transferred to Lender pursuant to the Loan Documents.  The Cash Collateral Account is encumbered by and subject to the Liens in favor of Lender by this Order.

2.3    <u>Reserve</u>.  In addition, although Debtors assert that the Noteholders do not have a direct interest in the Collateral or claims against Obligors, or that to the extent that the Noteholders have such an interest, such interest of the Noteholders is avoidable, pending notice to the Noteholders and further order of this Court, Debtors shall reserve in a segregated account the proceeds of payment of the Noteholders' notes and cash constituting adequate protection payments to the Noteholders provided in section 3.1.2.4 of this Order.

Section 3.    <u>Liens; Superpriority Expense Status; Adequate Protection</u>.

3.1    <u>Liens</u>.

3.1.1    <u>Liens</u>.  Subject only to the Carve Out (defined below), Lender is granted a lien on and security interest in all Collateral (as defined in the Loan Agreement) (the "<u>Collateral</u>"), including Collateral that is property of the Estates, which includes 28 parcels of real estate owned by 27 Obligors set forth in Schedule 7.4.1 to the Loan Agreement: (a) pursuant to Section 364(d)(1) of the Bankruptcy Code, a perfected first priority priming security interest and lien on the Collateral that primes and is senior to any and all liens, interests, and claims in



favor of the Funds (the "Funds Liens") and the Noteholders (the "Noteholders Liens"), whether

such Funds Liens and Noteholders Liens arise or exist on or after the Petition Date and however

arising or existing, which Funds Liens and Noteholders Liens are junior in priority and

subordinate in all respects to the Liens (defined herein); (b) pursuant to Section 364(c)(2) of the

Bankruptcy Code, a perfected first and senior priority security interest and lien on the Collateral

to the extent such Collateral is not subject to valid, perfected, and non-avoidable liens existing as

of the Petition Date; (c) subject to clauses (a) and (b) above, pursuant to Section 364(c)(3) of the

Bankruptcy Code, a perfected priority security interest and lien on the Collateral junior only to

valid, perfected, and unavoidable liens in favor of third parties that were in existence

immediately prior to the Petition Date (other than the Funds Liens and the Noteholders Liens,

which are being primed by this Order and are junior in priority and subordinate in all respects to

the Liens) (the "Prepetition Third Party Liens"), subject only as to priority to such Prepetition

Third Party Liens (the security interests and liens in favor of Lender described in (a) through (c)

above, the "Financing Liens"); and (d) as replacement liens pursuant to sections 361 and 363 to

provide adequate protection of Lender's interest in the Collateral to the extent of any diminution

in value of the Collateral as a consequence of the use of Cash Collateral, the Postpetition

Financing, the imposition of the automatic stay, and any other consequence of the Cases (the

"Replacement Liens," and collectively with the Financing Liens, the "Liens"); provided,

however, that the Postpetition Collateral does not include any claim or cause of action arising

under sections 502(d), 542, 544, 547, 548, 550, or 551, and any recoveries thereof (collectively,

"Avoidance Claims"), but does include claims and causes of action arising under section 549 and

any recoveries thereof, and the proceeds realized by the Estates from the assumption and

assignment, or rejection, of any executory contract or unexpired lease under section 365.

3.1.2.1 <u>Adequate Protection Liens on Collateral</u>:  continuing valid, binding, enforceable, and perfected, liens and security interests in and on all of the Collateral to the extent of the Adequate Protection Obligations (the "<u>Collateral Adequate Protection Liens</u>").

3.1.2.2 <u>Additional Adequate Protection Replacement Liens</u>: valid, binding, enforceable, and perfected replacement liens and security on the Adequate Protection Properties to the extent of the Adequate Protection Obligations (the "<u>Replacement Adequate Protection Liens</u>" and together with the Collateral Adequate Protection Liens, the "<u>Adequate Protection Liens</u>"). The Adequate Protection Liens shall be conditional on the Noteholders having a valid, enforceable, and unavoidable lien on the Collateral.  Further, to the extent that the Noteholders' liens are avoided, the Noteholders are hereby authorized to seek to assert unsecured claims under section 502(h) of the Bankruptcy Code against the Estate that includes the property that was encumbered by such avoided lien.

3.1.2.3 <u>507(b) Claims</u>:  an allowed super-priority administrative expense claim subject to proof against each Obligor and its respective Estate pursuant to and as provided under Section 507(b) (the "<u>507(b) Claims</u>").  The 507(b) Claims shall be conditional on the Noteholders having a valid, enforceable, and unavoidable lien on the Collateral.

3.1.2.4 <u>Adequate Protection Payments</u>:  subject to the conditions set forth in section 3.1.2, Debtors shall promptly pay into a reserve fund all interest accruing on the obligations owing to the Noteholders, which shall be released to the Noteholders as their interests may appear when and to the extent that the Noteholders are found to have valid, enforceable, and unavoidable liens on the Collateral, but only to the extent of the diminution in value of their interest in the Collateral.



authorized and directed to perform such act to the extent requested by Lender, including without limitation deeds of trust, mortgages, fixture filings, deposit account control agreements, and UCC financing statements, and in such event, the subject filing or recording office or agency is authorized to accept, file, or record any document in regard to such act in accordance with applicable law, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of ~~this~~ the First Interim Order.

        3.2     <u>Superpriority Claim</u>.  In addition to and without limiting the Liens, the Obligations constitute an allowed superpriority administrative expense priority claim in favor of Lender with senior priority in payment afforded by section 364(c)(1), which has priority in right of payment senior to all other obligations, liabilities, indebtedness, and claims of any kind and nature, now in existence or hereafter incurred by Debtors, including without limitation any and all administrative expenses of the kinds specified or ordered pursuant to sections 105, 326, 327, 328, 330, 331, 364, 365, 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 546(c), 726, 1103, 1104, 1113, 1114, and other sections of the Bankruptcy Code, including those resulting from the conversion of any of the Cases pursuant to section 1112, and at all times are senior to the rights of Debtors, the Estates, any bankruptcy trustee, the claims and obligations in favor of the Funds and the Noteholders, any creditor or other party in interest in the Cases or any subsequent proceedings under the Bankruptcy Code (the "<u>Superpriority Financing Claim</u>").  Subject to entry of a Final Order, the Superpriority Claims include all rights in and are not reduced by Avoidance Claims.  In addition, Lender retains its right to a claim under section 507(b) (collectively with the Superpriority Financing Claim, the "<u>Superpriority Claims</u>").

        3.3     <u>Carve-Out</u>.  The Liens, the Superpriority Claims, and the Noteholder Adequate Protection shall be subject only to ((a) through (d), the "<u>Carve Out</u>"): (a) any unpaid


01:22621324.10
01:22621324.142
2621324.15

(a)    A breach, default, or failure to perform with respect to any term, condition, covenant, or obligation under any Loan Document (including without limitation this Order and any Interim Order);

(b)    An "Event of Default" as defined in the Loan Agreement ; or

(c)    The termination, expiration, restriction, or curtailment of any Debtor's or Estate's authority or ability to borrow the Postpetition Financing or Lender's commitment to provide the Postpetition Financing, whether automatically or upon exercise or notice by Lender in accordance with the Loan Documents (a "Termination Event").

4.2    Rights and Remedies upon Event of Default. Notwithstanding the occurrence of an Event of Default, Obligors and the Estates of the Obligors remain liable for all Obligations and obligated to perform and abide by all terms, conditions, covenants, and obligations of the Loan Documents and remain bound by all restrictions and prohibitions provided, acknowledged, or authorized under the Loan Documents, and subject to any applicable cure periods, Lender may elect any and all consequences of such Event of Default and is entitled to take any act or exercise any right or remedy provided in any Loan Document subject to the this Order.  Notwithstanding the foregoing, Lender has no obligation to make loans, advances, or provide other financial accommodations or otherwise perform its obligations under the Loan Documents or on behalf of Debtors or the Estates immediately upon or after the occurrence of an Event of Default or an act, event, or condition that with the giving of notice or the passage of time, or both, would constitute an Event of Default, pursuant to the terms of the Loan Documents.

4.3    Relief from Automatic Stay.  The automatic stay pursuant to section 362 is terminated, modified, lifted, and vacated without further notice, motion, or order, and without the



14-day stay provided under Bankruptcy Rule 4001(a)(3) (which is waived by this Order), as follows:

        4.3.1   <u>Non-Default</u>.  Effective immediately (a) to implement the Postpetition Financing pursuant to the Loan Documents, (b) to take or permit any Perfection Act, and (c) to assess, charge, advance, deduct, and receive payments with respect to the Obligations, and apply such payments to the Obligations pursuant to the Loan Documents, and

        4.3.2   <u>Post-Default</u>.  Upon either the maturity of the Postpetition Financing or the occurrence of an Event of Default and subject to any applicable cure periods, after obtaining relief from this Court from the automatic stay upon hearing and five (5) business days' prior notice to respective counsel to ~~the~~ Debtors, the Committee, ~~if and when appointed~~the Noteholder Group, and the Unitholder Group, and the U.S. Trustee, Lender shall be entitled and empowered:

        4.3.2.1 Immediately to take actions and exercise rights as provided in any Loan Document, including without limitation terminating Debtors' use of Cash Collateral otherwise authorized by this Order, directing Debtors and any account debtors or other parties that may have possession of Cash Collateral to deliver such Cash Collateral directly to Lender, withholding its consent to Debtors' use of Cash Collateral, declaring all Obligations immediately due and payable, ceasing to provide further advances, loans, and financial accommodations to or on behalf of Debtors or the Estates, setting off any Obligations with all or any portion of the Collateral or proceeds thereof, and terminating Lender's commitment to provide any further advances, loans, and financial accommodations to for the benefit of Debtors, but not including Collateral Enforcement Rights (defined herein); and



4.3.2.2 Upon Debtor's failure to cure an Event of Default within a five (5) business day period after the delivery of a notice of an Event of Default to Debtors, counsel for Debtors, the Committee, the Noteholder Group, and the Unitholder Group, and the U.S. Trustee referred to in paragraph 4.3.2, and upon the maturity of the Postpetition Financing, to take actions and exercise rights and remedies with respect to the Collateral, including foreclosing upon or conducting a sale of any Collateral ("Collateral Enforcement Rights"). Notwithstanding the foregoing, Debtors may seek an order of the Court on an emergency basis extending the automatic stay to stay such exercise by Lender for "cause." Upon Lender's request, the Court shall enter a further Order with respect to the termination of the automatic stay and the grant of relief from the automatic stay consistent with the terms of this Order, although the entry of such further order does not limit the effectiveness of such relief as provided and granted in this Order.

4.4    Right to Credit Bid.  Lender has the right to use any or all of the Obligations owed to Lender to credit bid with respect to any sale of all or any portion of the Collateral pursuant and subject to section 363(k).

4.5    No Duty to Marshall. Upon the entry of a Final Order, neither Lender nor the Collateral is subject to the doctrine of marshaling with respect to the Collateral.

Section 5.    Representations; Covenants; and Waivers.

5.1    Debtors' Waivers.  Debtors irrevocably waive any rights (a) to seek authority prior to satisfaction of the Obligations in full, to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) other than from Lender unless such authority results in the Obligations being indefeasibly paid in full, in cash, (b) to challenge the application of any payments authorized by this Order pursuant to section 506(b), and (c) to



propose or support a plan of reorganization that does not provide for the indefeasible payment of all Obligations owed to Lender in full, in cash, upon the effective date of such plan of reorganization or is otherwise inconsistent with the Loan Documents unless Lender consents.

5.2     Section 506(c) Waiver.  Upon entry of a Final Order, no costs or expenses of administration incurred in the Cases—incurred during the ThirdFourth Interim Period— may be charged against Lender or the Collateral pursuant to sections 105, 326, 327, 330, 331, 503(b), 506(c), 507(a), or the "equity exception" in section 552(b), section 726, or any other provision of the Bankruptcy Code, or any similar principle of law without the prior written consent of Lender, and no such consent shall be implied from any other action, inaction or acquiescence by Lender.

5.3     Liens Senior to Certain Other Liens.  Without prejudice to seeking a Lienlien pursuant to section 364(d) in connection with a Final Order on the Motion, the Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date including, without limitation, mechanics' liens, materialmens' liens, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of Debtors. For the avoidance of doubt, the Liens and the Superpriority Claims, in each case, in respect of all Obligations, shall be neither subject nor subordinate to disgorgement or to any other rights, claims, or remedies asserted or assertable by the Securities and Exchange Commission or any other governmental unit, person or entity.

Section 6.     Other Rights and Obligations.

6.1     No Modification or Stay of this Order.  Notwithstanding any other order of the Court or act by any party, the acts taken by Lender in accordance with this Order, the



Obligations, and all rights, interests, remedies, benefits, consents, claims, and obligations, including without limitation the Obligations, the Liens, and the Superiority Claims, shall not be modified, amended, reduced, or restricted without the express consent of Lender, shall be governed in all respects by the original provisions of this Order, and shall remain valid, effective, authorized, and in full force and effect pursuant to section 364(e).  If any or all of the provisions of this Order are reversed, modified, vacated, or stayed for any reason, such reversal, modification, vacation, or stay does not affect (a) the validity and existence of any Obligations owing to Lender, including obligations arising from loans, advances, or other financial accommodations provided by Lender incurred prior to the actual receipt by Lender, as applicable, of written notice of the effective date of such reversal, modification, vacation, or stay, or (b) the validity or enforceability of any Lien or Superpriority Claim.  For purposes of section 364(e), "appeal" shall include any proceeding for reconsideration, amending, vacating, rehearing, or re-evaluation of this Order by this Court or any other tribunal.

6.2    <u>Power to Waive Rights; Duties to Third Parties</u>.  Lender has the right to waive any interest, claim, right, remedy, or privilege in favor of Lender provided for or acknowledged in any Loan Document including without limitation this Order and any Interim Order (collectively, "<u>Lender Rights</u>"), and has no obligation or duty to any other party with respect to or by reason of Lender's exercise or enforcement, or delay or failure to exercise or enforce, any Lender Right.

6.3    <u>Reservation of Rights</u>.  This Order is in addition to and without prejudice to the rights of Lender to pursue any and all rights and remedies under the Bankruptcy Code, the Loan Documents, any other contract, at law, or in equity.



6.4    "Responsible Person."  By accepting any budget submitted by Debtors or by taking any actions pursuant to or authorized by the Loan Documents, Lender is not deemed to be (a) in control of the operations or liquidation of Debtors, or (b) a "responsible person" with respect to the operation, management, or liquidation of Debtors.

6.5    Binding Effect.  This Order is and continues to be binding upon Debtors, all parties in interest in the Cases (including without limitation landlords, lessors, and other parties asserting an interest of real property where Collateral may be located), and each of their respective successors and assigns, including any trustee, notwithstanding any further order, including dismissal of any of the Cases ~~of~~or conversion of any of the Cases to a case under another chapter of the Bankruptcy Code.

6.6    Survival of Order.  The provisions of this Order, the Liens granted and acknowledged by this Order, the priorities afforded to the Liens and claims in favor of Lender, and any actions taken pursuant thereto (a)  survive the entry of any order: (i) confirming any plan of reorganization in the Cases, (ii) converting any of the Cases to a cases under chapter 7 of the Bankruptcy Code, or (iii) dismissing any of the Cases; and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to this Order maintain its priority as provided by this Order until all of the Obligations are indefeasibly paid in full and discharged in accordance with the terms of the Loan Documents.  The Obligations shall not be discharged by the entry of any order confirming any plan of reorganization in the Cases unless such Obligations are satisfied in full, in cash, pursuant to such plan of reorganization, and Debtors waives, and is deemed to have waived any such discharge pursuant to section 1141(d)(4).

~~6.7~~ 6.7 Final Hearing and Response ~~Dates~~Date.  A final hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) (the "Final Hearing") for entry of an order granting the motion on a "final basis" (the "Final Order") shall be held on ~~February 13,~~March 8, 2018, at



~~1~~10:00 ~~p~~a.m. before this Court. The proposed Final Order will (i) be filed before the Final

Hearing, (ii) contain, among other forms of relief, (a) a waiver of the right of any party pursuant

to section 506(c) of the Bankruptcy Code or otherwise to surcharge any costs or expenses of

administration of the Cases against or recovered from or against Lender, without the prior

written consent of Lender, as applicable; (b) a waiver of the application of the equitable doctrine

of "marshalling" or any other similar doctrine as against Lender with respect to any of the

Collateral, as applicable; (c) provisions regarding the right of Lender to credit bid Obligations

with respect to any sale of all or any portion of the Collateral pursuant to section 363(k); and (d)

upon the entry of a Final Order, provisions that provide that the Liens granted hereunder as

adequate protection and to secure the Obligations owing to Lender shall attach to and be

perfected with respect to, and the super-priority claims owing in respect of adequate protection

and to Lender in respect of the Obligations shall be payable from, the proceeds of Avoidance

Claims.

Notwithstanding the entry of this ~~Third~~Fourth Interim Order, any and all rights of

the Committee and the Noteholder Group, and the Unitholder Group to object to the terms of the

Final Order are expressly preserved and nothing herein shall be construed as an admission or

waiver of any such rights, specifically including, without limitation, any unpaid closing fees

payable under the Loan Documents in connection with the Final Order.

Within three (3) business days of entry of this Order, Debtors shall serve, by

United States mail, first-class postage prepaid, (such ~~service~~notice constituting adequate notice

of the Final Hearing), ~~by United States mail, first-class postage prepaid, (such service~~

~~constituting adequate notice of the Final Hearing)~~ notice of the entry of this Order (the "Final

Hearing Notice") upon the Noteholders, the Notice Parties, and counsel for the Committee and

~~any other committee appointed by the Court, if the same shall have been appointed~~the Noteholder Group, and the Unitholder Group.

The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file a written objection with the Clerk of the Court no later than ~~February 6,~~March 1, 2018, which objection shall be served so that it is actually received on or before 4:00 p.m. (prevailing Eastern time) on such date by: (a) counsel for Debtors, Gibson, Dunn & Crutcher LLP, 333 South Grand Avenue, Los Angeles, CA 90071-3197; Attn: Samuel Newman; Gibson, Dunn & Crutcher, LLP, 200 Park Avenue, New York, New York 10166; Attn: J. Eric Wise; Young Conway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Sean Beach and Edmon Morton; (c) counsel for Lender, Buchalter, 1000 Wilshire Boulevard, Suite 1500, Los Angeles, CA 90017-1730; Attn: William Brody; Richards Layton & Finger, LLP, One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: John Knight; (d) counsel for ~~any~~the Committee, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA 90067-4003; Attn: Richard Pachulski; ~~and~~ (e) counsel to the Noteholder Group, Drinker Biddle & Reath LLP, 222 Delaware Ave., Ste. 1410, Wilmington, Delaware 19801 (Attn: Steven K. Kortanek); (f) counsel to the Unitholder Group, Venable, LLP, 1270 Avenue of the Americas, 24th Floor, New York, NY 10020 (Attn: Jeffrey S. Sabin) (g) the Office of the United States Trustee for the District of Delaware and shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware.

Dated: ~~January _____,~~February 13, 2017
       Wilmington, DE

_____

Kevin J. Carey
United States Bankruptcy Judge

**<u>Exhibit A</u>**

**Loan Agreement**

01:~~22621324.14~~2
2621324.15

**Exhibit D**

**Adequate Protection Properties**

1.  10060 and 10100 West Sunset Boulevard & 141 South Carolwood Drive, Los Angeles, CA

2.  638 Siena Way, Los Angeles, CA

3.  25085 Ashley Ridge Road, Calabasas, CA

4.  7900 Granito, Los Angeles, CA

5.  Fountain & Fairfax, Los Angeles, CA

6.  2362 Apollo Drive, Los Angeles, CA

7.  24025 Hidden Ridge Road, Calabasas, CA

8.  9127 Thrasher Avenue, Los Angeles, CA

9.  711 Walden Drive, Beverly Hills, CA

10. 714 N. Oakhurst, Beverly Hills, CA

11. 9040 Alto Cedro Drive, Beverly Hills, CA

12. 10750 Chalon Road, Los Angeles, CA

**Exhibit E**

13. **Cash Flow Projections**