## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1] | Case No. 17-12560 (KJC) |
| Debtors. | (Jointly Administered) |
| | **Hrg. Date: March 28, 2018, at 9:00 a.m. (ET)**<br>**Obj. Deadline: March 13, 2018, at 4:00 p.m. (ET)** |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 105(a), 363, AND 503 OF THE BANKRUPTCY CODE, AND RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, APPROVING EMPLOYEE SEVERANCE PAYMENTS AND CERTAIN ADDITIONAL EMPLOYEE-RELATED RELIEF

Woodbridge Group of Companies, LLC and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby move this court (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit E (the "Order"), pursuant to sections 105(a), 363, and 503 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure, (a) retroactively approving post-petition severance payments made by the Debtors to certain employees, (b) authorizing (but not directing) payments to certain Debtor employees as part of negotiated severance agreements, (c) authorizing non-insider severance payments made in the ordinary course of business on a go-forward basis, (d) retroactively approving compensation-related payments to certain Debtor employees for pre-petition amounts that exceed the $12,850 cap authorized by the Wage Order (defined below) and certain pre-

---

[1] The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14140 Ventura Blvd #302, Sherman Oaks, California 91423. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing and claims agent at www.gardencitygroup.com/cases/WGC, or by contacting the undersigned counsel for the Debtors.

petition severance obligations; and (e) granting related relief.  In support of this Motion, the

Debtors respectfully represent as follows:

**JURISDICTION**

1.      This court (the "Court") has jurisdiction over this matter pursuant to

28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United

States District Court for the District of Delaware dated as of February 29, 2012.  This is a core

proceeding pursuant to 28 U.S.C. § 157(b), and the Debtors consent, pursuant to rule 9013-1(f)

of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court

for the District of Delaware, to the entry of a final order by the Court in connection with this

Motion to the extent that it is later determined that the Court, absent consent of the parties,

cannot enter final orders or judgments in connection herewith consistent with Article III of the

United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409.

2.      The statutory predicates for the relief requested herein are sections 105(a),

363(b), and 503(c)(3) of the Bankruptcy Code.

**GENERAL BACKGROUND**

3.      On December 4, 2017 (the "Petition Date"), each of the Debtors

commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the

"Chapter 11 Cases").

4.      Each Debtor is authorized to continue to operate its business and manage

its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  The Chapter 11 Cases are being jointly administered for procedural purposes pursuant to

Bankruptcy Rule 1015(b).

01:22833466.15

5.      On December 14, 2017, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 79].  On January 23, 2018, the Court approved a settlement providing for the formation of an ad hoc noteholder group (the "Noteholder Group") and an ad hoc unitholder group (the "Unitholder Group") [D.I. 357].

6.      Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of the Chapter 11 Cases can be found in the *Declaration of Lawrence R. Perkins in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "First Day Declaration") [D.I. 12], which is incorporated herein by reference.

## BACKGROUND SPECIFIC TO THE RELIEF REQUESTED

### A.      Wage Motion and Order

7.      On December 4, 2017, the Debtors filed the *Debtors' Motion for Entry of an Order (A) Authorizing Payment of Certain Prepetition Workforce Claims, Including Wages, Salaries, and Other Compensation; (B) Authorizing Payment of Certain Employee Benefits and Confirming Right to Continue Employee Benefits on Postpetition Basis; (C) Authorizing Reimbursement to Employees for Expenses Incurred Prepetition; (D) Authorizing Payment of Withholding and Payroll-Related Taxes; (E) Authorizing Payment of Workers' Compensation Obligations; and (F) Authorizing Payment of Prepetition Claims Owing to Administrators and Third Party Providers* [D.I. 10] (the "Wage Motion") [2] with the Court.  The Wage Motion provided the following information regarding PTO (defined below) and severance payments that is relevant to the relief requested herein:

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Wage Motion, as applicable.

01:22833466.15

> The Debtors offer Salaried Employees paid time off ("PTO") in the
> form of compensation for vacation and sick time.  The rate at
> which Employees accrue PTO varies depending on an Employee's
> length of employment….  In accordance with applicable law,
> Employees who are terminated from their employment (for any
> reason) are entitled to payment for all accrued but unused PTO as
> of the date of termination of employment.
>
>             \*\*\*
>
> The Debtors do not maintain a formal severance policy.  However,
> the Debtors do, on occasion, provide severance packages to certain
> members of their Workforce.  The Debtors seek authority to make
> severance payments to certain Employees in the aggregate amount
> of $10,000 (the "Severance Package").   The Severance Package
> reflects Debtors' obligation to pay three Employees the equivalent
> of two weeks salary and a single Employee the equivalent of four
> weeks salary.
>
>             \*\*\*
>
> The Debtors request that they be authorized, but not directed, to
> continue to provide severance packages going forward and
> continue to honor any severance obligation that accrued
> prepetition.

Wage Motion at ¶¶ 21, 35, 36.  In addition, the defined term "Employee Obligations," which was

included in the Wage Motion, encompassed, among other things, PTO and Severance Package

Obligations.  Wage Motion at ¶ 38.

      8.      On December 5, 2017, the Court entered its Order approving the Wage

Motion [D.I. 53] (the "Wage Order").  The Wage Order included the following provisions

regarding PTO and severance payments that is relevant to the relief requested herein:

> Except as otherwise set forth herein, the Debtors are authorized,
> pursuant to sections 105(a) and 363(b) of the Bankruptcy Code,
> but not obligated or directed, in the reasonable exercise of their
> business judgment and in the ordinary course of business, to pay
> and honor amounts on account of Employee Obligations and
> Contract Workers Obligations (exclusive of Withholding
> Obligations); provided, however, that, subject to the requirements
> of 11 U.S.C. section 507(a)(4) of the Bankruptcy Code, without
> prejudice to the Debtors' right to seek additional payments, the

> Debtors shall not make any payments in excess of $12,850 on account of prepetition Employee Obligations or Contract Workers Obligations to any one Employee, respectively, absent further order of the Court.
>
> ***
>
> The Debtors shall not make any severance payments to members of the non-debtor affiliates' Workforce without prior court approval.
>
> ***
>
> Nothing in the Motion or this Order shall be construed to authorize any payments governed by section 503(c)(3) of the Bankruptcy Code or any severance payments to insiders in excess of the limits set forth in section 503(c)(2) of the Bankruptcy Code.

Wage Order at ¶¶ 2, 9, 13.

9.     Accordingly, pursuant to the Wage Motion and Order, the Debtors sought and obtained the authority to:  (i) provide severance packages to employees, except to the extent such obligations are governed by section 503(c)(3) and provided that no severance payments could be issued to employees of non-Debtors or insiders of the Debtors and that pre-petition amounts not exceed the Priority Cap, *see* Wage Motion at ¶¶ 35, 36; Wage Order at ¶¶ 2, 9, 13; and (ii) in accordance with applicable law, pay terminated employees for all accrued but unused PTO, provided that no employee could receive payments in excess of $12,850 on account of prepetition Employee Obligations, *see* Wage Motion at ¶ 21; Wage Order at ¶ 2.

**B.     Post-Petition Employee Severance**

10.     Post-petition, the Debtors negotiated severance agreements and made certain severance payments (the "Severance Payments") to 86 members of their work force.[3] The Severance Payments were made in conjunction with the Debtors' reduction in force ("RIF"),

---

[3]     A list of the RIF Employees, which includes each RIF Employee's title and the amount of the Severance Payment that each RIF Employee received, is provided as Exhibit A attached hereto (the "Schedule of Severance Payments").

which was part of an effort to reduce overhead costs and was associated, in part, with dismantling the Debtors' former wealth management operations.[4]  All of the Severance Payments accrued post-petition and ranged in amounts from $4,166.67 to $26,000.  The aggregate amount of Severance Payments was approximately $800,168.  The Debtors incrementally paid the Severance Payments between January 9, 2018 and January 19, 2018. Termination of employees subject to the RIF (the "RIF Employees") could potentially expose the Debtors' estates certain administrative expense obligations, such as WARN Act liability for certain of the employees.  Therefore, the Debtors made the Severance Payments in amounts that included a continuation of the base salary in effect on the separation date for approximately 60-days' wages following the separation date.  By information and belief, no Severance Payment was made to an insider of the Debtors.[5]

11.    In addition to the 86 Severance Payments made to RIF Employees, the Debtors made six Severance Payments that the Debtors have not yet released to employees (the "Held Checks"), which are being held pending Court approval.[6]  The aggregate amount of the Held Checks is $47,234.

12.    Two of the RIF Employees appear to have received a pre-petition salary increase (the "Increased Wage Employees") negotiated by, and prior to the removal of, the Debtors' then-manager, Robert Shapiro.  As part of the RIF, the then-CRO and his financial

---

[4]     Upon information and belief, all of the Severance Payments were made to terminated employees.  In one instance, an employee, Eugene Rubenstein, volunteered to resign, recanted his resignation, and was then terminated. The Debtors are currently conducting diligence on the circumstances of Mr. Rubenstein's termination and reserve the right to withhold any Severance Payment to Mr. Rubenstein in the event that Mr. Rubenstein's departure is found to be voluntary.

[5]     The Debtors are conducting ongoing diligence to confirm whether any "insider" employees received severance payments.  Their investigation has thus far determined that one employee—Joseph Loox—is an "insider" and was paid $8,666.68 on January 19, 2018 (the "Insider Payment").  The Debtors do not seek retroactive approval of the Insider Payment, have not included Mr. Loox's payment in the Schedule of Severance Payments, and reserve all rights with respect thereto.  *See* section F, *infra*.

[6]     The Held Checks are identified on the Schedule of Severance Payments.

advisory team negotiated post-petition severance agreements with the Increased Wage

Employees, resulting in a reduction of the Increased Wage Employees' salaries (the "Negotiated

Severance Payments", and together with the Severance Payments and the Held Checks, the

"Aggregate Severance Payments").  Although the Debtors entered into agreements with the

Increased Wage Employees for payment of the Negotiated Severance Payments based on each

Increased Wage Employees' base pay at the time of the RIF, the Debtors have not yet paid such

amounts.  The Debtors seek authority to pay Negotiated Severance Payments to the Increased

Wage Employees—Brook Church-Koegel and David Goldman—in the aggregate amount of

approximately $50,000.[7]   By information and belief, the Increased Wage Employees are not

insiders of the Debtors.

**C.     Authorizing the Debtors to Pay Severance in the Ordinary Course is Appropriate**

13.     In addition, the Debtors seek authority (but not direction) to pay post-

petition severance payments to non-insider employees in the ordinary course of business on a go-

forward basis to include at least the value of 60 days' wages and benefits for employees, subject

to the execution of a severance and release agreement (the "Ordinary Course Severance

Payments"), which shall include a representation by the employee that s/he is not an "insider."

The Debtors did not maintain a formal, standardized pre-petition severance policy.  However, the

Debtors provided pre-petition severance packages to certain members of their workforce in the

ordinary course of business.  The Debtors seek authority to standardize the amount of severance

paid to non-insider employees on a go-forward basis in order to provide clarity and consistency

to the Debtors' employees and to avoid potential administrative claim liability.

---

[7]      The Increased Wage Employees and the amount of their Negotiated Severance Payments are listed in the
schedule attached hereto as Exhibit B.

01:22833466.15

14. The Debtors request that they be authorized, but not directed, to pay Ordinary Course Severance Payments going forward and continue to honor any other obligation previously authorized by the Wage Order.

**D.    Employee Overpayments**

15. When determining the amount of pre-petition compensation due to employees, the Debtors did not account for each employee's PTO as part of the $12,850 cap established in the Wage Order (the "Priority Cap"). Accordingly, in five instances, the Debtors paid pre-petition amounts to employees that exceeded the Priority Cap (the "Overpayments"). The Aggregate amount of the Overpayments is approximately $5,611 and in no event did any of the five Overpayments exceed $2,700 more than the Priority Cap.[8] By information and belief, none of the employees that received an Overpayment is an insider of the Debtors.

**E.    Pre-Petition Severance Obligations**

16. In lieu of a lump sum severance payment to two particular employees that were terminated pre-petition, the Debtors have been making incremental severance payments in satisfaction of those obligations on a post-petition basis. The aggregate Pre-Prepetition Severance Obligations owed to these terminated employees is $11,463.[9] No individual Pre-Petition Severance Obligation exceeds the $12,850 priority cap. Of this amount, $8,597 in payments was made post-petition and $2,866 remains to be paid. On February 2, 2018, the Debtors requested a "stop-payment" to prevent additional checks to such terminated employees from clearing.

17. The Debtors believe that the Wage Order provides authority to pay "Employee Obligations" to the then-current employees to the extent of the Priority Cap,

---

[8] The Overpayments are identified in the schedule attached hereto as Exhibit C.

[9] The Pre-Petition Severance Obligations are identified in the scheduled attached hereto as Exhibit D.

01:22833466.15

including certain pre-petition severance obligations.  *See* Wage Order, ¶ 2.  The Debtors request

that the relief authorized in the Wage Order be extended to authorize, but not direct, the payment

of the Pre-Petition Severance Obligations.

## F.    Additional Employee Disclosures

18.     In addition to the relief requested herein, the Debtors make the following

disclosures and reservation of rights.

19.     Non-Debtor Affiliate Payments.  Post-petition, the Debtors made

severance payments to two employees of a non-Debtor affiliate, Laura Gee and Raleigh Vos,

who were employed by non-Debtor, Woodbridge Realty of Colorado, LLC (the "Non-Debtor

Affiliate Payments").  The Non-Debtor Affiliate Payment to Ms. Gee was negotiated pre-petition

by the Debtors' then-manager, Robert Shapiro, in the amount of $40,000, or the equivalent of 26

weeks of wages.  The payment was made on January 12, 2018.  The Debtors entered into a Non-

Debtor Affiliate Payment agreement with Ms. Vos for approximately 13 weeks of incremental

severance payments, each in the amount of approximately $1,577.  The payments began on

December 15, 2017 and were scheduled to be paid until March 16, 2018.  Instead, on January 26,

2018, the Debtors issued a "stop-payment" on all further checks.  Ms. Vos has received

approximately $9,242 and the Debtors do not intend to make any further payments absent further

order by this Court.  The Debtors' investigation regarding the Non-Debtor Affiliate Payments is

ongoing, and as set forth below, the Debtors are reserving all rights with respect thereto.

20.     Joseph Loox.  As discussed in footnote five, the Debtors do not seek

retroactive approval of the Insider Payment and reserve all rights with respect thereto.

21.     Dane Roseman.  An independent contractor, Precise Investment Group,

LLC, solely owned by Dane Roseman, appears to have negotiated a pre-petition increase with

Mr. Shapiro of Mr. Roseman's base contract payment from $70,000 to $750,000, which

01:22833466.15

purportedly was meant to reflect the contractor's prior year combined compensation of base pay and incentive payments.  Mr. Roseman entered into a Severance Agreement with the Debtors post-petition that reflected a reduced base pay of $250,000 and included a severance payment based on approximately 60 days of compensation at that reduced rate.  The Debtors did not make the payments contemplated under the severance agreement, nor do they seek authority to make a severance payment or PTO payment to Precise Investment Group, LLC since, among other reasons, it was a "1099" contract worker.  The Debtors' investigation regarding the post-petition severance agreement entered into with Precise Investment group, LLC is ongoing, and as set forth below, the Debtors are reserving all rights with respect thereto.

22.    <u>Brett Pittsenbargar</u>.  The Debtors entered into a post-petition severance agreement with Brett Pittsenbargar, a contract worker hired a few months prior to the Petition Date.  While the Debtors investigation into the post-petition severance agreement is ongoing, the Debtors' do not believe that Mr. Pittsenbargar is entitled to a severance payment, nor will such a payment benefit the estate, and no payments appear to have been made under this severance agreement.  Accordingly, the Debtors do not seek authority to make a severance payment to Mr. Pittsenbargar and reserve the right to seek any relief necessary to protect the interests of the Debtors' estate in a future proceeding.

23.    <u>Temporary Rehiring of Certain Terminated Employees.</u>  The Debtors recently terminated five employees, paid certain of them severance, and then engaged them as contract workers to assist in the transition from pre-RIF staffing levels (the "<u>Rehired Contractors</u>").  In connection with the transition, the Rehired Contractors are currently working in a part-time capacity to assist in daily business functions such as answering telephones.  In an abundance of caution, the Debtors are disclosing that these individuals have been temporarily

01:22833466.15

reengaged as contractors by the Debtors in various capacities notwithstanding their recent termination and receipt of Severance Payments.[10]  The Debtors are reviewing the decision to engage the Rehired Contractors.

## RELIEF REQUESTED

24.     By this Motion, the Debtors seek entry of the Proposed Order, pursuant to sections 105(a), 363(b), and 503 of the Bankruptcy Code, and Rule 9019 of the Federal Rules of Bankruptcy Procedure, (a) retroactively approving the Severance Payments, (b) authorizing (but not directing) the Debtors to issue the Held Checks and pay the Negotiated Severance Payments, (c) authorizing (but not directing) the Debtors to make Ordinary Course Severance Payments and enter into applicable severance agreements, (d) retroactively approving the Overpayments, (e) authorizing the Prepetition Severance Obligations, and (f) granting related relief.

25.     In addition, the Debtors request that the Court authorize the Debtors' banks and financial institutions to honor checks, electronic payment requests, and wire transfers related to Aggregate Severance Payments, Ordinary Course Severance Payments, Overpayments and Pre-Petition Severance Obligations, and to reissue any check or electronic payment request that is not cleared by the applicable bank or other financial institution, to the extent necessary.

## BASIS FOR RELIEF

### A.      The Applicable Legal Standard

26.     Section 363(b) of the Bankruptcy Code provides in pertinent part:  "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b).  Courts interpreting section 363(b) have

---

[10]     The Rehired Contractors are Allen Beck, Eugene Rubenstein, Erland Standish, M. Patricia Sullivan, and Andrea Williamson.  The Debtors have not released a Severance Payment to Andrea Williamson and reserve the right to withhold the Severance Payment until after a review of the circumstances of her employment.  However, the Debtors are seeking authority, but not direction, to pay her currently withheld Severance Payment in the amount of $4,700.

held that transactions should be approved pursuant to this provision when, as here, they are supported by management's sound business judgment, in this case, the judgment of the Debtors' CRO. *See In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (outlining requirements for sale of assets pursuant to section 363); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (holding the elements for a sale under 363 are that it be "fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith.").

27.    The proposed use, sale, or lease of property of the estate may be approved under section 363(b) of the Bankruptcy Code if it is supported by sound business justification. *See Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under [section 363(b)], courts require the debtor to show that a sound business purpose justifies such actions.") (internal citations omitted).  Although established in the context of a proposed sale, the "business judgment" standard has been applied in non-sale situations.  *See, e.g., Institutional Creditors of Cont'l Air Lines v. Cont'l Air Lines (In re Cont'l Air Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) (applying the "business judgment" standard in context of proposed "use" of estate property, holding that "for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.").  Once a debtor articulates a valid business justification, the "business judgment rule" "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company."  *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y.

1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985). The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing. *Id.*; *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("The Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").

28.    Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993) (providing that "when a specific Code section addresses an issue, a court may not employ its equitable powers to achieve a result not contemplated by the Code"); *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002) (holding that "the broad grant of power given to a court under Code § 105(a) does not permit it to use its equitable powers to achieve a result not contemplated by the Code.").

29.    Pursuant to section 105(a), a court may fashion an order or decree that preserves or protects the value of a debtor's assets. *See, e.g., Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that the bankruptcy court is "one of equity and as such it has a duty to protect

whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

30.     Finally, in addition to sections 105(a) and 363 of the Bankruptcy Code, section 503(c) of the Bankruptcy Code may apply to certain transactions "outside the ordinary course of business" in the severance context.  Section 503(c) does not prohibit "transfers or obligations that are outside the ordinary course" so long as they are "justified by the facts and circumstances of the case . . . ."  The facts and circumstances here justify the authorization of the payments and obligations sought to be honored even if they are outside the ordinary course of the Debtors' business.

31.     Because the RIF Employees are not insiders, and the Aggregate Severance Payments are consistent with the Debtors' prepetition practice of providing severance packages to certain members of their Workforce, the Debtors believe that section 503(c) of the Bankruptcy Code is not applicable.  Nevertheless, to the extent that section 503(c)(3) is applicable to the Aggregate Severance Payments, the standard for approving payments under section 503(c)(3) is essentially the same "business judgment" standard for approving transactions under section 363(b)(1) of the Bankruptcy Code.  *See, e.g.*, *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 804 (Bankr. D. Del. 2007); *In re Global Home Prods., LLC*, 369 B.R. 778, 787 (Bankr. D. Del. Mar. 6, 2007); *In re Nobex Corp.*, No. 05-20050, 2006 Bankr. LEXIS 417, at *7-9 (Bankr. D. Del. 2006).  Indeed, as stated in *In re Nobex Corp.*:

> [Section] (c)(3) was meant to provide a standard, albeit not as clear, for any other transfers or obligations outside the ordinary course of business . . . . I read (c)(3) to be the catch-all and the standard under (c)(3) for any transfers or obligations made outside the ordinary course of business are those that are justified by the facts and circumstances of the case . . . . I find it quite frankly nothing more than a reiteration of the standard under 363 . . . under which courts had previously authorized transfers outside

the ordinary course of business and that [are] based on the business judgment of the debtor.

Transcript of Hearing, 86:11-87:2 (Jan. 12, 2006).  Accordingly, the business judgment standard applies.

**B.      The Court Should Retroactively Approve the Severance Payments, Authorize Release of the Held Checks, Approve the Negotiated Severance Payments, Authorize the Ordinary Course Severance Obligations, and Approve Related Relief as a Sound Exercise of the Debtors' Business Judgment.**

32.      Pursuant to section 363(b), payment of the Aggregate Severance Payments represents a sound exercise of the Debtors' business judgment.  Under the circumstances, including the fact that approximately 93% of the Severance Payments have already been made and the obligations may be administrative expense claims against the estates, the Debtors' willingness to provide or honor Severance Payments is necessary for the Debtors' go-forward business operations.  Attempts to recoup the Severance Payments or denial to make such payments will likely cause hardship on the severed employees and could lead to liability on the estates.  It could also lead to contract claims and related penalties under state wage laws. Furthermore, retention of the remaining employees at this juncture of the Chapter 11 Cases is critical to the success of the Debtors' continued operations, particularly during the period of transition from one management team to another.  In reviewing the relief requested herein, the Debtors' CRO reviewed the Severance Payments and considered that, among other things, the (i) severance payments made prior to the Petition Date, though varied in nature, appear to have been a standard part of the remuneration provided to severed employees, (ii) none of the individuals who receive, or are to receive, the Severance Payments were insiders of the Debtors, and (iii) it is in the Debtors' best interests to make or honor the payments in order to protect the Debtors' from any potential administrative claim obligations, such as WARN Act liability. These considerations represent a sound business justification.

33.    The Debtors respectfully request that the Court retroactively approve the Severance Payments and authorize the release of the Held Checks and the Negotiated Severance Payments.  The Debtors additionally request authority, but not direction, to satisfy the Ordinary Course Severance Obligations.  Notwithstanding the relief granted by the Wage Order, the Debtors seek approval of the Aggregate Severance Payments and the Ordinary Course Severance Obligations in an abundance of caution for two reasons: (1) the Debtors' pre-petition severance practices were not formally documented, which provides little framework for determining whether post-petition payments constitute payments made in the ordinary course of business; and (2) although the Wage Motion expressly sought approval to make post-petition severance payments in the ordinary course of business, the Wage Order did not explicitly reference post-petition severance payments and therefore an ambiguity exists as to whether the Aggregate Severance Payments were authorized.

34.    As part of the Aggregate Severance Payments, the Debtors have entered into severance agreements with employees as a condition of the severance payment, which included comprehensive releases by the employees of the Debtors, including a release of any WARN Act claims (the "Settlements").[11]  These Settlements are a resolution of claims against the Debtors' estate in exchange for monetary consideration.  Accordingly, pursuant to Rule 9019, the Debtors request that the Court approve the Settlements as a full and final compromise of any and all present or future claims or causes of action against the Debtors' estates, as specifically set forth in the Settlements (the "Claims"), and a prohibition on asserting any such Claims against the Debtors or their estates in the future.

---

[11]    By information and belief, none of the severance agreements includes a release by the Debtors.

01:22833466.15

35.     For these reasons, the Debtors believe that the Court should retroactively approve the Severance Payments, authorize release of the Held Checks, approve the Negotiated Severance Payments, and approve the Settlements as a sound exercise of the Debtors' business judgment.

**C.      Retroactive Approval of the Overpayments and Prepetition Severance Obligations is Appropriate and in the Best Interests of the Debtors' Estates and Creditors.**

36.     As described above, five employees received Overpayments.  The aggregate amount of the Overpayments, when combining pre-petition wage and PTO payments was $69,860 with ranges of Overpayments received being between $270 and $2,700.  Notably, each Overpayment was only incrementally larger than those authorized by the Priority Cap, and not honoring the Overpayments and Prepetition Severance Obligations could subject the company's management to liability under state law.

37.     As approval of the Overpayments and Prepetition Severance Obligations is important to the Debtors' effort to reorganize, the ultimate goal of chapter 11 of the Bankruptcy Code, the Court has the authority to authorize such payments pursuant to sections 105(a) and 363(b) of the Bankruptcy Code ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title").  *See* 11 U.S.C. § 105(a).

38.      For the foregoing reasons, the Debtors believe that retroactive approval of the Overpayments and Prepetition Severance Obligations is appropriate and in the best interests of their estates and creditors.

## **RESERVATION OF RIGHTS**

39.     Debtors' counsel is continuing to investigate and review the facts and circumstances related to pre-petition and post-petition transactions, including those disclosed in this Motion.

40.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code Section 365.  The Debtors expressly reserve their rights to (i) dispute any claim asserted by an employee or contractor under applicable law; (ii) to assume or reject any employee or other agreements in accordance with the applicable provisions of the Bankruptcy Code, (iii) assert claims against any employee or contractor, and (iv) to seek avoidance and repayment of any payment or obligation that has not been authorized by the Court, including, but not limited to any transactions related to the Non-Debtor Affiliate Payments, Precise Investment Group, LLC, Brett Pittsenbargar, insider transactions, and the Rehired Contractors.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim or any other claim that could be subsequently asserted against any employee, contractor, or other party.

*[Remainder of page intentionally left blank]*

01:22833466.15

**NOTICE**

41.    Notice of this Motion has been provided to (i) the U.S. Trustee; (ii) those employees identified in the Motion and the exhibits attached thereto; (iii) counsel for the Committee; (iv) counsel for the Noteholder Group; (v) counsel for the Unitholder Group; (vi) counsel for the DIP Lender; and (vii) any other party requesting notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested herein and granting the Debtors such other and further relief as is just and proper.

Dated:    February 27, 2018          */s/ Sean M. Beach*
        Wilmington, Delaware      YOUNG CONAWAY STARGATT & TAYLOR, LLP
                           Sean M. Beach (No. 4070)
                           Edmon L. Morton (No. 3856)
                           Michael S. Neiburg (No. 5275)
                           Rodney Square
                           1000 North King Street
                           Wilmington, Delaware 19801
                           Tel:    (302) 571-6600
                           Fax:    (302) 571-1253

                           -and-

                           GIBSON, DUNN & CRUTCHER LLP
                           Samuel A. Newman (CA No. 217042)
                           Oscar Garza (CA No. 149790)
                           Daniel B. Denny (CA No. 238175)
                           333 South Grand Avenue
                           Los Angeles, California 90071
                           Tel:    (213) 229-7000
                           Fax:    (213) 229-7520

                           -and-

01:22833466.15

J. Eric Wise (NY No. 3000957)
Matthew K. Kelsey (NY No. 4250296)
Matthew P. Porcelli (NY No. 5218979)
200 Park Avenue
New York, New York 10166
Tel:      (212) 351-4000
Fax:      (212) 351-4035

*Counsel for the Debtors and Debtors in Possession*

-and-

KLEE, TUCHIN, BOGDANOFF & STERN LLP
Kenneth N. Klee (admitted *pro hac vice*)
Michael L. Tuchin (admitted *pro hac vice*)
David A. Fidler (admitted *pro hac vice* )
Jonathan M. Weiss (admitted *pro hac vice* )
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067
Tel:      (310) 407-4000
Fax:      (310) 407-9090

*Proposed Counsel for the Debtors and
Debtors in Possession*

01:22833466.15