**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12560 (KJC)<br><br>(Jointly Administered)<br><br>Hearing Date: March 28, 2018, at 9:00 a.m. (ET)<br>Obj. Deadline: March 14, 2018, at 4:00 p.m. (ET) |

**DEBTORS' FIRST (1ST) OMNIBUS MOTION FOR ENTRY OF
AN ORDER, PURSUANT TO SECTIONS 105(a), 365(a), AND 554(a) OF THE
BANKRUPTCY CODE, AUTHORIZING THE DEBTORS TO REJECT CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF NON-RESIDENTIAL
REAL PROPERTY, *NUNC PRO TUNC* TO THE REJECTION DATE**

**ANY PARTY RECEIVING THIS MOTION SHOULD LOCATE
ITS NAME AND ITS REJECTED EXECUTORY CONTRACT OR LEASE
IDENTIFIED ON SCHEDULE 1 TO THE PROPOSED ORDER**

Woodbridge Group of Companies, LLC and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby move the Court (this "Motion") for the entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to sections 105(a), 365(a), and 554(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), authorizing, but not directing, the Debtors to (i) reject those certain executory contracts (the "Rejected Contracts") and unexpired leases of nonresidential real property (the "Rejected Leases" and, collectively, the "Rejected Contracts and Leases") set forth on Schedule 1 to the Proposed Order, effective as of February 28, 2018 (the "Rejection Date"), and (ii) abandon, effective as of the Rejection Date, any

---

[1] The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at www.gardencitygroup.com/cases/WGC, or by contacting the undersigned counsel for the Debtors.

01:22896978.7

personal property of the Debtors, including, but not limited to, furniture, fixtures, and equipment (collectively, the "Personal Property") that remains, as of the Rejection Date, on any of the premises (collectively, the "Premises") in respect of the Rejected Leases.  In support of this Motion, the Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 105(a), 365(a), and 554(a) of the Bankruptcy Code and Rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

2. On December 4, 2017 (the "Petition Date"), all but fourteen of the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code.  On February 9, 2018, an additional fourteen affiliates of the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

3. The Debtors' chapter 11 cases (collectively, the "Chapter 11 Cases") are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

01:22896978.7

Delaware.  As of the date hereof, no trustee or examiner has been appointed in the Chapter 11 Cases.

4. On December 14, 2017, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee")  [Docket No. 79].  On January 23, 2018, the Court held a hearing to resolve, among other matters, two motions to appoint a chapter 11 trustee, and entered an order approving the settlement reached between the Debtors and other parties in interest [Docket No. 357] (the "Settlement Order").  Attached as Exhibit 1 to the Settlement Order was a term sheet enumerating the terms of the settlement.  By the terms of the settlement, the Debtors' board of managers was to be reconstituted as a three-person board.  Further, the settlement provided for the formation of an ad hoc noteholder group (the "Noteholder Group") and an ad hoc unitholder group (the "Unitholder Group").

5. Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of the Chapter 11 Cases can be found in the *Declaration of Lawrence R. Perkins in Support of Chapter 11 Petitions and Requests for First Day Relief* [Docket No. 12], filed on the Petition Date.

**RELIEF REQUESTED**

6. By this Motion, the Debtors seek to reject the Rejected Contracts and Leases, *nunc pro tunc* to the Rejection Date and seek to abandon, effective as of the Rejection Date, any Personal Property that remains as of such date on any of the Premises.

**BASIS FOR RELIEF**

I. **Rejection of the Rejected Contracts and Leases *Nunc Pro Tunc* to the Rejection Date Reflects the Debtors' Sound Business Judgment**

7. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). As courts have held: "[t]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting 2 *Collier on Bankruptcy* ¶ 365.01[1] (15th ed. 1993)).

8. The standard applied to determine whether the rejection of an unexpired lease should be authorized is the "business judgment" standard. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distr. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *see also In re HQ Glob. Holdings, Inc.*, 290 B.R. 507, 513 (Bankr. D. Del. 2003) (stating that a debtor's decision to reject an executory contract is governed by the business judgment standard and can only be overturned if the decision was the "product of bad faith, whim, or caprice"). Once a debtor states a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

9. The business judgment rule is crucial in chapter 11 cases and shields a debtor's management from judicial second-guessing. *See Comm. of Asbestos Related Litigants and/or*

01:22896978.7

4

*Creditors v. Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("The Code favors the continued operation of a business by a debtor and a presumption of reasonableness attached to a debtor's management decisions."). Generally, courts defer to a debtor-in-possession's business judgment to reject a lease. *See, e.g., NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *In re Minges*, 602 F.2d 38, 43 (2d Cir. 1979); *In re Riodizio*, 204 B.R. 417, 424–25 (Bankr. S.D.N.Y. 1997); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

10. Upon finding that the Debtors have exercised their sound business judgment in determining that rejection of the Rejected Contracts and Leases is in the best interests of the Debtors and their estates, the Court should approve the proposed rejections under section 365(a) of the Bankruptcy Code. *See, e.g., Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores, Inc.)*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996); *see also Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). If a debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease. *See, e.g., Sharon Steel Corp.*, 872 F.2d at 39–40.

11. As an integral component of their efforts to preserve and maximize the value of their estates and reduce their potential administrative costs in these Chapter 11 Cases by, among other things, eliminating unnecessary costs, the Debtors have determined, in their business judgment, that the Rejected Contracts and Leases are burdensome and provide no economic value to their estates. The Rejected Contracts and Leases are unnecessary to the Debtors and their chapter 11 efforts and, if not rejected, would be a drain on the Debtors' estates and a

01:22896978.7

hindrance to their chapter 11 efforts. The Debtors also believe that any continued expense in maintaining the Rejected Leases, in particular, and attempting to market such agreements would likely outweigh, if not eclipse, any benefit obtained by identifying a potential acquirer of the Rejected Leases and would unnecessarily deplete assets of the Debtors' estates, to the detriment of creditors. In contrast, rejection of the Rejected Leases, as well as the Rejected Contracts, will represent a significant monthly cost savings to the Debtors' estates moving forward.

12. In order to avoid paying any unnecessary expenses related to the Rejected Contracts and Leases, the Debtors seek to reject the Rejected Contracts and Leases *nunc pro tunc* to the Rejection Date. Generally, courts have permitted retroactive rejection of executory contracts and unexpired leases when the non-debtor party to the agreement was given definite notice of the intention to reject, *see, e.g., In re FLYi, Inc.*, Case No. 05-20011 (MFW) (Bankr. D. Del. Aug. 21, 2006), and the Court has routinely authorized a debtor's retroactive rejection of executory contracts and unexpired leases. *See In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004); *see also In re Fleming Cos., Inc.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003) (with respect to unexpired leases, rejection *nunc pro tunc* permitted to the date of the motion or the date the premises surrendered in certain circumstances).

13. The facts in these Chapter 11 Cases and the balance of the equities favor the Debtors' rejection of the Rejected Contracts and Leases *nunc pro tunc* to the Rejection Date. Without a retroactive date of rejection, the Debtors may incur unnecessary administrative charges for agreements that are not necessary to their operations or the Debtors' chapter 11 efforts. Moreover, the counterparties to the Rejected Contracts and Leases (collectively, the "<u>Counterparties</u>") will not be unduly prejudiced if the Rejected Contracts and Leases are rejected *nunc pro tunc* to the Rejection Date because the Debtors have served this Motion on the

Counterparties and/or their agents or representatives by electronic mail and/or facsimile, on the date hereof, and by overnight mail stating that the Debtors intend to reject the Rejected Contracts and Leases effective as of the Rejection Date.  Furthermore, with respect to any of the Rejected Leases, the Debtors have, on or before the date hereof, irrevocably and unequivocally surrendered the Premises and turned-over keys the Debtors' received for the Premises to the applicable Counterparty or its representative and irrevocably and unequivocally abandoned the Premises, thus leaving the applicable landlords in sole possession of the Premises.  Therefore, based on the Debtors' desire to eliminate the potential of administrative claims being asserted against their estates, and to avoid the potential accrual of any further obligations under the Rejected Contracts and Leases, the Debtors respectfully submit that rejection as of the Rejection Date of the Rejected Contracts and Leases as of the Rejection Date is appropriate.

14. In light of the foregoing facts and circumstances, the Debtors respectfully submit that their rejection of the Rejected Contracts and Leases under section 365(a) of the Bankruptcy Code, *nunc pro tunc* to the Rejection Date, is a sound exercise of their business judgment and is necessary, prudent, and in the best interests of the Debtors, their estates, and their creditors.

15. The Debtors may have claims against the Counterparties arising under, or independently of, the Rejected Contracts and Leases.  The Debtors do not waive such claims by the filing of this Motion or by the rejection of the Rejected Contracts and Leases.

**II.    Authorizing the Debtors to Abandon Any Personal Property
Remaining at the Premises as of the Rejection Date Is Appropriate**

16. In the event that any Personal Property remains on any of the Premises as of the Rejection Date, the Debtors request this Court's approval of the Debtors' abandonment of that Personal Property (collectively, the "Abandoned Personal Property"), pursuant to section 554(a) of the Bankruptcy Code, with such abandonment being effective as of the Rejection Date.

01:22896978.7

17. Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the [debtor] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The right to abandon is virtually unfettered, unless abandonment of the property will contravene laws designed to protect public health and safety and the property poses an imminent threat to the public's welfare. *See In re Midlantic Nat'l Bank*, 474 U.S. 494, 501 (1986). Neither of these limitations is relevant in this case.

18. The Debtors submit that any Abandoned Personal Property is of inconsequential value or burdensome to the Debtors' estates to remove. Among other things, the Debtors believe that the cost of retrieving, marketing, and reselling the Abandoned Personal Property outweighs any recovery that the Debtors and their estates could reasonably hope to attain for such Abandoned Personal Property. As a result, the Debtors have determined, in their business judgment, that the abandonment of any such Abandoned Personal Property, effective as of the Rejection Date, is a sound exercise of their business judgment, and is necessary, prudent, and in the best interests of the Debtors, their estates, and creditors.

## NOTICE

19. The Debtors have provided notice of this Motion to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the DIP Lender; (iv) counsel to the Noteholder Group; (v) counsel to the Unitholder Group; (vi) counsel to the SEC; (vii) the Counterparties; and (viii) any party that has requested notice in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

[*Remainder of page intentionally left blank*]

**CONCLUSION**

WHEREFORE, the Debtors request entry of the Proposed Order, substantially in the form annexed hereto as <u>Exhibit A</u>, granting the relief requested herein and such other and further relief to the Debtors as is just and proper.

Dated: February 28, 2018
Wilmington, Delaware

*/s/ Ian J. Bambrick*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Sean M. Beach (No. 4070)
Edmon L. Morton (No. 3856)
Ian J. Bambrick (No. 5455)
Betsy L. Feldman (No. 6410)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:  (302) 571-6600
Fax:  (302) 571-1253

*Counsel for the Debtors and Debtors in Possession*

-and-

KLEE, TUCHIN, BOGDANOFF & STERN LLP
Kenneth N. Klee
Michael L. Tuchin
David A. Fidler
Jonathan M. Weiss
1999 Avenue of the Stars
39th Floor
Los Angeles, California 90067
Tel:  (310) 407-4000
Fax:  (310) 407-9090

*Proposed Counsel for the Debtors and Debtors in Possession*