# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12560 (KJC)<br><br>(Jointly Administered)<br><br>**Ref. Docket No. 22** |

## DEBTORS' REPLY IN SUPPORT OF MOTION FOR
## FINAL ORDER AUTHORIZING POST-PETITION FINANCING

---

[1] The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing and claims agent at www.gardencitygroup.com/cases/WGC, or by contacting the undersigned counsel for the Debtors.

Woodbridge Group of Companies, LLC and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby submit this reply (the "Reply") in support of the *Debtors' Motion for Interim and Final Orders (i) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, and 552 Authorizing Debtors to (a) Obtain Postpetition Secured Financing, (b) Use Cash Collateral, and (c) Grant Adequate Protection to Prepetition Secured Parties; (ii) Modifying the Automatic Stay; (iii) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c); and (iv) Granting Related Relief* (the "Motion")[2] and in response to the objections thereto. In support thereof, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1. Following months of negotiations with their primary constituencies, including the Committee, the Noteholder Group, and the Unitholder Group (each as defined below), the Debtors seek approval of the DIP Financing on a final basis.[3]  As of the date of this Reply, several objections from individual noteholders and one noteholder group predating entry of the Court's fourth interim order approving the DIP Financing on February 13, 2018 remain outstanding.

2. The Debtors submit this Reply to respond to outstanding objections and to provide their constituencies and the Court with the language of the final conditional adequate protection package to be provided to the noteholders. The final conditional adequate protection

---

[2] Capitalized terms used but not defined herein shall have the meanings assigned to those terms in the Motion and the proposed Final Order (as defined below).

[3] A copy of the proposed Final Order (with a redline reflecting changes from the Fourth Interim Order) can be found at D.I. 686.

package is the result of extensive negotiations with the Committee, Noteholder Group, and Unitholder Group (each as defined below), and is in the best interest of the Debtors' estates.

## BACKGROUND

**A.    Case Background**

3.    On December 4, 2017 (the "Petition Date"), certain of the Debtors commenced with this Court a voluntary case (the "Initial Petitions") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). On February 9, 2018, fourteen additional Debtors filed voluntary chapter 11 petitions (together with the Initial Petitions, the "Chapter 11 Cases"). The Chapter 11 Cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware. Each Debtor is authorized to continue to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.    As of the date hereof, no trustee or examiner has been appointed in the Chapter 11 Cases. On December 14, 2017, the United States Trustee for the District of Delaware appointed the official committee of unsecured creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 79]. On January 23, 2018, the Court approved a settlement providing for the formation of an ad hoc noteholder group (the "Noteholder Group") and an ad hoc unitholder group (the "Unitholder Group") [D.I. 357].

**B.    The Proposed DIP Financing and Interim Approvals**

5.    Beginning on November 7, 2017, the Debtors contacted 14 potential lenders to inquire into their willingness to provide financing during the anticipated Chapter 11 Cases. Of

01:22950783.2

the potential lenders, the Debtors executed non-disclosure agreements with 11 institutions and received formal proposals from five.

6.     The Debtors ultimately selected Hankey as the DIP Lender under the DIP Facility, which will provide the Debtors with a total of $100 million in postpetition financing (with $56 million having been approved on an interim basis) to fund the Debtors' operations during the Chapter 11 Cases. Hankey was selected as DIP Lender after careful deliberation because Hankey offered the best economics (both in terms of interest rate and fees) of any potential lender, and because of its experience in the high-end luxury residential real estate sector and familiarity with the properties. In addition, Hankey agreed to provide the DIP Facility secured only by priming liens on the Core Assets, a subset of 28 of the Debtors' properties, rather than on substantially all of the Debtors' assets, providing the Debtors with the flexibility necessary to fund their continuing operations and the ability to provide conditional adequate protection to the Noteholders in the form of replacement liens on certain of the Debtors' properties other than the Core Assets securing the DIP Facility. The terms of the proposed DIP Facility are favorable to the Debtors' estates and creditors.

7.     While the Motion requested authorization to borrow an interim amount of $25,000,000 under the DIP Facility, to address concerns raised by the UST, SEC, and other parties in interest, the Debtors agreed to seek this authorization through two separate hearings. At the hearing held before this Court on December 5, 2017 (the "<u>First Day Hearing</u>"), the Court entered an order (the "<u>First Interim Order</u>") approving the DIP Financing on an interim basis in a maximum amount of $6,000,000. The Motion initially contemplated a single Adequate Protection Property. At the First Day Hearing, to address concerns raised by the UST and SEC,

01:22950783.2

4

the Debtors agreed to include an additional five properties (the "Initial Additional Adequate Protection Properties") in the proposed adequate protection package.

8. At the hearing held before this Court on December 21, 2017 (the "Second Interim Hearing"), the Court entered an order (the "Second Interim Order") approving the DIP Financing on an interim basis in a cumulative maximum amount of $25,000,000. To address concerns raised by the UST and SEC, the Debtors agreed to include an additional six properties in the proposed adequate protection package (collectively with the Initial Additional Adequate Protection Properties, the "Existing Adequate Protection Properties"), bringing the total number of adequate protection properties to 12. At the Second Interim Hearing, Frederick Chin, a senior director at Province, Inc. was called by the Debtors as an expert witness and provided analysis and testimony indicating that the total value of the Adequate Protection Properties was $242,650,000. See D.I. 240, Ex. A (the "Second Interim Hearing Tr.") at 59:13-23. A copy of excerpts of the Second Interim Hearing Transcript relating to the Motion is attached hereto as Exhibit A. The Debtors' then-chief restructuring officer, Lawrence Perkins, further testified that the Adequate Protection Properties were encumbered by approximately $169,335,000 of secured debt, meaning that the Additional Adequate Protection Properties had approximately $80,154,000 in equity value. See id. at 70:1-71:3.

9. At the hearing held before this Court on January 23, 2018 (the "Third Interim Hearing"), the Court entered an order (the "Third Interim Order") approving the DIP Financing on an interim basis in a cumulative maximum amount of $44,000,000 [D.I. 363]. A copy of excerpts of the transcript of the Third Interim Hearing relating to the Motion (the "Third Interim Hearing Tr.") is attached hereto as Exhibit B.

01:22950783.2

10. At the hearing held before this Court on February 13, 2018 (the "Fourth Interim Hearing"), the Court entered an order (the "Fourth Interim Order" and, collectively with the First Interim Order, the Second Interim Order, and the Third Interim Order, the "Interim Orders") approving the DIP Financing on an interim basis in a cumulative maximum amount of $56,000,000 [D.I. 572]. A copy of certain excerpts of the transcript of the Fourth Interim Hearing relating to the Motion (the "Fourth Interim Hearing Tr.") is attached hereto as Exhibit C.

11. A hearing before this Court is scheduled for March 7, 2018 (the "Final Hearing"). At the Final Hearing, the Debtors will seek, among other things, approval of the Final Order, which, if entered, will authorize, among other things, the DIP Financing on a final basis.

### C. Objections and Other Responses to the Debtors Obtaining DIP Financing

12. The Debtors filed and served *Notice of Entry of Fourth Interim DIP Order and Final Hearing on Proposed DIP Financing* on February 14, 2018 [D.I. 578, 630] (the "Final DIP Notice"). Consistent with the terms of the Fourth Interim Order, the Final DIP Notice stated that objections to the DIP Financing were to be filed and served on February 28, 2018. No party has filed an objection to the Motion or the DIP Financing since entry of the Fourth Interim Order.

13. Prior to the Fourth Interim Hearing, however, several entities (the "Objectors") filed objections (collectively, the "Objections") to the Debtors' entry into the DIP Financing, while other entities filed reservations of rights.

14. Sarachek Group Objection. On the date of the Fourth Interim Hearing, a group of noteholders represented by Joseph E. Sarachek (the "Sarachek Group") filed an objection (the "Sarachek Group Objection") to, *inter alia*, the Motion. The Sarachek Objection asserts, among other things, that the Sarachek Group has valid, perfected security interests in certain of the Debtors' properties. The Sarachek Group Objection further asserts that the Sarachek Group is

entitled to adequate protection. The Sarachek Group Objection is silent with respect to the adequate protection already provided for the noteholders contained the Interim Orders.

15. <u>Noteholder Group Reservation of Rights</u>. On February 6, 2018, the Noteholder Group filed a response and reservation of rights with respect to the Motion (the "<u>Noteholder Response</u>") [D.I. 510]. The Noteholder Response reiterated concerns in their prior objection, including "the valuation risk imposed on noteholders if the Debtors seek to borrow the full $100 million contemplated by the DIP loan documents on a priming basis, despite only an $80 million equity cushion in the Adequate Protection Properties based on the Debtors' prior witness testimony." <u>Id.</u> at ¶ 6. The Noteholder Response "reserves all rights with respect to the final form of order and the evidence to be adduced at the [Final Hearing]." <u>Id.</u>

16. <u>Unitholder Group Reservation of Rights</u>. On February 7, 2018, the Unitholder Group filed an omnibus reservation of rights with respect to the Motion (the "<u>Unitholder Response</u>") [D.I. 518]. Through the Unitholder Response, the Unitholder Group reserved rights with respect to the Motion and related orders "as they relate to, presume, or in any way implicate, the substantive consolidation of some or all of the Debtors' estates and/or the proper allocation of assets, liabilities, revenue and expenses among the Debtors. <u>Id.</u> at ¶ 16. At the Fourth Interim Hearing, counsel for the Unitholder Group reserved its rights in connection with the Unitholder Response. Fourth Interim Hearing Tr. at 37:12-22.

17. <u>Committee Support for Entry of Form of Final Order</u>. At the Third Interim Hearing, the Committee indicated its support for the Motion. Third Interim Hearing Tr. at 9:25-10:4. The Committee has not filed an objection to the Motion. Entry of the form of Final Order filed with the Court [D.I. 686] reflects, among other things, comments from the Committee, to

which the DIP Lender has consented. Upon information and belief, the Committee supports entry of the form of Final Order filed with the Court.

18. <u>SEC Objection and Reservation of Rights</u>. On January 2, 2018, the SEC filed an *Omnibus Objection to Certain Matters Moving Forward at January 10, 2018 Hearing Pending Outcome of Chapter 11 Trustee Motions* [D.I. 167]. At the Third Interim Hearing, counsel for the SEC stated that it was not pressing its objection at that time and reserved its rights for the Final Hearing. Third Interim Hearing Tr. at 10:13-17.

19. <u>Cloonan Objection</u>. On February 9, 2018, an objection filed by Ruth Cloonan (the "<u>Cloonan Objection</u>") was docketed.[4] Ms. Cloonan claims to be a Noteholder, objects to the priming nature of the DIP Facility, and requests that the Debtors' assets be liquidated.

20. <u>Hehn Group Objection and Reservation of Rights</u>. On January 4, 2018, a group of Noteholders represented by the Law Offices of Curtis A. Hehn (the "<u>Hehn Group</u>") filed a limited objection (the "<u>Hehn Group Objection</u>"). [D.I. 217]. According to the Hehn Group Objection, the Hehn Group Noteholders are collectively owed approximately $3.6 million. At the Third Interim Hearing, counsel for the Hehn Group stated that it was not pressing its objection at that time and reserved its rights for the Final Hearing. Third Interim Hearing Tr. at 10:25-11:9. The Debtors believe that pursuant to discussions with the Hehn Group prior to the Fourth Interim Hearing, the Hehn Group Objection is fully resolved.

21. <u>Richardson Objection</u>. On January 3, 2018, the Richardson Company, a Tennessee family partnership, filed a response and limited objection to the Motion (the "<u>Richardson Objection</u>"). [D.I. 195]. Prior to the Third Interim Hearing, the Debtors provided counsel for the Richardson Company with information in an effort to resolve the Richardson

---

[4] The Cloonan Objection was marked as received as of February 5, 2018.

01:22950783.2

Objection. At the Fourth Interim Hearing, counsel for the Richardson Company stated that it was not pressing its objection at that time and reserved its rights for the Final Hearing. Fourth Interim Hearing Tr. at 49:4-50:5.

22.   Carli Objection. On January 2, 2018, Richard Carli, a pro se Noteholder, filed a letter (the "Carli Objection") in connection with the initial notice of the Final DIP Hearing that had been set for January 10, 2018. [D.I. 162]. Mr. Carli had previously submitted two letters to the Debtors prior to the Second Interim Hearing, and further objected telephonically at that hearing. The Debtors addressed these prior letters and the telephonic objection at the Second Interim Hearing, and the court overruled these objections. See Second Interim Hearing Tr., 117:3-25, 129:20-130:25. In response to letter objections received, including those of Mr. Carli, the Court directed that "if there's anyone who wants the Court to take an action, a motion must be filed with the Clerk's office, according to the proper procedures and rules." Id. at 5:15-18.

23.   Sigler Objection. On January 5, 2018, a letter dated as of January 3, 2018 from Hugh Sigler (the "Sigler Objection") was docketed. [D.I. 218]. Mr. Sigler states that he is an investor, though it is unclear whether he claims to be a Noteholder or a Unitholder, and appears to object to the entry of the Second Interim Order and the timing of the hearings and objection deadlines for the Debtors' seeking approval of the DIP Financing.

24.   Barkley Objection. On December 27, 2017, a letter objection dated as of December 23, 2017 from Jeffrey D. Barkley (the "Barkley Objection") [D.I. 146] was docketed. Mr. Barkley does not identify his interest but appears to be a Noteholder. He objects to final approval of the Motion prior to the final resolution of the SEC's investigation.

01:22950783.2

**REPLY**

**A.    The Debtors Are Providing Adequate Protection to Noteholders.**

25.    As further described in the Motion, the Debtors believe that, while the noteholders were granted security interests in the Third-Party Collateral, their security interests were not properly perfected because no noteholder took possession of their respective Third-Party Collateral or filed financing statements with respect thereto. This includes all noteholders whose potential interests, if any, in the DIP Collateral were primed by the DIP Liens (such noteholders, the "Primed Noteholders").[5] Nonetheless, the Debtors recognized that in the event that any noteholder's purported lien is found to be valid, perfected, unavoidable, and enforceable, those noteholders would be entitled to adequate protection as set forth in the Interim Orders. Thus, under the Interim Orders, the Debtors made provision for the Noteholders' interests by granting the Primed Noteholders conditional adequate protection to the extent set forth therein in the form of (i) continuing, primed liens in and on the DIP Collateral, (ii) additional replacement adequate protection liens on the Adequate Protection Properties, and (iii) allowed super-priority administrative expense claims under section 507(b) of the Bankruptcy Code.

26.    In addition, the Debtors sought to provisionally adequately protect *all* noteholders to the extent that they were oversecured (and thus entitled to postpetition interest in respect of their notes) by holding in reserve all postpetition interest accruing on the obligations owing to the noteholders. Interim Orders ¶¶ 3.1.2 – 3.1.2.4. This provision of the Interim Orders provoked significant concern among the various stakeholder groups, which has been expressed to the Court

---

[5] The Interim Orders and Final Order use the defined term "Noteholders" to refer to those certain investors "and their successors and assigns that may assert or have a lien or interest, whether directly or indirectly, in the [DIP] Collateral." Interim Order and Final Order, ¶ 7. The Motion uses the defined term "Noteholders" to refer generally to all of the Debtors' noteholders. For clarity, the Reply uses the term "Primed Noteholders" to refer to the Noteholders as defined in the Interim Orders and Final Order.

either in pleadings or in argument in respect of the DIP Financing. Accordingly, the Debtors have determined to provide the following adequate protection for the benefit of the Primed Noteholders and all noteholders, respectively.

    **(i)  Primed Noteholders.**

27.  At the Second Interim Hearing, the Debtors proved that the conditional adequate protection liens in favor of the Primed Noteholders were secured by approximately $80,154,000 of equity in twelve adequate protection properties. Specifically, Frederick Chin, then in his capacity as independent expert witness for the Debtors (he is now their proposed CEO), testified that the twelve adequate protection properties had an aggregate value of $242,650,000, and the Debtors' former Chief Restructuring Officer, Lawrence Perkins, testified that based on this valuation, and taking account of the mortgage debt associated with these adequate protection properties, the properties had aggregate equity of $80,154,000.

28.  Under the Final Order, the Primed Noteholders are granted additional conditional adequate protection in the form of additional properties to which their adequate protection liens attach. Specifically, through the Final Order, the Debtors have added five additional adequate protection properties: 8124 West Third Street and 11541 Blucher Avenue in Los Angeles, California, 1118 Tower Road in Beverly Hills California, and 1061 Two Creeks Drive and 180 Saddleback Lane in Snowmass Village, Colorado (collectively, the "Additional Adequate Protection Properties, and, together with the Existing Adequate Protection Properties, the "Adequate Protection Properties") to the Existing Adequate Protection Properties. As set forth in the Declaration of Frederick Chin filed simultaneously herewith (the "Chin Declaration"), the Additional Adequate Protection Properties have an aggregate value of $56,450,000 and

aggregate mortgage debt of $35,540,154, resulting in aggregate equity of $20,909,846. The valuation in the Chin Declaration is based on appraisals conducted by Province Inc.[6]

29. Further, based on recent independent appraisals, the post-petition development of two of the Existing Adequate Protection Properties—9040 Alto Cedro Drive and 10750 Chalon Road—will result in in an increase in value of these properties by approximately $4,800,000. Another Existing Adequate Protection Property, 25085 Ashley Ridge Road, has appreciated in value by $1,000,000 more than Mr. Chin's prior, conservative appraisal. In combination, this is an additional $5,800,000 of value.

30. While the foregoing adequate protection provided through the liens on the Adequate Protection Properties aggregates to greater than the $100,000,000 maximum amount of loans available under the DIP Facility, based on recent independent appraisals, the post-petition development of (i) three DIP Collateral properties—1357 Laurel Way, 24055 Hidden Ridge, and 25211 Jim Bridger Road—and (ii) three of the Adequate Protection Properties—1966 Carla Ridge, 10733 Stradella Court, and 1471 Forest Knoll—will result in an increase in the value of those properties by substantial additional amounts, providing a cushion of adequate protection in addition to the general increase in value of Adequate Protection Properties and Core Assets from their continued development.

31. Based on the foregoing, the Debtors submit that they have demonstrated adequate protection of the interests of the Primed Noteholders whose liens are primed by the DIP Facility.

---

[6] The Debtors are seeking to sell certain of their properties, including certain of the Adequate Protection Properties, in the near-term. The procedure in Section 3.1.2.4 of the Final Order, described in subsection (ii), *infra*, is intended to provide adequate protection for noteholders in connection with such sales.

01:22950783.2

**(ii)    All Noteholders.**

32.     In light of the concerns raised by the Debtors' stakeholders regarding the noteholder interest reserve established under the Interim Orders, following extensive negotiations with the Committee, Noteholder Group, and Unitholder Group, the Debtors, in the proposed Final Order, have modified the adequate protection provision regarding the reserve account provided under the Interim Orders. Under Section 3.1.2.4 of the proposed Final Order, the Debtors may use the proceeds held in the reserve account pursuant to Sections 3.1.2.4 of the Interim Orders. With respect to sales of the Debtors' properties, the following treatment will be provided. For properties that constitute DIP Collateral, 100% of net proceeds shall be remitted to the DIP Lender, consistent with the terms of the Loan Documents. For properties that constitute Adequate Protection Properties, (a) ten percent of net proceeds shall be placed into a reserve for the benefit of the Noteholders, if any, holding Adequate Protection Liens against the sold property; (b) ten percent of net sale proceeds shall be placed into a reserve for the benefit of the noteholders, if any, holding liens (for the avoidance of doubt, other than Adequate Protection Liens) against the sold property; and (c) the balance shall be remitted to the Debtors' estates to be used for any purpose subject to, as applicable, the Loan Documents. For all other properties, (a) ten percent of net proceeds shall be placed into a reserve for the benefit of the Noteholders, if any, holding liens against the sold property, and (b) the balance shall be remitted to the Debtors' estates to be used for any purpose subject to, as applicable, the Loan Documents. Any funds previously reserved by the Debtors on account of the obligations to the noteholders shall be immediately released and distributed or reserved in accordance with the above formula, and going forward the Debtors shall not reserve any further funds in respect of noteholder interest payments. Any noteholder may object to the sale of any property on any grounds, including

without limitation that the proposed distributions under the Final Order do not adequately protect their liens. *See* Final Order, § 3.1.2.4.[7]

33. This heavily-negotiated new provision benefits both the Debtors and the noteholders. It frees as much as tens millions of dollars that the Debtors would otherwise be required to reserve so that those funds may be used in connection with the Debtors' business. This provision also offers noteholders the potential for significant interim advance payments from certain reserved amounts that will be credited against any distribution that noteholder would receive in a chapter 11 plan. Finally, noteholders are not prejudiced as this provision also reserves the noteholders' right to object to the sale of any Sale Property on any grounds, including, without limitation, that the proposed distribution set forth in this provision does not adequately protect their liens.

   **B. The Court Should Overrule the Objectors' Objections.**

34. <u>Sarachek Group Objection</u>. Each member of the Sarachek Group claims to hold a perfected security interest in properties that constitute DIP Collateral. Several members of the Sarachek Group have filed proofs of claim asserting secured positions. The Sarachek Group Objection asserts that the Noteholders hold valid, perfected security interests in the DIP Collateral properties based on, *inter alia*, *In re First T.D. & Inv., Inc.*, 253 F.3d 520 (9th Cir. 2001). Moreover, as this Court recognized at the Fourth Interim Hearing, "[A] party who claims to be secured carries the burden of proving that they're secured and the filing of a proof of claim is not sufficient . . . for this or adequate protection purposes for the Court to have a basis upon which to find that they're secured." Fourth Interim Hr'g Tr. at 40:16-21. In any event, the issue of whether the Noteholders hold valid, enforceable, perfected security interests in the DIP

---

[7]  This language reflects the language in the form of Final Order filed on March 1, 2018 [D.I. 686]. The language is subject to ongoing discussions.

01:22950783.2

Collateral is not before the Court at this time because the Debtors are providing sufficient adequate protection to protect any such interests from any diminution in the value of their collateral.[8] The Sarachek Group Objection states that the Debtors are required to provide adequate protection for the Sarachek Group but fails to address or acknowledge the adequate protection provided for the Noteholders through the Interim Orders. Accordingly, the Debtors submit that the Sarachek Objection should be overruled.

35. <u>Cloonan Objection</u>. While the Cloonan Objection does not identify the property in which Ms. Cloonan has a purported interest, a review of the Debtors' books and records indicates that Ms. Cloonan has a note associated with a property located on Spruce Ridge Lane in Snowmass Village, Colorado. This property is not a DIP Collateral property, and thus any interest of Ms. Cloonan in such property is not being primed. Accordingly, the Debtors submit that the Cloonan Objection should be overruled.

36. <u>Limited Objection of Hehn Group</u>. Based on discussions with counsel for the Hehn Group and counsel's representations, the Debtors believe that the Hehn Group Objection has been resolved.

37. <u>Limited Objection of the Richardson Company</u>. The Richardson Company, a family partnership, claims to have invested $300,000 through Woodbridge Mortgage Investment Fund IV in a Note associated with a property on Huron Street in Brooklyn, New York, on or

---

[8] The Debtors note that the Sarachek Group has not taken further steps to meet its burden of establishing its purported perfected status. Moreover, the Sarachek Group Objection's arguments for perfection are meritless. As explained in the Motion, the noteholders do not hold perfected security interests as they are not in possession of any of the Third-Party Collateral and have not filed UCC-1 financing statements. The Sarachek Group Objection's reliance on section 10233.2 of the California Business and Professional Code ("<u>CBPC</u>") and *In re First T.D.*, 253 F.3d at 520, is misplaced because, *inter alia*, Delaware law, not California law, controls the issue of perfection. *See* 6 Del. Code Ann. § 9-301(1) and Cal. Com. Code § 9301(1) (local law of the jurisdiction in which a debtor is located governs perfection); 6 Del. Code Ann. § 9-307(e) & 9-102(a)(71) and Cal. Com. Code §§ 9-307(e) & 9-102(a)(71) (for purposes of the Uniform Commercial Code, limited liability companies are "located" in the jurisdiction of incorporation). Thus, the CBPC sections cited by the Sarachek Group and the *In re First TD* case are not applicable.

15

about November 6, 2017. The Richardson Objection claims that the disclosures provided to the Richardson Company in connection with this investment were inadequate, and that it reserves its rights with respect to such investment, including with respect to claiming that the investment is subject to a constructive trust; it further objects to any effort by the Debtors to obtain a lien against property that the Debtors may be holding in trust or constructive trust for the Richardson Company. However, the Court need not reach any of these issues as the Richardson Company does not assert that a lien or other claim against any of the DIP Collateral, and thus any purported lien or other claim it may have in any of the Debtors' property is not being primed. Accordingly, the Debtors submit that the Richardson Objection should be overruled.

38.    Response of Richard Carli. The Carli Response requests that the DIP Order include a section describing the Debtors' plan and intended timeframe for the repayment of Noteholders, and requests that the DIP Lender or another provider of debtor in possession financing take a ratable lien with all Noteholders in the property rather than pursuing the arrangement under the DIP Financing. The Debtors submit that the first request is premature and will be addressed in due course, following further discussions with the key constituencies in these cases. With respect to the second request, the Debtors attempted to obtain financing on more favorable terms, including on a non-priming basis, but were unable to do so. Accordingly, the Debtors submit that the Carli Response should be overruled.

39.    Response of Hugh Sigler. The Sigler Response appears to object to the timeline for consideration of approval of the DIP Financing, and further asks the Court to protect the Debtors' retiree investors. The Debtors submit that the existing timeline for approval of the DIP Financing and applicable notice requirements are appropriate, and that the Debtors are striving to protect the interest of all their stakeholders, including all of their pre-petition investors, through

the bankruptcy process. Accordingly, the Debtors submit that to the extent the Sigler Response is construed as an objection to the DIP Financing, it should be overruled.

40. <u>Barkley Objection</u>. Citing the actions of Robert Shapiro and other company officers indicating an unwillingness to cooperate with the SEC investigation, the Barkley Objection requests that the Court defer approval of the Motion on a final basis until after the SEC's investigation is completed. First, the Debtors believe that this concern is moot based on developments postdating the Barkley Objection, including the comprehensive settlement between the Debtors, the SEC, the Committee, the Noteholder Group, and the Unitholder Group. Second, the SEC has obtained an asset freeze with respect to Robert Shapiro and related non-Debtor entities, and is continuing to prosecute the related enforcement action. Third, the Debtors have an immediate need to borrow the full amount under the DIP Facility. This borrowing will not prejudice noteholders as they are being provided adequate protection, as discussed in detail above. Accordingly, the Barkley Objection should be overruled.

## **CONCLUSION**

41. For the foregoing reasons, the Debtors respectfully request that the Court overrule the Objectors' objections and enter the Final Order approving the relief requested in the Motion on a final basis.

*[Remainder of page intentionally left blank]*

| | |
|---|---|
| Dated: March 5, 2018<br>Wilmington, Delaware | */s/ Ian J. Bambrick*<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Sean M. Beach (No. 4070)<br>Edmon L. Morton (No. 3856)<br>Ian J. Bambrick (No. 5455)<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Tel:   (302) 571-6600<br>Fax:  (302) 571-1253<br><br>-and-<br><br>GIBSON, DUNN & CRUTCHER LLP<br>Samuel A. Newman (CA No. 217042)<br>Oscar Garza (CA No. 149790)<br>Daniel B. Denny (CA No. 238175)<br>333 South Grand Avenue<br>Los Angeles, California 90071<br>Tel:   (213) 229-7000<br>Fax:  (213) 229-7520<br><br>-and-<br><br>J. Eric Wise (NY No. 3000957)<br>Matthew K. Kelsey (NY No. 4250296)<br>Matthew P. Porcelli (NY No. 5218979)<br>200 Park Avenue<br>New York, New York 10166<br>Tel:   (212) 351-4000<br>Fax:  (212) 351-4035<br><br>*Counsel for the Debtors and Debtors in Possession*<br><br>-and-<br><br>KLEE, TUCHIN, BOGDANOFF & STERN LLP<br>Kenneth N. Klee (admitted *pro hac vice*)<br>Michael L. Tuchin (admitted *pro hac vice*)<br>David A. Fidler (admitted *pro hac vice*)<br>Jonathan M. Weiss (admitted *pro hac vice*)<br>1999 Avenue of the Stars, 39th Floor<br>Los Angeles, California 90067<br>Tel:   (310) 407-4000<br>Fax:  (310) 407-9090<br><br>*Proposed Counsel for the Debtors and Debtors in Possession* |

01:22950783.2