## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12560 (KJC)<br><br>(Jointly Administered)<br><br>**Hearing Date:**<br>    **March 28, 2018 at 9:00 a.m. (ET)**<br>**Objection Deadline:**<br>    **March 21, 2018 at 4:00 p.m. (ET)** |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE SALE OF 11541 BLUCHER AVENUE, GRANADA HILLS, CALIFORNIA PROPERTY OWNED BY THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) APPROVING THE RELATED PURCHASE AGREEMENT; AND (III) GRANTING RELATED RELIEF

Woodbridge Group of Companies, LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") hereby move the court (this "Motion") for entry of an order (the "Sale Order"), substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (i) authorizing the sale (the "Sale") of certain real property owned by the Debtor Pennhurst Investments, LLC (the "Seller") located at 11541 Blucher Avenue, Granada Hills, California (the "Land"), together with Seller's right, title, and

---

[1]	The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at www.gardencitygroup.com/cases/WGC, or by contacting the undersigned counsel for the Debtors.

interest in and to the buildings located thereon and any other improvements and fixtures located thereon (collectively, the "Improvements" and together with the Land, the "Real Property"), and any and all of the Seller's right, title, and interest in and to the tangible personal property and equipment remaining on the Real Property as of the date of the Closing (collectively, the "Personal Property" and, together with the Real Property, the "Property") on an "as is, where is" basis, free and clear of any and all liens, claims, encumbrances, and other interests to Nidal A. Barakat Family Trust (together with its assignee, if any, the "Purchaser") pursuant to the terms and conditions of that certain Purchase Agreement dated as of February 20, 2018 (as may be amended, supplemented, or otherwise modified from time to time, the "Purchase Agreement") by and between the Seller and the Purchaser, a copy of which is attached as Exhibit 1 to the Sale Order; (ii) authorizing and approving the terms of the Purchase Agreement, and (iii) granting certain related relief.  In support of the Motion, the Debtors respectfully represent as follows:

## **JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested herein are 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rule 6004, and Local Rules 2002-1, 4001-2, and 6004-1.

## CASE BACKGROUND

2.      On December 4, 2017 (the "Dec. 4 Petition Date"), certain of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code, and on February 9, 2018, an additional fourteen affiliated Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code (the "Feb. 9 Petition Date" and together with the Dec. 4 Petition Date, the "Petition Dates").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

3.      The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  As of the date hereof, no trustee has been appointed in the Chapter 11 Cases.  An official committee of unsecured creditors (the "Committee") was appointed in the Chapter 11 Cases on December 14, 2017 [D.I. 79].  On January 23, 2018, the Court approved a settlement providing for the formation of an ad hoc noteholder group (the "Noteholder Group") and an ad hoc unitholder group (the "Unitholder Group") [D.I. 357].

## THE SALE

4.      The Property.  As further detailed in the *Declaration of Bradley D. Sharp in Support of Debtor's Motion to Sell 11541 Blucher Avenue, Granada Hills, California Property* filed on the date hereof (the "Sharp Declaration"), the Property consists of approximately 99,792 square feet of land on which 52 residential dwelling units and a separate building containing a gym and leasing office were constructed in or about 2010.  The Seller purchased the Property with these Improvements in April of 2017.  Sharp Decl., ¶ 3.  The Debtors have determined that selling the Property now on an "as is" basis best maximizes the value of the Property.  *Id.*, ¶ 4.  The Property has been marketed for over seven (7) months, and of the three offers that the Seller received for the Property, the Purchaser's full price, all cash offer under the Purchase Agreement

was the highest and otherwise best. *Id.* Accordingly, the Debtors determined that selling the Property on an "as is" basis to the Purchaser is the best way to maximize value of the Property. *Id.*

5.    The Debtors' Property Sales. The Debtors own over one hundred desirable high-end properties, primarily in California and Colorado.[2] Both before and after the Petition Dates, the Debtors have pursued potential sales of the Property in the ordinary course of their operations. Over the six months prior to the Petition Dates, the Debtors closed nine sales generating total revenues of approximately $47 million, with an average sale price of approximately $5.2 million. In addition, the Debtors recently obtained Court approval for the sale of another property, located at 8692 Franklin Avenue. *See* Docket No. 574.

6.    The Purchase Agreement. On February 6, 2018, the Purchaser signed the Purchase Agreement with a full price, all cash offer of $21,500,000. On February 17, 2018, the Seller countersigned the Purchase Agreement subject to a counteroffer with respect to certain non-price terms of the Sale, which Purchaser accepted on February 20, 2018. The Debtors believe that this purchase price provides significant value and, accordingly, countersigned the final Purchase Agreement on February 21, 2018. Under the Purchase Agreement, the Purchaser agreed to purchase the Property for $21,500,000, with a $600,000 initial cash deposit and the balance of $20,900,000 to be paid in cash as a single down payment, with no financing contingencies. *Id.*, ¶ 5. The deposit is being held by A & A Escrow Services, Inc. as escrow agent.

7.    Broker's Fees. In connection with marketing the Property, the Debtors worked with Marcus & Millichap Real Estate Investment Services, Inc. ("Marcus & Millichap"), a non-

---

[2]    Approximately (a) 63% of the Debtors' properties are located in Colorado, (b) 36% in California, and (c) 1% in New York.

affiliated third-party brokerage company.  A true and correct copy of the Representation

Agreement with Marcus & Millichap (the "Broker Agreement") is attached hereto as Exhibit B.

The Broker Agreement, as amended, provides Marcus & Millichap with the exclusive and

irrevocable right to market the Property until April 16, 2018 for a fee in the amount of 2.5% of

the contractual sale price (the "Broker Fee").  Marcus & Millichap represents both the Seller and

the Purchaser in the Sale and obtained the signed written consent of both parties after appropriate

written disclosures.  A true and correct copy of that signed consent is enclosed with the Purchase

Agreement.  No broker fees are payable in connection with the Sale other than Marcus &

Millichap's Broker Fee.

8.      In the Debtors' business judgment, closing the Sale with Purchaser (and paying

the associated Broker Fee) pursuant to the full price, all cash offer set forth in the Purchase

Agreement is the best way to maximize value for the Debtors' estates and is more favorable than

either continuing to hold and market the Property for sale (and risking obtaining a lower

purchase price for the Property on less favorable terms) or attempting to improve the Property,

which the Debtors have determined, in their business judgment, would likely not be profitable.

9.      Other Closing Costs.  In addition to the Broker Fee, the Seller must also satisfy

certain required costs associated with the sale and transfer of title of the Property to comply with

the Purchase Agreement (the "Other Closing Costs").  The Other Closing Costs include, but are

not limited to, recording fees, title insurance policy costs, prorated property taxes, city and

county transfer taxes, and other items noted on the title report for the Property.  The Debtors also

rely on outside vendors for escrow and title services in connection with property sales.  In

general, vendors are mutually agreed on by the applicable Debtors and a purchaser prior to the

acceptance of an offer.

10.     Absent authority to pay Other Closing Costs, the Seller will be unable to close the Sale and receive sale proceeds.  If the Seller is unable to make these payments, the Purchaser may be entitled to rescind the Purchase Agreement or assert other remedies that could lead to additional and unnecessary claims.  Accordingly, the Debtors seek the ability to pay Other Closing Costs in connection with the Sale.

11.     <u>Proceeds of the Sale</u>.  All net proceeds of the Sale shall be paid to the Debtors into the general account of Debtor Woodbridge Group of Companies, LLC and shall be disbursed and otherwise treated by the Debtors in accordance with the *Final Order on Debtors' Motion for Entry of Interim and Final Orders (I) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, and 552 Authorizing Debtors to (A) Obtain Postpetition Secured Financing, (B) Use Cash Collateral, (C) Grant Adequate Protection to Prepetition Secured Parties; (II) Modifying the Automatic Stay; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(B) and 4001(C); and (IV) Granting Related Relief* (the "<u>Final DIP Order</u>").

12.     <u>The Fund Liens</u>.  The Property is subject to certain liens for the benefit of Woodbridge Mortgage Investment Fund 4, LLC (the "<u>Fund</u>", and such liens, the "<u>Fund Liens</u>"), which secure indebtedness of the Seller to the Fund in connection with the purchase and improvement of the Property.  The Fund has consented to the sale of the Property free and clear of the Fund Liens.

## **<u>RELIEF REQUESTED</u>**

13.     Pursuant to sections 105(a) and 363 of the Bankruptcy Code, the Debtors request entry of the Sale Order substantially in the of <u>Exhibit A</u> hereto (i) authorizing the closing of the Sale pursuant to the Purchase Agreement, (ii) authorizing and approving the Purchase Agreement, and (iii) granting related relief.

14.     The Debtors further request that filing of a copy of an order granting the relief sought herein in Los Angeles County may be relied upon by the Title Insurer to issue title insurance policies on the Property.

15.     The Debtors further request authority to pay the Broker Fee in an amount not to exceed an aggregate amount of 2.5% of gross sale proceeds.

## BASIS FOR RELIEF REQUESTED

**I.      Section 363 of the Bankruptcy Code Authorizes the Proposed Sale**

16.     Section 363(c)(1) of the Bankruptcy Code provides that where, as here, the Debtors are authorized to operate their business under section 1108 of the Bankruptcy Code, the Debtors may enter into transactions, including the sale of property of the estate, in the ordinary course of business, without notice or a hearing.  11 U.S.C. § 363(c)(1).  Because the Debtors believe that the Sale is within the ordinary course of their operations, the Sale should be approved pursuant to section 363(c)(1).[3]

17.     The Debtors do not believe that section 363(b)(1), which authorizes the sale of property of the estate other than in the ordinary course of business, applies to the Sale.  Even if section 363(b)(1) did apply, however, authorization of the Sale would be appropriate because the Debtors have a sound business justification for the Sale.  *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under section 363(b) when there is a legitimate business justification); *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983) ("Section 363(b) of the Code seems on its face to confer upon the bankruptcy judge virtually

---

[3]      As discussed above, the Debtors are seeking a court order approving the Sale notwithstanding their belief that the Sale is within the ordinary course of their business because the Title Insurer has informed the Debtors that it cannot proceed with closing without an authorizing court order.

unfettered discretion to authorize the use, sale or lease, other than in the ordinary course of business, of property of the estate.").

18.     In determining whether a sale satisfies the business judgment standard, courts in the Third Circuit require: (i) that there be sound business reasons for the sale; (ii) that accurate and reasonable notice of the sale be given; (iii) that the sale yield an adequate price, *i.e.*, one that is fair and reasonable; and (iv) that the parties to the sale have acted in good faith. *See*, *e.g.*, *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).

19.     The proposed Sale unquestionably satisfies the foregoing test. <u>First</u>, the Sale is supported by sound business reasons: following extensive marketing efforts, the Debtors have concluded that selling the Property on an "as is" basis pursuant to a full price, all cash offer is the best way to maximizing value for the Debtors' estates. Sharp Decl., ¶ 4. <u>Second</u>, the Debtors have provided reasonable and adequate notice of the sale to interested parties by serving notice of this Motion in accordance with Local Rule 9013-1(m) and the Noticing Order, and submit that no other or further notice is necessary. <u>Third</u>, the Debtors believe that the Purchase Agreement and all cash purchase price reflected therein represent a fair and reasonable offer for the Property, which the Seller is selling for a price exceeding its purchase price by $1,975,000 (*i.e.*, more than 10% appreciation in the value of the Property in less than one year), and which the Debtors have determined is a reasonable sale price relative to comparable properties in the market in which the Property is located. Sharp Decl., ¶ 4. The Purchase Agreement reflects a full price, all cash offer, and the Debtors were unable to obtain a better purchase price on better terms after marketing the Property for approximately seven (7) months. *Id.* <u>Fourth</u>, the Debtors

submit that the Purchase Agreement was the product of good faith, arm's-length negotiations between the Purchaser and the Seller.  Sharp Decl., ¶ 6.

20.    The Purchaser is not related to or an affiliate of the Debtors or any of their insiders or former insiders.  *Id.*  No non-debtor affiliate or current or former officer, director, employee, managing member or affiliate of any of the Debtors (other than Seller) is a party to, or broker in connection with, the Sale.  Accordingly, the Debtors believe that the Purchaser should be entitled to the protections of section 363(m) of the Bankruptcy Code.

## II.    **The Debtors Should Be Permitted to Sell the Property Free and Clear**

21.    Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property free and clear of liens, claims, encumbrances, and other interests if any one of the following conditions is satisfied:

(1)    applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

(2)    the [lienholder or claimholder] consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    [the lienholder or claimholder] could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

22.    Because section 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the proposed Sale of the Property.[4]  *See*

---

[4]    Moreover, if a holder of a lien, claim, encumbrance, or other interest receives the requisite notice of this Motion and does not object within the prescribed time period, such holder will be deemed to have consented to the proposed Sale, and the Property may then be sold free and clear of such holder's liens, claims, encumbrances, and other interests pursuant to the terms proposed herein. *See, e.g., Veltman v. Whetzel*, 93 F.3d 517, 521 (8th Cir. 1996) (failure to object to notice of sale or attend hearing deemed consent to sale for purposes of section 363 of the

*Folger Adam Sec., Inc. v. De Matteis/MacGregor, J.V.*, 209 F.3d 252, 257 (3d Cir. 2000) (section 363(f) authorizes the sale of a debtor's assets free and clear of all liens, claims, and interests if "any one of [the] five prescribed conditions" is satisfied); *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) (property may be sold "free and clear" if at least one of the subsections of section 363(f) is met); *In re DVI, Inc.*, 306 B.R. 496, 504 (Bankr. D. Del. 2004) (upholding sale of debtors' property free and clear where there was a bona fide dispute).

23.    The Debtors will satisfy section 363(f)(2) with respect to the Fund Liens.  The Fund has consented to the Sale free and clear of all liens, because the Sale provides the most effective, efficient, and timely approach to maximizing value with respect to the Property.

24.    As further detailed in the DIP Motion, the noteholders of certain of the Debtors (the "Noteholders") may hold security interests in the underlying loan documents for mortgage loans extended from such Debtors to the Debtor entities that individually own the Debtors' properties.  However, the Debtors contend that no Noteholder has perfected any such security interest.  Accordingly, to the extent any Noteholder contends that it holds a valid lien on the Property, such lien is subject to bona fide dispute, and the Debtors may sell the Property free and clear of such purported lien under § 363(f)(4).

## III.    The Debtors Should Be Permitted to Pay the Broker Fee

25.    Section 105(a) of the Bankruptcy Code empowers a court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code."  The purpose of section 105(a) of the Bankruptcy Code is to ensure a bankruptcy court's "power to take whatever action is appropriate or necessary in aid of the

---

Bankruptcy Code); *In re Enron Corp.*, No. 01-16034 (AJG), 2004 WL 5361245, at *2 (Bankr. S.D.N.Y. Feb. 5, 2004) (same); *Hargrave v. Pemberton (In re Tabore, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (same); *In re Christ Hosp.*, 502 B.R. 158, 174 (Bankr. D.N.J. 2013), *aff'd*, No. CIV.A. 14-472 ES, 2014 WL 4613316 (D.N.J. Sept. 12, 2014) ("Given adequate notice, failure to object to a § 363 sale has been found to constitute consent per § 363(f)(2) to a 'free and clear' sale of the non-objector's interests in property being sold.") (citations omitted).

exercise of [its] jurisdiction."  Collier on Bankruptcy ¶ 2-105.01 (16th rev. ed. 2017); *see also*

*Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327, 336 (2d Cir. 1999) (same).  Further,

under the "necessity of payment rule" or the "doctrine of necessity,"[5] courts often allow the

immediate payment of prepetition claims.  *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824,

826 (Bankr. D. Del. 1999) (allowing payment of pre-petition vendor claims because such claims

were "essential to the survival of the debtor during the chapter 11 reorganization"); *In re*

*Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (applying the necessity of

payment doctrine in evaluating payment of prepetition obligations).  Indeed, courts in this

District and elsewhere have invoked the equitable powers available under section 105(a) and the

doctrine of necessity to authorize the postpetition payment of prepetition claims where payment

is necessary to preserve the going concern value of a debtor's business.

26.    The Debtors submit that payment of the Broker Fee is essential to ensure that the

Debtors are able to close the Sale of the Property, and thus is essential to the Debtors' efforts to

maximize value with respect to the Property.  Without the ability to close the Sale in short order,

the Debtors would likely lose the Purchaser and would be forced to begin a search for a

replacement purchaser (who may not be willing to make as favorable of an offer on the

Property).

## **REQUEST FOR WAIVER OF STAY**

27.    Any delay in permitting the Debtors to close the Sale could jeopardize the Sale

with the Purchaser and therefore would be detrimental to the Debtors, their creditors, and their

estates.  Accordingly, and to successfully implement the foregoing, the Debtors seek a waiver of

---

[5]    This doctrine, first articulated by the United States Supreme Court in *Miltenberger v. Logansport, C&S W. R. Co.*, 106 U.S. 286, 311-12 (1882), recognizes the existence of judicial power to authorize a debtor to pay pre-petition claims in certain situations.

the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of any order

authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## NOTICE

28.    The Debtors have provided notice of this Motion to: (i) the Office of the United

States Trustee for the District of Delaware; (ii) counsel to the DIP Lender; (iii) counsel for the

Committee; (iii) counsel for the Noteholder Group, (iv) counsel for the Unitholder Group, (v) all

Noteholders known by the Debtors to have interests in any loan documents associated with the

Property; (vi) all contractors and contract counterparties known by the Debtors to have been

associated with the Property; (vii) the Title Insurer, (viii) Marcus & Millichap, and (ix) all parties

that have requested notice in these Chapter 11 Cases pursuant to Local Rule 2002-1. In light of

the nature of the relief requested herein, the Debtors submit that no other or further notice is

necessary.

*[Remainder of page intentionally left blank]*

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order

substantially in the form filed herewith, granting the relief requested herein and such other and

further relief as may be just and proper under the circumstances.

Dated:   March 7, 2018           */s/ Betsy L. Feldman*
         Wilmington, Delaware    YOUNG CONAWAY STARGATT & TAYLOR, LLP
                                 Sean M. Beach (No. 4070)
                                 Edmon L. Morton (No. 3856)
                                 Ian J. Bambrick (No. 5455)
                                 Betsy L. Feldman (No. 6410)
                                 Rodney Square, 1000 North King Street
                                 Wilmington, Delaware 19801
                                 Tel:    (302) 571-6600
                                 Fax:    (302) 571-1253

                                 -and-

                                 KLEE, TUCHIN, BOGDANOFF & STERN LLP
                                 Kenneth N. Klee (*pro hac vice*)
                                 Michael L. Tuchin (*pro hac vice*)
                                 David A. Fidler (*pro hac vice*)
                                 Jonathan M. Weiss (*pro hac vice*)
                                 1999 Avenue of the Stars, 39th Floor
                                 Los Angeles, California 90067

                                 *Counsel and Proposed Counsel to the Debtors and*
                                 *Debtors in Possession*