## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1] | Case No. 17-12560 (KJC) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket Nos. 22, 56, 59, 130, 363, & 572 |

**FINAL ORDER ON DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, AND 552 AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION SECURED FINANCING, (B) USE CASH COLLATERAL, (C) GRANT ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; (II) MODIFYING THE AUTOMATIC STAY; (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND 4001(c); AND (IV) GRANTING RELATED RELIEF**

On March 8, 2018, a final hearing (the "Final Hearing") was held before this Court, the Honorable Kevin J. Carey presiding, regarding *Debtors' Motion for Entry of Interim and Final Orders (I) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, and 552 Authorizing Debtors to (A) Obtain Postpetition Secured Financing, (B) Use Cash Collateral, (C) Grant Adequate Protection to Prepetition Secured Parties; (II) Modifying the Automatic Stay; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(B) and 4001(C); and (IV) Granting Related Relief* (the "Motion")[2] filed by Woodbridge Group of Companies, LLC ("Woodbridge") and its

---

[1] The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of Debtors' noticing and claims agent at www.gardencitygroup.com/cases/WGC, or by contacting the undersigned counsel for Debtors.

[2] Defined terms herein are used with the same meaning as defined in the Motion unless otherwise noted.

affiliates, as debtors and debtors in possession (collectively, "Debtors") on behalf of their respective bankruptcy estates (the "Estates") in their respective bankruptcy cases (the "Cases").[3]

Upon the record made by Debtors before and at the Final Hearing, including the Motion and the declarations, pleadings, and papers filed with the Court relating to the Cases, and good and sufficient cause appearing therefor,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACTS AND CONCLUSIONS OF LAW:

A.    Procedural Findings.

1.    Petitions. On December 4, 2017 (the "Petition Date"), Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code")[4] commencing the Cases. Debtors continue to operate their businesses and manage their assets as "debtors in possession" pursuant to sections 1107(a) and 1108.

2.    Jurisdiction, Venue. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    Committee. An official committee of unsecured creditors (the "Committee"), as provided for under section 1102, has been appointed in the Cases as of December 14, 2017, and an Official Committee of Unitholders (the "Unitholder Group") and Official Committee of Noteholders (the "Noteholder Group") have been appointed in the Cases as of January 23, 2018.

---

[3] On December 5, 2017, the Court entered an Order Directing the Joint Administration of Debtors' Chapter 11 Cases [ECF 45].

[4] Statutory references herein are to the Bankruptcy Code unless otherwise noted.

4.    Notice. The notice of the Motion and the Final Hearing has been provided by Debtors to certain parties-in-interest, including: (a) the Office of the United States Trustee for the District of Delaware; (b) the United States Securities and Exchange Commission; (c) the Office of the United States Attorney General for the District of Delaware; (d) the Internal Revenue Service; (e) the Committee, the Noteholder Group, and the Unitholder Group; (f) counsel to Hankey Capital, LLC as agent and lender ("Lender"); (g) Debtors' cash management banks; (h) those creditors holding the thirty (30) largest unsecured claims against Debtors' estates (on a consolidated basis); and (h) all parties who have requested notice in the Cases pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Under the exigent circumstances, such notice constitutes sufficient and appropriate notice thereof.

B.    Findings Supporting the Postpetition Financing.

1.    Postpetition Financing. Debtors have requested from Lender loans, advances, and other financial accommodations on and after the Petition Date (the "Postpetition Financing") upon the findings of fact and conclusions of law made herein and upon the terms and conditions of the Loan and Security Agreement dated as of December 7, 2017, between Lender and certain specified Debtors (the "Obligors") on behalf of their Estates, substantially in the form attached hereto as Exhibit A (the "Loan Agreement," and collectively with this Order and other documents related to and in furtherance of the Loan Agreement and the Postpetition Financing, the "Loan Documents");

2.    Need for Postpetition Financing. Debtors have an immediate need to obtain the funds to be provided by the Postpetition Financing pursuant to the Loan Documents in order to, among other tasks, permit the orderly continuation of the operation of Debtors'

businesses, minimize the disruption of their business operations, and manage and preserve the assets of the Estates;

3.      No Credit Available on Other Terms. Debtors are unable to obtain financing on more favorable terms to the Estates from sources other than as contemplated under the Postpetition Financing pursuant to, and for the purposes set forth in, this Order and the Loan Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. Debtors also are unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code without Debtors granting the Liens (as defined in paragraph 3.1.1 below) and the Superpriority Claims (as defined in paragraph 3.2 below), in each case, on the terms and conditions set forth in this Order and the Loan Documents.

4.      Business Judgment and Good Faith Pursuant to Section 364(e). The terms of the Postpetition Financing pursuant to the Loan Documents are fair, just, and reasonable under the circumstances, are ordinary and appropriate for secured financing to a debtor in possession on behalf of its bankruptcy estate, are supported by reasonably equivalent value and consideration, reflect Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and have been negotiated in good faith and at arms' length by and between Lender and Debtors. Therefore, the Postpetition Financing and credit extended under the terms of the Loan Documents are extended in good faith by Lender as that term is used in section 364(e).

5.      Lender Adequate Protection. The proceeds of the Collateral (defined herein) (the "Cash Collateral") constitute "cash collateral" of Lender within the meaning of section 363(a). Lender is entitled to adequate protection of its interests in the Collateral pursuant

to section 361 in connection with or as a consequence of Debtors' use of the Cash Collateral, the Postpetition Financing, and the imposition of the automatic stay. The adequate protection in favor of Lender as set forth in this Order (the "Lender Adequate Protection") and the use of the Cash Collateral as authorized by this Order are fair and reasonable; provided, however, nothing herein is an acknowledgment or recognition that the Lender Adequate Protection is in fact sufficient, or limits Lender's rights to seek additional or different adequate protection or to contest whether the Lender Adequate Protection constitutes sufficient "adequate protection" within the meaning of section 361.

      6.     Consent to Priming. As of the Petition Date, liens of record and interests exist on the Collateral, which includes 28 parcels of real estate owned by 27 Obligors set forth in Schedule 7.4.1 to the Loan Agreement, in favor of certain Woodbridge affiliates who are also Debtors in the Cases including those Debtors identified on Exhibit B (collectively, the "Funds"). All of the Funds have consented to the priming of their liens and interests in the Collateral by the Postpetition Financing. While the Postpetition Financing will prime liens and interests of the Funds in the Collateral, the Funds have recognized that the provision of the Postpetition Financing in and of itself provides adequate protection to the Funds because only through priming can the Funds gain access to the substantial liquidity necessary to preserve and enhance the value of the properties that serve as collateral for the Funds' primary assets. Debtors need not, therefore, satisfy the more stringent standard for obtaining authority to grant a priming lien with respect to the liens held by and interests of the Funds in the Collateral.

      7.     Priming Lien Adequate Protection. Woodbridge has raised funds for its operations by certain of the Woodbridge affiliates borrowing funds pursuant to promissory notes from investors including without limitation those investors set forth on Exhibit C hereto

01:22621324.18

(collectively, the "Investors"). Certain of the Investors and their successors and assigns may assert or have a lien or interest, whether directly or indirectly, in the Collateral (the "Noteholders"). Debtors are making certain adequate protection pursuant to sections 361 and 364(d) of the Bankruptcy Code available to the Noteholders, including by providing them with "conditional" liens and claims on Debtors' non-Collateral properties described on Exhibit D hereto (the "Adequate Protection Properties") to the extent set forth herein below.

C.    Prior Interim Orders. On December 6, 2017, the Court entered its *Corrected Interim Order on Emergency Motion For: Entry of Interim Order (I) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, and 552 Authorizing Debtors to (A) Obtain Postpetition Secured Financing, (B) Use Cash Collateral, (C) Grant Adequate Protection to Prepetition Secured Parties; (II) Modifying the Automatic Stay; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(B) and 4001(C); and (IV) Granting Related Relief* [ECF 59] (the "First Interim Order"). On December 21, 2017, the Court entered its *Second Interim Order on Emergency Motion For: Entry of Interim Order (i) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, and 552 Authorizing Debtors to (a) Obtain Postpetition Secured Financing, (b) Use Cash Collateral, (c) Grant Adequate Protection to Prepetition Secured Parties; (ii) Modifying the Automatic Stay; (iii) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c); and (iv) Granting Related Relief* [ECF 130] (the "Second Interim Order"). On January 23, 2018, the Court entered its *Third Interim Order on Emergency Motion For: Entry of Interim Order (i) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, and 552 Authorizing Debtors to (a) Obtain Postpetition Secured Financing, (b) Use Cash Collateral, (c) Grant Adequate Protection to Prepetition Secured Parties; (ii) Modifying the Automatic Stay; (iii) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c); and (iv) Granting Related*

*Relief* [ECF 363] (the "<u>Third Interim Order</u>"). On February 13, 2018, the Court entered its *Fourth Interim Order on Emergency Motion For: Entry of Interim Order (i) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, and 552 Authorizing Debtors to (a) Obtain Postpetition Secured Financing, (b) Use Cash Collateral, (c) Grant Adequate Protection to Prepetition Secured Parties; (ii) Modifying the Automatic Stay; (iii) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c); and (iv) Granting Related Relief* [ECF 572] (the "<u>Fourth Interim Order</u>" and together with the First Interim Order, Second Interim Order, Third Interim Order, and Fourth Interim Order, the "<u>Interim Orders</u>").

  D. <u>Good Cause</u>. The Postpetition Financing and relief and rights granted or acknowledged pursuant to this Order are necessary, essential, and appropriate and are in the best interest of and will benefit Debtors, their creditors, and the Estates as their implementation will, among other effects, provide Debtors on behalf of the Estates with the necessary liquidity to minimize disruption to Debtors' businesses and ongoing operations, preserve and maximize the value of the Estates for the benefit of all creditors thereof.

  E. <u>Immediate Entry</u>. Based upon the evidence presented in the declarations filed in the Cases and on the record, sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rule 4001(c)(2).

  NOW, THEREFORE, upon the record made by Debtors before and at the Final Hearing, including the Motion and the pleadings and papers filed with the Court, having made the findings of fact and conclusions of law as set forth herein, and after due consideration and good and sufficient cause appearing therefore;

01:22621324.18

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

Section 1.    Authorization of Postpetition Financing.

1.1    Motion Granted. The Motion is granted pursuant to sections 364, 363, and 362 of the Bankruptcy Code, and Bankruptcy Rule 4001(c)(2), on the terms and conditions of this Order.

1.2    Authorization to Borrow. Obligors are authorized and empowered to borrow under the Postpetition Financing and jointly and severally incur obligations to Lender on or after the Petition Date (the "Obligations") pursuant to, and subject to the additional limitations of, the terms and conditions of the Loan Documents and this Order, in the maximum amount of $100,000,000.

1.3    Loan Documents.

1.3.1    Authorization. Debtors are authorized and empowered to enter into, execute, deliver, perform, and comply with all of the terms, conditions, and covenants of the Loan Documents and make all the representations therein.

1.3.2    Approval. The Loan Documents, and the terms, conditions, covenants, and provisions therein, are approved and constitute sufficient and conclusive evidence of the Postpetition Financing, the Obligations (including the Postpetition Charges (defined herein)), the Liens, and the other rights, interests, claims, and remedies afforded to or for the benefit of Lender pursuant to the Loan Documents.

1.3.3    Amendments. Lender and Obligors may amend, modify, supplement, or waive any term, condition, covenant, or provision of any Loan Document (a "Loan Document Modification"), which Loan Document Modification is deemed to be approved by this Order, as follows: (a) with respect to a Loan Document Modification that is considered non-material or technical in nature by Debtors and Lender in their business judgment ("Non-

Material Loan Document Modification"), by further agreement of Lender and Debtors without advance notice, motion, or further order; provided however, that Debtors shall file a notice of the Non-Material Loan Document Modification promptly after execution thereof, and (b) with respect to a Loan Document Modification that is not a Non-Material Loan Document Modification, or other modifications to and under the DIP Documents for which no objection is made as set forth in the proviso to this paragraph; provided, however, that a copy of any such amendment, waiver, consent, or other modification shall be filed by Debtors with this Court and served by Debtors on the U.S. Trustee and the respective counsel to the Committee, if and when appointed, each of whom shall have five (5) business days from the date of such notice within which to object in writing to any such amendment, waiver, consent, or modification. Any such amendment, waiver, consent, or modification shall only be permitted pursuant to an order of this Court.

      1.4    Obligations. The Loan Documents constitute and evidence the Obligations, which obligations are binding and enforceable against (a) Obligors, and their successors and assigns, trustees, and representatives, (b) the Estates, and any successors or representatives thereof (including without limitation a bankruptcy trustee), and (c) guarantors.

      1.5    Application of Proceeds. Lender may apply all proceeds of the Collateral, including Cash Collateral, and all other payments and consideration delivered or received by Lender in accordance with the Loan Documents to be applied by Lender to pay and satisfy Obligations.

      1.6    Payments. Obligors are authorized and required to make all payments and transfers of interests in property to Lender as provided, permitted, or required under the Loan Documents (including without limitation the transfer and deposit of funds, payments, and

proceeds of the Collateral (as defined in the Loan Agreement) into a lock box or other deposit

account if requested by Lender) or as otherwise required pursuant to the Loan Documents.

Lender is entitled to advance, make payment, and deduct for any fees, costs, expenses, and other

charges as may be recoverable or reimbursable to Lender, or as otherwise provided in the Loan

Documents (the "Postpetition Charges"), including without limitation the immediate payment

and reimbursement to Lender of all present and future reasonable attorneys' fees, professionals'

fees, and other fees, costs, and expenses paid or incurred by Lender, all of which constitute part

of the principal amount of the Obligations. Debtors, the Committee, the Noteholder Group, the

Unitholder Group, and the U.S. Trustee may object to the reasonableness of the fees, costs, and

expenses included in any professional fee invoice submitted by Lender; provided that, any such

objection shall be filed with this Court and served on counsel to Lender no later than ten (10)

days after the objecting party's receipt of the applicable professional fee invoice; and further

provided, in the event of a timely objection to any such invoice, Debtors shall nonetheless pay

the entire invoice minus the amount at issue, subject to the rights of the objecting parties to have

a hearing on final disposition.

      1.7     Use of Postpetition Financing and Collateral.

      1.7.1   No Use for Adverse Lender Challenges. Neither loans, advances,

or other proceeds of the Postpetition Financing nor the Collateral, including Cash Collateral, can

be used by Debtors or any party for any purpose relating to or in furtherance of an Adverse

Lender Challenge (as defined in the Loan Agreement), including without limitation the payment

of fees and costs incurred by professionals retained by Debtors or the Committee.

Section 2.    <u>Authorization and Conditions to Use Cash Collateral</u>.

2.1    <u>Authorization to Use Cash Collateral</u>. Debtors are authorized to use Cash Collateral to satisfy the Obligations as required or provided under the Loan Documents and this Order.

2.2    <u>Procedure for Use of Cash Collateral</u>. All Cash Collateral is to be delivered directly to Lender pursuant to the Loan Documents, or otherwise deposited by Debtors in a segregated debtor in possession account (the "<u>Cash Collateral Account</u>"), from which such Cash Collateral is to be transferred to Lender pursuant to the Loan Documents. The Cash Collateral Account is encumbered by and subject to the Liens in favor of Lender by this Order.

Section 3.    <u>Liens; Superpriority Expense Status; Adequate Protection</u>.

3.1    <u>Liens</u>.

3.1.1    <u>Liens</u>. Subject only to the Carve-Out (defined below), Lender is granted a lien on and security interest in all Collateral (as defined in the Loan Agreement) (the "<u>Collateral</u>"), including Collateral that is property of the Estates, which includes 28 parcels of real estate owned by 27 Obligors set forth in Schedule 7.4.1 to the Loan Agreement (the "<u>Lender Properties</u>"): (a) pursuant to Section 364(d)(1) of the Bankruptcy Code, a perfected first priority priming security interest and lien on the Collateral that primes and is senior to any and all liens, interests, and claims in favor of the Funds (the "<u>Funds Liens</u>") and the Noteholders (the "<u>Noteholders Liens</u>"), whether such Funds Liens and Noteholders Liens arise or exist on or after the Petition Date and however arising or existing, which Funds Liens and Noteholders Liens are junior in priority and subordinate in all respects to the Liens (defined herein); (b) pursuant to Section 364(c)(2) of the Bankruptcy Code, a perfected first and senior priority security interest and lien on the Collateral to the extent such Collateral is not subject to valid, perfected, and non-

avoidable liens existing as of the Petition Date; (c) subject to clauses (a) and (b) above, pursuant to Section 364(c)(3) of the Bankruptcy Code, a perfected priority security interest and lien on the Collateral junior only to valid, perfected, and unavoidable liens in favor of third parties that were in existence immediately prior to the Petition Date (other than the Funds Liens and the Noteholders Liens, which are being primed by this Order and are junior in priority and subordinate in all respects to the Liens) (the "Prepetition Third Party Liens"), subject only as to priority to such Prepetition Third Party Liens (the security interests and liens in favor of Lender described in (a) through (c) above, the "Financing Liens"); and (d) as replacement liens pursuant to sections 361 and 363 to provide adequate protection of Lender's interest in the Collateral to the extent of any diminution in value of the Collateral as a consequence of the use of Cash Collateral, the Postpetition Financing, the imposition of the automatic stay, and any other consequence of the Cases (the "Replacement Liens," and collectively with the Financing Liens, the "Liens"); provided, however, that the Collateral does not include any commercial tort claim, such as, by way of example only and not by way of limitation, a breach of fiduciary duty claim against prior management, or claim or cause of action arising under sections 502(d), 542, 544, 547, 548, 550, or 551, and any recoveries thereof (collectively, "Avoidance Claims"), but does include claims and causes of action arising under section 549 and any recoveries thereof, and the proceeds realized by the Estates from the assumption and assignment, or rejection, of any executory contract or unexpired lease under section 365.

        3.1.2   Adequate Protection of Noteholders/Investors. Conditional on any Noteholder establishing that it holds a valid, perfected, enforceable and unavoidable interest or lien, whether directly or indirectly, existing as of the Petition Date (or enforceable postpetition pursuant to section 552(b) of the Bankruptcy Code) in an Obligor's property (the "Noteholder

Lien Condition"), each such Noteholder is hereby granted, pursuant to sections 361, 363(c)(2), 364(d)(1)(b), and 363(e) of the Bankruptcy Code, adequate protection of their respective interests or liens, if any, in the Collateral in an amount equal to the aggregate diminution in value thereof occurring on or after the Petition Date, including without limitation, any such diminution resulting from the use by Obligors of the Cash Collateral and any Lien on Collateral and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "Adequate Protection Obligations") as provided in sections 3.1.2.1, 3.1.2.2, 3.1.2.3, and 3.1.2.4 below (the "Noteholders Adequate Protection"); provided, that the Noteholders Adequate Protection, in each case, is expressly and permanently primed, subject to, subordinate, and junior in priority in all respects to the Liens, the Carve-Out, and all other rights, interests, remedies, benefits, consents, claims, and obligations of Lender, and that the Noteholders shall take no action and shall have no rights of enforcement and are prohibited from exercising any right or remedy against any Collateral other than the right to receive proceeds of Collateral only after the payment in full of the Obligations, and shall immediately deliver to Lender any payment, distribution, security, or proceeds received by such Noteholder on account of any Collateral (including without limitation any payment, property, security, or distributions on account of Collateral in the Cases, whether pursuant to a chapter 11 Plan of Reorganization or otherwise) until the Obligations owed to Lender are paid in full, and shall hold such payment, distribution, security, or proceeds in trust for Lender until delivered to Lender:

   3.1.2.1 Adequate Protection Liens on Collateral: continuing valid, binding, enforceable, and perfected liens and security interests in and on all of the Collateral to the extent of the Adequate Protection Obligations (the "Collateral Adequate Protection Liens").

3.1.2.2 <u>Additional Adequate Protection Replacement Liens</u>: valid, binding, enforceable, and perfected replacement liens and security on the Adequate Protection Properties to the extent of the Adequate Protection Obligations (the "<u>Replacement Adequate Protection Liens</u>" and together with the Collateral Adequate Protection Liens, the "<u>Adequate Protection Liens</u>"). The Adequate Protection Liens shall be conditional on the Noteholders having a valid, perfected, enforceable, and unavoidable lien on the Collateral. Further, to the extent that the Noteholders' liens are avoided, the Noteholders are hereby authorized to seek to assert unsecured claims under section 502(h) of the Bankruptcy Code against the Estate that includes the property that was encumbered by such avoided lien.

3.1.2.3 <u>507(b) Claims</u>: an allowed super-priority administrative expense claim subject to proof against each Obligor and its respective Estate pursuant to and as provided under Section 507(b) (the "<u>507(b) Claims</u>"). The 507(b) Claims shall be conditional on the Noteholders having a valid, perfected, enforceable, and unavoidable interest or lien in the Collateral.

3.1.2.4 <u>Adequate Protection Reserve</u>: notwithstanding the Noteholder Lien Condition in section 3.1.2 but subject to the terms and conditions set forth in Section 3.1.2 other than the Noteholder Lien Condition, any net sale proceeds (i.e., proceeds remaining after payment or reserve for: (i) all liens on a Sale Property (as defined below) that are customarily paid at closing (for the avoidance of doubt excluding liens held by Funds and/or Investors), (ii) all sales and other commissions, and (iii) all other customary closing costs) that are realized by the Debtors from the real estate assets of the Debtors or their non-Debtor affiliates (whether directly as a result of the sale, or indirectly as a result of the payment of intercompany obligations from the proceeds of such sale), including, without limitation, the Lender Properties (provided the proceeds from the Lender Properties are first paid to Lender

until all Obligations are paid in full) and the Adequate Protection Properties (such real estate assets, the "Sale Properties" and each a "Sale Property"), shall (to the extent available) be distributed as follows: (a) ten percent (10%) into a reserve for the benefit of the Noteholders, if any, holding Adequate Protection Liens against the Sale Property that is sold (subject to the conditions set forth in 3.1.2 herein); (b) ten percent (10%) into a reserve for the benefit of the Investors, if any, holding interests or liens (for the avoidance of doubt, other than Adequate Protection Liens) in (1) the Sale Property that is sold or (2) any instrument or payment intangible in favor of a Debtor that is payable directly or indirectly from the proceeds of the sale of the Sale Property; and (c) the balance to the Debtors' estates to be used for any purpose subject to (1) the Loan Documents, as applicable, and (2) the rights of the Noteholder Group and the affected Investors to object to such use as set forth below. The amounts reserved pursuant to clauses (a) and (b) of the preceding sentence shall remain in reserve until it is determined who is entitled to receive the reserved funds, at which point the reserved amounts will be paid to the Investors entitled thereto, unless the Court has previously ordered otherwise. Any funds previously reserved by the Debtors on account of obligations owing to the Investors relating to proceeds received by the Debtors from the sale of property owned by non-Debtor entities either prior to or after the Petition Date shall be distributed pursuant to the formula set for in this Paragraph 3.1.2.4. All payments to the Investors from the amounts reserved relating to the sale of property shall be deemed an advance against any distributions to which such Investors may otherwise be entitled under a chapter 11 plan or otherwise in these Cases. All other funds previously reserved by the Debtors pursuant to the Interim Orders on account of the obligations owing to the Investors shall be immediately released and distributed to the Debtors to be used for any purpose, subject to the Loan Documents, and the Debtors shall have no further obligation under the Interim Orders or otherwise going forward to reserve interest accruing on obligations owing to the Investors. Nothing herein shall affect any right of any Investor or the Noteholder Group to object to the sale of any Sale Property (other than any of the Lender Properties to the extent Obligations remain outstanding) or the use of any sale proceeds (other than from the sale of any

of the Lender Properties to the extent Obligations remain outstanding) on any grounds other than payment of any proceeds from the sale of any Sale Properties to Lender, including, without limitation, there is insufficient "adequate protection" for affected Investors within the meaning of section 361 of the Bankruptcy Code with respect to the proposed sale of the Sale Property (other than any of the Lender Properties to the extent Obligations remain outstanding) or use of the sale proceeds (other than from the sale of any of the Lender Properties to the extent Obligations remain outstanding).

        3.1.3   Lien Priority. Subject to the Carve-Out and the Prepetition Third Party Liens, the Liens are and will continue to be first and senior in priority to all other liens, claims, and interests of every kind and nature, whether existing or arising before or after the Petition Date, or whether created consensually, by an order of any court including this Court, or otherwise, including without limitation (a) the Funds Liens and the Noteholders Liens, irrespective of the time of recording or filing of an instrument or document or occurrence of any other act evidencing or perfecting the Funds Liens and the Noteholders Liens and irrespective of the priorities as would otherwise be determined by reference to the Uniform Commercial Code or other applicable laws, and (b) liens or interests granted or acknowledged in favor of any other person or entity in conjunction with section 363, 364, or any other section of the Bankruptcy Code. This Order establishes, and serves as sufficient evidence of, the priority of the Liens as senior in priority to the Funds Liens, the Noteholders Liens, and the Noteholders Adequate Protection, and the subordination and junior priority of the Funds Liens, the Noteholders Liens, and the Noteholders Adequate Protection to the Liens and Superpriority Claims (defined herein), and insurers of title insurance may rely on this Order with respect to such subordination.

        3.1.4   Lien Perfection. This Order is sufficient and conclusive evidence of the validity, perfection, and priority of the Liens, effective as of the date and time of entry of

01:22621324.18

the First Interim Order, without any further act that may be otherwise required, acknowledged, or permitted under federal, state, or local ordinances, requirements, or law requiring notice, filing, registration, recording, control, or possession of assets or other act to evidence, notice, validate, or perfect a security interest or lien (each, a "Perfection Act"). Notwithstanding the foregoing, Lender is authorized, but not required, to perform a Perfection Act, and Debtors are authorized and directed to perform such act to the extent requested by Lender, including without limitation deeds of trust, mortgages, fixture filings, deposit account control agreements, and UCC financing statements, and in such event, the subject filing or recording office or agency is authorized to accept, file, or record any document in regard to such act in accordance with applicable law, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of the First Interim Order.

       3.2    Superpriority Claim. In addition to and without limiting the Liens, the Obligations constitute an allowed superpriority administrative expense priority claim in favor of Lender with senior priority in payment afforded by section 364(c)(1), which has priority in right of payment senior to all other obligations, liabilities, indebtedness, and claims of any kind and nature, now in existence or hereafter incurred by Debtors, including without limitation any and all administrative expenses of the kinds specified or ordered pursuant to sections 105, 326, 327, 328, 330, 331, 364, 365, 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1103, 1104, 1113, 1114, and other sections of the Bankruptcy Code, including those resulting from the conversion of any of the Cases pursuant to section 1112, and at all times are senior to the rights of Debtors, the Estates, any bankruptcy trustee, the claims and obligations in favor of the Funds and the Noteholders, any creditor or other party in interest in the Cases or any subsequent proceedings under the Bankruptcy Code (the "Superpriority Financing Claim"). In addition, Lender retains its

right to a claim under section 507(b) (collectively with the Superpriority Financing Claim, the

"Superpriority Claims").

        3.3    <u>Carve-Out</u>. The Liens, the Superpriority Claims, and the Noteholder

Adequate Protection shall be subject only to ((a) through (e), the "<u>Carve-Out</u>"): (a) any unpaid

fees due to the United States Trustee pursuant to section 1930 of title 28 of the United States

Code or otherwise and any fees due to the Clerk of the Court of the United States Bankruptcy

Court for the District of Delaware; (b) all reasonable fees and expenses incurred by a trustee

under section 726(b) in an amount not exceeding $100,000; (c) the reasonable expenses of

members of any statutory committee (excluding fees and expenses of professional persons

employed by such committee members individually); (d) to the extent allowed at any time, all

unpaid fees and expenses allowed by the Court of professionals or professional firms retained

pursuant to section 327 or 1103 (the "<u>Professional Persons</u>") incurred prior to the delivery of a

Carve-Out Trigger Notice (defined below); and (e) to the extent allowed at any time, all unpaid

fees and expenses allowed by the Court of Professional Persons incurred after the delivery of a

Carve-Out Trigger Notice (defined below), subject to the Post Carve-Out Notice Trigger Cap

(defined below); provided that the reimbursement of out-of-pocket expenses allowed by the

Court and incurred by the members of any committee and the unpaid fees and expenses of

Professional Persons allowed by the Court and included within the Carve-Out shall not exceed

the sum of: (x) prior to the delivery of a Carve-Out Trigger Notice (defined below), the

professional fees and expenses incurred prior to the delivery of such Carve-Out Trigger Notice

(defined below), plus (y) $2,000,000 for all such fees and expenses incurred from and after the

delivery of a written notice provided by Lender to Debtors following the occurrence and during

the continuance of an Event of Default under the Loan Documents (respectively, the "Post

Carve-Out Notice Trigger Cap" and the "Carve-Out Trigger Notice"). The Carve-Out shall

exclude any fees and expenses incurred in connection with an Adverse Lender Challenge.

      Section 4.     Default; Rights and Remedies; Relief from Stay.

      4.1     Events of Default. The occurrence of any of the following events

constitutes an "Event of Default" under this Order:

      (a)     A breach, default, or failure to perform with respect to any term,

condition, covenant, or obligation under any Loan Document (including without limitation this

Order and any Interim Order);

      (b)     An "Event of Default" as defined in the Loan Agreement; or

      (c)     The termination, expiration, restriction, or curtailment of any

Debtor's or Estate's authority or ability to borrow the Postpetition Financing or Lender's

commitment to provide the Postpetition Financing, whether automatically or upon exercise or

notice by Lender in accordance with the Loan Documents (a "Termination Event").

      4.2     Rights and Remedies upon Event of Default. Notwithstanding the

occurrence of an Event of Default, Obligors and the Estates of the Obligors remain liable for all

Obligations and obligated to perform and abide by all terms, conditions, covenants, and

obligations of the Loan Documents and remain bound by all restrictions and prohibitions

provided, acknowledged, or authorized under the Loan Documents, and subject to any applicable

cure periods, Lender may elect any and all consequences of such Event of Default and is entitled

to take any act or exercise any right or remedy provided in any Loan Document subject to the

this Order. Notwithstanding the foregoing, Lender has no obligation to make loans, advances, or

provide other financial accommodations or otherwise perform its obligations under the Loan

Documents or on behalf of Debtors or the Estates immediately upon or after the occurrence of an

Event of Default or an act, event, or condition that with the giving of notice or the passage of time, or both, would constitute an Event of Default, pursuant to the terms of the Loan Documents.

        4.3    <u>Relief from Automatic Stay</u>. The automatic stay pursuant to section 362 is terminated, modified, lifted, and vacated without further notice, motion, or order, and without the 14-day stay provided under Bankruptcy Rule 4001(a)(3) (which is waived by this Order), as follows:

        4.3.1    <u>Non-Default</u>. Effective immediately (a) to implement the Postpetition Financing pursuant to the Loan Documents, (b) to take or permit any Perfection Act, and (c) to assess, charge, advance, deduct, and receive payments with respect to the Obligations, and apply such payments to the Obligations pursuant to the Loan Documents, and

        4.3.2    <u>Post-Default</u>. Upon either the maturity of the Postpetition Financing or the occurrence of an Event of Default and subject to any applicable cure periods, after obtaining relief from this Court from the automatic stay upon hearing and five (5) business days' prior notice to respective counsel to Debtors, the Committee, the Noteholder Group, and the Unitholder Group, and the U.S. Trustee, Lender shall be entitled and empowered:

        4.3.2.1 Immediately to take actions and exercise rights as provided in any Loan Document, including without limitation terminating Debtors' use of Cash Collateral otherwise authorized by this Order, directing Debtors and any account debtors or other parties that may have possession of Cash Collateral to deliver such Cash Collateral directly to Lender, withholding its consent to Debtors' use of Cash Collateral, declaring all Obligations immediately due and payable, ceasing to provide further advances, loans, and financial accommodations to or on behalf of Debtors or the Estates, setting off any Obligations with all or any portion of the

Collateral or proceeds thereof, and terminating Lender's commitment to provide any further advances, loans, and financial accommodations to for the benefit of Debtors, but not including Collateral Enforcement Rights (defined herein); and

                      4.3.2.2 Upon Debtor's failure to cure an Event of Default within a five (5) business day period after the delivery of a notice of an Event of Default to Debtors, counsel for Debtors, the Committee, the Noteholder Group, and the Unitholder Group, and the U.S. Trustee referred to in paragraph 4.3.2, and upon the maturity of the Postpetition Financing, to take actions and exercise rights and remedies with respect to the Collateral, including foreclosing upon or conducting a sale of any Collateral ("Collateral Enforcement Rights"). Notwithstanding the foregoing, Debtors and any other party in interest may seek an order of the Court on an emergency basis extending the automatic stay to stay such exercise by Lender on any grounds. Upon Lender's request, to the extent the Court does not determine to extend the automatic stay to stay the exercise of remedies, the Court shall enter a further Order with respect to the termination of the automatic stay and the grant of relief from the automatic stay consistent with the terms of this Order, although the entry of such further order does not limit the effectiveness of such relief as provided and granted in this Order.

        4.4     Right to Credit Bid. Lender has the right to use any or all of the Obligations owed to Lender to credit bid with respect to any sale of all or any portion of the Collateral pursuant and subject to section 363(k).

        4.5     No Duty to Marshall. Neither Lender nor the Collateral is subject to the doctrine of marshaling with respect to the Collateral.

Section 5.    Representations; Covenants; and Waivers.

5.1    Debtors' Waivers. Debtors irrevocably waive any rights (a) to seek authority prior to satisfaction of the Obligations in full, to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) other than from Lender unless such authority results in the Obligations being indefeasibly paid in full, in cash, (b) to challenge the application of any payments authorized by this Order pursuant to section 506(b), and (c) to propose or support a plan of reorganization that does not provide for the indefeasible payment of all Obligations owed to Lender in full, in cash, upon the effective date of such plan of reorganization or is otherwise inconsistent with the Loan Documents unless Lender consents.

5.2    Section 506(c) Waiver. No costs or expenses of administration incurred in the Cases may be charged against Lender or the Collateral pursuant to sections 105, 326, 327, 330, 331, 503(b), 506(c), 507(a), or the "equity exception" in section 552(b), section 726, or any other provision of the Bankruptcy Code, or any similar principle of law without the prior written consent of Lender, and no such consent shall be implied from any other action, inaction or acquiescence by Lender.

5.3    Liens Senior to Certain Other Liens. The Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date including, without limitation, mechanics' liens, materialmens' liens, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of Debtors. For the avoidance of doubt, the Liens and the Superpriority Claims, in each case, in respect of all Obligations, shall be neither subject

nor subordinate to disgorgement or to any other rights, claims, or remedies asserted or assertable by the Securities and Exchange Commission or any other governmental unit, person or entity.

Section 6.    Other Rights and Obligations.

6.1    No Modification or Stay of this Order. Notwithstanding any other order of the Court or act by any party, the acts taken by Lender in accordance with this Order, the Obligations, and all rights, interests, remedies, benefits, consents, claims, and obligations, including without limitation the Obligations, the Liens, and the Superiority Claims, shall not be modified, amended, reduced, or restricted without the express consent of Lender, shall be governed in all respects by the original provisions of this Order, and shall remain valid, effective, authorized, and in full force and effect pursuant to section 364(e). If any or all of the provisions of this Order are reversed, modified, vacated, or stayed for any reason, such reversal, modification, vacation, or stay does not affect (a) the validity and existence of any Obligations owing to Lender, including obligations arising from loans, advances, or other financial accommodations provided by Lender incurred prior to the actual receipt by Lender, as applicable, of written notice of the effective date of such reversal, modification, vacation, or stay, or (b) the validity or enforceability of any Lien or Superpriority Claim. For purposes of section 364(e), "appeal" shall include any proceeding for reconsideration, amending, vacating, rehearing, or re-evaluation of this Order by this Court or any other tribunal.

6.2    Power to Waive Rights; Duties to Third Parties. Lender has the right to waive any interest, claim, right, remedy, or privilege in favor of Lender provided for or acknowledged in any Loan Document including without limitation this Order and any prior Interim Order (collectively, "Lender Rights"), and has no obligation or duty to any other party

01:22621324.18

23

with respect to or by reason of Lender's exercise or enforcement, or delay or failure to exercise or enforce, any Lender Right.

      6.3    <u>Reservation of Rights</u>. This Order is in addition to and without prejudice to the rights of Lender to pursue any and all rights and remedies under the Bankruptcy Code, the Loan Documents, any other contract, at law, or in equity.

      6.4    "<u>Responsible Person</u>." By accepting any budget submitted by Debtors or by taking any actions pursuant to or authorized by the Loan Documents, Lender is not deemed to be (a) in control of the operations or liquidation of Debtors, or (b) a "responsible person" with respect to the operation, management, or liquidation of Debtors.

      6.5    <u>Binding Effect</u>. This Order is and continues to be binding upon Debtors, all parties in interest in the Cases (including without limitation landlords, lessors, and other parties asserting an interest of real property where Collateral may be located), and each of their respective successors and assigns, including any trustee, notwithstanding any further order, including dismissal of any of the Cases or conversion of any of the Cases to a case under another chapter of the Bankruptcy Code.

      6.6    <u>Survival of Order</u>. The provisions of this Order, the Liens granted and acknowledged by this Order, the priorities afforded to the Liens and claims in favor of Lender, and any actions taken pursuant thereto (a) survive the entry of any order: (i) confirming any plan of reorganization in the Cases, (ii) converting any of the Cases to a cases under chapter 7 of the Bankruptcy Code, or (iii) dismissing any of the Cases; and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to this Order maintain its priority as provided by this Order until all of the Obligations are indefeasibly paid in full and discharged in accordance with the terms of the Loan

Documents. The Obligations shall not be discharged by the entry of any order confirming any

plan of reorganization in the Cases unless such Obligations are satisfied in full, in cash, pursuant

to such plan of reorganization, and each Debtor waives, and is deemed to have waived any such

discharge pursuant to section 1141(d)(4).


Dated: March  8 , 2018
      Wilmington, DE

                                    Kevin J. Carey
                                    United States Bankruptcy Judge