IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12560 (KJC)<br><br>(Jointly Administered)<br><br>**Hrg. Date: April 5, 2018, at 11:00 a.m. (ET)**<br>**Obj. Deadline: March 29, 2018, at 4:00 p.m. (ET)** |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) CONFIRMING THE DEBTORS' ABILITY TO PAY POSTPETITION ADMINISTRATIVE CLAIMS IN THE ORDINARY COURSE OF BUSINESS, (II) ESTABLISHING LIEN PROCEDURES, AND (III) AUTHORIZING THE DEBTORS TO PAY THE CLAIMS OF CERTAIN LIENHOLDERS

Woodbridge Group of Companies, LLC and its affiliated debtors and debtors in possession (the "Debtors") in the above-captioned jointly administered chapter 11 cases (the "Cases"), hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105, 362, 363, 503, 506, 507, 1107 and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) confirming the Debtors' ability to pay the postpetition invoices of suppliers and service providers, including contractors (collectively, the "Vendors"), in the ordinary course of business, (b) establishing procedures (the "Lien Procedures") for asserting mechanics' and materialman's liens (collectively, the "Liens"), and (c) authorizing the Debtors to pay the claims

---

[1] The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14140 Ventura Blvd #302, Sherman Oaks, California 91423. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' noticing and claims agent at www.gardencitygroup.com/cases/WGC, or by contacting the undersigned counsel for the Debtors.

of certain Lienholders (defined below) in accordance with the Lien Procedures. In support of the Motion, the Debtors respectfully state as follows:

**JURISDICTION**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the Court's entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. The statutory and legal predicates for the relief requested herein are sections 105, 362, 363, 503, 506, 507, 1107 and 1108 of the Bankruptcy Code and Bankruptcy Rule 6004.

**BACKGROUND**

4. On December 4, 2017 (the "Dec. 4 Petition Date"), certain of the Debtors (the "Original Debtors") commenced voluntary cases under chapter 11 of the Bankruptcy Code. On February 9, 2018, an additional fourteen affiliated Debtors (the "Feb. Petition Debtors") commenced voluntary cases under chapter 11 of the Bankruptcy Code (the "Feb. 9 Petition Date"). On March 9, 2018 (the "Mar. 9 Petition Date" and together with the Feb. 9 Petition Date and the Dec. 4 Petition Date, the "Petition Dates"), two additional affiliated Debtors (the "Mar.

01:22974792.5

Petition Debtors") commenced voluntary cases under chapter 11 of the Bankruptcy Code. The Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.

5. The Debtors are authorized to continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee has been appointed in these Cases. On December 14, 2017, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [D.I. 79] (the "Committee").

6. On January 23, 2018, the Court held a hearing to resolve, among other matters, two motions to appoint a chapter 11 trustee, and entered an order approving the settlement reached between the Debtors and other parties in interest [D.I. 357] (the "Settlement Order"). Attached as Exhibit 1 to the Settlement Order was a term sheet enumerating the terms of the settlement (the "Joint Resolution"). By the terms of the Joint Resolution, the Debtors' board of managers was to be reconstituted as a three-person board (the "New Board"). Further, the Joint Resolution provided for the formation of an ad hoc noteholder group (the "Noteholder Group") and an ad hoc unitholder group (the "Unitholder Group").

**BACKGROUND TO THE RELIEF REQUESTED**

7. The Debtors' primary assets consist of high-end luxury homes that are in various stages of development, several of which the Debtors have marketed, or are in the process of marketing, for sale.[2] To that end, the Debtors have already obtained Court approval for one postpetition property sale [D.I. 574], with a sale price of $1.5 million, and the Court is scheduled

---

[2] Since the Dec. 4 Petition Date, the Debtors have not purchased any residential real property.

01:22974792.5

3

to consider a second postpetition property sale, with a sale price of $21.5 million, at the hearing scheduled for March 28, 2018. The Debtors are in the process of preparing and filing additional sale motions as well, which they expect will continue during the pendency of the Cases.

**A.      Vendors**

8.      The Debtors have engaged the Vendors to provide services, materials, and labor that are integral to the Debtors' operations. Since the Petition Dates, the Debtors have worked diligently to maintain their relationships with the Vendors. However, as a result of the commencement of the Cases, the Debtors are informed that certain of the Vendors perceive a risk that they will be treated as prepetition general unsecured creditors or will otherwise not be paid for the cost of any goods or services provided after the applicable Petition Date. Consequently, such Vendors may be hesitant to provide goods or services to the Debtors due to their uncertainty over the status of these Cases. This uncertainty could impact the Debtors' ability to obtain the goods and services that they need on the best available terms and pricing.

9.      Accordingly, the Debtors seek entry of the Proposed Order, confirming that they are authorized to pay their undisputed post-petition obligations to the Vendors and that such obligations will be entitled to administrative expense priority status.

**B.      Mechanics' and Materialman's Liens and the Need for Lien Procedures**

10.      As a result of the Debtors' financial condition leading up to the Petition Dates and their subsequent bankruptcy filings, it is possible that certain of the Vendors have not received payment for outstanding obligations. Consequently, these Vendors have asserted, or may assert, Liens against the Debtors' properties for allegedly unpaid labor, materials, and construction costs under applicable state law. The Debtors are continuing to review their records to determine which Vendors have filed Liens against their properties and the amount of those

Liens. In addition, because of applicable state law requirements, the Debtors are unaware at this time which Vendors may be in a position to potentially assert Liens.

11. Under applicable state law, the time by which Vendors must assert a Lien against the Debtors' properties may not yet have passed—even for goods and services provided prior to the Petition Dates. Because undisclosed Liens may exist and may be asserted against properties that the Debtors are developing and readying for sale, the Debtors have a need for, and therefore are proposing, a process by which they can obtain sufficient information to determine the existence, priority, and validity of all purported Liens asserted against the properties that are within their real estate portfolio. And, if the Debtors, in consultation with the Committee, do not dispute the Liens, the Debtors wish to be able to satisfy any underlying obligations owed to the Vendors asserting such undisputed Liens in the ordinary course of business regardless of whether such obligations arose prior to the Petition Dates.

12. Accordingly, the Debtors seek to implement a fair and reasonable process by which they can obtain information regarding the existence of and basis for the claimed Liens on their properties. The Lien Procedures will provide the Debtors with time to evaluate the number, amount, and priority of Liens asserted against their properties, which will enable the Debtors to avoid construction delays, assist the Debtors in the evaluation of any offers that are received for their properties, and permit the Debtors to clear title to properties prior to sale. Moreover, the Lien Procedures will be beneficial to the Vendors as they will be able to perfect Liens without the expense, inconvenience, and delay of obtaining stay relief from the Court.

13. The ability to continue ordinary course property development, marketing, and sales is required if the Debtors are to maximize the value of their estates, and the Debtors submit that the Lien Procedures are necessary to facilitate these efforts.

01:22974792.5

**C.      Lien Procedures**

14.     Pursuant to the proposed Lien Procedures, each Vendor asserting a Lien against the Debtors' assets (a "<u>Lienholder</u>"), that desires to perfect its Lien without the necessity of filing a motion with the Court to obtain stay relief, must submit a written notification (a "<u>Lien Statement</u>") to the Debtors as follows:

a.  The Lien Statement must be served upon Debtors' counsel, Klee, Tuchin, Bogdanoff & Stern LLP, 1999 Avenue of the Stars, 39th Floor, Los Angeles, California 90067, Attn: Jonathan M. Weiss, Esq. or by electronic mail, jweiss@ktbslaw.com, and Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 N. King Street, Wilmington, Delaware 19801, Attn: Allison S. Mielke, Esq. or by electronic mail, amielke@ycst.com; counsel for the Committee, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19081, Attn: Colin R. Robinson, Esq. or by electronic mail, crobinson@pszjlaw.com; and counsel for Hankey Capital, LLC (the "<u>DIP Lender</u>"), Buchalter, 1000 Wilshire Boulevard, Suite 1500, Los Angeles, California 90017, Attn: William S. Brody, Esq. or by electronic mail, wbrody@buchalter.com (the "<u>Notice Parties</u>");

b.  The Lien Statement must include the following information: (i) the identity of the Lienholder; (ii) the specific property address subject to the Lien; (iii) the asserted amount of the Lien; (iv) the date on which the Lienholder asserts its Lien arose and the last date on which the Lienholder provided labor or materials to the Debtors; (v) the basis for the Lien including citation to any applicable statute or state law and any supporting documentation; and (vi) whether any causes of action have been filed or any other efforts have been made to collect on the amounts allegedly due.

15.     The Notice Parties shall have until 5:00 p.m. (ET) on the fifth business day after receipt of the Lien Statement to evaluate the propriety of the Lien (the "<u>Evaluation Period</u>") and to communicate any objection to the Lienholder. If the Evaluation Period expires and the Notice Parties have not timely objected to the filing of the Lien described in the Lien Statement, the Notice Parties will be deemed to have consented to relief from the automatic stay in order for the Lienholder to perfect such Lien without further Court order; *provided, however*,

that the commencement of any action to enforce the Lien or to foreclose on the Debtors' property shall remain stayed absent further order of the Court, and *provided further, however*, that the priority of such perfected Lien shall be as provided in the *Final Order on Debtors' Motion for Entry of Interim and Final Orders (i) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, and 552 Authorizing Debtors to (a) Obtain Postpetition Secured Financing [etc.]* [D.I. 724] (the "Final DIP Order"). In addition, the Debtors request that they be authorized, in consultation with the Committee, to satisfy those outstanding obligations owed to the Lienholder, which are set forth in the Lien Statement, regardless of whether such obligations arose prior the Petition Dates. As a condition to any payments on account of such a Lienholder's claim, the Debtors will require that the Lienholders agree to release any Liens filed.

16. If any Notice Parties object to a Lien Statement, then they shall, prior to the expiration of the Evaluation Period (or such later date agreed to by the Debtors and the Lienholder) notify the Lienholder, and, to the extent that the Lienholder still wishes to perfect its Lien, the Lienholder may seek stay relief by filing a motion with the Court.

## RELIEF REQUESTED

17. The Debtors request entry of an order, in substantially the form of the Proposed Order, confirming that the Debtors are authorized to pay their undisputed postpetition obligations to Vendors as administrative expenses in the ordinary course of business, establishing the Lien Procedures, and authorizing the Debtors, in consultation with the Committee, to pay the claims of certain Lienholders in accordance with the Lien Procedures.

## BASIS FOR RELIEF

**A.     The Debtors Are Authorized to Pay Vendors in the Ordinary Course of Business**

18. Section 1107(a) of the Bankruptcy Code gives a debtor in possession the power to operate a business in the ordinary course, while section 1108 of the Bankruptcy Code

01:22974792.5

7

"mak[es] continued operation of the Debtor's business the norm . . . ." 7 Collier on Bankruptcy ¶ 1108.01 (16th ed. 2017); *see also* 11 U.S.C. §§ 1107(a), 1108. Furthermore, section 363(c)(1) of the Bankruptcy Code provides that the debtor in possession may use, sell, or lease property of the estate in the ordinary course of business postpetition without notice or a hearing. *See Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 585 (3d Cir. 2003). Furthermore, under sections 503(b) and 507(a)(2) of the Bankruptcy Code, any ordinary course business obligations that the Debtors may incur after the Petition Dates are entitled to administrative expense priority. *See* 11 U.S.C. §§ 503(b)(1)(A), 507(a)(2).

19. As set forth in greater detail above, the Debtors have been informed that certain Vendors are hesitant to continue to provide goods or services to the Debtors on a postpetition basis due to their uncertainty over the Cases and the status of their claims. This uncertainty could impact the Debtors' ability to operate in the ordinary course of business and jeopardize the successful prosecution of the Cases.

20. Although the Debtors have the authority to make payments for any goods and services received postpetition, confirmation of that authority is highly desirable in order to provide the certainty to Vendors that is necessary to keep such Vendors working. Accordingly, the Debtors request the entry of the Proposed Order, authorizing them to satisfy these obligations to Vendors in the ordinary course of their business. The Debtors submit that this relief sought is noncontroversial and entirely consistent with the applicable provisions of the Bankruptcy Code. The requested relief merely confirms the treatment of such postpetition obligations under the Bankruptcy Code, providing necessary assurances of payment to the Vendors and ensuring the Debtors' ongoing and uninterrupted receipt of essential goods and services.

01:22974792.5

**B.**     <u>**The Lien Procedures Will the Streamline the Process for Perfecting Liens**</u>

21.     Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Section 362 of the Bankruptcy Code generally operates as a stay to the enforcement or assertion of rights against a debtor's property. 11 U.S.C. § 362(a). However, section 362(b)(3) permits a party to perfect an interest in property under applicable state law in certain circumstances without violating the automatic stay. 11 U.S.C. § 362(b)(3). *See In re Linear Elec. Co., Inc.*, 852 F.3d 313, 320-24 (3d Cir. 2017) (holding that perfection of a construction lien violated the automatic stay to the extent that the lien was effective postpetition, in contrast to a lien that related back to a prepetition time period, which would not violate the automatic stay).

22.     Due to certain unpaid obligations, Vendors have filed or may file Liens against the Debtors' properties under applicable state law. Indeed, several parties have already sought stay relief from this Court to permit the filing of Liens and/or have filed notices informing the Debtors' of such intent [D.I. 434, 681, 738].

23.     Accordingly, in order to aid the Debtors' efforts in dealing with their Vendors, and minimize the inefficient and expensive process—for all parties in interest—that may arise if Vendors are required to seek relief from the Court in order to perfect Liens, the Debtors seek to establish fair and reasonable procedures that provide direction to Vendors as to the most efficient process by which to notify the Debtors of a Lien, and in turn, by which the Debtors can obtain information regarding the existence of and basis for such Liens. The Lien Procedures will allow the Debtors and interested parties to assess whether a Lien implicates the automatic stay and expedite the consensual resolution of noncontroversial issues. Further, the Lien Procedures are much less burdensome to the Vendors because such procedures allow a

Vendor to obtain relief from the automatic stay in order to perfect its Lien without the inconvenience and expense of retaining counsel and filing a motion with the Court. For the avoidance of doubt, the commencement of any action to enforce the Lien or to foreclose on the Debtors' property shall remain stayed absent further order of the Court and the priority of any such perfected Lien shall be as provided in the Final DIP Order.

**C.    The Court May Authorize the Debtors to Satisfy the Vendor Claims in Accordance with the Lien Procedures**

   i.    *Payments to the Lienholders is Justified to the Extent Such Claims are Secured as the Payments Should Not Prejudice Unsecured Creditors*

24.    The claims of the Lienholders would likely be subject to treatment as secured claims under a plan in these Cases. Because such claims, if treated as secured claims, ultimately would have to be satisfied in full, the payment of such claims pursuant to this Motion in accordance with the Lien Procedures would not deplete the pool of assets generally available to general unsecured creditors or otherwise prejudice the rights of general unsecured creditors.

25.    Consequently, payment of the Lienholders' claims will: (a) give the Lienholders no more than they otherwise would be entitled to under a plan; and (b) save the Debtors the potential postpetition interest costs that otherwise may accrue on such claims during the Cases.

   ii.    *Payment of the Lienholder Claims is Justified Because of the Debtors' Fiduciary Duties Pursuant to Sections 1107(a) and 1108*

26.    The Debtors, operating their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy estate and operating the business for the benefit of their creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in

the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

27. Courts have noted that there are instances in which a debtor in possession can fulfill their fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate" and also when the payment was to "sole suppliers of a given product." *Id.* at 497-98. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

28. Payment of the Lienholders' claims meets each element of the *CoServ* standard. Any disruption in the Debtors' ability to complete construction on working homesites due to disruptions in the supply of labor, supplies, and materials, or, in the Debtors' ability to market saleable properties because of Lien issues affecting title, would undoubtedly impair value, potentially costing the Debtors' estates (and hence creditors) millions of dollars. The harm and economic disadvantage that would stem from the failure to pay the Lienholders, as-needed, is grossly disproportionate to the amount of the claims that would be paid under the Lien Procedures. Finally, with respect to each of the Lienholders, prior to paying any claims, the Debtors will have examined other options for resolution short of paying their claims, will consult

01:22974792.5

with the Committee, and will ensure that no practical or legal alternative to payment exists. Therefore, payment of the claims in accordance with the Lien Procedures will be consistent with the Debtors' fiduciary duties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

    iii.    *The Court May Authorize Payment of the Lienholders' Claims Pursuant to Section 363 of the Bankruptcy Code*

29. Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estates." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment, that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent the abuse of process.

11 U.S.C. § 105(a). Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad authority and discretion to enforce the provisions of the Bankruptcy Code either under specific statutory fiat or under equitable common law principles.

30. Courts have repeatedly recognized "the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operations of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); *see also In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991). The United States Supreme Court first articulated the equitable common law principle commonly referred to as the "doctrine of necessity" over a century ago in *Miltenberger v. Logansport, C. & S.W.R.*

*Co.*, 106 U.S. 286 (1882). "The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11." *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999). "The necessity of payment doctrine recognizes that paying certain pre-petition claims may be necessary to realize the goal of chapter 11 -- a successful reorganization." *Id.* at 825-26.

31. Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay critical prepetition claims, even though such payment is not explicitly authorized under the Bankruptcy Code. *See In re Columbia Gas Sys.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (*citing In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "if payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized'").

32. For the reasons stated above, it is essential that the Debtors be permitted, but not directed, to pay the Lienholders' claims, upon consultation with the Committee in accordance with the Lien Procedures. Failure to make such payments could, for example, result in work stoppages or litigation with respect to individual properties that will undoubtedly cause deterioration in the value of the Debtors' assets and thereby impede the Debtors' efforts to maximize value. Permitting the Debtors to pay Lienholder claims (on a case-by-case basis), upon consultation with the Committee in accordance with the Lien Procedures is therefore justified.

## REQUEST FOR WAIVER OF STAY

33. To implement the foregoing, the Debtors seek a waiver of any stay under Bankruptcy Rule 6004(h). Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after

01:22974792.5

entry of the order, unless the court orders otherwise." The Debtors submit that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein. Accordingly, to the extent applicable, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

34. Nothing in this Motion (a) shall be interpreted or construed as the Debtors' consent to any efforts by a Lienholder to enforce a Lien or foreclose on the Debtors' properties and nothing shall relieve a Lienholder from any obligation under any applicable law to validly perfect a Lien or other interest in property, (b) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code, (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim or Lien against the Debtors and their estates, (d) shall constitute an admission as to the validity, priority, or amount of any claim or Lien against the Debtors and/or constitute a waiver of the Debtors' rights to dispute any claim or Lien, or (e) shall be deemed to prejudice any party's right to object to any claim or Lien on any ground, or to dispute, or to assert offsets against or defenses to, any claim or Lien or to subsequently designate any claim or Lien as disputed, contingent, or unliquidated.

## NOTICE

35. Notice of this Motion will be provided to the following parties: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Noteholder Group; (iv) counsel to the Unitholder Group; (v) counsel to the DIP Lender; (vi) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors respectfully submit that no other or further notice is necessary.

01:22974792.5

WHEREFORE, the Debtors request the Court enter the Proposed Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated: March 15, 2018
     Wilmington, Delaware

*/s/ Allison S. Mielke*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Sean M. Beach, Esq. (No. 4070)
Edmond L. Morton, Esq. (No. 3856)
Ian J. Bambrick, Esq. (No. 5455)
Allison S. Mielke, Esq. (No. 5934)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:   (302) 571-6600
Fax:   (302) 571-1253

*Counsel for the Debtors and Debtors in Possession*

-and-

KLEE, TUCHIN, BODGANOFF & STERN LLP
Kenneth N. Klee, Esq. (admitted *pro hac vice*)
Michael L. Tuchin, Esq. (admitted *pro hac vice*)
David A. Fidler, Esq. (admitted *pro hac vice*)
Jonathan M. Weiss, Esq. (admitted *pro hac vice*)
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Telephone:   (310) 407-4029
Facsimile:   (310) 407-9090

*Proposed Counsel to the Debtors and Debtors in Possession*