# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12560 (KJC)<br><br>(Jointly Administered)<br><br>**Hearing Date:**<br>    **April 5, 2018 at 11:00 a.m. (ET)**<br>**Objection Deadline:**<br>    **March 29, 2018 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE SALE OF 24025 HIDDEN RIDGE ROAD, CALABASAS, CALIFORNIA PROPERTY OWNED BY THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) APPROVING THE RELATED
PURCHASE AGREEMENT; AND (III) GRANTING RELATED RELIEF**

Woodbridge Group of Companies, LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") hereby move the court (this "Motion") for entry of an order (the "Sale Order"), substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (i) authorizing the sale (the "Sale") of certain real property owned by the Debtor Cablestay Investments, LLC (the "Seller") located at 24025 Hidden Ridge Road, Calabasas, California (the "Land"), together with Seller's right, title, and

---

[1] The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at www.gardencitygroup.com/cases/WGC, or by contacting the undersigned counsel for the Debtors.

01:22983499.4

interest in and to the buildings located thereon and any other improvements and fixtures located thereon (collectively, the "Improvements" and together with the Land, the "Real Property"), and any and all of the Seller's right, title, and interest in and to the tangible personal property and equipment remaining on the Real Property as of the date of the Closing (collectively, the "Personal Property" and, together with the Real Property, the "Property") on an "as is, where is" basis, free and clear of any and all liens, claims, encumbrances, and other interests to DKD LLC (together with its assignee, if any, the "Purchaser") pursuant to the terms and conditions of that certain California Residential Purchase Agreement and Joint Escrow Instructions dated as of February 10, 2018 (as may be amended, supplemented, or otherwise modified from time to time, the "Purchase Agreement") by and between the Seller and the Purchaser, a copy of which is attached as Exhibit 1 to the Sale Order; (ii) authorizing and approving the terms of the Purchase Agreement, and (iii) granting certain related relief.  In support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief

requested herein are 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rule 6004, and Local Rules 2002-1, 4001-2, and 6004-1.

## CASE BACKGROUND

2.     On December 4, 2017 (the "Dec. 4 Petition Date"), certain of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code, and on February 9, 2018, an additional fourteen affiliated Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code (the "Feb. 9 Petition Date"), and on March 9, 2018, two additional affiliated Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code (the "March 9 Petition Date" and together with the Dec. 4 Petition Date and the Feb. 9 Petition Date, the "Petition Dates").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

3.     The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  As of the date hereof, no trustee has been appointed in the Chapter 11 Cases.  An official committee of unsecured creditors (the "Committee") was appointed in the Chapter 11 Cases on December 14, 2017 [D.I. 79].  On January 23, 2018, the Court approved a settlement providing for the formation of an ad hoc noteholder group (the "Noteholder Group") and an ad hoc unitholder group (the "Unitholder Group") [D.I. 357].

## THE SALE

4.     The Property.  As further detailed in the *Declaration of Bradley D. Sharp in Support of Debtor's Motion to Sell 24025 Hidden Ridge Road, Calabasas California Property* filed on the date hereof (the "Sharp Declaration"), the Property consists of a single family home situated on a 1.7 acre lot.  The Seller purchased the Property as a vacant lot in March 2015 for $4,000,000.  Sharp Decl., ¶ 3.  The Debtors developed the Property by constructing the

Improvements thereon, which were completed in early 2018. Having completed construction, the Debtors have determined that selling the Property now on an "as is" basis best maximizes the value of the Property. *Id.*, ¶ 4. The Property has not been formally listed on the multiple listings service, but the brokerage community in the high-end neighborhood in which the Property is situated has kept apprised of the development of the Property in anticipation of its sale. *Id.* After multiple rounds of negotiation, the Purchaser made a best and final, all cash offer that the Debtors believe is the highest and otherwise best offer for the Property. *Id.* In addition, the Debtors believe that this particular Purchaser has been waiting for construction to be completed on this Property and is paying a reasonable price in comparison to comparable properties in the market in which the Property is located. *Id.* Accordingly, the Debtors determined that selling the Property on an "as is" basis to the Purchaser is the best way to maximize value of the Property. *Id.*

5. <u>The Debtors' Property Sales</u>. The Debtors own over one hundred desirable high-end properties, primarily in California and Colorado.[2] Both before and after the Petition Dates, the Debtors have pursued potential sales of the Property in the ordinary course of their operations. Over the six months prior to the Petition Dates, the Debtors closed nine sales generating total revenues of approximately $47 million, with an average sale price of approximately $5.2 million. In addition, the Debtors recently obtained Court approval for the sale of another property, located at 8692 Franklin Avenue, *see* Docket No. 574, and the Debtors' motion for approval of the sale of another property, located at 11541 Blucher Avenue, is awaiting Court approval at this time, *see* Docket No. 713.

---

[2] Approximately (a) 63% of the Debtors' properties are located in Colorado, (b) 36% in California, and (c) 1% in New York.

01:22983499.4

4

6. <u>The Purchase Agreement</u>.  The Purchaser made an initial offer for the Property on February 10, 2018 in the amount of $14,500,000, and the Seller responded on February 11, 2018 with a counteroffer in the amount of $15,500,000.  On February 14, 2018, the Purchaser made a second offer in the amount of $14,750,000, and on February 16, 2018, the Seller responded with a counteroffer in the amount of $15,350,000.  On March 2, 2018, the Purchaser signed the Purchase Agreement with a best and final, all cash offer in the amount of $14,950,000, which offer was set to expire by 5:00 p.m. that day.  The Debtors believe that this purchase price provides significant value and, accordingly, countersigned the final Purchase Agreement on March 2, 2018.  Under the Purchase Agreement, the Purchaser agreed to purchase the Property for $14,950,000, with a $448,500 initial cash deposit and the balance of $14,501,500 to be paid in cash as a single down payment, with no financing contingencies.  *Id.*, ¶ 5.  The deposit is being held by First American Title Company (the "<u>Title Insurer</u>") as escrow agent.

7. <u>Broker's Fees</u>. In connection with the Sale of the Property, the Debtors worked with three brokers, (i) Kyle Giese, (ii) Berkshire Hathaway Home Service, and (iii) Compass (collectively, "<u>Seller's Brokers</u>").  Giese, along with Adam Rosenfeld, who is also a signatory to the Purchase Agreement, were affiliated with non-debtor brokerage companies under the control of Robert Shapiro.[3]  The Purchaser worked with Wish Sotheby's International Realty (the "<u>Purchaser's Broker</u>").  A true and correct copy of the Commission Instructions in connection with the Sale of the Property (the "<u>Broker Agreement</u>") is attached hereto as <u>Exhibit B</u>.  The

---

[3]  Prior to the Petition Date, the Debtors primarily relied on two non-Debtor affiliates for brokerage services: Mercer Vine and Woodbridge Realty of Colorado, LLC (collectively, the "<u>Affiliated Brokerage Entities</u>").  Kyle Giese and Adam Rosenfeld are or were affiliated with the Affiliated Brokerage Entities.  The Affiliated Brokerage Entities are majority-owned and controlled by Robert Shapiro, and are subject to an asset freeze order (the "<u>Asset Freeze</u>") obtained by the United States Securities and Exchange Commission from the District Court for the Southern District of Florida. *SEC v. Shapiro et al.*, No. 17-cv-24625 (MGC), Dkt. No. 13 (S.D. Fla. Dec. 20, 2017).  For the avoidance of doubt, the Debtors are not seeking authority to make any payments to Mr. Giese or Mr. Rosenfeld hereunder.  Mr. Giese and Mr. Rosenfeld will be provided with notice of the Sale, and any portion of Seller's Broker Fee payable to Messrs. Giese or Rosenfeld will be held pending a further order of this Court.

Broker Agreement provides the irrevocable right to fees for the Seller's Brokers in the amount of $411,125 in the aggregate, which is 2.75% of the contractual sale price (the "Seller's Broker Fee"), which amount is further split equally between each of the three Seller's Brokers, and for the Purchaser's Broker in the amount of $336,375 in the aggregate, which is 2.25% of the contractual sale price (the "Purchaser's Broker Fee" and together with the Seller's Broker Fee, the "Broker Fees").

8. In the Debtors' business judgment, closing the Sale with Purchaser pursuant to the best and final, all cash offer set forth in the Purchase Agreement is the best way to maximize value for the Debtors' estates and is more favorable than continuing to hold and market the Property for sale and thereby risking obtaining a lower purchase price for the Property on less favorable terms, while incurring additional carrying costs for the Property. The Debtors seek authority to pay the Purchaser's Broker Fee from the proceeds of the Sale and to hold any portion of Seller's Brokers Fee payable to Mr. Giese or Mr. Rosenfeld pending further order of this Court.

9. Other Closing Costs. In addition to the Broker Fees, the Seller must also satisfy certain required costs associated with the sale and transfer of title of the Property to comply with the Purchase Agreement (the "Other Closing Costs"). The Other Closing Costs include, but are not limited to, recording fees, title insurance policy costs, prorated property taxes, city and county transfer taxes, and other items noted on the title report for the Property. The Debtors also rely on outside vendors for escrow and title services in connection with property sales. In general, vendors are mutually agreed on by the applicable Debtors and a purchaser prior to the acceptance of an offer.

10.     Absent authority to pay Other Closing Costs, the Seller will be unable to close the Sale and receive sale proceeds.  If the Seller is unable to make these payments, the Purchaser may be entitled to rescind the Purchase Agreement or assert other remedies that could lead to additional and unnecessary claims.  Accordingly, the Debtors seek the ability to pay Other Closing Costs in connection with the Sale.

11.     <u>Proceeds of the Sale</u>.  All net proceeds of the Sale shall be paid to the Debtors into the general account of Debtor Woodbridge Group of Companies, LLC and shall be disbursed and otherwise treated by the Debtors in accordance with the *Final Order on Debtors' Motion for Entry of Interim and Final Orders (I) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, and 552 Authorizing Debtors to (A) Obtain Postpetition Secured Financing, (B) Use Cash Collateral, (C) Grant Adequate Protection to Prepetition Secured Parties; (II) Modifying the Automatic Stay; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(B) and 4001(C); and (IV) Granting Related Relief* (the "<u>Final DIP Order</u>").

12.     <u>The Fund Liens</u>.  The Property is subject to certain liens for the benefit of Woodbridge Mortgage Investment Fund 3, LLC and Woodbridge Mortgage Investment Fund 3A, LLC (collectively the "<u>Funds</u>", and such liens, the "<u>Fund Liens</u>"), which secure indebtedness of the Seller to the Funds in connection with the purchase and improvement of the Property.  The Funds have consented to the sale of the Property free and clear of the Fund Liens.

**RELIEF REQUESTED**

13.     Pursuant to sections 105(a) and 363 of the Bankruptcy Code, the Debtors request entry of the Sale Order substantially in the of <u>Exhibit A</u> hereto (i) authorizing the closing of the Sale pursuant to the Purchase Agreement, (ii) authorizing and approving the Purchase Agreement, and (iii) granting related relief.

14.     The Debtors further request that filing of a copy of an order granting the relief sought herein in Los Angeles County may be relied upon by the Title Insurer to issue title insurance policies on the Property.

15.     The Debtors further request authority to pay or hold, as applicable, the Broker Fees in the amounts set forth above, which shall not exceed an aggregate amount of 5% of gross sale proceeds.

## BASIS FOR RELIEF REQUESTED

### I.     Section 363 of the Bankruptcy Code Authorizes the Proposed Sale

16.     Section 363(c)(1) of the Bankruptcy Code provides that where, as here, the Debtors are authorized to operate their business under section 1108 of the Bankruptcy Code, the Debtors may enter into transactions, including the sale of property of the estate, in the ordinary course of business, without notice or a hearing.  11 U.S.C. § 363(c)(1).  Because the Debtors believe that the Sale is within the ordinary course of their operations, the Sale should be approved pursuant to section 363(c)(1).

17.     The Debtors do not believe that section 363(b)(1), which authorizes the sale of property of the estate other than in the ordinary course of business, applies to the Sale.  Even if section 363(b)(1) did apply, however, authorization of the Sale would be appropriate because the Debtors have a sound business justification for the Sale.  *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under section 363(b) when there is a legitimate business justification); *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983) ("Section 363(b) of the Code seems on its face to confer upon the bankruptcy judge virtually

unfettered discretion to authorize the use, sale or lease, other than in the ordinary course of business, of property of the estate.").

18.     In determining whether a sale satisfies the business judgment standard, courts in the Third Circuit require: (i) that there be sound business reasons for the sale; (ii) that accurate and reasonable notice of the sale be given; (iii) that the sale yield an adequate price, *i.e.*, one that is fair and reasonable; and (iv) that the parties to the sale have acted in good faith. *See*, *e.g.*, *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).

19.     The proposed Sale unquestionably satisfies the foregoing test.  First, the Sale is supported by sound business reasons: following extensive development of the Property, the Debtors have concluded that selling the Property now, without incurring the costs of formally listing and marketing the Property, pursuant to the Purchaser's best and final, all cash offer is the best way to maximizing value for the Debtors' estates.  Sharp Decl., ¶ 4.  Second, the Debtors have provided reasonable and adequate notice of the sale to interested parties by serving notice of this Motion in accordance with Local Rule 9013-1(m) and the Noticing Order, and submit that no other or further notice is necessary.  Third, the Debtors believe that the Purchase Agreement and all cash purchase price reflected therein represent a fair and reasonable offer for the Property, which the Seller is selling for a price exceeding its purchase price by $10,950,000, and which the Debtors have determined is a reasonable sale price relative to comparable properties in the market in which the Property is located.  Sharp Decl., ¶ 4.  The Purchase Agreement reflects a best and final, all cash offer, and the Debtors were unable to obtain a better purchase price on better terms over the course of the three years spent developing the Property.

*Id.* Fourth, the Debtors submit that the Purchase Agreement was the product of good faith, arm's-length negotiations between the Purchaser and the Seller. Sharp Decl., ¶ 6.

20. The Purchaser is not related to or an affiliate of the Debtors or any of their insiders or former insiders. *Id.* Other than as expressly disclosed in paragraph 7 *supra*, with respect to Messrs. Giese and Rosenfeld, no non-debtor affiliate or current or former officer, director, employee, managing member or affiliate of any of the Debtors (other than Seller) is a party to, or broker in connection with, the Sale. Accordingly, the Debtors believe that the Purchaser should be entitled to the protections of section 363(m) of the Bankruptcy Code.

## II. The Debtors Should Be Permitted to Sell the Property Free and Clear

21. Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property free and clear of liens, claims, encumbrances, and other interests if any one of the following conditions is satisfied:

(1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

(2) the [lienholder or claimholder] consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) [the lienholder or claimholder] could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

22. Because section 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the proposed Sale of the Property.[4] *See*

---

[4] Moreover, if a holder of a lien, claim, encumbrance, or other interest receives the requisite notice of this Motion and does not object within the prescribed time period, such holder will be deemed to have consented to the proposed Sale, and the Property may then be sold free and clear of such holder's liens, claims, encumbrances, and

*Folger Adam Sec., Inc. v. De Matteis/MacGregor, J.V.*, 209 F.3d 252, 257 (3d Cir. 2000) (section 363(f) authorizes the sale of a debtor's assets free and clear of all liens, claims, and interests if "any one of [the] five prescribed conditions" is satisfied); *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) (property may be sold "free and clear" if at least one of the subsections of section 363(f) is met); *In re DVI, Inc.*, 306 B.R. 496, 504 (Bankr. D. Del. 2004) (upholding sale of debtors' property free and clear where there was a bona fide dispute).

23.   The Debtors will satisfy section 363(f)(2) with respect to the Fund Liens. The Funds have consented to the Sale free and clear of all liens, because the Sale provides the most effective, efficient, and timely approach to maximizing value with respect to the Property.

24.   As further detailed in the DIP Motion, the noteholders of certain of the Debtors (the "Noteholders") may hold security interests in the underlying loan documents for mortgage loans extended from such Debtors to the Debtor entities that individually own the Debtors' properties. However, the Debtors contend that no Noteholder has perfected any such security interest. Accordingly, to the extent any Noteholder contends that it holds a valid lien on the Property, such lien is subject to bona fide dispute, and the Debtors may sell the Property free and clear of such purported lien under § 363(f)(4).

### III.   The Debtors Should Be Permitted to Pay or Hold, as Applicable, the Broker Fees

25.   Section 105(a) of the Bankruptcy Code empowers a court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." The purpose of section 105(a) of the Bankruptcy Code is to ensure a

---

other interests pursuant to the terms proposed herein. *See*, *e.g.*, *Veltman v. Whetzel*, 93 F.3d 517, 521 (8th Cir. 1996) (failure to object to notice of sale or attend hearing deemed consent to sale for purposes of section 363 of the Bankruptcy Code); *In re Enron Corp.*, No. 01-16034 (AJG), 2004 WL 5361245, at *2 (Bankr. S.D.N.Y. Feb. 5, 2004) (same); *Hargrave v. Pemberton (In re Tabore, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (same); *In re Christ Hosp.*, 502 B.R. 158, 174 (Bankr. D.N.J. 2013), *aff'd*, No. CIV.A. 14-472 ES, 2014 WL 4613316 (D.N.J. Sept. 12, 2014) ("Given adequate notice, failure to object to a § 363 sale has been found to constitute consent per § 363(f)(2) to a "free and clear" sale of the non-objector's interests in property being sold.") (citations omitted).

bankruptcy court's "power to take whatever action is appropriate or necessary in aid of the exercise of [its] jurisdiction." Collier on Bankruptcy ¶ 2-105.01 (16th rev. ed. 2017); *see also Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327, 336 (2d Cir. 1999) (same). Further, under the "necessity of payment rule" or the "doctrine of necessity,"[5] courts often allow the immediate payment of prepetition claims. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824, 826 (Bankr. D. Del. 1999) (allowing payment of pre-petition vendor claims because such claims were "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (applying the necessity of payment doctrine in evaluating payment of prepetition obligations). Indeed, courts in this District and elsewhere have invoked the equitable powers available under section 105(a) and the doctrine of necessity to authorize the postpetition payment of prepetition claims where payment is necessary to preserve the going concern value of a debtor's business.

26. The Debtors submit that holding a portion of the Seller's Broker Fees and paying the remainder of the Seller's Broker Fees and the Purchaser's Broker Fees is essential to ensure that the Debtors are able to close the Sale of the Property, and thus is essential to the Debtors' efforts to maximize value with respect to the Property. Without the ability to close the Sale in short order, the Debtors would likely lose the Purchaser and would be forced to begin a search for a replacement purchaser (who may not be willing to make as favorable of an offer on the Property).

---

[5] This doctrine, first articulated by the United States Supreme Court in *Miltenberger v. Logansport, C&S W. R. Co.*, 106 U.S. 286, 311-12 (1882), recognizes the existence of judicial power to authorize a debtor to pay pre-petition claims in certain situations.

## REQUEST FOR WAIVER OF STAY

27. Any delay in permitting the Debtors to close the Sale could jeopardize the Sale with the Purchaser and therefore would be detrimental to the Debtors, their creditors, and their estates. Accordingly, and to successfully implement the foregoing, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of any order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## NOTICE

28. The Debtors have provided notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the DIP Lender; (iii) counsel for the Committee; (iii) counsel for the Noteholder Group, (iv) counsel for the Unitholder Group, (v) all Noteholders known by the Debtors to have interests in any loan documents associated with the Property; (vi) all contractors and contract counterparties known by the Debtors to have been associated with the Property; (vii) the Title Insurer, (viii) the Seller's Brokers, (ix) Adam Rosenfeld; (x) the Purchaser's Broker, and (xi) all parties that have requested notice in these Chapter 11 Cases pursuant to Local Rule 2002-1. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of page intentionally left blank]*

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form filed herewith, granting the relief requested herein and such other and further relief as may be just and proper under the circumstances.

Dated: March 15, 2018
Wilmington, Delaware

*/s/ Betsy L. Feldman*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Sean M. Beach (No. 4070)
Edmon L. Morton (No. 3856)
Ian J. Bambrick (No. 5455)
Betsy L. Feldman (No. 6410)
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Tel: (302) 571-6600
Fax: (302) 571-1253

-and-

KLEE, TUCHIN, BOGDANOFF & STERN LLP
Kenneth N. Klee (*pro hac vice*)
Michael L. Tuchin (*pro hac vice*)
David A. Fidler (*pro hac vice*)
Jonathan M. Weiss (*pro hac vice*)
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067

*Counsel and Proposed Counsel to the Debtors and Debtors in Possession*

01:22983499.4

14