# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| WOODBRIDGE GROUP OF COMPANIES, LLC, et al.,[1] | ) Case No. 17-12560-(KJC) |
| | ) |
| | ) Jointly Administered |
| | ) |
| | ) **Hearing Date: Oct. 24, 2018 at 10:00 a.m. (ET)** |
| Debtors. | ) **Obj. Deadline: Oct. 11, 2018 at 4:00 p.m. (ET)** |
| | ) |
| | ) **Re Docket No. 2397** |

## OBJECTION TO CONFIRMATION OF DEBTORS' FIRST AMENDED JOINT CHAPTER PLAN OF LIQUIDATION

Lise La Rochelle et al. and other objecting parties who are clients of the Sarachek Law Firm[2] (the "Dissenting Creditors"), by and through their undersigned counsel, hereby object to the *Debtors' First Amended Joint Chapter 11 Plan of Liquidation Of Woodbridge Group of Companies, LLC and Its Affiliated Debtors* [D.I. 2397] (the "Plan"). In support of their objection, the Dissenting Creditors state as follows:

### THE PLAN DOES NOT PROVIDE A PAYMENT MECHANISM SHOULD THE SECURED NOTEHOLDERS PREVAIL IN THEIR LITIGATION

1. The majority of the Dissenting Creditors are individuals who are over 65 years old that invested money in various of the Debtors' real properties because in exchange for their investment they were provided with a note and assignment of an interest in a mortgage that was secured by liens in those properties.

---

[1] The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14225 Ventura Boulevard #100, Sherman Oaks California 91423. The complete list of Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the noticing and claims agent at www.gardencitygroup.com/cases/wgc.

[2] All of the Objecting parties are fully listed in the 2019 Statement filed The Sarachek Law Firm on August 21, 2018 [Docket No. 2385]

2. At a hearing on February 13, 2018, in response to an objection to the Motion For Interim and Final Post-Petition Secured Financing filed by The Sarachek Law Firm, the Bankruptcy Court stated that in order to determine the validity and priority of a security interest in real property, it would be necessary for the parties to initiate an adversary proceeding. As the Debtors and Creditors' Committees did not want to address this issue, the Dissenting Creditors filed a "test" case on March 27, 2018 seeking declaratory relief that certain noteholders (the "Plaintiffs"), had a perfected security interest in a property of the Debtor known as Owlwood [D.I. 840, Case No. 18-50371] (the "Adversary Proceeding"). The Debtors filed a motion to dismiss the Adversary Proceeding on June 18, 2018 [D.I. 7]. After reviewing the motion to dismiss, the Plaintiffs realized that if the Debtors were correct that they had committed fraud, Plaintiffs over 65 were entitled to treble damages under the California Elder Abuse statute. Accordingly, Plaintiffs filed a First Amended Complaint on July 17, 2018 to add an additional count against the Debtors estates stating that the Debtors actions, if fraudulent, violated the California Elder Abuse Act which governs individuals over 65 years of age [D.I. 12]. Debtors filed a motion to dismiss on August 14, 2018 [D.I. 15] to which the Plaintiff's responded on September 4, 2018 [D.I. 21]. A hearing was held on the Motion to Dismiss on September 25, 2018 before the Bankruptcy Court.

3. On October 4, 2018, an additional adversary proceeding was filed asserting claims of elder abuse on behalf of the additional Dissenting Creditors who were over 65 years of age [D.I. 2739, Case No. 18-50880].

4. The Bankruptcy Court issued an opinion and Order on October 5, 2018 granting the Debtors' motion to dismiss, among others, the claims asserting that the Plaintiffs hold perfected security interests in the Owlwood property [D.I. 26, 27].

5. On October 9, 2018, the Plaintiffs filed their Notice of Appeal of the Court's ruling [D.I. 28].

## SUMMARY OF ARGUMENT

6. The Debtors' plan must not be confirmed because it denies secured creditors their right to be paid 100% on real property in which they have an interest in the proceeds. Most troubling is that the Plan provides for substantive consolidation of all of the Debtors, however, this essential ingredient of the Plan requires proof, and to date, there has been no evidence provided to creditors that the corporate entities of over 306 companies should be disregarded. The Debtors scream "Ponzi, ponzi, ponzi," but have not released a detailed record of this fact. Unlike Bernard Madoff who is in Federal prison, the Debtors' former CEO Robert Shapiro has not even been charged with a crime. Until this Court has received clear and convincing evidence that the Debtors' should be substantively consolidated, it violates the provisions of the Bankruptcy Code to "assume" substantive consolidation is the appropriate remedy. If substantive consolidation is not the appropriate remedy, then the Plan is defective because each of the 306 Debtor's creditors are entitled to vote as a separate class, and exercise their remedies with respect to that Debtor's assets.

## THE PLAN SEEKS TO EXTINGUISH THE SECURED NOTHEHOLDERS' SECURED CLAIMS THROUGH SUBSTANTIVE CONSOLIDATION

7. The Debtors have continuously alleged that the Woodbridge Group cases were a massive Ponzi scheme starting in 2012. This is the core assumption in the Plan. Based on this assumption, the Debtors have reduced each investor's allowed claim to the actual amount of dollars invested. In other words, if a noteholder invested $100,000 in 2014 and received $20,000

over the course of three years, using the Debtor's calculations that investor has a claim of $80,000. Although there have been a multitude of assertions by the Debtors as well as the various committees of a Ponzi scheme; there is no proof in the record. No forensic investigation has been conducted, and no testimony has been submitted by accountants, no examiners report has been submitted into the record, and no principal has been charged by authorities. Why hasn't the Department of Justice or the Attorney General's Office of California charged Robert Shapiro with fraud?

8. The Dissenting Creditors have raised this issue continuously but received no response other than mere references by the Unitholders Committee to an SEC investigation. However, in one of the most renown Ponzi scheme cases of recent times, In re Bernard L. Madoff, the principal, Bernard Madoff admitted to a Ponzi scheme and was convicted. In that case, there was clear and convincing evidence. It boggles the mind that neither the Debtors nor the Committees have taken the opportunity to provide the evidence.

9. Further, if in fact this was a Ponzi scheme, there is absolutely no justification for distinguishing between noteholders and unitholders as provided by the plan. In a true Ponzi scheme case, all creditors should receive the same consideration; noteholders and unitholders.

10. Mere allegations that an investment is actually a Ponzi scheme are insufficient. For example, in *American Cancer Society v. Cook*, 2012 U.S. App. LEXIS 5769 (5th Cir. 2012), the United States Court of Appeals for the Fifth Circuit reversed a fraudulent transfer judgment because a court appointed receiver had failed to prove the actual evidence of a Ponzi scheme, thus depriving her of the presumption of fraud in a fraudulent transfer claim.

11. This concept of proving a Ponzi scheme is crucial because the Debtors are asking the Court to approve a plan that seeks to extinguish all inter-company liens through substantive

consolidation primarily based on the idea that this was a Ponzi scheme.  It is not something that the Court should take lightly.  There are 9000 investors in Woodbridge and they have the right to know exactly what transpired with respect to their investments.

### VALID LIENS CANNOT BE EXTINGUISHED THROUGH A PLAN

12. As part of the Plan, the Debtors seek to extinguish the valid, existing liens between various debtor entities. Bankruptcy law has a well-established precedent for how to consolidate the assets and liabilities of related Debtors – substantive consolidation. The Plan specifically addresses that the parties will seek to substantively consolidate the various entities into two vehicles, one for the funds and one for the property companies.

13. The first issue this Court needs to address is can a plan avoid liens.  The answer, at least in chapter 13 cases, is unequivocally "no." The strongest case on point is from the Third Circuit, SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin), 530 F.3d 230 (3d Cir. 2008).  In that case, Judge Rendell uses very strong language condemning lien avoidance through a plan rather than through an adversary proceeding, as required by Bankruptcy Rule 7001(2). She cites the other circuits that have taken the same position.  There is no reason the same principles should not apply in chapter 11.  There is caselaw that indicates substantive consolidation may not upset a lien. *In re Gulfco Inv. Corp.*, 593 F.2d 921 (10th Cir. 1979); *In re I.R.C.C., Inc.*, 105 B.R. 237 (Bankr. S.D.N.Y. 1989).  The facts of the Gulfco cases are similar to the cases at hand.  Gulfco involved real estate debtors where the trial court determined that "accounting difficulties in evaluating the intercompany accounts and determining the assets and liabilities of each of the corporations…outweighed any individual equitable problems that might be present." <u>Gulfco</u> at 4.  However, the 10th Circuit recognized that "consolidation is not to be

used to defeat the security of secured creditors or to reduce a secured creditor to the status of an unsecured creditor." *Gulfco* at 61. All the Dissenting Creditors respectfully request that the Court recognize this principle.

14. The second problem with the Plan is a question of what acceptances the Debtors need under Section 1129(a)(10) to confirm a plan that covers multiple debtors. The simple answer: acceptances from each class of creditors of each of the 306 Debtors.

15. Section 1129(a)(10) of the Bankruptcy Code states: "If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider." In this case, it is necessary to look at each Debtor separately, prior to substantive consolidation. As there are 306 Debtors, the creditors of each Debtor must be viewed uniquely. As with all bankruptcy cases involving multiple Debtors, it is necessary to review the facts and circumstances of each debtor. The earlier debtors may be totally free from problems while the later debtors may be plagued with them.

### SECTION 1129(A)(10)'S SINGLE IMPAIRED CLASS ACCEPTANCE REQUIREMENT APPLIES TO EACH DEBTOR IN A JOINT PLAN

16. In *In re Tribune*, the 111 jointly administered debtors proposed a single joint chapter 11 plan. The plan did not provide for substantive consolidation of the debtors, so the plan was deemed to be a separate plan for each of them. Every impaired class for which an acceptance or rejection was submitted accepted the plan, though for some of the debtors, there were no acceptances or rejections from any impaired class. Section 1129(a)(10) requires, as a condition to confirmation, that a plan be accepted by at least one impaired class of claims. Under section 102(7), "the singular includes the plural", so the reference in section 1129(a)(10) to "a plan"

should not be read to apply on a "per plan", rather than a per debtor, basis, and entity separateness is fundamental. Section 1129's other confirmation conditions also speak in the singular, yet provisions such as subsection (a)(3)'s good faith test and subsection (a)(7)'s best interest test apply per debtor. Read consistently with those paragraphs, subsection (a)(10) should apply per debtor. Finally, joint administration, which has the effect of permitting a joint plan, should not have any substantive effect. Applying section 1129(a)(10)'s acceptance requirement on a per plan basis would have such an effect. Therefore, it applies on a per debtor basis. The court noted that, with proper notice in the disclosure statement or voting instructions, a non-voting class might appropriately be treated as an accepting class. *In re Tribune Co.*, 464 B.R. 126 (Bankr. D. Del. 2011).

17. The question in these cases is can you assume substantive consolidation when soliciting votes for a plan? At least one court has said "no." Where a plan proposes substantive consolidation of more than one debtor, confirmation requires the affirmative vote of each class of creditors, counted before consolidation. *In re Central European Industrial Dev. Co. LLC*, 288 B.R. 572 (Bankr. N.D. Cal. 2003). That is the exact case here, with the 306 Woodbridge Group of debtors.

## THE SUBSTANTIVE CONSOLIDATION SETTLEMENT AGREEMENT VIOLATES THE BANKRUPTCY CODE

18. Another seminal question presented by the Plan is do settlement agreements incorporated into a plan that requires substantive consolidation violate any of the Bankruptcy Code's requirements? At least one District Court in Delaware has concluded that it does. In *In re New Century TS Holdings, Inc.,* the related debtors had numerous intercompany claims, and many creditors' claims could be asserted against more than one debtor. The plan compromised

both of these issues, among others, by allowing multi-debtor claims at 130% of face amount against the parent debtor, disallowing the claims against the other debtors and providing for distribution of the aggregate assets of the debtors among all claims against them, pro rata, based on the allowed amounts of the claims. Each creditor class voted separately, and all but one accepted the plan. The District Court, however, noted that substantive consolidation combines the assets and liabilities of separate entities and distributes the combined assets among creditors of all the consolidated entities. "It is an equitable remedy to address harms a debtor has caused by disregarding separateness or entangling its affairs. It should be used sparingly. Although the aggregation here was a result of a compromise settlement and did not erase intercompany claims, it had the same adverse effect on some creditors as an ordinary consolidation and therefore effects a substantive consolidation without the requisite showing of need. Section 1123(a)(4) requires that each claim in a class receive the same treatment, except to the extent the holder of a claim elects less favorable treatment. The 130% settlement provides more advantageous treatment to the multi-debtor creditors within an accepting class and less favorable treatment to the creditors in the nonaccepting class. Thus, the plan violates section 1123(a)(4)." *Schroeder v. New Century Liquidating Trust (In re New Century TS Holdings, Inc.*, 407 B.R. 576 (D. Del. 2009). Lise La Rochelle invested in Owlwood. She would not have invested in the corner gas station. By substantively consolidating, the Plan is denying her the benefits of her choice.

19.     All of this discussion leads to the question of whether this Court should approve substantive consolidation in the Plan of these Debtors.  In the seminal case in this circuit denying substantive consolidation, the Third Circuit Court of Appeals in In Re: Owens Corning 419 F.3d

195 (3d Cir. 2005), established five principles of substantive consolidation.[3] Of particular relevance to this case is the fifth principle that holds substantive consolidation "...may not be used offensively (for example, having a primary purpose to disadvantage tactically a group of creditors in the plan process or to alter creditor rights.)" In Re: Owens Corning, supra, at 211.

20. Applying these principles, the Third Circuit established a test that substantive consolidation is a viable option if it can "be proven (absent consent) that the entities for whom substantive consolidation is sought that (i) pre-petition they disregarded separateness so significantly their creditors relied on the breakdown of entity borders and treated them as one legal entity... or (ii) post-petition their assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors. This rationale is meant to protect in bankruptcy the prepetition expectations of those creditors." In Re: Owens Corning, supra, at fn.19.

21. The Debtors cannot meet the Third Circuit's test for substantive consolidation. First, part one of the test cannot be met because the Dissenting Creditors prepetition relied on the separateness of the Debtor entities. Dissenting Creditors invested in a specific fund for the purpose of investing in a specific third-party property. The fact is that not all creditors in this case took the same risk. Some opted to invest in Owlwood, others opted to invest in Electra

---

[3] "(1) Limiting the cross-creep of liability by respecting entity separateness is a 'fundamental ground rule[]...' As a result, the general expectation of state law and of the Bankruptcy Code, and thus of commercial markets, is that courts respect entity separateness absent compelling circumstances calling equity (and even then, only possibly substantive consolidation) into play. (2) The harms substantive consolidation addresses are nearly always those caused by debtors (and entities they control) who disregard separateness... Harms caused by creditors typically are remedied by provisions found in the Bankruptcy Code....(3) Mere benefit to the administration of the case (for example, allowing a court to simplify a case by avoiding other issues or to make post petition accounting more convenient) is hardly a harm calling substantive consolidation into play. (4) Indeed, because substantive consolidation is extreme (it may affect profoundly creditors' rights and recoveries) and imprecise, this "rough justice" remedy should be rare and, in any event, one of last resort after considering and rejecting other remedies (for example, the possibility of more precise remedies conferred by the Bankruptcy Code). (5) While substantive consolidation may be used defensively to remedy the identifiable harms caused by entangled affairs, it may not be used offensively (for example, having a primary purpose to disadvantage tactically a group of creditors in the plan process or to alter creditor rights)." In Re: Owens Corning, supra, at 211.

Court, others chose constructions loans or units. Notwithstanding that the SEC maintains that all of the Debtors' offerings were securities, the Debtors themselves distinguished between noteholders and unitholders. Sales to unitholders were treated as sales of securities and had a five year lockup. The point is that all creditors should not be looped together in the same pot.

22. Second, part two of the test cannot be met because separating the Debtor entities does not hurt all creditors. In fact, approximately 75% of the aggregate claim value in this bankruptcy case is held by noteholders. If the Dissenting Creditors can establish that they have perfected security interests, their outcome is not improved with substantive consolidation.

23. Finally, one of the most absurd features of the Plan is that it treats noteholders and unitholders in a disparate manner.   If the Court accepts this disparate treatment, it must rule against substantive consolidation.  If the Court rules in favor of substantive consolidation, all creditors must be treated equally.

24.  For the above reasons, the Dissenting Creditors object to confirmation of the Plan.

Dated: October 11, 2018　　　　　　　**THE ROSNER LAW GROUP LLC**
　　　　　Wilmington, Delaware

*/s/ Jason A. Gibson*
Frederick B. Rosner (DE No. 3995)
Jason A. Gibson (DE No 6091)
824 N. Market St., Suite 810
Wilmington, DE 19801
Tel: (302) 777-1111
Email: gibson@teamrosner.com

　　　*-and-*

**THE SARACHEK LAW FIRM**

Joseph E. Sarachek (NY Bar No. 2163228)
101 Park Avenue, 27th Floor
New York, NY  10178
Telephone: (212) 808-7881
Facsimile: (646) 861-4950
Email: joe@sarscheklawfirm.com