**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12560 (KJC)<br><br>(Jointly Administered) |
| WOODBRIDGE GROUP OF COMPANIES, LLC and WOODBRIDGE MORTGAGE INVESTMENT FUND 1, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>JOANNE COX,<br><br>Defendant. | Adversary Proceeding No. 18-_____ (KJC) |

**ADVERSARY COMPLAINT FOR (I) AVOIDANCE AND RECOVERY OF
AVOIDABLE TRANSFERS; (II) DISALLOWANCE OF CLAIM PENDING
RECOVERY OF AVOIDABLE TRANSFERS; (III) DECLARATORY RELIEF
REGARDING LACK OF VALID, PERFECTED, ENFORCEABLE SECURITY
INTEREST; AND (IV) AVOIDANCE OF ANY ASSERTED SECURITY
INTERESTS OR OTHER LIENS**

---

[1]      The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at www.gardencitygroup.com/cases/WGC, or by contacting the undersigned counsel for the Debtors.

Plaintiffs Woodbridge Group of Companies, LLC ("Woodbridge Group") and Woodbridge Mortgage Investment Fund 1, LLC ("Fund 1," and together with Woodbridge Group, "Plaintiffs"), as and for their complaint against defendant Joanne Cox ("Defendant"), hereby allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs and hundreds of affiliated entities are debtors and debtors-in-possession (collectively, the "Debtors") in a series of jointly administered chapter 11 cases styled *In re Woodbridge Group of Companies, LLC, et al.*, Case No. 17-12560 (KJC) (Bankr. D. Del.) (collectively, the "Bankruptcy Case") arising out of a long-running Ponzi scheme.  On October 26, 2018, the Court entered an order confirming the Debtors' *First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and Its Affiliated Debtors* (the "Plan"), under which the vast majority of prepetition noteholder claims are treated as Class 3 Standard Note Claims.  Class 3 Standard Note Claims are unsecured claims under the Plan, and the holders of such claims will receive recoveries based on a netting process calculated by subtracting the aggregate amount of all Prepetition Distributions received by the claimholder from the Outstanding Principal Amount of each Note Claim.[2]

2. Defendant is a holder of a Class 6 Non-Debtor Loan Note Claim (the "Claim"), which is one of a small minority of Note Claims arising from the "Riverdale" segment of the Debtors' prepetition operations.  Like holders of Class 3 Standard Note Claims, holders of Class 6 Non-Debtor Loan Note Claims do not have valid, enforceable, perfected liens or security

---

[2]     All capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan or the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and Its Affiliated Debtors* (the "Disclosure Statement"), as applicable.  All references to and descriptions of the Plan herein are qualified in their entirety by the Plan itself and by the Disclosure Statement, and nothing herein is intended to, or shall be construed to, modify the Plan or the Disclosure Statement.

interests, as detailed below.  Recognizing this, the Debtors gave holders of Class 6 claims (including Defendant) the option of voluntarily consenting to the reclassification of their Claim as a Class 3 Standard Note Claim, whereupon: (i) the Claim would be treated as if it had always been part of Class 3; (ii) Defendant would have affirmatively agreed to be bound by the Schedule of Principal Amounts and Prepetition Distributions reflected on the Ballot; and (iii) Defendant would have agreed to release all asserted Liens against any Estate Assets.

3.      Holders of Class 6 claims overwhelmingly elected to reclassify into Class 3.  Of the 51 Class 6 Ballots that were returned, 39 chose to opt-in to Class 3.  Defendant, however, declined to opt-in to Class 3.  Accordingly, as contemplated by Section 3.7 of the Plan, Plaintiffs bring this action to (i) avoid and recover monies previously paid to Defendant as fictitious profits, (ii) disallow Defendant's Claim pending repayment of the fictitious profits Defendant received prepetition; and (iii) obtain a final determination that Defendant's Claim is not actually secured by any perfected security interest.  Granting this relief will result in the reclassification of Defendant's Class 6 Claim as a Class 3 Standard Note Claim, *see* Plan § 3.7, and will require Defendant to repay all fictitious profits she received prepetition before she receives any recovery on her Class 3 Standard Note Claim.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over this adversary proceeding under sections 157 and 1334 of the Judicial Code (28 U.S.C. §§ 157 & 1334) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This adversary proceeding is a "core" proceeding within the meaning of section 157(b)(2)(A), (K), and (O) of the Judicial Code (28 U.S.C. § 157(b)(2)(A), (K), & (O)).  Plaintiffs consent to the entry of a final judgment by this Court to the extent that it is later

determined that the Court, absent consent of the parties, cannot enter final orders or judgments in this adversary proceeding consistent with Article III of the United States Constitution.

5.       Venue of this adversary proceeding is proper in this Court pursuant to sections 1408 and 1409 of the Judicial Code (28 U.S.C. §§ 1408 & 1409).

## THE PARTIES

6.       Plaintiffs are among the hundreds of Debtors in the Bankruptcy Case.  Plaintiffs filed voluntary petitions on December 4, 2017 (the "Petition Date"), and are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases.

7.       Defendant is a creditor of Fund 1, having invested $25,000 (twenty five thousand dollars) on or about November 30, 2016.  She is a party to that certain *Loan Agreement* dated as of November 30, 2016 (the "Loan Agreement"), a true and correct copy of which is attached hereto as **Exhibit A**.  She is specified as "Lender" under that certain *Promissory Note* dated as of November 30, 2016 (the "Promissory Note"), a true and correct copy of which is attached hereto as **Exhibit B**.  In total, Defendant received $1,260.38 (one thousand two hundred sixty dollars and thirty eight cents) in purported interest payments, as reflected on the schedule of prepetition distributions attached hereto as **Exhibit C**.  The precise transfers – including the transferor and the date and amount of each transfer – are detailed in Exhibit C.  Exhibit C also sets forth the following totals: (i) the transfers received within the 90 days preceding the Petition Date (the "90 Day Transfers"); and (ii) the transfers received within the two years preceding the Petition Date (the "Two Year Transfers").  The Two Year Transfers are inclusive of the 90 Days Transfers, but Plaintiffs do not seek to recover the same sum more than once.  Defendant declined to make the election described in Paragraph 2 when she returned her Ballot (which was received by the

Claims Agent after the October 8, 2018 deadline for creditors to submit their Ballots), a true and correct copy of which is attached hereto as **Exhibit D**.

**FACTUAL BACKGROUND**

8.      As the Court determined in its order confirming the Plan, since at least July 2012 and continuing until shortly before they sought bankruptcy protection, the Debtors were operated as a Ponzi scheme perpetrated by Robert Shapiro.  As part of this fraud, Shapiro used the Debtors to raise over one billion dollars from approximately 10,000 investors, who were told that they were investing money to be loaned with respect to particular properties owned by third parties, that those properties were worth substantially more than the loans against the properties, and that they would have the benefit of a stream of payments protected by security interests in the Debtors' loans to those third parties.

9.      In reality, these statements were lies.  The vast majority of investors' money was not used to make loans to third-party borrowers, and was instead commingled and used for an assortment of expenses, including maintaining a lavish lifestyle for Shapiro and her family, brokers' commissions, overhead (largely for selling even more Notes and Units to investors), and payment of principal and interest to existing investors.  The money that was used to acquire property (almost always owned by a disguised affiliate) cannot be traced to any specific investor. These are typical characteristics of Ponzi schemes.

10.     Defendant is among a small minority of investors who received documentation (here, the Loan Agreement and the Promissory Note) that purports to pertain to real property that was or is actually owned by a third-party, rather than by a disguised affiliate of the Debtors. Notwithstanding such documentation, however, the money that Defendant invested cannot actually be traced to any specific real property, but was instead comingled with other investors'

4

funds and Defendant does not have a security interest that is legally enforceable in this

Bankruptcy Case; nor do any other holders of Note Claims.

11.    Class 6 Non-Debtor Loan Note Claims were separately classified in the Plan on

account of a procedural issue related to the determination of their secured status.  The

comprehensive settlement embodied in the Plan eliminates all intercompany liens and thereby

vitiates the need to separately litigate whether any particular Class 3 Standard Note Claim is or is

not secured.  As the Disclosure Statement explains, however, this feature of the Plan does not

moot the issue of whether any Class 6 Non-Debtor Loan Note Claim is or is not secured:

> The Plan's comprehensive compromise and settlement resolves [the
> security interest] issue by providing that any Intercompany Claims that
> could be asserted by one Debtor against another Debtor will be
> extinguished immediately before the Effective Date with no separate
> recovery on account of any such Claims and any Intercompany Liens that
> could be asserted by one Debtor regarding any Estate Assets owned by
> another Debtor will be deemed released and discharged on the Effective
> Date.  As a result of this elimination of such Intercompany Claims and
> Intercompany Liens, there is no further need to litigate about whether any
> given Noteholder has a perfected security interest or not, nor about
> whether any given Noteholder has any specialized interest in any
> particular property (a very limited exception to this statement exists for the
> Noteholders with Non-Debtor Loan Note Claims, which will retain the
> ability to litigate whether they have enforceable security interests
> regarding the applicable non-debtor loans, although the Debtors do not
> believe any of these parties will ultimately prevail in such litigation).
> [Disclosure Statement at pp. 64–65.]

12.    The vast majority of creditors holding Class 6 Non-Debtor Loan Note Claims

elected on their Ballots to be reclassified as holders of Class 3 Standard Note Claims, thereby

avoiding the need for further litigation.  Defendant, however, did not so elect – hence the filing

of this adversary proceeding to fully and finally resolve the issue of secured status, as

contemplated in the Plan.  *See* Plan § 3.7.

13.    Finally, Defendant does not have any valid, perfected, enforceable security

interest.  At most, the Loan Agreement and Promissory Note purport to grant a security interest

in one Plaintiff's interest in a third-party loan.  Perfection of such a security interest requires

either: (i) the filing of a UCC-1 with the Delaware Secretary of State (as that Plaintiff is a

Delaware entity), or (ii) possession of the underlying third-party loan documents.  Defendant has

filed no UCC-1, and does not have possession of the underlying loan documents.  As such,

Defendant is not properly classified or treated as a secured creditor in this Bankruptcy Case.

## FIRST CLAIM FOR RELIEF

### Avoidance and Recovery of Actual Intent Fraudulent Transfers (Bankruptcy Code)

14.     Plaintiffs reallege and incorporate herein Paragraphs 1 through 13, as if fully set

forth herein.

15.     The Two Year Transfers constituted transfers of Plaintiffs' property.

16.     The Two Year Transfers were made by Plaintiffs with actual intent to hinder,

delay, or defraud their creditors insofar as such transfers were prepetition distributions of

fictitious profits from the Ponzi scheme.

17.     The Two Year Transfers were made to or for the benefit of Defendant.

18.     As a result of the foregoing, Plaintiffs are entitled to judgment pursuant to

Bankruptcy Code sections 548(a), 550(a), and 551: (a) avoiding the Two Year Transfers free and

clear of any claimed interest of Defendant, (b) directing that the Two Year Transfers be set aside,

and (c) recovering such Two Year Transfers or the value thereof from Defendant for the benefit

of the estate of Plaintiffs.

## SECOND CLAIM FOR RELIEF

### Avoidance and Recovery of Constructive Fraudulent Transfers (Bankruptcy Code)

19.     Plaintiffs reallege and incorporate herein Paragraphs 1 through 13, as if fully set

forth herein.

20.     The Two Year Transfers constituted transfers of Plaintiffs' property.

21.     The Two Year Transfers were made by Plaintiffs for less than reasonably equivalent value at a time when Plaintiffs (i) were insolvent; and/or (ii) were engaged or about to engage in business or a transaction for which any capital remaining with Plaintiffs were an unreasonably small capital; and/or (iii) intended to incur, or believed that Plaintiffs would incur, debts beyond their ability to pay as such debts matured.

22.     The Two Year Transfers were made to or for the benefit of Defendant.

23.     As a result of the foregoing, Plaintiffs are entitled to judgment pursuant to Bankruptcy Code sections 548(a), 550(a), and 551: (a) avoiding the Two Year Transfers free and clear of any claimed interest of Defendant, (b) directing that the Two Year Transfers be set aside, and (c) recovering such Two Year Transfers or the value thereof from Defendant for the benefit of the estate of Plaintiffs.

## THIRD CLAIM FOR RELIEF

### Avoidance and Recovery of Actual Intent Voidable Transactions (State Law)

24.     Plaintiffs reallege and incorporate herein Paragraphs 1 through 13, as if fully set forth herein.

25.     The Two Year Transfers constituted transfers of Plaintiffs' property.

26.     The Two Year Transfers were made by Plaintiffs with actual intent to hinder, delay, or defraud their creditors insofar as such transfers were prepetition distributions of fictitious profits from the Ponzi scheme.

27.     The Two Year Transfers were made to or for the benefit of Defendant.

28.     Each Plaintiff that made one or more of the Two Year Transfers has at least one creditor with an allowable unsecured claim for liabilities, which claim remained unsatisfied as of the Petition Date.

29.     The Two Year Transfers are avoidable under applicable law – California Civil Code section 3439.04(a)(1) and/or comparable provisions of law in other jurisdictions that have adopted the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act, or the Uniform Fraudulent Conveyance Act – by a creditor holding an allowed unsecured claim and thus by Plaintiffs pursuant to Bankruptcy Code section 544(b).

30.     As a result of the foregoing, Plaintiffs are entitled to judgment pursuant to Bankruptcy Code sections 544(b), 550(a), and 551: (a) avoiding the Two Year Transfers free and clear of any claimed interest of Defendant, (b) directing that the Two Year Transfers be set aside, and (c) recovering such Two Year Transfers or the value thereof from Defendant for the benefit of the estate of Plaintiffs.

### FOURTH CLAIM FOR RELIEF

**Avoidance and Recovery of Constructive Voidable Transactions (State Law)**

31.     Plaintiffs reallege and incorporate herein Paragraphs 1 through 13, as if fully set forth herein.

32.     The Two Year Transfers constituted transfers of Plaintiffs' property.

33.     The Two Year Transfers were made by Plaintiffs for less than reasonably equivalent value at a time when Plaintiffs (i) were insolvent; and/or (ii) were engaged or was about to engage in business or a transaction for which any capital remaining with Plaintiffs were an unreasonably small capital; and/or (iii) intended to incur, or believed that they would incur, debts beyond their ability to pay as such debts matured.

34.     The Two Year Transfers were made to or for the benefit of Defendant.

35.     At the times of, and/or subsequent to, each of the Two Year Transfers, each Plaintiffs that made one or more of the Two Year Transfers has at least one creditor with an allowable unsecured claim for liabilities, which claim remained unsatisfied as of the Petition Date.

36.     The Two Year Transfers are avoidable under applicable law – California Civil Code section 3439.04(a)(2) and/or comparable provisions of law in other jurisdictions that have adopted the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act or the Uniform Fraudulent Conveyance Act – by a creditor holding an allowed unsecured claim and thus by Plaintiffs pursuant to Bankruptcy Code section 544(b).

37.     As a result of the foregoing, Plaintiffs are entitled to judgment pursuant to Bankruptcy Code sections 544(b), 550(a), and 551: (a) avoiding the Two Year Transfers free and clear of any claimed interest of Defendant, (b) directing that the Two Year Transfers be set aside, and (c) recovering such Two Year Transfers or the value thereof from Defendant for the benefit of the estate of Plaintiffs.

## FIFTH CLAIM FOR RELIEF

### Avoidance and Recovery of Preferential Transfers

38.     Plaintiffs reallege and incorporate herein Paragraphs 1 through 13, as if fully set forth herein.

39.     The 90 Day Transfers constituted transfers of Plaintiffs' property.

40.     The 90 Day Transfers were made to or for the benefit of Defendant on account of an antecedent debt and while Plaintiffs were insolvent.  The affirmative assertion that Plaintiffs were insolvent at the times of the 90 Day Transfers is not intended to and does not shift the

burden of proof or alter the presumption of insolvency provided by Bankruptcy Code section 547(f).

41.     By virtue of the 90 Day Transfers, Defendant received more than Defendant would have received if the 90 Day Transfers had not been made and Defendant received a distribution pursuant to a chapter 7 liquidation.

42.     As a result of the foregoing, Plaintiffs are entitled to judgment pursuant to Bankruptcy Code sections 547(b), 550(a), and 551: (a) avoiding the 90 Day Transfers free and clear of any interest of Defendant, (b) directing that the 90 Day Transfers be set aside, and (c) recovering the 90 Day Transfers or the value thereof from Defendant for the benefit of the estates of Plaintiffs.

**SIXTH CLAIM FOR RELIEF**

**Objection to Claim (Bankruptcy Code Section 502(d))**

43.     Plaintiffs reallege and incorporate herein Paragraphs 1 through 42, as if fully set forth herein.

44.     The Claim is not allowable because:

   a.   Defendant has received property, including one or more of the 90 Day Transfers or the Two Year Transfers, recoverable under Bankruptcy Code section 550; and/or

   b.   Defendant has received a transfer, including one or more of the 90 Day Transfers or the Two Year Transfers, avoidable under Bankruptcy Code section 544, 547, or 548.

45.     In either event, the Claim must be disallowed under Bankruptcy Code section 502(d) unless and until Defendant has fully repaid the amount, or turned over any such property, for which she is liable under Bankruptcy Code section 550.

10

## SEVENTH CLAIM FOR RELIEF

**Declaratory Judgment Regarding Lack of Valid, Perfected, Enforceable Security Interest**

46.     Plaintiffs reallege and incorporate herein Paragraphs 1 through 13, as if fully set forth herein.

47.     An actual controversy has arisen and exists between Plaintiffs and Defendant regarding whether Defendant has any valid, perfected, enforceable security interest in any property of the Debtors' estates.  Defendant was provided the opportunity to voluntarily consent to being treated the same as all other investors who were defrauded by Shapiro's Ponzi scheme, but she declined that opportunity, thus necessitating this adversary proceeding.

48.     The controversy between Plaintiffs and Defendant is real and immediate, not actual or hypothetical, and its resolution will determine Defendant's entitlements under the Plan.

49.     This Court has the power and authority to resolve the controversy.

50.     Plaintiffs are entitled to a declaration that Defendant has no valid, perfected, enforceable security interest in any property of the Debtors' estates.

## EIGHTH CLAIM FOR RELIEF

**Avoidance of Any Asserted Security Interests or Other Liens**

51.     Plaintiffs reallege and incorporate herein Paragraphs 1 through 13, as if fully set forth herein.

52.     Bankruptcy Code section 544(a) grants a bankruptcy trustee (which includes Plaintiffs, *see* 11 U.S.C. § 1107(a)) the power to avoid transfers of property of the debtor, including the granting of a security interest or other lien, that would be voidable by certain parties outside of bankruptcy.  More specifically, section 544(a)(1) vests the trustee with the rights, powers, and avoidance abilities of "a creditor that extends credit to the debtor at the time

of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists."  11 U.S.C. § 544(a)(1).  Section 544(a)(3) separately vests the trustee with the rights, powers, and avoidance abilities of "a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists."  *Id.* § 544(a)(3).

53.    Whether because of the lack of perfection or otherwise, any security interests or other liens that Defendant could assert with respect to any property of the Debtors or their bankruptcy estates would be avoidable under applicable non-bankruptcy law by either a judicial lien creditor, or a bona fide purchaser of real property, or both.  As such, Plaintiffs can similarly avoid any such security interests or liens in the Bankruptcy Case.

54.    Plaintiffs are entitled to a judgment avoiding any asserted security interests or other liens asserted by Defendant pursuant to Bankruptcy Code section 544(a).

## **PRAYER FOR RELIEF**

By reason of the foregoing, the Court should enter judgment in favor of Plaintiffs and against Defendant:

a. On the first, second, third, and fourth claims for relief, (i) avoiding the Two Year Transfers free and clear of any claimed interest of Defendant, (ii) directing that the Two Year Transfers be set aside, and (iii) ordering Defendant to pay to Plaintiffs the amount of the Two Year Transfers;

b. On the fifth claim for relief, (i) avoiding the 90 Day Transfers free and clear of any claimed interest of Defendant, (ii) directing that the 90 Day Transfers be set aside, and (iii) ordering Defendant to pay to Plaintiffs the amount of the 90 Day Transfers;

c.  On the sixth claim for relief, (i) disallowing the Claim under Bankruptcy Code section 502(d) unless and until Defendant has paid the amount, or turned over any such property, for which she is liable under Bankruptcy Code section 550, and (ii) determining the correct amount of the Outstanding Principal Amounts and Prepetition Distributions associated with the Claim for all purposes under the Plan upon repayment of the amount for which Defendant is liable under Bankruptcy Code section 550;

d.  On the seventh claim for relief, (i) declaring that Defendant has no valid, perfected, enforceable security interest in any property of the Debtors' estates, and (ii) reclassifying Defendant's Class 6 Non-Debtor Loan Note Claim as a Class 3 Standard Note Claim;

e.  On the eighth claim for relief, avoiding any security interests or other liens that Defendant may assert regarding any property of the Debtors' estates; and

f.  On all claims for relief, awarding Plaintiffs prejudgment interest as permitted by law, costs of suit, and such other and further relief as may be necessary or appropriate.

Dated:  November 16, 2018
Wilmington, Delaware

*/s/ Michael S. Neiburg*

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Sean M. Beach (No. 4070)
Edmon L. Morton (No. 3856)
Michael S. Neiburg (No. 5275)
Ian J. Bambrick (No. 5455)
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Tel:   (302) 571-6600
Fax:   (302) 571-1253

-and-

KLEE, TUCHIN, BOGDANOFF & STERN LLP
Kenneth N. Klee (*pro hac vice*)
Michael L. Tuchin (*pro hac vice*)
David A. Fidler (*pro hac vice*)
Jonathan M. Weiss (*pro hac vice*)
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067

*Counsel to Plaintiffs*