# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>                  Debtors. | Chapter 11<br><br>Case No. 17-12560 (KJC)<br><br>(Jointly Administered)<br><br>**Hearing Date:**<br>    December 19, 2018 at 2:00 p.m. (ET)<br>**Objection Deadline:**<br>    December 11, 2018 at 4:00 p.m. (ET) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE SALE OF 376 CRYSTAL CANYON DRIVE, CARBONDALE, COLORADO PROPERTY OWNED BY THE DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) APPROVING THE RELATED PURCHASE AGREEMENT; AND (III) GRANTING RELATED RELIEF**

Woodbridge Group of Companies, LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") hereby move the court (this "Motion") for entry of an order (the "Sale Order"), substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (i) authorizing the sale (the "Sale") of certain real property owned by the Debtor Sachs Bridge Investments, LLC (the "Seller") located at 376 Crystal Canyon Drive, Carbondale, Colorado, 81623 (the "Land"), together with Seller's right,

---

[1] The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at www.gardencitygroup.com/cases/WGC, or by contacting the undersigned counsel for the Debtors.

01:23901421.1

title, and interest in and to the buildings located thereon and any other improvements and fixtures located thereon (collectively, the "Improvements" and together with the Land, the "Real Property"), and any and all of the Seller's right, title, and interest in and to the tangible personal property and equipment listed in the Purchase Agreement and remaining on the Real Property as of the date of the closing of the Sale (collectively, the "Personal Property" and, together with the Real Property, the "Property") on an "as is, where is" basis, free and clear of any and all liens, claims, encumbrances, and other interests to Jan Silfverskiold (together with any assignee, the "Purchaser") pursuant to the terms and conditions of that certain Contract to Buy and Sell Real Estate dated as of October 13, 2018 (as may be amended, supplemented, or otherwise modified from time to time, the "Purchase Agreement") by and between the Seller and the Purchaser, a copy of which is attached as Exhibit 1 to the Sale Order; (ii) authorizing and approving the terms of the Purchase Agreement, and (iii) granting certain related relief. In support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief

requested herein are 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rule 6004, and Local Rules 2002-1, 4001-2, and 6004-1.

## CASE BACKGROUND

2.      On December 4, 2017, 279 of the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code. Thereafter, on February 9, 2018, March 9, 2018, March 23, 2018, and March 27, 2018, additional affiliated Debtors (27 in total) commenced voluntary cases under chapter 11 of the Bankruptcy Code (collectively, the "Petition Dates"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

3.      The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. No trustee has been appointed in the Chapter 11 Cases. An official committee of unsecured creditors (the "Committee") was appointed in the Chapter 11 Cases on December 14, 2017 [D.I. 79]. On January 23, 2018, the Court approved a settlement providing for the formation of an ad hoc noteholder group (the "Noteholder Group") and an ad hoc unitholder group (the "Unitholder Group") [D.I. 357].

## THE SALE

4.      The Property. As further detailed in the *Declaration of Bradley D. Sharp in Support of Debtors' Motion to Sell 376 Crystal Canyon Drive, Carbondale, Colorado Property* filed on the date hereof (the "Sharp Declaration"), the Property consists of a vacant lot situated in the River Valley Ranch community in Carbondale, Colorado. The Seller purchased the Real Property in July 2016 for $120,000 as part of a bulk purchase of lots in the area with the intention of holding the various lots for future sale as vacant lots or for future possible development. Sharp Decl. ¶ 3. Ultimately, the Debtors determined that there would be no

benefit to constructing a new home on the Real Property given the existing inventory in the community. *Id.* Accordingly, the Debtors have determined that selling the Property now on an "as is" basis best maximizes the value of the Property. *Id.* ¶ 4. The Property has not been formally listed on the multiple-listing service; however, the Debtors have listed comparable lots in the River Valley Ranch community, and all the Debtors' listings for lots in the community state that other, similar lots are available for purchase upon inquiry to the listing broker. *Id.* In addition, all the Debtors' available lots for purchase in the Aspen Glen and River Valley Ranch areas (including the Property) have been marketed through announcements to the brokerage community and advertisements in various publications. *Id.* The Purchaser's all cash offer under the Purchase Agreement is the highest and otherwise best offer (and the only offer) the Debtors have received for the Property. *Id.* Accordingly, the Debtors determined that selling the Property to the Purchaser is the best way to maximize the value of the Property. *Id.*

5. <u>The Purchase Agreement</u>.[2] On October 11, 2018, the Purchaser made an all cash offer for the Property in the amount of $150,000. *Id.* at ¶ 5. The Debtors verbally countered the Purchaser's offer at $200,000, which the Purchaser rejected. *Id.* The Purchaser then raised its offer to $165,000, which the Debtors rejected. *Id.* On October 14, 2018, the Purchaser further raised its offer to $180,000. *Id.* The Debtors believe that this all cash purchase price provides significant value, and accordingly, the Seller countersigned the Purchase Agreement on October 15, 2018. *Id.* Under the Purchase Agreement, the Purchaser agreed to purchase the Property for $180,000, with a $5,400 initial cash deposit, and the balance of $174,600 to be paid in cash at closing, with no financing contingencies. *Id.* The deposit is being held by Commonwealth Title Company of Garfield County, Inc. (the "<u>Title Insurer</u>") as escrow agent.

---

[2] In the event of a conflict between the description of the Purchase Agreement set forth in this Motion and the Purchase Agreement, the Purchase Agreement shall control.

6. <u>Broker's Fees</u>. In connection with marketing the Property, the Debtors worked with Aspen Snowmass Sotheby's International Realty ("<u>Sotheby's</u>"), a non-affiliated third-party brokerage company, as the transaction broker for both parties.[3] A true and correct copy of the Exclusive Right-To-Sell Listing Contract (the "<u>Broker Agreement</u>") is attached hereto as <u>Exhibit B</u>. The Broker Agreement provides Sotheby's with the exclusive and irrevocable right to market the Property for a fee in the amount of 5% of the contractual sale price (the "<u>Broker Fee</u>"). The Purchase Agreement is signed by Laura Gee of Sotheby's as the transaction broker. No broker fees are payable in connection with the Sale other than the Broker Fee to Sotheby's.

7. In the Debtors' business judgment, closing the Sale with Purchaser (and paying the associated Broker Fee) pursuant to the offer set forth in the Purchase Agreement is the best way to maximize value for the Debtors' estates and is more favorable than continuing to hold and market the Property for sale and thereby risking obtaining a lower purchase price for the Property on less favorable terms, while incurring additional carrying costs for the Property.

8. <u>Other Closing Costs</u>. In addition to the Broker Fee, the Seller must also satisfy certain required costs associated with the sale and transfer of title of the Property to comply with the Purchase Agreement (the "<u>Other Closing Costs</u>"). The Other Closing Costs include, but are not limited to, recording fees, title insurance policy costs, prorated property taxes, city and county transfer taxes, and other items noted on the title report for the Property. The Debtors also rely on outside vendors for escrow and title services in connection with property sales. In general, vendors are mutually agreed on by the applicable Debtors and a purchaser prior to the acceptance of an offer.

---

[3] The particular broker at Sotheby's who is serving as Seller's broker, Laura Gee, is a ***former*** employee of Woodbridge Realty of Colorado, LLC, which is controlled by Robert Shapiro.

9. Absent authority to pay Other Closing Costs, the Seller will be unable to close the Sale and receive sale proceeds. If the Seller is unable to make these payments, the Purchaser may be entitled to rescind the Purchase Agreement or assert other remedies that could lead to additional and unnecessary claims. Accordingly, the Debtors seek the ability to pay Other Closing Costs in connection with the Sale.

10. Proceeds of the Sale. All proceeds of the Sale (net of the Broker Fee and Other Closing Costs) shall be paid to the Debtors into the general account of Debtor Woodbridge Group of Companies, LLC, and such net proceeds shall be disbursed and otherwise treated by the Debtors in accordance with the *Final Order on Debtors' Motion for Entry of Interim and Final Orders (I) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, and 552 Authorizing Debtors to (A) Obtain Postpetition Secured Financing, (B) Use Cash Collateral, (C) Grant Adequate Protection to Prepetition Secured Parties; (II) Modifying the Automatic Stay; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c); and (IV) Granting Related Relief* [D.I. 724] (the "Final DIP Order").[4]

## RELIEF REQUESTED

11. Pursuant to sections 105(a) and 363 of the Bankruptcy Code, the Debtors request entry of the Sale Order substantially in the form of Exhibit A hereto (i) authorizing the closing of the Sale pursuant to the Purchase Agreement, (ii) authorizing and approving the Purchase Agreement, and (iii) granting related relief.

12. The Debtors further request that filing of a copy of an order granting the relief sought herein in Garfield County, Colorado may be relied upon by the Title Insurer to issue title insurance policies on the Property.

---

[4] A search of the land records as reflected in the title report dated October 18, 2018 (attached as Exhibit C hereto) reveals no cognizable interest of any lienholder (whether a Debtor lienholder or otherwise).

13. The Debtors further request authority to pay the Broker Fee to Sotheby's out of the sale proceeds in the amount of up to 5% of gross sale proceeds.

**BASIS FOR RELIEF REQUESTED**

**I.     Section 363 of the Bankruptcy Code Authorizes the Proposed Sale**

14. Section 363(c)(1) of the Bankruptcy Code provides that where, as here, the Debtors are authorized to operate their business under section 1108 of the Bankruptcy Code, the Debtors may enter into transactions, including the sale of property of the estate, in the ordinary course of business, without notice or a hearing. 11 U.S.C. § 363(c)(1). Because the Debtors believe that the Sale is within the ordinary course of their operations, the Sale should be approved pursuant to section 363(c)(1).

15. The Debtors do not believe that section 363(b)(1), which authorizes the sale of property of the estate other than in the ordinary course of business, applies to the Sale. Even if section 363(b)(1) did apply, however, authorization of the Sale would be appropriate because the Debtors have a sound business justification for the Sale. *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under section 363(b) when there is a legitimate business justification); *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983) ("Section 363(b) of the Code seems on its face to confer upon the bankruptcy judge virtually unfettered discretion to authorize the use, sale or lease, other than in the ordinary course of business, of property of the estate.").

16. In determining whether a sale satisfies the business judgment standard, courts in the Third Circuit require: (i) that there be sound business reasons for the sale; (ii) that accurate and reasonable notice of the sale be given; (iii) that the sale yield an adequate price, *i.e.*, one that is fair and reasonable; and (iv) that the parties to the sale have acted in good faith. *See*, *e.g.*,

*Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).

17. The proposed Sale unquestionably satisfies the foregoing test. <u>First</u>, the Sale is supported by sound business reasons: after marketing the Property, including through announcements to the brokerage community and advertisements in various publications, the Debtors have concluded that selling the Property on an "as is" basis pursuant to the Purchaser's all cash offer is the best way to maximize value for the Debtors' estates. Sharp Decl. ¶ 4. <u>Second</u>, the Debtors have provided reasonable and adequate notice of the sale to interested parties by serving notice of this Motion in accordance with Local Rule 9013-1(m), and submit that no other or further notice is necessary. <u>Third</u>, the Debtors believe that the Purchase Agreement and the all cash purchase price reflected therein represent a fair and reasonable offer for the Property relative to comparable properties in the market in which the Property is located. Sharp Decl. ¶ 4. The Purchaser's all cash offer under the Purchase Agreement is the highest and otherwise best offer (and the only offer) the Debtors have received for the Property and it exceeds the Seller's purchase price by $60,000. *Id.* <u>Fourth</u>, the Debtors submit that the Purchase Agreement was the product of good faith, arm's-length negotiations between the Purchaser and the Seller. *Id.* ¶ 6.

18. The Purchaser is not related to or an affiliate of the Debtors or any of their insiders or former insiders. *Id.* No non-debtor affiliate or current or former officer, director, employee, managing member or affiliate of any of the Debtors (other than Seller) is a party to, or broker in connection with, the Sale, other than as set forth in footnote 3 with respect to Ms. Gee's service as Seller's broker. Accordingly, the Debtors believe that the Purchaser should be entitled to the protections of section 363(m) of the Bankruptcy Code.

## II. The Debtors Should Be Permitted to Sell the Property Free and Clear

19. Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property free and clear of liens, claims, encumbrances, and other interests if any one of the following conditions is satisfied:

(1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

(2) the [lienholder or claimholder] consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) [the lienholder or claimholder] could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

20. Because section 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the proposed Sale of the Property.[5] *See Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 257 (3d Cir. 2000) (section 363(f) authorizes the sale of a debtor's assets free and clear of all liens, claims, and interests if "any one of [the] five prescribed conditions" is satisfied); *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) (property may be sold "free and clear" if at least one of the

---

[5] Moreover, if a holder of a lien, claim, encumbrance, or other interest receives the requisite notice of this Motion and does not object within the prescribed time period, such holder will be deemed to have consented to the proposed Sale, and the Property may then be sold free and clear of such holder's liens, claims, encumbrances, and other interests pursuant to the terms proposed herein. *See*, *e.g.*, *Veltman v. Whetzel*, 93 F.3d 517, 521 (8th Cir. 1996) (failure to object to notice of sale or attend hearing deemed consent to sale for purposes of section 363 of the Bankruptcy Code); *In re Enron Corp.*, No. 01-16034 (AJG), 2004 WL 5361245, at *2 (Bankr. S.D.N.Y. Feb. 5, 2004) (same); *Hargrave v. Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (same); *In re Christ Hosp.*, 502 B.R. 158, 174 (Bankr. D.N.J. 2013) ("Given adequate notice, failure to object to a § 363 sale has been found to constitute consent per § 363(f)(2) to a "free and clear" sale of the non-objector's interests in property being sold.") (citations omitted), *aff'd*, Civil Action No. 14-472 ES, 2014 WL 4613316 (D.N.J. Sept. 12, 2014).

subsections of section 363(f) is met); *In re DVI, Inc.*, 306 B.R. 496, 504 (Bankr. D. Del. 2004) (upholding sale of debtors' property free and clear where there was a bona fide dispute).

21. The Debtors are unaware of any liens, claims, encumbrances, or interests existing against the Property. However, to the extent any of the foregoing exist, the Debtors respectfully submit that they will satisfy one of the subsections of 363(f) with respect to any such lien, claim, encumbrance, or interest.

## **REQUEST FOR WAIVER OF STAY**

22. Any delay in permitting the Debtors to close the Sale could jeopardize the Sale with the Purchaser and therefore would be detrimental to the Debtors, their creditors, and their estates. Accordingly, and to successfully implement the foregoing, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of any order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## **NOTICE**

23. The Debtors have provided notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware, (ii) counsel to the DIP Lender, (iii) counsel for the Committee, (iv) counsel for the Noteholder Group, (v) counsel for the Unitholder Group, (vi) all Noteholders known by the Debtors to have interests in any loan documents associated with the Property, (vii) all contractors and contract counterparties known by the Debtors to have been associated with the Property, (viii) the Title Insurer, (ix) Sotheby's, and (x) all parties that, as of the filing of this Motion, have requested notice in these Chapter 11 Cases pursuant to Local Rule 2002-1. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form filed herewith, granting the relief requested herein and such other and further relief as may be just and proper under the circumstances.

Dated:   November 27, 2018
           Wilmington, Delaware

*/s/ Betsy L. Feldman*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Sean M. Beach (No. 4070)
Edmon L. Morton (No. 3856)
Ian J. Bambrick (No. 5455)
Betsy L. Feldman (No. 6410)
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Tel:   (302) 571-6600
Fax:   (302) 571-1253

-and-

KLEE, TUCHIN, BOGDANOFF & STERN LLP
Kenneth N. Klee (*pro hac vice*)
Michael L. Tuchin (*pro hac vice*)
David A. Fidler (*pro hac vice*)
Jonathan M. Weiss (*pro hac vice*)
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067

*Counsel to the Debtors and Debtors in Possession*

01:23901421.1

11