**EXHIBIT C**

**TITLE REPORT**

# Commonwealth Title Company of Garfield County, Inc.

**127 E. 5th Street**
**Rifle, CO 81650**
**Phone (970) 625-3300 / Fax (970) 625-3305**

**1322 Grand Avenue**
**Glenwood Springs, CO 81601**
**Phone (970) 945-4444 / Fax (970) 945-4449**

---

Date:   October 18, 2018

File No. 1810058 ANTIC

**Property Address. 376 Crystal Canyon Drive**, Carbondale
**Tax Information**

| | |
|---|---|
| **Listing Agent** | **Selling Agent** |
| Aspen Snowmass Sotheby's International Realty | Aspen Snowmass Sotheby's International Realty: |
| 415 East Hyman Avenue | 415 East Hyman Avenue |
| Aspen, CO 81611 | Aspen, CO 81611 |
| Attn: Laura Gee | Attn: Laura Gee |
| Email: laura.gee@sothebysrealty.com; | Email: laura.gee@sothebysrealty.com; |
| raleigh.vos@sothebysrealty.com; laura.gee@sir.com | raleigh.vos@sothebysrealty.com; laura.gee@sir.com |

**Buyer**

Jan Silfverskiold
Email: jsilfverskiold@gmail.com

| | |
|---|---|
| **Seller** | **Attorney** |
| Sachs Bridge Investments, LLC | Balcomb & Green |
| Development Specialists Inc. | PO Drawer 790 |
| 14140 Ventura Blvd, Suite 302 | Glenwood Springs , CO 81601 |
| Sherman Oaks, CA 91423 | Attn:  Chad Lee - Britt Choate |
| Attn:  Matt Sorenson | Email:clee@balcombgreen.com; brittc@balcombgreen.com |
| Email: msorenson@dsi.biz | |

**Closing Contacts**

| | |
|---|---|
| Glenwood Springs office - 970-945-4444 | Rifle office - 970-625-3300 |
| Linda Gabossi - linda@cwtrifle.com | Denna Conwell - denna@cwtrifle.com |
| Connie Rose Robertson - connie@cwtrifle.com | Patti Reich - patti@cwtrifle.com |

# COMMITMENT FOR TITLE INSURANCE
# SCHEDULE A

**File No. 1810058 ANTIC**

1. Effective Date: **October 12, 2018  at  7:59 AM**

2. Policy or Policies to be issued:

(a)  ALTA OWNER POLICY (ALTA 6-17-06)                           **$180,000.00**

   Proposed Insured:

   **Jan Silfverskiold**

(b)  ALTA LOAN POLICY (ALTA 6-17-06)

   Proposed Insured:

3. The Estate or interest in the land described or referred to in the Commitment and covered herein is Fee Simple and is at the effective date hereof vested in:

   **Sachs Bridge Investments, LLC, a Deleware limited liability company**

4. The land referred to in this Commitment is situated in the County of Garfield, State of Colorado and described as follows:

   **Lot 20**
   **Block Z**
   **River Valley Ranch**
   **Phase 7**
   **According to the plat thereof recorded February 11, 2003 as Reception No. 620571**

### TITLE CHARGES

| | |
|---|---|
| Owner's Policy Standard Coverage | **$416.00 Developers** |
| Owner's Extended Coverage | 50.00 |
| Tax Certificate | 15.00 |

COUNTERSIGNED: _____*Patrick P. Burwell*_____
                               Authorized Officer or Agent

Valid Only if Schedule B and Cover Are Attached

American Land Title Association          Issuing Agent:
Schedule A                               Commonwealth Title Company of Garfield County, Inc.
(Rev'd 6-06)                             127 East 5th Street Rifle, CO  81650

File No.  1810058 ANTIC

## SCHEDULE B - SECTION 1

The Following are the requirements to be complied with prior to the issuance of said policy or policies.  Any other instrument recorded subsequent to the date hereof may appear as an exception under Schedule B of the policy to be issued.  Unless otherwise noted, all documents must be recorded to the office of the Clerk and Recorder of the County in which said property is located.

1. Special Warranty Deed from Sachs Bridge Investments, LLC, a Delaware limited liability company, or the appropriate Bankruptcy Court approved officer vesting fee simple title in Jan Silfverskiold.

   Subject to approval of the proposed transaction by the United States Bankruptcy Court in Case No.17-12816KJC.

2. Recordation of an Order Authorizing the Bankruptcy Trustee or the appropriate Bankruptcy Court approved officer to Sell the Parcel to be insured hereunder issued by the United States Bankruptcy Court in Case No.17-12816KJC.

3. Approval by the Bankruptcy Court for the sale of this property and entry of a non-appealable order.

4. Collect Reserve Fund Contribution of $100.00, Initial Master Association account set up fee $150.00 and a master association statement prep fee $150.00

5. Note:  Per Statement of Authority recorded May 16, 2018  as Reception No. 906831  the person(s) authorized to execute instruments conveying, encumbering or otherwise affecting title to real property are Frederick Chin, Chief Executive Officer of Woodbridge Group of Companies, LLC, authorized signatory on behalf of Sachs Bridge Investments, LLC, a Delaware limited liability company.

6. Receipt of a satisfactory Improvement Location Certificate certified to the company.

   Note: Required per contract.

7. Execution of a Final Affidavit and Agreement indemnifying the Company against unfiled mechanic's and materialmen's liens.

## DISCLOSURES

Colorado Division of Insurance Regulation 8-1-2, Section 5, Paragraph F provides: "Whenever a title entity provides the closing and settlement service that is in conjunction with the issuance of an owner's policy of title insurance, it shall update the title commitment from the date of issuance to be as reasonably close to the time of closing as permitted by the real estate records. Such update shall include all impairments of record at the time of closing or as close thereto as permitted by the real estate records. The title insurance company shall be responsible to the proposed insured(s) subject to the terms and conditions of the title commitment, other than the effective date of the title commitment, for all undisclosed matters that appear of record prior to the time of closing." Provided Commonwealth Title Insurance Company of Garfield County, Inc. conducts the closing of the insured transaction and is responsible for recording the legal documents from the transaction, exception number 5 will not appear on the Owner's Title Policy and the Lenders Policy when issued. This Notice is required by Colorado Division of Insurance Regulation 8-1-2, Section 5, Paragraph G.

Pursuant to Colorado Division of Insurance Regulation 8-1-2, notice is hereby given that affirmative mechanic's lien protection for the prospective insured owner may be available upon compliance with the following conditions:
A. The land described in Schedule A of this Commitment must be a single family residence, which includes a condominium or townhouse unit.  B. No labor or materials may have been furnished by mechanics or materialmen for purposes of construction on the land described in Schedule A of this Commitment within the past 6 months.  C. The Company must receive appropriate affidavits indemnifying the Company against all unfiled mechanic's and materialmen's liens.  D. Any deviation from conditions A through C above is subject to such additional requirements or information as the Company may deem necessary; or, at its option, the Company may refuse to delete the exception.  No coverage will be given under any circumstances for labor or material for which the insured has contracted for or agreed to pay.  Colorado Division of Insurance Regulation 8-1-2, Section 5, Paragraph M.

Pursuant to Colorado Division of Insurance Regulation 8-1-3, notice is hereby given of the availability of a Closing Protection Letter which may, upon request, be provided to certain parties to the transaction.

Pursuant to C.R.S. §10-11-122, notice is hereby given that:
A) The subject real property may be located in a special taxing district; B) A Certificate of Taxes Due listing each taxing jurisdiction may be obtained from the County Treasurer's authorized agent; C) The information regarding special districts and the boundaries of such districts may be obtained from the Board of County Commissioners, the County Clerk and Recorder, or the County Assessor; and D) The company will not issue its policy of policies of title insurance contemplated by the commitment until it has been provided a Certificate of Taxes due from the County Treasurer or the County Treasurer's authorized agent; or until the Proposed Insured has notified or instructed the company in writing to the contrary

C.R.S. §30-10-406 requires that all documents received for recording or filing in the clerk and recorder's office shall contain a top margin of at least one inch and a left, right, and bottom margin of at least one half of an inch. The clerk and recorder may refuse to record or file any document that does not conform.

Pursuant to C.R.S. §10-11-123, notice is hereby given:
This notice applies to owner's policy commitments containing a mineral severance instrument exception, or exceptions, in Schedule B, Section 2.
A) That there is recorded evidence that a mineral estate has been severed, leased, or otherwise conveyed from the surface estate and that there is a substantial likelihood that a third party holds some or all interest in oil, gas, other minerals, or geothermal energy in the property; and B) That such mineral estate may include the right to enter and use the property without the surface owner's permission.

If the transaction includes a sale of the property and the price exceeds $100,000.00, the seller must comply with the disclosure/withholding provisions of C.R.S. §39-22-604.5 (Nonresident withholding).

Pursuant to C.R.S. §38-35-125(2), no person or entity that provides closing and settlement services for a real estate transaction shall disburse funds as a part of such services until those funds have been received and are available for immediate withdrawal as a matter of right.  Colorado Division of Insurance Regulation 8-1-2, Section 5, Paragraph J.  **"Good Funds Law"**

C.R.S. §39-14-102 requires that a real property transfer declaration accompany any conveyance document presented for recordation in the State of Colorado. Said declaration shall be completed and signed by either the grantor or grantee and Section 38-35-109 (2) of the Colorado Revised Statutes, 1973, requires that a notation of the purchasers legal address, (not necessarily the same as the property address) be included on the face of the deed to be recorded.

File No.  1810058 ANTIC

## SCHEDULE B - SECTION 2

Schedule B of the Policy or Policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the company:

1. Rights or claims of parties in possession not shown by the Public records.
   **Note:  This exception will be deleted on the final policy upon compliance with the requirements herein.**

2. Easements, or claims of easements, not shown by the public records.
   **Note:  This exception will be deleted on the final policy upon compliance with the requirements herein.**

3. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, and any facts, which a correct survey and inspection of the premises would disclose, and which are not shown by the public records.
   **Note:  This exception will be deleted on the final policy upon compliance with the requirements herein.**

4. Any lien, or right to a lien, for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the public records.
   **Note:  Exception No. 4 will be deleted upon receipt of Final Affidavits and Agreements indemnifying the Company against unfiled mechanic's and materialmen's liens.**

5. Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the proposed insured acquires of record for value the estate or interest or mortgage thereon covered by this commitment.
    Note:  Exception 5 will be deleted on the final policy if Commonwealth Title Company of Garfield County, Inc. closes the proposed transaction and records the applicable instruments of conveyance.

6. Any and all unpaid taxes, assessments and unredeemed tax sales.
    Note:  Exception 6 will read:  "General taxes and assessments for the year 2018 and thereafter, not yet due and payable." on the final policy if Commonwealth Title Company of Garfield County, Inc. closes the proposed transaction.

7. Any lien or charge on account of the inclusion of subject property in an improvement district.

8. Any and all water rights, claims, or title to water, whether or not the matters excepted are shown by the public record.

9. Right of the proprietor of a vein or lode to extract and remove his ore therefrom, should the same be found to penetrate or intersect the premises hereby granted and a right of way for ditches or canals as constructed by the authority of the United States, as reserved in United States Patent recorded June 11, 1893 in Book 12 at Page 204.

10. Reservation of an undivided one-fourth (¼) interest in all oil, gas and other minerals in instrument recorded February 28, 1949 in Book 240 at Page 577 and any and all assignments thereof or interests therein.

11. Town of Carbondale Ordinance No. 19 Series of 1994 recorded January 16, 1995 in Book 928 at Page 862.

12. Town of Carbondale Ordinance No. 21 recorded December 8, 1982  in Book 614 at Page 356.

13. Town of Carbondale Ordinance No. 20 Series of 1994 recorded January 16, 1995 in Book 928 at Page 911.

14. Town of Carbondale Ordinance No. 6 Series of 2001 recorded June 6, 2001 in Book 1258 at Page 794.

15. Terms and conditions of agreement recorded January 15, 1995 in Book 928 at Page 865. Amendment recorded January 16, 1995 in Book 928 at Page 897.

16. Terms and conditions of Declaration of Restrictive Covenants and Reserved Easement Rights recorded January 16, 1995 in Book 928 at Page 994.

17. Terms, conditions and all matters set forth in  Ditch Ownership, Ditch Allocation, Ditch Use and Ditch Maintenance Agreement recorded January 16, 1995 in Book 928 at Page 983.

18. Town of Carbondale Ordinance No. 23 Series of 1996 recorded September 27, 1996 in Book 993 at Page 840.

    (Continued)

File No. 1810058 ANTIC

## SCHEDULE B - SECTION 2
## (Continued)

19. Terms and conditions of Master Subdivision Improvements Agreement and Development Covenants for Phase I, River Valley Ranch recorded September 27, 1996 in Book 993 at Page 851. Supplemental Subdivision Improvements Agreement recorded August 12, 1997 in Book 1029 at Page 822. Amendment recorded February 9, 1998 in Book 1052 at Page 901. Supplemental Subdivision Improvements Agreement recorded June 5, 2001 in Book 1258 at Page 808. Supplemental Subdivision Improvements Agreement recorded February 11, 2003 in Book 1435 at Page 881.

20. Terms and conditions of Master Declaration of Protective Covenants for River Valley Ranch recorded September 27, 1996 in Book 994 at Page 24. Supplemental Declaration recorded December 6, 1996 in Book 1002 at Page 458. First Amendment recorded January 28, 1997 in Book 1007 at Page 509. Second Supplemental Declaration recorded August 12, 1997 in Book 1029 at Page 843. Third Supplemental Declaration recorded May 28, 1998 in Book 1069 at Page 823. Fourth Supplemental Declaration recorded May 13, 1999 in Book 1129 at Page 702. Fifth Supplemental Declaration recorded September 23, 1999 in Book 1151 at Page 789. Sixth Supplemental Declaration recorded February 28, 2000 in Book 1174 at Page 737. Seventh Supplemental Declaration recorded June 5, 2001 in Book 1258 at Page 866. Eighth Supplemental Declaration recorded February 11, 2003 in Book 1435 at Page 896. Ninth Supplemental Declaration recorded November 12, 2003 in Book 1537 at Page 119. Tenth Supplemental Declaration recorded November 12, 2003 in Book 1537 at Page 126, and re-recorded January 22, 2004 in Book 1556 at Page 471. Eleventh Supplemental Declaration recorded June 29, 2004 in Book 1600 at Page 677.

21. Terms and conditions of Water Rights Operating Agreement recorded September 27, 1996 in Book 994 at Page 1.

22. Terms and conditions of Declaration of Golf Course Plat and Operational Easement recorded September 27, 1996 in Book 994 at Page 13.

23. Terms and conditions of Amended and Restated Master Declaration of Protective Covenants for River Valley Ranch recorded March 25, 1998 in Book 1059 at Page 623. Reallocation Amendment recorded December 5, 1997 in Book 1045 at Page 237. First Amendment recorded January 18, 1999 in Book 1109 at Page 450. Second Amendment recorded August 22, 2000 in Book 1203 at Page 79. Reallocation Amendment recorded July 26, 2001 in Book 1272 at Page 345. Reallocation Amendment recorded October 5, 2001 in Book 1292 at Page 573. Reallocation Amendment recorded July 16, 2002 in Book 1369 at Page 770. Reallocation Amendment recorded February 24, 2004 in Book 1563 at Page 480. Third Amendment recorded June 2, 2005 in Book 1692 at Page 657.

24. Town of Carbondale Ordinance No. 6 Series of 2001 recorded June 5, 2001 in Book 1258 at Page 794.

25. Town of Carbondale Ordinance No. 19 Series of 2002 recorded February 11, 2003 in Book 1435 at Page 871.

26. Town of Carbondale Resolution No. 6 Series of 2004 recorded April 14, 2004 in Book 1577 at Page 461.

27. Right of way easement granted to Holy Cross Energy in instrument recorded May 16, 2005 in Book 1687 at Page 963.

28. Easements, rights of way and all other matters shown on the plat of River Valley Ranch, Phase 8 recorded February 11, 2003 as Reception No. 620572.

**NOTE: EXCEPTION(S) 1,2,3 and 4 WILL NOT APPEAR IN THE OWNER'S POLICY TO BE ISSUED HEREUNDER.**

The Owner's Policy of Title Insurance committed for in this Commitment, if any, shall contain, in addition to the Items set forth in Schedule B - Section 2, the following items:
(1) The Deed of Trust, if any, required under Schedule B - Section 1. (2) Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof. (3) any and all unpaid taxes, assessments and unredeemed tax sales.

NOTE: The policy (s) of insurance may contain a clause permitting arbitration of claims at the request of either the Insured or the Company. Upon request, the Company will provide a copy of this clause and the accompanying arbitration rules prior to the closing of the transaction.

American Land Title Association Commitment
Schedule B - Section 2
Form 1004-12

**COMMONWEALTH TITLE COMPANY PRIVACY POLICY**

**We Are Committed to Safeguarding Customer Information**
In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information - particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, we have adopted this Privacy Policy to govern the use and handling of your personal information.

**Applicability**
This Privacy Policy governs our use of the information which you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity.

**Types of Information**
Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:

- Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means.

- Information about your transactions with us, our affiliated companies, or others; and

- Information we receive from a consumer reporting agency.

**Use of Information**
We request information from you for our own legitimate business purposes and not for the benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis. We may also provide all of the types of nonpublic personal information listed above to one or more of our affiliated companies. Such affiliated companies include financial service providers, such as title insurers, property and casualty insurers, and trust and investment advisory companies, or companies involved in real estate services, such as appraisal companies, home warranty companies, and escrow companies. Furthermore, we may also provide all the information we collect, as described above to companies that perform marketing services on our behalf, on behalf of our affiliated companies, or to other financial institutions with whom we or our affiliated companies have joint marketing agreements.

**Former Customers**
Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

**Confidentiality and Security**
We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy. We currently maintain physical, electronic and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.