**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12560 (KJC)<br><br>(Jointly Administered)<br><br>**Hearing Date:**<br>   **January 22, 2019 at 10:00 a.m. (ET)**<br>**Objection Deadline:**<br>   **December 20, 2018 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE SALE OF
LOT R-79 EPPLEY DR., ASPEN, COLORADO PROPERTY OWNED BY THE
DEBTORS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER
INTERESTS; (II) APPROVING THE RELATED PURCHASE AGREEMENT;
AND (III) GRANTING RELATED RELIEF**

Woodbridge Group of Companies, LLC and its affiliated debtors and debtors in

possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11

Cases") hereby move the court (this "Motion") for entry of an order (the "Sale Order"),

substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and 363 of title

11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rule 6004 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules") (i) authorizing the sale (the "Sale") of real property

owned by the Debtor Mountain Spring Investments, LLC (the "Seller") located at Lot R-79

Eppley Dr., Aspen, Colorado 81611 (the "Land"), together with Seller's right, title, and interest

---

[1]        The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423.  Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein.  A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at www.gardencitygroup.com/cases/WGC, or by contacting the undersigned counsel for the Debtors.

01:23935771.1

in and to the buildings located thereon and any other improvements and fixtures located thereon (collectively, the "Improvements" and together with the Land, the "Real Property"), and any and all of the Seller's right, title, and interest in and to the tangible personal property and equipment listed in the Purchase Agreement and remaining on the Real Property as of the date of the closing of the Sale (collectively, the "Personal Property" and, together with the Real Property, the "Property") on an "as is, where is" basis, free and clear of any and all liens, claims, encumbrances, and other interests to Andrew Light and Garrett Reuss (together with any assignee, the "Purchaser") pursuant to the terms and conditions of that certain Contract to Buy and Sell Real Estate dated as of October 18, 2018 (as may be amended, supplemented, or otherwise modified from time to time, the "Purchase Agreement") by and between the Seller and the Purchaser, a copy of which is attached as Exhibit 1 to the Sale Order; (ii) authorizing and approving the terms of the Purchase Agreement, and (iii) granting certain related relief.  In support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief

01:23935771.1

2

requested herein are 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rule 6004, and Local Rules 2002-1, 4001-2, and 6004-1.

## CASE BACKGROUND

2.      On December 4, 2017, 279 of the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code.  Thereafter, on February 9, 2018, March 9, 2018, March 23, 2018, and March 27, 2018, additional affiliated Debtors (27 in total) commenced voluntary cases under chapter 11 of the Bankruptcy Code (collectively, the "Petition Dates").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

3.      The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No trustee has been appointed in the Chapter 11 Cases.  An official committee of unsecured creditors (the "Committee") was appointed in the Chapter 11 Cases on December 14, 2017 [D.I. 79].  On January 23, 2018, the Court approved a settlement providing for the formation of an ad hoc noteholder group (the "Noteholder Group") and an ad hoc unitholder group (the "Unitholder Group") [D.I. 357].

## THE SALE

4.      The Property.  As further detailed in the *Declaration of Bradley D. Sharp in Support of Debtors' Motion to Lot R-79 Eppley Dr., Aspen, Colorado Property* filed on the date hereof (the "Sharp Declaration"), the Property consists of a vacant residential lot in Aspen, Colorado, together with three transferable development rights ("TDRs") that permit expanded development on the Real Property.  The Seller purchased the Property, inclusive of the TDRs, in June 2015 for a purchase price of $3,600,000.  Sharp Decl. ¶ 3.  The Debtors have not undertaken any development of the Property.  *Id.*  The Purchaser made an all cash offer under the

Purchase Agreement to acquire the Property, inclusive of the TDRs, on an "as is" basis. *Id.*

Accordingly, the Debtors have determined that selling the Property now on an "as is" basis best

maximizes the value of the Property. *Id.* ¶ 4. The Property has been formally listed on the

multiple-listing service with the current brokerage firm for approximately 162 days and was

previously listed with another brokerage firm for over 1,340 days. *Id.* The Property has also

been widely marketed, including through various local media advertisements and broker

presentations. *Id.* The Debtors received three offers for the Property (prior to the Purchaser's

offer). *Id.* The first offer was in the amount of $2,500,000; however, that offer was never put in

writing. *Id.* The second offer was in the amount of $2,750,000. *Id.* The Debtors countered the

second bidder's offer in the amount of $3,300,000, which was accepted and the parties signed a

purchase agreement. *Id.* Thereafter, the second bidder failed to deliver the initial cash deposit

and the Debtors therefore terminated the purchase agreement. *Id.* The third offer was in the

amount of $2,500,000. *Id.* The Debtors countered the third bidder's offer in the amount of

$2,995,000; however, the third bidder held firm at $2,500,000. *Id.*

   5.  The Purchase Agreement.[2] On October 16, 2018, the Purchaser made an all cash

offer on the Property in the amount of $2,500,000. Sharp Decl. ¶ 5. The Debtors informed the

Purchaser that multiple parties were bidding on the Property and, on October 18, 2018, the

Purchaser increased its offer to $2,600,000. *Id.* The Debtors believe that this purchase price

provides significant value, and accordingly, the Seller countersigned the Purchase Agreement on

October 19, 2018. *Id.* The Purchaser is purchasing the Property, inclusive of the TDRs, under

the Purchase Agreement for $2,600,000, comprised of a $75,000 initial cash deposit and the

---

[2]  In the event of a conflict between the description of the Purchase Agreement set forth in this Motion and the Purchase Agreement, the Purchase Agreement shall control.

01:23935771.1

balance of $2,525,000 to be paid as a cash down payment due at closing. *Id.* The deposit is

being held by Land Title Guarantee Company (the "Title Insurer") as escrow agent.

6.      Broker's Fees. In connection with marketing the Property, the Debtors worked

with Sotheby's International Realty ("Sotheby's"), a non-affiliated third-party brokerage

company.[3]  A true and correct copy of the Exclusive Right to Sell Listing Contract (the "Broker

Agreement") is attached hereto as Exhibit B.  The Broker Agreement provides the Seller's

broker with the exclusive and irrevocable right to market the Property for a fee in the amount of

2.5% of the contractual sale price for Sotheby's (the "Seller's Broker Fee") and 2.5% of the

contractual sale price to a cooperating purchaser's broker (the "Purchaser's Broker Fee" and

together with the Seller's Broker Fee, the "Broker Fees").  The Purchase Agreement is signed by

Laura Gee of Sotheby's as the Seller's broker and by Garrett Reuss, who is also a broker at

Sotheby's, as the Purchaser's broker.[4]

7.      In the Debtors' business judgment, closing the Sale with Purchaser (and paying

the associated Broker Fees) pursuant to the offer set forth in the Purchase Agreement is the best

way to maximize value for the Debtors' estates and is more favorable than continuing to hold

and market the Property for sale and thereby risking obtaining a lower purchase price for the

Property on less favorable terms, while incurring additional carrying costs for the Property.

8.      Other Closing Costs.  In addition to the Broker Fees, the Seller must also satisfy

certain required costs associated with the sale and transfer of title of the Property to comply with

the Purchase Agreement (the "Other Closing Costs").  The Other Closing Costs include, but are

not limited to, recording fees, title insurance policy costs, prorated property taxes, city and

county transfer taxes, and other items noted on the title report for the Property.  The Debtors also

---

[3]      The particular broker at Sotheby's who is serving as Seller's broker, Laura Gee, is a ***former*** employee of Woodbridge Realty of Colorado, LLC, which is controlled by Robert Shapiro.

rely on outside vendors for escrow and title services in connection with property sales.  In general, vendors are mutually agreed on by the applicable Debtors and a purchaser prior to the acceptance of an offer.

9.       Absent authority to pay Other Closing Costs, the Seller will be unable to close the Sale and receive sale proceeds.  If the Seller is unable to make these payments, the Purchaser may be entitled to rescind the Purchase Agreement or assert other remedies that could lead to additional and unnecessary claims.  Accordingly, the Debtors seek the ability to pay Other Closing Costs in connection with the Sale.

10.      Proceeds of the Sale.  All proceeds of the Sale (net of the Broker Fees and Other Closing Costs) shall be paid to the Debtors into the general account of Debtor Woodbridge Group of Companies, LLC, and such net proceeds shall be disbursed and otherwise treated by the Debtors in accordance with the *Final Order on Debtors' Motion for Entry of Interim and Final Orders (I) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, and 552 Authorizing Debtors to (A) Obtain Postpetition Secured Financing, (B) Use Cash Collateral, (C) Grant Adequate Protection to Prepetition Secured Parties; (II) Modifying the Automatic Stay; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c); and (IV) Granting Related Relief* [D.I. 724] (the "Final DIP Order").

11.      The Fund Lien.  The Property is subject to a lien for the benefit of Woodbridge Mortgage Investment Fund 3, LLC (the "Fund" and such lien, the "Fund Lien"), which secures indebtedness of the Seller to the Fund in connection with the purchase of the Property.  The Fund has consented to the Sale of the Property free and clear of the Fund Lien.

---

[4]       Both the Purchasers (Garret Reuss and Andrew Light) are licensed brokers in Colorado.

01:23935771.1

6

**RELIEF REQUESTED**

12.    Pursuant to sections 105(a) and 363 of the Bankruptcy Code, the Debtors request

entry of the Sale Order substantially in the form of <u>Exhibit A</u> hereto (i) authorizing the closing of

the Sale pursuant to the Purchase Agreement, (ii) authorizing and approving the Purchase

Agreement, and (iii) granting related relief.

13.    The Debtors further request that filing of a copy of an order granting the relief

sought herein in Pitkin County, Colorado may be relied upon by the Title Insurer to issue title

insurance policies on the Property.

14.    The Debtors further request authority to pay the Broker Fees out of the sale

proceeds by paying the Seller's Broker Fee in an amount up to 2.5% and paying the Purchaser's

Broker Fee in an amount up to 2.5%.

**BASIS FOR RELIEF REQUESTED**

**I.    Section 363 of the Bankruptcy Code Authorizes the Proposed Sale**

15.    Section 363(c)(1) of the Bankruptcy Code provides that where, as here, the

Debtors are authorized to operate their business under section 1108 of the Bankruptcy Code, the

Debtors may enter into transactions, including the sale of property of the estate, in the ordinary

course of business, without notice or a hearing.  11 U.S.C. § 363(c)(1).  Because the Debtors

believe that the Sale is within the ordinary course of their operations, the Sale should be

approved pursuant to section 363(c)(1).

16.    The Debtors do not believe that section 363(b)(1), which authorizes the sale of

property of the estate other than in the ordinary course of business, applies to the Sale.  Even if

section 363(b)(1) did apply, however, authorization of the Sale would be appropriate because the

Debtors have a sound business justification for the Sale.  *See, e.g.*, *Myers v. Martin (In re*

*Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer

01:23935771.1

7

to a trustee's judgment concerning use of property under section 363(b) when there is a legitimate business justification); *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983) ("Section 363(b) of the Code seems on its face to confer upon the bankruptcy judge virtually unfettered discretion to authorize the use, sale or lease, other than in the ordinary course of business, of property of the estate.").

17.    In determining whether a sale satisfies the business judgment standard, courts in the Third Circuit require: (i) that there be sound business reasons for the sale; (ii) that accurate and reasonable notice of the sale be given; (iii) that the sale yield an adequate price, *i.e.*, one that is fair and reasonable; and (iv) that the parties to the sale have acted in good faith. *See*, *e.g.*, *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).

18.    The proposed Sale unquestionably satisfies the foregoing test. First, the Sale is supported by sound business reasons: after listing the Property on the multiple-listings service for approximately 162 (in addition to the prior listing of period of over 1,340 days) and marketing the Property for sale, including through local media advertisements and broker presentations, the Debtors have concluded that selling the Property, inclusive of the TDRs, on an "as is" basis pursuant to Purchaser's all cash offer is the best way to maximize value for the Debtors' estates. Sharp Decl. ¶ 4. Second, the Debtors have provided reasonable and adequate notice of the sale to interested parties by serving notice of this Motion in accordance with Local Rule 9013-1(m), and submit that no other or further notice is necessary. Third, the Debtors believe that the Purchase Agreement and the purchase price reflected therein represent a fair and reasonable offer for the Property and a reasonable sale price relative to comparable properties in the market in which the Property is located. Sharp Decl. ¶ 4. In light of the fact that the only

higher prior offer for the Property was ultimately terminated by the Debtors because the bidder

failed to tender the initial cash deposit, the Purchaser's all cash offer was the best offer received

for the Property.  *Id.*  Fourth, the Debtors submit that the Purchase Agreement was the product of

good faith, arm's-length negotiations between the Purchaser and the Seller.  *Id.* ¶ 6.

19.     The Purchaser is not related to or an affiliate of the Debtors or any of their

insiders or former insiders.  *Id.*  No non-debtor affiliate or current or former officer, director,

employee, managing member or affiliate of any of the Debtors (other than Seller) is a party to, or

broker in connection with, the Sale, other than as set forth in footnote 3 with respect to Ms.

Gee's service as Seller's broker.  Accordingly, the Debtors believe that the Purchaser should be

entitled to the protections of section 363(m) of the Bankruptcy Code.

**II.     The Debtors Should Be Permitted to Sell the Property Free and Clear**

20.     Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property free

and clear of liens, claims, encumbrances, and other interests if any one of the following

conditions is satisfied:

> (1)     applicable nonbankruptcy law permits the sale of such property free and clear of such interest;
>
> (2)     the [lienholder or claimholder] consents;
>
> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)     such interest is in bona fide dispute; or
>
> (5)     [the lienholder or claimholder] could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

21.     Because section 363(f) is stated in the disjunctive, satisfaction of any one of its

five requirements will suffice to warrant approval of the proposed Sale of the Property.[5] *See*

*Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 257 (3d Cir. 2000) (section

363(f) authorizes the sale of a debtor's assets free and clear of all liens, claims, and interests if

"any one of [the] five prescribed conditions" is satisfied); *In re Kellstrom Indus., Inc.*, 282 B.R.

787, 793 (Bankr. D. Del. 2002) (property may be sold "free and clear" if at least one of the

subsections of section 363(f) is met); *In re DVI, Inc.*, 306 B.R. 496, 504 (Bankr. D. Del. 2004)

(upholding sale of debtors' property free and clear where there was a bona fide dispute).

22.     The Debtors will satisfy section 363(f)(2) with respect to the Fund Lien.  The

Fund has consented to the Sale free and clear of all liens, because the Sale provides the most

effective, efficient, and timely approach to maximizing value with respect to the Property.

23.     As further detailed in the *Motion for Entry of Interim and Final Orders*

*(I) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 507, and 552 Authorizing Debtors to*

*(A) Obtain Postpetition Secured Financing, (B) Use Cash Collateral, (C) Grant Adequate*

*Protection to Prepetition Secured Parties; (II) Modifying the Automatic Stay; (III) Scheduling a*

*Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c); and (IV) Granting Related*

*Relief* [D.I. 22] (the "DIP Motion"), the noteholders of certain of the Debtors (the "Noteholders")

may assert security interests in the underlying loan documents for mortgage loans extended from

---

[5]     Moreover, if a holder of a lien, claim, encumbrance, or other interest receives the requisite notice of this Motion and does not object within the prescribed time period, such holder will be deemed to have consented to the proposed Sale, and the Property may then be sold free and clear of such holder's liens, claims, encumbrances, and other interests pursuant to the terms proposed herein. *See*, *e.g.*, *Veltman v. Whetzel*, 93 F.3d 517, 521 (8th Cir. 1996) (failure to object to notice of sale or attend hearing deemed consent to sale for purposes of section 363 of the Bankruptcy Code); *In re Enron Corp.*, No. 01-16034 (AJG), 2004 WL 5361245, at \*2 (Bankr. S.D.N.Y. Feb. 5, 2004) (same); *Hargrave v. Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (same); *In re Christ Hosp.*, 502 B.R. 158, 174 (Bankr. D.N.J. 2013) ("Given adequate notice, failure to object to a § 363 sale has been found to constitute consent per § 363(f)(2) to a "free and clear" sale of the non-objector's interests in property being sold.") (citations omitted), *aff'd*, Civil Action No. 14-472 (ES), 2014 WL 4613316 (D.N.J. Sept. 12, 2014).

such Debtors to the Debtor entities that individually own the Debtors' properties.  However, the Debtors contend that no Noteholder has perfected any such security interest.  Accordingly, to the extent any Noteholder contends that it holds a valid lien on the Property, such lien is subject to bona fide dispute, and the Debtors may sell the Property free and clear of such purported lien under § 363(f)(4).

**REQUEST FOR WAIVER OF STAY**

24.     Any delay in permitting the Debtors to close the Sale could jeopardize the Sale with the Purchaser and therefore would be detrimental to the Debtors, their creditors, and their estates.  Accordingly, and to successfully implement the foregoing, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of any order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**NOTICE**

25.     The Debtors have provided notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware, (ii) counsel to the DIP Lender, (iii) counsel for the Committee, (iv) counsel for the Noteholder Group, (v) counsel for the Unitholder Group, (vi) all Noteholders known by the Debtors to have interests in any loan documents associated with the Property, (vii) all contractors and contract counterparties known by the Debtors to have been associated with the Property, (viii) the Title Insurer, (ix) Sotheby's, and (x) all parties that, as of the filing of the Motion, have requested notice in these Chapter 11 Cases pursuant to Local Rule 2002-1.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

01:23935771.1

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order

substantially in the form filed herewith, granting the relief requested herein and such other and

further relief as may be just and proper under the circumstances.

Dated:    December 6, 2018            */s/ Betsy L. Feldman*_____
         Wilmington, Delaware        YOUNG CONAWAY STARGATT & TAYLOR, LLP
                                      Sean M. Beach (No. 4070)
                                      Edmon L. Morton (No. 3856)
                                      Ian J. Bambrick (No. 5455)
                                      Betsy L. Feldman (No. 6410)
                                      Rodney Square, 1000 North King Street
                                      Wilmington, Delaware 19801
                                      Tel:    (302) 571-6600
                                      Fax:    (302) 571-1253

                                      -and-

                                      KLEE, TUCHIN, BOGDANOFF & STERN LLP
                                      Kenneth N. Klee (*pro hac vice*)
                                      Michael L. Tuchin (*pro hac vice*)
                                      David A. Fidler (*pro hac vice*)
                                      Jonathan M. Weiss (*pro hac vice*)
                                      1999 Avenue of the Stars, 39th Floor
                                      Los Angeles, California 90067

                                      *Counsel to the Debtors and Debtors in Possession*