# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12560 (KJC)<br><br>(Jointly Administered)<br><br>**Hearing Date:**<br>January 22, 2019, at 10:00 a.m. (ET)<br><br>**Objection Deadline:**<br>January 11, 2019, at 4:00 p.m. (ET) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019, APPROVING THE SETTLEMENT AGREEMENT BY AND BETWEEN DEBTOR WOODBRIDGE STRUCTURED FUNDING, LLC AND WARREN LEX LLP**

Woodbridge Group of Companies, LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), hereby move the Court (this "Motion") for the entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving that certain *Settlement Agreement* between Debtor Woodbridge Structured Funding, LLC ("Woodbridge") and Warren Lex LLP ("Warren Lex" and together with Woodbridge, the "Parties"), attached as Exhibit 1 to the Proposed Order (the "Settlement Agreement"), which fully resolves the state court action entitled, *Warren Lex LLP v. Woodbridge Structured Funding, LLC*, Case Number BC628984,

---

[1] The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at www.gardencitygroup.com/cases/WGC, or by contacting the undersigned counsel for the Debtors.

pending in the Superior Court of California in and for the County of Los Angeles (the "Action"), and (ii) granting related relief.  In support of this Motion, the Debtors rely on the *Declaration of Bradley D. Sharp in Support of the Debtors' Motion for Entry of an Order, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, Approving the Settlement Agreement by and between Debtor Woodbridge Structured Funding, LLC and Warren Lex LLP* ("Sharp Decl."), filed concurrently herewith, and respectfully state as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## GENERAL BACKGROUND

2.      On December 4, 2017, 279 of the Debtors—including Woodbridge—commenced voluntary cases under chapter 11 of the Bankruptcy Code.  Thereafter on February 9, 2018, March 9, 2018, March 23, 2018, and March 27, 2018, additional affiliated Debtors (27 in total) commenced voluntary cases under chapter 11 of the Bankruptcy Code.  Pursuant to sections

1107(a) and 1108 of the Bankruptcy Code, the Debtors are continuing to manage their financial affairs as debtors in possession.

3.      The Debtors' chapter 11 cases (collectively, the "Chapter 11 Cases") are being jointly administered pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No trustee or examiner has been appointed in the Chapter 11 Cases.  An official committee of unsecured creditors (the "Committee") was appointed in the Chapter 11 Cases on December 14, 2017 [Docket No. 79].  On January 23, 2018, the Court approved a settlement providing for the formation of an ad hoc noteholder group (the "Noteholder Group") and an ad hoc unitholder group (the "Unitholder Group") [Docket No. 357].

4.      Through the Court's entry of the Confirmation Order [Docket No. 2903], the Court confirmed the *First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and Its Affiliated Debtors* [Docket No. 2397] (the "Plan").[2]

## THE ACTION

5.      Prior to the Petition Date, Woodbridge and Warren Lex disputed the amount of attorney's fees owed to Warren Lex for certain legal services provided, which prompted Warren Lex to commence the Action in the Superior Court of California in and for the County of Los Angeles on August 1, 2016.  The Action resulted in a jury trial and jury verdict in favor of Warren Lex for approximately $178,000.  No appeal was taken and the judgment is final.  Also prior to the Petition Date, the Parties stipulated to approximately $29,000 in prepetition interest, bringing the judgment to approximately $207,000.  Finally, and also prior to the Petition Date, Warren Lex submitted a bill of costs in the amount of $38,000, which Woodbridge's prepetition counsel objected to as being $20,000 too high.

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

01:23994713.4

6. After months of negotiation, the Parties, wishing to avoid the risk, expense, and uncertainty of further litigation, have agreed to fully resolve the Action under the terms set forth in the Settlement Agreement. Sharp Decl. ¶ 6.

## SUMMARY OF SALIENT TERMS OF THE SETTLEMENT AGREEMENT[3]

7. The Settlement Agreement provides, among other things, that (i) in resolution of the dispute over the attorney's fees that are the subject of the Action, Warren Lex is entitled to $236,152.84 (the "Claim"), comprising the jury verdict of approximately $178,000, the stipulated prepetition interest of approximately $29,000, and a bill of costs of approximately $29,000; (ii) for purposes of the Plan, the Claim shall be classified and treated as a single unsecured Class 4 claim under the Plan; (iii) the Claim shall be the sole and exclusive right to payment or any other relief that Warren Lex shall have to any distribution or recovery in the Chapter 11 Cases, and shall not be entitled to priority under Bankruptcy Code section 507; (iv) the Parties have exchanged mutual releases, excluding any claims to enforce the Parties' respective rights under the Settlement Agreement; and (v) the Settlement Agreement is subject to the approval of the Court pursuant to this Motion.

## RELIEF REQUESTED

8. By this Motion, the Debtors request the entry of the Proposed Order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a), approving the Settlement Agreement and granting related relief.

## BASIS FOR RELIEF

9. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

---

[3] In the event of a conflict between any term addressed in this summary with any term in the Settlement Agreement, the Settlement Agreement will govern in all respects.

01:23994713.4

4

title." *See* 11 U.S.C. § 105(a).  Bankruptcy Rule 9019 provides, in pertinent part, that "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  *See* Fed. R. Bank. P. 9019(a).

10. "The federal courts have a well-established policy of encouraging settlement to promote judicial economy and limit the waste of judicial resources." *Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc*., 523 F. Supp. 2d 376, 384 (S.D.N.Y. 2007); *see also, e.g.*, *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 27–28 (1994) (discussing the general utility of settlement vis-à-vis judicial economy at various stages of proceedings).  The force of this established federal policy is particularly acute in the bankruptcy context, where compromises and settlements are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).  Indeed, in order to "minimize litigation and expedite the administration of a bankruptcy estate, 'compromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 9019.3[1] (15th ed. rev. 1993)); *see also In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1113 (3d Cir. 1979); *In re World Health Alts., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *In re Culmtech, Ltd.*, 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990).

11. The decision whether to approve a proposed settlement is committed to the discretion of the bankruptcy court, "which must determine if the compromise is fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).  In exercising that discretion, the United States Court of Appeals for the Third Circuit has stated that courts should consider "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and

01:23994713.4

5

delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393; *see also Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006); *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998). The proponent of a settlement is not required to demonstrate "that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is "'within the reasonable range of litigation possibilities.'" *In re World Health*, 344 B.R. at 296; *see also, e.g.*, *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994) (Sotomayor, J.) ("[I]n assessing the fairness of the settlement, a judge does not have to be convinced that the settlement is the best possible compromise or that the parties have maximized their recovery."); *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) ("[T]he court does not have to be convinced that the settlement is the best possible compromise.").

12. The Debtors have determined, in an exercise of the Debtors' sound business judgment, that the terms of the Settlement Agreement are fair and reasonable and that the best interests of the Debtors' estates and creditors will be served by the entry of the Proposed Order. Sharp Decl. ¶ 4. The terms of the Settlement Agreement are the product of good faith, arm's-length negotiations between the Debtors and Defendants. *Id.* Further, the settlement falls well within the range of reasonable litigation outcomes, in that the Settlement Agreement provides the Parties a mutual resolution of the dispute at issue in the Action.

13. Turning to the *Martin* factors, a *bona fide* dispute exists concerning the Action, pursuant to which the Parties dispute the exact amount owed to Warren Lex on account of legal services provided prior to the Petition Date. Given the fact-intensive nature of the dispute, the Debtors could ultimately be unsuccessful. Given this uncertainty and the positive resolution of the issues embodied by the terms of the Settlement Agreement, the first *Martin* factor—

01:23994713.4

6

probability of success in the litigation—weighs in favor of approving the Settlement Agreement. In addition, absent approval of the Settlement Agreement, the Debtors would be forced to proceed with prosecuting the Action, including seeking additional discovery, drafting briefs, and preparing for argument, which would require the time, attention, and resources of the Debtors and their management and professionals. Sharp Decl. ¶ 6. By contrast, the Settlement Agreement resolves the parties' disputes in an efficient and consensual manner, avoiding costly and time-consuming litigation that would detract from the value of the estates and the recovery of creditors. *Id.* Moreover, the proposed consensual resolution of this dispute will free the Debtors to devote additional time and effort to the numerous other issues confronting them in these Chapter 11 Cases. *Id.* Therefore, the third and fourth *Martin* factors—the complexity of the litigation and the expense, inconvenience, and delay necessarily attending it as well as the consideration of the paramount interests of creditors—further support approving the Settlement Agreement.

14. Accordingly, the Debtors respectfully submit that the Settlement Agreement is fair, reasonable, and in the best interests of the estates and should therefore be approved under Bankruptcy Rule 9019 and section 105(a) of the Bankruptcy Code.

## **NOTICE**

15. The Debtors have provided notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for the DIP lender; (iii) counsel for the Committee; (iv) counsel for the Noteholder Group; (v) counsel for the Unitholder Group; (vi) Warren Lex; and (vii) all parties who have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court (i) enter the Proposed Order granting the relief requested herein and (ii) grant such other and further relief as may be just and proper under the circumstances.

| | |
|---|---|
| Dated: December 28, 2018<br>Wilmington, Delaware | */s/ Betsy L. Feldman*<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Sean M. Beach (No. 4070)<br>Edmon L. Morton (No. 3856)<br>Ian J. Bambrick (No. 5455)<br>Betsy L. Feldman (No. 6410)<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Tel:   (302) 571-6600<br>Fax:  (302) 571-1253<br><br>-and-<br><br>KLEE, TUCHIN, BOGDANOFF & STERN LLP<br>Kenneth N. Klee (*pro hac vice*)<br>Michael L. Tuchin (*pro hac vice*)<br>David A. Fidler (*pro hac vice*)<br>Jonathan M. Weiss (*pro hac vice*)<br>1999 Avenue of the Stars<br>39th Floor<br>Los Angeles, California 90067<br>Tel:   (310) 407-4000<br>Fax:  (310) 407-9090<br><br>*Counsel for the Debtors and Debtors in Possession* |