# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ALIA SALEM AL-SABAH, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *  Civil Case No. SAG-17-730 |
| | * |
| JEAN AGBODJOGBE, *et al.*, | * |
| | * |
| Defendants. | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

On November 22, 2017, Plaintiff Alia Salem Al-Sabah ("Al-Sabah") filed a nine-count Amended Complaint against Defendants Jean Agbodjogbe ("Agbodjogbe"), N&A Kitchen, LLC ("N&A Kitchen"), N&A Kitchen II, LLC ("N&A Kitchen II"), 5722 York Road, LLC ("5722 York Road"), and 9 Jewels, LLC ("9 Jewels") (collectively, "Defendants"). ECF 76. A nine-day jury trial commenced on January 21, 2020. *See* ECF 236-240, 242-45, 249. The jury entered a verdict in favor of Al-Sabah against each Defendant on each count submitted, and awarded her $7,641,800 in compensatory damages, and an additional $1,000,000 in punitive damages. ECF 256; *see also* ECF 259 (Order of Judgment). On February 10, 2020, the parties submitted post-trial motions. Relevant to this Opinion, Defendants filed a Motion for Judgment as a Matter of Law and Request for New Trial ("the Motion"). ECF 264. Al-Sabah opposed, ECF 270, and Defendants replied, ECF 278. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Defendants' Motion will be denied.

I.   **FACTUAL BACKGROUND**

The instant lawsuit dates back to Al-Sabah's initial filing of the Complaint on March 17, 2017, ECF 1, which she amended with Defendants' consent on November 22, 2017, ECF 75, 76.

The Amended Complaint sought money damages from Agbodjogbe and his co-conspirators, the corporate Defendants, under eight claims for relief: Fraudulent Misrepresentation (Count I); Fraudulent Concealment (Count II); Conversion (Count III); Civil Conspiracy (Count IV); Detrimental Reliance (Count V); Unjust Enrichment (Count VI); Breach of Contract (Count VII); and Breach of Agency Duties (Count VIII). *Id.* ¶¶ 1, 46-89. Count IX of the Amended Complaint sought various forms of declaratory relief against all Defendants. *Id.* ¶ 93. Al-Sabah tried five of these claims to the jury: Fraudulent Misrepresentation, Fraudulent Concealment, Breach of Agency Duties, Unjust Enrichment, and Civil Conspiracy. Prior to trial, Al-Sabah abandoned her Detrimental Reliance claim, and all claims against Defendant ASA Foundation, Inc. ECF 232 at 16. During trial, Al-Sabah abandoned her Conversion claim, as well as all remaining claims against Defendant Nandi Scott. ECF 241; ECF 248.

The jury trial in this case began on January 21, 2020, and concluded on January 31, 2020. ECF 236-40, 242-45, 249. Over the span of those nine days, the jurors heard extensive testimony from only two party-witnesses: Alia Salem Al-Sabah, and Jean Agbodjogbe. A brief summary of the trial testimony follows.

Al-Sabah testified that she met Agbodjogbe in Baltimore in July, 2014, and shortly thereafter, agreed to become a partner in Agbodjogbe's restaurant, Nailah's Kitchen. She invested $150,000 in the business and, in return, received a fifty percent ownership stake in the restaurant. Agbodjogbe and Al-Sabah thereby created a new company, N&A Kitchen, LLC.

A few months thereafter, according to Al-Sabah, Agbodjogbe convinced her to begin investing in real estate as a means of generating more income that Al-Sabah could use to further her charitable ventures. Over the course of the next two years, from August, 2014, to approximately April, 2016, Al-Sabah testified that she wired over $7.8 million dollars to

Agbodjogbe so that he could purchase commercial properties in downtown Baltimore on her behalf as "investment" properties. The monies sent were also intended to be used, in Al-Sabah's view, to rehabilitate those properties and "flip" them for resale as commercially viable locations. Additionally, approximately $2.1 million of the money Al-Sabah sent was intended for the purchase of a condominium apartment in New York City, New York, so that Al-Sabah's daughter could live in it while she attended school. According to Al-Sabah, Agbodjogbe offered to work to find the apartment and acquire it. It was Al-Sabah's understanding that all of the properties purchased were her properties, and that Agbodjogbe would have no ownership stake in them.

By the spring of 2016, Al-Sabah testified that she began to grow suspicious of Agbodjogbe. She testified that she began asking him for "papers," or documents showing that she was the owner of all of the relevant commercial properties that she had been sending money for, and showing that repairs were ongoing at each. Al-Sabah testified that, while she received responses at first that the "papers" were coming, eventually, she stopped hearing from Agbodjogbe.

Agbodjogbe, on the other hand, testified that all of the monies Al-Sabah sent to him were gifts. He acknowledges that Al-Sabah sent the monies to him, and that the monies sent were used to purchase each property, *see* ECF 232 at 17-19 (Stipulations of Fact), but he testified that the reason she sent the money was to further his "dream" of rebuilding the Howard Street corridor in Baltimore and making it a fruitful place for business. He denied Al-Sabah's allegations that the properties were supposed to be owned by her. During examination from Al-Sabah's counsel, Agbodjogbe admitted that he had purchased a personal residence (at 103 Mount Wilson Lane, Pikesville, Maryland) for his family with money Al-Sabah gave him, but says that Al-Sabah gave him permission to do so.

At trial, Agbodjogbe further explained his efforts to renovate each of the commercial properties. He testified that, while running Nailah's Kitchen, he also contracted with architects and general contractors to renovate the four properties – 306-10 North Howard Street, 5722 York Road, 327 North Eutaw Street, and 400 North Howard Street. However, because of his inexperience with running commercial property rehabilitations, Agbodjogbe testified that he began incurring debt to architects and subcontractors, and had to begin taking loans out to pay them. The evidence at trial showed that Agbodjogbe took out loans, using the commercial properties and his family home as collateral. Some of these loans, Agbodjogbe acknowledged, had interest rates over fifty percent. He testified that he was simply in over his head, and had no intent to defraud Al-Sabah by taking out those loans.

After just hours of deliberation, the jury found Agbodjogbe liable on each claim for relief, and further found that each corporate Defendant had conspired with Agbodjogbe to perpetrate the fraud on Al-Sabah. ECF 256. The jury awarded Al-Sabah $7,641,800 in compensatory damages, and an additional $1,000,000 in punitive damages, jointly and severally against each Defendant. *Id.*; ECF 259 (Order of Judgment).

## II.    LEGAL STANDARDS

### A.    Rule 50(b) Motion for Judgment as a Matter of Law

Federal Rule of Civil Procedure 50 provides for two types of motions for judgment as a matter of law, in civil actions tried before a jury. The first, pursuant to Rule 50(a), provides litigants with the opportunity to receive a judgment as a matter of law prior to an issue's submission to the jury. If, after a party "has been fully heard on an issue," and the court determines "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," the Court may enter judgment against that party. *Id.* R. 50(a)(1). The Rule further specifies

4

that the motion "may be made at any time before the case is submitted to the jury," and "must specify the judgment sought and the law and facts that entitle the movant to the judgment." *Id.* R. 50(a)(2). With regards to specificity, the moving party must, "either in written or oral argument, provide[] sufficient notice to his opponent of the alleged deficiencies in the opponent's case." *Wallace v. Poulos*, 861 F. Supp. 2d 587, 595 (D. Md. 2012) (citations omitted).

Rule 50(b) provides litigants the opportunity to renew their previous motion for judgment as a matter of law made under Rule 50(a). Specifically, Rule 50(b) provides that if a party's Rule 50(a) motion is denied, then, within twenty-eight days of the jury's verdict, the party may renew their motion for judgment as a matter of law. As is apparent from the Rule's text, the Court can entertain a Rule 50(b) motion only if the moving party made a Rule 50(a) motion before the Court submitted the case to the jury. *See, e.g.*, *Price v. City of Charlotte*, 93 F.3d 1241, 1248 (4th Cir. 1996). If properly presented to the Court, then the Court may "(1) allow judgment on the verdict, if the jury returned a verdict, (2) order a new trial, or (3) direct the entry of judgment as a matter of law." *Id.* R. 50(b).

In considering a motion for judgment as a matter of law under Rule 50, the Court is "compelled to accord the utmost respect to jury verdicts and tread gingerly in reviewing them." *Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 259 (4th Cir. 2001) (quoting *Price*, 93 F.3d at 1250). The Court must view the evidence "in the light most favorable to the non-moving party," *id.*, "without weighing [its] credibility," *Chaudhry v. Gallerizzo*, 174 F.3d 394, 405 (4th Cir. 1999). The Court may only grant the motion if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000).

5

### B. Rule 59 Motion for New Trial

Federal Rule of Civil Procedure 59(a)(1)(A) provides that either party may petition the trial court for a new trial "on all or some of the issues" after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." This is an "extraordinary remedy [that] should be used sparingly." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). "On a Rule 59 motion, the district court must 'set aside the verdict and grant a new trial[] if . . . (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" *Knussman v. Maryland*, 272 F.2d 625, 639 (4th Cir. 2001) (quoting *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996)). These first two prongs require a "comparison of the factual record and the verdict to determine their compatibility." *Atlas Food Sys.*, 99 F.3d at 594. In this analysis, the Court's review of the jury's factual determinations is limited to "whether the jury's verdict is against the weight of the evidence or based on evidence which is false." *Id.* Ultimately, the decision of whether to grant a new trial "rests within the sound discretion of the trial court but such discretion must not be arbitrarily exercised." *City of Richmond v. Atl. Co.*, 273 F.2d 902, 916 (4th Cir. 1960).

### III. ANALYSIS

Defendants seek a motion for judgment as a matter of law or, alternatively, a new trial, on each count presented to the jury. ECF 264. As an initial matter, Al-Sabah argues that Defendants' Motion should be denied on procedural grounds. She asserts that Defendants failed to properly raise a Rule 50(a) motion prior to the case's submission to the jury, and that Defendants' instant Motion lacks the requisite specificity under Rule 50. ECF 270 at 4-5, 8-9, 11. Defendants' Motion

begins by listing specific objections as to Counts I, II, and IV of Al-Sabah's Complaint, but then concludes by stating, "as to the remaining claims that went to the jury the Plaintiff failed to present sufficient evidence upon which the verdict in this cause could be predicated." ECF 264 at 2-3. The Court agrees with Al-Sabah that this final argument lacks the requisite specificity, and therefore Defendants' request for a judgment as a matter of law as to Counts VI (Unjust Enrichment) and VIII (Breach of Agency Duties) will be denied. As to Al-Sabah's remaining specificity arguments, and her Rule 50 procedural objections, the Court will assume *arguendo* that both procedural attacks lack merit. Ultimately, the Court agrees with Al-Sabah that, on the merits of Defendant's arguments, Defendants are not entitled to a judgment as a matter of law, or to a new trial.

### A. Defendants' Motion for Judgment as a Matter of Law

#### 1. Count I: Fraudulent Misrepresentation

Defendants first assert that the evidence was insufficient for the jury to have rendered a verdict in Al-Sabah's favor on her Fraudulent Misrepresentation claim. ECF 264 at 2. In Maryland,[1] each element of fraud must be established "by clear and convincing evidence." *Md. Envtl. Tr. v. Gaynor*, 370 Md. 89, 97 (2002). As relevant here, a plaintiff seeking to recover for a fraudulent misrepresentation must show:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.'

---

[1] While the Federal Rules of Civil Procedure govern the standard of review of Defendants' Motion in this diversity jurisdiction case, Maryland law applies to the substance of Al-Sabah's claims for relief. *E.g.*, *Rabinowitz v. Oates*, 955 F. Supp. 485, 488 (D. Md. 1996).

7

*Nails v. S&R, Inc.*, 334 Md. 398, 415 (1994).

Defendants only contend that there was insufficient evidence for the jury to conclude that Al-Sabah was justified in relying on Agbodjogbe's representations. ECF 264 at 2. This argument lacks merit. Under Maryland law, "[t]he recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although [s]he might have ascertained the falsity of the representation had [s]he made an investigation." *Rozen v. Greenberg*, 165 Md. App. 665, 677 (2005). Maryland courts generally do not find justifiable reliance, however, when the true facts "should be apparent to [a person of the plaintiff's] knowledge and intelligence from a cursory glance or [s]he has discovered something which should serve as a warning that [s]he is being deceived." *Id.* (first alteration in original) (quoting W. PAGE KEETON, ET AL., PROSSER & KEETON ON TORTS § 108 (5th ed. 1984)).

Contrary to Defendants' conclusory argument, there was a legally sufficient basis for a reasonable juror to conclude that Al-Sabah was justified in relying on Agbodjogbe's representations, especially considering Maryland's apparent presumption of justified reliance. Al-Sabah testified at trial that she came to trust Agbodjogbe, based upon his dedication to the Islamic faith and to serving the underprivileged in Baltimore. Based upon that trust, she decided to take Agbodjogbe's offer to invest, on her behalf, in run-down commercial properties in Baltimore. She testified that it was her understanding that these investments, and the corporate entities that owned the investment properties, would be owned by her. Agbodjogbe made several representations throughout 2015 to her that, setting credibility aside, a reasonable factfinder could have found were reasonable to rely upon. *See* Pl.'s Tr. Ex. 18 (January 15, 2015 email to Al-Sabah, telling her that the 400 North Howard Street property purchased "will double [in] price in a few years," and that he was "here for anything you need I will get it accomplish will the help of ALLAH"); Ex. 120

8

(April 24, 2015 email to Al-Sabah, reiterating that he was "working very hard on all the 4 project we have my priority is to get ASA Foundation done asap," and attaching an architect's rendering of what the finished renovation would look like); Ex. 142 (August 3, 2015 email to Al-Sabah congratulating her on the purchase of the New York City condominium); Ex. 21 (August 4, 2015 email to Al-Sabah updating her on the renovations of 306-10 North Howard Street and 5722 York Road, and stating that renovating 5722 York Road "is very crucial to finish so we can start generating money," and that he was "100% sure" that Al-Sabah "will see the result" once completed).

Further, once Al-Sabah did begin to grow suspicious, she testified that in April, 2016, she began demanding that Agbodjogbe send her "papers," or documents showing what she owned, and "every penny" that had been spent on the properties. That month, Agbodjogbe made several efforts to reassure her that he will get the accountant "to give me everything that you require for Nailah's and 9 Jewels and every property that we own the deed and everything so for your record," so that Al-Sabah would "know where every dime was spent" and could "sleep easy on that." Ex. 93; Ex. 270. Agbodjogbe told Al-Sabah via voicemail, "[S]ister, one thing I want you to be reassured, for you to have a peace of mind, never never in my life – I will never never never deceive you. Never." Ex. 95; Ex. 270.

Thus, viewing the evidence in a light most favorable to Al-Sabah, there was a legally sufficient basis for a reasonable juror to conclude, by clear and convincing evidence, that Al-Sabah was justified in relying on Agbodjogbe's representations, especially considering Maryland's apparent presumption of justified reliance. *See Rozen*, 165 Md. App. at 677. A reasonable juror could conclude that based on Agbodjogbe's continued (false) reassurances that she owned the

9

investment commercial properties, Al-Sabah testified that continued to send him money for repairs additional purchases, causing her damages.

   2.   Count II:  Fraudulent Concealment

Defendants next argue that the jury had insufficient evidence to render a verdict in Al-Sabah's favor on her Fraudulent Concealment claim.  ECF 264 at 3.  To establish a claim for fraudulent concealment, a plaintiff must prove, by clear and convincing evidence,

> (1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment.

*My Nat'l Tax & Ins. Servs., Inc. v. H&R Block Tax Servs., Inc.*, 839 F. Supp. 2d 816, 820 (D. Md. 2012) (quoting *Green v. H&R Block, Inc.*, 355 Md. 488, 525 (1999)).  Maryland courts focus on the requirement that there be some affirmative action:  "To create a cause of action, [the] concealment must have been intentional and effective – the hiding of a material fact with the attained object of creating or continuing a false impression as to that fact."  *Fegeas v. Sherrill*, 218 Md. 472, 476-77 (1958).

Defendants only argue that Al-Sabah "failed to produced [sic] or elicit evidence that [she] took action in justifiable reliance on the Defendants['] alleged concealment."[2]  ECF 264 at 3.  This argument similarly fails.  Based on Agbodjogbe's numerous representations, as outlined in the Court's earlier discussion of Al-Sabah's Fraudulent Misrepresentation claim, Al-Sabah continued to send Agbodjogbe money to further (what she testified she believed to be) her commercial real

---

[2] The Court recognizes that Defendants' argument mirrors the governing legal framework for fraudulent concealment claims, but notes that Defendants' cursory argument presents a linguistic conundrum.  It is unclear whether Defendants argue that Al-Sabah failed to take action at all, or that Al-Sabah took action, but the action was taken in unjustifiable reliance.

10

estate investment venture in downtown Baltimore.  Al-Sabah testified that Agbodjogbe reassured her that 9 Jewels, one of the corporations used to purchase commercial property and the New York condominium, was formed in her name.  Agbodjogbe also admitted on the stand that he, without Al-Sabah's permission, acquired Al-Sabah's fifty percent ownership stake in N&A Kitchen, LLC by creating the corporation N&A Kitchen II, LLC in his own name.  Based on this evidence, and the evidence noted in the Court's discussion of Al-Sabah's Fraudulent Misrepresentation claim, and taking it all in a light most favorable to Al-Sabah, a reasonable juror could conclude that Al-Sabah continued to send money to Agbodjogbe because she justifiably relied on Agbodjogbe's false representations that she owned all of the assets at issue.

        3.      Count IV:  Civil Conspiracy

Defendants' last specified challenge is to Al-Sabah's Civil Conspiracy claim.  ECF 264 at 3.  "[C]onspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff."  *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 189 (1995) (quoting *Alexander v. Evander*, 336 Md. 635, 645 n.8 (1994)).  Nearly 150 years ago, in the seminal case *Kimball v. Harman*, the Maryland Court of Appeals made clear that liability for conspiracy may only flow if "the plaintiff can show that [s]he has in fact been aggrieved, or has sustained actual legal damage by some overt act, done in pursuance and execution of the conspiracy."  34 Md. 407, 409 (1871).  Moreover, the plaintiff need not prove "that each member of the conspiracy" committed an overt act in furtherance of the conspiracy; rather, the plaintiff need only prove "that one or more of them committed such an act[,] and that harm ensued to the plaintiff as a result."  *Alleco, Inc. v. Harry & Jeanette Weinberg*

*Found., Inc.*, 99 Md. App. 696, 708 (1994), *aff'd*, 340 Md. 176 (1995).[3] As relevant here, corporations have "a separate existence as a distinct person" under Maryland law. *E.g.*, *Waller v. Waller*, 187 Md. 185, 194 (1946). Accordingly, a corporation can be held liable for conspiring with a natural person, even if that person is the corporation's sole member. *Wasserman v. Kay*, 197 Md. App. 586, 629 (2011) (making clear that a corporation has "the capacity of aiding and abetting" its sole member, even while the sole member "was acting in his own interest").

Defendants assert that there was no evidence provided "as to any overt act of conspiracy that the parties engaged in nor was there any evidence presented to the jury as to any underlying tort that the Defendants were engaged in." ECF 264 at 3. This argument is unpersuasive. First, for the reasons discussed above as to Counts I and II (Fraudulent Misrepresentation and Fraudulent Concealment), a reasonable juror could have concluded that the underlying tort of fraud was completed.

Second, a reasonable juror could have concluded, based on the evidence presented at trial, that each corporate Defendant was engaged in the conspiracy. Though Al-Sabah need not have shown that each corporate Defendant completed an overt act in furtherance of the fraud, *see Alleco, Inc.*, 99 Md. App. at 708, the evidence, drawn in a light most favorable to her, supports that conclusion. Agbodjogbe, 9 Jewels, and 5722 York Road each engaged in the purchase of properties using money Al-Sabah sent. In fact, the evidence showed that, many times, Al-Sabah initially wired the money to an account held by N&A Kitchen that Agbodjogbe would then withdraw. Further, the evidence showed that N&A Kitchen II, owned solely by Agbodjogbe, received deposits for $117,038.77 and $343,012.56 in late March, 2017, which constituted the

---

[3] The only regard in which the Court of Appeals disagreed with the Court of Special Appeals's statement of the law governing civil conspiracy is the lower court's statement that civil conspiracy constituted an "independent tort." *See* 340 Md. at 189.

12

proceeds from loans that were taken out on properties purchased with Al-Sabah's money. Reading all of this evidence, in addition to the evidence discussed above regarding Agbodjogbe's actions in furthering the fraud, in a light most favorable to Al-Sabah, the Court finds that a reasonable juror could find that each Defendant, including the corporate Defendants, was actively engaged in a civil conspiracy to defraud Al-Sabah. Accordingly, Defendants' Motion for Judgment as a Matter of law must be denied.

### B. Defendants' Motion for New Trial

Nor can the Court conclude that Defendants are entitled to a new trial. As an initial matter, nowhere in Defendants' Motion, or Reply, do they explain why the jury's verdict is against the clear weight of evidence, is based upon false evidence, or works a manifest injustice (outside of the arguments enumerated in support of their Rule 50 motion). *See* ECF 264; ECF 278. In fact, the "Memorandum of Law" section Defendants' Reply, ECF 278 at 3-4, is an exact replica of the "Memorandum of Law" section in Defendants' Motion for Remittitur, ECF 265 at 2-3.

Having conducted an independent review of the evidence submitted at trial, the Court readily concludes that a new trial is not warranted. The parties stipulated to several of the most crucial facts potentially at issue: the amounts of money Al-Sabah sent, when she sent them, and what they were used for. *See* ECF 232 at 17-19 (Stipulations of Fact). Thus, United States Magistrate Judge David Copperthite, to whom this case was referred for discovery disputes, correctly forecasted the nature of this trial: "What is abundantly clear in this litigation is that someone is not being truthful. . . . Credibility is crucial here, even more so than most cases because the parties admit the lack of a "grey" area where the truth is somewhere in the middle." ECF 114 at 1. Based on the jury's verdict, it appears that they viewed Agbodjogbe as simply lacking in credibility. The Court, having had the benefit of witnessing Agbodjogbe's testimony in person,

13

discerns no clear error in this conclusion.  The only evidence Agbodjogbe furthered in support of his theory that Al-Sabah's wire transfers were gifts was his testimony that Al-Sabah told him so over the phone.  Weighing this against the myriad emails and voicemails from Agbodjogbe that Al-Sabah produced, demonstrating that Agbodjogbe repeatedly represented to be furthering Al-Sabah's interests, the jury's verdict was reasonable and rested on evidentiary support.  The Court is satisfied that, based on the evidence discussed above as to each of Al-Sabah's claims for relief, the jury's verdict accords with the clear weight of the evidence, and does not work any injustice.[4]

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion for Judgment as a Matter of Law and Request for New Trial, ECF 264, is DENIED.  A separate implementing Order is filed herewith.


Dated:  March 9, 2019                                              /s/
                                                         Stephanie A. Gallagher
                                                         United States District Judge

---

[4] This Opinion discusses the jury's verdict in favor of Al-Sabah.  Defendants' Motion for Remittitur, ECF 265, addressing the amount of punitive damages the jury awarded, will be addressed separately.