## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------- x
In re:                                      :    Chapter 11
                                            :
                                            :    Case No.: 17-12560 (BLS)
WOODBRIDGE GROUP OF COMPANIES,[1]           :    (Jointly Administered)
LLC, et al.,                                :
                            Debtors.        :
------------------------------------------- x
```

### ALIA SALEM AL-SABAH'S MOTION FOR (I) RELIEF FROM THE DISCHARGE INJUNCTION IN CONFIRMED PLAN, AND (II) THE COURT TO ABSTAIN FROM HEARING THE WOODBRIDGE LENDER ACTION

Alia Salem Al-Sabah ("Ms. Al-Sabah") hereby moves for an order (i) relieving Ms. Al-Sabah from the discharge injunction in Article 11.13 (the "Discharge Injunction")[2] of the *First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and Its Affiliated Debtors* [Docket No. 2397] (the "Plan") so that Ms. Al-Sabah can pursue liquidation of her claims set forth in proof of claim numbers 8961 and 8963 filed in these chapter 11 cases (the "Proofs of Claim") against debtors Woodbridge Mortgage Investment Fund 4 LLC and Woodbridge Group of Companies, LLC (together, the "Debtors") (the "Woodbridge Lender Action"), and (ii) holding that this Court will abstain from hearing the Woodbridge Lender Action and permit the United States District Court for the District of Maryland (the "District Court") to hear the Woodbridge Lender Action as part of the case styled *Al-Sabah v. World Bus. Lenders, LLC*, No. 1:18-cv-2958-ELH (D. Md. Sept. 25, 2018) (the "2018 Action") so that Ms. Al-Sabah

---

[1] The Remaining Debtors and the last four digits of their respective federal tax identification numbers are as follows: Woodbridge Group of Companies, LLC (3603) and Woodbridge Mortgage Investment Fund 1, LLC (0172). The Remaining Debtors' mailing address is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423.

[2] Article 11.13 of the Plan provides that "all injunctions or stays in the Chapter 11 Cases . . . shall remain in full force and effect through and inclusive of the Effective Date."

can liquidate the Proofs of Claim and receive a distribution pursuant to the terms of the Plan.  In support of this motion, Ms. Al-Sabah respectfully states as follows:

## JURISDICTION

1.     This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334 and Article X of the Plan.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory bases for the relief requested herein are sections 105, 362, 524, and 1334(c) of title 11 of the United States Code (the "Bankruptcy Code"), and rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3.     Ms. Al-Sabah consents to the entry of a final order by the Court solely for purposes of this motion and reserves all of her rights with respect to any final determination of her claims as set forth in her Responses (hereinafter defined).

## BACKGROUND

4.     The principle facts underlying this matter have been set out by the Woodbridge Liquidation Trust (the "Trust") in the (a) *Trust's (I) Objection to Proof of Claim No. 8961 Asserted by Alia Salem Al-Sabah and (II) Request for a Waiver of Local Rule 3007-1(f)(iii), to the Extent Such Rule May Apply* [Docket No. 4575] ("Claim Objection 1"), and (b) *Trust's (I) Objection to Proof of Claim No. 8963 Asserted by Alia Salem Al-Sabah and (II) Request for a Waiver of Local Rule 3007-1(f)(iii), to the Extent Such Rule May Apply* [Docket No. 4576] ("Claim Objection 2," together with Claim Objection 1, the "Claim Objections"), and subsequently by Ms. Al-Sabah in the (c) *Responses to Trust's (I) Objection to Proof of Claim No. 8961 Asserted by Alia Salem Al-Sabah and (II) Request for a Waiver of Local Rule 3007-1(f)(iii), to the Extent Such Rule May Apply* [Docket No. 4586] ("Response 1"), and (d) *Responses to Trust's (I) Objection to Proof of Claim No. 8963 Asserted by Alia Salem Al-Sabah and (II) Request for a Waiver of Local Rule 3007-1(f)(iii), to the Extent Such Rule May Apply* [Docket No. 4587] ("Response 2," together with

010-9177-0069/3/AMERICAS

Response 1, the "<u>Responses</u>," and collectively with the Claim Objections, the "<u>Pleadings</u>").[3]  For purposes of the relief sought herein, Ms. Al-Sabah incorporates her Responses as if fully set forth herein.

5.      As noted in the Responses, pursuant to the March 9th Opinion in the 2017 Action, Ms. Al-Sabah was awarded the Jury Verdict for $7,641,800 in compensatory damages, and an additional $1,000,000 in punitive damages, jointly and severally against Mr. Agbodjogbe and each corporate defendant resulting from Mr. Agbodjogbe's fraudulent scheme against Ms. Al-Sabah. *See* Responses, ¶ 12.  That same month, after entry of the Jury Verdict, the District Court lifted the year-long stay in the 2018 Action to permit Ms. Al-Sabah and the 2018 Lender Defendants[4] to proceed with the litigation.  *See* Responses, ¶ 9.  The 2018 Action was initiated in September 2018, but had been stayed by the District Court since May 14, 2019 while the 2017 Action was being litigated.

6.      The complaint in the 2018 Action (the "<u>Complaint</u>") asserts the following counts against the 2018 Lender Defendants:  (a) civil conspiracy; (b) aiding and abetting fraud; (c) fraud by omission; (d) constructive fraud; (e) negligence; (f) constructive trust; (g) unjust enrichment; (h) quite title invalidate liens; (i) declaratory judgment; (j) mortgage fraud; and (k) invalidate New York mortgage (collectively, the "<u>Counts</u>").  Soon after the District Court lifted the stay in the 2018 Action, the 2018 Lender Defendants renewed a previously filed motion seeking judgment on the pleadings to dismiss the Complaint and the Counts contained therein (the "<u>Rule 12(c) Motion</u>").

---

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Pleadings.

[4] The Debtors have not yet been listed as 2018 Lender Defendants because the 2018 Action was filed nearly 10 months after the petition date in these chapter 11 cases and Ms. Al-Sabah did not want to violate the automatic stay.

7.      On July 9, 2020, the District Court granted in part, and denied in part, the 2018 Lender Defendants' Rule 12(c) Motion, thus sustaining eight (8) of the twelve (12) Counts in the Complaint (the "Rule 12(c) Ruling").[5]  A copy of the District Court's Rule 12(c) Ruling is attached hereto as **Exhibit A**.[6]  Since the District Court's Rule 12(c) Ruling, Ms. Al-Sabah and the 2018 Lender Defendants continued conducting discovery, which has been proceeding slowly due to COVID and recently stayed discovery deadlines.

8.      As conceded by the Trust and acknowledged by the parties in the Pleadings, Ms. Al-Sabah's claims against the Debtors are identical to those contained in the 2018 Complaint against the 2018 Lender Defendants, and sustained by the District Court's Rule 12(c) Ruling, with the addition of the Delaware Uniform Fraudulent Transfer Act claim against the Debtors.  Indeed, but for the imposition of the automatic stay imposed by the Debtors' filings, the Debtors would have been named as defendants in the Complaint along with the other 2018 Lender Defendants as the claims result from the same operative facts.[7]

9.      Because the claims in the Proofs of Claim[8] are general unsecured claims, Ms. Al-Sabah chose to engage in settlement discussions rather than costly litigation that would reduce any recovery to which she is entitled.  Unfortunately, those settlement discussions failed to result in

---

[5] Notably, only 1 of the 12 Counts was dismissed with prejudice, the Count for a constructive trust over the respective properties.  This Count was dismissed with prejudice solely because the District Court concluded it was a remedy, rather than a cause of action, and went on to acknowledge that Ms. Al-Sabah was still entitled to pursue a constructive trust as a remedy.

[6] The Court is authorized to take judicial notice of the 2017 Amended Complaint and the complaint in the 2018 Action (the "2018 Complaint") pursuant to Rule 201 of the Federal Rules of Evidence, made applicable to this matter by Bankruptcy Rule 9017.  *See* Fed. R. Evid. 201; Fed. R. Bankr. P. 9017.

[7] While not formally amending her Proofs of Claim, Ms. Al-Sabah, through counsel, provided the Complaint and related documentary support for her claims informally to counsel for the Trust in early 2019 and at various time over the course of the parties' substantial settlement discussions.  The Trust's acknowledgement of the substance of such claims is reflected in the Claims Objections.

[8] While asserted against two different Debtors, Ms. Al-Sabah acknowledges that she is entitled to only one recovery for the amount alleged in the Proofs of Claim.

010-9177-0069/3/AMERICAS

agreement, thus forcing both parties to submit the Pleadings and further necessitating Ms. Al-Sahab to seek the instant relief.

## RELIEF REQUESTED

10.     By this motion, Ms. Al-Sabah requests entry of an order (a) modifying the Discharge Injunction so that Ms. Al-Sabah can pursue liquidation of the Proofs of Claim against the Debtors, or the Trust, as applicable, (b) holding that this Court will abstain from hearing the Woodbridge Lender Action and will permit the District Court to hear the Woodbridge Lender Action as part of the 2018 Action so that Ms. Al-Sabah's Proofs of Claim can be liquidated and receive the distribution entitled to similar claimants under the Plan, and (c) granting such other and further relief as is just and proper.

## BASIS FOR RELIEF

I.    **Courts Adopt a Three-Pronged Approach to Modify a Plan Discharge Injunction.**

11.     Bankruptcy courts in the Third Circuit have held that the court's analysis regarding whether to lift the automatic stay or modify the discharge injunction is indistinguishable.  *See, e.g.*, *In re F-Squared Inv. Mgmt., LLC*, 546 B.R. 538, 547 n.55 (Bankr. D. Del. 2016) (holding that the court would analyze whether to modify the plan injunction using the same analysis it would use when deciding whether to lift the automatic stay); *In re Gibellino-Schultz*, 446 B.R. 733, 739 (Bankr. E.D. Pa. 2011) (treating motion for relief from stay as motion for modification of discharge injunction where § 362 stay expired while relief from stay motion was pending because debtor was granted discharge).

12.     Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section . . . for cause."  11 U.S.C. § 362(d)(1).  The term "cause" is not defined in section 362(d)(1).  Instead, courts determine "what constitutes cause

5

based on the totality of the circumstances of each particular case." *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997). The legislative history attendant to section 362 of the Bankruptcy Code states that cause may be established by a single factor such as "a desire to permit an action to proceed . . . in another tribunal," or "lack of any connection with or interference with the pending bankruptcy case." *Rexene,* 141 B.R. at 576 (citations omitted). The legislative history further states that:

> "It will often be more appropriate to permit proceedings to continue in their place of origin, where no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere."

*Id.* at 576 ("cause" for relief was found in order to allow civil plaintiffs to proceed with a class action against the debtor because discovery was nearly complete, both parties were nearly ready for trial prior to the bankruptcy filing, trial the claim in bankruptcy court would be burdensome to plaintiffs and risk unnecessary, duplicative litigation, and plaintiffs had at least some probability of success on merits of suit); *see also In re The Conference of African Union First Colored Methodist Protestant Church*, 184 B.R. 207, 218 (Bankr. D. Del. 1995) ("[T]he existence of a more appropriate forum than the bankruptcy court is "cause" for relief under Code § 362(d)(1)"); *In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830, 838 n.8 (Bankr. S.D.N.Y. 1990) (citing various examples of "cause" to permit litigation in another forum such as liquidation of a personal injury, arbitration or specialized jurisdiction claims); *In the Matter of Baker*, 75 B.R. 120, 121 (Bankr. D. Del. 1987) (granting relief from stay to permit Family Court to determine issues with which it had expertise).

13.     This Court has developed a three-pronged "balancing test" when considering the competing interests of the movant and debtor with respect to a request for modification of the injunction: (a) the prejudice that would be suffered by the Debtors or estates should the stay be

6

lifted, (b) the hardship to the non-bankruptcy party by maintenance of the stay outweighing the hardship to the Debtors, and (c) the probable success for the non-bankruptcy party on the merits if the stay is lifted. *In re F-Squared Inv. Mgmt., LLC,* 546 B.R. 538, 548 (Bankr. D. Del. 2016); *see also In re The SCO Group, Inc.,* 395 B.R. 852, 857 (Bankr. D. Del. 2007); *In re Continental Airlines,* 152 B.R. 420, 424 (D. Del. 1993); *In re Cooke,* 2007 WL 2102689 (Bankr. D. Del. July 13, 2007) (lifting stay to allow chancery court action to proceed); *Levitz Furniture Inc. v. T. Rowe Price Recovery Fund, L.P.* (*In re Levitz Furniture Inc.),* 2000 Bankr. LEXIS 1322, at *15 (Bankr. D. Del. 2000); *Save Power Limited v. Pursuit Athletic Footwear, Inc.* (*In re Pursuit Athletic Footwear, Inc.),* 193 B.R. 713, 718 (Bankr. D. Del. 1996).

### A.    There Would be No Great Prejudice to the Debtors or Estates by Participating in the 2018 Action.

14.    Due to the glacial pace in which the 2018 Action has proceeded since September 2018, coupled with the fact that the District Court instituted a stay in the 2018 Action for approximately a year (May 14, 2019 until March 4, 2020), there is no prejudice by including the Debtors as additional 2018 Lender Defendants in the 2018 Action.

15.    First, the District Court stayed the 2018 Action for approximately a year – no parties advanced any significant positions during this time and the parties are only now in the discovery phase, which itself is currently stayed. While the 2018 Action stay was in place, it did not make sense for Ms. Al-Sabah to seek to lift the automatic stay in these cases. Indeed, this was the correct decision given that these cases were confirmed, and, therefore, the automatic stay concluded, prior to the continuation of the 2018 Action (*i.e.*, even if this court had lifted the automatic stay, this motion would have been necessary to modify the Discharge Injunction before including the Debtors as 2018 Lender Defendants).

7

16.     Second, COVID-19 has significantly slowed down the pace of the 2018 Action. Although the stay was lifted in March 2020, due to the number of parties in the 2018 Action and initial logistical problems concerning court filings, discovery, and communication between parties and the court, among other things.  Although the parties in the 2018 Action faced the growing pains of learning how to operate in a "new normal," these substantial delays actually benefitted the Debtors – no material issues, absent the Rule 12(c) Ruling, have been litigated by the District Court.

17.     Third, the Debtors can file a motion for summary judgment in the District Court if this Court modifies the Discharge Injunction as requested herein.  As noted in the Trust's Claim Objections, the Debtors assert that Ms. Al-Sabah has no claim against the Debtors.  Ms. Al-Sabah respectfully disagrees (as does the District Court, at least on a Rule 12 basis), but this matter can be timely resolved by the District Court – a court that has been in the center of these matters for over four years and has intimate knowledge of the complexities and arguments asserted by all parties in interest.

18.     Fourth, Ms. Al-Sabah and the 2018 Lender Defendants are in the perfect phase of the 2018 Action for the Debtors to be added as defendants.  To confirm, the discovery phase has been moving extremely slow, in part due to COVID-19 and also due to the parties' agreements to stay certain deadlines to accommodate pandemic logistics.  The Debtors can seamlessly be included in the 2018 Action while the parties continue discovery.

19.     Fifth, upon information and belief, Ms. Al-Sabah's counsel understands that the Trust's local Delaware counsel has a lawyer who is already admitted in Maryland.  Therefore, it is possible that the Debtors will not need to pay for additional counsel to represent it in the 2018 Action.

010-9177-0069/3/AMERICAS

20.     Sixth, as this Court is aware, the Trust currently has numerous adversary proceedings and litigations ongoing, both before this Court and other jurisdictions.   And as reflected by recent filings, the continuation of these cases and the Trust for the foreseeable future is not in doubt.   *See, e.g.*, *Tenth Order, Pursuant to Bankruptcy Rules 9006 and 9027, Further Extending the Period Within Which the Liquidation Trust and its Subsidiaries May Remove Actions Pursuant to 28 U.S.C. § 1154.*   Accordingly, being named as a 2018 Lender Defendant in the 2018 Action will not prejudicially prolong the existence of the Trust.   For the following reasons, the first prong weighs in favor of the Court modifying the Discharge Injunction.

> **B.     Ms. Al-Sabah Faces Considerable Hardship if the Discharge Injunction is Not Modified.**

21.     The hardship that Ms. Al-Sabah would face if the Discharge Injunction is not modified considerably outweighs any hardship the Debtors will face if it is modified.   First, pursuant to the May 9th Opinion, Mr. Agbodjogbe and his corporate affiliates were conclusively found to have engaged in a complex scheme to defraud Ms. Al-Sabah, which included obtaining certain hard money loans from the 2018 Lender Defendants under identical facts and circumstances of the Fraudulent Loan provided by the Debtors.   As explained in the Responses, the Debtors, among other things, fraudulently extracted equity from the Baltimore Properties and are, therefore, culpable with the 2018 Lender Defendants.   If the Discharge Injunction is not modified at this stage of these chapter 11 cases, Ms. Al-Sabah may never have her day in court against the Debtors, who must be held responsible for their actions to the same extent as the 2018 Lender Defendants.   The only logical court for this to occur is the District Court, not this Court, especially if this Court's jurisdiction hinges only on the Trust's Claim Objections.   Accordingly, due process requires that the Discharge Injunction be modified.

22.     On the other hand, if the Discharge Injunction is modified and the Debtors are included as 2018 Lender Defendants, the Debtors will only need to file a motion for summary judgment in the 2018 Action.  If the Debtors are indeed as innocent as suggested in the Claim Objections, this process should be fairly straightforward.  Although filing such a motion would be a minor inconvenience for the Trust, this annoyance is heavily outweighed by Ms. Al-Sabah's due process concerns.  Thus, the second prong also weighs in favor of the Court modifying the Discharge Injunction.

> **C.     Ms. Al-Sabah Has Already Demonstrated Her Probability to Prevail on the Merits of the Counts Remaining in the 2018 Action.**

23.     The 2018 Lender Defendants are similarly situated to the Debtors, as all parties were hard money lenders for Mr. Agbodjogbe and were a party to his fraudulent schemes.  The Rule 12(c) Ruling by the District Court demonstrates, more than any argument asserted by the Trust, that Ms. Al-Sabah could prevail on the merits with respect to the remaining nine Counts in the 2018 Action against the Debtors.  Indeed, as recognized by the District Court, "a Rule 12(c) motion for failure to state a claim is '"assessed under the same standard that applies to a Rule 12(b)(6) motion."'  *See* Rule 12(c) Ruling p. 18.  As recognized by courts in this District, this is a *higher* standard than a proof of claim pleading.  *See In  In re F-Squared Inv. Mgmt., LLC, 546 B.R. at 544* (*citing In re Smurfit-Stone Container Corp.*, 444 B.R. 111, 117 (Bankr. D. Del. 2011)); *In re Nortel Networks, Inc.*, 469 B.R. 4278, 497 (Bankr. D. Del. 2012)).

24.     Accordingly, the District Court has already determined that these claims have been properly pleaded.  Therefore, it is disingenuous for the Trust to summarily conclude that Ms. Al-Sabah cannot possibly state a claim against the Debtors.  Indeed, on this point, the Rule 12(c) Ruling is directly on point and significant.  For instance, the District Court has already ruled that

under the unique facts alleged, the 2018 Lender Defendants owed Ms. Al-Sabah a duty of care,

ruling as follows:

> Under these unique circumstances, and drawing all reasonable inferences in Al-Sabah's favor, it is plausible that the Lender Defendants knew, or should have known, "that a fraud was being committed and that [Al-Sabah] was relying upon [them] to protect her from fraud." *Iglesias*, 202 Md. App. at 663-64; *see Chi. Title*, 394 Md. at 297-98. Al-Sabah has bolstered her Complaint with sufficient "red flags" that [the Lender Defendants] became aware of during due diligence that, taken as true, plausibly place them on notice that Agbodjogbe was engaged in fraudulent activity against Al-Sabah.

Rule 12(c) Ruling p. 40.

> Thus, because each Lender Defendant plausibly was in the equivalence of privity with Al-Sabah, Al-Sabah has sufficiently pled that each Lender Defendant owed her a duty of care to alert her of Agbodjogbe's efforts to execute cash-out mortgages on each property. Like the Court of Appeals in *Chicago Title*, this Court's determination "[would] not impose liability on [the Lender Defendants] to an indeterminate class of people for an indeterminate time," but rather, would address only the specific, highly unusual pattern of loan activity that impacted Al-Sabah. 394 Md. at 299-300.

*Id.* at p. 41

25.    The District Court further ruled that, with respect to Ms. Al-Sabah's common law

fraud claims, under the factual scenario alleged in the Complaint, the 2018 Lender Defendants had

a duty to disclose material facts to Ms. Al-Sabah and a result, she has alleged a duty sufficient to

maintain a constructive fraud claim.  *Id.* at p. 45.  Similarly, the District Court found as follows

with respect to her claims for fraudulent concealment based on, inter alia, the 2018 Lender

Defendants' failure to head certain "red flags" that were present during the loan processing:

> While Federal Rule of Civil Procedure 9(b) generally imposes a heightened pleading standard upon fraud claims, it specifically provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Al-Sabah has met that burden. First, as described at length in this Court's negligence analysis in Part III.B.1, *supra*, Al-Sabah has alleged, even with particularity, facts and circumstances giving rise to a plausible inference that the Lender Defendants knew, or should have known, of Agbodjogbe's fraud. In fact, she has directly alleged that the Lender Defendants did know of his fraud, and intended to further it.

11

*Id.* at 48.

26.     With respect to her civil conspiracy claims, the District Court likewise held that

Ms. Al-Sabah has stated claims that withstand the 2018 Lender Defendants' Rule 12(c) Motion.

Specifically, the District Court found as follows:

> Here, since Al-Sabah has obtained a jury verdict against Agbodjogbe for fraud,
> there is a sufficient underlying tort to support a civil conspiracy claim, assuming
> that there is an agreement and an overt act.
>
> …
>
> [H]ere, as discussed above, Al-Sabah has plausibly alleged a duty of disclosure
> running from the Lender Defendants to her for the purposes of common law fraud.
> Thus, while the Lender Defendants have no legal capacity to conspire to commit
> mortgage fraud, they have the legal capacity to conspire to commit common law
> fraud by virtue of the plausible allegation of common law fraud against them.
>
> …
>
> The allegations are also sufficient to plead that the Lender Defendants agreed to
> further Agbodjogbe's fraudulent actions. The Lender Defendants' principal
> argument, that their conduct in making loans in the ordinary course of business
> cannot be the basis for implying an agreement to join the conspiracy, is of no
> moment….Here, reading the allegations in a light most favorable to Al-Sabah, the
> Lender Defendants appear to have acted as a "fence" for Agbodjogbe, in that they
> provided him the means to "cash out" value inherent in the real estate that the
> Lender Defendants knew he fraudulently procured. The Lender Defendants did this
> through mortgage loans with commercially unreasonable interest rates and fees,
> without conducting a commercially reasonable underwriting process and without
> contacting the person that they knew fronted the purchase money for the properties.
> This scenario, if true, would support the existence of an agreed-to conspiracy,
> despite the fact that the Lender Defendants were engaged in the business of
> executing loans.

*Id.* at pp. 54-57.

27.     On Ms. Al-Sabah's claims for aiding and abetting, the 2018 Lender Defendants

argued that they could not possible be liable for such claims because they were providing "routine

professional services" in the "the ordinary course of business" and, thus, cannot, as a matter of

law, be liable for aiding and abetting Mr. Agbodjogbe's fraud.  This is the **<u>exact</u>** same argument

articulated by the Trust in the Claim Objections.  It is also the exact same argument completely rejected by the District Court:

> Again, for similar reasons elucidated above, this argument lacks merit, on the current record. While some courts have held that a defendant who owes a plaintiff no duty cannot be an aider and abettor based on a failure to disclose a third party's fraudulent activity against a plaintiff, see id. (citing *Schatz v. Rosenburg*, 943 F.2d 495, 496-97 (4th Cir. 1991), and *Stratton v. Miller*, 113 B.R. 205, 211 (D. Md. 1989)), that law is inapplicable here, at this stage. The Lender Defendants plausibly owed Al-Sabah a duty of care, and a duty of disclosure. Moreover, the Lender Defendants are not merely alleged to be passive observers of Agbodjogbe's fraud, but instead are alleged to have been active participants, providing him with commercially unreasonable loans secured by properties that they knew were rightfully owned by Al-Sabah, and knowing that Agbodjogbe would not be able pay the loans back. Such assistance, if proven, would plausibly qualify as "substantial."

*Id.* at p. 58.

28.     Lastly, the 2018 Lender Defendants argued before the District Court that they are entitled to protection as bona fide mortgagees for value without notice and thus cannot be subject to claims for unjust enrichment.  *Id.* at p. 61.  However, as the District Court noted, "[w]here a mortgagee has notice of fraudulent conduct, it may be subject to an unjust enrichment claim, and cannot obtain *bona fide* status." *Id.*  The District Court further found as follows:

> As described at length above, taking the facts alleged in the Complaint as true, the Lender Defendants knew, or should have known, that Agbodjogbe, and the relevant corporate entities, were engaged in fraud.

*Id.*

29.     Among other things, the Rule 12(c) Ruling not only substantiates a *prima facie* basis for Ms. Al-Sabah's Proofs of Claim and effectively defeats any objections thereto, but also provides the necessary "cause" to modify the Discharge Injunction.  The Trust ignores the import of the Rule 12(c) Ruling, choosing instead to (a) seek summary disposition of the Proofs of Claim on a lesser standard through the claims objection process, and (b) deny Ms. Al-Sabah her opportunity to liquidate such claims before the only logical court.  The Trust cannot ask the Court

to take judicial notice of selective pleadings in the District Court as it has done in the Claim Objections to support is objections, while simultaneously ignoring the Rule 12(c) Ruling, which, if nothing else, establishes the *prima facie* evidence of the validity of the Proofs of Claim. Correspondingly, the Trust has pointed to **no** substantive facts and has provided **no** evidence to demonstrate why the Debtors, unlike the identically situated 2018 Lender Defendants, are not liable to Ms. Al-Sabah.  Therefore, the third prong strongly supports Ms. Al-Sabah's motion to modify the Discharge Injunction.

30.      The facts in this matter are straightforward and, in large part, not disputed.  Ms. Al-Sabah was the victim of a significant fraudulent scheme that involved the Debtors.  She has a right to adjudicate all such claims arising from and related to such fraudulent scheme and should not be prevented from doing so simply because the Debtors' own fraudulent scheme caused them to file for bankruptcy protection.  Absent relief from the Discharge Injunction, however, that is exactly what will happen.  Specifically, the Trust seeks from this Court summary disposition of Ms. Al-Sabah's Proofs of Claim through the claims objection process, thus preventing her the full and fair adjudication to which she is entitled. For these reasons, Ms. Al-Sabah respectfully requests the Discharge Injunction be modified to allow her the opportunity to adjudicate her claims.

## II.    Upon Modification of the Discharge Injunction, This Court Should Abstain From Hearing the Woodbridge Lender Action and Permit the District Court to Adjudicate the Matter in the 2018 Action.

31.      Courts in the Third Circuit may exercise discretion to abstain from hearing certain matters involving a debtor.  Specifically, section 1134(c)(1) of the Bankruptcy Court provides that:

> nothing in this section prevents a district court *in the interest of justice*, or *in the interest of comity with* State courts or *respect for State law, from abstaining from hearing a particular proceeding* arising under title 11 or arising or related to a case under title 11."

28 U.S.C. § 1334(c)(1) (emphasis added).

010-9177-0069/3/AMERICAS

32.    In deciding whether abstention by the bankruptcy court is proper, courts have

utilized a twelve-factor test:

a) the effect on the efficient administration of the estate;
b) the extent to which state law issues predominate over bankruptcy issues;
c) the difficulty or unsettled nature of applicable state law;
d) the presence of a related proceeding commenced in state court or other non-bankruptcy court;
e) the jurisdictional basis, if any, other than section 1334;
f) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
g) the substance rather than the form of an asserted 'core' proceeding;
h) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
i) the burden on the court's docket;
j) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
k) the existence of a right to a jury trial; and
l) the presence of non-debtor parties.

See In re Mobile Tool Int'l, 320 B.R. 552, 556-57 (Bankr. D. Del. 2005) (citing LaRoche Indus.

v. Orica Nitrogen LLC, 312 B.R. 249, 253-53 (Bankr. D. Del. 2004)).

33.    A court does not need to consider all of the abstention factors and no one factor is

determinative, but instead a court "should apply these factors flexibly, for their relevance and

importance will vary with the particular circumstances of each case."  In re D'Angelo, 491 B.R.

395, 406 (E.D. Pa. 2013) (citing Shalom Torah Centers v. Philadelphia Indem. Ins. Companies,

2011 U.S. Dist. LEXIS 35726, at *4 (D. N.J. Mar. 31, 2011); Monmouth Investor, LLC v. Saker,

2010 U.S. Dist. LEXIS 2332 at *4 (D. N.J. Jan. 12, 2010)).  As set forth below, the pertinent

abstention factors weigh in favor of this Court permitting the District Court to adjudicate the

Woodbridge Lender Action in the 2018 Action.

A.     **Effect on the Efficient Administration of the Estates.**

34.     There will be very little to no impact on the administration of the Debtors' estates by permitting the Woodbridge Lender Action be joined in the 2018 Action in the District Court. The Debtors in these cases are effectively dissolved, and are no longer operating a business with employees, rather, they are represented by the Trust created under the confirmed Plan.  To the extent third party witnesses are necessary to litigate the Woodbridge Lender Action, which is anticipated, such testimony would come from former the Debtors' former personnel.  Accordingly, other than having to make a distribution on an resulting claim, there will be no impact on how the Trust allocates distributions under the Plan and adjudicates remaining claims.  In short, the facts that Ms. Al-Sabah will need to sustain her claims will come from third party witnesses, not the Trust, therefore, the proceeding will not impact the administration of the estates.

35.     The Proofs of Claim are general unsecured claims that need to be liquidated.  Surely the Trust does not contend that having this Court adjudicate the Woodbridge Lender Action simultaneously with the District Court adjudicating the 2018 Action between Ms. Al-Sabah and the 2018 Lender Defendants would promote the efficient operation of the estates and its resources. Rather, adjudicating this matter in the District Court in one swoop with the other 2018 Lender Defendants is the proper course of action for this Court to implement – and the only one that will promote judicial economy.  This factor weighs in favor of the Court abstaining from hearing the Woodbridge Lender Action.

B.     **Extent to Which State Law Issues Predominate Over Bankruptcy Issues.**

36.     All claims asserted against the Debtors by Ms. Al-Sabah are state law claims, which is why the 2018 Action is being adjudicated in the District Court.  As stated above, the District Court has entered the Rule 12(c) Ruling and is overseeing discovery of the parties in the 2018

16

Action.  No bankruptcy issues are present and no rulings of this Court are implicated.  Therefore, this factor also weighs in favor of the Court abstaining from hearing the Woodbridge Lender Action.

### C.    Difficulty or Unsettled Nature of Applicable State Law.

37.    As evidenced by the District Court in the Rule 12(c) Order, the Counts involve complicated state law issues.  It is not apparent at this stage of the litigation if any of the Counts are unsettled or not, but Ms. Al-Sabah has demonstrated that these complex issues may be ruled upon in her favor.  A portion of these complexities can be attributed to the multiple cases and length of time that the District Court has devoted to analyzing the issues in the underlying 2017 Action for which Ms. Al-Sabah's claims are predicated.  Having first decided the 2017 Action, and now having turned to the 2018 Action, multiple years of litigation will obviously create layers of arguments and issues.  As such, the District Court should hear the Woodbridge Lender Action.  Thus, this factor weighs in favor of the relief requested herein.

### D.    Presence of a Related Proceeding Commenced in Non-Bankruptcy Court.

38.    This is the strongest factor in favor of this Court abstaining to hear the Woodbridge Lender Action.  The 2017 Action was commenced and completed in the District Court.  The District Court is intimately familiar with the 2018 Lender Defendants, the Counts, and the multitude of complex issues arising from the Counts and related claims asserted in the Proofs of Claim, as is evidenced by the Rule 12(c) Rulings.  Moreover, failure to have the District Court hear this matter would create the very real chance of having inconsistent rulings between the District Court and this Court on the Counts and related issues.  This would create immense confusion and complexity to matters that have been litigated for nearly four years by Ms. Al-Sabah.  Thus, this factor also weighs in favor of abstention by this Court.

17

**E.    Jurisdictional Basis Other Than Section 1334.**

39.     This factor may admittedly weigh in favor of this Court hearing the Woodbridge

Lender Action because there is arguably diversity between Ms. Al-Sabah and the Debtors.

**F.    Degree of Relatedness or Remoteness of the Proceeding to the Main Bankruptcy Case.**

40.     There is no relationship between these bankruptcy cases and the 2018 Action other

than the liquidation of the Proofs of Claim.  As set forth above, Ms. Al-Sabah is not looking for a

double recovery and understands only one claim is entitled to a distribution, which, considering

the claims in these cases, is a modest claim, at best.  This factor weighs in favor of abstention.

**G.    Substance Rather Than Form of an Asserted Core Proceeding.**

41.     The Proofs of Claim are related to these chapter 11 cases – Ms. Al-Sabah filed the

Proofs of Claim to preserve her claims against the estates.  Indeed, at the time, it was her only

option due to the automatic stay, followed by the stay of the 2018 Action.  However, the Proofs of

Claim preserved her jurisdictional rights to pursue liquidation in a non-bankruptcy court.  *See*

Proofs of Claim, Attachment to Proof of Claim.

42.     Similar to the court's holding in *In re Freehand H.J., Inc.*, 2007 Bankr. LEXIS

2068, at *11-15 (Bankr. E.D. Pa. June 13, 2007), although the decision in the Woodbridge Lender

Action will have an effect on the distributions in the bankruptcy, because the Counts relate to state

law claims that are "not created or invoked by the Bankruptcy Code," the claims asserted against

the Debtors are "related to" these cases and is non-core.  *See also Stoe v. Flaherty*, 436 F.2d 209,

219 (3rd Cir. 2006).  In short, the Counts are not core, do in no way intimately related to these

cases, and, therefore, should be reserved for the District Court to resolve in the 2018 Action.

**H.    Feasibility of Severing State Law Claims from Core Bankruptcy Matters to Allow Judgments to Be Entered with Enforcement Left to the Bankruptcy Court.**

43.    If the Court agrees to abstain from hearing the Woodbridge Lender Action, there will be no state law claims to sever from core bankruptcy matters – as discussed above, there are no core claims.  Therefore, this factor weighs in favor of the Court abstaining from hearing the Woodbridge Lender Action.

**I.    Burden on This Court's Docket.**

44.    Ms. Al-Sabah is not aware of whether adding the Woodbridge Lender Action to the docket would burden this Court.  Indeed, Ms. Al-Sabah believes that the Court could hear this matter if it deemed necessary, but understands that this Court is consistently over-burdened with large and complex cases, including the instant cases, which itself has numerous adversary proceedings pending before it. Due to the number of adversary proceedings already being handled by the Trust in this Court, it would promote judicial efficiency for this Court to permit the District Court to hear the complete set of issues concerning the 2018 Action, which does include the Debtors' involvement with Mr. Agbodjogbe.  As a result, this factor weighs in favor of this Court abstaining from the hearing the Woodbridge Lender Action.

**J.    Likelihood That the Commencement of the Proceeding in This Court Involves Forum Shopping by One of the Parties.**

45.    This factor is not relevant to this matter.

**K.    Existence of a Right to a Jury Trial.**

46.    This factor is not relevant to this matter.

**L.    Presence of Non-Debtor Parties.**

47.    This factor overwhelming weighs in favor of the Woodbridge Lender Action being heard by the District Court.  The 2018 Action involves the non-debtor 2018 Lender Defendants,

Ms. Al-Sabah, Mr. Agbodjogbe, the various brokers who assisted in the fraud as well as numerous non-debtor witnesses, some known, other yet to be discovered as the parties engage with discovery, depositions, and the like. Thus, this factor weighs in favor of the District Court hearing the Woodbridge Lender Action.

48.     In summary, of the twelve factors, Ms. Al-Sabah can clearly demonstrate that at least nine factors weigh in favor of abstention. Moreover, from a commonsense perspective, it is in the "interest of justice" and "in the interest of comity with . . . respect for State law" to have the District Court adjudicate the Woodbridge Lender Action as a part of the 2018 Action. In short, there is only one logical venue for such an adjudication - the District Court.

## <u>RESERVATION OF RIGHTS</u>

49.     Ms. Al-Sabah respectfully reserves all of her jurisdictional rights as set forth in her Proofs of Claim.

## CONCLUSION

**WHEREFORE**, Ms. Al-Sabah respectfully requests that the Court enter an order (a) modifying the Discharge Injunction so that Ms. Al-Sabah can pursue liquidation of the Proofs of Claim against the Debtors, or the Trust, as applicable, (b) holding that this Court will abstain from hearing the Woodbridge Lender Action and will permit the District Court to hear the Woodbridge Lender Action as part of the 2018 Action so that Ms. Al-Sabah's Proofs of Claim can be liquidated and receive the distribution entitled to similar claimants under the Plan, and (c) granting such other and further relief as is just and proper.

Dated:  March 1, 2021
        Wilmington, Delaware

**CHIPMAN, BROWN, CICERO & COLE, LLP**
By: */s/ Mark L. Desgrosseilliers*
Mark L. Desgrosseilliers (No. 4083)
Robert A. Weber (No. 4013)
Hercules Plaza
1212 N. Market Street
Suite 5400
Wilmington, DE 19801
Email: Chipman@chipmanbrown.com
       Desgross@chipmanbrown.com
       Weber@chipmanbrown.com

-and-

**SQUIRE PATTON BOGGS (US) LLP**
Christopher J. Giaimo (admitted *pro hac vice*)
2550 M Street, NW
Washington, DC 20037
Telephone: 202-457-6000
Facsimile: 202-451-6315
Email: Jeffrey.rothleder@squirepb.com
       Christopher.giaimo@squirepb.com

*Counsel to Ms. Alia Salem Al-Sabah*