# <u>EXHIBIT A</u>

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Woodbridge Group of Companies, LLC |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Delaware |
| Case number | 17-12560 |



## Official Form 410

# Proof of Claim

FILED - 02005
DISTRICT OF DELAWARE
WOODBRIDGE GROUP OF COMPANIES, LLC
17-12560/JUDGE KEVIN J. CAREY

04 /16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

**1. Who is the current creditor?**

Rochelle Berman Trust
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Rochelle Berman Trust<br>Name | Rochelle Berman Trust<br>Name |
| 11220 SW 111th Street<br>Number    Street | 11220 SW 111th Street<br>Number    Street |
| Miami          FL          33176<br>City          State          ZIP Code | Miami          FL          33176<br>City          State          ZIP Code |
| Contact phone (305) 510-1333 | Contact phone (305) 510-1333 |
| Contact email See Attachment 1 | Contact email See Attachment 1 |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ — _ _ _ _ — _ _ _ _ — _ _ _ _

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) _____     Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☒ No

☐ Yes    Last 4 digits of the debtor's account or any number you use to identify the debtor:  ___  ___  ___  ___

---

**7. How much is the claim?**    $ 30,000.00 _____    . Does this amount include interest or other charges?

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

<u>Loan - Interest in deed of trust secured by real estate</u>

---

**9. Is all or part of the claim secured?**

☐ No

☒ Yes.    The claim is secured by a lien on property.

**Nature of property:**

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:**    <u>Assignee of deed of trust and UCC-1 financing statement</u>

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $ 2,880,000.00

Amount of the claim that is secured:    $ 30,000.00

Amount of the claim that is unsecured:  $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $ 200.00

Annual Interest Rate (when case was filed) 4.0000 %

☒ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☒ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $ _____

---

**11. Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property:  _____

---

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

☒ No

☐ Yes. *Check all that apply:*    Amount entitled to priority

---

| | |
|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $ _____ |

\* Amounts are subject to adjustment on 4/1/16 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

| | |
|---|---|
| The person completing this proof of claim must sign and date it. FRBP 9011(b). | **Check the appropriate box:** |
| | ☐ I am the creditor. |
| If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is. | ☒ I am the creditor's attorney or authorized agent. |
| | ☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. |
| | ☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. |

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  4 / 5 / 2018
                  MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

| | |
|---|---|
| Name | **Carlos de Zayas** |
| | First name       Middle name       Last name |
| Title | **Attorney for Claimant** |
| Company | **Lydecker Diaz** |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | **1221 Brickell Avenue, 19th Floor** |
| | Number       Street |
| | **Miami**              **Florida**      **33131** |
| | City                    State      ZIP Code |
| Contact phone | **(305) 416-3180**       Email  **cdz@lydeckerdiaz.com** |



New York
Miami
Fort Lauderdale
Bonita Springs
Boca Raton
West Palm Beach
Orlando
Tampa
Jacksonville

**Please reply to Miami Office:**
1221 Brickell Avenue
19th Floor
Miami, FL 33131
(305) 416-3180

April 5, 2018

*Via Federal Express*

Garden City Group
Claims Agent for
Woodbridge Group of Companies, LLC
1985 Marcus Avenue, Suite 200
Lake Success, NY 11042

APR - 6 2018
Garden City Group, LLC

> Re:    *Woodbridge Group of Companies, LLC*
>         *Case No.: 17-12560*

Dear Sir/Madam:

We represent Mark E. Graham, Rochelle Berman Trust, Mainstar Trust and Marl Gullifer and Tammy Gullifer in the above referenced matter.  Enclosed please find four (4) Proofs of Claim for filing. I have also enclosed copies of the Proofs of Claim to have file-stamped and returned to our office in the pre-paid Federal Express label and envelope provided.

Please contact us if you have any questions regarding this matter. Thank you for your assistance.

Sincerely,

Carlos de Zayas

CDZ/jf
Enclosure(s)

Property ID: Third Street - Mezzanine

FOR YOUR RECORDS

## ASSIGNMENT OF PROMISSORY NOTE
## AND PLEDGE AND SECURITY AGREEMENT

**THIS ASSIGNMENT OF PROMISSORY NOTE AND PLEDGE AND SECURITY AGREEMENT** (this "Assignment") effective as of October 13, 2016, by **WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC,** a Delaware limited liability company with an office and a mailing address at 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423 (the "Assignor"), in favor of **ROCHELLE BERMAN TRUST**, an entity having an address of 11220 SW 111 Street, Miami, Florida 33176 (the "Assignee").

**WHEREAS**, Assignee has extended a certain loan (the "Loan") in the original principal amount of THIRTY THOUSAND AND 00/100 DOLLARS ($30,000.00) to Assignor (the obligations of Assignor in respect of the Promissory Note evidencing said Loan being hereinafter referred to as the "Obligations"); and

**WHEREAS**, it is a condition of Assignee's agreement to extend such Loan that Assignor assign to Assignee its interest in certain documents hereinafter described, and the indebtedness related thereto, as security for the Obligations;

**NOW, THEREFORE**, as security for the Obligations, and as an inducement to Assignee to extend the Loan and in consideration therefor, and in consideration of Ten and 00/100 Dollars ($10.00) to Assignor paid, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby grants, bargains, sells, assigns, conveys, transfers and sets over unto Assignee a security interest in and lien upon, all of Assignor's right, title and interest in, to and under: (a) a certain Pledge and Security Agreement by H52 Willow Grove Holding Company, LLC, dated October 13, 2016, in favor of Assignor (the "Assigned Pledge"), (b) that certain Mezzanine Promissory Note in the principal amount of Two Million Eight Hundred Eighty Thousand and 00/100 Dollars ($2,880,000.00), dated October 13, 2016, made by H52 Willow Grove Holding Company, LLC, and payable to the order of Assignor (the "Assigned Note"), (c) that certain Mezzanine Loan Agreement dated October 13, 2016, by and between Assignor and H52 Willow Grove Holding Company, LLC, (the "Assigned Loan Agreement") and all proceeds thereof and all other documents securing or guarantying the same (the Assigned Pledge, the Assigned Note, the Assigned Loan Agreement, and all other documents or instruments securing or guarantying the same being hereinafter referred to collectively as the "Assigned Documents").

Assignor further covenants and agrees as follows:

1.      The occurrence of an "Event of Default" under the Promissory Note evidencing the Loan, or under the Collateral Assignment dated of even date herewith, beyond the applicable notice and cure period shall constitute an "Event of Default" under this Assignment. So long as no Event of Default shall have occurred, Assignor shall be entitled to collect all payments of interest and all scheduled payments of principal (collectively, "Scheduled Payments") on the Assigned Documents.

2.      In the event of any payment (other than Scheduled Payments or pre-payments) under the Assigned Note, the obligor under the Assigned Documents ("Borrower") is hereby irrevocably authorized and directed to make such payment directly to Assignee or to such person as Assignee shall otherwise direct. Assignor shall immediately pay over to Assignee any such payment received directly from Borrower.

3.      Upon written notice from Assignee that an Event of Default exists, Borrower shall thereafter make, and is hereby irrevocably authorized and directed to make, all payments under the Assigned Documents directly to Assignee or to such person as Assignee shall otherwise direct, to be applied against the Obligations until such Obligations are satisfied. Upon satisfaction of such Obligations, all remaining payments under the Assigned Documents, if any, shall resume to be made and directed to Assignor.

4.      Upon the occurrence of an Event of Default, Assignor will not grant any waivers, indulgences, modifications, extensions or other departures by Borrower from or of the obligations required to be performed by Borrower under the Assigned Documents and any security or other agreement executed in connection therewith, without the prior written consent of Assignee.

5.      This Assignment is executed only as security for the Obligations. The execution and delivery of this Assignment shall not subject Assignee to, or transfer or pass to Assignee, or in any way affect or modify, the liability of Assignor under any or all of the Assigned Documents.

6.      In the exercise of its powers hereunder or under any documents relating to the Obligations, no liability shall be asserted or enforced against Assignee, all such liability being hereby expressly waived and released by Assignor. Assignor hereby agrees to indemnify Assignee, and hold it harmless, from any and all liabilities, losses, or damages which Assignee shall incur by reason of this Assignment or the Assigned Documents and from any and all claims and demands whatsoever which may be asserted against Assignee by reason of any alleged obligations or, undertakings required to be performed by Assignor in connection with the Assigned Documents.

7.      Assignor hereby agrees and acknowledges that neither the acceptance of this Assignment by Assignee nor the exercise of, or failure to exercise, any right, power or remedy in this instrument conferred upon Assignee shall be deemed or construed to obligate Assignee, or its successors or assigns, to pay any sum of money, take any action or incur any liability in connection with any of the Assigned Documents. It is further agreed and understood by Assignor that neither Assignee nor its successors or assigns shall be liable in any way for any costs, expenses or liabilities connected with, or any charges or liabilities resulting from, any of the Assigned Documents.

8.      This Assignment shall be binding upon Assignor and its successors and assigns, and shall inure to the benefit of Assignee and its successors and assigns. Notwithstanding anything contained herein, however, neither the Note nor the other Loan Documents are assignable by Assignee without the Assignor's written consent, and any such attempted assignment without such consent shall be null and void. This Assignment shall be governed by and construed and enforced in accordance with the laws of the State of Delaware.

9.      (a) Any notice, report, demand, request or other instrument or communication authorized or required under this Assignment to be given to Assignor, Assignee or Borrower shall be deemed given if addressed to the party intended to receive the same, at the address of such party set forth below, (i) when delivered at such address by hand or by overnight delivery service, or (ii) three (3) days after the same is deposited in the United States mail as first class certified mail, return receipt requested, postage paid, whether or not the same is actually received by such party:

Assignor:       WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC
                14225 Ventura Boulevard, Suite 100
                Sherman Oaks, California 91423

Assignee:       ROCHELLE BERMAN TRUST
                11220 SW 111 Street, Miami, Florida 33176

(b) Any party may change the address to which any such notice, report, demand, request or other instrument or communication to such party is to be delivered or mailed, by giving written notice of such change to the other parties, but no such notice of change shall be effective unless and until received by such other parties.

10.     Upon full payment and performance of the Obligations, this Assignment shall terminate and shall be of no further force and effect. Upon such termination, Assignee shall indorse the Assigned Note to the order of Assignor (or otherwise as Assignor may direct), without recourse, warranty or representation, and Assignee shall deliver the Assigned Note to Assignor.

11.     Notwithstanding anything to the contrary set forth in this Assignment, unless and until Assignee shall have exercised its rights under Paragraph 3 above, Assignor shall be entitled to enforce the Assigned Pledge.

**IN WITNESS WHEREOF**, the Assignor has executed this Assignment as of the date first written above.

Assignor:

**WOODBRIDGE MORTGAGE
INVESTMENT FUND 3A, LLC**

By: _____
    Robert Reed
    Its Authorized Representative

2



## COLLATERAL ASSIGNMENT OF PROMISSORY NOTE, PLEDGE
## AND SECURITY AGREEMENT, AND OTHER LOAN DOCUMENTS

**THIS COLLATERAL ASSIGNMENT OF PROMISSORY NOTE, PLEDGE AND SECURITY AGREEMENT, AND OTHER LOAN DOCUMENTS** (this "Assignment"), effective as of this October 13, 2016, is made and given by **WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC**, a Delaware limited liability company ("Borrower"), having an address at 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423, and in favor of **ROCHELLE BERMAN TRUST**, an entity having an address of 11220 SW 11 Street, Miami, Florida 33176, its successors and assigns ("Lender").

### Background

Lender has made, and Borrower has accepted, a loan in the original maximum principal amount of THIRTY THOUSAND AND 00/100 DOLLARS ($30,000.00) (the "Loan") upon the terms and conditions set forth in that certain Promissory Note dated August 10, 2016, in the original principal amount of THIRTY THOUSAND AND 00/100 DOLLARS ($30,000.00) made by Borrower and payable to Lender (as the same may be amended or modified from time to time, the "Note").

Lender understands that Borrower shall utilize the proceeds of the Loan to fund a mezzanine loan to a third party borrower, such loan to be made pursuant to the "Underlying Documents" more particularly described in Section 2.1.1 below. As a condition to making the Loan, Lender has required Borrower to assign to Lender, as additional security for the Loan, all of Borrower's right, title and interest in and to the promissory notes, security instruments and other loan documents conveyed including without limiting the generality of the foregoing, all rights to receive payments under such collateral.

### Statement of Agreement

**NOW, THEREFORE**, for valuable consideration, separate and distinct from the consideration given by Lender with respect to the Loan, the receipt and adequacy of which are hereby acknowledged, Borrower agrees as follows:

1. **Recitals.** The Recitals are incorporated herein by this reference.

2. **Assignment.** As security for the performance of all obligations of Borrower to Lender under the Note, the Assignment of Promissory Note and Pledge and Security Agreement, and all other documents now or hereafter evidencing, securing or related to the Loan (collectively, the "Loan Documents"), Borrower hereby assigns and transfers to Lender, on a non-exclusive basis, all of its right, title and interest in and to the following collateral (the "Collateral"):

   2.1.1. All right, title, interest, claims or rights of Borrower now or hereafter in and to the notes, security instruments, guaranties and other documents (collectively, the "Underlying Documents") described on **Exhibit "A"** attached hereto and incorporated herein by this reference;

   2.1.2. Any and all proceeds of a casualty or condemnation, repayment of loans, membership interests, distributions, proceeds of enforcement of security interests, and payments of any kind or nature whatsoever, now or hereafter distributable or payable to Borrower by reason of Borrower's ownership of the Underlying Documents;

   2.1.3. All accounts, contract rights, security entitlements, investment property and general intangibles now or hereafter evidencing, arising from or relating to any of the foregoing;

   2.1.4. All right of Borrower to collect and enforce payments pursuant to the terms of the Underlying Documents;

   2.1.5. All documents, writings, leases, books, files, records, computer tapes, programs, ledger books and ledger pages arising from or used in connection with any of the foregoing;

   2.1.6. All renewals, extensions, additions, substitutions or replacements of any of the foregoing;

   2.1.7. All powers, options, rights, privileges and immunities pertaining to any of the foregoing; and

   2.1.8. All proceeds of any of the foregoing and all cash, security or other property distributed on account of any of the foregoing.

3. **Representations and Warranties.** Borrower hereby represents and warrants that: (a) Borrower is or will be the true owner of the interests under the Underlying Documents; (b) Borrower has not assigned or granted a security

erest in the Collateral to any person or entity that is or will be superior to that of the Lender; and (c) to Borrower's knowledge, (i) Borrower's interest in the Collateral is not and will not be subject to any claims, setoffs, encumbrances or deductions, and (ii) the Loan Documents constitute and will constitute valid and binding obligations of Borrower.

4.    **No Assumption by Lender and Covenants of Borrower.** Neither this Assignment nor any action or actions on the part of Lender after the date hereof shall constitute an assumption by Lender of any obligations under the Underlying Documents, and Borrower shall continue to be liable for all obligations thereunder arising after the date hereof. Borrower agrees to perform punctually any and all obligations it may have under the Underlying Documents, to take such steps as it may deem necessary or appropriate to secure performance by the obligor(s) and guarantor(s) of the Underlying Documents thereon of all of its obligations under the applicable Underlying Documents.

5.    **Benefits Conditionally Retained by Borrower.** Lender hereby grants Borrower the right to continue to receive the benefits of, and exercise the rights under, the Underlying Documents unless an Event of Default (as described in Section 14 below) exists, in which event such rights may be revoked at any time thereafter at the option of Lender.

6.    **Action by Lender Following Event of Default.** Lender shall have the right, but not an obligation, at any time while an Event of Default exists, without notice and without taking possession of the Property or any part thereof, to take in Lender's name or in the name of Borrower such action as Lender may, at any time or from time to time, reasonably determine to be necessary to cure any default under the Underlying Documents or to protect or exercise the rights of Borrower or Lender thereunder, and may otherwise exercise any other rights or remedies Lender has under the Loan Documents. Lender shall incur no liability if any action taken by it or on its behalf pursuant to this Assignment shall prove to be in whole or in part inadequate or invalid; and Borrower hereby agrees to indemnify, defend, and hold Lender free and harmless from and against any loss, costs, liability or reasonable expense (including, without limitation, reasonable attorneys' and accountants' fees and expenses, court costs and investigation expenses) actually incurred by Lender in connection with its actions under this Section 6.

7.    **Power of Attorney.** Borrower hereby irrevocably constitutes and appoints Lender as its true and lawful agent and attorney-in-fact, with full power of substitution, to demand, receive and enforce all rights of Borrower under the Underlying Documents, following the occurrence and during the continuance of an Event of Default, to modify, supplement and terminate the Underlying Documents, to transfer the Underlying Documents to Lender, to give appropriate releases, receipts for or on behalf of Borrower in connection with the Underlying Documents, to file, pursue, receive payment and acquittances for or otherwise compromise each and every claim Borrower has or may have against the obligor(s) and guarantor(s) of the Underlying Documents for payment or otherwise under the Underlying Documents, all in the name, place and stead of Borrower or in Lender's name, with the same force and effect as Borrower could have if this Assignment had not been made. Borrower authorizes any third party to rely exclusively on the certificate of an officer of Lender or its successor for the establishment of an Event of Default and hereby waives and releases any claim Borrower may have against such third party for such reliance. Borrower hereby agrees to deliver to Lender, upon Lender's written demand and after the occurrence and during the continuance of an Event of Default, all instruments and documents as Lender may reasonably require in order to permit Lender's succession to the right, title and interest of Borrower in and to the Underlying Documents as provided herein. Borrower appoints Lender as its attorney-in-fact to execute any and all such documents on Borrower's behalf upon any failure of Borrower to so execute such documents, it is hereby recognized that the power of attorney herein granted is coupled with an interest and is irrevocable. At Lender's option, Lender may record this Assignment in the recording office. By acceptance of this Assignment, Lender agrees that it shall not exercise the power of attorney granted herein unless there shall have occurred and be continuing an Event of Default.

8.    **Binding Effect.** This Assignment shall be binding upon Borrower and its successors and assigns, and shall inure to the benefit of Lender and its successors and assigns, including without limitation any purchaser upon enforcement of the security interests created by the Underlying Documents.

9.    **No Release or Termination.** The taking of this Assignment by Lender shall not affect the release of any other collateral now or hereafter held by Lender as security for the obligations of Borrower under the Loan Documents, nor shall the taking of additional security for any such obligations hereafter effect a release or termination of this Assignment, or any terms or provisions hereof.

10.    **No Waiver.** No failure or delay on the part of Lender in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies hereunder are cumulative and may be exercised by Lender either independently of or concurrently with any other right, remedy or power contained herein or in any instrument executed in connection with the Loan Documents.

11.    **Captions.** The section titles or captions contained in this Assignment are for convenience only and shall not be deemed to define, limit or otherwise modify the scope or intent of this Assignment.

12.    **Variation in Pronouns.** All the terms and words used in this Assignment, regardless of the number and gender in which they are used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context or sense of this Assignment or any paragraph or clause herein may require, the same as if such word had been fully and properly written in the correct number and gender.

13.    **Notices.** Any notice, demand, request or other communication which any party hereto may be required or may desire to give hereunder shall be given in the manner required by the Loan Documents.

14.    **Event of Default.** The occurrence of an Event of Default under the Note or any of the other Loan Documents beyond the applicable notice and cure period shall constitute an "Event of Default" under this Assignment.

15.    **Successors and Assigns.** This Assignment shall be binding upon Borrower and its successors and assigns and shall insure to the benefit of the Lender and Lender's successors; provided, however, and notwithstanding anything contained herein, neither the Note nor the Loan Documents are assignable by Lender, in whole or in part, and any such attempted assignment shall be null and void.

16.    **Governing Law.** The parties hereby acknowledge, consent and agree this Assignment and the rights of all parties mentioned herein shall be governed by the laws of the State of Delaware.

**IN WITNESS WHEREOF,** the Borrower, acting by its duly authorized officer, has signed, sealed and delivered this Assignment on the date above written.

BORROWER:

**WOODBRIDGE MORTGAGE
INVESTMENT FUND 3A, LLC**

By: _____
    Robert Reed
    Its Authorized Representative

3

STATE OF CONNECTICUT    )
                        )
COUNTY OF TOLLAND       )

On this October 13, 2016, before me, the undersigned notary public, personally appeared Robert Reed, Authorized Representative of WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC, a Delaware limited liability company, to me known and known by me to be the party executing the foregoing Collateral Assignment of Promissory Note, Pledge and Security Agreement, and Other Loan Documents on behalf of said limited liability company, in favor of ROCHELLE BERMAN TRUST and acknowledged said instrument and the execution thereof, to be his free act and deed as such officer and the free act and deed of said limited liability company.

_____
Notary Public

SAMANTHA J. WALBRIDGE
NOTARY PUBLIC
MY COMMISSION EXPIRES JULY 31, 2020

4

## EXHIBIT A TO COLLATERAL ASSIGNMENT

1. That certain Pledge and Security Agreement from H52 Willow Grove Holding Company, LLC dated October 13, 2016, in favor of WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC, encumbering certain membership interests described therein.

2. That certain Mezzanine Promissory Note in the original principal amount of Two Million Eight Hundred Eighty Thousand and 00/100 Dollars ($2,880,000.00) dated October 13, 2016, made by H52 Willow Grove Holding Company, LLC, payable to the order of WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC.

3. That certain Mezzanine Loan Agreement dated October 13, 2016, by and between H52 Willow Grove Holding Company, LLC and WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC.

4. That certain UCC-1 Financing Statement filed with the Secretary of State's Office for the State of Delaware identifying H52 Willow Grove Holding Company, LLC as the "Debtor" and WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC as the "Secured Party" and covering certain membership interests in Willow Grove Investments, LLC.

5

Property ID : Third Street – Mezzanine
Principal   : $30,000.00
Int. Rate   : 4.00%

## PROMISSORY NOTE

August 10, 2016

$30,000.00                                                      Sherman Oaks, California

**FOR VALUE RECEIVED**, the undersigned, **WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC**, a Delaware limited liability company having an office and a mailing address at 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423 (hereinafter referred to as the "Borrower") does hereby promise to pay to the order of **ROCHELLE BERMAN TRUST**, an entity having an address of 11220 SW 111 Street, Miami, Florida 33176 (hereinafter referred to as "Lender"), at such place as the Lender may designate by written notice to Borrower, the principal sum of Thirty Thousand and 00/100 Dollars ($30,000.00), together with interest on all unpaid balances beginning as of the date hereof, at the fixed rate per annum as set forth in Section 1 hereof.

1.   **Interest Rate.** The unpaid balance of the principal sum of Thirty Thousand and 00/100 Dollars ($30,000.00) shall bear interest from the date hereof through March 1, 2018, at a fixed rate of interest equal to four and 00/100 percent (4.00%) per annum.  The rate of interest charged hereunder shall never exceed the maximum amount, if any, allowable by law. Interest shall be charged on the principal balance from time to time outstanding on the basis of the actual number of days elapsed computed on the basis of a 360 day year.

2.   **Default Interest Rate.** During the continuance of any Event of Default (as more particularly defined in Paragraph 6 below) under this Note, or after the maturity of the loan evidenced hereby, by acceleration or otherwise, interest shall accrue from and after such event at four (4) percentage points above the interest rate then in effect hereunder (the "Default Interest Rate").

3.   **Repayment.** Borrower promises to pay the interest and principal on this Note, as set forth below:

a. Monthly payments of interest shall be made commencing on September 1, 2016 and continuing on the same day of each and every month to occur thereafter, both before and after maturity by acceleration or otherwise.

The entire principal balance plus accrued and unpaid interest thereon, and all other sums and charges due the Lender hereunder, unless sooner paid, shall be due and payable on March 1, 2018 (the "Maturity Date").

b.  On or after (but not before) the earlier to occur of the Maturity Date or the date upon which Willow Grove Investments, LLC, a Delaware limited liability company having an office and a mailing address at 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423, or its successors or assigns, sells or disposes of the property described in the "Underlying Documents" as that term is defined in the Collateral Assignment Documents (hereinafter defined), **and provided at such time Lender continues to be owed any principal due hereunder**, an additional payment of Three and 00/100 percent (3.00%) per annum of such unpaid balance of principal shall be made to Lender.

4.   **Application of Payments.** All payments pursuant to this Note shall be made in legal tender of the United States of America and shall be applied first to the payment of delinquency or late charges, if any; second, to the payment of accrued and unpaid interest on this Note; and third, the balance on account of the principal of this Note.

1

Property ID : Third Street - Mezzanine
Principal  : $30,000.00
Int. Rate  : 4.00%

5. **Cure Period and Notice of Default.** Failure of Borrower to pay by its due date any installment of the principal or of interest within thirty (30) days from the date the same becomes due and payable, shall constitute a "Payment Default" under this Note. Borrower shall have a cure period of not less than thirty (30) days after receipt of written notice ("Notice of Default") of any alleged breach or Payment Default under the terms of this Note to cure the same.

6. **Event of Default.** Any alleged breach or Payment Default under this Note that is not fully cured following the expiration of the applicable cure period specified in a given Notice of Default shall constitute an event of default ("Event of Default") under this Note.

7. **Waiver of Rights.**

a. BORROWER HEREBY WAIVES TRIAL BY JURY IN ANY COURT AND IN ANY SUIT ACTION OR PROCEEDING OR ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE FINANCING TRANSACTIONS OF WHICH THIS NOTE OR THE COLLATERAL ASSIGNMENT DOCUMENTS (AS DEFINED BELOW) ARE A PART AND/OR THE ENFORCEMENT OF ANY OF LENDER'S RIGHTS AND REMEDIES. BORROWER ACKNOWLEDGES THAT IT MAKES THIS WAIVER KNOWINGLY, VOLUNTARILY AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER.

b. Borrower hereby waives diligence, demand, presentment for payment, protest and notice of protest, and notice of any renewals or extensions of this Note, and agrees that the time for payment of this Note may be changed and extended at Lender's sole discretion, without impairing its liability thereon, and further consents to the release of any party liable for this obligation, or the release of all or any part of the collateral given as security for the payment of this Note, without affecting its liability with respect hereto.

8. **Lender's Rights.** Lender's rights hereunder shall be cumulative and not exclusive and may be exercised at the sole discretion of Lender with respect to priority, order and type of collateral or security realized upon or applied toward the indebtedness evidenced hereby until this Note and all accrued and unpaid interest and other sums and charges due hereunder shall have been paid in full. Further, no failure on the part of Lender to exercise any right or remedy hereunder, whether before or after the occurrence of an Event of Default hereunder, shall constitute a waiver thereof, and no waiver of any past default shall constitute waiver of any future default or of any other default.

9. **Prepayment.** The Borrower shall have the right to prepay this Note in whole or in part at any time without penalty.

10. **Binding Effect.** This Note shall bind the successors and assigns of Borrower and shall inure to the benefit of the Lender, its successors and assigns.

11. **Captions and Section Headings.** The captions and section headings used in this Note are for convenience only and shall not be used to interpret, modify or affect in any way the covenants and agreements herein contained.

12. **Severability.** In the event that any one or more of the provisions of this Note shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part, or in any respect, or in the event that any one or more of the provisions of this Note shall operate or would prospectively operate, to invalidate this Note, then the remaining provisions of this Note shall remain operative and in full

2

```
Property ID : Third Street - Mezzanine
Principal   : $30,000.00
Int. Rate   : 4.00%
```

force and effect, shall be valid, legal and enforceable and shall in no way be affected, prejudiced or disturbed thereby.

13. **Governing Law.** This Note shall be governed by and construed in accordance with the laws of the State of Delaware.

14. **No Assignment.** Neither this Note, the Loan Agreement of even date herewith between Borrower and Lender, nor all other instruments executed or to be executed in connection therewith (collectively, the "Collateral Assignment Documents") are assignable by Lender without the Borrower's written consent and any such attempted assignment without such consent shall be null and void.

15. **Commercial Transaction.** Lender and Borrower each acknowledge and stipulate that the Loan is a commercial transaction.

16. **Security.** This Note will be secured _inter alia_ by the Collateral Assignment Documents upon execution thereof.

17. **No Additional Profits Payment.** LENDER SHALL NOT RECEIVE ANY SHARE WHATSOEVER OF ANY PROFITS GENERATED IN CONNECTION WITH THE SALE OR DISPOSITION OF THE PROPERTY DESCRIBED IN THE UNDERLYING DOCUMENTS.

**WOODBRIDGE MORTGAGE
INVESTMENT FUND 3A, LLC**

By: _____
    David E. Golden
    Its Authorized Representative

Accepted and Agreed to by Lender:

**ROCHELLE BERMAN TRUST**

By: _____
    Name: _____
    Title: Trustee

3

```
Property ID : Third Street - Mezzanine
Principal   : $30,000.00
Int. Rate   : 4.00%
```

## LOAN AGREEMENT

**THIS LOAN AGREEMENT** (this "Agreement") made on this August 10, 2016, by and between **ROCHELLE BERMAN TRUST**, an entity having an address of 11220 SW 111 Street, Miami, Florida 33176 (hereinafter referred to as the "Lender") and **WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC**, a Delaware limited liability company, having an office at 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423 ("Woodbridge").

## WITNESSETH:

**WHEREAS,** Lender wishes to make a loan (the "Loan") to Woodbridge to fund, in part, a loan to a third-party borrower, as more fully defined below (the "Pledged Mezzanine Loan"); and

**WHEREAS,** Lender advanced to Woodbridge a portion of the funds that, with other funds from Woodbridge, will be used to make the Pledged Mezzanine Loan; and

**WHEREAS,** Lender acknowledges that Woodbridge has executed or intends to execute other notes and loan agreements to fund the Pledged Mezzanine Loan on a pari passu basis with other lenders; and

**WHEREAS,** Woodbridge has agreed to execute and deliver to Lender a promissory note payable to Lender in the amount tendered by Lender to Woodbridge pursuant to the Loan; and

**WHEREAS,** Woodbridge has further agreed to execute and deliver a collateral assignment of its interest in the Loan Documents (as defined below) in favor of Lender on a pari passu basis as security for the Loan; and

**WHEREAS,** Woodbridge and Lender have agreed to the foregoing transaction on the terms and conditions and in reliance upon the representations and warranties of Woodbridge and Lender hereinafter set forth:

**NOW, THEREFORE,** in consideration of the foregoing and in further consideration of the mutual covenants herein contained, the parties hereto agree as follows:

**1. Amount and Terms of Lender's Loan.** Lender has agreed to lend Woodbridge the sum of Thirty Thousand and 00/100 Dollars ($30,000.00). The foregoing obligation shall be evidenced by Woodbridge's promissory note to Lender, in the original principal amount of Thirty Thousand and 00/100 Dollars ($30,000.00), in the form of Exhibit A hereto and made a part hereof (as the same may be amended or modified from time to time, the "Note"), with appropriate insertion of dates.

The Note shall bear interest at a rate equal to four and 00/100 percent (4.00%) per annum, subject to such default rates and additional interest payments as may be set forth in the Note; provided, however, that the rate of interest charged thereunder shall never exceed the maximum amount, if any, allowable by law. Interest shall be payable as provided in the Note and shall be charged on the daily outstanding principal balance on the basis of the actual days elapsed and on a three hundred sixty (360) day year.

Interest shall be payable as provided in the Note. The entire outstanding principal balance of the Note shall be due and payable in full on March 1, 2018, unless sooner prepaid. Woodbridge may prepay the Note without penalty at any time.

```
Property ID : Third Street - Mezzanine
Principal   : $30,000.00
Int. Rate   : 4.00%
```

**2. Security Interest.** Woodbridge hereby grants to the Lender a security interest in all of the Woodbridge's present and future right, title and interest in and to any and all of the following (the "Collateral"):

   (a) That certain mezzanine loan in the principal amount of Two Million Eight Hundred Eighty Thousand and 00/100 Dollars ($2,880,000.00) (the "Pledged Mezzanine Loan") extended or to be extended by Woodbridge to H52 Willow Grove Holding Company, LLC ("Borrower") and secured by a pledge of Borrower's entire and controlling membership interest in Willow Grove Investments, LLC, an entity which owns real property located at 8124 W 3rd Street, Los Angeles, California ("Premises"), subject to any first or second priority mortgage loans secured by the Premises to which that certain mezzanine loan would be structurally subordinate;

   (b) The promissory note evidencing the Pledged Loan (the "Underlying Note");

   (c) The pledge and security agreement securing the Pledged Mezzanine Loan to Woodbridge (the "Underlying Pledge and Security Agreement"); and

   (d) Title insurance policies and such other instruments or documentation as may be executed and delivered to Woodbridge in conjunction with the Pledged Mezzanine Loan (said Underlying Note, Underlying Pledge and Security Agreement and other associated loan documents collectively hereafter referred to as the "Loan Documents").

   (e) Upon the consummation of the Pledged Mezzanine Loan, Woodbridge will execute and deliver to Lender collateral assignment documents substantially in the form attached hereto as Exhibits B and C.

   (f) Lender acknowledges that they are only providing the financing for a portion of the Pledged Mezzanine Loan and, therefore, Woodbridge retains the right to execute other notes, loan agreements, assignments, and collateral assignments in favor of other lenders as may be necessary to fund the Pledged Mezzanine Loan secured by the Collateral on a pari passu basis with such other lenders. Lender further agrees that it, and any such other lenders, shall execute an Intercreditor Agreement substantially in the form attached hereto as Exhibit D in order to confirm that their interests in the Collateral are of equal priority.

**3. Representations and Warranties.**

   (a) Woodbridge represents and warrants to Lender that Woodbridge has or will have good and marketable title to the Pledged Mezzanine Loan and the Collateral free from any adverse liens, security interests or encumbrances on record as of the date of the Pledged Loan.

   (b) The execution and delivery of the Note, this Agreement, and every other agreement, instrument or document executed and delivered to Lender by Woodbridge pursuant to the terms hereof, are valid, legal and binding upon it and enforceable in accordance with their respective terms.

   (c) All information furnished or to be furnished by Woodbridge pursuant to the terms hereof will not, at the time the same is furnished, contain any untrue statement of a material fact and will not omit to state a material fact necessary to make the information so furnished, in the light of the circumstances under which such information is furnished, not misleading.

   (d) Lender represents and warrants to Woodbridge that: (i) the Loan Documents and the Pledged Mezzanine Loan they evidence constitute a commercial loan transaction and are not for investment purposes; and (ii) Lender has reviewed the Loan Documents and the associated other information on the Borrower of the Pledged Mezzanine Loan, and has had the opportunity to review said documents and information with its own legal counsel, and has had sufficient access to all of said documents and information to allow it to make

2

Property ID : Third Street - Mezzanine
Principal   : $30,000.00
Int. Rate   : 4.00%

its own credit decision with respect to the Pledged Mezzanine Loan, and has, in fact, made its own credit decision in making the Loan.

4. <u>General Provisions</u>.

(a) This Agreement is an integrated document and all terms and provisions are embodied herein and shall not be varied by parol;

(b) This Agreement is made, executed and delivered in the State of Delaware and it is the specific desire and intention of the parties that it shall in all respects be construed under the laws of the State of Delaware;

(c) The captions for the paragraphs contained in this Agreement have been inserted for convenience only and form no part of this Agreement and shall not be deemed to affect the meaning or construction of any of the covenants, agreements, conditions or terms hereof;

(d) This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, provided, however, that Lender shall not assign, voluntarily, by operation of law or otherwise, any of its rights hereunder without the prior written consent of Woodbridge and any such attempted assignment without such consent shall be null and void;

(e) No delay or failure of Lender in exercising any right, power or privilege hereunder shall affect such right, power or privilege, nor shall any single or partial exercise preclude any further exercise thereof or the exercise of any other rights, powers or privileges; and

(f) This Agreement, the security interest hereby granted to Lender by Woodbridge and every representation, warranty, covenant, promise and other then herein contained shall survive until the Note has been paid in full.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE TO FOLLOW]**

3

```
Property ID : Third Street - Mezzanine
Principal   : $30,000.00
Int. Rate   : 4.00%
```

**IN WITNESS WHEREOF,** the parties hereto have hereunto set their hands and seals, the day and year first above written.

Signed, Sealed, and Delivered
in the Presence of:

(Witness)

(Witness)

**ROCHELLE BERMAN TRUST**

By:
Name: Rochelle Berman trust
Title: Trustee

*Lily Golden*

*Karen Horne*

**WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC**

By:
David E. Golden / Robert Reed
Its Authorized Representative

4

```
Property ID : Third Street - Mezzanine
Principal   : $30,000.00
Int. Rate   : 4.00%
```

## EXHIBIT LIST

EXHIBIT A    Note from Woodbridge to Lender

EXHIBIT B    Form of Assignment

EXHIBIT C    Form of Collateral Assignment

EXHIBIT D    Form of Intercreditor Agreement

As Authorized Representative

5

```
Property ID : Third Street - Mezzanine
Principal   : $30,000.00
Int. Rate   : 4.00%
```

## EXHIBIT A

## Note from Woodbridge to Lender

```
Property ID : Third Street – Mezzanine
Principal   : $30,000.00
Int. Rate   : 4.00%
```

## EXHIBIT B

### Form of Assignment

#### ASSIGNMENT OF PROMISSORY NOTE
#### AND PLEDGE AND SECURITY AGREEMENT

THIS ASSIGNMENT OF PROMISSORY NOTE AND PLEDGE AND SECURITY AGREEMENT (this "**Assignment**") made as of the ___ day of _____, 20__, by **WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC**, a Delaware limited liability company with an office and a mailing address at 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423 (the "**Assignor**"), in favor of _____, having an address of _____ (the "**Assignee**").

**WHEREAS**, Assignee has extended a mezzanine loan (the "**Loan**") in the original principal amount of ___ Hundred Thousand and 00/100 Dollars ($___,000.00) to Assignor (the obligations of Assignor in respect of the Promissory Note evidencing said Loan being hereinafter referred to as the "**Obligations**"); and

**WHEREAS**, it is a condition of Assignee's agreement to extend such Loan that Assignor assign to Assignee its interest in certain documents hereinafter described, and the indebtedness related thereto, as security for the Obligations;

**NOW, THEREFORE**, as security for the Obligations, and as an inducement to Assignee to extend the Loan and in consideration therefor, and in consideration of Ten Dollars ($10.00) to Assignor paid, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby grants, bargains, sells, assigns, conveys, transfers and sets over unto Assignee a security interest in and lien upon, all of Assignor's right, title and interest in, to and under: (a) a certain mezzanine pledge and security agreement from _____ ("**Borrower**"), dated ____, 20__, in favor of Assignor (the "**Assigned Pledge**"), (b) a certain mezzanine promissory note in the principal amount of ____ Hundred Thousand and 00/100 Dollars ($___,000.00), dated _____, 20__, made by _____ and payable to the order of Assignor (the "**Assigned Note**"), (c) a certain mezzanine loan agreement dated _____, 20__, by and between Assignor and Borrower (the "**Assigned Loan Agreement**"), and all proceeds thereof and all other documents securing or guarantying the same (the Assigned Pledge, the Assigned Note, and all other documents or instruments securing or guarantying the same being hereinafter referred to collectively as the "**Assigned Documents**").

Assignor further covenants and agrees as follows:

1.    The occurrence of an "Event of Default" under the Promissory Note evidencing the Loan, or under the Collateral Assignment dated of even date herewith, beyond the applicable notice and cure period shall constitute an "**Event of Default**" under this Assignment. So long as no Event of Default shall have occurred, Assignor shall be entitled to collect all payments of interest and all scheduled payments of principal (collectively, "**Scheduled Payments**") on the Assigned Documents.

2.    In the event of any payment (other than Scheduled Payments or pre-payments) under the Assigned Note, the obligor under the Assigned Documents ("**Borrower**") is hereby irrevocably authorized and directed to make such payment directly to Assignee or to such person as Assignee shall otherwise direct. Assignor shall immediately pay over to Assignee any such payment received directly from Borrower.

3.    Upon written notice from Assignee that an Event of Default exists, Borrower shall thereafter make, and is hereby irrevocably authorized and directed to make, all payments under the Assigned Documents directly to Assignee or to such person as Assignee shall otherwise direct, to be applied against the Obligations until such Obligations are satisfied. Upon satisfaction of such Obligations, all remaining payments under the Assigned Documents, if any, shall resume to be made and directed to Assignor.

Property ID : Third Street – Mezzanine
Principal   : $30,000.00
Int. Rate   : 4.00%

4.       Upon the occurrence of an Event of Default, Assignor will not grant any waivers, indulgences, modifications, extensions or other departures by Borrower from or of the obligations required to be performed by Borrower under the Assigned Documents and any security or other agreement executed in connection therewith, without the prior written consent of Assignee. At Assignee's request, Assignor shall also provide to Assignee such other information regarding the Borrower or the Premises (as defined in the Assigned Documents), as Assignor may have in its possession.

5.       This Assignment is executed only as security for the Obligations. The execution and delivery of this Assignment shall not subject Assignee to, or transfer or pass to Assignee, or in any way affect or modify, the liability of Assignor under any or all of the Assigned Documents.

6.       In the exercise of its powers hereunder or under any documents relating to the Obligations, no liability shall be asserted or enforced against Assignee, all such liability being hereby expressly waived and released by Assignor. Assignor hereby agrees to indemnify Assignee, and hold it harmless, from any and all liabilities, losses, or damages which Assignee shall incur by reason of this Assignment or the Assigned Documents and from any and all claims and demands whatsoever which may be asserted against Assignee by reason of any alleged obligations or, undertakings required to be performed by Assignor in connection with the Assigned Documents.

7.       Assignor hereby agrees and acknowledges that neither the acceptance of this Assignment by Assignee nor the exercise of, or failure to exercise, any right, power or remedy in this instrument conferred upon Assignee shall be deemed or construed to obligate Assignee, or its successors or assigns, to pay any sum of money, take any action or incur any liability in connection with any of the Assigned Documents. It is further agreed and understood by Assignor that neither Assignee nor its successors or assigns shall be liable in any way for any costs, expenses or liabilities connected with, or any charges or liabilities resulting from, any of the Assigned Documents.

8.       This Assignment shall be binding upon Assignor and its successors and assigns, and shall inure to the benefit of Assignee and its successors and assigns. Notwithstanding anything contained herein, however, neither the Note nor the other Loan Documents are assignable by Assignee without the Assignor's written consent, and any such attempted assignment without such consent shall be null and void. This Assignment shall be governed by and construed and enforced in accordance with the laws of the State of Delaware.

9.       (a) Any notice, report, demand, request or other instrument or communication authorized or required under this Assignment to be given to Assignor, Assignee or Borrower shall be deemed given if addressed to the party intended to receive the same, at the address of such party set forth below, (i) when delivered at such address by hand or by overnight delivery service, or (ii) three (3) days after the same is deposited in the United States mail as first class certified mail, return receipt requested, postage paid, whether or not the same is actually received by such party:

Assignor:        Woodbridge Mortgage Investment Fund 3A, LLC
                 14225 Ventura Boulevard
                 Suite 100
                 Sherman Oaks, California 91423

Assignee:

(b)      Any party may change the address to which any such notice, report, demand, request or other instrument or communication to such party is to be delivered or mailed, by giving written notice of such change to the other parties, but no such notice of change shall be effective unless and received by such other parties.

10.      Upon full payment and performance of the Obligations, this Assignment shall terminate and shall be of no further force and effect. Upon such termination, Assignee shall indorse the Assigned Note to the order of Assignor

8

Property ID : Third Street - Mezzanine
Principal   : $30,000.00
Int. Rate   : 4.00%

(or otherwise as Assignor may direct), without recourse, warranty or representation, and Assignee shall deliver the Assigned Note to Assignor.

11.    Notwithstanding anything to the contrary set forth in this Assignment, unless and until Assignee shall have exercised its rights under paragraph 3 above, Assignor shall be entitled to enforce the Assigned Pledge.

**IN WITNESS WHEREOF**, the Assignor has executed this Assignment as of the date first written above.

Assignor:

**WOODBRIDGE MORTGAGE
INVESTMENT FUND 3A, LLC**

By:_____
    David E. Golden
    Its Authorized Representative

and enforced in accordance with the laws of the State of Delaware

9.    (a) Any notice, report, demand, request or other instrument or communication under this Assignment to be given to Assignor, Assignee or otherwise shall be deemed duly given ...

Assignor:    Woodbridge Mortgage Investment Fund 3A, LLC
             14225 Ventura Boulevard
             Suite 100
             Sherman Oaks, California 91423

Assignee:    _____
             _____
             _____

(b)    Any party may change the address to which any such notice, report, demand, instrument or communication to such party is to be delivered or mailed, by giving written notice to the other parties, but no such notice of change shall be effective unless and until received by such other

10.    Upon full payment and performance of the Obligations, this Assignment shall terminate and be of no further force or effect. Upon such termination, Assignee shall indorse the Assigned Note to the

```
Property ID : Third Street - Mezzanine
Principal   : $30,000.00
Int. Rate   : 4.00%
```

## EXHIBIT C

### Form of Collateral Assignment

**COLLATERAL ASSIGNMENT OF PROMISSORY
NOTE, PLEDGE AND SECURITY AGREEMENT,
AND OTHER LOAN DOCUMENTS**

THIS COLLATERAL ASSIGNMENT OF PROMISSORY NOTE, PLEDGE AND SECURITY AGREEMENT, AND OTHER LOAN DOCUMENTS (this "Assignment"), dated as of this ____ day of _____ 20__, is made and given by **WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC**, a Delaware limited liability company ("Borrower"), having an address at 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423, and in favor of _____, having an address of _____, his or her successors and assigns ("Lender").

**Background:**

Lender has agreed to make, and Borrower has agreed to accept, a loan in the original maximum principal amount of ____ Hundred Thousand and 00/100 Dollars ($_____,000.00) (the "Loan") upon the terms and conditions set forth in that certain Promissory Note, dated _____, in the original principal amount of ____ Hundred Thousand and 00/100 Dollars ($_____,000.00) made by Borrower and payable to Lender (as the same may be amended or modified from time to time, the "Note").

Lender understands that Borrower shall utilize the proceeds of the Loan to fund a mezzanine loan to a third party borrower, such loan to be made pursuant to the "Underlying Documents" more particularly described in Section 2.1.1 below. As a condition to making the Loan, Lender has required Borrower to assign to Lender, as additional security for the Loan, all of Borrower's right, title and interest in and to the promissory notes, security instruments and other loan documents conveyed including without limiting the generality of the foregoing, all rights to receive payments under such collateral.

**Statement of Agreement**

**NOW, THEREFORE,** for valuable consideration, separate and distinct from the consideration given by Lender with respect to the Loan, the receipt and adequacy of which are hereby acknowledged, Borrower agrees as follows:

1.    **Recitals.** The Recitals are incorporated herein by this reference.

2.    **Assignment.** As security for the performance of all obligations of Borrower to Lender under the Note, the Assignment of Promissory Note and Pledge and Security Agreement, and all other documents now or hereafter evidencing, securing or related to the Loan (collectively, the "Loan Documents"), Borrower hereby assigns and transfers to Lender, on a non-exclusive basis, all of its right, title and interest in and to the following collateral (the "Collateral"):

2.1.1. All right, title, interest, claims or rights of Borrower now or hereafter in and to the notes, security instruments, guaranties and other loan documents (collectively, the "Underlying Documents") described on **Exhibit "A"** attached hereto and incorporated herein by this reference; and

2.1.2. Any and all proceeds of a casualty or condemnation, repayment of loans, membership interests, distributions, proceeds of enforcement of security interests, and payments of any kind or nature whatsoever, now or hereafter distributable or payable to Borrower by reason of Borrower's ownership of the Underlying Documents; and

10

Property ID : Third Street – Mezzanine
Principal  : $30,000.00
Int. Rate  : 4.00%

2.1.3. All accounts, contract rights, security entitlements, investment property and general intangibles now or hereafter evidencing, arising from or relating to any of the foregoing; and

2.1.4. All right of Borrower to collect and enforce payments pursuant to the terms of the Underlying Documents; and

2.1.5. All documents, writings, leases, books, files, records, computer tapes, programs, ledger books and ledger pages arising from or used in connection with any of the foregoing; and

2.1.6. All renewals, extensions, additions, substitutions or replacements of any of the foregoing; and

2.1.7. All powers, options, rights, privileges and immunities pertaining to any of the foregoing; and

2.1.8. All proceeds of any of the foregoing and all cash, security or other property distributed on account of any of the foregoing.

**3.    Representations and Warranties.** Borrower hereby represents and warrants that: (a) Borrower is or will be the true owner of the interests under the Underlying Documents; (b) Borrower has not assigned or granted a security interest in the Collateral to any person or entity that is or will be superior to that of the Lender; and (c) to Borrower's knowledge, (i) Borrower's interest in the Collateral is not and will not be subject to any claims, setoffs, encumbrances or deductions, and (ii) the Loan Documents constitute and will constitute valid and binding obligations of Borrower.

**4.    No Assumption by Lender and Covenants of Borrower.** Neither this Assignment nor any action or actions on the part of Lender after the date hereof shall constitute an assumption by Lender of any obligations under the Underlying Documents, and Borrower shall continue to be liable for all obligations thereunder arising after the date hereof. Borrower agrees to perform punctually any and all obligations it may have under the Underlying Documents, to take such steps as it may deem necessary or appropriate to secure performance by the obligor(s) and guarantor(s) of the Underlying Documents thereon of all of its obligations under the applicable Underlying Documents.

**5.    Benefits Conditionally Retained by Borrower.** Lender hereby grants Borrower the right to continue to receive the benefits of, and exercise the rights under, the Underlying Documents unless an Event of Default (as described in Section 14 below) exists, in which event such rights may be revoked at any time thereafter at the option of Lender.

**6.    Action by Lender Following Event of Default.** Lender shall have the right, but not an obligation, at any time while an Event of Default exists, without notice and without taking possession of the security interest or any part thereof, to take in Lender's name or in the name of Borrower such action as Lender may, at any time or from time to time, reasonably determine to be necessary to cure any default under the Underlying Documents or to protect or exercise the rights of Borrower or Lender thereunder, and may otherwise exercise any other rights or remedies Lender has under the Loan Documents. Lender shall incur no liability if any action taken by it or on its behalf pursuant to this Assignment shall prove to be in whole or in part inadequate or invalid; and Borrower hereby agrees to indemnify, defend, and hold Lender free and harmless from and against any loss, costs, liability or reasonable expense (including, without limitation, reasonable attorneys' and accountants' fees and expenses, court costs and investigation expenses) actually incurred by Lender in connection with its actions under this Section 6.

**7.    Power of Attorney.** Borrower hereby irrevocably constitutes and appoints Lender as its true and lawful agent and attorney-in-fact, with full power of substitution, to demand, receive and enforce all rights of Borrower under the Underlying Documents, following the occurrence and during the continuance of an Event of Default, to modify, supplement and terminate the Underlying Documents, to transfer the Underlying Documents to Lender, to give appropriate releases, receipts for or on behalf of Borrower in connection with the Underlying

11

Property ID : Third Street – Mezzanine
Principal  : $30,000.00
Int. Rate  : 4.00%

Documents, to file, pursue, receive payment and acquittances for or otherwise compromise each and every claim Borrower has or may have against the obligor(s) and guarantor(s) of the Underlying Documents for payment or otherwise under the Underlying Documents, all in the name, place and stead of Borrower or in Lender's name, with the same force and effect as Borrower could have if this Assignment had not been made. Borrower authorizes any third party to rely exclusively on the certificate of an officer of Lender or its successor for the establishment of an Event of Default and hereby waives and releases any claim Borrower may have against such third party for such reliance. Borrower hereby agrees to deliver to Lender, upon Lender's written demand and after the occurrence and during the continuance of an Event of Default, all instruments and documents as Lender may reasonably require in order to permit Lender's succession to the right, title and interest of Borrower in and to the Underlying Documents as provided herein. Borrower appoints Lender as its attorney-in-fact to execute any and all such documents on Borrower's behalf upon any failure of Borrower to so execute such documents, it is hereby recognized that the power of attorney herein granted is coupled with an interest and is irrevocable. At Lender's option, Lender may record this Assignment in the recording office. By acceptance of this Assignment, Lender agrees that it shall not exercise the power of attorney granted herein unless there shall have occurred and be continuing an Event of Default.

**8.     Binding Effect.** This Assignment shall be binding upon Borrower and its successors and assigns, and shall inure to the benefit of Lender and its successors and assigns, including without limitation any purchaser upon enforcement of the security interests created by the Underlying Documents.

**9.     No Release or Termination.** The taking of this Assignment by Lender shall not affect the release of any other collateral now or hereafter held by Lender as security for the obligations of Borrower under the Loan Documents, nor shall the taking of additional security for any such obligations hereafter effect a release or termination of this Assignment, or any terms or provisions hereof.

**10.     No Waiver.** No failure or delay on the part of Lender in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies hereunder are cumulative and may be exercised by Lender either independently or concurrently with any other right, remedy or power contained herein or in any instrument executed in connection with the Loan Documents.

**11.     Captions.** The section titles or captions contained in this Assignment are for convenience only and shall not be deemed to define, limit or otherwise modify the scope or intent of this Assignment.

**12.     Variation in Pronouns.** All the terms and words used in this Assignment, regardless of the number and gender in which they are used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context or sense of this Assignment or any paragraph or clause herein may require, the same as if such word had been fully and properly written in the correct number and gender.

**13.     Notices.** Any notice, demand, request or other communication which any party hereto may be required or may desire to give hereunder shall be given in the manner required by the Loan Documents.

**14.     Event of Default.** The occurrence of an Event of Default under the Note or any of the other Loan Documents beyond the applicable notice and cure period shall constitute an "Event of Default" under this Assignment.

**15.     Successors and Assigns.** This Assignment shall be binding upon Borrower and its successors and assigns and shall insure to the benefit of the Lender and Lender's successors; provided, however, and notwithstanding anything contained herein, neither the Note nor the Loan Documents are assignable by Lender, in whole or in part, and any such attempted assignment shall be null and void.

12

```
Property ID : Third Street - Mezzanine
Principal   : $30,000.00
Int. Rate   : 4.00%
```

16.     **Governing Law.** The parties hereby acknowledge, consent and agree this Assignment and the rights of all parties mentioned herein shall be governed by the laws of the State of Delaware.

**IN WITNESS WHEREOF**, the Borrower, acting by its duly authorized officer, has signed, sealed and delivered this Assignment on the date above written.

BORROWER:

**WOODBRIDGE MORTGAGE
INVESTMENT FUND 3A, LLC**

By:_____ (Seal)
      David E. Golden
      Its Authorized Representative

STATE OF CONNECTICUT    )
                                          )   ss.
COUNTY OF TOLLAND       )

On this ___ of _____, 20__, before me, the undersigned notary public, personally appeared David E. Golden, Authorized Representative of Woodbridge Mortgage Investment Fund 3A, LLC, a Delaware limited liability company, to me known and known by me to be the party executing the foregoing Collateral Assignment of Promissory Note, Pledge and Security Agreement, and Other Loan Documents instrument on behalf of said limited liability company, in favor of _____, and acknowledged said instrument and the execution thereof, to be his free act and deed as such officer and the free act and deed of said limited liability company.

Notary Public _____

Printed Name: _____

My commission expires _____

(Notary Seal)

13

```
Property ID : Third Street - Mezzanine
Principal   : $30,000.00
Int. Rate   : 4.00%
```

## EXHIBIT A TO COLLATERAL ASSIGNMENT

1. That certain mezzanine pledge and security agreement from _____, dated _____, in favor of Woodbridge Mortgage Investment Fund 3A, LLC, encumbering certain membership interests described therein.

2. That certain mezzanine promissory note in the original principal amount of _____ Hundred Thousand and 00/100 Dollars ($____,000.00), dated _____, 20__, made by _____ and payable to the order of Woodbridge Mortgage Investment Fund 3A, LLC.

3. That certain mezzanine loan agreement dated _____, 20__, by and between _____ and Woodbridge Mortgage Investment Fund 3A, LLC.

4. That certain UCC1 Financing Statement filed with the Secretary of State Office for the State of Delaware identifying _____ as the "Debtor" and Woodbridge Mortgage Investment Fund 3A, LLC as the "Secured Party" and covering certain membership interests in _____.

Notary Public _____
Printed Name: _____
My commission expires: _____
Notary Seal:

```
Property ID : Third Street - Mezzanine
Principal   : $30,000.00
Int. Rate   : 4.00%
```

# EXHIBIT D

## Form of Intercreditor Agreement

### INTERCREDITOR AGREEMENT (PARI PASSU)

THIS INTERCREDITOR AGREEMENT ("Agreement") is entered into by and between _____, having an address at _____ ("First Party") and _____, having an address at _____ ("Second Party") (First Party and Second Party are sometimes herein referred to collectively as the "Lenders" and individually as a "Lender"), as of the date written below.

W I T N E S S E T H

**WHEREAS,** the Lenders have agreed collectively to lend $_____ to Woodbridge Mortgage Investment FUND 3A, LLC, a Delaware limited liability company ("Woodbridge"), and

**WHEREAS,** in return for the loans by the Lenders, Woodbridge will execute and deliver to each of them promissory notes each in the original principal amount of $_____ (the "Notes"), and

**WHEREAS,** Woodbridge intends to use the funds (the "Loans") provided by Lenders to finance a mezzanine loan in the principal amount of $_____ to _____, to be evidenced by a promissory note and secured by a pledge of _____'s entire and controlling membership interest in _____, LLC, which owns property located at _____("Premises") (the "Underlying Mezzanine Note" and the "Pledge" respectively), and

**WHEREAS,** upon closing of the Loans, Woodbridge will deliver to each of the Lenders a collateral assignment of the Underlying Mezzanine Note, Pledge and Security Agreement, and Other Documents as security for the Notes (the "Collateral Assignments"); and

**WHEREAS,** the Lenders wish that each of them shall be treated equally with reference to the payment under the respective Notes and/or enforcement of the Collateral Assignments; and

**WHEREAS,** this Agreement shall be effective and bind the parties hereto.

**NOW THEREFORE,** the parties hereto agree as follows:

1. The above recitals are hereby made a part of this Agreement.

2. Unless explicitly agreed to the contrary in writing, the Lenders shall have equal rights of enforcement, priorities, duties, and obligations under the Notes, and the Collateral Assignments and any other documentation executed and delivered in connection therewith (the "Loan Documents").

3. In the event of a default under any of the Notes, the Collateral Assignments or other Loan Documents, all of the Notes shall be in default, and shall be due and payable at the option of the Lenders acting in concert.

4. If any of the Lender(s) desire to exercise any rights it may have under the Loan Documents, it shall notify the other Lender(s) as soon as practicable.

5. All notices, consents, waivers, and other communications under this Agreement must be in writing and shall be deemed to have been duly given when (a) delivered by hand (with written confirmation of receipt), (b) sent by fax (with written confirmation of receipt), provided that a copy is mailed by registered mail, return receipt requested, or (c) when received by the addressee, if sent by nationally recognized overnight delivery service (receipt requested), in each case to the appropriate addresses and fax numbers as set forth below (or to such other addresses and fax numbers as a party may designate by notice to the other parties):

15

Property ID : Third Street - Mezzanine
Principal   : $30,000.00
Int. Rate   : 4.00%

LENDERS:

First Party

And

Second Party

6.  Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement may be brought against any of the parties in the courts of the State of Delaware, or, if it has or can acquire jurisdiction in the United States District Court for the District of Delaware and each of the parties consents to the jurisdiction of such courts (and of the appropriate Appellate Courts) in any such action or proceeding and waives any objection to venue laid therein. Process in any action or proceeding referred to in the preceding sentence may be served on any party anywhere in the world.

7.  This Agreement supersedes all prior agreements between the parties with respect to its subject matter and constitutes (along with the documents referred to in this Agreement) a complete and exclusive statement of the terms of the Agreement between the parties with respect to its subject matter. This Agreement may not be amended except by a written agreement executed by the party to be charged with the amendment.

8.  If any provision of this Agreement is held invalid or unenforceable by any court or competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

9.  This Agreement will be governed by the laws of the State of Delaware without regard to conflicts of interest principles.

10. This Agreement may be executed in any number of counterparts, each of which taken together shall constitute a single agreement.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE TO FOLLOW]**

16

```
Property ID : Third Street - Mezzanine
Principal   : $30,000.00
Int. Rate   : 4.00%
```

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Agreement as of the ____ day of _____, 20__.

LENDER(S):

                                       _____

                                       FIRST PARTY

                                       _____

                                       SECOND PARTY

Acknowledged and Agreed to by:

**WOODBRIDGE MORTGAGE
INVESTMENT FUND 3A, LLC**

By: _____
     David E. Golden
     Its Authorized Representative

10. This Agreement may be executed in any number of counterparts, each of which taken together a single agreement.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK. SIGNATURE PAGE FOLLOWS]

XE ELZA

TRK# 0201

7719 2962 8715

FRI - 06 APR 10:30A
PRIORITY OVERNIGHT

11042
NY-US          JFK

ORIGIN ID:MPBA          (305) 416-3180
CARLOS DE ZAYAS
LYDECKER DIAZ, LLC
1221 BRICKELL AVE., 19TH FLOOR
MIAMI, FL 33131
UNITED STATES US

TO CLAIMS AGENT FOR WOODBRIDGE GROUP
GARDEN CITY GROUP
1985 MARCUS AVENUE
SUITE 200
LAKE SUCCESS NY 11042
(305) 416-3180
NV
PO                    REF: WOODBRIDGE

                      DEPT

SHIP DATE: 05APR18
ACTWGT: 1.00 LB
CAD: 4568782/INET3980

BILL SENDER

FedEx
Express

552J1/9132/DCA5

**FedEx**

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning:** Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.