# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>                    Remaining Debtors. | Chapter 11<br><br>Case No. 17-12560 (BLS)<br><br>(Jointly Administered) |
| MICHAEL GOLDBERG, in his capacity as Liquidating Trustee of the WOODBRIDGE LIQUIDATION TRUST,<br><br>                    Plaintiff,<br><br>            vs.<br><br>ROCHELLE BERMAN, IN HER CAPACITY AS TRUSTEE OF THE ROCHELLE BERMAN TRUST; ROCHELLE BERMAN,<br><br>                    Defendants. | Adversary Proceeding<br>Case No. 19-_____ (BLS) |

## COMPLAINT OBJECTING TO CLAIMS AND COUNTERCLAIMING FOR AVOIDANCE AND RECOVERY OF AVOIDABLE TRANSFERS, FOR EQUITABLE SUBORDINATION, FOR SALE OF UNREGISTERED SECURITIES, FRAUD, AND FOR AIDING AND ABETTING FRAUD

---

[1] The Remaining Debtors and the last four digits of their respective federal tax identification numbers are as follows: Woodbridge Group of Companies, LLC (3603) and Woodbridge Mortgage Investment Fund 1, LLC (0172). The Remaining Debtors' mailing address is 14140 Ventura Boulevard, #302, Sherman Oaks, California 91423.

The Woodbridge Liquidation Trust (the "Liquidation Trust" or "Plaintiff") formed
pursuant to the *First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of
Companies, LLC and Its Affiliated Debtors* dated August 22, 2018 (Bankr. Docket No. 2397) (as
it may be amended, modified, supplemented, or restated from time to time, the "Plan"[2]), as and
for its *Complaint Objecting to Claims and Counterclaiming for Avoidance and Recovery of
Avoidable Transfers and for Equitable Subordination, and for Sale of Unregistered Securities,
for Fraud, and for Aiding and Abetting Fraud* (this "Complaint") against Rochelle Berman, In
Her Capacity As Trustee Of The Rochelle Berman Trust; and Rochelle Berman, individually
(collectively the "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.        Since at least August 2012 until shortly before they sought bankruptcy protection,
Woodbridge Group of Companies, LLC and its many hundreds of debtor affiliates (collectively,
the "Debtors") were operated by their founder and principal, Robert Shapiro ("Shapiro"), as a
Ponzi scheme.  As part of this fraud, Shapiro utilized the Debtors to raise over one billion dollars
from approximately 10,000 investors as either Noteholders or Unitholders (collectively,
"Investors").

2.        Those Investors often placed a substantial percentage of their net worth (including
savings and retirement accounts) with the Debtors and now stand to lose a significant portion of
their investments and to be delayed in the return of the remaining portion.  The quality of the
Investors' lives will likely be substantially and adversely affected by the fraud perpetrated by
Shapiro.

3.        Investors were often told that they were investing money to be loaned with
respect to particular properties owned by third parties, that those properties were worth

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

substantially more than the loans against the properties, and that they would have the benefit of a stream of payments from these third parties for high-interest loans, protected by security interests and/or mortgages against such properties.  In reality, these statements were lies.  Investors' money was almost never used to make high-interest loans to unrelated, third-party borrowers, there was no stream of payments, Investors' money was commingled and used for an assortment of expenses, including maintaining a lavish lifestyle for Shapiro and his family, brokers' commissions, overhead (largely for selling even more notes and units to investors), and payment of principal and interest to existing investors.  The money that was used to acquire property (almost always owned by a disguised affiliate) cannot be traced to any specific Investor.  These are typical characteristics of Ponzi schemes.

4.     Because the Debtors operated as a Ponzi scheme, obtaining new money from Investors into the Ponzi scheme conferred no net benefit on the Debtors; on the contrary, each new investment was a net negative.  Money was siphoned off to pay the expenses described above, so that the Debtors actually received only a fraction of the investment dollars.  New money also perpetuated the Ponzi scheme, enabling the Debtors to return fictitious profits to early Investors; in the absence of new investment, the house of cards would fall (as it eventually did).  At the same time, each investment created an obligation to return to the defrauded Investor 100% of the investment, such that each new investment increased the Debtors' liabilities and ultimately left them unable to satisfy their aggregate liabilities.

5.     The purpose of this lawsuit is (i) to object to the Claim (defined below) so that Rochelle Berman, In Her Capacity As Trustee Of The Rochelle Berman Trust; and Rochelle Berman, individually, is not further compensated at the expense of legitimate creditors for activities that advanced the Ponzi scheme and further drove the Debtors into insolvency, (ii) to recover monies previously paid to Defendants by reason of these activities or as fictitious profits

2

on the Claim, and (iii) to the extent the Claim, or any new or amended claims, survive, to equitably subordinate them.

**JURISDICTION AND VENUE**

6.      The Court has jurisdiction over this action under 28 U.S.C. §§ 157(a) and 1334. This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B), (C), (F), and (H).  In any event, Plaintiff consents to entry of final orders or judgment by this Court.  Venue of this adversary proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**THE PARTIES**

*The Liquidation Trust*

7.      On December 4, 2017 (the "Initial Petition Date"), certain of the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code.  Other of the Debtors also filed voluntary chapter 11 cases either on the Initial Petition Date or within the following four months (collectively, the "Bankruptcy Cases").

8.      On October 26, 2018, this Court entered an order confirming the Plan (Bankr. Docket No. 2903).

9.      The Plan provides for, *inter alia*, the establishment of the Liquidation Trust on the Effective Date of the Plan for the benefit of the Liquidation Trust Beneficiaries in accordance with the terms of the Plan and the Liquidation Trust Agreement.  *See* Plan §§ 1.75, 5.4.

10.      The Effective Date of the Plan occurred on February 15, 2019.

11.      On February 25, 2019, the Court entered an order closing the Bankruptcy Cases of all Debtors except Woodbridge Group of Companies, LLC and Woodbridge Mortgage Investment Fund 1, LLC (together, the "Remaining Debtors").  The Remaining Debtors' Bankruptcy Cases are being jointly administered under Case No. 17-12560 (KJC).

12.     On the Effective Date, the Liquidation Trust was automatically vested with all of the Debtors' and the Estates' respective rights, title, and interest in and to all Liquidation Trust Assets. *See* Plan § 5.4.3. Further, the Liquidation Trust, as successor in interest to the Debtors, has the right and power to file and pursue any and all Liquidation Trust Actions without any further order of the Bankruptcy Court. *Id.* § 5.4.15. "Liquidation Trust Actions" include, *inter alia*, "all Avoidance Actions and Causes of Action held by the Debtors or the Estates. . . ." *Id.* § 1.76.

13.     In addition to its status as successor in interest to the Debtors and their estates, the Liquidation Trust also holds claims held by Investors who elected to contribute to the Liquidation Trust certain causes of action that those Investors possess against individuals such as Rochelle Berman (the "Contributed Claims") attached hereto as Exhibit 3. *Id.* § 1.28 (defining "Contributed Claims" to include "All Causes of Action that a Noteholder or Unitholder has against any Person that is not a Released Party and that are related in any way to the Debtors, their predecessors, their respective affiliates, or any Excluded Parties, including … all Causes of Action based on, arising out of, or related to the marketing, sale, and issuance of any Notes or Units; … all Causes of Action based on, arising out of, or related to the misrepresentation of any of the Debtors' financial information, business operations, or related internal controls; and … all Causes of Action based on, arising out of, or related to any failure to disclose, or actual or attempted cover up or obfuscation of, any of the conduct described in the Disclosure Statement, including in respect of any alleged fraud related thereto").

### Defendants

14.     Defendant Rochelle Berman, ("Berman") is an individual residing in the State of Florida. Upon information and belief, Defendant Berman is a certified financial planner who specializes in providing advice as to retirement planning. Defendant, The Rochelle Berman

4

Trust (the "Berman Trust"), as represented by its designated Trustee, Rochelle Berman, is an entity controlled by Berman and for the benefit of Berman with an address of 11220 SW 111 Street, Miami, Florida.

15.     Berman sold Notes and Units to unsuspecting Investors, created marketing materials and sales scripts to facilitate the sale of Notes and Units to unsuspecting Investors (often targeting unsophisticated, elderly investors with Individual Retirement Accounts), and trained and supervised others who sold Notes and Units to unsuspecting Investors.  In so doing, Berman made materially false and fraudulent statements to induce Investors to provide money. In connection with such conduct, Berman, directly or indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation or communication in interstate commerce, and of the mails.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

*The Fraud*

16.     At least since July 2012 until shortly before they sought bankruptcy protection, the Debtors were operated as a Ponzi scheme.  As this Court explained in its order confirming the Plan:

> The evidence demonstrates, and the Bankruptcy Court hereby finds, that (i) beginning no later than July 2012 through December 1, 2017, Robert H. Shapiro used his web of more than 275 limited liability companies, including the Debtors, to conduct a massive Ponzi scheme raising more than $1.22 billion from over 8,400 unsuspecting investors nationwide; (ii) the Ponzi scheme involved the payment of purported returns to existing investors from funds contributed by new investors; and (iii) the Ponzi scheme was discovered no later than December 2017.

17.     The securities sold by Defendants (*i.e.*, the Debtors' Notes and Units) were not registered with the Securities and Exchange Commission (the "SEC") or applicable state securities agencies and there was no applicable exemption from registration.  Nor were Defendants registered as broker-dealers with the SEC or applicable state agencies.

5

18.     Investors were often told that they were investing money to be loaned with respect to particular properties owned by third parties, that those properties were worth substantially more than the loans against the properties, and that they would have the benefit of a stream of payments from these third parties for high-interest loans, protected by security interests and/or mortgages against such properties.  Shapiro and his lieutenants, represented to Investors that the Debtors' profits would be generated by the difference between the interest rate the Debtors charged its third-party borrowers and the interest rate it paid Investors.

19.     In reality, these statements were lies.  Investors' money was almost never used to make high-interest loans to unrelated, third-party borrowers, and there was no stream of payments; instead, Investors' money was commingled and used for an assortment of items, including maintaining a lavish lifestyle for Shapiro and his family, brokers' commissions, overhead (largely for selling even more Notes and Units to Investors), and payment of principal and interest to existing Investors.  The money that was used to acquire properties (almost always owned by a disguised affiliate) cannot be traced to any specific Investor.  These are typical characteristics of Ponzi schemes.

20.     Because the Debtors operated as a Ponzi scheme, obtaining new money from Investors into the Ponzi scheme conferred no net benefit on the Debtors; on the contrary, each new investment was a net negative.  Money was siphoned off to pay the expenses described above, so that the Debtors actually received only a fraction of the investment dollars.  New money also perpetuated the Ponzi scheme, as such money enabled the Debtors to return fictitious "profits" to early Investors – an essential component of the scheme, because "repaying" early Investors led to new investments, without which the house of cards would fall, as it eventually did.  At the same time, each investment created an obligation to return to the defrauded Investor

100% of the investment, such that each new investment increased the Debtors' liabilities and ultimately left them unable to satisfy their aggregate liabilities.

*The Proof(s) of Claim*

21.     The Defendants filed Claim No. 2005 and the Debtor filed Schedule F claims as identified in particular on Exhibit 1 hereto (collectively, the "Claims"). The Claims are based on Notes and commission payments held by Defendant. The Berman Trust asserts that the Claims are fully secured.

22.     Defendants engaged in activities that generated investments in the Debtors. Defendant Berman is or was in the business of selling investment products, including the Debtors' Notes and/or Units, to retail investors. Defendant Berman either individually or through others, solicited or sold Notes and/or Units to investors. Defendants received commission payments from the Debtors on account of Notes and/or Units sold to investors.

*The Transfers*

23.     Within the 90 days preceding the relevant transferor's petition date, Defendants received Prepetition Distributions of fictitious profits from the Ponzi scheme in respect of the Claims and commission payments totaling not less than the amount set forth on Exhibit 2 hereto (the "90 Day Transfers"). The precise transfers – including the transferor, its petition date, the date of each transfer, and the amount of each transfer – are set forth on Exhibit 2.

24.     Within the two years preceding the Initial Petition Date, Defendants received transfers totaling not less than the amount set forth on Exhibit 2 hereto (the "Two Year Transfers"), including commission payments and Prepetition Distributions from the Ponzi scheme in respect of the Claims. The precise transfers – including the transferor, its petition date, the date of each transfer, and the amount of each transfer – are set forth on Exhibit 2. The

Two Year Transfers are inclusive of the 90 Day Transfers, but Plaintiff does not seek to recover the same sum more than once.

## FIRST CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

### Avoidance and Recovery of Preferential Transfers

25.     Plaintiff realleges and incorporates herein Paragraphs 1 through 24, as if fully set forth herein.

26.     The 90 Day Transfers constituted transfers of the Debtors' property.

27.     The 90 Day Transfers were made to or for the benefit of Defendants on account of an antecedent debt and while the Debtors were insolvent.  The affirmative assertion that the Debtors were insolvent at the times of the 90 Day Transfers is not intended and does not shift the burden of proof or alter the presumption of insolvency provided by Bankruptcy Code section 547(f).

28.     By virtue of the 90 Day Transfers, Defendants received more than she would have received if the 90 Day Transfers had not been made and Berman received a distribution pursuant to a chapter 7 liquidation.

29.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 547(b), 550(a), and 551: (a) avoiding the 90 Day Transfers free and clear of any interest of Berman, (b) directing that the 90 Day Transfers be set aside, and (c) recovering the 90 Day Transfers or the value thereof from Defendants for the benefit of the Liquidation Trust.

## SECOND CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

### Avoidance and Recovery of Actual Intent Fraudulent Transfers – Bankruptcy Code

30.     Plaintiff realleges and incorporates herein Paragraphs 1 through 29, as if fully set forth herein.

8

31.     The Two Year Transfers constituted transfers of the Debtors' property.

32.     The Two Year Transfers were made by the Debtors with actual intent to hinder or delay or defraud their creditors insofar as either (i) the services to be provided in exchange for such transfers would perpetuate a Ponzi scheme, or (ii) such transfers were prepetition distributions of fictitious profits from the Ponzi scheme in respect of the Claims.

33.     The Two Year Transfers were made to or for the benefit of Defendants.

34.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 548(a), 550(a), and 551: (a) avoiding the Two Year Transfers free and clear of any claimed interest of Defendants, (b) directing that the Two Year Transfers be set aside, and (c) recovering such Two Year Transfers or the value thereof from Defendants for the benefit of the Liquidation Trust.

## THIRD CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

### Avoidance and Recovery of Constructive Fraudulent Transfers – Bankruptcy Code

35.     Plaintiff realleges and incorporates herein Paragraphs 1 through 34, as if fully set forth herein.

36.     The Two Year Transfers constituted transfers of the Debtors' property.

37.     The Two Year Transfers were made by the Debtors for less than reasonably equivalent value at a time when the Debtors (i) were insolvent; and/or (ii) were engaged or about to engage in business or a transaction for which any capital remaining with the Debtors were an unreasonably small capital; and/or (iii) intended to incur, or believed that Debtors would incur, debts beyond their ability to pay as such debts matured.

38.     The Two Year Transfers were made to or for the benefit of Defendants.

39.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 548(a), 550(a), and 551: (a) avoiding the Two Year Transfers free and

clear of any claimed interest of Defendants, (b) directing that the Two Year Transfers be set

aside, and (c) recovering such Two Year Transfers or the value thereof from Defendants for the

benefit of the Liquidation Trust.

## FOURTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

### Avoidance and Recovery of Actual Intent Voidable Transactions – State Law

40.     Plaintiff realleges and incorporates herein Paragraphs 1 through 39, as if fully set

forth herein.

41.     The Two Year Transfers constituted transfers of the Debtors' property.

42.     The Two Year Transfers were made by the Debtors with actual intent to hinder or

delay or defraud their creditors insofar as either (i) the services to be provided in exchange for

such transfers would perpetuate a Ponzi scheme, or (ii) such transfers were prepetition

distributions of fictitious profits from the Ponzi scheme in respect of the Claims.

43.     The Two Year Transfers were made to or for the benefit of Defendants.

44.     Debtors that made one or more of the Two Year Transfers has at least one creditor

with an allowable unsecured claim for liabilities, which claim remained unsatisfied as of the

Petition Date.

45.     The Two Year Transfers are avoidable under applicable law – California Civil

Code section 3439.04(a)(1) and/or comparable provisions of law in other jurisdictions that have

adopted the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act or the

Uniform Fraudulent Conveyance Act – by a creditor holding an allowed unsecured claim and

thus by Plaintiff pursuant to Bankruptcy Code section 544(b).

46.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to

Bankruptcy Code sections 544(b), 550(a), and 551: (a) avoiding the Two Year Transfers free and

clear of any claimed interest of Defendant, (b) directing that the Two Year Transfers be set aside,

DOCS_LA:325891.3 94811/003

and (c) recovering such Two Year Transfers or the value thereof from Defendants for the benefit of the Liquidation Trust.

## FIFTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

### Avoidance and Recovery of Constructive Voidable Transactions – State Law

47.     Plaintiff realleges and incorporates herein Paragraphs 1 through 46, as if fully set forth herein.

48.     The Two Year Transfers constituted transfers of the Debtors' property.

49.     The Two Year Transfers were made by the Debtors for less than reasonably equivalent value at a time when the Debtors (i) were insolvent; and/or (ii) were engaged or was about to engage in business or a transaction for which any capital remaining with the Debtors were an unreasonably small capital; and/or (iii) intended to incur, or believed that it would incur, debts beyond their ability to pay as such debts matured.

50.     The Two Year Transfers were made to or for the benefit of Defendants.

51.     At the times of, and/or subsequent to, each of the Two Year Transfers, each Debtor that made one or more of the Two Year Transfers has at least one creditor with an allowable unsecured claim for liabilities, which claim remained unsatisfied as of the Petition Date.

52.     The Two Year Transfers are avoidable under applicable law – California Civil Code section 3439.04(a)(2) and/or comparable provisions of law in other jurisdictions that have adopted the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act or the Uniform Fraudulent Conveyance Act – by a creditor holding an allowed unsecured claim and thus by Plaintiff pursuant to Bankruptcy Code section 544(b).

53.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code sections 544(b), 550(a), and 551: (a) avoiding the Two Year Transfers free and

clear of any claimed interest of Defendants, (b) directing that the Two Year Transfers be set

aside, and (c) recovering such Two Year Transfers or the value thereof from Defendants for the

benefit of the Liquidation Trust.

### SIXTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

#### Objection to Claims (Bankruptcy Code Section 502(d))

54.     Plaintiff realleges and incorporates herein Paragraphs 1 through 53, as if fully set

forth herein.

55.     The Claims are not allowable because:

a.   Defendants have received property, *i.e.*, the Transfers, recoverable under
     Bankruptcy Code section 550; and/or

b.   Defendants have received a transfer, *i.e.*, the Transfers, avoidable under
     Bankruptcy Code section 544, 547, or 548.

56.     In either event, the Claims must be disallowed under Bankruptcy Code section

502(d) unless and until Defendants have fully repaid the amount, or turned over any such

property, for which Defendants are liable under Bankruptcy Code section 550.

### SEVENTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

#### Equitable Subordination of Claims

57.     Plaintiff realleges and incorporates herein Paragraphs 1 through 56, as if fully set

forth herein.

58.     By providing services that helped perpetuate a Ponzi scheme, Defendants engaged

in inequitable conduct.

59.     Defendants' inequitable conduct has resulted in injury to the Debtors' estates and

their other creditors and/or has conferred an unfair advantage on Defendants.

60.     Principles of equitable subordination require that any claims asserted by

Defendants be equitably subordinated to all other claims against the Debtors.

12

61.     Equitable subordination as requested herein is consistent with the provisions and purposes of the Bankruptcy Code.

62.     As a result of the foregoing, Plaintiff is entitled to judgment pursuant to Bankruptcy Code section 510(c) equitably subordinating any and all claims that Defendants may assert against any of the Debtors, whatever the origin of those claims, including, without limitation, the Claims and any claims that may be asserted under Bankruptcy Code section 502(h), to all other claims against the Debtors.

## EIGHTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

### Sale of Unregistered Securities (Securities Act Sections 5(a), 5(c), and 12(a))

63.     Plaintiff realleges and incorporates herein Paragraphs 1 through 62, as if fully set forth herein.

64.     The Notes and Units sold by Defendants were securities within the meaning of the Securities Act.

65.     No registration statement was filed or in effect with the SEC pursuant to the Securities Act with respect to the securities issued by the Debtors as described in this Complaint and no exemption from registration existed with respect to these securities.

66.     From on or about July 2012 through at least December 4, 2017, Defendants directly and indirectly:

> a.     made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;
>
> b.     carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; and/or
>
> c.     made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security,

DOCS_LA:325891.3 94811/003

without a registration statement having been filed or being in effect with the SEC as to such securities.

67.     By reason of the foregoing, Defendants violated Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

68.     The Investors who contributed their claims to the Liquidation Trust purchased the unregistered securities issued by the Debtors and as a direct and proximate result sustained significant damages.  Accordingly, the Liquidation Trust has standing under Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77*l*(a)(1), to bring a cause of action seeking damages based on Defendants' violations of Section 5(a) and 5(c) of the Securities Act.

69.     As a result of the foregoing, Plaintiff is entitled to judgment holding Defendants jointly and severally liable for the sale of unregistered securities, in an amount to be proven at trial.

## NINTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)

### Fraud

70.     Plaintiff realleges and incorporates herein Paragraphs 1 through 69, as if fully set forth herein.

71.     Defendants misrepresented the facts to Investors, including by making affirmative misrepresentations and by concealing and failing to disclose the true facts.  Among the misrepresentations were that Investors were often told that they were investing money to be loaned with respect to particular properties owned by third parties, that those properties were worth substantially more than the loans against the properties, and that they would have the benefit of a stream of payments from these third parties for high-interest loans, protected by security interests and/or mortgages against such properties.

72.     In reality, these statements were lies.  Investors' money was almost never used to make high-interest loans to unrelated, third-party borrowers, and there was no stream of payments; instead, Investors' money was commingled and used for an assortment of expenses, including maintaining a lavish lifestyle for Shapiro and his family, brokers' commissions, overhead (largely for selling even more Notes and Units to Investors), and payment of principal and interest to existing investors.  The money that was used to acquire properties (almost always owned by a disguised affiliate) cannot be traced to any specific Investor.

73.     Defendants made these misrepresentations knowingly, with scienter, and with intent to defraud Investors.

74.     The Investors who contributed their claims to the Liquidation Trust justifiably relied on Defendants' misrepresentations of facts, and as a direct and proximate result sustained hundreds of millions of dollars in damages.

75.     As a result of the foregoing, Plaintiff is entitled to judgment holding Defendants jointly and severally liable for fraud set forth in Exhibit 3 or in an amount to be proven at trial.

## **TENTH CLAIM FOR RELIEF (AGAINST ALL DEFENDANTS)**

### **Aiding and Abetting Fraud**

76.     Plaintiff realleges and incorporates herein Paragraphs 1 through 75, as if fully set forth herein.

77.     Shapiro – an architect of the fraud – also misrepresented the facts to Investors, and did so knowingly, with scienter, and with intent to defraud Investors.  The Investors who contributed their claims to the Liquidation Trust justifiably relied on Shapiro's misrepresentations of facts, and as a direct and proximate result sustained hundreds of millions of dollars in damages.

15

78.     Defendants knowingly and substantially assisted Shapiro in defrauding Investors and were aware of Shapiro's fraud and acted knowingly in providing substantial and material assistance to Shapiro.

79.     Defendants substantially benefited by receiving income, commissions, and bonuses.

80.     As a result of the foregoing, Plaintiff is entitled to judgment holding Defendants jointly and severally liable for aiding and abetting fraud as set forth in Exhibit 3 or in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, Plaintiff requests that the Court enter judgment:

1.     On the first claim for relief, (a) avoiding the 90 Day Transfers of $5,500, free and clear of any interest of Defendants, (b) directing that the 90 Day Transfers be set aside, and (c) ordering Defendants to pay to Plaintiff the amount of the 90 Day Transfers;

2.     On the second and third claims for relief, (a) avoiding the Two Year Transfers of $107,140.98, free and clear of any claimed interest of Defendants, (b) directing that the Two Year Transfers be set aside, and (c) ordering Defendant Berman to pay to Plaintiff the amount of the Two Year Transfers; provided, however, that the Berman Trust shall not be liable for any Transfers that are set-offs as Prepetition Distributions to the Claims filed by the Berman Trust;

3.     On the fourth and fifth claims for relief, (a) avoiding the Two Year Transfers of $107,140.98, free and clear of any claimed interest of Defendants, (b) directing that the Two Year Transfers be set aside, and (c) ordering Defendants to pay to Plaintiff the amount of the

16

Two Year Transfers; provided, however, that the Berman Trust shall not be liable for any

Transfers that are set-offs as Prepetition Distributions to the Claims filed by the Berman Trust;

4.      On the sixth claim for relief, sustaining the objection to the Claims, decreeing that

the Defendants take nothing therefrom, and directing the Claims Agent to strike any Scheduled

claim and Claim No. 2005 from the official Claims Register;

5.      On the seventh claim for relief, equitably subordinating any and all claims that

Defendants may assert against any of the Debtors or their estates, whatever the origin of those

claims, including, without limitation, the Claims and any claims that may be asserted under

Bankruptcy Code section 502(h), to all other claims against the Debtors or their estates;

6.      On the eighth claim for relief, holding Defendants jointly and severally liable for

net damages in the amount of $794,371.36 for notes sold, or in an amount to be proven at trial,

arising from Defendants' sale of unregistered securities;

7.      On the ninth claim for relief, holding Defendants jointly and severally liable for

fraud for net damages in the amount of $794,371.36 for notes sold, or in an amount to be proven

at trial;

8.      On the tenth claim for relief, holding Defendant Berman jointly and severally

liable for aiding and abetting fraud for net damages in the amount of $794,371.36 for notes sold,

or in an amount to be proven at trial; and

9.      On all claims for relief, awarding Plaintiff prejudgment interest as permitted by

law, costs of suit, and such other and further relief as is just and proper.


Dated:  November 21, 2019              */s/ Colin R. Robinson*
                                       Bradford J. Sandler (DE Bar No. 4142)
                                       Andrew W. Caine (CA Bar No. 110345)
                                       Colin R. Robinson (DE Bar No. 5524)
                                       PACHULSKI STANG ZIEHL & JONES LLP
                                       919 North Market Street, 17th Floor
                                       P.O. Box 8705
                                       Wilmington, DE 19899-8705 (Courier 19801)
                                       Telephone: (302) 652-4100
                                       Facsimile: (302) 652-4400
                                       Email: bsandler@pszjlaw.com
                                              acaine@pszjlaw.com
                                              crobinson@pszjlaw.com

                                       *Counsel to Plaintiff Michael Goldberg, in his*
                                       *capacity as Liquidating Trustee of the Woodbridge*
                                       *Liquidation Trust*

# EXHIBIT 1

## Claims and Investments

### Scheduled and Filed Claims

| Creditor | Scheduled Claims | | | Filed Claims | | | Type |
|---|---|---|---|---|---|---|---|
| | Schedule | Amount | C/U/D | Claim No. | Amount | Classification | |
| Rochelle Berman Trust | F | $30,000.00 | C/U/D | 2005 | $30,000.00 | Secured | Note |
| Rochelle Berman | F | 4,000.00 | C/U/D | | | | Trade |
| Totals | | $34,000.00 | | | $30,000.00 | | |

### Investment Principal and Distributions

| Investor Name | Type | Total Outstanding Principal | Prepetition Distributions | Net Principal |
|---|---|---|---|---|
| Rochelle Berman Trust | Note | $30,000.00 | $1,453.33 | $28,546.67 |
| Totals | | $30,000.00 | $1,453.33 | $28,546.67 |

# EXHIBIT 2

Commission Payments
Rochelle Berman

| Debtor | Ck. No. | Petition Date | Clear Date | Name | Receipts | Disbursements |
|---|---|---|---|---|---|---|
| WOODBRIDGE GROUP OF COMPANIES, LLC | 26800 | 12/04/17 | 09/21/17 | ROCHELLE BERMAN | | $ 3,000.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 26429 | 12/04/17 | 09/13/17 | ROCHELLE BERMAN | | 2,500.00 |
| | | | | TOTALS - 90 DAY | - | 5,500.00 |
| | | | | NET DISBURSEMENTS - 90 DAY | | 5,500.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 25504 | 12/04/17 | 08/21/17 | ROCHELLE BERMAN | $ 156.25 | |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 25504 | 12/04/17 | 08/21/17 | ROCHELLE BERMAN | | 1,500.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 23657 | 12/04/17 | 08/02/17 | ROCHELLE BERMAN | | 1,000.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 23039 | 12/04/17 | 07/13/17 | ROCHELLE BERMAN | | 2,500.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 23078 | 12/04/17 | 07/13/17 | ROCHELLE BERMAN | 194.44 | |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 23078 | 12/04/17 | 07/13/17 | ROCHELLE BERMAN | | 1,000.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 21530 | 12/04/17 | 05/31/17 | ROCHELLE BERMAN | | 500.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 18801 | 12/04/17 | 03/13/17 | ROCHELLE BERMAN | 5,000.00 | |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 18801 | 12/04/17 | 03/13/17 | ROCHELLE BERMAN | | 12,500.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 16430 | 12/04/17 | 01/11/17 | ROCHELLE BERMAN | | 3,500.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 14237 | 12/04/17 | 11/01/16 | ROCHELLE BERMAN | | 7,500.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 10033 | 12/04/17 | 09/19/16 | ROCHELLE BERMAN | | 1,875.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 10035 | 12/04/17 | 09/19/16 | ROCHELLE BERMAN | | 2,000.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 9278 | 12/04/17 | 08/31/16 | ROCHELLE BERMAN | | 2,700.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 7570 | 12/04/17 | 07/18/16 | ROCHELLE BERMAN | 2,333.33 | |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 7570 | 12/04/17 | 07/18/16 | ROCHELLE BERMAN | | 5,000.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 6580 | 12/04/17 | 07/01/16 | ROCHELLE BERMAN | | 25,000.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 7123 | 12/04/17 | 06/27/16 | ROCHELLE BERMAN | | 2,500.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 6960 | 12/04/17 | 06/22/16 | ROCHELLE BERMAN | | 8,000.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 6397 | 12/04/17 | 06/13/16 | ROCHELLE BERMAN | | 1,500.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 5694 | 12/04/17 | 06/02/16 | ROCHELLE BERMAN | | 17,500.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 4415 | 12/04/17 | 04/20/16 | ROCHELLE BERMAN | | 4,500.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 4121 | 12/04/17 | 04/13/16 | ROCHELLE BERMAN | | 1,750.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 3804 | 12/04/17 | 04/07/16 | ROCHELLE BERMAN | | 1,750.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 3805 | 12/04/17 | 04/07/16 | ROCHELLE BERMAN | | 1,750.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 3756 | 12/04/17 | 03/28/16 | ROCHELLE BERMAN | | 3,500.00 |
| | | | | TOTALS - 2 YEAR (INCL. 90 DAY) | $ 7,684.02 | $ 114,825.00 |
| | | | | NET DISBURSEMENTS - 2 YEAR (INCL. 90 DAY) | | $ 107,140.98 |

# EXHIBIT 3

Schedule of Claims Contributed by Investors
Broker(s): Rochelle Berman

| Investor Name | Outstanding Investor Principal Amounts | | | Net/Allowed Claim Amounts | | |
|---|---|---|---|---|---|---|
| | Class 3 | | Class 5 | Class 3 | | Class 5 |
| MAINSTAR-FBO WILLIAM SCHWARTZ | $ | 250,000.00 | $ - | $ | 232,145.90 | $ - |
| MARK & TAMMY GULLIFER | | 200,000.00 | - | | 192,726.06 | - |
| MARK E GRAHAM | | 100,000.00 | - | | 94,258.30 | - |
| ROCHELLE BERMAN TR | | 30,000.00 | - | | 28,546.67 | - |
| THE ANDREW D MYRICK RT 2017 A MYRICK TTEE | | 250,000.00 | - | | 246,694.43 | - |
| Totals | $ | 830,000.00 | $ - | $ | 794,371.36 | $ - |