## **EXHIBIT C**


**Disputed Claim**



UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

To select a debtor, please see attached Exhibit A.



FILED - 04162
DISTRICT OF DELAWARE
WOODBRIDGE GROUP OF COMPANIES, LLC
17-12560/JUDGE KEVIN J. CAREY

# Proof of Claim
Official Form 410*

Read the instructions before filling out this form. Do not use this form to make a request for payment of an administrative expense except for pursuant to Bankruptcy Code section 503(b)(9). Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

This chapter 11 case was commenced in the United States Bankruptcy Court for the District of of Delaware, on December 4, 2017 (the "Petition Date.") Fill in all the information for the claim as of the Petition Date.

| Part 1: | Identify the Claim |
| --- | --- |

| 1. | Who is the current creditor? | The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 Restated |
| --- | --- | --- |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor _____ |

| 2. | Has this claim been acquired from someone else? | ☒ No |
| --- | --- | --- |
| | | ☐ Yes. From whom? _____ |

| 3. | Where should notices and payments to the creditor be sent? | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- | --- | --- |
| | Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Fred F. Cohn & Miriam C. Perlson-Cohn | |
| | | Name | Name |
| | | 420 La Casa Ave. | |
| | | Number    Street | Number    Street |
| | | San Mateo      CA   94403 | |
| | | City           State   ZIP Code | City           State   ZIP Code |
| | | Contact phone 650-340-9546 | Contact phone _____ |
| | | Contact email miriam.cohn@gmail.com | Contact email _____ |

| 4. | Does this claim amend one already filed? | ☒ No | |
| --- | --- | --- | --- |
| | | ☐ Yes. Claim number on court claims registry (if known) _____ | Filed on _____  MM/DD/YYYY |

| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☒ No | |
| --- | --- | --- | --- |
| | | ☐ Yes. Who made the earlier filing? _____ | |





| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

| 6. | Do you have any number you use to identify the debtor? | ☐ No<br>☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: (S/S #'s 7727 & 3781)  Policy# 7 7 6 2 |
|---|---|---|
| 7. | How much is the claim? | $ 10,596.56 as of 06-15-2018    Does this amount include interest or other charges?<br>☐ No<br>☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as health care information.<br>Secondary Market Annuity (see attached document) |
| 9. | Is all or part of the claim secured? | ☒ No<br>☐ Yes. The claim is secured by a lien on property.<br><br>Nature of property:<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>Basis for perfection: _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>Value of property:    $_____<br>Amount of the claim that is secured:    $_____<br>Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>Amount necessary to cure any default as of the date of the petition: $_____<br><br>Annual Interest Rate (when case was filed) _____%<br>☐ Fixed<br>☐ Variable |
| 10. | Is this claim based on a lease? | ☒ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____ |
| 11. | Is this claim subject to a right of setoff? | ☒ No<br>☐ Yes. Identify the property: _____ |
| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☒ No<br>☐ Yes. *Check all that apply:*                    **Amount entitled to priority**<br><br>☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).    $_____<br><br>☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $_____<br><br>☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).    $_____<br><br>☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $_____<br><br>☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).    $_____<br><br>☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.    $_____<br><br>* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. |

| 13. | Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)? | ☒ No |
| --- | --- | --- |
| | | ☐ Yes. Indicate the amount of your claim arising from the value of any goods received by the Debtor within 20 days before the date of commencement of the above case, in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business. Attach documentation supporting such claim. $ _____ |
| 14. | Has the claimant asserted any Debtor-related claims against any third party? | ☒ No |
| | | ☐ Yes. Provide the details of where you asserted any Debtor-related claims against a third party. _____ |

## Part 3:    Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically. FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☒ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee. or the debtor. or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety. endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim. the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  05/14/2018
              MM / DD / YYYY

Signature  _Miriam C. Perlson-Cohn_ _Fred F. Cohn_

Print the name of the person who is completing and signing this claim:

Name    _Miriam_        _C._            _Perlson-Cohn_
        First name      Middle name     Last name
        _Fred_          _F._            _Cohn_

Title    _Trustees_

Company  _____
         Identify the corporate servicer as the company if the authorized agent is a servicer.

Address  _420 La Casa Ave._
         Number    Street
         _San Mateo,_              _CA_         _94403_
         City                      State        ZIP Code

Contact phone  _650-340-9546_    Email  _miriam.cohn@gmail.com_

IF SUBMITTING A HARD COPY OF A PROOF OF CLAIM FORM, PLEASE SEND YOUR ORIGINAL, COMPLETED CLAIM FORM AS FOLLOWS: IF BY MAIL: WOODBRIDGE GROUP OF COMPANIES. LLC. ET AL. P.O. BOX 10545. DUBLIN. OHIO 43017-0208. IF BY HAND OR OVERNIGHT COURIER: WOODBRIDGE GROUP OF COMPANIES. LLC. ET AL.. C/O GCG. 5151 BLAZER PARKWAY, SUITE A. DUBLIN. OH 43017. ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR EMAIL WILL NOT BE ACCEPTED.

THE GENERAL BAR DATE IN THESE CHAPTER 11 CASES IS JUNE 19, 2018 AT 5:00 P.M. (PREVAILING EASTERN TIME) THE GOVERNMENT BAR DATE IS EITHER JUNE 4, 2018, AUGUST 8, 2018, SEPTEMBER 5, 2018 SEPTEMBER 19, 2018, OR SEPTEMBER 24, 2018. DEPENDING ON WHICH DEBTOR YOUR CLAIM IS AGAINST, AS SET FORTH ON EXHIBIT I TO THE BAR DATE ORDER, AVAILABLE AT http://cases.gardencitygroup.com/wgc/

Modified Official Form 410 (GCG 5/16) (ANN)



# WOODBRIDGE

## STRUCTURED FUNDING, LLC

14225 Ventura Blvd. Suite 100, Sherman Oaks, CA 91423
Tel: (818) 386-6300 · (866) 865-7044 ·Fax: (866) 452-4499
www.woodbridgeinvestments.com

# CLOSING BOOK

### Designated Assignee:

The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 restated

### Annuity Issuer:

New York Life Insurance Company

### Structured Settlement Obligor:

New York Life Insurance and Annuity Corporation

### Original Payee:

Loyd Gainous, Jr.

### Proposed Closing Date:

November 20, 2012

# Table of Contents

**Annuity Issuer:**  New York Life Insurance Company
**Original Payee:**  Loyd Gainous, Jr.
**Proposed Closing Date:** November 20, 2012

|                                                                      | Tab |
|----------------------------------------------------------------------|-----|
| **Contact Information and Transaction Summary**                      | 1   |
| **Master Assignment And Assumption Sheet**                           | 2   |
| **Offer Sheet**                                                      | 3   |
| **Amortization Schedule (Est. Funding  November 20, 2012)**          | 4   |
| **Petition**                                                         | 5   |
| **Notice of Hearing**                                                | 6   |
| **Certificate of Service**                                           | 7   |
| **Court Order**                                                      | 8   |
| **Affidavit in Lieu of Structured Settlement Agreement and Release** | 9   |
| **Annuity Contract and Benefits Letter**                             | 10  |
| **Certificate of Marital Status**                                    | 11  |
| **Waiver of Independent Professional Advice**                        | 12  |
| **Photo Identification**                                             | 13  |
| **Lien/Judgement Search Results**                                    | 14  |
| **Payee's Original Application**                                     | 15  |
| **Acknowledgment Request to NY Life**                                | 16  |
| **Acknowledgment from NY Life**                                      | 17  |



# WOODBRIDGE
## STRUCTURED FUNDING, LLC
14225 Ventura Blvd. Suite 100, Sherman Oaks, CA 91423
Tel: (818) 386-6300 · (866) 865-7044 ·Fax: (866) 452-4499
www.woodbridgeinvestments.com

Congratulations on your purchase of a Structured Settlement Fixed Term Annuity from Woodbridge Structured Funding, LLC. We are a market leader in the sale of these investments to discerning investors like you.

Structured Settlement Fixed Term Annuities are created through personal injury litigation. Recipients of these payment streams sell them at a discount in exchange for a lump sum payment now. Payment rights to these annuities are purchased by investors pursuant to State law. The purchase and sale of each payment stream is approved by a court which issues an order redirecting the payments to the investor.

Structured Settlement Fixed Term Annuities earn a fixed rate of interest resulting in a predictable return on your investment. Investors receive payments according to the payment schedule set out in the Court Order which is included in this Closing Book.

This Closing Book has been prepared to give you easy access to important information about your investment. The Table of Contents sets out all of the relevant documentation for your transaction. To get a quick review of your investment, the Transaction Summary provides a convenient synopsis.

A few key points about your investment:

1. Payments will be made by check to the address you provided. You will find this information in the Transaction Summary.
2. You may change your address or deposit method by contacting the Annuity Issuer directly. You will be required to provide a written direction. All of the necessary contact information appears on the page entitled "Contact Information."
3. If you are an individual, the Fixed Payments shall be paid to you regardless of whether you are alive or deceased. In the event of death, your estate administrator should contact the Annuity Issuer to advise of any change of the payment direction.
4. This investment may be taxable. You should consult your tax advisor to obtain advice on the proper tax treatment in your circumstances.
5. If you are purchasing a lump sum payment(s), we strongly encourage you to contact the Annuity Issuer in writing and by telephone at least thirty (30) days before the payment is due to make sure that the Annuity Issuer has the correct name and address for the issuance of your lump sum payment(s)

Thank you for purchasing a Structured Settlement Fixed Term Annuity from Woodbridge Structured Funding, LLC. Should you have any questions, please do not hesitate to contact us.

Sincerely,

Robert Shapiro
President
Woodbridge Structured Funding, LLC

# Tab 1

Contact Information and Transaction Summary



# Contact Information

**Transfer Company**
Woodbridge Structured Funding LLC
14225 Ventura Blvd. Suite 100
Sherman Oaks, CA 91423

**Original Payee**
Loyd Gainous, Jr.
5803 South Herpa Dr
Tucson, AZ 85706

**Annuity Issuer**
New York Life Insurance Company
51 Madison Avenue, Room 3003
New York, NY 10010

**Structured Settlement Obligor**
New York Life Insurance and Annuity Corporation
51 Madison Avenue, Room 3003
New York, NY 10010

**Transfer Attorney**
Amy Schwartz
302 East Coronado Rd
Phoenix, AZ 85004

## Transaction Summary for Loyd Gainous, Jr.

**State of Transfer :**          ARIZONA

**Annuity Issuer:**          New York Life Insurance Company

**Annuity Policy Number:**          FP 207 762

**Structured Settlement Obligor :**          New York Life Insurance and Annuity Corporation

**Aggregate Payments:**          $44,500.00

**Assigned Payments:**          Monthly payments of $500.00, commencing on November 15, 2012, through and including April 15, 2020

**Estimated Purchase Price:**          $38,571.57 (reflects missed November payment)

**Effective Interest Rate Purchase:**          4.000%

**Original Annuitant:**          Loyd Gainous, Jr.

**Estimated Closing Date:**          November 20, 2012



# Tab 2

Master Assignment and Assumption Sheet

## MASTER ASSIGNMENT AND ASSUMPTION AGREEMENT

This Master Assignment and Assumption Agreement (the "Agreement"), is made by and between Woodbridge Structured Funding, LLC, a State of Delaware limited liability company (the "Assignor") and The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 restated (the "Assignee" or "The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 restated").

WHEREAS, from time to time, Woodbridge Structured Funding, LLC will enter into transfer agreements (the "Transfer Agreements") with individuals (the "Sellers") who desire to sell their rights, title and interest to receive and interest in certain structured payments streams (the "Assigned Payment(s)") in exchange for a discounted lump sum payment; and

WHEREAS, from time to time, Woodbridge Structured Funding, LLC, via court order, will assign to The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 restated, its rights, title and interest to receive certain interests in various assigned payments under certain Transfer Agreements (the "Assignments");

NOW THEREFORE, in consideration of the agreements, promises, and covenants set forth herein, the Assignor and the Assignee do hereby agree as follows:

1.    Non-Circumvention.

   1.1    The Assignee shall refrain from soliciting business and contracts from sources not their own which have been made available to it through Assignor without the express permission of the Assignor for a period of five years from the date of this Agreement. In addition, all parties to this Agreement, including signatories, affiliates, subsidiaries, partners, and agents to all of the parties to this Agreement will maintain complete confidentiality regarding the Assignments, the Assigned Payment(s), and Transfer Agreements, and will only disclose such business sources under mutual agreement, and only after written permission has been received from the originator of the source.

   1.2    The Assignee and the Assignor further undertake not to enter into business transaction with banks, investors, brokers, co-brokers, sources of funds or other bodies, the names of which have been provided by either party, unless written permission has been obtained from the other party, or parties, to do so. For the sake of this agreement, it does not matter whether the information is obtained from a natural or a legal person. The Assignee also undertakes not to make use of a third party to circumvent this clause.

Initials

1.3    In the event of circumvention of this Agreement by either the Assignee or the Assignor, directly or indirectly, the circumvented party shall be entitled to a legal monetary penalty equal to the maximum service it should realize from such a transaction plus any and all expenses, including but not limited to all legal costs and expenses incurred to recover the lost revenue.

2.    <u>Price Quote and Escrow</u>.  The Assignor shall deliver from time to time an offer sheet (the "Offer Sheet") to the Assignee.  If the Assignee agrees to make an offer on an individual transaction, the Assignee shall execute the Offer Sheet as appropriate and return the signed Offer Sheet to the Assignor.  If the Assignor accepts the offer for purchase as set forth in the Offer Sheet (the "Offer") from the Assignee, the Assignor shall notify Assignee as indicated in the Offer Sheet.  The Assignor shall then deliver its acceptance to the Assignee.  The Assignee shall, as directed in the Offer Sheet, deposit into a escrow account, subject to the terms and conditions of the Offer Sheet, an amount equal to the Assignee's Offer as indicated in the Offer Sheet.

3.    <u>Court Order/Stipulation.</u>
3.1    <u>Contents of Court Order</u>.  The Assignor shall obtain a court order pursuant to Schedule B of this Agreement (the "Court Order") and, where applicable, a stipulation in respect of each sale of Assigned Payment(s) to the Assignee.  The Court Order shall include the following provisions:
(a)    A description of the Assigned Payment(s) to be assigned to the Assignee.
(b)    The Assignee shall be named as the designated assignee of each respective Assigned Payment(s).
(c)    The Assignee shall be permitted to make address changes for legitimate reasons to the designated address on record with the annuity issuer for the receipt of the Assigned Payment(s).

3.2    <u>Indemnity in Court Order/Stipulation.</u>  The Assignee understands and agrees that the Court Order and stipulation (where applicable) may include a provision requiring the Assignee to indemnify and hold harmless the annuity issuer and the annuity obligor from any liability, including but not limited to reasonable costs and attorney's fees, for any claims made in connection with, related to or arising out of the transfer of the respective Assigned Payment(s).

3.3    <u>Execution on Buyer's behalf.</u>  The Assignee authorizes the Assignor to execute each Court Order and, where applicable, each stipulation on Assignee's behalf pursuant to the information provided in Schedule B of this Agreement.

<u>Initials</u>

4.    Closing and Payment.

4.1    Closing Defined. The closing of each transfer described in this Agreement (the "Closing") shall occur upon the funding into escrow account of an Assignment by the Assignee and after the delivery to and the receipt by the Assignee of a complete closing book (the "Closing Book") as described in Schedule A of this Agreement.

4.2    Closing Date. The day on which funds representing the purchase price (the "Purchase Price") are paid and delivered to the Seller and the Assignor respectively shall be the "Closing Date." Upon distribution from the escrow account of the funding amount set forth in the Offer Sheet, the transaction between the Assignor and the Assignee shall constitute a final sale, grant, assignment, transfer and conveyance by the Assignor to the Assignee of all of Assignor's rights, title and interest in, to and under the Assigned Payment(s).

4.3    Price and Payment for each Assignment shall be paid in accordance with the funding instructions mutually agreed to by the parties to this Agreement and as provided in the Closing Book.    It is agreed that the Purchase Price to the Assignor will be calculated, on the day of Closing, from a pre-negotiated discount rate.

5.    Representations and Warranties of the Assignor.

5.1    The Assignor (and its signatories hereto) has all requisite power and authority to execute, deliver and perform this Agreement.

5.2    All signatures in the Closing Books are genuine and the Sellers did not execute such documents under duress.

5.3    The Sellers are over the age of eighteen (18) years, are of sound mind and are legally competent to enter into structured settlement transactions and to execute the Transfer Agreement and the documents contained in the Closing Book.

5.4    All applicable laws and regulations have been complied with in connection with the Assignment and the Court Order. Specifically, but without limitation, all provisions of the applicable law(s) have been satisfied, including all requisite disclosures and notices provided in accordance therewith and jurisdictional requirements of applicable federal and state statutes.

Initials

5.5     The Assignor has the authorization and power to transfer the Assigned Payment(s) and no consents are needed to execute, deliver and perform the Assignor's obligations under this Agreement except for consents that have previously been obtained.

5.6     The Assigned Payment(s) are being transferred to the Assignee free and clear of all claims, liens and encumbrances except for those paid and released from the proceeds of the Assignment.

5.7     The Assignor shall cooperate with the Assignee to instruct and notify the Annuity Issuer and the Annuity Owner to make the Assigned Payment(s) to Assignee in accordance with the terms of this Agreement and the Assigned Documents, and the Assignor shall execute all other documents and agreements and cooperate with the Assignee to make any filings and to otherwise take any action necessary to ensure that the Assigned Payment(s) are not paid to anyone other than the Assignee as a result of any inaccuracy of the preceding representations and warranties. The Assignor shall direct all appropriate parties that such payments are to be made payable to "The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 restated" and sent to the following address:

The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 restated
420 La Casa Ave
San Mateo, CA. 94404

6.     <u>Wiring Instructions</u>. The Assignee and the Assignor acknowledge that the escrow account agent cannot wire funds later than 12:00 PM Pacific Standard Time and that both the Assignee and the Assignor's obligations to each other must be completed in sufficient time in order to allow mailing of documents and wiring of funds.

7.     <u>Assumption</u>. Subject to the terms and conditions of this Agreement, and in accordance with the Transfer Agreements, the Assignee shall accept the conveyance and assignment described in the Assignment, and shall also assume, perform, pay, and discharge all of the duties, liabilities, and obligations of the Assignor under the Transfer Agreements and the Assignment. After payment of the Purchase Price to the Assignor, the Assignee is authorized to file any and all UCC Financing Statements as it deems necessary to reflect that the rights of the Assignor to receive the Assigned Payment(s) have been assigned to the Assignee (or any other such entity as the Assignee may designate).

8.     <u>Entire Agreement</u>. Neither party has been induced to enter into this Agreement by any covenant, representation or warranty not specifically set forth herein. This Agreement supersedes all prior agreements, arrangements and understandings,

Initials

whether oral or written, and all other communications between the parties hereto concerning the subject matter hereof. No modification, waiver, release, rescission, or amendment of any provision of this Agreement shall be made except by a written instrument duly executed by each of the parties hereto.

9. **Binding Effect**. This Agreement shall inure to the benefit of and be binding upon the Assignor, the Assignee, and their respective successors and assigns.

10. **Severability**. Any invalid or unenforceable provision shall either be deemed severed from this Agreement to the extent of its invalidity or unenforceability, and the remainder of this Agreement shall remain in full force and effect.

11. **Counterparts**. This Agreement may be executed simultaneously in two or more counterparts which, when taken together, shall be deemed an original and constitute one and the same document. The signature of any Party to the counterpart shall be deemed a signature to this Agreement, and may be appended to, any other counterpart. Facsimile transmission of executed signature pages shall be sufficient to bind the executing Party.

12. **Confidentiality**. The Assignor and the Assignee agree that the contents of this Agreement shall remain confidential, and shall not be disclosed to any person or entity (other than the party's attorneys, auditors, vendees, investors, senior managers, or such employees whose knowledge is required to carry out the terms of this Agreement) except as may be required by law and upon reasonable notice to the parties.

13. **Section Headings**. Section headings contained in this Agreement are inserted for convenience or reference only and shall not be deemed to be a part of this Agreement for any purpose, and shall not in any way define or affect the meaning, construction, scope of any of the provisions hereof.

14. **Governing Law**. This Agreement shall be construed according to the laws of the State of California, without regard to choice of law principles.

15. **Disclaimer**. Please be advised that this investment may be taxable. Please consult with your own certified public accountant to verify how this affects you, as Woodbridge Structured Funding LLC does not give tax advice.

[SIGNATURES ON FOLLOWING PAGE]

Initials

EXECUTED this _16th___ day of __August_____, 2012.

ASSIGNOR: Woodbridge Structured Funding, LLC

By: Scott Schwartz-Vice President

ASSIGNEE: The Fred F. Cohn & Miriam C.
Perlson-Cohn Rev Trust 5/26/94 restated)

XX _____, Trustee
By: Fred F. Cohn
Title: Trustee

The Fred F. Cohn & Miriam C. Perlson-Cohn Rev
Trust 5/26/94 restated

xx _____, Trustee
By: Miriam C. Perlson-Cohn TTE's
TIN: ████3781

Initials

## SCHEDULE A

## CLOSING BOOK REQUIREMENTS

1.   Fully executed **Offer Sheet**

2.   **Contact Information** for all interested parties

3.   **Funding Instructions** to include the method of payment to the Seller.  If payment by wire transfer, accurate wiring instructions from the Seller's financial institution.

4.   **Amortization Table depicting Assigned Payment(s) with yield to the Assignee calculated at the effective interest rate**

5.   **Petition**

6.   **Notice of Hearing**

7.   **Certificate or Proof of Service**

8.   **Court Order** from a court with proper jurisdiction

9.   **Stipulation** executed by all interested parties, a **Notice of Assignment** and **Proof of delivery of the administration fee to the Annuity Issuer, or,**

10.  **Acknowledgement Letter** from the Annuity Issuer stating that they will direct payments in accordance with the Order to The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 restated.

11.  **Annuity Contract or Benefits Letter** .

12.  **Transfer or Purchase Agreement**

13.  **Disclosure Statement**

14.  **Underlying Structured Settlement Agreement or Minor's Compromise (if available)**

15.  **Qualified Assignment Agreement** (if applicable or available)

16.  **Certificate of Marital Status** and, if married, a **Notarized Spousal Consent Form**

17.  **Independent Professional Advice** (IPA) Form or **IPA Waiver Form** as applicable

Initials

18.    **Affidavit from Payee stating dependents and setting forth factual basis for best interests**

19.    **Payee's Application**

20.    **Photo Identification**

21.    For the Payee and the Payee's spouse; evidence of due diligence pertaining to **UCC, lien, judgment, and bankruptcy searches.**


Initials

## SCHEDULE B

## ORDER/STIPULATION REQUIREMENTS

### 1. Designated Beneficiary, Death Provision

The order must name the designated beneficiary as the seller's estate but direct what happens in the event of seller's death.

Example wording:

*During the period the structured settlement payment rights are being assigned or encumbered pursuant to the transaction at issue, the designated beneficiary of the Assigned Payments shall be the Estate of [Seller]. However, WOODBRIDGE's designated assignee, The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 restated, shall be entitled to receive the Assigned Payment(s) even in the event of [Seller's] death.*

### 2. Direction of Assigned Payments

It is WOODBRIDGE's policy that the investor be named in the court order as the Designated Assignee. The investor's name and address must be inserted in the court order, however the investor's tax payer identification number is to be omitted unless specifically required by the annuity issuer and/or structured settlement obligor.

The order must state that the application is approved and order the Annuity Issuer to make the Assigned Payment(s) directly to the Designated Assignee as and when they are due. If this is not possible, Woodbridge must obtain written authorization from The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 restated, to use alternate language.

**NOTE:** The preferred wording will state that the payments are to be made to the Designated Assignee, "[name of investor]" or Designated Assignee's assigns as directed in writing by the Designated Assignee.

Example wording:

*Pursuant to the approved transfer, [name of annuity issuer], as Annuity Issuer, and [name of annuity owner], as Obligor, are hereby ordered to deliver the Assigned Payment(s) which were previously due to Transferor, [name of seller] under Annuity Policy [policy number], directly to: The Fred F. Cohn & Miriam*

Initials

*C. Perlson-Cohn Rev Trust 5/26/94 restated, its successors and/or assigns at the following address:*

420 La Casa Ave
San Mateo, CA. 94404

*or to any other address as designated in writing by The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 restated , its successors and/or assigns without further order of this Court.*

If the insurance company does not agree to the above provision, then it is acceptable to add wording to limit the further assignability of payments and to delete the provisions relating to "its successors and/or assigns"

Example wording:

*In the event The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 restated, further assigns the Assigned Payment(s) (or any portion thereof) (a "Reassignment") to any other person or entity, neither [annuity issuer] nor [annuity owner] will be obligated to redirect the Assigned Payment(s) (or any portion thereof) to any person or entity other than The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 restated, or to any payment address other than the Designated Address and The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 restated, shall remain obligated to comply with all terms and conditions herein. However, if The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 restated, moves, or its designated payment address is no longer viable for reasons beyond its control, [annuity issuer] and [annuity owner] shall make payments to the new payment address upon the timely submission by The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 restated, of a written notice to [annuity issuer] and [annuity owner] confirming that such event has occurred, and specifying the new entity and/or payment address.*

3. **Annuity issuer acknowledgment of assignment**

If possible, the court order should provide that the annuity issuer will send an acknowledgement letter to the investor or its assignees acknowledging the transfer.

Example wording

*That not later than twenty (20) days after service of a copy of the Order entered by this Court, the Annuity Issuer shall send a letter to WOODBRIDGE and its designated assignee, The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust*

Initials

*5/26/94 restated, at the following address, Woodbridge Structured Funding, LLC, 14225 Ventura Blvd, Suite 100, Sherman Oaks, CA 91423 and The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 restated, 420 La Casa Ave.,San Mateo, CA 94404 acknowledging the Transfer, informing WOODBRIDGE and its designated assignee, The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 restated, that the change has been made to its records, and specifying the name of the payee scheduled to receive the Assigned Payment(s), and address or bank account designation to where the Assigned Payment(s) shall be sent.*

If the annuity issuer or owner objects to this provision it may be removed.

### 4. Binding nature of order

The order should state that it is binding.

Example wording:

*This Order shall be binding upon the [seller], WOODBRIDGE, [annuity issuer], and [annuity owner] and all other interested parties."*

### 5. Indemnity and Release provisions

It is preferred that the order not mention any indemnification language. If the annuity issuer and/or obligor require indemnification language to be inserted into the Court order, the preference will be to only have WOODBRIDGE release and indemnify the annuity issuer and annuity owner.

If necessary after negotiation, it is permissible to have the investor also release and indemnify.

Example wording:

*[WOODBRIDGE and/or The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 restated, shall defend, indemnify, and hold harmless [annuity issuer] and [annuity owner], and their respective past, present, and future directors, shareholders, officers, agents, employees, servants, successors, and assigns, and any parent, subsidiary, or affiliate thereof, and their directors, shareholders, officers, agents, employees, servants, successors, and assigns, from and against any and all liability, including reasonable costs and attorneys' fees, for any and all claims made, including but not limited to any claims made by [seller] and his heirs, beneficiaries, contingent beneficiaries, executors, administrators, and assigns, in connection with, related to, or arising out of the Purchase Agreement, the Proposed Transfer, the Assigned Payment(s), any*


Initials

*Reassignment, the Stipulation, or this Order, except with respect to claims to enforce a party's rights under this Order.*

*WOODBRIDGE, The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 restated, and [seller], for themselves and their respective past, present, and future directors, shareholders, officers, agents, employees, servants, successors, heirs, beneficiaries, contingent beneficiaries, executors, administrators, and assigns, and any parent, subsidiary, or affiliate thereof, and their directors, shareholders, officers, agents, employees, servants, successors, heirs, beneficiaries, contingent beneficiaries, executors, administrators, and assigns (the "Releasors"), hereby remise, release, and forever discharge [annuity issuer and/or annuity owner], and their respective directors, shareholders, officers, agents, employees, servants, successors, and assigns, and any parent, subsidiary, or affiliate thereof, and their directors, shareholders, officers, agents, employees, servants, successors, and assigns, past and present (the "Releasees"), of and from any and all manner of actions and causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, settlements, damages, claims, and demands whatsoever, in law or in equity, in connection with, related to, or arising out of the Purchase Agreement, Assigned Payment(s), the Proposed Transfer, the parties' Stipulation, or this Order, which against each other or the Releasees, the Releasors can, shall, or may have, except for claims to enforce a party's rights under this Order.*

6. **Child Support Order Interpleader**

The following clause may be requested by the annuity issuer/annuity owner.  It is preferred that the clause not be included as we do not believe that subsequent child support orders are relevant or can affect a prior structured settlement transfer.

If the annuity issuer/owner insists after negotiation that a provision be included, you may do so where appropriate.

Example wording

*In the event an order is subsequently entered requiring [annuity owner]or [annuity issuer] to make payments in connection with a child support order, divorce decree or other order of a similar nature affecting the Assigned Payment(s), [annuity owner] and/or [annuity issuer] may file an interpleader action in a court in the jurisdiction in which [Seller] is domiciled at the time and [annuity issuer] will make payments to the court, or as directed by the court, until the court determines the priority of the subsequent order.*

7. **Other provisions**

Initials

ASSIGNMENT AND ASSUMPTION AGREEMENT v. 1.2 November 2010                    Page 12 of 13

Any other provisions that are not represented above but may be sought by other parties need to be considered in relation to the provisions outlined above. If consistent, I hereby authorize WOODBRIDGE to agree to them, if inconsistent, separate written authorization must be obtained.



Initials



# Tab 3

Offer Sheet

# Offer Sheet
## (Offer for Purchase of Structured Asset)

Woodbridge Structured Funding, LLC (the "Assignor") hereby makes available for Offer the purchase of the following structured asset. By executing below, The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 restated (the "Assignee") hereby offers for purchase a structured asset on the following terms, which describe the structured asset:

| | |
|---|---|
| **Payee Name:** | Loyd L. Gainous |
| **Annuity Issuer:** | New York Life Insurance Company |
| **Annuity Policy Number:** | |
| **Structured Settlement Obligor:** | |
| **Aggregate Payments:** | $45,000.00 |
| **Assigned Payments:** | Ninety monthly (90) payments as follows: $500.00 from November 15th, 2012 till April 15th, 2020 |
| **Purchase Price:**[1] | **$38,990.41** |
| **Effective Interest Rate:** | **4.00%** |

**Terms of Escrow:**

1.    Acknowledging that the Assignee and the Assignor have previously executed a Master Assignment and Assumption Agreement, all terms of said agreement are adopted in this Offer and incorporated herein by this reference.

2.    The Assignee shall, no less than 30 days prior to the first scheduled court hearing on this matter, deliver the Purchase Price to Offices of Woodbridge Structured Funding Escrow Account (the "Escrow Agent"). The Purchase Price shall be made by draft paid in US Dollars and payable to the Woodbridge Structured Funding Escrow Account and delivered to the following address:

Woodbridge Structured Funding

14225 Ventura Blvd, Suite 100

Sherman Oaks, CA 91423

3.    The Assignor shall direct the Escrow Agent to hold the Purchase Price in the Escrow Account, which is a non-interest bearing account.

4.    The closing will take place at a date to be determined, which will be no later than 180 days from the Acceptance of this Offer.

5.    In the event the judge or the court changes the Assignor's purchase price payable to the original payee or if the payments purchased or payment dates are revised or amended, Assignor shall have the right to cancel this agreement and return the full purchase price received by the Escrow Agent to Assignee. In addition, if the payee changes the Purchase Price or if the payments are not available, Assignor shall have the

---

[1] This is an estimated price as of the projected day of funding. Actual Purchase Price will be calculated using the stated effective interest rate and shall be calculated as of the actual day of funding.

Initials

right to cancel this agreement and return the full purchase price to the Assignee. Additionally, In the event the transaction changes due to increased purchase price, change in payments, less payments, or more payments, assignor shall have the right to cancel this agreement and return the full purchase price to the Assignee. In the event the court denies the transfer petition or the court hearing is changed to more than 30 days, Assignee shall have the sole right to request an immediate refund of their funds from escrow.

6.      Upon satisfaction of all terms and conditions of the Master Assignment and Assumption Agreement, the Escrow Agent shall deliver the closing book to the Assignee, or its designated agent as the Assignee may so designated in writing from time to time.

7.      As an express condition of Closing, the Assignee shall have in its sole and absolute discretion, the right to review the closing book and verify information contained therein. The Assignee shall have three (3) business days from the date of receipt of the Closing Book to notify the Assignor of any objections to the underwriting of this transaction. If such an objection occurs, the Assignor shall have either up to forty five (45) business days ("Cure Period") from the date receipt of notice of objection to cure said objection or the Assignor at its sole and absolute discretion shall have the right to cancel the agreement at any time during the Cure Period. If, the Assignor chooses to cancel this agreement, the Assignee hereby authorizes and provides the Assignor with the power of attorney to take any steps necessary to reassign this transaction to another investor and/or assignee. If, the Assignor cures and satisfies said objection, the Assignee shall provide the Assignor with written acknowledgement that said cure is satisfactory. If the Assignee does not notify the Assignor within three (3) business days of said cure, the Assignor has the right to fund this transaction. If the Assignee does not notify the Assignor and the Escrow Agent of any objections to the funding of this transaction, the Escrow Agent shall close this transaction by distribution of the funds held in escrow by the Escrow Agent as directed by the Assignor.

8.      In the event, the Assignee defaults on the Master Assignment and Assumption Agreement and/or the Offer Sheet, the Assignor shall be entitled to retain an amount not to exceed ten percent of the monies held in escrow as liquidated damages. In addition, the Assignor in its sole and absolute discretion shall have the power and authority to cancel any remaining transactions between the Assignor and Assignee.

Offered by:

Dated:   09/07/2012

By: _____

Fred F. Cohn-trustee

By: _____

Miriam C. Perlson-Cohn-trustee

Initials

Accepted by:

**WOODBRIDGE STRUCTURED**
**FUNDING, LLC,**

Dated:                9/12/12        By:        Scott Schwartz
                                          Vice President

# Tab 4

Amortization Schedule (Est. Funding November 20, 2012)



*Loyd L. Gainous #868614 AZ*

Compound Period ......... :  Monthly

Effective Annual Rate ... :  4.000 %

CASH FLOW DATA

| Event | Date | Amount | Number | Period | End Date |
|-------|------|--------|--------|--------|----------|
| 1  Loan | 11/20/2012 | 38,571.57 | 1 | | |
| 2  Payment | 12/15/2012 | 500.00 | 89 | Monthly | 04/15/2020 |

AMORTIZATION SCHEDULE - Normal Amortization

| | Date | Payment | Interest | Principal | Balance |
|---|------|---------|----------|-----------|---------|
| Loan | 11/20/2012 | | | | 38,571.57 |
| 1 | 12/15/2012 | 500.00 | 103.79 | 396.21 | 38,175.36 |
| 2012 Totals | | 500.00 | 103.79 | 396.21 | |
| 2 | 01/15/2013 | 500.00 | 124.98 | 375.02 | 37,800.34 |
| 3 | 02/15/2013 | 500.00 | 123.75 | 376.25 | 37,424.09 |
| 4 | 03/15/2013 | 500.00 | 122.52 | 377.48 | 37,046.61 |
| 5 | 04/15/2013 | 500.00 | 121.28 | 378.72 | 36,667.89 |
| 6 | 05/15/2013 | 500.00 | 120.04 | 379.96 | 36,287.93 |
| 7 | 06/15/2013 | 500.00 | 118.80 | 381.20 | 35,906.73 |
| 8 | 07/15/2013 | 500.00 | 117.55 | 382.45 | 35,524.28 |
| 9 | 08/15/2013 | 500.00 | 116.30 | 383.70 | 35,140.58 |
| 10 | 09/15/2013 | 500.00 | 115.04 | 384.96 | 34,755.62 |
| 11 | 10/15/2013 | 500.00 | 113.78 | 386.22 | 34,369.40 |
| 12 | 11/15/2013 | 500.00 | 112.52 | 387.48 | 33,981.92 |
| 13 | 12/15/2013 | 500.00 | 111.25 | 388.75 | 33,593.17 |
| 2013 Totals | | 6,000.00 | 1,417.81 | 4,582.19 | |
| 14 | 01/15/2014 | 500.00 | 109.98 | 390.02 | 33,203.15 |
| 15 | 02/15/2014 | 500.00 | 108.70 | 391.30 | 32,811.85 |
| 16 | 03/15/2014 | 500.00 | 107.42 | 392.58 | 32,419.27 |
| 17 | 04/15/2014 | 500.00 | 106.13 | 393.87 | 32,025.40 |
| 18 | 05/15/2014 | 500.00 | 104.84 | 395.16 | 31,630.24 |
| 19 | 06/15/2014 | 500.00 | 103.55 | 396.45 | 31,233.79 |
| 20 | 07/15/2014 | 500.00 | 102.25 | 397.75 | 30,836.04 |
| 21 | 08/15/2014 | 500.00 | 100.95 | 399.05 | 30,436.99 |
| 22 | 09/15/2014 | 500.00 | 99.64 | 400.36 | 30,036.63 |
| 23 | 10/15/2014 | 500.00 | 98.33 | 401.67 | 29,634.96 |
| 24 | 11/15/2014 | 500.00 | 97.02 | 402.98 | 29,231.98 |
| 25 | 12/15/2014 | 500.00 | 95.70 | 404.30 | 28,827.68 |
| 2014 Totals | | 6,000.00 | 1,234.51 | 4,765.49 | |
| 26 | 01/15/2015 | 500.00 | 94.37 | 405.63 | 28,422.05 |
| 27 | 02/15/2015 | 500.00 | 93.05 | 406.95 | 28,015.10 |
| 28 | 03/15/2015 | 500.00 | 91.71 | 408.29 | 27,606.81 |
| 29 | 04/15/2015 | 500.00 | 90.38 | 409.62 | 27,197.19 |

*Loyd L. Gainous #868614 AZ*

| | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| 30 | 05/15/2015 | 500.00 | 89.04 | 410.96 | 26,786.23 |
| 31 | 06/15/2015 | 500.00 | 87.69 | 412.31 | 26,373.92 |
| 32 | 07/15/2015 | 500.00 | 86.34 | 413.66 | 25,960.26 |
| 33 | 08/15/2015 | 500.00 | 84.99 | 415.01 | 25,545.25 |
| 34 | 09/15/2015 | 500.00 | 83.63 | 416.37 | 25,128.88 |
| 35 | 10/15/2015 | 500.00 | 82.27 | 417.73 | 24,711.15 |
| 36 | 11/15/2015 | 500.00 | 80.90 | 419.10 | 24,292.05 |
| 37 | 12/15/2015 | 500.00 | 79.53 | 420.47 | 23,871.58 |
| 2015 Totals | | 6,000.00 | 1,043.90 | 4,956.10 | |
| 38 | 01/15/2016 | 500.00 | 78.15 | 421.85 | 23,449.73 |
| 39 | 02/15/2016 | 500.00 | 76.77 | 423.23 | 23,026.50 |
| 40 | 03/15/2016 | 500.00 | 75.38 | 424.62 | 22,601.88 |
| 41 | 04/15/2016 | 500.00 | 73.99 | 426.01 | 22,175.87 |
| 42 | 05/15/2016 | 500.00 | 72.60 | 427.40 | 21,748.47 |
| 43 | 06/15/2016 | 500.00 | 71.20 | 428.80 | 21,319.67 |
| 44 | 07/15/2016 | 500.00 | 69.80 | 430.20 | 20,889.47 |
| 45 | 08/15/2016 | 500.00 | 68.39 | 431.61 | 20,457.86 |
| 46 | 09/15/2016 | 500.00 | 66.97 | 433.03 | 20,024.83 |
| 47 | 10/15/2016 | 500.00 | 65.56 | 434.44 | 19,590.39 |
| 48 | 11/15/2016 | 500.00 | 64.13 | 435.87 | 19,154.52 |
| 49 | 12/15/2016 | 500.00 | 62.71 | 437.29 | 18,717.23 |
| 2016 Totals | | 6,000.00 | 845.65 | 5,154.35 | |
| 50 | 01/15/2017 | 500.00 | 61.28 | 438.72 | 18,278.51 |
| 51 | 02/15/2017 | 500.00 | 59.84 | 440.16 | 17,838.35 |
| 52 | 03/15/2017 | 500.00 | 58.40 | 441.60 | 17,396.75 |
| 53 | 04/15/2017 | 500.00 | 56.95 | 443.05 | 16,953.70 |
| 54 | 05/15/2017 | 500.00 | 55.50 | 444.50 | 16,509.20 |
| 55 | 06/15/2017 | 500.00 | 54.05 | 445.95 | 16,063.25 |
| 56 | 07/15/2017 | 500.00 | 52.59 | 447.41 | 15,615.84 |
| 57 | 08/15/2017 | 500.00 | 51.12 | 448.88 | 15,166.96 |
| 58 | 09/15/2017 | 500.00 | 49.65 | 450.35 | 14,716.61 |
| 59 | 10/15/2017 | 500.00 | 48.18 | 451.82 | 14,264.79 |
| 60 | 11/15/2017 | 500.00 | 46.70 | 453.30 | 13,811.49 |
| 61 | 12/15/2017 | 500.00 | 45.22 | 454.78 | 13,356.71 |
| 2017 Totals | | 6,000.00 | 639.48 | 5,360.52 | |
| 62 | 01/15/2018 | 500.00 | 43.73 | 456.27 | 12,900.44 |
| 63 | 02/15/2018 | 500.00 | 42.23 | 457.77 | 12,442.67 |
| 64 | 03/15/2018 | 500.00 | 40.73 | 459.27 | 11,983.40 |
| 65 | 04/15/2018 | 500.00 | 39.23 | 460.77 | 11,522.63 |
| 66 | 05/15/2018 | 500.00 | 37.72 | 462.28 | 11,060.35 |
| 67 | 06/15/2018 | 500.00 | 36.21 | 463.79 | 10,596.56 |
| 68 | 07/15/2018 | 500.00 | 34.69 | 465.31 | 10,131.25 |
| 69 | 08/15/2018 | 500.00 | 33.17 | 466.83 | 9,664.42 |
| 70 | 09/15/2018 | 500.00 | 31.64 | 468.36 | 9,196.06 |
| 71 | 10/15/2018 | 500.00 | 30.11 | 469.89 | 8,726.17 |
| 72 | 11/15/2018 | 500.00 | 28.57 | 471.43 | 8,254.74 |

*Loyd L. Gainous #868614 AZ*

| | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| 73 | 12/15/2018 | 500.00 | 27.02 | 472.98 | 7,781.76 |
| 2018 Totals | | 6,000.00 | 425.05 | 5,574.95 | |
| 74 | 01/15/2019 | 500.00 | 25.48 | 474.52 | 7,307.24 |
| 75 | 02/15/2019 | 500.00 | 23.92 | 476.08 | 6,831.16 |
| 76 | 03/15/2019 | 500.00 | 22.36 | 477.64 | 6,353.52 |
| 77 | 04/15/2019 | 500.00 | 20.80 | 479.20 | 5,874.32 |
| 78 | 05/15/2019 | 500.00 | 19.23 | 480.77 | 5,393.55 |
| 79 | 06/15/2019 | 500.00 | 17.66 | 482.34 | 4,911.21 |
| 80 | 07/15/2019 | 500.00 | 16.08 | 483.92 | 4,427.29 |
| 81 | 08/15/2019 | 500.00 | 14.49 | 485.51 | 3,941.78 |
| 82 | 09/15/2019 | 500.00 | 12.90 | 487.10 | 3,454.68 |
| 83 | 10/15/2019 | 500.00 | 11.31 | 488.69 | 2,965.99 |
| 84 | 11/15/2019 | 500.00 | 9.71 | 490.29 | 2,475.70 |
| 85 | 12/15/2019 | 500.00 | 8.10 | 491.90 | 1,983.80 |
| 2019 Totals | | 6,000.00 | 202.04 | 5,797.96 | |
| 86 | 01/15/2020 | 500.00 | 6.49 | 493.51 | 1,490.29 |
| 87 | 02/15/2020 | 500.00 | 4.88 | 495.12 | 995.17 |
| 88 | 03/15/2020 | 500.00 | 3.26 | 496.74 | 498.43 |
| 89 | 04/15/2020 | 500.00 | 1.57 | 498.43 | 0.00 |
| 2020 Totals | | 2,000.00 | 16.20 | 1,983.80 | |
| Grand Totals | | 44,500.00 | 5,928.43 | 38,571.57 | |

Loyd L. Gainous #868614 AZ

*Last interest amount decreased by 0.06 due to rounding.*



# Tab 5

Petition

1  BEAUGUREAU, HANCOCK,
   STOLL & SCHWARTZ, P.C.
2  302 East Coronado Road
   Phoenix, Arizona 85004
3  (602) 956-4438
   firm@bhsslaw.com
4
   Amy Schwartz (#005558)
5  Shimin Luo (#022570)
   Attorneys for Applicant Ash Square Funding, LLC



6

7              IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

8                 IN AND FOR THE COUNTY OF PIMA

9                                    )   No.   C20 120583
                                     )
10 In Re: Approval of Transfer of Structured   )   **APPLICATION FOR COURT**
   Settlement Payment Rights by LOYD GAINOUS, )  **APPROVAL OF A TRANSFER OF**
11 JR., Transferor, to ASH SQUARE FUNDING,    )  **STRUCTURED SETTLEMENT**
   LLC, a Delaware Corporation, Transferee,   )  **PAYMENT RIGHTS**
12                                   )
                Applicants.          )   (A.R.S. §12-2901 *et seq.*)
13                                   )
                                     )
   _____)
14

15         COMES NOW Ash Square Funding, LLC, (hereafter, "Ash Square") by and through its

16 attorneys Beaugureau, Hancock, Stoll & Schwartz, P.C., pursuant to the Arizona Structured

17 Settlement Transfer Act, A.R.S. §12-2901 *et seq.* (hereafter, "the Act"), and states as follows:

18         1.      Transferor, Loyd Gainous, Jr. ("Gainous") is an adult individual, whose address is

19 5803 South Herpa Drive, Tucson, Arizona 85706.

20         2.      Gainous was involved in a personal injury matter, which was resolved by a

21 settlement agreement by the personal injury defendant's purchase of an annuity providing for the

22 payment of certain periodic settlement payments. (Annuity Contract, attached hereto as Exhibit

23 "A.")

24

Doc 126990

3.    The structured settlement annuity issuer is:

New York Life Insurance Company
51 Madison Avenue, Room 3003
New York, NY 10010

4.    The structured settlement obligor is:

New York Life Insurance and Annuity Corporation
51 Madison Avenue, Room 3003
New York, NY 10010

5.    Transferor and Ash Square have entered into a contract for the sale of the following portion of Transferor's Structured Settlement Payments: monthly payments of $500.00, commencing on November 15, 2012, through and including April 15, 2020 (the "Assigned Payments"), in exchange for a net purchase price of $26,000.00, payable by Woodbridge to Gainous. A true and correct copy of the "Structured Settlement Annuity Sale and Assignment Agreement" ("Transfer Agreement") for said purchases is attached hereto as Exhibit "B".

6.    A.R.S. §12-2901 *et seq.* establishes conditions and procedures for the transfer of structured settlements, and approval by the Court of such transfers.

7.    Ash Square provided Gainous with a copy of the Disclosure Statement required by A.R.S. §12-2902(B)(2); and a copy of the Disclosure Statement required by the laws of the State of New York, the domicile of the Annuity Issuer and Obligor, collectively attached hereto as Exhibit "C," and fully incorporated by reference herein, more than three days before he signed the Transfer Agreement.

8.    Gainous has no dependents. (Statement of Dependents, attached hereto as Exhibit "D.")

9.    The transfer is in the best interests of Gainous for the reasons set forth in his Payee Declaration. (Payee's Declaration, attached hereto as Exhibit "E.")

2

10.     Gainous has been advised by Ash Square to seek independent professional advice regarding the Payee's transfer, and has waived such advice in writing. (Statement of Professional Representation, attached hereto as Exhibit "F.")

11.     The transfer of Gainous' structured settlement payments complies with the requirements of A.R.S. §12-2901 *et seq.*, and would not contravene any applicable law or statute or the order of any court or other government authority. (Transferee's Declaration, attached hereto as Exhibit "G.")

12.     Pursuant to A.R.S. §12-2904(C), the Transfer Agreement provides, in Paragraph 4.8, that any disputes under the Transfer Agreement shall be determined in and under the laws of the State of Arizona.

13.     Venue is appropriate in Pima County pursuant to A.R.S. §12-2903.

14.     The Payee and Transferee Declarations required by Rule 70.1 of the Arizona Rules of Civil Procedure are attached hereto as Exhibits "E" and "G," respectively.

WHEREFORE, Ash Square Funding, LLC, hereby respectfully moves this Court to schedule a hearing in accordance with A.R.S. §12-2903; and to thereafter enter an order approving the "Structured Settlement Annuity Sale and Assignment Agreement," attached hereto, based upon its findings as required under the Act.

DATED this _10_ day of September, 2012.

BEAUGUREAU, HANCOCK,
STOLL & SCHWARTZ, P.C.


By: _Amy Schwartz_
Amy Schwartz, Esq.
Shimin Luo, Esq.
302 East Coronado Road
Phoenix, Arizona 85004
Attorneys for Ash Square Funding, LLC

3



**EXHIBIT "A"**

POLICY NUMBER:    FP207762

PAYEE:        LOYD GAINOUS, JR.

BENEFICIARY:  AS STATED IN THE APPLICATION AND SUBJECT TO THE PROVISIONS
              OF THIS POLICY

PLAN:         LIFE ANNUITY - 20 YEARS GUARANTEED

AMOUNT:       ANNUITY PAYMENTS OF $6,136.00 MONTHLY,
              BEGINNING MAY 15, 2000.
              PAYABLE WHILE THE ANNUITANT IS LIVING, OR UNTIL AT LEAST
              240 SUCH PAYMENTS (THE GUARANTEED PAYMENTS) HAVE BEEN MADE.

PAGE 2A.01

POLICY DATA   NEW YORK LIFE INSURANCE COMPANY

EXHIBIT "B"

## STRUCTURED SETTLEMENT ANNUITY
## SALE AND ASSIGNMENT AGREEMENT

THIS STRUCTURED SETTLEMENT ANNUITY SALE AND ASSIGNMENT AGREEMENT dated as of the 31st day of August, 2012 is entered into

BETWEEN:

> **LOYD L. GAINOUS, JR.**
> An individual residing in the State of Arizona
> (hereinafter called the "Seller")

OF THE FIRST PART

-and-

> **ASH SQUARE FUNDING, LLC**
> A limited liability company pursuant to the laws
> of Delaware (hereinafter called "Buyer")

OF THE SECOND PART

WITNESSES THAT in consideration of the premises, the mutual covenants and agreements herein contained and other good and valuable consideration (the receipt and sufficiency of which each party hereto irrevocably acknowledges), the parties agree as follows:

### SECTION ONE

### PURCHASE AND SALE OF ANNUITY

1.1     Agreement to Sell and Buy.  Subject to the terms and conditions set forth in this Structured Settlement Annuity Sale and Assignment Agreement and schedules hereto, which form an integral part of this agreement (collectively referred to as the "Agreement"), Seller hereby agrees to sell, transfer, deliver and irrevocably assign to Buyer and Buyer's successors and assigns at Closing (as hereinafter defined), and Buyer hereby agrees to buy from Seller, all of Seller's right, title and interest in (a) certain payments arising out of an agreement or order to settle a personal injury damage claim (such agreement or order, the "Settlement Agreement"), to which Seller is a party and the payment obligations under which have been assigned to the Annuity Owner, as defined in the Terms Rider attached as Schedule "A" hereto, which said payments are set out and more particularly defined in the Terms Rider (such payments are hereinafter collectively referred to as the "Assigned Payments"), (b) the Annuity (as defined in said Terms Rider) and (c) all Related Rights (as defined in Section 1.9 of this Agreement). Notwithstanding any references to the Annuity in this Agreement or any other provision of this Agreement to the contrary, the parties agree that the "Assigned Payments" and Related Rights hereunder shall include without limitation Seller's rights under the Settlement Agreement as against the Annuity Owner with respect to the payments identified on Schedule "A" and shall not be limited to Seller's rights under the Annuity.

1.2     Price and Terms of Payment.  The purchase price (hereinafter called the "Purchase Price") for the Assigned Payments is as set out in the Terms Rider. Buyer covenants and agrees to pay the Purchase Price on the Closing Date (as hereinafter defined in Section 1.3 hereof) to the

| _i_ _L_ _G.7_
Initials

Seller in immediately available funds by wire transfer, bank draft or certified check, at Buyer's discretion. Should any payment from the Assigned Payments be received by the Seller prior to the Closing Date then Seller shall have the right to keep said payment(s) and the Purchase Price shall be reduced by the amount of any such payment(s).

> (a)   Holdbacks. (a) If the Periodic Payments are monthly payments, at Closing, Buyer shall have the right, but not the obligation, to hold back from the Purchase Price an amount equal to the next three (3) Periodic Payments due Seller. Once a payment has been received by Buyer directly from Annuity Owner or Annuity Issuer, Purchaser will release the balance of the held amounts to Seller, without interest, less an amount equal to the sum of all Periodic Payments received by Seller after the Closing Date."

1.3   Closing.        The closing of the within transaction shall occur on the fifth (5th) business day following the date on which the last of the conditions precedent set forth in Section 2.1 has been satisfied (hereinafter referred to as the "Closing Date). The closing shall take place at the Closing Place as stipulated in the Terms Rider or at such other location agreed upon in writing by Buyer and Seller. At any time prior to the Closing Date Buyer shall have the sole and absolute discretion to cancel this Agreement without further obligation to Seller if (i.) Seller defaults in respect of his obligations hereunder; or (ii) otherwise in accordance with the Agreement. Further, should any of the conditions precedent remain unsatisfied by the Conditions Date as set out in the Terms Rider then Buyer shall have the sole and absolute right to cancel this Agreement at any time thereafter without further obligation of Buyer to Seller.

1.4   Delivery of Assigned Payments.

> (a)   Seller shall deliver or cause to be delivered and assign, and Buyer shall accept, the Assigned Payments on the Closing Date.

> (b)   Seller covenants with Buyer that at the time of closing on the Closing Date title to the Assigned Payments will be good and marketable, free and clear of all claims, liens, mortgages or encumbrances of any kind or character.

1.5   Access to Documents.        From and after the date of this Agreement and up to the Closing Date, Buyer shall, on reasonable notice to Seller from time to time have access to all documents and information related to the Annuity and the Assigned Payments as well as all related or underlying agreements ("Documents") for purposes of reviewing same. When requested by Buyer, Seller shall deliver copies of the Documents to Buyer for Buyer's review and files, which Documents shall include but not be limited to (i.) a copy of the underlying settlement and release agreement/order under which Seller is entitled to receive the Assigned Payments; (ii) the Annuity contract(s); (iii) a qualified assignment and release if applicable; (iv) a structured settlement questionnaire (to be provided by Buyer and executed by Seller); (v) a statement of legal representation; (vi) a W-9 tax form; (vii) proof of Seller's age of majority and other valid government-issued personal identification; (viii) Seller's most recent federal and state income tax returns; (ix) and such other documents and information as Buyer may reasonably request depending on the personal situation of the Seller.


Initials

1.6    Disclosure Statement.    Seller acknowledges receipt of a disclosure statement ("Disclosure Statement") setting out various information regarding this transaction.

1.7    Irrevocable Power of Attorney.

(a)    With respect only to the Assigned Payments, Seller constitutes and irrevocably appoints Buyer or Buyer's successor or assign the true and lawful attorney for Seller and for Buyer's use and benefit to accept, sign, endorse, negotiate and/or transfer without restriction, in Seller's name and on Seller's behalf, all checks, drafts, promissory notes, or other instruments, payable to Seller's order, or which may require Seller's endorsement, and received pursuant to the Assigned Payments.

(b)    This power of attorney shall be irrevocable until such time as Buyer has received all Assigned Payments to which it is entitled pursuant to the Agreement and shall not be affected by the death or disability of the principal.

(c)    With respect only to any promissory note given to Buyer by Seller in connection with this transaction, Seller grants Buyer the right to contact any financial institution in which Seller maintains any funds (a "Bank Account") to enforce the applicable provisions of the Agreement, such enforcement to be construed as a set-off against any and all obligations owed by seller to buyer under any promissory note given to Buyer by Seller. Seller hereby authorizes Buyer to record all appropriate UCC financing statements or other lien document on Seller's behalf against any such Bank Account.

1.8    Designation of Beneficiary. Seller designates Buyer as Seller's beneficiary to the Assigned Payments. Seller agrees to execute such additional beneficiary designation form as may be required by the owner of the Annuity and/or the issuer of the Annuity to carry out the intent of this Section 1.8.

1.9    Grant of Security Interest.    Seller hereby grants Buyer a first-priority, perfected and continuing security interest in all of Seller's right, title and interest in, to and under the Assigned Payments and the Related Rights (collectively, the "Collateral"). The term "Related Rights" as used in this Agreement means: (i) all payments in respect of the Assigned Payments; (ii) any underlying settlement and assignment documents or other ancillary documentation related to the Assigned Payments; (iii) all liens and property purporting to secure payment of the Assigned Payments; (iv) all rights of Seller under any insurance policy with respect to the Assigned Payments (and all proceeds and premium refunds thereof); (v) all guaranties, indemnities, warranties, financing statements and other agreements or arrangements of whatever character from time to time supporting or securing payment of the Assigned Payments; and (vi) all proceeds of and rights to enforcement with respect to any of the forgoing. All of the Collateral shall secure payment and performance of all of Seller's obligations at any time owing to Buyer, fixed or contingent, arising under this Agreement or by operation of law or otherwise. Upon the request of the Buyer, Seller shall furnish to Buyer such documents, financing statements and endorsements as Buyer may require to perfect its security interest in the Collateral.

Initials

1.10   Authorization to File Financing Statements. Seller hereby authorizes Buyer, without notice to or further assent by Seller, to file such UCC financing statements and/or amendments thereto with respect to the Collateral as Buyer deems necessary in order to perfect Buyer's security interest therein.

**SECTION TWO**

**CONDITIONS OF CLOSING, INSPECTION AND WARRANTIES**

2.1   Conditions Precedent. The following conditions precedent have been inserted for the benefit of Buyer and may be waived in whole or in part by Buyer in writing at any time at Buyer's sole discretion. It shall be a condition precedent to Buyer's obligation to complete the within transaction that at the time of closing on the Closing Date:

(a)   The Annuity and Assigned Payments shall be free and clear of all claims, Adverse Claims (as defined in Section 2.2 hereof), liens, mortgages, and encumbrances of any kind or character;

(b)   All necessary final and non-appealable court orders issued by courts of competent jurisdiction shall have been obtained by Buyer at Buyer's cost and expense with the cooperation of Seller in a form acceptable to Buyer approving the nature and particulars of the within transaction and directing that the Annuity Issuer recognize the sale and assignment of the Assigned Payments to Buyer or Buyer's successors and assigns as directed by Buyer without reduction or set off and receipt by Buyer of said court order(s), certified to be a true and complete copy by an officer or clerk of the court or filed in the court issuing such order (hereinafter referred to as "Court Order");

(c)   Seller shall have caused to be terminated any UCC financing statement that purports to record a security interest in the Assigned Payments in favor of any secured party other than Buyer;

(d)   Seller shall have provided all documents and information requested by Buyer contemplated in Section 1.5 hereof;

(e)   Buyer shall have received a written acknowledgment from the Annuity issuer in a form satisfactory to Buyer, acting reasonably, confirming that Seller is entitled to the Assigned Payments in the amount and manner described in the Terms Rider and acknowledging the Annuity Issuer's unqualified agreement to make all of the Assigned Payments to Buyer or Buyer's named successors and assigns in accordance with the Agreement and the Terms Rider and as directed precisely in accordance with the court order(s);

(f)   Buyer shall have received the final results of its Inspections, including but not limited to credit and other searches;

(g)   Seller has performed all of his obligations under the Agreement.

| L L G J |
|---|
| Initials |

(h)   If the Assigned Payments are life contingent, then the procurement of all necessary life insurance policies and documents and the transfer of any or all of the life insurance policies to Buyer and/or its assignee(s) prior to closing.

2.2   Inspection.   Buyer shall have the right to conduct one or more inspections ("Inspections") to enable it to determine whether there was filed any liens on, judgments against, or any adverse claim against the Seller and the Annuity (collectively referred to as "Adverse Claims"). Buyer, in its sole discretion, shall be entitled to discharge any Adverse Claims prior to or at the time of closing on the Closing Date by paying such amount or amounts necessary to so satisfy such Adverse Claims. In such case, the Purchase Price shall be automatically reduced by the amount of any such payments. If an undisclosed Adverse Claim affecting the Assigned Payments arises or is discovered after the Purchase Price is paid to Seller, Seller does indemnify Buyer and hold Buyer harmless from any and all resulting losses, shortfalls, or other encumbrances.

2.3   Warranties of Seller.   Seller represents and warrants that:

(a)   The Agreement, when executed and delivered by Seller, will constitute a legal, valid and binding obligation of Seller, enforceable in accordance with its terms;

(b)   Seller is the holder of the entire right, title and interest in and to the Assigned Payments and has full power and authority to enter into and perform all of Seller's obligations under the Agreement, without obtaining the consent of any third party to do so. In that regard, Seller has and will at the time of closing on the Closing Date have full power and lawful authority to transfer title to the Assigned Payments to Buyer or to cause title to the Assigned Payments to be transferred to Buyer;

(c)   Seller is entitled to the Assigned Payments, free and clear of any right, interest, lien, charge, encumbrance, or other claim of any other person or entity. There are no suits or proceedings pending or threatened against or affecting the Seller or the Assigned Payments which are likely to have a material adverse effect on Seller's ability to perform its obligations hereunder;

(d)   The Annuity (including the Assigned Payments) has not been obtained or created in any fashion which would violate any state, federal or local law, and there are no legal or equitable defenses to the payment of said Annuity to Seller;

(e)   Seller has paid all federal, state and local taxes owing through and including the date of execution of the Agreement, or has made or will make adequate provisions thereof;

(f)   Seller is not now in arrears or in default to any present or former spouse for support, maintenance or similar obligations nor is Seller indebted to any child for any child support or similar payment;

Initials

(g)     The Assigned Payments, is not subject to any lien by any governmental agency to which benefits such as student loans, food stamp benefits or low income energy assistance benefits are owed;

(h)     Seller has never been known by any name(s) other than those set forth herein;

(i)     Seller's tax identification number is as set out in the Terms Rider;

(j)     The description of the Assigned Payments set forth in the Terms Rider is true and correct;

(k)     Seller has been independently advised and represented by counsel of choice throughout the negotiation of the Agreement or has knowingly waived such advice.  Seller has relied solely on the advice of Seller's counsel and other advisors with respect to the legal, tax and financial implications of this transaction and has not relied on Buyer's advice or the advice of Buyer's advisors and/or counsel;

(l)     Seller wishes to obtain "upfront" cash rather than wait for a series of smaller scheduled payments in the future.  Seller has considered other means of raising cash but after weighing options has determined that selling the Assigned Payments to Buyer would be in the best interest of the Seller;

(m)     Seller has not previously assigned, pledged or otherwise encumbered any portion of the Assigned Payments;

(n)     Seller has never voluntarily filed for bankruptcy or been subject to an involuntary bankruptcy proceeding or *if so has had such bankruptcy proceedings discharged or dismissed;*

(o)     Seller has not entered into this transaction for the purpose of evading creditors;

(p)     Seller shall immediately advise Buyer in writing in the event Seller changes his address of residency;

(q)     Seller is an adult of sound mind, not acting under duress or the influence of alcohol or other drugs; and

(r)     The facts set forth by Seller in the Agreement and all Schedules attached hereto are true and complete and do not omit to disclose anything as a result of which those statements are incomplete, false or misleading.

2.4     <u>Indemnification.</u>     Seller agrees to hold harmless, defend and indemnify Buyer against all claims, losses, damages or expenses, including attorney fees, which Buyer might incur as a result of any breach or failure of any representation or warranty contained in Section 2.3 hereof or as a result of any breach of any term or provision of the Agreement.


Initials

## SECTION THREE

## DEFAULT

3.1    Default by Buyer.    In the event that Buyer shall fail to perform or observe any covenant or agreement to be performed or observed by it under the Agreement in a timely manner, Seller may at its option, and in addition to any other remedies available to it in law (including the UCC) or equity, declare Buyer to be in default under the Agreement by written notice to such effect given to Buyer and, at any time thereafter, Seller may declare the Agreement to be at an end.

3.2    Default by Seller.    In the event that Seller shall fail to perform, observe, or honor any covenant or agreement in a timely manner or be in breach of any representation or warranty hereunder, Buyer may at its option, and in addition to any other remedies available to it in law (including the UCC) or equity, declare Seller to be in default under the Agreement by written notice to such effect given to Seller and, at any time thereafter, Buyer may declare the Agreement to be at an end.

3.3    Statutory Exception.    Notwithstanding anything else contained in this Section 3, in the event that the transfer of the Assigned Payment fails to satisfy the conditions set forth in Chapter 20 of Title 12 of the Arizona Statutes, or any amendments thereto, the Seller shall not incur any penalty or other liability to Buyer.

3.4    Remedies.    Buyer may, in addition to any other remedies provided herein or at law, bring action at law or equity to exercise any one or more of the following remedies: (i) enforce performance of the defaulted provision, (ii) recover damages for breach thereof, along with its attorney fees and disbursements and other expenses of enforcing its rights hereunder to the extent disclosed to Seller in the Disclosure Statement.

## SECTION FOUR

## MISCELLANEOUS

4.1    Entire Agreement.    The Agreement (together with the schedules attached hereto) represents the entire agreement between the parties and supersedes and cancels any prior negotiations, oral or written agreements, letter or intent or understanding related to the subject matter hereof.

4.2    Counterparts.    The Agreement may be executed in several counterparts, and all so executed shall constitute on agreement, binding on both of the parties hereto, even though both parties are not signatories to the original or the same counterpart.  Any counterpart of the Agreement that has attached to it separate signature pages, which altogether contain the signatures of both of the parties hereto, shall for all purposes be deemed a fully executed instrument.  Each party to the Agreement agrees that (i. ) it/he will be bound by its own telecopied signature, (ii) it/he accepts the telecopied signature of the other parties to the Agreement and (iii) it/he will promptly deliver an original signature page to the other party.

| LLG
Initials

4.3   Amendments. No provision of the Agreement may be amended, modified or waived except by written agreement duly executed by each of the parties hereto.

4.4   No Rule of Construction.   The parties acknowledge that the Agreement was initially prepared by Buyer but Seller and Buyer have read and fully negotiated all of the language used herein.   The parties acknowledge and agree that because Seller and Buyer participated in negotiating and drafting the Agreement, no rule of construction shall apply to the Agreement which construes any language, whether ambiguous, unclear, or otherwise, in favor of or against either Seller or Buyer.

4.5   Severability.   Wherever possible, each provision of the Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any such provision shall be prohibited by or be invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of the Agreement.

4.6   Waiver.   The waiver or modification by a party of performance or breach of any provision of the Agreement shall not operate or be construed as a waiver of any subsequent or other performance or breach thereof.

4.7   Survival of Obligations. The representations, warranties, agreements, acknowledgments, waivers and disclaimers made or contained in the Agreement shall not merge in but survive the Closing Date and the consummation of the transaction contemplated by the Agreement, and shall remain in full force and effect until the expiration of any applicable statute of limitations.

4.8   Governing Law.   The Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of Arizona and U.S. Federal law to the extent applicable. In the event of a dispute, the parties agree to attorn to the courts in the State of the Seller's domicile. The domicile state of the Seller is the proper venue to bring any cause of action arising out of the Agreement.

4.9   Headings.   Section headings herein are used for convenience only and shall not otherwise affect the provision of the Agreement nor the interpretation hereof.

4.10   Assignment.   Buyer may, on written notice to Seller at any time prior to the Closing Date or thereafter assign the Agreement to Buyer's successors or assigns provided that Buyer shall remain liable to Seller for all of Buyer's obligations hereunder.  Seller shall not assign any of its rights or obligations under the Agreement.

4.11   Expenses.   Except as otherwise expressly stated in the Agreement, each party shall be responsible for paying its own fees and expenses (including attorney's fees) incurred in the negotiation of the Agreement and the documentation contemplated hereby and the closing of the within transaction.

_____
Initials

4.12   Legal Fees.   In the event that a dispute arises between the parties that results in litigation including any appeals, the prevailing party shall be entitled to be fully reimbursed by the unsuccessful party for its/his legal costs and other expenses including attorney's fees on a solicitor and client scale in addition to any award granted.

4.13   Waiver of Jury Trial. Both parties to the Agreement hereby waive the right to trial by jury in any action or proceeding instituted with respect to the Agreement.

4.14   Notices.     All notices, consents, requests, instructions, approvals and other communications (hereinafter collectively called "Communications") provided for in the Agreement or given or made in connection with the transaction hereby contemplated shall be given, made or served in writing and shall be delivered by hand (which shall include courier delivery) or by facsimile transmission as follows:

(a) if to Seller, to the Seller's Notice Address as set out in the Terms Rider.

(b) if to Buyer:

   c/o Ash Square Funding, LLC
     14225 Ventura Blvd, Suite 100
     Sherman Oaks, CA 91423
     Attention: Mr. Robert Shapiro
     Fax No: 866-452-4499

Or such other address or fax number as either party may from time to time notify the other in accordance with this Section 4.14.   All Communications made or given by delivery in accordance with the foregoing shall be conclusively deemed to have been given at the time of actual delivery thereof or, if made or given by facsimile transmission in accordance with the foregoing, shall be conclusively deemed to have been given at the time of transmittal.

4.15   Right of First Refusal.     In consideration for the time and expense incurred by Buyer in preparing these and related documents and conducting investigations relating to the Seller and Annuity and subject to Seller's obligation to convey to Buyer the Assigned Payments for the Purchase Price specified herein Seller agrees that for 60 months following the date hereof Seller shall not sell, assign, borrow against, pledge, or otherwise encumber any one or more of the Annuity payments without first (i) obtaining a written offer or proposal containing all material terms ("Offer"); (ii) giving Buyer a copy of the written Offer and if, within thirty (30) days of receiving a copy of the Offer, Buyer informs Seller that it elects to match the terms of the Offer, then Seller shall be obligated to execute all documents necessary to consummate such transaction with Buyer on those terms.  Seller grants Buyer a security interest in all of Seller's Annuity payments to the extent of Buyer's right of first refusal contained herein.  The foregoing right of first refusal shall survive the exercise of any right of cancellation or rescission that Seller or Buyer may have under the Agreement or applicable law.

4.16   Further Acts.  Seller shall do, make, execute, and deliver any and all such additional and further acts, assignments, assurances, and instruments as Buyer or Buyer's assigns may reasonably request for the purpose of completely vesting in Buyer or its Assigns, as the case may be, the rights assigned hereunder.

Initials

9 of 10

4.17    UCC Definition.    As used in this Agreement, "UCC" shall mean the Uniform Commercial Code as the same may, from time to time, be in effect in the state where Seller resides (the "State"); provided, however, in the event that, by reason of mandatory provisions of law, any or all of the attachment, perfection or priority of Buyer's security interest in any Collateral is governed by the Uniform Commercial Code as in effect in a jurisdiction other than the State, the term "UCC" shall mean the Uniform Commercial code in effect in such other jurisdiction for purposes of the provisions hereof relating to such attachment, perfection or priority and for purposes of definitions related to such provisions.

IN WITNESS WHEREOF the parties have executed the Agreement as of the date first above written.

ASH SQUARE FUNDING, LLC

By: _____
Name: James A. Klohn
Title:   Vice President


_____
Date


SELLER

_____
Loyd L. Gainous, Jr.


_____
Date


Sworn to before me this

STATE OF _____    6th day of September, 2012 by
COUNTY OF _____    Loyd L. Gainous, Jr.

_____ Notary Public

SUSAN WOOD
Notary Public - Arizona
Pima County
My Comm. Expires Aug 16, 2014

_____
Initials

## SCHEDULE "A"

## TERMS RIDER TO STRUCTURED SETTLEMENT ANNUITY
## SALE AND ASSIGNMENT AGREEMENT

Name of Seller:        Loyd L. Gainous, Jr.

Seller's current address / Notice Address:

Seller's immediate prior address:

Seller's social security number:

Seller's tax identification number (if different from above):

Seller's spouse's name:

Seller's dependents' names and respective ages:

Contingent Payee/Beneficiary:

Name of Annuity Holder:

Annuity Policy Number:

Date of Annuity Policy:

Assigned Payments description:

Purchase Price:


SELLER:


Loyd L Gainous                    Witness: Gregory Gainous
Loyd L. Gainous, Jr.

ASH SQUARE FUNDING, LLC

Per: _____

Name: James A. Klohn
Title:  Vice President


_____                                 11 of 10
Initials

*Please complete where indicated and sign*

### TERMS RIDER TO STRUCTURED SETTLEMENT ANNUITY
### SALE AND ASSIGNMENT AGREEMENT

Name of Seller:                                   Loyd L. Gainous, Jr.

Seller's current address / Notice Address:     5803 S Herpa Drive
                                                Tucson, AZ 85706

Seller's social security number:               ▮▮▮▮▮▮▮▮

Seller's spouse's name:                        *none*

Seller's dependents' names and respective ages:  *none*

Name of Annuity Issuer:                        *New York Ins. Co.*

Name of Annuity Owner:                         *New York Life Ins & Annuity Co.*

Annuity Policy Number:                         *LP 107767*

Date of Annuity Policy:                        *5-15-2000*

Payments Being Assigned:

Monthly payments in the amount of $500.00 commencing November 15, 2012 through and
including April 15, 2020.

Purchase Price:                    $26,000.00

SELLER:

*Loyd L Gainous Jr*
Loyd L. Gainous, Jr.


Ash Square Funding, LLC


Per: _____
Name: James A. Klohn
Title:  Vice President



**EXHIBIT "C"**

## DISCLOSURE STATEMENT
## ARIZONA

## DATE RECEIVED: AUGUST 28, 2012

## PAYEE: LOYD L. GAINOUS, JR.

This Disclosure Statement is being provided by Ash Square Funding, LLC ("Ash Square" or "Us") to Loyd L. Gainous, Jr., ("Payee" or "You") in connection with Payee's agreement to transfer and assign to Ash Square certain structured settlement payment rights due Payee.

    1.    Schedule of Payments Transferred. The Payee intends to assign, transfer or sell to Ash Square all of Payee's rights, title and interest in the following payments:

> Monthly payments in the amount of $500.00 commencing November 15, 2012 through and including April 15, 2020.

    2.    Aggregate Amount of Payments Transferred. The aggregate amount of payments to be transferred to Ash Square totals $45,000.00.

    3.    Discounted Present Value. The discounted present value of the aggregate payments transferred at 1.0% is $43,279.10. The discounted present value is the calculation of current value of the transferred structured settlement payments under federal standards for valuing annuities. THIS IS NOT THE RATE USED TO CALCULATE THE PURCHASE PRICE.

    4.    Calculation of Discounted Present Value. The discounted present value of payments shall be calculated as follows: The applicable federal rate used in calculating the discounted present value is 1.0%.

    5.    Gross Amount Payable. In exchange for these payments, the Payee will receive the gross amount of $26,000.00. Funding will not occur until everything necessary under the Structured Settlement Annuity Sale and Assignment Agreement has taken place.

6.  <u>Fees and Expenses.</u>  The Payee will be responsible for the following approximate commissions, charges, fees, expenses, and costs in connection with the closing of this transaction:

Legal Fees -       $     0.00
Processing Fees -  $     0.00

7.  <u>Net Amount Payable.</u>  The net amount payable to Payee after the deduction of all commissions, fees, costs, expenses and charges described in paragraph 6 of this disclosure is $26,000.00.

8.  <u>Right To Cancel.</u>  The Payee shall have the right to cancel the Structured Settlement Annuity Sale and Assignment Agreement, without penalty or further obligation, not later than the 3rd business day, after the Structured Settlement Annuity Sale and Assignment Agreement is signed by the Payee.

9.  <u>Penalty In The Event Of Breach Of Contract.</u>  The amount of any penalty and the aggregate amount of any liquidated damages (inclusive of penalties), payable to Ash Square, by the Payee in the event of the Payee's breach of the transfer agreement are NONE.

10.  <u>Independent Professional Advice.</u>  The Payee understands that Payee should consult with Payee's own attorney, certified public accountant, actuary, or other professional adviser concerning the legal, tax, and financial implications of a transfer of structured settlement payment rights, including the federal and state income tax consequences of a transfer if he/she or the Settlement Obligor/Issuer is domiciled in a State that requires the payee to receive such consultation.

I have read and understand everything set forth in this Disclosure Statement.

Loyd L Gainous Jr
Loyd L. Gainous, Jr.

[The remainder of this page intentionally left blank]

## DISCLOSURE STATEMENT PURSUANT TO
## NEW YORK LAW

### DATE RECEIVED: AUGUST 28, 2012

### PAYEE: LOYD L. GAINOUS, JR.

This Disclosure Statement is being provided by Ash Square Funding, LLC ("Ash Square" or "Us") to Loyd L. Gainous, Jr. ("Payee" or "You") in connection with Payee's agreement to transfer and assign to Ash Square certain structured settlement payment rights due Payee. This Disclosure Statement is being provided pursuant to New York Structured Settlement Protection Act, (the "New York Transfer Statute").

    1.    <u>Schedule of Payments Transferred</u>. The Payee intends to assign, transfer or sell to Ash Square all of Payee's right, title and interest in and to the following payments:

    Monthly payments in the amount of $500.00 commencing November 15, 2012 through and including April 15, 2020.

    2.    <u>Aggregate Amount of Payments Transferred</u>. The aggregate amount of payments to be transferred to Ash Square totals $45,000.00.

    3.    <u>Calculation of the Current Value of the Transferred Structured Settlement Payments under Federal Standards for Valuing Annuities</u>. The discounted present value of the payments transferred at 1.0% is $43,279.10. The discounted present value is the calculation of current value of the transferred structured settlement payments under federal standards for valuing annuities. THIS IS NOT THE RATE USED TO CALCULATE THE PURCHASE PRICE.

    4.    <u>Calculation of Discounted Present Value</u>. The discounted present value of payments shall be calculated as follows: The applicable federal rate used in calculating the discounted present value is 1.0%.

    5.    <u>Two (2) Price Quotes</u>. The following represents two quotes from two annuity issuers (other than the original Annuity Issuer that issued Payee's structured settlement payments). The quotes reflect the current cost of

purchasing a comparable annuity for the aggregate amount of payments to be transferred: <u>$41,755.36 from Presidential Life Insurance Company</u>; and <u>$43,336.52 from Symetra Life Insurance Company</u>. Two comparable annuity price quotes are used here, since a quote from the original Annuity issuer is not readily available

6.    <u>Gross Advance Amount.</u>  In exchange for these payments, the Payee will receive the gross amount of $26,000.00 which represents a nominal annual discount rate of 15.47% assuming monthly compounding and an assumed funding date of August 28, 2012.  Funding will not occur until everything necessary under the Structured Settlement Annuity Sale and Assignment Agreement has taken place.

7.    <u>Fees and Expenses.</u>  The Payee will be responsible for the following approximate commissions, charges, fees, expenses, and costs in connection with the closing of this transaction:

> Legal Fees -      $    0.00
> Processing Fees - $    0.00

8.    <u>Net Advance Amount</u>. The net cash payment the Payee will receive in this transaction from Ash Square, was determined by applying the specified discount rate to the amount of future payments received by Ash Square, less the total amount of commissions, fees, costs, expenses and charges payable by you. The net amount is $26,000.00.

9.    <u>Penalty In The Event Of Breach Of Contract.</u> The amount of any penalty and the aggregate amount of any liquidated damages (inclusive of penalties), payable to Ash Square, by the Payee in the event of the Payee's breach of the transfer agreement are NONE.

10.    <u>Right To Cancel.</u> The Payee shall have the right to cancel the Structured Settlement Annuity Sale and Assignment Agreement without penalty or further obligation not later than the third (3rd) business day after the date the Structured Settlement Annuity Sale and Assignment Agreement is signed by the Payee.

11.   **Independent Professional Advice.**   The Payee understands that the Payee should consult with the Payee's own attorney, certified public accountant, actuary or other licensed professional adviser regarding any federal and state income tax consequences arising from the proposed transfer of payments.

I have read and understand everything in this Disclosure Statement.

Loyd L. Gainous, Jr.

[The remainder of this page intentionally left blank]

3



**EXHIBIT "D"**

## DEPENDENTS OF LOYD L. GAINOUS, JR.

**"Dependents" include your spouse, minor children, and all other family members and other persons for whom you are legally obligated to provide support, including alimony.**

☒ I **HAVE NO** dependent(s)

## - OR -

☐ I **HAVE** dependent(s) as listed below

| Name | Relationship | Date of Birth | Age |
|------|--------------|---------------|-----|
|      |              |               |     |
|      |              |               |     |
|      |              |               |     |
|      |              |               |     |
|      |              |               |     |
|      |              |               |     |

*Loyd L Gainous Jr*
Loyd L. Gainous, Jr.

**EXHIBIT "E"**

**Payee's Declaration in Support of**

**Application to Transfer Structured Settlement Payment Rights**

I, Loyd Gainous Jr., the Payee, declare:

1.  **Payee's name, address and age:** Loyd Gainous Jr, 5803 S. Herpa Drive , Tucson, AZ , 85706, age 51

2.  **Marital Status:**

    __x___ Never Married; _____ Married; _____Separated; _____ Divorced

    If married or separated, name of spouse: _____.

3.  **Minor children and other dependents:**

    Names, ages, and places of residence: _____

    _____

    _____

4.  **Income:**

    (A)    Payee's monthly income and sources:_Social Security Benefits $987.00/month;  NY Life annuity $4,136.00/month

    _____

    (B)    If presently married, spouse's monthly income and sources:_____

    _____

5.  **Child support or Spousal Support:**

    Obligation to pay:    _____ Yes    __x___ No

    (A)    If yes, state the amount of the obligation, to whom payable, and whether there are arrearages: _____

    _____

    (B)    State the jurisdiction and name of the court that entered the order, the case number of the action in which the order was entered, the parties to such action, and the date when the order was entered: _____

    _____

    _____

6.     **Prior Orders:**

Are you, the Payee, are subject to any orders in any civil, probate, or criminal case which requires you, the Payee, to pay money to any person:

_____Yes    ___x____No

If yes, for each such order state (use attachment if necessary):

(A)     The amount of the obligation, to whom it is payable, and whether there are arrearages, and, if so, the amount: _____ _____

_____

_____.

(B)     The jurisdiction and name of the court that entered the order, the case number of the action in which the order was entered, the parties to such action, and the date when the order was entered: ___ _____ _____

_____

_____.

7.     **Previous transfer(s):**

Have you previously filed an application to any court or responsible administrative authority for approval of a transfer of payment rights under the structured settlement that is the subject of this application:

_x____ Yes _____ No

If yes, for each such application state (use attachment if necessary): see attached

(A)     The jurisdiction and name of the court or responsible administrative authority that considered the application, the case number of the action in which the application was submitted, the parties to such action, and the date when the application was filed: see attachment_____ _____

_____

_____

_____, and

(B)     Whether the application was approved or disapproved, the dated of the order approving or disapproving the transfer: _____ _____

_____

_____ _____and, if approved:

  (i)    State the name of the transferee and the payment amount(s) and due dates of the payments involved in the transfer: _____

_____

_____; and

  (ii)    State the amount of money you, the payee, received from the transferee for the transfer, if any, and the manner in which the money was used:_____

_____

_____

_____

_____.

**8.    Other transfers:**

Have you, the payee, ever transferred payment rights under the structured settlement without court approval or the approval of a responsible administrative authority:    _____ Yes    ___x___ No

If yes, for each such transfer state:

  (A)    The name of the transferee and the payment amount(s) and due dates of the payments involved in the transfer: _____

_____

_____ and;

  (B)    The amount of money you, the payee, received from the transferee for the transfer, if any, and the manner in which the money was used: _____

_____

_____.

**9.    Reasons for transfer:**

Describe in detail your reasons for the proposed transfer of payments rights and your plans for using the proceeds from the transfer: <u>pay off truck loan, replace home AC unit, replace wheelchair lift on auto and pay miscellaneous credit cards.</u>

10. **Payment of debts:**

If you intend to use the proceeds from the proposed transfer to pay debts, list the amount of such debt, the name and address of the creditor to whom it is owed, and, if applicable, the rate of interest which is accruing on such debt (use the back or bottom of this page if you need more space):

| Amount Owed | Creditor Name and Address | Interest Rate |
|---|---|---|
| $ 962.14 | HSBC Best Buy | |
| $ 4396.00 | Wells Fargo Auto Finance | 19.74% |
| $ | | |
| $ | | |
| $ | | |
| $ | | |
| $ | | |
| $ | | |
| $ | | |

I declare under penalty of perjury that the foregoing is true and correct.

_Loyd Gaines Jr_
Signature

_8-28-12_
Date

_Loyd Gaines Jr_
Printed Name

LOYD GAINOUS JR
History of Structured Settlement Payment Transfers

| Case Number | Purchasing Company | Filing Date | Payments Sold | Disposition and Judge | Disposition Date | Use of funds |
|---|---|---|---|---|---|---|
| C2011-4662 | Hazel Circle | 7/27/2011 | monthly payments of $500.00, commencing on September 15, 2011, through and including April 15, 2020 | Approved; Ted Borek | 8/29/2011 | Fix roof of 2nd house, purchase car for daughter, payoff credit card debt |
| C2010-4684 | Woodbridge | 6/16/2010 | Five Hundred and 00/100 Dollars per month from 8/15/2010-7/15/2018 | Approved; Kenneth Lee | 8/2/2010 | Pay off Credit Card Debt/become current on mortgage/home improvements |
| C2009-1715 | JG Wentworth | 3/10/2009 | $500 per month from 12/15/09 to 11/15/18; amount received $ | Approved; Kenneth Lee | 4/17/2009 | Pay off Credit Card Debt |
| C2008-5047 | Seneca One | 7/23/2008 | $636.00 per month from 5/15/09 to 4/15/2020; net $29575.21 | Denied Leslie Miller | 7/29/2009 | More renovations to home |
| C2007-4212 | Seneca One | 7/27/2007 | One lump sum of $150,000.00 on 3/28/2015; net $47,097.65 | Approved; Leslie Miller | 9/17/2007 | Renovation to home |
| C2005-2781 | Peachtree | 5/18/2005 | One lump sum of $100,000.00 on 3/28/2010 and one lump soum of $200,000.00 on 3/28/2020; net $52,903.66 | Approved; Leslie Miller | 6/27/2005 | Complete building home |
| C2004-2006 | Peachtree | 4/13/2004 | One lumpsum of $50,000.00 on 3/28/2005; net $41,291.14 | Approved; Michael Alfred | 6/1/2004 | Make home handicap accessible |

**EXHIBIT "F"**

*Please complete and sign.*

## STATEMENT OF PROFESSIONAL REPRESENTATION

☑ I HAVE BEEN ADVISED BY ASH SQUARE FUNDING, LLC, THAT I SHOULD OBTAIN INDEPENDENT PROFESSIONAL REPRESENTATION CONCERNING THE LEGAL, TAX AND FINANCIAL IMPLICATIONS OF THIS TRANSACTION, BUT I FULLY UNDERSTAND THE AGREEMENT AND THE EFFECTS OF THE TRANSACTION AND I <u>DO NOT WISH TO SEEK OUT</u> SUCH INDEPENDENT PROFESSIONAL REPRESENTATION.

# OR

☐ I HAVE OBTAINED INDEPENDENT REPRESENTATION & I FULLY UNDERSTAND THE LEGAL, TAX AND FINANCIAL IMPLICATIONS OF THE TRANSACTION STIPULATED IN THE STRUCTURED SETTLEMENT ANNUITY SALE AND ASSIGNMENT AGREEMENT AND THE RELATED DOCUMENTS. THE NAME OF MY PROFESSIONAL ADVISOR IS SET FORTH BELOW:

*To Be Completed By Certified Professional Advisor*

Name of Professional: _____

Phone Number: (___) _____

Address: _____

_____

Type of Professional:

☐ Attorney

☐ Certified Public Accountant

☐ Certified Financial Advisor
   Designation: _____

*I have provided independent professional advice to Loyd L. Gainous, Jr. in respect of the Sale and Assignment Agreement with Ash Square Funding, LLC and the transaction contemplated thereby.*

_____                    ___/___/___
Professional's Signature                 Date

**Acknowledged by:**

Loyd L Gainous Jr
**Loyd L. Gainous, Jr.**

**EXHIBIT "G"**

Transferee's Declaration in Support of

Application to Transfer Structured Settlement Payment Rights

I, James A Klohn, declare:

1.    After making reasonable inquiry, I am not aware of any prior transfers of structured settlement payment rights by the Payee, Loyd L. Gainous Jr., other than those disclosed in Payee's Declaration in support of Application.

2.    The Transferee has complied with its obligations under A.R.S. §12-2901, *et seq.*.

3.    To the best of Transferee's knowledge after making reasonable inquiry, the proposed transfer would not contravene any applicable law, statute, or the order of any court or other government authority.

I declare, under penalty of perjury, that the foregoing is true and correct.

Dated this _____ day of _____, 2012 .

_____

James A Klohn, Vice President

Ash Square Funding LLC.

# Tab 6

Notice of Hearing

BEAUGUREAU, HANCOCK,
STOLL & SCHWARTZ, P.C.
302 East Coronado Road
Phoenix, Arizona 85004
(602) 956-4438
firm@bhsslaw.com

Amy Schwartz (#005558)
Shimin Luo (#022570)
Attorneys for Plaintiff Ash Square Funding, LLC

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF PIMA

|  |  |
|---|---|
| In Re: Approval of Transfer of Structured Settlement Payment Rights by LOYD GAINOUS, JR., Transferor, to ASH SQUARE FUNDING, LLC, a Delaware Corporation, Transferee, <br><br> Applicants. | No. C20125583 <br><br> **NOTICE OF PROPOSED TRANSFER OF STRUCTURED SETTLEMENT PAYMENT RIGHTS PURSUANT TO A.R.S. §12-2901 *et seq.*** <br><br> (Assigned to the Hon. Jan Kearney) |

COMES NOW Ash Square Funding, LLC, (hereafter, "Ash Square,") Transferee, (hereafter, "Ash Square") by and through its attorneys Beaugureau, Hancock, Stoll & Schwartz, P.C., upon its "Application for Court Approval of a Transfer of Structured Settlement Payment Rights" pursuant to Arizona Structured Settlement Transfer Act, A.R.S. §12-2901 *et seq.* (hereafter, "the Act"), and hereby notifies the interested parties that a hearing will be held *on October 22, 2012 at 10:30 a.m.*, the Honorable Jan Kearney presiding, Pima County Superior Court, at 110 West Congress Street, Tucson, Arizona 85701, for the purpose of determining why said Application should not be granted pursuant to A.R.S. §12-2901 *et seq.*

NOTICE: Attached hereto are:

1.   Application for Transfer of Structured Settlement Payment Rights, including:

   a.    Copy of Transfer Agreement;

   b.    Copy of Disclosure Statement Required under A.R.S. §12-2902; and

   c.    List of Dependents of Loyd Gainous, Jr.

Any interested party is entitled to support, oppose or otherwise respond to the Application, either in person or by counsel, by submitting written comments to the Court or other responsible administrative authority or by participating in the hearing. Any written responses to the Application must be filed with this court in order to be considered by it. An interested party has at least fifteen days after service of this Notice in which to respond.

DATED this ___ 25th day of September, 2012.

BEAUGUREAU, HANCOCK,
STOLL & SCHWARTZ, PC

By:_____
     Amy Schwartz
     Shimin Luo
     302 East Coronado Road
     Phoenix, Arizona 85004
     Attorneys for Plaintiff Ash Square, LLC

COPY of the foregoing delivered via
First class mail this 25 day of September, 2012, to:

The Honorable Jan Kearney
Pima County Superior Court
110 West Congress Street
Tucson, Arizona 85701

2

1

COPY of the foregoing sent via certified
mail this 25 day of September, 2012, to:

2

New York Life Insurance Company
51 Madison Avenue, Room 3003
New York, NY 10010

3

4

New York Life Insurance and Annuity Corporation
51 Madison Avenue, Room 3003
New York, NY 10010

5

6

COPY of the foregoing sent via certified and
first class mail this 25 day of September, 2012, to:

7

8

Loyd Gainous, Jr.
5803 South Herpa Drive
Tucson, Arizona 85706

9

10

By: _____
       Marla K. Halligan

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

3



# Tab 7

Certificate of Service

1  BEAUGUREAU, HANCOCK,
   STOLL & SCHWARTZ, P.C.
2  302 East Coronado Road
   Phoenix, Arizona 85004
3  (602) 956-4438
   firm@bhsslaw.com
4

5  Amy Schwartz (#005558)
   Shimin Luo (#022570)
6  Attorneys for Plaintiff Ash Square Funding, LLC

7

8              IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

9                 IN AND FOR THE COUNTY OF PIMA

10

11 In Re: Approval of Transfer of Structured    )    No. C20125583
   Settlement Payment Rights by LOYD GAINOUS,   )
12 JR., Transferor, to ASH SQUARE FUNDING,      )    **NOTICE OF FILING PROOFS OF**
   LLC, a Delaware Corporation, Transferee,     )    **SERVICE**
13                                              )
                    .  ..Applicants.           )    (Assigned to the Hon. Jan Kearney)
14                                              )
                                                )
15 _____ )

16
              NOTICE IS HEREBY GIVEN that Applicant Ash Square Funding, LLC, herewith files
17
   copies of the proofs of service of the Notice of Proposed Transfer.
18
              DATED this _9_ day of October, 2012.
19

20                              BEAUGUREAU, HANCOCK,
                                STOLL & SCHWARTZ, PC
21

22                              By: _Amy Schwartz_____
23                                 Amy Schwartz
                                   Shimin Luo
24                                 302 East Coronado Road
                                   Phoenix, Arizona 85004
25                                 Attorneys for Plaintiff Ash Square
                                   Funding, LLC
26

Doc 127288

COPY of the foregoing delivered via
First class mail this ___ day of October, 2012, to:

The Honorable Jan Kearney
Pima County Superior Court
110 West Congress Street
Tucson, Arizona 85701


Loyd Gainous, Jr.
5803 South Herpa Drive
Tucson, Arizona 85706


By: _____
     Marla K. Halligan

2

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

New York Life Insurance and
    Annuity Corporation
51 Madison Avenue, Room 3003
New York, NY 10010

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X

☐ Agent
☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

OCT 01 2012

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☑ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7011 1570 0000 5852 1737

102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

New York Life Insurance Company
51 Madison Avenue, Room 3003
New York, NY 10010

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X

☐ Agent
☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

OCT 02 2012

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☑ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7011 1570 0000 5852 1744

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Loyd Gainous, Jr.
5803 South Herpa Drive
Tucson, Arizona 85706

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X

☐ Agent
☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery
Covegary Gainous   9/26/12

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☑ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7011 1570 0000 5852 1720

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540



# Tab 8

Court Order

COPY

OCT 2 2 2012

PATRICIA A. NOLAND
CLERK, SUPERIOR COURT

1   BEAUGUREAU, HANCOCK,
    STOLL & SCHWARTZ, P.C.
2   302 East Coronado Road
    Phoenix, Arizona 85004
3   (602) 956-4438
    firm@bhsslaw.com
4
    Amy Schwartz (#005558)
5   aschwartz@bhsslaw.com
    Shimin Luo (#022570)
6   slou@bhsslaw.com
    Attorneys for Applicant Ash Square Funding, LLC
7

8              IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

9                     IN AND FOR THE COUNTY OF PIMA

10                                     )
                                       )   No.  C2012-5583
11  In Re:  Approval of Transfer of Structured   )
    Settlement Payment Rights by LOYD GAINOUS, )   **ORDER APPROVING TRANSFER OF**
12  JR., Transferor, to ASH SQUARE FUNDING,  )   **STRUCTURED SETTLEMENT**
    LLC, a Delaware Corporation, Transferee,  )   **PAYMENTS**
13                                     )
                 Applicants.           )
14                                     )   (Assigned to The Honorable Jan Kearney)
                                       )
15

16        Upon an application to the Court for approval of a Transfer of Structured Settlement

17  Payment Rights ("Application") duly brought by Ash Square Funding, LLC, as Transferee ("Ash

18  Square" or "Transferee"), and having considered documents and written submissions, if any,

19  filed in support of, in opposition to or in response to the Application by the interested parties

20  named below:

21             **Transferor/Payee ("Mr. Gainous" or "Payee"):**

22        Loyd Gainous, Jr.
          5803 South Herpa Drive
23        Tucson, Arizona 85706

24

Doc 127257

**Structured Settlement Obligor:**

New York Life Insurance and Annuity Corporation
51 Madison Avenue, Room 3003
New York, NY 10010

**Annuity Issuer:**

New York Life Insurance Company
51 Madison Avenue, Room 3003
New York, NY 10010

The Court, upon said Application, hereby makes the following findings:

1.    This Court has jurisdiction over this matter pursuant to A.R.S. §12-2901 *et seq.*

2.    Mr. Gainous was involved in a personal injury matter, which was resolved through a settlement agreement by the third party personal injury defendant's purchase of a structured settlement. Pursuant to the settlement, Mr. Gainous was entitled to receive periodic payments through an annuity owned by New York Life Insurance and Annuity Corporation, and issued by New York Life Insurance Company (collectively, "New York Life").

3.    Mr. Gainous and Ash Square have entered into a contract for the sale of the following portion of Mr. Gainous's structured settlement payments: Monthly payments of $500.00, commencing on November 15, 2012, through and including April 15, 2020 (the "Assigned Payments"), in exchange for a net purchase price of $26,000.00, payable by Ash Square to Gainous.

4.    Ash Square has assigned its interest in the Assigned Payments to:

**The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 restated**
**420 La Casa Ave**
**San Mateo, CA 94404**
("Assignee")

2

5. The transfer of Mr. Gainous's settlement payments complies with the requirements of A.R.S. §12-2901 *et seq.*, and would not contravene any applicable law or federal or state statute or the order of any court or responsible administrative authority or other government authority.

6. Not less than three days before the date on which Mr. Gainous signed the transfer agreement, Ash Square provided to Mr. Gainous a disclosure statement in bold type, no smaller than fourteen points, setting forth:

(a) The amount and due date of the structured settlement payments to be transferred;

(b) The aggregate amount of the payment;

(c) The discounted present value of the payments to be transferred, which was identified as the calculation of current value of the transferred structured settlement payment under federal standards for valuing annuities, and the amount of the applicable federal rate used in calculating the discounted present value;

(d) The gross advance amount that is payable to Mr. Gainous in exchange for the payments;

(e) An itemized listing of all applicable transfer expenses, other than attorney fees and related disbursements payable in connection with the transferee's application for approval of the transfer, and Ash Square's best estimate of the amount of attorney fees and related disbursements;

(f) The net advance amount that is payable to Mr. Gainous after deduction of all commissions, fees, costs, expenses and charges listed in subdivision (e) of A.R.S. §12-2901(B)(2)(e);

(g) A statement that Mr. Gainous had the right to cancel the transfer agreement, without penalty or further obligation, not later than the third business day after the date the agreement was signed by him; and

(h) The amount of any penalty and the aggregate amount of any liquidated damages inclusive of penalties that are payable by Mr. Gainous in the event of any breach of the transfer agreement by him.

7.    The transfer is in the best interests of Mr. Gainous, taking into account the welfare and support of his dependents, if any.

8.    Mr. Gainous has been advised in writing by Ash Square to seek independent professional advice regarding the transfer and has waived such advice.

9.    Ash Square has provided written notice of the Application to transfer Mr. Gainous's structured settlement payments to the Annuity Issuer, Structured Settlement Obligor, and other interested parties as required by the Act, none of whom have submitted written objections to said transfer.

Based on the foregoing findings, it is hereby **ORDERED, ADJUDGED, AND DECREED:**

A.    That the transfer of the structured settlement payment rights, as described in the Application herein, satisfies the requirements of A.R.S. §12-2901 *et seq.*; is hereby approved; and no party to this proceeding shall hereafter refuse to honor this approved transfer;

B.    IT IS FURTHER ORDERED that New York Life Insurance Company (the "Annuity Issuer") and New York Life Insurance and Annuity Corporation (the "Structured Settlement Obligor") or the respective successors and/or assigns of Annuity Issuer and/or Structured Settlement Obligor, are hereby directed to deliver the Assigned Payments due to the Payee under Annuity Policy No. FP 207 762, directly to Ash Square's designated Assignee, The Fred F. Cohn & Miriam C. Perlson-Cohn Rev Trust 5/26/94 restated ("Cohn Trust"). The aforementioned Assigned Payments, when due, shall be remitted to Assignee at the address set forth in Paragraph 4 above.

C.    IT IS FURTHER ORDERED that during the period the structured settlement payment rights are being assigned or encumbered pursuant to the transaction at issue, the designated beneficiary under annuity contract no. FP 207 762 shall be Ash Square's Designated Assignee, Cohn Trust, and no other individual or entity other than Assignee shall have the authority to change the beneficiary for the Assigned Payments. However, the Assigned Payments shall be made to Assignee even in the event of Mr. Gainous's death.

D.    IT IS FURTHER ORDERED that Ash Square shall be liable to the Structured Settlement Obligor and Annuity Issuer:

(1)    If the transfer contravenes the terms of the structured settlement, for any taxes incurred by the parties as a consequence of the Transfer; and

(2)    For any of their liabilities or costs, including reasonable costs and attorneys' fees, arising from compliance by such parties with this Order or arising as a consequence of Ash Square's failure to comply with the Act.

E.    IT IS FURTHER ORDERED that, pursuant to the Act, by making and delivering the Assigned Payments to the Transferee as set forth in the preceding paragraph, the Annuity Issuer and the Structured Settlement Obligor will be discharged from all liability for this Assigned Payments due the Payee under the annuity.

F.    This Order shall be read in conjunction with any prior court orders approving the transfer of structured settlement payments by Payee.

G.    New York Life Insurance Company and New York Life Insurance and Annuity Corporation are directed to issue a formal acknowledgment letter of the transfer within twenty (20) days of the date of receipt of this Order. The formal acknowledgment letter shall be delivered to Ash Square Funding, LLC, 14225 Ventura Blvd., Suite 100, Sherman Oaks, CA 91423.

1

2        H.      This Order in no way modifies or negates the ownership or control over the

3    underlying annuity contract by Annuity Issuer or the Structured Settlement Obligor.

4        I.      This Order shall constitute a final "Qualified Order" within the meaning of 26 USC

5    § 5891.

6    DATED:    OCT 2 2 2012

7                                    JAN E. KEARNEY
                                     JUDGE OF THE SUPERIOR COURT
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# Tab 9

Affidavit in Lieu of Structured Settlement Agreement and Release



## AFFIDAVIT IN LIEU OF SETTLEMENT AGREEMENT

I, Loyd L. Gainous, Jr., understand that I am making the following statements under oath:

- My current address is 5803 S Herpa Drive, Tucson, AZ 85706.

- My social security number is ▆▆▆▆▆▆and my date of birth is March 28, 1961.

- I am the recipient of periodic payments resulting from a personal injury claim. The claim was settled by a Settlement Agreement and Release (the "Settlement Agreement") in the State of Arizona on or about 2000. Under the Settlement Agreement, the Defendant and/or Defendant's liability insurer guaranteed that certain structured settlement payments would be made payable to me.

- To satisfy and fund its obligation under the Settlement Agreement, New York Life Insurance and Annuity Corp. ( the "Structured Settlement Company") purchased a guaranteed investment contract (the "Annuity"), issued by New York Life Insurance Company (the "Annuity Issuer"), bearing policy contract number FP207762. The Structured Settlement Company is the obligor of the obligations set forth in the Settlement Agreement.

- I am currently receiving or am scheduled to receive the Periodic Payments under the Settlement Agreement and/or Annuity.

- I am making this Affidavit in Lieu of Settlement Agreement because I do not have a copy of the settlement agreement. I have tried to locate a copy, but was unable to do so.    I have requested a copy of my Settlement Agreement from my insurance company and they either don't have a copy of the Settlement Agreement nor have they responded to my request.

- I realize that as a material part of my contract with Ash Square Funding, LLC, this document is a condition to my closing this transaction. I submit this affidavit in lieu of that condition precedent and ask Ash Square Funding, LLC to waive this requirement.

- I assert, based upon my knowledge and recollection, that there were no additional parties, other than myself, who have any continuing right or obligation under the underlying structured settlement agreement

[The remainder of this page intentionally left blank]

ALL OF THE STATEMENTS THAT I HAVE MADE IN THIS AFFIDAVIT ARE
TRUE, TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.   I
UNDERSTAND THAT I MAY BE RESPONSIBLE FOR MONEY DAMAGES IF I
WILLFULLY MAKE A FALSE STATEMENT WITHIN THIS AFFIDAVIT.



Loyd L. Gainous, Jr.


STATE OF Arizona

COUNTY OF Pima

On this 31st day of August 2012, before me, the above signed personally
appeared before me and produced for identification Loyd L. Gainous Jr or is personally
known to me to be the person whose name is subscribed to the within instrument and
acknowledgment to me that he/she executed it.

OFFICIAL SEAL
CELINA GUTIERREZ
Notary Public - State of Arizona
PIMA COUNTY
My Comm. Expires April 17, 2015

_____
Notary Public

November 20, 2012

New York Life Insurance Company
51 Madison Avenue
New York, New York 10010
Attention: Joseph Berrafati

Re:    Annuity Contract Number: FP210054
       Annuitant: Loyd Gainous, Jr.

Dear Mr. Berrafati:

Enclosed please find a copy of an Arizona Order approving the sale and transfer of certain payments payable pursuant to the above-referenced annuity along with the administrative fee in the amount $500.00.

Ash Square Funding LLC hereby advises you that it has assigned the payments listed below to The Fred F Cohn & Miriam C Perlson-Cohn Rev Trust 5/26/94 restated  or its successors or assigns.  Please change your records to reflect that The Fred F Cohn & Miriam C Perlson-Cohn Rev Trust 5/26/94 restated  is now the payee of the following guaranteed payments:

- *monthly payments of $500.00, commencing on November 15, 2012, through and including April 15, 2020*

**THESE  PAYMENTS SHOULD BE PAID SOLELY TO:**
The Fred F Cohn & Miriam C Perlson-Cohn Rev Trust 5/26/94 restated
420 La Casa Ave
San Mateo, CA 94404

Also, please change the designated beneficiary on the annuity for these assigned payments to The Fred F Cohn & Miriam C Perlson-Cohn Rev Trust 5/26/94 restated  and revoke the existing beneficiary designation. These changes of payee and beneficiary, respectively, cannot be changed without first obtaining the written consent of The Fred F Cohn & Miriam C Perlson-Cohn Rev Trust 5/26/94 restated .

**We ask that New York Life Insurance Company acknowledge the transfer in writing, thereby agreeing to the transaction and to the change of its records as requested.  Please return the executed letter to Ash Square Funding LLC  at 14225 Ventura Blvd. Suite 100 Sherman Oaks Ca 91423 and fax a copy to Ash Square Funding LLC, Attn: Robert Shapiro at 866-452-4499 and 321-779-7894.**

Sincerely,

Robert Shapiro
President

bibi@woodbridgeinvestments.com

Encls.

Miriam & Fred Cohn
420 La Casa Avenue
San Mateo, CA 94403

☆ PRIORITY MAIL ☆

UNITED STATES
POSTAL SERVICE®

For Domestic Use Only

TRACKED
INSURED

Label 107R, July 2013

Ny Life/Calirous



CERTIFIED MAIL™

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7012 2920 0002 0747 2788

Woodbridge Group of Companies, LLC, ET AL.

P. O. Box 10545

Dublin, Ohio 43017-0208





U.S. POSTAGE
PAID
SAN MATEO, CA
94402
MAY 15 18
AMOUNT

$14.65

1022
43017
R2304N11466-18